WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
Owen C. Pell

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (*pro hac vice* pending)
Matthew A. Goldberger

*Attorneys for Aleksey Vladimirovich Bazarnov*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| SERGEY PETROVICH POYMANOV | )   Case No. 17-10516 |
| | ) |
| Debtor in a Foreign Proceeding.[1] | )   Chapter 15 |
| | ) |

**DECLARATION OF PAVEL BOULATOV PURSUANT TO 28 U.S.C. § 1746 IN**
**SUPPORT OF PETITION FOR RECOGNITION OF THE RUSSIAN INSOLVENCY**
**PROCEEDING AND MOTION FOR ORDER GRANTING RELATED RELIEF**
**PURSUANT TO 11 U.S.C. §§ 1515, 1517 AND 1520**

I, Pavel Boulatov, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury under the laws of the United States as follows:

1.      I submit this declaration in support of the *Verified Petition for Recognition of*

*Foreign Main Proceeding and Motion for Order Granting Related Relief Pursuant to 11*

*U.S.C. sections 1515, 1517 and 1520* filed contemporaneously herewith (the "**Verified**

---

[1]      The last four identifying digits of the Debtor's tax number in Russia are 6753.  The Debtor is referred
to herein as "**Poymanov**".

Petition" and together with the Form of Voluntary Petition, the "**Petition**").[2]

## I.   BACKGROUND AND QUALIFICATIONS

2.      I am an attorney in the Moscow office of White & Case LLC ("**White &
Case**"), a global law firm with 39 offices across 28 countries.˙ I graduated from the Mari State
University School of Law (Russia) in 2004.  I have 14 years of experience in legal practice,
with a focus on international arbitration, litigation and bankruptcy proceedings.  I have
represented creditors, debtors and administrators in a variety of bankruptcy proceedings
throughout Russia.

3.      I am familiar with the Russian Federal Law № 127-FZ "On Insolvency
(Bankruptcy)" (the "**Russian Bankruptcy Law**").[3]  An English translation of the current
version of the Russian Bankruptcy Law is attached hereto as Exhibit A.[4]  Bankruptcy
proceedings are one of the key areas of my expertise.  I am a member of INSOL International
(International Association of Restructuring, Insolvency & Bankruptcy Professionals).

4.      In addition to my activities as a private attorney, I regularly participate as an
invited speaker at insolvency conferences.  Most recently, I spoke on September 16, 2016, on
the topic of "Challenging Transactions on Debt Restructuring" at the 2nd Annual Vedomosti
Conference on Insolvency.  I also spoke on September 15, 2015, on the topic of "Subrogation
of Claims in Insolvency" at the 1st Annual Vedomosti Conference on Insolvency.  I have also
authored numerous publications on insolvency and bankruptcy proceedings in Russia.

5.      Although my native language is Russian, I am fluent in English and have
elected to execute and submit this declaration in English.

---

[2]      Except as otherwise indicated, capitalized terms used herein have the meanings ascribed to them in the
Verified Petition.

[3]      The Russian Bankruptcy Law uses the terms "insolvency" and "bankruptcy" synonymously.

[4]      The attached translation is unofficial and is provided for informational purposes only.

6.      This declaration is comprised of matters that are statements of legal opinion and/or statements of fact.  Where the statements are legal opinion, such statements represent my view of Russian law as a practicing lawyer.  To the extent the statements are statements of fact, they are statements based upon my personal knowledge or based upon documents and/or information supplied to me by or on behalf of Aleksey Vladimirovich Bazarnov ("**Bazarnov**") as Receiver[5] and Foreign Representative of the Debtor, and are true to the best of my knowledge, information and belief.

7.      To assist this Court in its consideration of the Petition, I submit this declaration describing the relevant aspects of the court-supervised insolvency process under the laws of Russia and the current status of Poymanov's Russian insolvency proceeding.

## II.      OVERVIEW OF RUSSIAN BANKRUPTCY LAW

8.      Russian law embraced insolvency proceedings for individuals (consumer insolvency) relatively recently, with the provisions regarding insolvency for individuals (consumer insolvency) becoming effective on October 1, 2015.  Prior to that, only an individual who was engaged in commercial activities and had the special status of an "individual entrepreneur" could be declared bankrupt.

9.      The Russian Bankruptcy Law is the principal statute governing insolvency for individuals in Russia.

10.      Under the Russian Bankruptcy Law, the Russian state commercial "arbitrazh" courts administer all insolvency proceedings, including insolvency proceedings for individuals.[6]

---

[5]      As will be explained below, the literal translation of the underlying Russian term describing Bazarnov's status is "financial administrator".

[6]      Articles 32 and 33 of the Russian Bankruptcy Law.

3

11.     A creditor may commence proceedings to declare an individual bankrupt if the amount of his or her debt exceeds RUB 500,000 (approximately US$ 8,500 at the current exchange rate) and is overdue for more than three months.[7]  As a general rule, creditors must confirm their claims with a judgment or an arbitral award whose enforcement was granted by a Russian court.[8]  An individual in Russia is obliged to file a petition to declare bankruptcy if a payment to a creditor makes it impossible for the individual to pay his or her other creditors, and the outstanding amount exceeds RUB 500,000.  An individual in Russia has the right, but is not obliged, to declare bankruptcy if he or she is clearly unable to pay his or her debts when due and/or the amount of the individual's debts exceeds the value of his or her assets (there is no minimum threshold).[9]

12.     As noted in paragraph 0 above, creditors may commence bankruptcy proceedings in respect of the debtor by submitting a petition to the court (at the place of the debtor's location). The court considers the petition filed first and treats the second and all subsequent petitions as petitions to participate in the insolvency proceedings commenced by the first petition.[10]

13.     If the court finds that the bankruptcy petition has merit, the following insolvency procedures may be applicable:[11]

a)     Debt Restructuring;

b)     Sale of assets; or

c)     Settlement agreement.

---

[7]     Article 213.3(2) of the Russian Bankruptcy Law.
[8]     Article 213.5 of the Russian Bankruptcy Law.
[9]     Article 213.4 of the Russian Bankruptcy Law, sections 8 – 10 of the Resolution of the Plenary Session of the Supreme Court of the Russian Federation No. 45 ("**Resolution No. 45**") dated October 13, 2015.
[10]     Section 7 of the Resolution of the Plenary Session of the Supreme Commercial Court of the Russian Federation No. 35 dated June 22, 2012.
[11]     Article 213.2 of the Russian Bankruptcy Law.

4

14.     Unless special conditions are met,[12] the court first introduces the debt restructuring procedure and appoints a financial administrator.[13]  During the course of the debt restructuring, a moratorium on payment of debts is introduced and no interests and penalties accrue on any claims (except for post-commencement claims), while the financial administrator analyzes the debtor's financial situation.  While the procedure is pending, the debtor (among other restrictions) cannot enter into any transactions for a transfer of property with a value exceeding RUB 50,000 (approximately US$ 850 at the current exchange rate) without the financial administrator's consent.[14]  The debtor and/or his or her creditors may work out a debt restructuring plan providing for the full repayment of debts (unless a creditor consents to receipt of a lesser amount) during a period that cannot exceed three years.[15]  Debts secured by pledged assets are repaid out of the proceeds from the sale of those assets, unless the secured creditor waives its security interests.[16]

15.     A debt restructuring plan requires the approval of a majority of the votes of all creditors whose claims are registered by the court.[17]  The three-year period for debt repayment begins upon the court's approval of the debt restructuring plan.[18]  The Russian bankruptcy court may approve a debt restructuring plan if it finds that the plan meets the criteria set by the Russian Bankruptcy Law, is feasible (likely to succeed) and does not breach the rights of third

---

[12]     Pursuant to Articles 213.6(8) and 213.13(1) of the Russian Bankruptcy Law, the court may immediately introduce procedures to sell assets, provided that the debtor does not satisfy the statutory requirements for debt restructuring.
[13]     Article 213.6 of the Russian Bankruptcy Law.
[14]     Articles 213.11(5) and 213.14(5) of the Russian Bankruptcy Law.  Pursuant to Article 213.11(5.1) of the Russian Bankruptcy Law, an individual is entitled to open a special bank account and use it for transacting without the financial administrator's consent provided that the total amount of transactions does not exceed RUB 50,000 per month (this rule was introduced by an amendment to the Russian Bankruptcy Law which entered into force on January 1, 2017).
[15]     Article 213.14(2) of the Russian Bankruptcy Law.
[16]     Article 213.14(3) of the Russian Bankruptcy Law.
[17]     Article 213.16 of the Russian Bankruptcy Law.
[18]     Section 33 of Resolution No. 45.

parties.[19]   The court reviews the results of the debt restructuring and either declares the individual bankrupt, which leads to the introduction of the sale of assets, as described in paragraph 17 below, or the court declares the debt restructuring completed if all the debts set out in the restructuring plan have been repaid.[20]   Then the proceedings are subject to termination.

16.      In addition, the debtor and its creditors may agree on an amicable settlement. Any amicable settlement is subject to approval by the court.   Unlike a debt restructuring, approval of an amicable settlement agreement releases the financial administrator from his or her mandate and terminates insolvency proceedings.[21]   Accordingly, after the agreement is approved, the court does not oversee performance of the settlement agreement and the debtor's estate.

17.      If there is no basis to approve a debt restructuring plan, the plan fails or the parties do not propose a draft restructuring plan, the court will declare the debtor bankrupt and commence procedures to sell the debtor's assets.[22]   The purpose of this stage of a typical Russian insolvency case is to have the debtor's assets sold and the creditor's claims repaid using the sale proceeds.

18.      Once the debtor is declared bankrupt, it is the financial administrator (and not the debtor) who exercises all rights with respect to the property making up the bankruptcy estate and who is entitled to collect and dispose of such property for the benefit of the debtor's creditors.[23] Any money due to the debtor and collected by the financial administrator during the course of the bankruptcy is part of the bankruptcy estate, to be administered by the financial administrator.

---

[19]      Article 213.18 of the Russian Bankruptcy Law, Section 31 of Resolution No. 45.
[20]      Article 213.22 of the Russian Bankruptcy Law.
[21]      Article 213.31 of the Russian Bankruptcy Law.
[22]      Article 213.24 of the Russian Bankruptcy Law.
[23]      Articles 213.25(5) and 213.26 of the Russian Bankruptcy Law.

19.     The bankruptcy estate comprises all assets of the individual debtor, including his or her property, pecuniary (proprietary) rights (claims) and tort claims, with exceptions, which consist of: (i) certain limited personal (as opposed to ordinary) pecuniary rights of the debtor[24] (*e.g.* claims for physical injury and alimony payments due to the debtor, which are unassignable under applicable Russian law to any other person or entity),[25] (ii) prohibited items (*e.g.* unauthorized buildings),[26] (iii) certain other types of property or income that cannot be subject to enforcement,[27] such as homes/apartments (provided that they are not mortgaged) and land plots underneath the debtor's home, if he or she does not have any other premises[28] and (iv) other property with a total value of RUB 10,000 or less (approximately US$ 170 at the current exchange rate), which may be excluded by the court from the bankruptcy estate.[29]

20.     All transactions made by the debtor who has been declared bankrupt *rather than* by the financial administrator acting on his/her behalf, with respect to assets of the bankruptcy estate, are deemed null and void, *i.e. void ab initio.*[30]   An assignment of any claims, as a transaction, would fall under this restriction.   The financial administrator, as part of his right to administer the bankruptcy estate for the benefit of creditors, has the right to challenge improper transfers by a debtor.[31]

21.     As the alleged rights or claims purportedly assigned by Poymanov to PPF (as described in paragraph 41 below) would be assets of Poymanov that fall within his bankruptcy

---

[24]     Article 131(2) of the Russian Bankruptcy Law.
[25]     Article 383 of the Civil Code of the Russian Federation (part one) dated November 30, 1994 No. 51-FZ (the "**Civil Code**").
[26]     Article 131(2) of the Russian Bankruptcy Law.
[27]     See Article 213.25(3) of the Russian Bankruptcy Law, Article 446(1) of the Civil Procedure Code of the Russian Federation dated November 14, 2002, No. 138-FZ (the "**Civil Procedure Code**"), and Article 101 of Federal Law "On Enforcement Proceedings" dated October 2, 2007, No. 229-FZ.
[28]     Article 213.25(3) of the Russian Bankruptcy Law, Article 446 of the Civil Procedure Code.
[29]     Article 213.25(2) of the Russian Bankruptcy Law.
[30]     Article 213.25(5) of the Russian Bankruptcy Law.  The debtor can use reasonable amounts from the bankruptcy estate for living with approval from the court (section 39 of Resolution No. 45).
[31]     Articles 213.9(7), 213.25(5) and 213.25(6) of the Russian Bankruptcy Law.

estate, the purported assignment is null and void as a matter of Russian law. No court ruling is generally required to invalidate such a transaction. Nevertheless, in case of a dispute with a third party, the financial administrator or a major creditor (as described below) may seek a court declaration to confirm that such a transaction has no legal effect.

22.    The existence and/or enforceability and/or merits of the purported rights allegedly assigned are irrelevant to the legal effect of any agreement to assign as such.[32] Where the underlying claims are invalid or non-existent, the assignor would be contractually liable *vis-a-vis* the assignee for failure to assign valid claims.[33] Accordingly, that Poymanov's financial administrator (as to which see paragraphs 34 onwards), including within the framework of a Chapter 15 proceeding, is challenging the assignment cannot be viewed as an admission of or statement of any kind as to the validity and/or existence and/or merits of the purportedly assigned underlying claims. Rather, by pursuing this challenge the financial administrator is resisting the invasion of his powers to administer the bankruptcy estate and protecting the bankruptcy estate from the potential contractual liability that, as set out above, may arise from the purported assignment by the bankrupt debtor of invalid and/or non-existent rights.

23.    Further and in any event, the financial administrator is the only person who is authorized to bring claims on behalf of the debtor with respect to the bankruptcy estate.[34] During the course of the asset sale procedure, the financial administrator, on behalf of the debtor, *inter alia*, (i) commences and conducts court proceedings related to the debtor's pecuniary rights (including for recovery of any amounts due to the debtor, both contractually and non-contractually), (ii) exercises all of the debtor's corporate rights and (iii) disposes of

---

[32]    Section 1 of the Informational Letter of the Presidium of the Supreme Commercial (Arbitrazh) Court of the Russian Federation dated October 30, 2007 No. 120.  This rule also applies where the rights being assigned are subject matter of court proceedings between the assignor and the debtor(s) in the underlying legal relations.
[33]    *Id.*
[34]    Article 213.25(5) and (6) of the Russian Bankruptcy Law.

any of the debtor's funds placed in bank accounts or deposits for the benefit of the debtor's creditors.[35] Further, as such, it follows that the financial administrator is the only person authorized to represent the debtor and its bankruptcy estate in any foreign insolvency proceedings.

24.    After the asset sale procedure is completed, the Russian court decides whether to discharge the debtor from claims that were not satisfied by the sale of the debtor's assets.[36] The court will not release the debtor from these obligations if the debtor acted unlawfully or in bad faith while undertaking or performing his obligations during the bankruptcy proceedings. For instance, the court will not issue a discharge order if it finds that the debtor intentionally gave false information to the financial administrator or the court during the course of the bankruptcy proceedings.   If such bad faith by the debtor first becomes known after the bankruptcy proceedings are completed, the decision to release the debtor from his obligations can be annulled by the court.

25.    In any event, the debtor cannot be released from certain types of debts, including post-commencement claims, damage claims for harm to life or health, claims for payment of salary, alimony claims, claims to hold the debtor liable for his or her actions or omissions as a director of a legal entity, or for damage caused by the debtor in his or her capacity as an insolvency administrator if he or she was a certified insolvency administrator.[37] Upon completion of the bankruptcy proceedings, the court issues writs of execution for creditors to enforce their claims using generally applicable enforcement procedures.

26.    The Russian Bankruptcy Law specifically addresses the transfer or sale of property jointly owned by spouses, including former spouses.  Such property must be sold within the insolvency proceedings for the insolvent spouse (or former spouse), in accordance

---

[35]    Article 213.25(6) of the Russian Bankruptcy Law.
[36]    Article 213.28 of the Russian Bankruptcy Law.
[37]    Articles 213.28(3), (5) and (6) of the Russian Bankruptcy Law.

9

with the general rules set out in the Russian Bankruptcy Law.  The proceeds from such sales are to be divided between the bankruptcy estate and the non-insolvent spouse, or former spouse, *pro rata*.[38]  By default, the spouses' shares in their joint property are deemed equal.[39]

27.     The issue of what property is deemed the spouses' joint property is addressed by Russian civil and family law.  The default rule is that all property acquired by either of the spouses (or by them jointly) during their marriage is deemed joint property.[40]

28.     Transactions made by an individual debtor can be challenged by the financial administrator and major creditors of an individual (those having 10% or more of the aggregate amount of debt, subject to certain conditions) within the bankruptcy proceedings using general civil law grounds to invalidate a transaction (other than those set forth by the Russian Bankruptcy Law).  These include violation of Articles 10 and 168 of the Civil Code, which prohibit the "abuse of rights."  In the context of bankruptcy proceedings, the Russian courts interpret the concept of "abuse of rights" as any exercise of rights in bad faith, including transactions aimed at dissipation of the debtor's assets (including joint property) to make them unavailable to creditors, including gifts or sales for less than fair value.[41]

29.     Transactions made by an individual subject to bankruptcy proceedings before October 1, 2015, can be challenged (within the bankruptcy proceedings) using the general civil law grounds outlined in paragraph 28 above.[42]

---

[38]     Article 213.26(7) of the Russian Bankruptcy Law.
[39]     Article 39(1) of the Family Code of the Russian Federation dated December 29, 1995, No. 223-FZ (the "**Family Code**").
[40]     Articles 33(1) and 34 of the Family Code.
[41]     Section 10 of the Resolution of the Plenary Session of the Supreme Commercial (Arbitrazh) Court of the Russian Federation No. 32 dated April, 30 2009, "On certain issues related to challenging transactions on grounds provided by the Federal Law "On insolvency (bankruptcy)"".
[42]     Article 14(13) of Federal Law No. 154-FZ dated June 29, 2015 amending the Russian Bankruptcy Law ("**Federal Law No. 154-FZ**").

30.     Transactions made by the debtor on or after October 1, 2015, can also be challenged by the financial administrator and major creditors of an individual on the following grounds specific to the bankruptcy proceedings:[43]

    a)     Transactions for which unequal consideration was provided (including if the transaction price or other terms deviate materially from those of similar transactions to the detriment of the debtor);[44]

    b)     Transactions aimed at violating creditors' rights and interests, provided that the third party was aware of the insolvent entity's intent;[45] and

    c)     Transactions leading to preferential treatment of certain creditors.[46]

31.     Where one of the spouses is undergoing bankruptcy proceedings, the above grounds for challenging transactions (referred to in paragraphs 28 and 30 above) are applicable to property jointly owned by the debtor and his or her spouse.[47]

32.     Any transactions, including made with respect to joint property, which is subject to sale within the bankruptcy state, and/or otherwise falling under the rules set out in paragraphs 28 – 30 above, made by the debtor or his or her (former) spouse declared bankrupt (*i.e.* after the introduction of the sale of assets) are deemed void *ab initio*, as set out in paragraph 20 above, which means that no court ruling is generally required to invalidate such a transaction.

33.     If a transaction entered into by the debtor is invalidated, all assets transferred by the debtor to its counterparty as part of the invalid transaction must be returned to the debtor's estate.[48]   If restitution of the debtors' assets is not possible, the counterparty to the invalid

---

[43]    Article 213.32 of the Russian Bankruptcy Law and Article 13 of Federal Law No. 154-FZ.
[44]    Article 61.2(1) of the Russian Bankruptcy Law.
[45]    Article 61.2(2) of the Russian Bankruptcy Law.
[46]    Article 61.3 of the Russian Bankruptcy Law.
[47]    Article 61.1(1) of the Russian Bankruptcy Law, Article 213.32(4) of the Russian Bankruptcy Law.
[48]    Article 61.6 of the Russian Bankruptcy Law.

transaction is obliged to pay the debtor the market price of the assets as of the date of the transaction and damages incurred due to change of the market price of the assets (if any).[49]

### III.   POYMANOV'S RUSSIAN INSOLVENCY PROCEEDING

34.   On October 1, 2015 (the "**Poymanov Petition Date**"), Suintex Limited ("**Suintex**"), the legal successor to debts owed by Poymanov and confirmed by binding court judgment,  initiated a case against Poymanov under the Russian Bankruptcy Law in the Commercial (Arbitrazh) Court of the Moscow Region (the "**Russian Bankruptcy Court**"). On the same day, Poymanov himself and his ex-wife Irina Podgornaya ("**Podgornaya**") separately attempted to initiate a bankruptcy case for Poymanov under the Russian Bankruptcy Law.  On February 8, 2016, the Russian Bankruptcy Court ruled that Suintex's petition was filed before those of Poymanov and Podgornaya, had merit, and therefore proceeded with the case initiated by Suintex and introduced a debt restructuring procedure for Poymanov, appointed Bazarnov as the financial administrator[50] and scheduled the consideration of a debt restructuring plan for June 2016.[51]

35.   Poymanov and Podgornaya appealed, arguing that their petitions to declare Poymanov's bankruptcy had been filed earlier.  Having considered these appeals, appellate and cassation courts dismissed them, thus confirming the priority and merit of Suintex's petition and appointment of Bazarnov.

36.   On July 21, 2016, since neither Poymanov nor his creditors had proposed a debt restructuring plan meeting the statutory requirements, the Russian Bankruptcy Court declared

---

[49]   *Id.*
[50]   Russian Bankruptcy Law describes a receiver in the bankruptcy proceedings for individuals using a term which literally translates as "financial administrator."
[51]   Ruling of the Russian Bankruptcy Court dated February 8, 2016, in case No. A41-78484/15, attached as Exhibit B.

Poymanov insolvent and initiated procedures to sell his assets.[52]  Also on July 21, 2016, the Russian Bankruptcy Court appointed Bazarnov as the financial administrator (receiver), whose role is to oversee the collection and sale of Poymanov's assets for the benefit of his creditors.[53] Poymanov's assets include funds acquired by Bazarnov on behalf of Poymanov after the commencement of Poymanov's Russian bankruptcy case, including cash transferred by Bazarnov to a client trust account at Citibank, New York.

37.    Poymanov's Russian insolvency proceeding remains pending and active.  On January 18, 2017, the Russian Bankruptcy Court entered an order extending the procedure of the sale of Poymanov's assets for six months, until July 21, 2017, so Bazarnov could continue identifying and gathering the assets making up the bankruptcy estate.[54]

### A.    Challenging of Poymanov's Transactions After Commencement of Russian Insolvency Proceeding

38.    On February 16, 2016, Poymanov entered into a new alimony agreement (the "**New Alimony Agreement**") with Podgornaya.  A previous alimony agreement had already been invalidated as an abuse of rights, as more fully described in the Verified Petition. Pursuant to the New Alimony Agreement, Poymanov undertook to pay Podgornaya the lump sum of RUB 24,000,000 by February 25, 2016, and to make monthly alimony payments of RUB 690,000.

39.    Based on the New Alimony Agreement, Podgornaya filed a claim in Poymanov's Russian insolvency proceeding for RUB 26,760,000.   Bazarnov filed an application to invalidate the New Alimony Agreement.

---

[52]    Decision of the Russian Bankruptcy Court dated July 21, 2016, in case No. A41-78484/15, attached as Exhibit C.
[53]    _Id._
[54]    Ruling of the Russian Bankruptcy Court dated January 18, 2017, in case No. A41-78484/15, attached as Exhibit D.

40.     On September 7, 2016, the Russian Bankruptcy Court found in favor of Bazarnov and ruled to invalidate the New Alimony Agreement because it violated Russian Bankruptcy Law.[55]   Accordingly, the court refused to register Podgornaya's claim against Poymanov's estate.

### B.      Purported Assignment of Assets from Bankruptcy Estate

41.     On or about November 21, 2016, Poymanov purportedly assigned his claims related to the levying of execution on, and the foreclosure of, his shareholding interests in Pavlovskgranit to PPF Management LLC ("**PPF**"), a Delaware limited liability corporation. Notably, Poymanov did not refer to these alleged rights in the list of his personal property filed in the framework of insolvency proceeding.  On November 22, 2016, PPF commenced an action in the United States District Court for the Southern District of New York  against *inter alia* Sberbank, Sberbank Capital, Sberbank Capital's legal successors, and the receivers in both Poymanov's insolvency proceeding (*i.e.* Bazarnov, the Petitioner here) and P-Invest's Russian insolvency proceeding

42.     The assignment to PPF was made after Poymanov became subject to a Russian insolvency proceeding under Russian Bankruptcy Law, and after Bazarnov was appointed Poymanov's financial administrator.  The assignment was therefore subject to the financial administrator's authority over and right to administer the bankruptcy estate.

43.     In late 2016, Bazarnov filed a motion in the Russian Bankruptcy Court seeking an order invalidating Poymanov's supposed assignment of the claims to PPF, as such claims belong to Poymanov's bankruptcy estate, and he had no authority to transfer such property under applicable Russian law.  The Russian Bankruptcy Court accepted the application for

---

[55]     Ruling of the Russian Bankruptcy Court dated September 7, 2016, in case No. A41-78484/15.

14

consideration and scheduled the court hearing for February 1, 2017.[52]  On February 1, 2017,

the hearing was adjourned until March 2, 2017.[53]   On March 2, 2017, the hearing was

adjourned until April 3, 2017.[54]

### CONCLUSION

44.       I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws

of the United States that the foregoing is true and correct.

Executed on this 3rd day of March, 2017 in Moscow, Russia.

Pavel Boulatov

---

[52]       Ruling of the Russian Bankruptcy Court dated December 30, 2016, in case No. A41-78484/15.
[53]       Ruling of the Russian Bankruptcy Court dated February 1, 2017, in case No. A41-78484/15.
[54]       See the "Background" Section of the Verified Petition.

15

**EXHIBIT A**
**English Translation of the Russian Bankruptcy Law**

*[Unofficial translation from Russian]*

FEDERAL LAW
NO. 127-FZ OF OCTOBER 26, 2002
ON INSOLVENCY (BANKRUPTCY)
(with the Amendments and Additions of August 22, December 29, 31, 2004, October 24, 2005, July 18, December 18, 2006,
February 5, April 26, July 19, October 2, December 1, 2007, July 23, December 3, 30, 2008, April 28, July 19, December 17,
27, 2009, April 22, July 27, December 28, 2010, February 7, May 3, July 1, 12, 18, November 21, 28, 30, December 3, 6, 7, July
28, December 29, 30, 2012, June 7, 28, July 2, 23, December 21, 28, 2013, March 12, July 21, December 1, 22, 29, 2014, June
29, July 13, December 29, 2015, June 2, 23, July 3, 2016))

**Adopted by the State Duma on September 27, 2002**

**Approved by the Federation Council on October 16, 2002**

### Chapter I. General Provisions

**Article 1.** The Relations Governed by the Present Federal Law

**1.** Pursuant to the Civil Code of the Russian Federation the present Federal Law establishes grounds for declaring a debtor insolvent (bankrupt), regulates the procedure and terms for implementing insolvency (bankruptcy) prevention measures, proceedings applicable in a bankruptcy case and other relations occurring when a debtor is not capable of meeting creditors' claims in full.

**2.** The operation of this Federal Law shall extend to legal entities which can be declared insolvent (bankrupt) in compliance with the Civil Code of the Russian Federation.

**3.** The relations connected with the insolvency (bankruptcy) of individuals, in particular individual entrepreneurs, shall be governed by the present Federal Law. The norms governing the insolvency (bankruptcy) of individuals, in particular individual entrepreneurs, which are contained in other federal laws shall be applicable only after appropriate amendments are made to the present Federal Law.

**4.** If an international treaty of the Russian Federation has established rules different from those envisaged by the present Federal Law, the rules of the international treaty of the Russian Federation shall apply.

**5.** The relations which are governed by the present Federal Law and involve foreign persons as creditors shall be subject to the provisions of the present Federal Law except as otherwise is envisaged by an international treaty of the Russian Federation.

**6.** The decisions of foreign states' courts on insolvency (bankruptcy) cases shall be recognised on the territory of the Russian Federation in compliance with the international treaties of the Russian Federation.

In case of lack of international treaties of the Russian Federation the decisions of foreign states' courts on insolvency (bankruptcy) cases shall be recognised on the territory of the Russian Federation on the basis of reciprocity, except as otherwise envisaged by a federal law.

**Article 2.** The Basic Terms Used in the Present Federal Law

The following basic terms are used for the purposes of the present Federal Law:

**"insolvency" ("bankruptcy") (hereinafter also referred to as "bankruptcy")** meaning a debtor's incapacity -- recognised by a commercial court -- to meet in full creditors' claims for money liabilities, on paying severance benefits and/or labour wages of the persons who have worked or are working under a labour contract and/or to execute the duty of making compulsory payments;

**"debtor"** meaning an individual, including an individual entrepreneur or a legal entity, that has turned out to be unable to meet creditors' claims for money liabilities, on paying severance benefits and/or labour wages of the persons who have worked or are working under a labour contract and/or to execute the duty to make compulsory payments within the term established by the present Federal Law;

**"monetary obligation"** meaning a debtor's obligation to pay a certain sum of money to a creditor under a civil-law transaction and/or on another ground envisaged by the Civil Code of the Russian Federation and the budget legislation;

**"compulsory payments"** meaning taxes, fees and other compulsory contributions paid to the budget of relevant level of the budget system of the Russian Federation and/or state non-budget funds in the procedure and on the terms defined by the legislation of the Russian Federation, for instance fines, penalties and other sanctions for default on, or the improper performance of, the duty to pay taxes, fees and other compulsory contributions to the budget of relevant legal of the budget system of the Russian Federation and/or state non-budget funds, and also administrative fines and the fines established by the criminal legislation;

**"the head of a debtor"** meaning the sole executive body of a legal entity or the head of a collective executive body,

1

and also another person that carries out activities on behalf of a legal entity without a power of attorney;

**"creditors"** meaning persons having claims for money liabilities in respect of a debtor, for the compulsory payments, the payment of severance allowances and the payment of remuneration for the labour of persons who is working or had worked under a labour contract;

**"bankruptcy creditors"** meaning creditors for money liabilities (except for empowered bodies, the individuals to which the debtor is liable for the infliction of harm to life or health has obligations to pay out a compensation in excess of the compensation for harm provided for by the Town-Planning Code of the Russian Federation (compensation in excess of the compensation for harm caused as a result of the demolition or damage of a capital development unit, failure to satisfy the safety requirements while constructing a capital development unit and the requirements for ensuring the safe operation of a building or structure), royalties to the authors of the results of intellectual activity, and also the founders (stockholders) of the debtor for the obligations ensuing such participation);

**"authorised bodies"** meaning the federal executive governmental body empowered by the Government of the Russian Federation to present claims in a bankruptcy case and in the proceedings applicable in a bankruptcy case for compulsory payments and claims of the Russian Federation for money liabilities, and also the executive governmental bodies of subjects of the Russian Federation and the local self-government bodies empowered to present claims in a bankruptcy case and in the proceedings applicable in a bankruptcy case for money liabilities of the Russian Federation or municipal formations respectively;

**"control (supervision) body"** meaning the federal executive governmental body empowered by the Government of the Russian Federation to carry out the functions of exercising control (supervision) over the activity of self-regulating organisations of qualified receivers;

**"regulator"** meaning the federal executive governmental body empowered by the Government of the Russian Federation to carry out the functions of state policy elaboration and normative legal regulation in the area of insolvency (bankruptcy) and financial rehabilitation;

**"readjustment"** meaning measures taken by the owner of property of a debtor being an unitary enterprise, by the debtor's founders (stockholders), the debtor's creditors and by other persons for the purpose of preventing bankruptcy and restoring the solvency of the debtor, for instance at any stage of hearing of the bankruptcy case;

**"supervision"** meaning a proceeding applied in a bankruptcy case to the debtor for the purpose of ensuring the preservation of its/his/her property, analysing the financial state of the debtor, drawing up a list of creditors' claims and holding the first meeting of creditors;

**"financial rehabilitation"** meaning a procedure applied in a bankruptcy case to the debtor for the purpose of restoring its/his/her solvency and repaying debts in accordance with a debt repayment schedule;

**"external administration"** meaning a proceeding applied in a bankruptcy case to the debtor for the purpose of restoring its/his/her solvency;

**"winding up"** meaning a proceeding applied in a bankruptcy case to the debtor deemed bankrupt for the purpose of commensurately meeting creditors' claims;

**"restructuring of debts of an individual"** is a recovery procedure applicable in a bankruptcy case to the individual for recovery of his solvency and repayment of debt to creditors in accordance with the debt restructuring schedule;

**"individual's asset sale"** is a recovery procedure applicable in a bankruptcy case to an individual acknowledged bankrupt for proportional satisfaction of creditors' claims;

**"amicable agreement"** meaning a procedure used in a bankruptcy case at any stage of hearing thereof for the purpose of terminating proceedings in the bankruptcy case by means of reaching agreement between the debtor and creditors;

**"representative of the founders (stockholders) of a debtor"** meaning the chairman of the board of directors (supervisory board) or another similar collective managerial body of a debtor or a person elected by the board of directors (supervisory board) or another similar collective managerial body of a debtor or a person elected by the founders (stockholders) of a debtor to represent their lawful interests when the proceedings applicable in a bankruptcy case are being implemented;

**"representative of the owner of the property of a debtor being an unitary enterprise"** meaning a person empowered by the owner of the property of a debtor being an unitary enterprise to represent its lawful interests when the proceedings applicable in a bankruptcy case are being implemented;

**"representative of a creditors' committee"** meaning a person empowered by a creditors' committee to participate in an arbitration litigation in a case of the bankruptcy of a debtor on behalf of the creditors' committee;

**"representative of a creditors' meeting"** meaning a person empowered by a meeting of creditors to participate in an

*[Unofficial translation from Russian]*

arbitration litigation in a case of the bankruptcy of a debtor on behalf of a meeting of creditors;

**"insolvency administrator"** meaning an individual of the Russian Federation being a member of a self-regulating organisation of qualified receivers;

**"an interim receiver"** meaning an qualified receiver confirmed by a commercial court for the purpose of supervision in accordance with the present Federal Law;

**"an administrative receiver"** meaning an qualified receiver confirmed by a commercial court to carry out financial rehabilitation in accordance with the present Federal Law;

**"a receiver"** meaning an qualified receiver confirmed by a commercial court to carry out external administration and execute the other powers established by the present Federal Law;

**"a winding-up (bankruptcy) receiver"** meaning an qualified receiver confirmed by a commercial court to carry out a winding-up proceeding and execute the other powers established by the present Federal Law, or Deposit Insurance Agency (hereinafter - the Agency) carrying out the cited powers, where it is established by this Federal Law;

**"financial administrator"** is a insolvency practitioner approved by the commercial court for participation in bankruptcy case of an individual;

**"moratorium"** meaning a debtor's suspending the repayment of money liabilities and of the compulsory payments;

**"representative of a debtor's employees"** meaning a person empowered by the employees, former employees of a debtor to represent their lawful interest when the proceedings applicable in a bankruptcy case are being implemented;

**"self-regulating organisation of insolvency administrators" (hereinafter also referred to as "self-regulating organisation")** meaning a membership-based not-for-profit organisation formed by individuals of the Russian Federation, about which information is included in the uniform state register of self-regulating organisations of qualified receivers and which has the regulation and support of qualified receivers' activities as its goals;

**"national association of self-regulating organisation of qualified receivers" (hereinafter also referred to as "national association of self-regulating organisations")** meaning a membership-based not-for-profit organisation formed by self-regulating organisations which has as its members more than 50 per cent of all the self-regulating organisations about which information is included in the uniform state register of self-regulating organisations of qualified receivers and which has the goal of shaping up a coordinated position of qualified receivers on issues of regulation of the activities they are pursuing;

**"the person controlling a debtor"** means the person which enjoys or have enjoyed within less than three years before acceptance by a commercial court of the application for declaring the debtor bankrupt the right to give directions to be followed by the debtor without fail or the ability by virtue of a kinship or relation in law with the debtor, official position or to determine in some other way the debtor's actions, including by way of coercion of the debtor's head or members of its managerial bodies or by way of exerting in some other way the determining influence upon the debtor's head or members of managerial bodies thereof (in particular, as persons controlling a debtor may be recognized members of the liquidation commission, the person which by virtue of the authority based on a power of attorney, a regulatory legal act or a special power could make deals on behalf of the debtor, the person entitled to dispose of fifty and more per cent of voting stocks of a joint stock company or over half of shares in the authorised capital of a limited (double) liability company, or the head of the debtor);

**"harm caused to creditors' property rights"** means the reduction of the cost or rate of the debtor's property and/or the increase of the extent of property claims towards the debtor, as well as other effects of the deals or different actions relevant in law, or omission of such actions, which are made by the debtor causing the full or partial loss by creditors of the opportunity to have their claims in respect of the debtor's obligations satisfied on account of the property thereof;

**"property's insufficiency"** means the excess of the rate of the debtor's pecuniary obligations and of the duties to make obligatory payments over the cost of the debtor's property (assets);

**"inability to pay"** means termination of the exercise by the debtor of a part of pecuniary obligations or duties to make obligatory payments caused by insufficiency of monetary assets thereof. With this, insufficiency is presumed, if not proved otherwise.

**"federal standards"** - federal standards of professional work of insolvency administrators and federal standards of activity of the self-regulating organisations of the insolvency administrators, worked out by the national association of the self-regulating organisations of the insolvency administrators, authorised by the regulating body according to the present Federal law and which shall be obligatory for implementation by the insolvency administrator and self-regulating organisations of insolvency administrators.

**Article 3.** Signs of Bankruptcy of a Legal Entity

**1.** Abrogated from October 1, 2015.

**2.** A legal person shall be deemed incapable of meeting the claims of creditors related to monetary obligations, on paying severance benefits and/or labour wages of the persons who have worked or are working under a labour contract and/or to execute the duty of making mandatory payments if the person does not discharge the obligations and/or duties within three months after their due date.

**3.** The provision envisaged by Item 2 of this Article shall be applied, unless otherwise established by this Federal Law.

**Article 4.** The Composition and Amount of Monetary Obligations, Claims for Paying Severance Benefits and/or for Paying Labour Wages to the Persons Who Are Working or Have Worked under a Labour Contract and of Mandatory Payments

**1.** The composition and amount of monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments shall be determined as of the date of filing an application with a commercial court for declaring a debtor bankrupt, except as otherwise established by the present Federal Law.

The composition and amount of the monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments which occurred before the acceptance by a commercial court of an application for declaring a debtor bankrupt and which were announced after the acceptance of such application by the commercial court shall be defined as of the date of commencement of the first proceeding used in the bankruptcy case.

Paragraph 3 is abrogated.

The composition of monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments denominated in a foreign currency shall be determined in roubles at the exchange rate set by the Central Bank of the Russian Federation as of the date of institution of each proceeding applicable in a bankruptcy case and following the due date of a specific obligation.

For the purposes of participation in a bankruptcy case account shall be taken of creditors' claims for the money liabilities, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and for the compulsory payments for which due date has not yet been reached as of the date of commencement of supervision.

**2.** The following shall be taken into account to determine the availability of evidence of the bankruptcy of a debtor:

the amount of monetary obligations, in particular the amount of debt for delivered goods, completed works and provided services, loan amounts with account taken of the interest the debtor has to pay, the amount of a debt occurring as the result of profit without ground, and the amount of a debt occurring as the result of damaging the property of creditors, except for obligations to the individuals to whom the debtor is liable for inflicted harm to life or health, obligation to pay out compensation in excess of the compensation for harm, obligation to pay out royalties to the authors of the results of intellectual activity and also obligations to the debtor's promoters (stockholders) ensuing from such a participation;

a mandatory payment amount without taking into account fines (penalties) and other financial sanctions established by the legislation of the Russian Federation.

The following, as subject to application for a default on or improper performance of an obligation: forfeit money (fines, penalties), interest for payment deferment, losses in the form of loss of profit subject to compensation for default on, or the improper performance of an obligation and also other property and/or financial sanctions, in particular, for a breach of the duty to make mandatory payments, shall not be taken into account in the assessment of availability of evidence of the bankruptcy of a debtor.

**3.** The amount of monetary obligations or mandatory payments shall be deemed established if it is determined by a court in the manner envisaged by the present Federal Law.

**4.** In cases when the debtor contests the claims of creditors the amount of monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract or mandatory payments shall be determined by a commercial court in the manner envisaged by the present Federal Law.

**5.** The claims of creditors relating to obligations not being monetary obligations may be presented to a court and they shall be examined by the court, or commercial court in the manner set out in the procedural legislation.

**Article 4.1.** The Specifics of Estimating the Amount of Pecuniary Obligations Resulting from Financial Agreements

**1.** Obligations resulting from agreements made under the terms and conditions of a general agreement (single agreement) that corresponds to the model terms and conditions of the agreements provided for by Article 51.5 of the Federal Law on the Securities Market, and/or the agreements made under the terms and conditions of the organised trading rules and/or

4

*[Unofficial translation from Russian]*

clearing rules (hereinafter referred to as financial agreements) shall be terminated in the procedure provided for by the cited general agreement (single agreement), and/or the organized trading rules, and/or clearing rules. In the event of the cited termination of obligations, a pecuniary obligation (pecuniary obligations) shall arise whose amount (amounts) shall be estimated in the procedure provided for by the general agreement, and/or the organized trading rules, and/or the clearing rules.

**2.** The rules of Item 1 of this article shall apply in respect of financial agreements made before the date of appointment of the provisional administration or before the date of adoption by a commercial court of the decision on initiation of one of the bankruptcy proceedings or before the date of withdrawal of the licence for making bank operations, depending on what date is the earliest.

**3.** Where financial agreements are made under the terms and conditions of a general agreement (single agreement), it is necessary for applying the rules of Item 1 of this article to satisfy the following requirements in addition to those of Item 2 of this article:

1) one of the parties to an agreement (beneficiary under an agreement) is:

a Russian credit institution or professional securities market participant;

the Bank of Russia;

a foreign legal entity entitled in compliance with the personal law thereof to exercise banking activities or professional activities in the securities market and having the place of its establishment in the states cited in Subitems 1 and 2 of Item 2 of Article 51.1 of the Federal Law on the Securities Market;

the central bank of the foreign state cited in Subitems 1 and 2 of Item 2 of Article 51.1 of the Federal Law on the Securities Market;

an international financial organization;

other Russian legal entity;

the Russian Federation, constituent entities of the Russian Federation, municipal entities;

owners of investment shares of a unit investment fund (when they are beneficiaries under a financial agreement made by the management company in the interests of the unit investment fund);

the foreign state, the constituent entity of a foreign federative state, the administrative-territorial entity of a foreign state which are cited in Subitems 1 and 2 of Item 2 of Article 51.1 of the Federal Law on the Securities Market;

other foreign legal entity having the place of its establishment in the states cited in Subitems 1 and 2 of Item 2 of Article 51.1 of the Federal Law on the Securities Market.

With this, the second party to a financial agreement must be the person provided for by Paragraphs Two-Six of this subitem;

2) an entry on making a general agreement (single agreement) is made in the register of agreements which is kept by a repository in the procedure established by Article 15.8 of the Federal Law on the Securities Market;

3) a general agreement (single agreement) provides for a procedure for termination of obligations with initiation of bankruptcy proceedings by one of the parties to the general agreement (single agreement) and for estimating the amount of the net obligation - the pecuniary obligation arising in connection with such termination stipulating that:

obligations shall be terminated under all the agreements made in compliance with the general agreement (single agreement);

a general agreement (single agreement) contains the procedure for termination of obligations in connection with initiation of bankruptcy proceedings by one of the parties to the general agreement (single agreement) and for estimating the amount of the net obligation - the pecuniary obligation arising in connection with such termination that satisfies the requirements of Subitem 2 of Item 3 of Article 51.5 of the Federal Law on the Securities Market;

the net obligation shall be estimated in respect of all the obligations to be terminated and shall not include compensation for losses in the form of lost earnings and recovery of forfeits (fines, penalties).

**4.** If financial agreements are made under the terms of organized trade and/or clearing rules, then for applying the rules of Item 1 of this article in addition to the requirements of Item 2 of this article the cited rules must contain a procedure for termination of obligations in connection with bankruptcy and for estimating the amount of the net-obligation that satisfies the requirements of Subitem 6.1 of Item 2 of Article 4 of the Federal Law on Clearing and Clearing Activity

**5.** The provisions of this article shall not apply to the obligations involved in paying a remuneration to a clearing organization and to the organizations cited in Items 4 - 7 of Part 2 of Article 19 of the Federal Law on Clearing and Clearing

*[Unofficial translation from Russian]*

Activity resulting from the rules for organized trade and/or from clearing rules.

**6.** Provisions of this Article shall not be applied to the relations regulated by paragraph 7 of Chapter IX and Chapter X of this Federal Law.

**Article 5.** Current Payments

**1.** For the purposes of the present Federal Law "current payments" means the monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments that have occurred after date of the acceptance of an application for declaring a debtor bankrupt, unless otherwise established by this Federal Law.

The creditors' claims that have occurred after the commencement of proceedings in a bankruptcy case in respect of payment for goods delivered, services provided and works completed are deemed current.

**2.** Creditors' claims for current payments shall not be included in the register of creditors' claims. Current payment creditors shall not be deemed persons being party to the bankruptcy case when appropriate proceedings applicable in a bankruptcy case are carried out.

**3.** During the procedures applicable in a bankruptcy case, the claims of current payment creditors shall be met in the manner established by the present Federal Law.

**4.** Current-payment creditors are entitled to take appeal from actions or omissions of the qualified receiver to the commercial court that is considering the bankruptcy case if such actions or omissions infringe on their rights and lawful interests.

**Article 6.** Hearing Bankruptcy Cases

**1.** Bankruptcy cases shall be heard by a commercial court.

**2.** Unless otherwise envisaged by this Federal Law, proceedings on a bankruptcy case can be initiated by the commercial court on condition that the claims to the debtor that is a legal entity are not less than 300 thousand roubles in total and to the debtor that is an individual - not less than the amount set by Item 2 of Article 213.3 of this Federal Law.

**3.** Paragraph 1 is abrogated.

Empowered bodies' demands for compulsory payments shall be taken into account for the purposes of commencing proceedings in a bankruptcy case if such demands are confirmed by decisions of a tax body or customs body on collection of amounts of money and other property of a debtor for its/his/her debts or by a court decision or commercial court decision that has become final.

**Article 7.** Right to File an Application with a Commercial Court

**1.** The debtor, bankruptcy creditor, and authorised bodies have a right to file an application for declaring a debtor bankrupt, as well as the debtor's employee or former employee having claims for paying severance benefits and/or for payment of labour wages.

**2.** A bankruptcy creditor, the debtor's employee or former employee, and the authorised body shall begin to have the right of applying to a commercial court in respect of money liabilities from the date on which a court decision, a commercial court decision or a court judgement on issuance of writs of execution for enforced execution of arbitral award on collection of amounts of money from the debtor becomes final.

A bankruptcy creditor being a credit organisation shall begin to have the right to apply to a commercial court from the date on which the debtor starts to have the signs of bankruptcy established by the present Federal Law.

In respect of mandatory payments the authorised body shall begin to have the right to apply to a commercial court upon the expiry of 30 days after the date of the decision mentioned in Paragraph 2 of Item 3 of Article 6 of the present Federal Law.

**2.1.** A bankruptcy creditor being a credit organisation shall begin to have the right to apply to a commercial court in the procedure established by Paragraph 2 of Item 2 of Article 7 of the present Federal Law, on the condition of a preliminary, at least 15 calendar days before the application to the commercial court, publication of a notice of intent to file an application for deeming a debtor bankrupt by means of including the debtor in the Unified Federal Register of Information on the Activities of Legal Entities.

**3.** A partial satisfaction of the claims of a bankruptcy creditor, the debtor's employee or former employee, or an authorised body shall not be deemed a ground for the commercial court to refuse accepting an application for declaring a debtor bankrupt if the amount of the claims that have not been met yet is less than the amount determined under Item 2 of Article 6 of the present Federal Law.

**Article 8.** Right to File a Debtor's Application with a Commercial Court

*[Unofficial translation from Russian]*

The debtor is entitled to file a debtor's application with a commercial court if a bankruptcy is anticipated when circumstances exist that provide clear evidence of the debtor's not being capable of performing monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and/or executing his/her/its duty to make mandatory payments when due.

**Article 9.** The Debtor's Obligation to File a Debtor's Application with a Commercial Court

**1.** The head of the debtor shall file a debtor's application with a commercial court if:

satisfaction of claims of one creditor or several creditors makes it impossible for the debtor to discharge monetary obligations or the duty of making mandatory payments and/or other payments in full to other creditors;

the debtor's body authorised under the debtor's constitutive documents to take the decision to liquidate the debtor has adopted the decision to file a debtor's application with a commercial court;

the body authorised by the owner of property of the debtor being a unitary enterprise has decided to file a debtor's application with a commercial court;

a levy of execution against the debtor's property is going to significantly aggravate or make impossible the pursuit of the debtor's economic activity;

the debtor has the signs of inability to pay and/or signs of insufficiency of property thereof;

there are arrears, which are not cancelled within more than three months because of insufficiency of monetary assets, in payment of severance benefits, labour wages and other payments which are due to an employee or former employee in the amount and in the procedure which are established in compliance with the labour legislation;

in other cases specified by the present Federal Law.

**2.** The debtor's application shall be sent to the commercial court where it is specified by Item 1 of the present article within the shortest time period possible but at the latest in one month after the date of emergence of relevant circumstances.

**3.** If in the course of its liquidation a legal entity started to show the signs of inability to pay and/or the signs of insufficiency of property thereof, the liquidation commission of the debtor is obliged to file the application with a commercial court within ten days from the time when any of the said signs are detected.

**Article 10.** Liabilities of the Debtor and Other Persons in a Bankruptcy Case

**1.** If the provisions of this Federal Law have been violated by the head of a debtor or a founder (stockholder) of a debtor, the owner of the property of a debtor being a unitary enterprise, members of the managerial bodies of a debtor, members of a liquidation commission (liquidator) or a debtor being an individual, the said persons shall compensate for the losses caused as a result of such violation.

**2.** Default on executing the duty to file a debtor's application with a commercial court in the cases and within the term established by Article 9 of this Federal Law shall cause the subsidiary liability of the persons in which this Federal Law has vested the duty to take a decision on filing a debtor's application with a commercial court and to file such application, in respect of the debtor's liabilities which have come into being after the expiry of the term envisaged by Items 2 and 3 of Article 9 of this Federal Law.

**3.** If a debtor's application has been filed by a debtor with a commercial court when the debtor is capable of meeting creditors' claims in full or the debtor has not taken measures for contesting ungrounded claims of a claimant the debtor shall have liability vis-a-vis the creditors for the losses caused by the institution of proceedings in a bankruptcy case or unsubstantiated recognition of the creditor's claims.

**4.** If a debtor has been deemed unable to pay (bankrupt) due to the actions and/or omission of the persons which control the debtor such persons shall bear subsidiary liability for the debtor's liabilities if the debtor's property is insufficient.

Until proven otherwise, it is assumed that the debtor is deemed unable to pay (bankrupt) due to the actions and/or omissions of the persons which control the debtor if one of the below circumstances exists:

the property rights of creditors have been harmed as a result of the conclusion of one or several transactions of the debtor by that person or for the benefit of that person or approval by that person, including the transactions specified in Articles 61.2 and 61.3 of this Federal Law;

as of the time when a ruling is turned out on instituting observation (or as of the time of appointing the provisional administration of a financial organisation) or a decision is taken on deeming the debtor bankrupt the accounting and/or reporting documents for which the duty to keep (draw up) and store them is established by the legislation of the Russian Federation are not available or do not contain the information on the facilities envisaged by the legislation of the Russian Federation which compulsorily prepared in keeping with the legislation of the Russian Federation or said information is distorted and accordingly

*[Unofficial translation from Russian]*

there is a substantial impediment for the realisation of the procedures applicable in a bankruptcy case, for instance for the formation and sale of the debtor's property available for collection.

claims of creditors of the third priority on the principal, created as a result of an offence, in respect of which a decision has entered into force prescribing bringing of the debtor or its officials that were or are its sole executive bodies, to criminal, administrative responsibility or responsibility for tax violations, including claims for payment of debt revealed as a result of proceedings on cases of such violations, exceed 50 percent of the total amount of claims of creditors of the third priority on the principal, included in the register of creditors' claims, as of the date of closure of the register of creditors' claims.

The provisions of Paragraph 4 of this item are applicable to the person in which the duty is vested to organise the bookkeeping and the storage of accounting records and/or accounting (financial) statements of a debtor.

Provisions of paragraph 5 of this Item shall be applied in respect of the person that is a sole executive body of the debtor during the period of commitment of the offence by the debtor or its sole executive body.

If a debtor has been deemed unable to pay (bankrupt) as a result of the actions and/or omissions of several persons which control the debtor such persons shall bear sole liability.

A person who controls a debtor and through whose actions and/or omissions the debtor has been deemed unable to pay (bankrupt) shall not bear subsidiary liability if the person proves that the debtor's being deemed unable to pay (bankrupt) is not through the person's fault. Such person shall also be deemed not guilty if the person has acted in good faith and reasonably in the interests of the debtor.

The amount of subsidiary liability of the person controlling the debtor is equal to the aggregate amount of the creditors' claims included in the register of creditors' claims and also have been declared after the closing of the register of creditors' claims and creditors' claims for current payments which have remained outstanding for the insufficiency of the debtor's property.

The amount of liability of the person controlling the debtor is subject to the relevant reduction if the person proves that the amount of actual harm caused to the property rights of creditors through the fault of that person is materially less than the amount of claims which have to be met at the expense of that person.

**5.** An application for holding the persons controlling a debtor accountable in line of subsidiary liability on the grounds envisaged by this Federal Law and also an application for compensation to the debtor for the losses inflicted thereon by the debtor's founders (stockholders) or the debtor's managerial bodies (members of its managerial bodies) on the grounds envisaged by the legislation of the Russian Federation shall be considered by a commercial court in case of the debtor's bankruptcy.

An application for holding the person controlling a debtor accountable in line of subsidiary liability may be filed in the course of winding-up proceedings by a bankruptcy receiver either on his own initiative or by decision of a meeting of creditors or creditors' committee or on the grounds envisaged by Items 2 and 4 of this article, it may also be filed by a bankruptcy creditor, a representative of the debtor's employees, the debtor's employee or former employee or the authorised body.

An application for compensation to a debtor for the losses inflicted thereon by its founders (stockholders) or its managerial bodies (members of its managerial bodies) may be filed in the course of winding-up proceeding or supervision by the debtor's bankruptcy receiver, receiver or founder (stockholder) or in the course of winding-up proceedings also by a bankruptcy creditor or the authorised body.

An application for holding a person controlling a debtor accountable in line of subsidiary liability on the grounds envisaged by Items 2 and 4 of this article may be filed within one year after the day on which the person that files that application learned or should have learned about the existence of the relevant grounds for subsidiary liability but not later than three years after the date on which the debtor was deemed bankrupt. If the reason for the lapsing of the period of limitation is justifiable it may be reinstated by a court.

An application for holding a person controlling a debtor accountable in line of subsidiary liability shall not be filed after the termination of the winding-up proceeding.

If as of the time of consideration of an application for holding accountable in line of subsidiary liability on the ground envisaged by Item 4 of this article the amount of liability cannot be appraised then the court, having established all other factors of importance, shall suspend the consideration of that application until accounts get settled with creditors or until the end of consideration of the creditors' claims which had been declared before the end of settlements of accounts with creditors.

Proceedings in the bankruptcy case shall not be terminated before a ruling is turned out by the commercial court in respect of claims for holding the persons controlling the debtor accountable. In the event of termination of procedural actions in the bankruptcy case the commercial court may suspend on its own initiative proceedings in the bankruptcy case until a ruling is turned out in respect of the claims for holding the said persons accountable. For the period of suspension of the bankruptcy case in accordance with this article no fixed sum of remuneration shall be paid to the qualified receiver with the debtor's funds.

8

*[Unofficial translation from Russian]*

**6.** The persons in respect of which applications have been filed for holding them accountable in line of subsidiary liability in accordance with this Federal Law and also in the form of compensating for the losses incurred by the debtor shall have the rights and responsibilities of parties to a bankruptcy case.

**7.** A ruling shall be turned out according to the results of consideration of the application for holding the persons controlling the debtor accountable in line of subsidiary liability or an application for holding the persons controlling the debtor and also the persons specified in Item 1 of this article accountable in the form of compensation for losses, this ruling being subject to appeal. The ruling on holding the said persons accountable in the line of subsidiary liability shall state the amount of their liabilities, and the ruling on collection of compensation for the losses incurred by the debtor, the amount of compensation for losses collected. A writ of execution shall be issued on the basis of the ruling for holding such persons accountable in line of subsidiary liability (collection of compensation for losses).

**8.** The amounts of money collected from the persons controlling the debtor which have been held accountable in line of subsidiary liability and also the compensation for losses collected shall be included in the debtor's property available for collection.

After the ruling becomes final the claim for holding the person controlling the debtor accountable in line of subsidiary liability shall be implemented according to the rules set out in Article 140 of this Federal Law.

**9.** The holding of the persons controlling the debtor accountable in line of subsidiary liability for the debtor's liabilities shall not obstruct the presentation of claims by the debtor's founders (stockholders) for compensation for losses by the bodies of the legal entity on the grounds envisaged by Item 3 of Article 53 of the Civil Code of the Russian Federation and the federal laws adopted in accordance with it, in as much as it concerns the portion not covered by the amount of subsidiary liability.

**10.** Information on filing of the application for bringing of persons controlling the debtor to a subsidiary liability or the application for bringing of persons controlling the debtor and the persons cited in Item 1 of this Article, to liability in the form of indemnification of losses, on court acts issued in respect of such applications and court acts for their review shall be included in the unified federal register of information on bankruptcy.

Notifications subjected to inclusion in the unified federal register of information on bankruptcy shall contain, in accordance with this Item, the following:

name (surname, first name and patronymic (if any)) of the person controlling the debtor, in respect of which the application is filed (for legal entities - Cyrillic and Latin letters can be used);

nationality of the controlling person (country of registration);

data identifying the controlling person (taxpayer identification number, primary state registration number - for legal entities, insurance number of individual personal account of the insured person in the system of compulsory medical insurance - for individuals), and for foreign persons - their equivalents in accordance with the country of individualship (registration);

amount of liability in accordance with the application (except for cases of impossibility of determining the amount of liability as of the date of filing of the application) or the court act.

**Article 11.** The Rights of Creditors and Authorised Bodies

**1.** The bankruptcy creditors, the debtor's employees or former employees and authorised bodies have a right to file an application for declaring a debtor bankrupt.

**2.** The executive governmental bodies and the organisations on which a right to collect mandatory payment arrears has been conferred under Russian law are entitled to attend court hearings dedicated to the examination of grounds for claims in respect of these payments and grounds for including these claims in the register of creditors' claims.

**Article 12.** The Meeting of Creditors

**1.** The following are deemed participants with voting rights in a meeting of creditors: the bankruptcy creditors and the empowered bodies whose claims have been included in the list of creditors' claims as of the date of the meeting of creditors. The following have the right to attend the meeting of creditors without voting rights: a representative of the debtor's employees, a representative of the debtor's founders (stockholders), a representative of the property of the debtor being an unitary enterprise, a representative of the self-regulating organisation in which the qualified receiver who is confirmed in the bankruptcy case is member and a representative of a control (supervision) body which are entitled to speak on the issues included in the agenda of the meeting of creditors.

If a single bankruptcy creditor or authorised body takes part in the bankruptcy case the decisions falling within the scope of powers of the meeting of creditors shall be made by such creditor or authorised body.

The arranging and holding of a meeting of creditors shall be done by the qualified receiver.

Bankruptcy creditors whose claims are secured by pledge of the debtor's property shall have the right of vote at

*[Unofficial translation from Russian]*

creditors' meetings:

in the course of supervision;

in the course of financial improvement and external management in case of refusal to realize the subject of pledge or issuance by a commercial court of a ruling on rejection of the application for realization of the subject of pledge in appropriate bankruptcy proceedings;

on the issue of selecting a qualified receiver or self-regulating organisation from among whose members the commercial court is to confirm a qualified receiver;

on the issue of filing a petition with the commercial court for removal of a qualified receiver;

on the issue of filing a petition with the commercial court for termination of winding-up proceedings and switch to supervision.

in the course of restructuring of debt of an individual;

in the course of sale of assets of an individual.

Bankruptcy creditors, as regards the claims secured by pledge of the debtor's property and in respect of which they do not enjoy the right of vote, are entitled to participate in a creditors' meeting without the right of vote, in particular to speak on the items on the agenda of a creditors' meeting.

**2.** The taking of decisions on the following issues is the prerogative of the meeting of creditors on:

the performance of financial rehabilitation, external administration and the modification of the term for the completion thereof, the filing of a relevant petition with the commercial court;

the confirmation and modification of an external administration plan;

the confirmation of a financial rehabilitation plan and a debt repayment schedule;

the confirmation of additional qualifications applicable to contenders for the position of administrative receiver, receiver or winding-up receiver;

the selection of an qualified receiver or the self-regulating organisation from the members of which an qualified receiver is confirmed by the commercial court;

the setting of the rate of, and the procedure for paying out, an additional fee for the qualified receiver;

the increasing the amount of the fixed sum of the fee of the qualified receiver;

the selection of a registrar from among the registrars accredited by a self-regulating organisation of qualified receiver;

the conclusion of an amicable agreement;

the filing of a petition with the commercial court for deeming a debtor bankrupt and for commencing winding up proceeding;

the setting up of a creditors' committee, the setting of the number of its members, the election of the creditor's committee members and the termination before due date the powers of the creditors' committee;

the putting the following within the scope of powers of the creditors' committee: the issues on which decisions according to the present Federal Law are taken by the meeting of creditors or by the creditors' committee, except for the issues which are within the exclusive cognisance of the meeting of creditors according to the present article;

the election of a representative of the meeting of creditors.

The issues which fall within the exclusive cognisance of the meeting of creditors according to the present Federal Law shall not be referred to other persons or bodies to be resolved by them.

**3.** At the meeting of creditors the bankruptcy creditor or authorised body shall have a number of votes according to the share of the amount of their claim to the sum total of claims relating to monetary obligations and mandatory payments included in the register of creditors' claims as of the date of the meeting of creditors in compliance with the present Federal Law.

Forfeit money (fines, penalties), interest for late payment that can be charged for default on or improper performance of an obligation, losses in the form of profit lost and also other property and/or financial sanctions, in particular, for a default on the duty to make mandatory payments, shall not be taken into account at the meeting of creditors for the purposes of determining the number of votes.

**4.** The meeting of creditors shall be competent if attended by the bankruptcy creditors and the authorised bodies

10

*[Unofficial translation from Russian]*

included in the register of creditors' claims which have more than half of the total number of votes of the bankruptcy creditors and the authorised bodies included in the register of creditors' claims. A meeting of creditors convened again shall be competent if attended by the bankruptcy creditors and the authorised bodies included in the register of creditors' claims which have more than 30 per cent of the total number of votes of the bankruptcy creditors and the authorised bodies included in the register of creditors' claims, on the condition that the bankruptcy creditors and the authorised bodies have been appropriately notified of the time and place of the meeting of creditors in keeping with the present Federal Law.

**5.** If no meeting of creditors has been held by an qualified receiver within the term set by Item 3 of Article 14 of the present Federal Law, a meeting of creditors may be held by the person or persons which demand convocation thereof.

**6.** By the decision of a meeting of creditors or an interim receiver the registrar holding the register of creditors' claims is entitled to exercise the following functions at the meeting of creditors:

verify the powers and register the persons attending the meeting of creditors;

ensure the observance of the established voting procedure;

count votes;

draw up minutes on the results of voting.

**7.** The minutes of a meeting of creditors shall be drawn up in duplicate, with one copy going to the commercial court within five days after the meeting of creditors, except if another term is set by the present Federal Law.

When a meeting of creditors is held in the manner specified in Item 5 of the present article the minutes of the meeting of creditors shall be drawn up in triplicate, with the first copy going to the commercial court, the second one to the qualified receiver within five days after the meeting of creditors. The third copy of the minutes of the meeting of creditors shall be kept by the person that held the meeting.

Copies of the following documents shall be attached to the minutes of a meeting of creditors:

a register of creditors' claims as of the date of the meeting of creditors;

ballot papers;

documents confirming the powers of the persons who attended the meeting;

the materials presented to the persons who attended the meeting for information and/or approval;

the documents deemed evidence of appropriate notice having been served to the bankruptcy creditors and the authorised bodies of the date and place of the meeting of creditors;

other documents, designated at the discretion of the qualified receiver or by the decision of the meeting of creditors.

The originals of said documents shall be kept by the qualified receiver or registrar until the completion of proceedings in a bankruptcy case, except if another term is set by the present Federal Law, they shall be shown upon the request of the commercial court or in other cases established by a federal law. The report containing data on the decisions adopted by a general meeting of creditors or data on declaring a meeting of creditors frustrated is subject to inclusion by the qualified receiver into the Comprehensive Federal Register of Data on Bankruptcy within five working days after the date of holding it or, in the event of holding a meeting of creditors by other persons, within three working days as from the date of receiving by the qualified receiver a record of the creditors' meeting.

The qualified receiver shall provide access to copies of the said documents to the persons deemed party to the bankruptcy case and also to a representative of the debtor's employees, a representative of the debtor's promoters (stockholders), a representative of the owner of property of the debtor being a unitary enterprise.

**Article 12.1.** A Meeting of the Debtor's Employees or Former Employees, the Election of a Representative of the Debtor's Employees

**1.** A meeting of the debtor's employees or former employees shall be organised and held by the qualified receiver.

A meeting of the debtor's employees or former employees shall be held at the latest five working days before the date of a creditors' meeting.

If it is impossible to hold a meeting of the debtor's or former employees at the location of the debtor or of the debtor's managerial bodies, the place of holding such meeting shall be determined by the qualified receiver.

By decision of the qualified receiver a meeting of the debtor's employees or former employees may be held in the form of an absentee vote.

**2.** For the purposes of this Federal Law, as a proper notification of the debtor's employee or former employee shall be

*[Unofficial translation from Russian]*

deemed forwarding thereto by mail an annoucement about holding the meeting of the debtor's employees or former employees at the latest 10 days before the date of holding it or in some other way ensuring the receipt of such announcement at least five working days before the date of holding the meeting of the debtor's employees or former employees, as well as publication of such message in the procedure established by Article 28 of this Federal Law.

Where the number of the debtor's employees or former employees exceeds 100, as a proper notification thereof shall be deemed publication of an announcement about holding a meeting of the debtor's employees or former employees in the procedure established by Article 28 of this Federal Law.

If it is impossible to notify personally the debtor's employee or former employee at the place of their permanent or predominant place of location or if there are other circumstances making impossible such notification of the cited persons, as a proper notification of the cited persons shall be deemed publication of data on holding a meeting of the debtor's employees or former employees in the procedure established by Article 28 of this Federal Law.

**3.** The following shall be cited in an announcement of holding a meeting of a debtor's employees or former employees:

1) form of holding the meeting of a debtor's employees or former employees (meeting or absentee vote);

2) date, place and time of holding the meeting of the debtor's employees or former employees, if such meeting is held in the form of an absentee vote, the end date of acceptance of ballot-papers for voting and postal address whereto the completed ballot-papers have to be sent;

3) agenda of the meeting of the debtor's employees and former employees.

**4.** When holding a meeting of the debtor's employees or former employees in the form of an absentee vote, an announcement about holding the meeting of the debtor's employees or former employees included into the Unified Federal Register of Data on Bankruptcy shall have ballot-papers attached thereto.

**5.** If a meeting of the debtor's employees or former employees is not held by the qualified receiver at the time provided for by this article, a meeting of the debtor employees or former employees may be held by the person or persons demanding to call it.

**6.** A meeting of the debtor's employees or former employees shall be deemed legally competent, if it is attended by more than half of the debtor's employees or former employees who are known as of the date of calling such meeting.

**7.** Decisions a meeting of the debtor's employees or former employees shall be adopted by a majority vote of the number of the debtor's employees or former employees attending such meeting or, in the event of holding it by absentee vote, by a majority vote of the total number of the debtor's employees or former employees.

**8.** A record of a meeting of the debtor's employees or former employees shall be drawn up in two copies, one of them to be forwarded to a commercial court at thelatest in three days as from the date of holding such meeting.

In the event of holding a meeting of the debtor's employees or former employees in the procedure established by Items 3 and 4 of this article, a record of such meeting shall be drawn up in three copies, one of them to be forwarded to a commercial court while the second one shall be forwarded to the qualified receiver at the latest in three days as from the date of holding such meeting. The third copy of a record of a meeting of the debtor's employees or former employees shall be kept by the person holding such meeting.

A representative of the debtor's employees shall exercise the authority thereof on the basis of the record cited in this item.

A report containing data on the decisions adopted by a meeting of the debtor's employees or former employees is subject to inclusion by the qualified receiver into the Unified Federal Register of Data on Bankruptcy within five working days as from the date of holding such meeting or, in the vent of holding it by other persons, within three working days as from the date of receiving by the qualified receiver a record of the meeting of the debtor's employees or former employees. This report along with the data cited in Item 8 of Article 28 of this Federal Law shall contain data on the number of the debtor's employees or former employees attending the meeting of the debtor's employees and on the amount of claims of the second-turn creditors.

**9.** A meeting of the debtor's employees or former employees is entitled at any time to elect a new representative of the debtor's employees instead of the representative of the debtor's employees previously elected by a meeting of the debtor's employees or former employees.

For the purpose of electing a new representative of the debtor's employees, at least half of the number of the debtor's employees or former employees shall file an appropriate application with the qualified receiver.

A representative of the debtor's employees is entitled to unilaterally reject the exercise of the authority of a representative of the debtor's representative, having forwarded an appropriate application to the qualified receiver at least two months before the date of termination of the cited authority.

*[Unofficial translation from Russian]*

For the purpose of election of a new representative of the debtor's employees in the instances cited in this item the qualified receiver at the latest within 20 working days as from date of receiving the application cited in this item shall inform the representative of the debtor's employees on termination of the authority thereof, as well as shall organise and hold a meeting of the debtor's employees or former employees for the purpose of election of a representative of the debtor's employees in the procedure established by this article.

**10.** A representative of the debtor's employees while exercising the rights and discharging the duties thereof provided for by federal laws shall act in the interests of all the debtor's employees and former employees.

**11.** The services of a representative of the debtor's employees shall be be paid on account of the debtor. On application of the qualified receiver the rate of payment for the services of a representative shall be established by a commercial court.

**Article 13.** Notification of a Meeting of Creditors

**1.** For the purposes of the present Federal Law the following shall be deemed an appropriate notification: the sending of a notice to a bankruptcy creditor authorised body and also another person entitled under the present Federal Law to attend the meeting of creditors on the holding of a meeting of creditors by post at least 14 days prior to the date of the meeting of creditors or in another way ensuring the receipt of the notice at least five working days prior to the date of the meeting of creditors.

**2.** If the number of bankruptcy creditors and authorised bodies exceed 500 the following shall be deemed appropriate notice: an announcement of a meeting of creditors in the manner specified in Article 28 of the present Federal Law.

If the details required for a personal notification of a bankruptcy creditor at his permanent or predominant residence or at the location of a person entitled under the present Federal Law to attend the meeting of creditors cannot be found out or if other circumstances exist making it impossible to so notify the said persons the following shall be deemed an appropriate notice to such persons: the publication of information of a meeting of creditors in the manner set out in Article 28 of the present Federal Law.

**3.** The announcement of a forthcoming meeting of creditors shall contain the following:

the name and location of the debtor and the debtor's address;

the date, time and place of the meeting of creditors;

the agenda of the meeting of creditors;

the procedure for getting familiarised with the materials to be examined by the meeting of creditors;

the procedure for registering the persons who attend the meeting.

The person that holds a meeting of creditors shall provide the opportunity for reading the materials presented to the participants in the meeting of creditors for getting acquainted with and/or for being endorsed, at least five working days before the date of the meeting of creditors, except as another term is set by the present Federal Law.

**4.** A report on holding a meeting of creditors is subject to inclusion by the qualified receiver into the Comprehensive Federal Register of Data on Bankruptcy in the procedure established by Article 28 of this Federal Law at least fourteen days before the date of holding the creditors' meeting.

**Article 14.** The Procedure for Convening a Meeting of Creditors

**1.** The meeting of creditors shall be convened on the initiative of:

the qualified receiver;

the creditors' committee;

bankruptcy creditors and/or authorised bodies whose rights of claim make up at least ten per cent of the sum total of the creditors' claims relating to monetary obligations and mandatory payments included in the register of creditors' claims;

one third of the total number of bankruptcy creditors and authorised bodies.

**2.** The demand to hold a meeting of creditors shall contain the issues subject to inclusion in the agenda of the meeting of creditors.

The qualified receiver is not entitled to modify the wording of issues on the agenda of a meeting of creditors convened at the demand of the creditors' committee, bankruptcy creditors and/or authorised bodies.

**3.** The meeting of creditors shall be held by the qualified receiver at the demand of the creditors' committee, bankruptcy creditors and/or authorised bodies within three days after the date of receipt by the qualified receiver of the demand of the creditors' committee, bankruptcy creditors and/or authorised bodies for the holding of a meeting of creditors, except if another term is set by the present Federal Law.

*[Unofficial translation from Russian]*

**4.** The meeting of creditors shall be held at the place where the debtor or the debtor's managerial bodies are located, except as otherwise established by the meeting of creditors.

If the meeting of creditors cannot be held at the place where the debtor or the debtor's managerial bodies are located the qualified receiver shall designate a place for the meeting to be held at.

The date, time and place of a meeting of creditors shall not impede the attendance at the meeting of creditors or their representatives and other persons entitled to attend the meeting of creditors in compliance with the present Federal Law.

**Article 15.** The Procedure for a Meeting of Creditors to Adopt Decisions

**1.** The decisions of a meeting of creditors on the issues put up for voting shall be adopted by a majority of votes of the bankruptcy creditors and authorised bodies present at the meeting of creditors, except as otherwise envisaged by the present Federal Law.

**2.** At the meeting of creditors the following decisions shall be adopted by the majority of the total number of votes of bankruptcy creditors and authorised bodies, whose requirements are included in the register of creditors:

on the formation of a creditors' committee, the determination of the composition and powers of the creditors' committee, the election of members of the committee;

on the termination before due time of the powers of the creditors' committee and the election of a new composition of the creditors' committee;

on the institution of financial rehabilitation, a change in the term thereof and the filing of a relevant petition with a commercial court;

on the endorsement of an debt repayment schedule;

on the institution and prolongation of external administration and the filing of a relevant petition with a commercial court;

on the endorsement and modification of a external administration plan;

on the filing of a petition with a commercial court for declaring the debtor bankrupt and commencing winding-up procedure;

on the selection of a qualified receiver or a self-regulating organisation from among whose members a qualified receiver is going to be approved by the commercial court;

on the filing of a petition with a commercial court for dismissal of a qualified receiver;

on the inclusion of additional issues in the agenda of the meeting of creditors and on the decisions adopted on such issues;

on the conclusion of an amicable agreement in the manner and on the terms established by Item 2 of Article 150 of the present Federal Law.

**3.** Abrogated.

**4.** If a decision of the meeting of creditors violates the rights and legal interests of the persons being party to the bankruptcy case, the arbitration process on the bankruptcy case, of third persons or if it has been adopted in breach of the limits of competence of the meeting of creditors established by the present Federal Law, such decision may be declared invalid by the commercial court examining the bankruptcy case if the persons taking part in the bankruptcy case, in the arbitration process on the bankruptcy case or third persons file an application to this effect.

Within twenty days after the date of the decision, the application for declaring a decision of the meeting of creditors invalid may be filed by a person which has been appropriately notified of the holding of the meeting of creditors which has adopted such a decision.

The application for declaring a decision of the meeting of creditors invalid may be filed by a person which has not been appropriately notified of the holding of the meeting of creditors which has adopted such a decision, within twenty days after the date when such a person learned or should have learned of the decisions adopted by the meeting of creditors, within six months after the date on which a decision was adopted by the meeting of creditors.

**5.** The ruling of a commercial court that declares invalid a decision of a meeting of creditors or refuses to declare invalid a decision of a meeting of creditors shall be subject to immediate implementation and it shall be subject to appeal in the manner set out in Item 3 of Article 61 of the present Federal Law.

**Article 16.** The Register of Creditors' Claims

14

*[Unofficial translation from Russian]*

**1.** The register of creditors' claims shall be kept by the qualified receiver or registrar.

The following persons shall keep a register of creditors' claims in the capacity of a registrar: professional participants in the securities market pursuing the activity of keeping a register of the owners of securities.

The registrar shall pursue its activity in accordance with the federal standards concerning the content of, and the procedure for keeping, a register of creditors' claims.

**2.** The decision to invite a registrar to keep a register of creditors' claims and to select a specific registrar for this purpose shall be made by the meeting of creditors. Until the date of the first meeting of creditors the interim receiver shall be responsible for taking a decision to invite a registrar to keep a register of creditors' claims and to select a specific registrar for this purpose.

The decision of the meeting of creditors to choose a specific registrar shall contain the rate of remuneration payable for the services of the registrar that has been agreed upon with the registrar.

If the number of the bankruptcy creditors whose claims have been included in the register of creditors' claims exceeds 500 a registrar shall be recruited without fail.

**3.** Within five days after the date when the meeting of creditors choose a registrar, the qualified receiver shall conclude an appropriate contract with the registrar.

A contract may be concluded with the registrar only if the registrar holds a liability insurance policy against losses to persons being party to a bankruptcy case.

Information on the registrar shall be provided by the qualified receiver to the commercial court within five days after the conclusion of the contract.

Payment for the services provided by the registrar shall be effected at the expense of the debtor's funds, except if another source of payment for the registrar's services is designated by the meeting of creditors.

**4.** The registrar shall compensate for the losses inflicted by a default on or improper performance of the duties envisaged by the present Federal Law.

If liability for keeping a register of creditors' claims is vested in a registrar, the qualified receiver shall neither be accountable for the correctness of keeping the register of creditors' claims nor for the committal of other actions (omission) by the registrar causing or capable of causing a loss to the debtor and the debtor's creditors.

**5.** Creditors' claims in a register of creditors' claims shall be recorded in Russian currency. Foreign-currency denominated creditors' claims shall be recorded in a register of creditors' claims in the manner established by Article 4 of the present Federal Law.

**6.** The claims of creditors shall be included in a register of creditors' claims and deleted from it by the qualified receiver or by the registrar exclusively on the basis of court decisions which have become final and which establish their composition and amount, except as otherwise envisaged by the present item.

The claims for severance benefits and/or labour wages of the persons who are working or have been working under a labour contract shall be included into a register of creditors' claims by the qualified receiver or registrar on the proposal of the qualified receiver or, should these claims be disputed, on the basis of the judicial act establishing the composition and amount of these claims.

Claims for severance benefits and/or remuneration for the labour of persons working or have been working under labour contract shall be deleted from the register of creditors' claims by the qualified receiver or by the registrar exclusively on the basis of court decisions which have become final.

If a register of creditors' claims is kept by a registrar the court decisions setting the amount of creditors' claims shall be sent by the commercial court to the registrar for the purpose of including relevant claims in the register of creditors' claims.

**7.** The register of creditors' claims shall contain information on each creditor, the amount of his claims to the debtor, the priority ranking of each creditor's claim and also the grounds for the emergence of creditors' claims.

While announcing his claim the creditor shall provide information about himself/itself, in particular, full name, passport details (for a natural person), name, location (for a legal person) and also bank account details (if any).

If in the debtor's bankruptcy case the interests of creditors which are bond owners are represented, a representative of the bond owners defined in compliance with the legislation of the Russian Federation on securities, in the register of creditors' claims shall be cited data on the total amount of the cited creditors' claims and data on such representatives of the bond owners. In so doing, data on each creditor being the owner of bonds shall not be cited.

**7.1.** Claims of bankruptcy creditors concerning the claims secured by pledge of the debtor's property shall be recorded

*[Unofficial translation from Russian]*

in the register of creditors' claims within the composition of claims of third-priority creditors.

**8.** A person whose claim has been included in a register of creditors claims shall timely notify the qualified receiver or registrar of the changes occurring in the information specified in Item 7 of the present article.

In case of non-provision of such information or the late provision thereof the qualified receiver or registrar and the debtor shall not be liable for the losses inflicted in connection thereto.

**9.** At the request of a creditor or an authorised representative thereof the qualified receiver or registrar shall within five business days after the receipt of such a request send an abstract from the register of creditors' claims to this creditor or the authorised representative thereof on the amount, composition and priority ranking of his/its claims, and if the amount of debt owing the creditor makes up at least one per cent of the total accounts payable shall send a copy of the register of creditors' claims attested to by the qualified receiver to this creditor or the creditor's authorised representative.

The expenses incurred through the preparation and sending such an abstract and a copy of the register shall be borne by the creditor.

**10.** Disagreements arising between bankruptcy creditors, authorised bodies and the qualified receiver concerning the composition, amount and priority ranking of creditors' claims related to monetary obligations or mandatory payments shall be examined by the commercial court in the manner envisaged by the present Federal Law.

Disagreements concerning the creditors' or authorised bodies' claims confirmed by a court decision that has become final in as much as it concerns their composition and amount are not subject to examination by a commercial court, and applications concerning such disagreements shall be returned without being considered, except for disagreements relating to performance under court decisions or to review of court decisions.

**11.** Disagreements arising between a representative of a debtor's employees and the qualified receiver and concerning the priority ranking, composition and amount of claims for severance benefits and remuneration for the labour of persons working under labour contracts shall be examined by the commercial court in the manner envisaged by the present Federal Law.

Labour disputes between a debtor and his/her/its employee shall be examined in the manner set out by the labour legislation and the civil procedural legislation.

**Article 17.** The Creditors' Committee

**1.** The creditors' committee shall represent the legal interests of bankruptcy creditors and authorised bodies and it shall monitor the activities of the qualified receiver and also exercise the other powers conferred thereon by the meeting of creditors, in the manner set out by the present Federal Law.

**2.** If the number of bankruptcy creditors and authorised bodies is below 50 the meeting of creditors need not adopt a decision to form a creditors' committee.

**3.** To perform the functions vested therein the creditors' committee shall be entitled to:

demand that the qualified receiver or the head of the debtor provide information on the debtor's financial state and on the progress of the proceedings applicable in a bankruptcy case;

appeal the actions of the qualified receiver with a commercial court;

make a decision to convene a meeting of creditors;

make a decision to issue a recommendation to the meeting of creditors for dismissal of the qualified receiver from performance by him/her of his/her duties;

make other decisions and commit other actions in the event such powers are conferred thereon by the meeting of creditors in the manner established by the present Federal Law.

**4.** The composition of the creditors' committee in terms of numbers shall be determined by the meeting of creditors but it shall not be below three persons or above 11 persons.

**5.** When issues are decided upon at a meeting of the creditors' committee each committee member shall have one vote.

The transfer of a right to vote from a member of the creditors' committee to another person is prohibited.

**6.** The decisions of the creditors' committee shall be adopted by the majority vote of the total number of members of the creditors' committee.

**7.** To exercise its powers the creditors' committee shall be entitled to elect its representative. Such a decision shall be made in the form of minutes of a meeting of the creditors' committee.

**8.** The rules of deliberations of a creditors' committee shall be determined by the creditors' committee.

*[Unofficial translation from Russian]*

**Article 18.** The Election of a Creditors' Committee

**1.** The creditors' committee shall be elected by a meeting of creditors from among natural persons on the proposal of bankruptcy creditors and authorised bodies for the term of supervision, financial rehabilitation, external administration and winding up.

Civil servants and municipal employees may be elected as members of a creditors' committee on the proposal of authorised bodies.

By the decision of the meeting of creditors the powers of the creditors' committee may be terminated before due time.

**2.** The election of a creditors' committee shall be done by cumulative voting.

When a creditors' committee is being elected each bankruptcy creditor and each authorised body shall have the number of votes equal to the amount of his/her/its claim in roubles times the number of members of the creditors' committee. A bankruptcy creditor and an authorised body shall be entitled to cast the votes she/he/it has for one candidate or spread them among several candidates to the position of a member of the creditors' committee.

The candidates who have the largest numbers of votes shall be deemed elected to the creditors' committee.

**3.** The members of a creditors' committee shall elect a chairman of the creditors' committee from among themselves.

**4.** The minutes of a meeting of the creditors' committee shall be signed by the chairman of the creditors' committee, except as otherwise established by the rules of deliberations of the creditors' committee.

**5.** The minutes of the a meeting of a creditors' committee shall be drawn up in duplicate, the first of the copies going to the commercial court within five days after the date of the meeting of the creditors' committee, and the second one being stored by the person that has conducted the meeting of the creditors' committee.

If the meeting of the creditors' committee was conducted by a person other than a qualified receiver an additional (third) copy of the minutes of the meeting of the creditors' committee shall be prepared, which shall be sent to the qualified receiver.

Copies of the following shall be attached to the minutes of the meeting of the creditors' committee:

ballot papers (unless another form of decision-taking is envisaged by the standing order);

the materials which have been presented to the members of the creditors' committee for being read and/or endorsed;

documents serving as evidence of the fact that the members of the creditors' committee have been properly notified of the date and place of the meeting of creditors;

other documents at the discretion of the person that conducted the meeting of the creditors' committee, or according to a decision of the creditors' committee.

The aforesaid original documents shall be stored by the person that conducted the meeting of the creditors' committee until the completion of proceedings in the bankruptcy case, except as another term is set by the present Federal Law, and be provided on the demand of the commercial courts or in the other cases envisaged by the present Federal Law.

The person that conducted the meeting of the creditors' committee shall provide access to the copies of said documents for the persons taking part in the bankruptcy case, and also to a representative of the debtor's employees, a representative of the debtor's promoters (stockholders), a representative of the owner of the property of the debtor being an unitary enterprise, a representative of the self-regulating organisation in which the qualified receiver confirmed in the bankruptcy case is a member, and a representative of the body in charge of control (supervision). Expenses towards the preparation and sending of such copies shall be borne by the person that demands that they be provided.

Information on the decisions taken at a meeting of the creditors' committee are subject to inclusion by the qualified receiver in the Unified Federal Register of Information on Bankruptcy within three working days after the date on which he receives the minutes of the meeting of the creditors' committee.

**Article 18.1.** Specifics of the Legal Status of Creditors Whose Claims Are Secured by Pledge of Debtor's Property

**1.** As from the date of the introduction of supervision, levying execution upon the pledged property, including out of court, is inadmissible.

**2.** A bankruptcy creditor, as regards the obligations secured by pledge of the debtor's property, is entitled in the course of financial improvement and external management to levy execution against the debtor's pledged property in the following instances:

levying execution against the debtor's pledged property will not lead to the impossibility of restoration of the ability thereof to pay;

*[Unofficial translation from Russian]*

there is the risk of damage of the debtor's pledged property, this resulting in a major reduction of its value, as well as the risk of such property's destruction or loss.

The issue of possibility of levying execution against the debtor's pledged property shall be solved by the commercial court trying a bankruptcy case on the basis of an application of the bankruptcy creditor whose claims are secured by such property's pledge.

The burden of proving the impossibility of restoration of the debtor's ability to pay, should execution be levied against the pledged property, shall be imposed on the debtor.

**2.1.** In the event of levying execution against pledged rights under an agreement of bank account, the claims of the bankruptcy creditor in respect of the obligation secured by a pledge of rights under the agreement of bank account shall be satisfied in an amount not exceeding the amount of the monetary assets kept on the pledged account as of the date of filing the bankruptcy creditor's application provided for by Item 2 of this article but not exceeding the amount of the claim secured by pledge under the agreement of bank account by way of writing off by a bank monetary assets from this debtor's account and their issuance to the relevant bankruptcy creditor or their entry onto the account cited by such creditor.

Non-satisfied claims of the bankruptcy creditor in respect of the obligations secured by pledge of rights under an agreement of bank account shall be satisfied within the composition of the third-priority creditors' claims.

**3.** A bankruptcy creditor is entitled to send an application about the refusal to realize the subject of pledge in the course of the financial improvement and external management to the qualified receiver and to the commercial court trying the case on bankruptcy in respect of the obligations secured by pledge of a debtor's property in the course of financial improvement and external management. Starting from the date when such application is received by the qualified receiver, a bankruptcy creditor shall enjoy the right of vote at a creditors' meeting, in respect of the claims secured by pledge of the debtor's property pending the completion of the appropriate procedure applied in bankruptcy proceedings.

**4.** The debtor is entitled to alienate the property constituting the subject of pledge, to let it on lease or for gratuitous use to another person or to dispose of it in some other way or charge the subject of pledge with rights and claims of third persons solely by approbation of the creditor whose claims are secured by such property's pledge, if not otherwise provided for by federal law or the contract of pledge and does not follow from the merits of pledge.

**5.** An object of pledge shall be sold by the trade organiser in the course of financial improvement and external management in accordance with the procedure established in Items 4, 5 and 8-19 of Article 110, and in Item 3 of Article 111 of the present Federal Law.

As the trade organiser shall come out the qualified receiver of a specialised organisation he has invited for this purpose, whose services are remunerated at the expense of funds, derived from selling the object of pledge. The said organisation shall not be an interested person with respect to the debtor, the creditors or the qualified receiver.

The starting price of the object of pledge shall be defined in conformity with the legislation of the Russian Federation on the pledge.

If repeated bidding is recognised as not having taken place, the competition creditor under the liabilities, provided for by a pledge of the debtor's property has the right to retain the object of pledge, with its estimate at a sum ten per cent lower than the starting selling price at the repeated bidding.

The sum of excess of the size of an estimate of the property, retained by the competition creditor over the size of the claim provided for by the pledge shall be returned to the debtor.

The sale of the pledged property in accordance with the present Article entails the termination of the pledge with respect to the competition creditor on whose claim an execution was levied onto the object of pledge.

Upon the sale of the pledged property, the competition creditor's claims on the liabilities provided for by the pledge of the debtor's property shall be satisfied at the expense of funds derived from the sale of the pledged property.

The competition creditor's claims on the liabilities which were provided for by a pledge of the debtor's property and which were not satisfied at the expense of the cost of the object of pledge, shall be satisfied in the composition of claims of the creditors of the third level.

**6.** The sale of an object of pledge in the course of competitive proceedings shall be effected in accordance with the procedure established in Article 138 of the present Federal Law.

**Article 19.** Interested Persons

**1.** For the purposes of the present Federal Law the following persons shall be deemed interested persons in respect to a debtor:

the person which under Federal Law No. 135-FZ of July 26, 2006 on Competition Protection belongs to the same

*[Unofficial translation from Russian]*

group as the debtor;

the person which is the debtor's affiliated person.

**2.** As interested person with respect to a debtor being a legal entity shall be likewise deemed:

the head of the debtor and also the persons on the board of directors (supervisory board) of the debtor, the collective executive body of the debtor or some other debtor's managerial body, the chief accountant (accountant) of the debtor, in particular, the said persons who had been relieved of performing their duties within the year preceding the time when proceedings were instituted on the bankruptcy case or before the date of appointing the provisional administration of a financial organisation (depending on which date comes first) or the person that can or could within the cited period to determine the debtor's actions;

the persons which have relations defined in Item 3 of the present article with the natural persons specified in Paragraph Two of the present item;

the persons deemed interested in making deals by the debtor in compliance with the civil legislation on appropriate kinds of legal entities.

**3.** As interested persons with respect to the debtor being an individual shall be deemed his/her spouse, relatives of direct ascending and descending lines, sisters, brothers and their relatives of descending line, the spouse's parents, children, sisters and brothers.

**4.** Where it is specified by the present Federal Law, as interested persons in relation to the qualified receiver and creditors shall be deemed persons in compliance with Items 1 and 3 of this Article.

**Article 20.** Qualified Receivers

**1.** The qualified receiver is an individual of the Russian Federation who is a member of one of self-regulating organisations of qualified receivers.

The qualified receiver is a professional-activity agent who is pursuing the professional activity regulated by the present Federal Law by means of private practices.

A qualified receiver is entitled to pursue other types of professional activity and also entrepreneurial activity, unless such activity affects the appropriate execution of the duties thereof established by this Federal Law. A qualified receiver is only entitled to be member in one self-regulating organisation of qualified receivers.

**2.** A self-regulating organisation of qualified receivers shall establish the following compulsory conditions for membership in it:

the availability of a higher education background;

the availability of a work record in managerial positions of at least one year and probation as an assistant to a qualified receiver in a bankruptcy case of at least two years, unless longer terms are envisaged by the standards and rules of professional activities of qualified receivers confirmed by the self-regulating organisation (hereinafter referred to as "standards and rules of professional activity");

the passing of a theory examination according to a qualified receiver training curriculum;

the lack of a sanction in the form of disqualification for an administrative offence or of deprivation of a right to occupy certain positions or engage in a certain activity for the commission of a crime;

the lack of conviction for the commission of a deliberate crime;

absence within three years preceding the day of presentation to the self-regulating organisation of the application for entering the membership of this self-regulating organisation of the fact of exclusion from among members of this or another self-regulating organisation of insolvency administrators in connection with an infringement of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of the professional activity, not eliminated within the term established by the self-regulating organisation or having an ineradicable nature.

**3.** Also the conditions for membership in the self-regulating organisation of qualified receivers are as follows: the member of the self-regulating organisation having a contract of compulsory insurance of liability that meets the requirements established by Article 24.1 of the present Federal Law, the member of the self-regulating organisation having paid the dues established by it, for instance contributions to the compensation fund of the self-regulating organisation.

**4.** Apart from the requirements set out in Items 2 and 3 of the present article the self-regulating organisation of qualified receivers is entitled to establish other requirements applicable to the competence, conscientiousness and independence of the qualified receiver as conditions for membership therein.

19

*[Unofficial translation from Russian]*

**5.** Within the period of membership in a self-regulating organisation of qualified receivers a qualified receiver shall comply with the membership qualifications established by the self-regulating organisation in accordance with Items 2-4 of the present Article. The procedure for confirming the qualified receiver's compliance with the membership qualifications set by the self-regulating organisation shall be established by the self-regulating organisation.

A member of the self-regulating organisation who does not meet its membership qualifications shall be expelled within one month after the discovery of such non-qualification.

Starting from the date of discovery of a qualified receiver's non-compliance with the requirements established by Items 2-4 of the present Article the qualified receiver shall not be nominated in a commercial court by the self-regulating organisation for confirmation in a bankruptcy case.

**6.** For the purposes of the present Federal Law "employment in managerial positions" means one's being employed as the head or a deputy head of a legal entity or occupying top and senior state civil service positions of the Russian Federation or being employed as the head or a deputy head of a local self-government body and also pursuing activity as a qualified receiver, provided the duties of the debtor's head are being executed, except for the cases of participation in the proceedings applicable in a bankruptcy case to the relevant debtor.

**7.** On the basis of the membership qualifications established in it, the self-regulating organisation of qualified receivers shall produce a list of the documents which are to be filed by persons when they are admitted as members of the self-regulating organisation and also the requirements applicable to the form of these documents. Within 30 days after the date of filing of a membership application by a person asking for being admitted as member to the self-regulating organisation together with all the documents envisaged by said list the permanent collective managerial body of the self-regulating organisation shall scrutinise the documents filed by the person and if the person meets the requirements established by the membership qualifications of the self-regulating organisation it shall take a decision on admitting the person as member.

**8.** The decision on admitting the person as member of the self-regulating organisation of qualified receivers shall enter into force from the date when the person submitted to the self-regulating organisation the documents confirming compliance with all the membership qualifications of that organisation established in accordance with Item 3 of the present Article.

If the person in respect of which the decision has been taken to admit the person as member of the self-regulating organisation does not meet the membership qualifications of the self-regulating organisation the decision shall be recognised as annulled within two months after the date of the decision.

**9.** Information on a person admitted as member of the self-regulating organisation of qualified receivers shall be included in the register of members of the self-regulating organisation within three working days after the effective date of the decision on admittance of the person as member of the self-regulating organisation. A person in respect of which a decision on admittance as member of the self-regulating organisation has taken effect may be confirmed by a commercial court as a qualified receiver to carry out the proceedings applicable in a bankruptcy case, starting from the date of inclusion of information about the person in the register of members of the self-regulating organisation of qualified receivers. Within ten working days after the inclusion of information about such person in the register of members of the self-regulating organisation of qualified receivers a membership document of the self-regulating organisation shall be issued to the person.

**10.** If a person does not meet the requirements established by the membership qualifications of the self-regulating organisation of qualified receivers the permanent collective managerial body of the self-regulating organisation of qualified receivers shall take a decision on refusal to admit the person as member of the self-regulating organisation, with reasons for the refusal being indicated.

The decision on refusal to admit the person as member of the self-regulating organisation of qualified receivers shall be sent to the person within ten working days after the date of the decision.

An appeal may be taken from a decision on refusal to admit a person as member of a self-regulating organisation or a self-regulating organisation's evasion of the taking of such decision on admittance or refusal to admit as member of this organisation to the commercial court within six months after the date of the decision or the date when such decision was to be taken.

**11.** Membership of the insolvency administrator in the self-regulating organisation of insolvency administrators shall cease by the decision of the permanently operating collegial body of the self-regulating organisation in the case of submission by the insolvency administrator to the self-regulating organisation of the application for withdrawal from this self-regulating organisation or in the case of exclusion of the insolvency administrator from the self-regulating organisation in connection with:

infringement by the insolvency administrator of conditions of membership in the self-regulating organisation;

infringement by the insolvency administrator of the requirements of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of the professional work not eliminated within the term established by the self-regulating organisation or carrying an ineradicable nature.

*[Unofficial translation from Russian]*

Membership of the insolvency administrator in the self-regulating organisation of insolvency administrators shall cease from the date of entering in the register of members of the self-regulating organisation of the record about the termination of membership of the insolvency administrator.

**12.** Disputes related to professional activities of the insolvency practitioner (including those on indemnification of losses inflicted by him) and his relations with the self-regulating organisation of insolvency practitioners shall be settled by the commercial court.

**13.** In the case where concerning the insolvency administrator who submitted to the self-regulating organisation an application for withdrawal from such a self-regulating organisation, proceeding were instituted about application to him of measures of disciplinary influence, the decision of the permanent collegiate body of the self-regulating organisation on the termination of membership of such an insolvency administrator shall be taken after the end of consideration of the proceedings instituted against such an insolvency administrator about the application to him of measures of disciplinary influence.

**Article 20.1.** Organising and Realising a Theory Examination and Probation in the Capacity of an Assistant to a Qualified Receiver

**1.** A theory examination according to a qualified receiver training curriculum shall be organised and carried out by a commission of which the composition is confirmed by a control (supervision) body. Among the members of the commission for conducting a theory examination there shall be representatives of an educational organisation and of a control (supervision) body.

On the proposal of the national association of self-regulating organisations of qualified receivers the commission may also include a representative of the national association of self-regulating organisations of qualified receivers.

**2.** The persons who have been subjected to an administrative sanction in the form of disqualification for a term of one year and more shall pass again a theory examination according to a qualified receiver training curriculum if they wish to execute the powers of qualified receiver after the expiry of the disqualification term.

A qualified receiver who has not discharged the duties of a qualified receiver in a bankruptcy case for more than three years in a row shall take a theory examination again according to a qualified receiver training curriculum.

**3.** The organisation and realisation of probation of an individual of the Russian Federation as an assistant to a qualified receiver shall be carried out by a self-regulating organisation of qualified receivers in accordance with the rules for probation in the capacity of an assistant to a qualified receiver established by federal standards and standards and rules of professional activity.

**Article 20.2.** The Requirements Applicable to a Qualified Receiver for the Purposes of His/Her Being Confirmed in a Bankruptcy Case

**1.** If according to the present Federal Law a qualified receiver acquires the powers of the head of a debtor he/she becomes subject to all the requirements established by federal laws and other normative legal acts of the Russian Federation for the head of such debtor, and to all the measures of accountability established by federal laws and other normative legal acts of the Russian Federation for the head of such debtor.

If the execution of the powers of the debtor's head is relating to access to information deemed state secret the qualified receiver shall have state secret clearance in a form corresponding to the clearance form required for the execution of the powers of the debtor's head and corresponding to the highest degree of secrecy of the information circulating at the debtor's enterprise.

**2.** An commercial court shall not confirm as interim receivers, administrative receivers, receivers or winding-up receivers in a bankruptcy case the qualified receivers which:

are interested persons in respect of the debtor or creditors;

have not provided compensation in full for the losses inflicted to the debtor or creditors or other persons as the result of a default on, or the improper performance of, the duties vested in the qualified receiver in the proceedings applicable in a bankruptcy case that have been carried out before, the fact of such losses having been established by a court decision that has become final;

in respect of which the proceedings applicable in a bankruptcy case have been commenced;

which have been disqualified or deprived -- in the procedure established by a federal law -- of the right to occupy managerial positions and/or to pursue a professional activity regulated in accordance with federal laws;

which do not have liability insurance contracts concluded in accordance with the requirements set out in the present Federal Law for the case of causing loss to the persons deemed party to a bankruptcy case;

which have no state secret admittance according to the established form, if the existence of such admittance is an obligatory condition for the approval of the qualified receiver by the commercial court.

*[Unofficial translation from Russian]*

in respect of which there is an effective judicial act on removing the qualified receiver from office in connection with failure to discharge or to discharge properly the duties that have caused losses for the debtor or for the creditors thereof in the procedures applicable in a bankruptcy case, if prior to the date preceding the date of introducing to court the candidacy of the qualified receiver a one year-term has not passed since the time of entry into legal force of the last judicial act in respect of the dispute in connection with such removal, except if the given judicial act has been appealed against with a court of cassational instance and in respect of it the court of cassational instance has not issued a judicial act or if the time period for appealing against the cited judicial act with the court of cassational instance has not expired.

**3.** A bankruptcy creditor or empowered body being applicants in a bankruptcy case or a meeting of creditors is entitled to present additional requirements applicable to contenders for a qualified receiver:

the availability of higher legal or economics educational background or educational background in a speciality corresponding to the debtor's area of activity;

the availability of a certain work record in positions of heads of organisations in the relevant branch of economy;

a record of having completed a certain number proceedings applicable in a bankruptcy case as a qualified receiver.

The bankruptcy creditor or empowered body or the meeting of creditors are entitled to present only those requirements set out in the present Item to the contender for a qualified receiver.

**Article 20.3.** The Rights and Duties of a Qualified Receiver in a Bankruptcy Case

**1.** A qualified receiver is a bankruptcy case is entitled to:

convene a meeting of creditors;

convene a creditors' committee;

file applications and petitions with the commercial court in the cases envisaged by the present Federal Law;

receive a fee at the rates and in the procedure established by the present Federal Law;

recruit other persons for the purpose of executing the duties vested in him/her in the bankruptcy case, with payment for their activities being made with the debtor's funds, except as otherwise established by the present Federal Law, standards and rules of professional activity or an agreement of the qualified receiver with creditors;

request the necessary information about the debtor, the persons who sit on the managerial bodies of the debtor, the controlling persons, their property (for instance property rights), contracting parties and the liabilities of the debtor from natural persons, legal entities, state bodies, the governing bodies of the state non-budget funds of the Russian Federation and local self-government bodies, including, inter alia, the information deemed official, commercial and banking secret;

file an application with the commercial court asking for his/her being relieved from the duties vested therein in the bankruptcy case.

A professional participant of the securities market which carries out activity on conducting of the register of owners of securities, the auditor organisation (auditor), the appraiser, the organiser of tenders and the operator of an electronic platform involved by the insolvency administrator according to this Federal Law for ensuring the performance of duties assigned to it in a bankruptcy case funded by the means of the debtor shall be accredited by the self-regulating organisation and cannot be interested persons in relation to the insolvency administrator, the debtor and his creditors.

The natural persons, legal entities, state bodies, the governing bodies of the state non-budget funds of the Russian Federation and local self-government bodies shall provide free of charge the information requested by the qualified receiver within seven days after the receipt of the request.

**2.** The qualified receiver in an insolvency case shall:

take measures for protecting the debtor's property;

analyse the financial state of the debtor and the results of the debtor's financial, economic and investment activities;

keep a register of creditors' claims, except for the cases envisaged by the present Federal Law;

provide the register of creditors' claims to the persons that demand that a general meeting of creditors be held, within three days after the date of the request in the cases envisaged by the present Federal Law;

do the following if signs of administrative offences and/or crimes have been discovered: inform about them the bodies empowered to initiate cases of administrative offences and consider messages about crimes;

*[Unofficial translation from Russian]*

provide information to a meeting of creditors on the transactions and actions that cause or can cause the civil liability of third persons;

prudentially and reasonably effect the expenses relating to the execution of the duties vested therein in the bankruptcy case. The duty to prove the lack of prudential and reasonable approach in making such expenses is vested in the person that has filed the relevant application with the commercial court;

detect the signs of deliberate and fictitious bankruptcy in the procedure established by federal standards and inform about them the persons being party to the bankruptcy case, the self-regulating organisation in which the qualified receiver is member, a meeting of creditors and the bodies empowered to bring cases of administrative offences and consider messages about crimes;

in the case where according to this Federal Law the attraction by the insolvency administrator of other persons for the performance of the duties assigned to him in a bankruptcy case is obligatory, the insolvency administrator shall be obliged to involve on a contractual ground of the insolvency administrator persons accredited by a self-regulating organisation with the payment for their activity according to Article 20.7 of this Federal Law;

detect the facts of failures to discharge the duty of filing the debtor's application with a commercial court in the instances and at the time which are provided for by Article 9 of this Federal Law and take measures aimed at bringing the person guilty of the violation to the liability provided for by Item 2 of Article 10 of this Federal Law, as well as report on the detected violation to the body authorized to draw up a record of an appropriate offence;

carry out the other functions established by the present Federal Law.

**3.** Except as otherwise established by the present Federal Law, the qualified receiver shall observe the confidential status of the information which is protected by a federal law (for instance, information deemed service or commercial secret) and has come to his/her knowledge in line of execution of the duties of a qualified receiver.

**4.** While implementing the proceedings applicable in a bankruptcy case the qualified receiver shall act in a bona fide manner and prudentially in the interests of the debtor, creditors and the society.

**5.** The powers vested in accordance with the present Federal Law in a qualified receiver in a bankruptcy case shall not be assigned to other persons.

**6.** The qualified receivers confirmed by a commercial court are procedural successors of preceding qualified receivers.

**Article 20.4.** The Liability of the Qualified Receiver

**1.** A default on the execution of, or the improper execution of, the duties vested in a qualified receiver in accordance with the present Federal Law or federal standards shall be deemed ground for the commercial court to dismiss the qualified receiver on a request of the persons deemed party to the bankruptcy case, as well as on demand of the self-regulating organisation of insolvency administrators a member of which he is.

If a commercial court ruling on the dismissal of a qualified receiver for a default on the execution of, or the improper execution of, them has been overturned the qualified receiver shall not be reinstated by a commercial court to execute these duties.

**2.** If a qualified receiver has been expelled from a self-regulating organisation in connection with his/her non-compliance with the membership qualifications of the self-regulating organisation, if a qualified receiver is in breach of the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of professional activity then the qualified receiver shall be dismissed by the commercial court in the bankruptcy case on the basis of a petition of the self-regulating organisation within ten days after the date of receipt thereof.

If a decision on expulsion of a qualified receiver from a self-regulating organisation serving as ground for a commercial court to dismiss the qualified receiver in a bankruptcy case has been overturned or deemed invalid the qualified receiver shall not be reinstated by a commercial court to execute his/her duties in the case.

Upon the receipt by a self-regulating organisation of copies of petitions containing demands for dismissal or exoneration of a qualified receiver in a bankruptcy case and having been sent to a commercial court by persons deemed party to a bankruptcy case and also when a petition is sent to a commercial court by a self-regulating organisation asking for a qualified receiver being dismissed or exonerated in a bankruptcy case the self-regulating organisation shall nominate a qualified receiver in the procedure established by Article 45 of the present Federal Law.

**3.** The imposition of a sanction on a qualified receiver in the form of disqualification for the commission of an administrative offence shall cause the qualified receiver being dismissed in the bankruptcy case.

Within three working days after the receipt of a court decision on disqualification of a qualified receiver, such decision

*[Unofficial translation from Russian]*

having become final, the federal executive governmental body empowered by the Government of the Russian Federation to form and keep a register of disqualified persons shall serve a notice to the self-regulating organisation in which the qualified receiver is member about the disqualification of the qualified receiver together with the court decision on the disqualification of the qualified receiver that has become final by means of sending such notice in a manner making sure it is received within five days after being dispatched. The data contained in the register of disqualified persons is subject to inclusion in the Uniform Federal Register of Information on Bankruptcy.

Within three business days after the receipt of such notice the self-regulating organisation shall send a petition to the commercial court that has confirmed the qualified receiver in the bankruptcy case for the qualified receiver being dismissed in the bankruptcy case by post or in another manner making sure such notice is received within five days after being dispatched.

The dismissal of the qualified receiver that has been subjected to the administrative sanction in the form of disqualification in the bankruptcy case and the confirmation of another qualified receiver shall be done by the commercial court no later than on the day following after the date of acceptance of the petition of the self-regulating organisation without summoning the persons deemed party to the bankruptcy case. As this is being done, account shall be taken of the requirements envisaged by the bankruptcy creditor or empowered body being applicant in the bankruptcy case or by the meeting of creditors in accordance with Item 3 of Article 20.2 of the present Federal Law.

A ruling of a commercial court dismissing a qualified receiver in a bankruptcy case and confirming another qualified receiver shall be implemented immediately.

The fact that a court judgement on disqualification of a qualified receiver has been overturned shall not be deemed ground for a commercial court to reinstate him/her to execute the duties vested therein in the bankruptcy case.

**4.** The qualified receiver shall provide a compensation to the debtor, creditors and other persons for the losses sustained as the result of his/her default on, or the improper execution of, the duties vested therein in the bankruptcy case, provided the fact that these losses had been inflicted was established by a court decision that has become final.

The insolvency administrator shall be obliged to compensate to members of the self-regulating organisation of insolvency administrators the losses which arose in connection with the necessity to bring the amount of the indemnification fund of such an organisation into conformity with the requirements of Article 25.1 of this Federal Law after the performance of a compensatory payment from the indemnification fund in connection with the indemnification caused to the persons participating in bankruptcy proceedings, and other persons owing to the failure or inadequate performance by this insolvency administrator of the duties assigned to him in bankruptcy proceedings, except for the cases where he acted according to internal documents of the self-regulating organisation, standards and rules of professional work.

**5.** Federal standards, standards and rules of professional work may establish additional requirements to securing property liability of the insolvency administrator for failure to carry out duties in bankruptcy proceedings or their inadequate performance.

Requirements to securing property liability of the insolvency administrator that arose owing to the duty to compensate to the members of the self-regulating organisation of insolvency administrators losses caused in connection with the necessity to bring the amount of the indemnification fund of such a self-regulating organisation in conformity with the requirements of Article 25.1 of this Federal Law following the compensatory payment from the indemnification fund of this self-regulating organisation, shall be established by federal standards, standards and rules of professional work. The aforementioned standards may envisage the duty of the insolvency administrator to carry out insurance of the risk of such civil liability.

**6.** Information on delivery by the commercial court of an act on acknowledging actions of the insolvency practitioner illegal or on charging of the amount of losses from the insolvency practitioner because of non-fulfillment or undue fulfillment of obligations in the bankruptcy case shall be included in the unified federal register of information on bankruptcy using the procedure established by Article 28 of this Federal Law within three business days from the day of entering into force of the respective court act.

The notification subjected to inclusion in the unified federal register of information on bankruptcy in accordance with this Item, in connection with charging of losses from the insolvency practitioner shall contain the amount of losses charged from the insolvency practitioner under the court act.

**Article 20.5.** Relieving a Qualified Receiver from the Duties Vested Therein in a Bankruptcy Case

**1.** If a qualified receiver has quit a self-regulating organisation of qualified receivers that organisation shall send a petition to the commercial court for the qualified receiver to be relieved from the duties vested therein in a bankruptcy case. within 14 working days after the date of the decision of the permanent collective managerial body of the self-regulating organisation on termination of the qualified receiver's membership in the self-regulating organisation in connection with his/her opting out of the organisation. On the petition of the self-regulating organisation the commercial court shall relieve the qualified receiver from the duties vested therein in the bankruptcy case. Unless a petition of the self-regulating organisation is received by the commercial court within 20 days after the date of the self-regulating organisation's decision on termination of the qualified

receiver's membership in the self-regulating organisation, the persons deemed party to the case are entitled to state that the qualified receiver is relieved from the duties vested therein in the bankruptcy case, and on the basis of such petition the commercial court shall relieve the qualified receiver from the duties vested therein in the bankruptcy case.

**2.** In the case of detection by the self-regulating organisation of the insolvency administrators facts of non-conformity of the insolvency administrator with the conditions of the membership established by the self-regulating organisation a member of which he is, including to the requirements established by the self-regulating organisation to the competence, good faith and independence of the insolvency administrator, detection of the circumstances interfering with the confirmation of the insolvency administrator in bankruptcy proceedings, including those which arose after such confirmation, detection of the facts of failure to perform or inadequate performance by the insolvency administrator of the duties assigned to him in bankruptcy proceedings the permanent collegiate body of management of the self-regulating organisation of insolvency administrators shall take a decision on the recourse to commercial court with the petition for discharging the insolvency administrator from the performance of the duties assigned to him in bankruptcy proceedings. The self-regulating organisation of insolvency administrators shall direct to commercial court the petition for discharging the insolvency administrator from the performance of the duties assigned to him in bankruptcy proceedings within fourteen business days from the date of acceptance of such decision.

**Article 20.6.** A Qualified Receiver' Fee in a Bankruptcy Case

**1.** A qualified receiver is entitled to a fee in a bankruptcy case, and also to a compensation in full for the expenses he/she has actually incurred while executing the duties vested therein in the bankruptcy case.

**2.** The fee in the bankruptcy case shall be paid to the qualified receiver with funds of the debtor, except as otherwise envisaged by the present Federal Law.

**3.** The fee payable to the qualified receiver in the bankruptcy case is composed of a fixed sum and an interest sum.

The amount of the fixed sum of such fee shall be as follows for:

an interim receiver: 30,000 roubles per month;

an administrative receiver: 15,000 roubles per month;

a receiver: 45,000 roubles per month;

a winding-up receiver: 30,000 roubles per month.

of financial administrator - 25 thousand roubles one-time for carrying out of the procedure applicable in bankruptcy cases.

**4.** If a qualified receiver has been relieved from his/her duties vested therein in a bankruptcy case or dismissed in a bankruptcy case by a commercial court the fee shall not be payable thereto starting from the date of his/her being relieved or dismissed.

**5.** On the basis of a decision of a meeting of creditors or a substantiated petition of the persons deemed party to the bankruptcy case the commercial court that hears the bankruptcy case is entitled to increase the amount of fixed sum of the fee payable to the qualified receiver, depending on the scope and complexity of the work he/she performs.

A ruling on increasing the fixed sum of such fee taken by the commercial court is subject to appeal.

**6.** If in a case of bankruptcy powers are vested in a qualified receiver because another qualified receiver cannot be confirmed the amount of the fee payable to the qualified receiver within the term of his/her office in the bankruptcy case shall be established by the commercial court. In this case, the amount of the fixed sum of the fee payable to the qualified receiver shall not be below the fixed sum of the fee of a qualified receiver defined for the relevant proceeding applied in the bankruptcy case, in accordance with the present Federal Law.

**7.** The meeting of creditors may establish a supplementary fee for the qualified receiver.

**8.** The supplementary fee shall be paid to the qualified receiver with funds of the creditors which have taken a decision on establishing the supplementary fee or with the payments owing to the creditors as setting off the repayment of their claims.

**9.** Except as otherwise established by the present Federal Law the sum of interest on the fee of the qualified receiver shall be paid thereto within ten calendar days after the completion of the proceeding which is applied in the bankruptcy case and for the implementation of which the qualified receiver was confirmed.

**10.** The sum of interest for the remuneration of an interim receiver shall not exceed 60 thousand roubles and shall comprise, at the balance sheet cost of the debtor's assets:

up to two hundred and fifty thousand roubles - four per cent of the balance sheet cost of the debtor's assets;

from two hundred and fifty thousand roubles and up to one million roubles - ten thousand roubles and two per cent of

*[Unofficial translation from Russian]*

size of the sum of the excess of the balance sheet cost of the debtor's assets over two hundred and fifty thousand roubles;

from one million roubles and up to three million roubles - twenty-five thousand roubles and one per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one million roubles;

over three million roubles - 45 thousand roubles and half a per cent of the amount of excess of the balance sheet value of the debtor's assets over three million roubles;

paragraphs 6 - 9 have lost force.

**11.** The sum of an interest for the remuneration of the administrative manager shall comprise the balance sheet cost of the debtor's assets:

up to two hundred and fifty thousand roubles - four per cent of the balance sheet cost of the debtor's assets;

from two hundred and fifty thousand roubles and up to one million roubles - ten thousand roubles and one per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over two hundred and fifty thousand roubles;

from one million roubles and up to three million roubles - seventeen thousand fifty roubles and half per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one million roubles;

from three million roubles and up to ten million roubles - twenty-seven thousand five hundred roubles, and 0.2 per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over three million roubles;

from ten million roubles and up to one hundred million roubles - forty-one thousand five hundred roubles, and 0.1 one per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one hundred million roubles;

from one hundred million roubles and up to three hundred million roubles - one hundred and thirty-one thousand five hundred roubles, and 0.05 per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one hundred million roubles;

from three hundred million roubles and up to one billion roubles - two hundred and thirty-one thousand five hundred roubles, and 0.01 per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over three hundred million roubles;

over one billion roubles - three hundred one thousand five hundred roubles, and 0.001 per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one billion roubles.

**12.** The sum of interest on the fee of a receiver is established as follows:

eight per cent of the amounts used to repay the claims of the creditors included in the register of creditors' claims at the termination of a proceeding in a bankruptcy case;

three per cent of the increment of the debtor's net asset value for the period of external administration when a debtor is deemed bankrupt and a wining-up proceeding is commenced.

**13.** The sum of interest on the fee of a winding-up receiver is established as follows:

seven per cent of the amount of met claims of the creditors included in the register of creditors' claims if more than 75 per cent of the claims of the creditors included in the register of creditors' claims are satisfied;

six per cent of the amount of met claims of the creditors included in the register of creditors' claims if more than 50 per cent of the claims of the creditors included in the register of creditors are satisfied;

four and a half per cent of the amount of met claims of the creditors included in the register of creditors' claims if more than 25 and more per cent of the claims of the creditors included in the register of creditors are satisfied;

three per cent of the amount of met claims of the creditors included in the register of creditors' claims if less than 25 per cent of the claims of the creditors included in the register of creditors are satisfied.

**14.** For the purpose of calculating the sum of interest on the fee of a qualified receiver the balance-sheet value of the debtor's assets shall be assessed according to the accounting data as of the last accounting date preceding the date of introduction of the relevant proceeding applicable in a bankruptcy case.

**15.** In the event of termination of a bankruptcy case in connection with the conclusion of an amicable agreement the sum of interest on the fee of the qualified receiver shall be paid out within the term and at the rate established by the amicable agreement.

**16.** When carrying out procedures applied in case of bankruptcy the regulating body may establish with respect to individual debtor categories a different size and (or) procedure for the payment out of the remuneration to the qualified receiver.

**17.** The amount of interest as remuneration of the financial administrator in case of execution of the debt restructuring

*[Unofficial translation from Russian]*

schedule approved by the commercial court by an individual shall account for seven percent of the satisfied creditors' claims.

The amount of interest as remuneration of the financial administrator in case of initiation of the procedure of sale of assets of the individual shall be seven percent of the amount of proceeds from the sale and the funds received as a result of charging of accounts receivable and as a result of application of implications of transactions invalidity. The interest shall be paid to the financial administrator after completion of settlements with creditors.

**Article 20.7.** Expenses towards the Implementation of the Proceedings Applicable in a Bankruptcy Case

**1.** Expenses towards the implementation of the proceedings applicable in a bankruptcy case shall be effected with the debtor's funds, except as otherwise envisaged by the present Federal Law.

The expenses envisaged by the present article shall not include expenses towards payment for the services of the persons recruited to support the debtor's current activities in the course of the proceedings applicable in a bankruptcy case.

**2.** The debtor's funds shall be used to make payment in actual cost towards the expenses envisaged by the present Federal Law, including without limitation, postal expenses, the expenses relating to the state registration of the debtor's rights to immovable property and of transactions in such property, expenses relating to the performance of works (provision of services) for the debtor as required for the state registration of such rights, expenses towards payment for the services of an appraiser, registrar and auditor if the recruitment of the appraiser, registrar, auditor and electronic area's operator under the present Federal Law is compulsory, expenses towards the inclusion of the information envisaged by the present Federal Law in the Uniform Federal Register of Information on Bankruptcy and the publication of such information and also payment towards legal costs including state duty.

**3.** The size of remuneration for the services of persons invited by the receiver or by the winding-up receiver to provide for the execution of the duties vested therein in the bankruptcy case, with the exception of the persons, stipulated in Item 2 of the present Article, shall comprise at the balance sheet cost of the debtor's assets:

up to two hundred and fifty thousand roubles - not over ten per cent of the balance cost of the debtor's assets;

from two hundred and fifty thousand roubles and up to one million roubles - not over twenty-five thousand roubles and eight per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over two hundred and fifty thousand roubles;

from one million roubles and up to three million roubles - not over eighty five thousand roubles and five per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one million roubles;

from three million roubles and up to ten million roubles - not over one hundred and eighty-five thousand roubles, and three per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over three million roubles;

from ten million roubles and up to one hundred million roubles - not over three hundred and ninety-five thousand roubles, and one per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over ten million roubles;

from one hundred million roubles and up to three hundred million roubles - not over one million and two hundred and ninety-five thousand roubles, and half per cent of the size of the sum of an excess of the balance sheet cost of the debtor's assets over one hundred million roubles;

from three hundred million roubles and up to one billion roubles - not over two million two hundred and ninety-five thousand five hundred roubles, and 0.1 per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over three hundred million roubles;

over one billion roubles - not over two million nine hundred and ninety-five thousand roubles, and 0.01 per cent of the sum of the excess of the balance sheet cost of the debtor's assets over one billion roubles.

With this, the rate of payment for the persons' services fixed in compliance with this item may be exceeded by the qualified receiver, if the amount of the given excess is covered by the insurance money in excess of the minimum amount of the insurance money under an agreement of mandatory insurance of the qualified receiver's liability fixed by Item 2 of Article 24.1 of this Federal Law.

**4.** Payment for the services of persons recruited by an interim receiver or administrative receiver to ensure the execution of the duties vested therein in the bankruptcy case shall be made in an amount not exceeding 50 per cent of the amount of payment for the services recruited by a receiver or winding-up receiver defined in accordance with Item 3 of the present Article.

**5.** The engagement of persons by the qualified receiver for ensuring the discharge of the duties in a bankruptcy case imposed upon him/her, payment for such persons' services or the rate of payment for such services fixed by this article may be declared by a commercial court as unfounded on application of the persons participating in the bankruptcy case, if the services

*[Unofficial translation from Russian]*

are not connected with the purposes of carrying out the procedures applied in the bankruptcy case or with the duties imposed on the qualified receiver in the bankruptcy case or the rate of payment for such services is clearly disproportionate to the expected result.

The amount of payment for such services shall not be deemed without ground if it corresponds to the tariffs confirmed by a normative legal act of the Russian Federation.

The duty of proving the lack of ground for recruitment of persons to ensure the execution of the duties vested in a qualified receiver in a bankruptcy case and/or for the amount of payment for their services determined in accordance with the present article is vested in the person that has filed an application with a commercial court claiming that the recruitment of such persons and/or the amount of such payment is without ground.

A court judgement whereby the recruitment of the persons mentioned in the present item and/or the amount of payment for their services is deemed without ground is subject to appeal.

**6.** Persons shall be engaged by the qualified receiver for ensuring the discharge of the duties in a bankruptcy case imposed upon him/her on account of the debtor's property in the event of exceeding the rate of payment for such services fixed in compliance with this article after rendering an appropriate ruling by a commercial court.

The commercial court shall turn out a ruling on recruitment of the persons specified in the present item and on the establishment of the amount of payment for their services on an application of the qualified receiver, provided the qualified receiver has proved the existence of ground for their being recruited and ground for the amount of payment for their services.

The ruling turned out by the commercial court on the recruitment of the persons mentioned in the present item by the qualified receiver and the setting of the amount of payment for their services or on refusal to uphold the petition of the qualified receiver for their being recruited is subject to appeal.

**7.** Payment for the services of the persons about whose recruitment the decision was adopted by a meeting of creditors shall be effected with funds of the creditors which have voted for the decision, pro rata to the amounts of their claims that have been included in the register of creditors' claims as of the date of the meeting of creditors, except when one of the creditors or several creditors have assumed the duty of making payment for the cited persons' services.

Payment for the services of the persons about whose recruitment the decision has been adopted by a creditor whose claims are secured by pledge of the debtor's property in connection with the sale of the property put in pledge shall be made at the expense of the appropriate creditor.

**8.** For the purposes of the present article the balance-sheet value of the debtor's assets is assessed on the basis of the data of financial (bookkeeping) statements/reports as of the last accounting date preceding the date of commencement of the relevant proceeding applied in the bankruptcy case.

**9.** When carrying out procedures applied in a case on bankruptcy, the regulating body may establish with respect to the individual debtor categories a different size and (or) procedure for the remuneration of expenditures on the above-said procedures.

**Article 21.** Self-Regulating Organisations of Qualified Receivers

**1.** The status of self-regulating organisation of qualified receivers is acquired by a non-profit organisation as of the date when information about the non-profit organisation is included in the uniform state register of self-regulating organisations of qualified receivers.

A state duty shall be paid for including a non-profit organisation into the uniform state register of self-regulating organisations of qualified receivers at the rate and in the procedure which are established by the legislation of the Russian Federation on taxes and fees.

**2.** The ground for including information about a non-profit organisation in the uniform state register of self-regulating organisations of qualified receivers is its compliance with the following compulsory requirements:

at least 100 its members meet the membership qualifications of the self-regulating organisation of qualified receivers confirmed by the self-regulating organisation;

its members have taken part in at least 100 (in aggregate) proceedings applied in bankruptcy cases (including those not completed as of the date of inclusion in the uniform state register of self-regulating organisations of qualified receivers), except for the proceedings applied in bankruptcy cases to absent debtors;

a compensation fund exists that is maintained in the amount and in the procedure established by Article 25.1 of the present Federal Law;

there exist standards and rules of professional activities of qualified receivers which are elaborated in accordance with the provisions of the present Federal Law and are binding on members of the self-regulating organisation of qualified receivers;

*[Unofficial translation from Russian]*

the managerial bodies and specialised bodies of the self-regulating organisation of qualified receivers have been formed, and the functions and scope of powers thereof comply with the requirements set out in Article 21.1 of the present Federal Law.

**3.** The liquidation of a non-profit organisation having the status of self-regulating organisation of qualified receivers shall take place in accordance with the legislation of the Russian Federation on non-profit organisations with due regard to the details established by the present Federal Law.

A liquidation commission of a non-profit organisation having the status of self-regulating organisation of qualified receivers shall include a representative of the national association of self-regulating organisations of qualified receivers.

**4.** A self-regulating organisation of insolvency practitioners can only be reorganised in the form of a merger of two or more self-regulating organisations of insolvency practitioners or in the form of acquisition by one such organisation of another such organisation according to the procedure set by the legislation of the Russian Federation.

**5.** A non-profit organisation looses its status of self-regulating organisation of qualified receivers as of the date when information about the non-profit organisation is removed from the uniform state register of self-regulating organisations of qualified receivers.

**Article 21.1.** The Managerial Bodies and Specialised Bodies of a Self-Regulating Organisation of Qualified Receivers

**1.** The structure of, the procedure for the formation of, the scope of powers and the term of powers of, the managerial bodies of self-regulating organisation of qualified receivers and the procedure for their taking decisions shall be established by the charter of the non-profit organisation and internal documents of the self-regulating organisation of qualified receivers in accordance with the present Federal Law and other federal laws.

**2.** The general meeting of members of a self-regulating organisation of qualified receivers is the paramount managerial body of the self-regulating organisation which is empowered to consider the issues put within its cognisance by the present Federal Law, other federal laws and the charter of the non-profit organisation.

**3.** The general meeting of members of the self-regulating organisation of qualified receivers shall be convened at least once a year in the procedure established by the charter of the non-profit organisation.

**4.** The following issues are deemed to fall within the cognisance of the general meeting of members of the self-regulating organisation of qualified receivers:

confirming and amending the charter of the self-regulating organisation of qualified receivers;

establishing membership qualifications for the self-regulating organisation, the procedure for admittance as member to the self-regulating organisation and the procedure for termination of membership in the self-regulating organisation;

designating priority guidelines of the self-regulating organisation's activities and the principles of formation and use of its property;

electing members to the permanent collective managerial body of the self-regulating organisation of qualified receivers (hereinafter referred to as "the collective managerial body") and taking decisions on early termination of the powers of the collective managerial body or of specific members thereof;

endorsing -- in the procedure and at the intervals established by the charter of the non-profit organisation -- reports of the collective managerial body and the executive body of the self-regulating organisation on the results of financial, economic and organisational activities of the self-regulating organisation of qualified receivers;

endorsing disciplinary sanctions, the procedure and grounds for the imposition thereof, the procedure for considering cases of breach of the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity by members of the self-regulating organisation;

appointing a person to carry out the functions of the sole executive body of the self-regulating organisation and removing such person before the expiry of his/her term of office;

endorsing and amending a cost-estimate of the self-regulating organisation and endorsing the annual bookkeeping statements/reports of the self-regulating organisation;

taking a decision on voluntary removal of information on the self-regulating organisation from the uniform state register of self-regulating organisations of qualified receivers;

considering a complaint of a person expelled from the self-regulating organisation of qualified receivers that refers to the lack of ground for the decision whereby the person has been expelled from the self-regulating organisation of qualified receivers and taking a decision on such complaint;

taking decisions on voluntary liquidation of the self-regulating organisation and appointing a liquidation commission;

*[Unofficial translation from Russian]*

taking other decisions in accordance with federal laws and the charter of the non-profit organisation.

The issues described in Paragraphs 2-7 and 10-12 of the present Item cannot be put by the charter of the non-profit organisation within the cognisance of other managerial bodies of the self-regulating organisation of qualified receivers.

**5.** The general meeting of members of the self-regulating organisation of qualified receivers is empowered to adopt the decisions put within its cognisance if attended by over 50 per cent of the total number of the self-regulating organisation's members.

Decisions of the general meeting of members of the self-regulating organisation shall be taken by a majority vote of the number of votes of the self-regulating organisation's members who attend the general meeting, or if voting is done by proxy, by a majority vote of the total number of votes of members of the self-regulating organisation.

Decisions on the issues specified in Paragraphs 2-4, 10 and 12 of Item 4 of the present Article shall be adopted at the general meeting of members of the self-regulating organisation by the majority of two thirds of votes of the total number of votes of members of the self-regulating organisation.

The charter of the non-profit organisation may make provision for other issues on which decisions are taken by a qualified majority vote and also for a need to have a decision adopted a number of votes larger than the one envisaged by the present Federal Law.

**6.** In a self-regulating organisation of qualified receivers there shall be formed a collective managerial body composed of at least seven persons. Persons not being members of the self-regulating organisation of qualified receivers shall not make up more than 25 per cent of the number of members of the collective managerial body and the persons filling public and municipal positions.

**7.** The cognisance of the collective managerial body encompasses the following:

endorsing and amending standards and rules of professional activity;

taking a decision on admitting a person as member to the self-regulating organisation or on the termination of membership in the self-regulating organisation on the grounds set out in the present Federal Law and the charter of the non-profit organisation;

endorsing rules for exercising control over the observance by members of the self-regulating organisation of the requirements set out in the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity;

forming specialised bodies of the self-regulating organisation and endorsing regulations on them and rules for their pursuing their activities;

appointing an audit organisation to verify the bookkeeping and financial (bookkeeping) statements/reports of the self-regulating organisation, taking decisions on inspections of the activities of the executive body of the self-regulating organisation;

presenting a nominee (or nominees) to a general meeting of members of the self-regulating organisation for appointment as the sole executive body of the self-regulating organisation;

establishing qualifications applicable to the head of the body exercising control over the activities of members of the self-regulating organisation as qualified receivers in bankruptcy cases;

taking a decision concerning an insolvency administrator who is a member of the self-regulating organisation on the establishment of the amount of the insurance sum under the contract of obligatory insurance of the liability exceeding the minimum amount established by Item 2 of Article 24.1 of this Federal Law of the insurance sum, about the duty of the insolvency administrator to conclude in connection with the approval of him by the commercial court in the procedures used in bankruptcy proceedings (except for a case about the bankruptcy of an absent debtor, as well as the debtor the balance cost of whose assets does not exceed one hundred million roubles), beside the additional contract of obligatory insurance of the liability stipulated by Item 2 of Article 24.1 of this Federal Law, the additional contract of insurance of the liability of the insolvency administrator. Such a decision shall establish the amount of the insurance sum under the additional contract of insurance of the liability.

The decision of the collegiate executive body on the termination of membership of the insolvency administrator if he is expulsion in connection with a substantial infringement of requirements of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards shall be taken by the two thirds majority of votes of the total number of votes of the members of collegiate executive body.

**8.** The cognisance of the executive body of the self-regulating organisation of qualified receivers encompasses issues of the self-regulating organisation's economic and other activities not falling within the cognisance of the general meeting of

*[Unofficial translation from Russian]*

members of the self-regulating organisation and of its collective managerial body.

**9.** For the purpose of ensuring the realisation of the rights and duties defined by the present Federal Law the self-regulating organisation of qualified receivers is obligated to form the following bodies:

a body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation;

a body charged with the selection of nominees to be presented to commercial courts as qualified receivers for the purpose of their being confirmed in bankruptcy cases;

a body charged with control over the observance by members of the self-regulating organisation of provisions of federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity.

**10.** The procedure for considering complaints against actions of members of the self-regulating organisation of qualified receivers, cases of members of the self-regulating organisation being in breach of provisions of federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity as well as disciplinary sanctions shall be defined in accordance with the present Federal Law, federal standards and internal documents of the self-regulating organisation.

**11.** The body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation shall consider cases of members of the self-regulating organisation being in breach of provisions of federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity and of imposition of disciplinary sanctions on qualified receivers.

**12.** The body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation shall invite to attend its meeting the self-regulating organisation's member in respect of which the case of imposition of disciplinary sanctions has been opened as well as the persons which have sent the complaint against the actions of that member of the self-regulating organisation.

**13.** The body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation is entitled to take a decision on imposition of the following disciplinary sanctions:

issuing an instruction obligating the member of the self-regulating organisation to eliminate the irregularities discovered and setting a term for the elimination;

issuing a warning to the member of the self-regulating organisation, with a public announcement about it being made;

imposing a fine on the member of the self-regulating organisation in the amount set by internal documents of the self-regulating organisation;

recommending that the person be expelled from the self-regulating organisation, such recommendation being subject to consideration and confirmation of the collective managerial body;

the other sanctions established by internal documents of the self-regulating organisation.

The decisions envisaged by Paragraphs 2-4 and 6 of the present Item shall enter into force from the date when the body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation takes them. The decision envisaged by Paragraph 5 of the present Item shall be adopted by the majority of three quarters of votes of the total number of votes of the members of the body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation who attend the meeting, and it shall enter into force as of the time when it is confirmed by the collective managerial body.

**14.** Decisions of the body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation are subject to appeal to the collective managerial body.

Appeal from decisions of the collective managerial body may be taken to the general meeting of members of the self-regulating organisation.

**15.** The person carrying out the functions of the sole executive body of the self-regulating organisation of qualified receivers and also the employees of the self-regulating organisation are not entitled to be qualified receivers.

**Article 22.** The Rights and Duties of a Self-Regulating Organisation of Qualified Receivers

**1.** A self-regulating organisation of qualified receivers is entitled to:

represent the interests of members of the self-regulating organisation in their relations with governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation and local self-government bodies;

*[Unofficial translation from Russian]*

take appeal on its own behalf in the procedure established by the legislation of the Russian Federation from any acts, decisions and/or actions or omissions of governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation, local self-government bodies and their officials infringing on the rights and lawful interests of the self-regulating organisation, its member(s) or creating a threat of such infringement;

take part in a discussion of draft federal laws, other normative legal acts, draft laws and other normative legal acts of subjects of the Russian Federation, normative legal acts of local self-government bodies, state programmes on issues relating to arbitration administration, and also to send statements to governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation and local self-government bodies on the results of the independent expert examination of the aforesaid draft normative legal acts that is carries out;

lay proposals before governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation and local self-government bodies for being considered by them concerning issues of state policy formation and implementation and issues of the formation and implementation of policy by local self-government bodies in the area of insolvency (bankruptcy) and financial rehabilitation respectively;

request from governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation and local self-government bodies the information needed for the self-regulating organisation to carry out the functions vested therein by federal laws and obtain from these bodies such information in the procedure established by federal laws;

bring action claiming protection of the rights and lawful interests of the qualified receivers being members of the self-regulating organisation, for instance a compensation for losses caused to a qualified receiver by governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation, local self-government bodies and also other persons;

file petitions with a commercial court for removal or relief of members of the self-regulating organisation from participation in a bankruptcy case in the cases envisaged by the present Federal Law;

take appeal from courts' judgements on confirmation, removal or relief of qualified receivers being members of the self-regulating organisation and also the courts' judgements affecting the rights, duties or lawful interests of bankruptcy managers that are members of the self-regulating organisation or of the self-regulating organisation in the realisation of the proceedings applied in a bankruptcy case;

Paragraph 10 is abrogated;

exercise the other rights established by the present Federal Law.

**2.** A self-regulating organisation of qualified receivers shall:

elaborate and establish qualifications for the membership of qualified receivers in the self-regulating organisation;

elaborate and establish standards and rules of professional activity which are binding on members of the self-regulating organisation;

monitor the professional activities of members of the self-regulating organisation in as much as it concerns the observance of the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity;

consider complaints against actions of a member of the self-regulating organisation who is executing the duties of a qualified receiver in a bankruptcy case;

impose the disciplinary sanctions envisaged by the present Federal Law and internal documents of the self-regulating organisation on its members, including expulsion from the self-regulating organisation;

file petitions with a commercial court claiming removal of a qualified receiver being a member of the self-regulating organisation from a bankruptcy case if the qualified receiver has been expelled form the self-regulating organisation, no later than on the day following the date of the expulsion, as well as in the case of infringement by the insolvency administrator of the conditions of membership in the self-regulating organisation, the requirements of this Federal Law, other federal laws, other normative legal certificates(acts) of the Russian Federation, federal standards, standards and rules of professional work, application to the insolvency administrator of administrative punishment as disqualification for the commission of an administrative offence and in other cases established by this Federal Law;

analyse the activities of its members on the basis of the information they provide to the self-regulating organisation in the form of reports in the procedure established by the charter of the non-profit organisation or another document confirmed by a decision of a general meeting of members of the self-regulating organisation;

store reports of qualified receivers and the other documents confirmed by a decision of a general meeting of members

*[Unofficial translation from Russian]*

of the self-regulating organisation for five years after the date of presentation of the relevant document;

organise and conduct the probation of an individual of the Russian Federation as an assistant to a qualified receiver;

carry out with the observance of the requirements of this Federal Law, Federal Law No. 315-FZ of December 1, 2007 on the Self-Regulating Organisations and according to the list of the obligatory data to be included by the self-regulating organisation in the register of insolvency administrators, and the procedure for the conducting by a self-regulating organisation of such a register endorsed in the form of a federal standard, inclusion in the register of the members of a self-regulating organisation of insolvency administrators of obligatory data and the maintenance of such a register;

arrange for the maintenance of a compensation fund of the self-regulating organisation for the purpose of providing a financial coverage for liabilities for compensation for the losses caused by members of the self-regulating organisation when they execute the duties of qualified receivers;

organise the upgrading of professional training background of its members;

do the following on inquiries of a judge or a control (supervision) body if action is brought in a case of administrative offence, for instance, in the course of administrative investigation in respect of a qualified receiver: furnish documents which contain information about the qualified receiver's execution of the duties vested therein in a bankruptcy case and have to do with said case of administrative offence;

conclude the contracts envisaged by the present Federal Law with a managing company holding a licence for management of investment companies, investment trusts and non-state pension funds (hereinafter referred to as "managing company") and with a specialised depositary holding a depositary activity licence and a licence for the pursuance of the activity of specialised depositary of investment companies, investment trusts and non-state pension funds (hereinafter referred to as "specialised depositary") within 90 days after the date of inclusion of information about the non-profit organisation in the uniform state register of self-regulating organisations of qualified receivers, file with the commercial court a petition for exempting an insolvency administrator who is a member of the self-regulating organisation from the participation in bankruptcy proceedings in the cases established by this Federal Law;

do the following within 14 working days after the date of occurrence of the self-regulating organisation's non-conformity with the requirements set out in Item 2 of Article 21 of the present Federal Law: furnishing information about the non-conformity to the control (supervision) body;

carry out according to the procedure established by federal standards, standards and rules of professional work the accreditation of the persons involved by the insolvency administrator for ensuring the execution of duties assigned to him in bankruptcy proceedings;

provide for the access to the data included in the register of members of the self-regulating organisation of insolvency administrators for the persons interested in receiving them according to the procedure established by the regulating body.

**Article 22.1.** Disclosure of Information by a Self-Regulating Organisation of Qualified Receivers

**1.** A self-regulated organisation of qualified receivers, along with the information provided for by Federal Law No. 315-FZ of December 1, 2007 on Self-Regulated Organisations, is bound to insert the following, subject to the requirements of federal laws for protection of information (including personal data), on the site thereof on the Internet:

the constituent documents of the self-regulated organisation;

the rules for traineeship as a qualified receiver's assistant;

information on the progress in and results of the expert examination of draft federal laws, other regulatory legal acts of the Russian Federation, laws and regulatory legal acts of constituent entities of the Russian Federation and regulatory legal acts of local authorities in whose preparation the self-regulated organisation participated;

information on the non-compliance of the self-regulated organisation with the requirements of Item 2 of Article 21 of this Federal Law, in particular about the date of origination of non-compliance of the self-regulated organisation with the requirements of Item 2 of Article 21 of this Federal Law, about the measures planned and/or being taken by the self-regulated organisation for the removal of such non-compliance;

information on the persons accredited by the self-regulated organisation.

The documents and information cited in this item shall be inserted in the site of a self-regulated organisation on the Internet within fourteen days as from the date of endorsement of the appropriate documents or origination or alteration of appropriate information.

**2.** Within 14 business days after the date of inclusion of information about a non-profit organisation in the uniform state register of self-regulating organisations of qualified receivers the self-regulating organisation of qualified receivers shall provide the following information to the control (supervision) body:

*[Unofficial translation from Russian]*

the location of the self-regulating organisation, including legal and postal addresses, e-mail address and contact phone numbers;

the surnames, first names and patronymics of the members of the collective executive body of the self-regulating organisation, of the person carrying out the functions of the sole executive body of the self-regulating organisation, of the members of the managerial bodies and of the employees of the self-regulating organisation's bodies which have to be formed under the present Federal Law;

the address of the self-regulating organisation's internet website.

**3.** Within 14 working days the self-regulating organisation of qualified receiver shall provide to the control (supervision) body information on:

the modification of the information specified in Item 2 of the present article;

the amendments made to the charter of the non-profit organisation, the documents which have been elaborated and confirmed by the self-regulating organisation and are regulating the activities of its bodies specified in Article 21.1 of the present Federal Law;

the persons who have been admitted as members of the self-regulating organisation;

the persons whose membership in the self-regulating organisation has been terminated and the grounds for membership termination;

the dismissal of qualified receivers being members of this self-regulating organisation from bankruptcy cases.

**4.** Every month the self-regulating organisation of qualified receivers shall provide to the control (supervision) body information on:

the completed confirmation of qualified receivers being members of this self-regulating organisation in bankruptcy cases;

the amount of the self-regulating organisation's compensation fund;

received complaints concerning a qualified receivers' default on, or improper execution of, the duties vested therein in bankruptcy cases and on the results of consideration of such complaints.

**5.** The members of the self-regulating organisation shall disclose the information on their activities that is subject to disclosure according to the legislation of the Russian Federation and the requirements established by the self-regulating organisation.

**Article 22.2.** Keeping the Uniform State Register of Self-Regulating Organisations of Qualified Receivers

**1.** Responsibility for keeping a uniform state register of self-regulating organisations of qualified receivers is vested in the control (supervision) body.

**2.** The procedure for keeping the uniform state register of self-regulating organisations of qualified receivers and a list of the details included therein shall be defined by the regulator.

**3.** The information contained in the uniform state register of self-regulating organisations of qualified receivers is open, accessible for the general public and is subject to placement on the official internet website of the control (supervision) body in the procedure established by the regulator.

**4.** Details concerning a non-profit organisation that meets the conditions set out in Item 2 of Article 21 of the present Federal Law shall be included in the uniform state register of self-regulating organisations of qualified receivers within fifteen working days after the date of filing of the following documents with the control (supervision) body:

an application of the non-profit organisation asking for being included in the uniform state register of self-regulating organisations of qualified receivers citing the denomination of the non-profit organisation, basic state registration number and taxpayer identification number;

the original constitutive documents of the non-profit organisation or copies thereof attested by a notary;

the regulations which have been confirmed by the self-regulating organisation and are regulating the activities of its bodies specified in Article 21.1 of the present Federal Law, and also standards and rules of professional activity;

a copy of the certificate of state registration of the non-profit organisation attested by a notary;

a list of members of the non-profit organisation attested by an authorised person of the non-profit organisation, citing the taxpayer identification number and passport data (family name, first name, patronymic, date of birth, place of birth, requisite elements of the passport) of each of its members both on paper and electronic media or in the from of an electronic document

*[Unofficial translation from Russian]*

bearing the qualified electronic signature of the non-profit organisation;

copies of all membership applications asking for admittance to the non-profit organisation attested by the non-profit organisation;

copies of documents certifying the Russian Federation individualship of each member of the non-profit organisation attested by the non-profit organisation;

copies of the certificates of higher education of each member of the non-profit organisation attested by the non-profit organisation;

copies of documents confirming that a theory examination has been passed according to a qualified receiver training curriculum attested by the non-profit organisation;

copies of the work record books or other documents confirming the availability of the established work record duration in managerial positions of each member of the non-profit organisation who has a work record in managerial positions;

copies of certificates or other documents confirming that each member of the non-profit organisation has undergone probation in the capacity of an assistant to a qualified receiver attested by the non-profit organisation;

copies of statements confirming that no administrative sanction in the form of disqualification has been imposed for the commission of an administrative offence in respect of each member of the non-profit organisation attested by the non-profit organisation;

copies of applications of each member of the non-profit organisation stating that he/she is not subjected to the proceedings applicable in a bankruptcy case attested by the non-profit organisation;

copies of statements confirming the lack of conviction for committing a willful crime in respect of each member of the non-profit organisation attested by the non-profit organisation;

documents confirming that a formed compensation fund of the self-regulating organisation is being maintained in the amount and in the procedure established by Article 25.1 of the present Federal Law or copies of such documents attested by the non-profit organisation;

copies of commercial courts' rulings attested by the non-profit organisation according to which its members have taken part in at least 100 proceedings applicable in bankruptcy cases, except for the proceedings applicable in bankruptcy cases in respect of absent debtors;

copies of contracts of compulsory insurance of the liabilities of a qualified receiver for each member of the non-profit organisation attested by the non-profit organisation.

**4.1.** Unless the documents mentioned in Paragraphs 5, 13 and 15 of Item 4 of the present article have been filed by the applicant, then on an inter-departmental inquiry of the control (supervision) body the federal executive governmental body responsible for the state registration of legal entities, natural persons as individual entrepreneurs and peasant (farmer's) farms shall provide information confirming the fact that information about the non-profit organisation has been entered in the uniform state register of legal entities, the federal executive governmental body empowered by the Government of the Russian Federation to maintain and keep a register of disqualified persons shall provide information on the non-imposition of an administrative sanction in the form of disqualification for breach of administrative law, and the federal executive governmental body in charge of the functions of state policy elaboration and normative legal regulation in the area of internal affairs shall provide information about the lack of a conviction for committing a willful crime in respect of each member of the non-profit organisation.

**5.** The control (supervision) body shall render the decision on the inclusion of, or on the refusal to include, a non-profit organisation in the unified state register of self-regulating organisations of qualified receivers within fifteen working days as from the date of filing the documents established by Item 4 of this article, except for the documents cited in Paragraphs Five, Thirteen and Fifteen of Item 4 of this article, and the non-profit organisation shall be notified thereof in writing within three working days as from the date of adoption of the corresponding decision.

**6.** The control (supervision) body shall deny the inclusion of data on an non-profit organisation in the comprehensive state register of self-regulating organisations of qualified receives on the following grounds:

the non-profit organisation does not satisfy one of the requirements provided for by Item 2 of Article 21 of this Federal Law;

the non-profit organisation has failed to present all the documents provided for by Item 4 of this article, except for the documents cited in Paragraphs Five, Thirteen and Fifteen of Item 4 of this article;

the documents presented by the non-profit organisation does not satisfy the requirements established by this Federal Law;

*[Unofficial translation from Russian]*

the federal executive power body engaged in the state registration of legal entities, natural persons as individual businessmen and peasant's farms has no data on entering information about the non-profit organisation to the comprehensive state register of legal entities;

the federal executive power body engaged in the state registration of legal entities, natural persons as individual businessmen and peasant's farms has information about the termination of the legal entity.

**7.** A decision on refusal to include information about a non-profit organisation in the uniform state register of self-regulating organisations of qualified receivers is subject to appeal to the commercial court.

**Article 23.** Abrogated.

**Article 23.1.** Control (Supervision) over the Activities of Self-Regulating Organisations of Qualified Receivers

**1.** Control (supervision) over the activities of self-regulating organisations of qualified receivers shall be carried out by the control (supervision) body in the procedure established by the regulator.

**2.** The subject matter of the control (supervision) of the control (supervision) body is the observance by self-regulating organisations of qualified receivers of the provisions of the present Federal Law, the other federal laws and the other normative legal acts of the Russian Federation that regulate the activities of self-regulating organisations of qualified receivers.

**3.** Control (supervision) shall be carried out by means of scheduled and off-schedule inspections.

**4.** A scheduled inspection of the activities of a self-regulating organisation of qualified receivers shall not be carried out by the control (supervision) body more than once in two years.

**5.** The ground for conducting an off-schedule inspection of the activities of a self-regulating organisation of qualified receivers is a substantiated complaint filed with the control (supervision) body against the actions or omissions of the self-regulating organisation which violate the provisions of the present Federal Law, other federal laws, other normative acts of the Russian Federation and also the non-compliance with such requirements contained in documents of the self-regulating organisation filed with the control (supervision) body.

**6.** The duration of an inspection of a self-regulating organisation of qualified receivers shall not exceed 30 days.

**7.** The head of the inspected self-regulating organisation of qualified receivers is entitled to take appeal from actions or omissions of the officials who carry out the inspection of the activities of the self-regulating organisation to the head of the control (supervision) body and also to the court.

**8.** The control (supervision) body shall notify in writing the self-regulating organisation of qualified receivers about the decision taken on the results of the inspection within three working days after the date of the decision.

The decision of the control (supervision) body on the results of the inspection of the activities of the self-regulating organisation may be appealed against by it to the commercial court.

**9.** Information on a non-profit organisation that unites qualified receivers shall be removed from the uniform state register of self-regulating organisations of qualified receivers by a decision:

of the control (supervision) body if the members of the self-regulating organisation of qualified receivers or a commercial court has taken a decision on liquidation thereof;

a commercial court on an application of the control (supervision) body on the self-regulating organisation's non-conformity with the requirements established by Paragraph 2 or 4 of Item 2 of Article 21 of the present Federal Law;

a commercial court on an application of the control (supervision) body if it is discovered that the self-regulating organisation violated more than twice in a year other requirements of the present Federal Law, of other federal laws or of other normative acts of the Russian Federation if the violations have not been eliminated or if it cannot be eliminated.

An application of the control (supervision) body for removal of information about a non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers shall be presented to the commercial court at the place where the uniform state register of self-regulating organisations of qualified receivers is being kept.

**10.** If it is discovered that a self-regulating organisation of qualified receivers is in breach of the requirements established by Paragraph 2 or 4 of Item 2 of Article 21 of the present Federal Law the control (supervision) body shall send an instruction to the self-regulating organisation for elimination of this irregularity which shall be implemented within ten working days after the receipt thereof.

If the performance of the instruction is not completed within the term set the control (supervision) body shall apply within three months upon the expiry of the term set for performance of the instruction to the commercial court by means of

*[Unofficial translation from Russian]*

filing an application for removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers, and the commercial court shall take a decision on removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers.

**11.** If apart from the breach envisaged by Item 10 of the present article it is discovered that there is another breach of provisions of the present Federal Law, other federal laws or other normative legal acts of the Russian Federation the control (supervision) body shall send an instruction to the self-regulating organisation of qualified receivers for elimination of this irregularity with an indication of a term for performance thereof of at least two months after the date of the instruction.

The instruction of the control (supervision) body for elimination of the breach may be appealed against by the self-regulating organisation to the commercial court.

If within the term set the performance of the instruction is not completed the control (supervision) body shall apply to the commercial court within three months upon the expiry of the term set for the performance thereof by means of filing an application for removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers, and the commercial court shall take a decision on removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers. Also the commercial court shall take said decision in cases when the breach discovered cannot be eliminated.

**12.** The application of the control (supervision) body for removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers shall be heard by the college of judges of the commercial court within one month after the receipt of the application.

The commercial court decision on removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers shall enter into force from the date of adoption and it is subject to appeal to the cassation commercial court.

The appeal the commercial court decision shall not be deemed ground for suspending the performance thereof.

If the cassation commercial court overturns the commercial court decision information on the non-profit organisation shall be included in the uniform state register of self-regulating organisations of qualified receivers within three days after the date of the cassation commercial court judgement.

**13.** A self-regulating organisation of qualified receivers that has discovered on its own that it does not meet the requirements set out in Paragraph 2 or 4 of Item 2 of Article 21 of the present Federal Law shall file an application in writing containing the below details with the control (supervision) body within 14 working days after the date of the discovery of this irregularity:

a description of the non-conformity;

the date of occurrence of the non-conformity;

a description of the measures being taken and/or planned by the self-regulating organisation for elimination of the non-conformity.

For two months after the receipt of the application the control (supervision) body shall not apply to a commercial court asking for removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers, and information on the non-profit organisation shall not be removed from the uniform state register of self-regulating organisations of qualified receivers on the ground specified in the application. Unless before the expiry of said term the self-regulating organisation provides the control (supervision) body with a proof that the self-regulating organisation's non-conformity with the requirements set out in Paragraph 2 or 4 of Item 2 of Article 21 of the present Federal Law has been eliminated the control (supervision) body shall file an application with the court asking for removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers.

**14.** For one year after the date of removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers the status of self-regulating organisation of qualified receivers shall not be granted to this organisation.

**Article 24.** Abrogated.

**Article 24.1.** The Contract of Compulsory Insurance of the Liability of a Qualified Receiver

**1.** A contract of compulsory insurance of the liability of a qualified receiver for causing losses to the persons deemed party to a bankruptcy case and to other persons due to a default on, or the improper execution of the duties vested in the qualified receiver in the bankruptcy case shall be concluded with an insurance organisation accredited by the self-regulating organisation of qualified receivers, for a term of at least one year on the condition of its resumption for the same term.

**2.** The minimum size of an insurance sum under the contract of obligatory insurance of the qualified receiver's liability

37

*[Unofficial translation from Russian]*

comprises three million roubles a year.

Within ten days from the date of approval by the commercial court in the procedures applied in a case on bankruptcy (with the exception of a case on bankruptcy of an absent debtor, as well as of a debtor, the balance cost of whose assets does not exceed one hundred million roubles), of a receiver and a winding-up receiver, they shall in addition conclude a contract of obligatory insurance of his liability for the recompense of the losses inflicted upon the persons taking part in the case on bankruptcy, and upon the other persons in connection with the non-execution or improper execution of the liabilities in a case on bankruptcy, imposed on the qualified receiver, with an insurance organisation accredited by the self-regulated organisation of qualified receivers. The amount of an insurance sum under the said contract shall be defined depending on the balance cost of the debtor's assets as on the last reporting date preceding the date of the introduction of the corresponding procedure, applied in a case on bankruptcy, and cannot be less than:

- three per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one hundred million roubles at the balance cost of the debtor's assets from one hundred million roubles and up to three hundred million roubles;

- six million roubles and two per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over three hundred million roubles at the balance sheet cost of the debtor's assets from three hundred million roubles and up to one billion roubles;

- twenty million roubles and one per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one billion roubles at the balance sheet cost of the debtor's assets over one billion roubles.

**2.1.** Under a decision of the collective managerial body the qualified receiver shall conclude a contract of compulsory insurance of liability under which the insurance sum exceeds the minimum insurance sum per year envisaged by Item 2 of the present article and is established in accordance with such decision.

Under a decision of the collective managerial body the qualified receiver shall do the following in connection with his/her being confirmed by a commercial court in the proceedings applicable in a bankruptcy case (except for the case of bankruptcy of an absent debtor and also of a debtor whose balance value of assets does not exceed 100,000,000 roubles): conclude -- apart from the additional contract of compulsory insurance of his/her liability envisaged by Item 2 of the present article -- an additional contract of insurance of the qualified receiver's liability under which the insurance sum is set in accordance with the decision of the collective managerial body.

Also apart from the additional contract of compulsory insurance of his/her liability envisaged by Item 2 of the present article the qualified receiver shall conclude an additional contract of insurance the qualified receiver's liability in the case envisaged by Item 5 of Article 45 of the present Federal Law.

**3.** The contract of compulsory insurance of the liability of the qualified receiver shall be extended for the next term, unless the qualified receiver had notified the insurer of refusal to extend it at least one month before the expiry of the effective term of the contract. The effect of the contract of compulsory insurance of the liability of the qualified receiver extended for the next term shall not be terminated in the event of late payment of insurance premium by the qualified receiver or late scheduled insurance contribution, given the delay does not exceed 30 days. If the contract of compulsory insurance of the liability of the qualified receiver is extended for a new term an insurance premium shall be paid in accordance with the insurance tariffs effective from the date of its payment.

**4.** The objects of the compulsory insurance of the liability of the qualified receiver are the property interests of the qualified receiver which do not conflict with the legislation of the Russian Federation, are connected with his/her obligation to compensate for losses to the persons deemed party to the bankruptcy case or to other persons due to his/her default on, or improper performance of, the duties vested therein in the bankruptcy case.

**5.** The insured accident under the contract of compulsory insurance of the liability of the qualified receiver is the onset of the qualified receiver's liability -- confirmed by a court decision that has become final -- owing the persons deemed party to the bankruptcy case or other persons due to the qualified receiver's default on, or improper performance of, the duties vested therein in the bankruptcy case, except for the cases envisaged by Item 6 of the present article.

**6.** The insured risk under the contract of compulsory insurance of the liability of the qualified receiver is the probability of onset of liability for the obligations specified in Item 5 of the present article, except for the onset of liability as the result of:

the infliction of losses resulting from force majeure, negative consequences of an activity relating to the use of nuclear fuel, for instance, pollution of atmospheric air, soil, body of water, radioactive contamination of the environment, individuals' exposure to radiation and also hostilities, armed rioting, popular unrest, activities of an illegal armed formation, terrorist activities and the declaration of martial law or state of emergency;

the infliction of moral harm;

illegal actions or omissions of another person;

*[Unofficial translation from Russian]*

actions or omissions of the qualified receiver not relating to his/her executing powers in a bankruptcy case.

In the cases mentioned in the present item the losses inflicted are subject to compensation in accordance with the legislation of the Russian Federation.

**7.** Upon the onset of the insured accident the insurer shall pay out indemnity in the amount of the losses inflicted on the persons deemed party to the bankruptcy case and to other persons as established by a court decision that has become final, but not exceeding the insurance amount according to the contract of compulsory insurance of the liability of the qualified receiver.

**8.** An insurance premium under the contract of compulsory insurance of the liability of the qualified receiver shall be paid by the qualified receiver to the insurer by cash or non-cash settlements of accounts on the dates established by said contract.

The contract of compulsory insurance of the liability of the qualified receiver may have a provision for the qualified receiver to pay insurance premium in several insurance contributions within on the dates established by said contract.

The date of payment of an insurance premium (insurance contribution) is the day on which the insurance premium (insurance contribution) is paid in cash to the insurer or the day on which the insurance premium (insurance contribution) is remitted to the settlement account of the insurer.

The contract of compulsory insurance of the liability of the qualified receiver shall enter into force when the insured pays the insurance premium or makes the first insurance contribution, except as otherwise is envisaged by the contract or a federal law.

**9.** The insurer is entitled to present a recourse claim to the qualified receiver who has caused losses and whose risk of liability is insured by the contract of compulsory insurance of the liability of the qualified receiver, in the amount of the insurance indemnity paid out, for instance, in cases when the losses have been inflicted as the result of:

deliberate actions or omissions of the qualified receiver that manifested themselves in his/her breaching provisions of the present Federal Law, other federal laws or other normative legal acts of the Russian Federation or federal standards or standards and rules of professional activity;

the qualified receiver's receiving any material gain (income, remuneration) in the course of execution of the duties vested therein in bankruptcy case, for instance, as the result of the use of the information he/she learned as the result of pursuance of an activity as a qualified receiver.

**10.** Control over qualified receivers' carrying out compulsory insurance of their liabilities shall be carried out by the self-regulating organisation of qualified receivers which is entitled to establish additional requirements -- consistent with the legislation of the Russian Federation -- applicable to the contracts of compulsory insurance of the liability of qualified receivers concluded by members of the self-regulating organisation. The contracts of compulsory insurance of liability concluded by qualified receivers shall be presented to the self-regulating organisations in which such qualified receivers are members, within the term established by the standards and rules of professional activity.

**11.** The non-observance by a qualified receiver of provisions relating to the contract of compulsory insurance of the liability of a qualified receiver envisaged by the present article is ground for expulsion of the qualified receiver form a self-regulating organisation.

**Article 25.** Abrogated.

**Article 25.1.** The Compensation Fund of a Self-Regulating Organisation of Qualified Receivers

**1.** For the purpose of effecting compensation disbursements in connection with compensation for the losses inflicted on the persons deemed party to a bankruptcy case and to other persons as the result of a qualified receiver's default on, or improper execution of the duties vested therein in the bankruptcy case qualified receivers shall take part in the formation of a compensation fund of the self-regulating organisation of qualified receivers that meets the requirements set out in the present Federal Law.

**2.** The compensation fund of a self-regulating organisation of qualified receivers is a detached property belonging to the self-regulating organisation by the right of ownership. It shall be maintained with membership dues of the members of the self-regulating organisation remitted only in monetary form at a rate of at least 200,000 roubles per each member thereof. The minimum amount of the compensation fund shall be 20,000,000 roubles. It is hereby prohibited to relieve a member of the self-regulating organisation of the duty to pay dues to the compensation fund of the self-regulating organisation.

**3.** A claim for a compensation from the compensation fund of the self-regulating organisation of qualified receivers may be presented to the self-regulating organisation by the person for whose benefit a decision on collection of losses has been taken only if the below conditions exist simultaneously:

the insufficiency of the funds received under a contract of compulsory insurance of the liability of a qualified receiver

39

*[Unofficial translation from Russian]*

to indemnify the losses caused by him/her;

the qualified receiver's refusal to meet the claim of such person or the qualified receiver's failure to meet the claim within 30 working days after the date of presentation of the claim.

**4.** A claim for a compensation from the compensation fund of self-regulating organisation of qualified receivers may be presented to:

the self-regulating organisation in which the qualified receiver was member from the date of commission of the actions or omissions that had caused losses to the persons deemed party to a bankruptcy case and to other persons due to the qualified receiver's default on, or improper execution of, the duties vested therein in the bankruptcy case;

the national association of self-regulating organisations of qualified receivers if the property that makes up the compensation fund of said self-regulating organisation has been transferred thereto.

**5.** The following shall be attached to a claim for compensation from the compensation fund of the self-regulating organisation of qualified receivers:

a court decision on collection of losses from the qualified receiver in a certain amount;

documents confirming that an insurance organisation has paid out the insurance amount under the contract of compulsory insurance of the liability of the qualified receiver;

a document confirming that the qualified receiver refused to meet a claim or that such claim has been sent to the qualified receiver which claim was not met by him/her within 30 working days after the dispatch thereof.

**6.** The self-regulating organisation of qualified receivers or the national association of self-regulating organisations of qualified receivers shall pay out a compensation within 60 calendar days after the receipt of the relevant claim or to provide the person that has presented the claim for compensation with a substantiated refusal to pay it out.

**7.** On the following grounds the self-regulating organisation of qualified receivers is entitled to refuse to pay out a compensation to a person that has presented a claim for compensation:

losses have been indemnified in full with insurance pay-out amounts;

the qualified receiver was not a member of this self-regulating organisation of qualified receivers from the date of commission of the actions or omissions that caused the losses to the persons deemed party to the bankruptcy case and to other persons due to the qualified receiver's default on, or improper performance of the duties vested therein in the bankruptcy case;

the documents established by Item 5 of the present article were not attached to the claim for compensation.

**8.** The national association of self-regulating organisations of qualified receivers shall meet a claim for compensation on the condition that it has acquired the property making up the compensation fund of the self-regulating organisation of qualified receivers in which the qualified receiver was a member from the date of commission of the actions or omissions that caused losses to the persons deemed party to the bankruptcy case and to other persons due to the qualified receiver's default on, or improper performance of the duties vested in him/her in the bankruptcy case.

A claim for compensation presented to the national association of self-regulating organisations of qualified receivers shall be filed together with the documents envisaged by Item 5 of the present Article.

**9.** A compensation in monetary form shall be sent to the account specified in the claim for compensation.

**10.** The spending of the compensation fund of the self-regulating organisation of qualified receivers for purposes not envisaged in the present article, for instance, for the payment out or refund of dues to members of the self-regulating organisation is prohibited.

**11.** The amount of a compensation disbursement out of the compensation fund of the self-regulating organisation of qualified receivers in which the qualified receiver was a member as of the date of commission of the actions or omissions that have ensued the infliction of damages to the persons participating in the bankruptcy case and to other persons in connection with a default on, or the improper performance of, the duties vested in the qualified receiver in a bankruptcy case shall not exceed 5,000,000 roubles on a demand for compensation disbursement as applicable to one case of causing damages.

The amount of a compensation disbursement out of the compensation fund of the self-regulating organisation of qualified receivers in which the qualified receiver was a member as of the date of commission of the actions or omissions ensuing the infliction of damages to the persons participating in a bankruptcy case and to other persons due to a default on, or improper performance of, the duties vested in the qualified receiver in the bankruptcy case, if such nominated qualified receiver was confirmed by the commercial court in the bankruptcy case in keeping with Paragraph 3 of Item 5 of Article 45 of the present Federal Law shall not exceed 1,000,000 roubles.

**12.** The property making up the compensation fund of a self-regulating organisations of qualified receivers is not

*[Unofficial translation from Russian]*

subject to levy of execution for the liabilities of the self-regulating organisation and also for the liabilities of members of the self-regulating organisation, unless such liabilities are relating to the realisation of the compensation pay-outs envisaged by the present Article.

**13.** In information about an non-profit organisation is removed from the uniform state register of self-regulating organisations of qualified receivers or if a non-profit organisation having the status of self-regulating organisation is liquidated the property that makes up the compensation fund of the self-regulating organisation of qualified receivers is subject to transfer to the national association of self-regulating organisations of qualified receivers.

**14.** The placement of resources of the compensation fund of the self-regulating organisation for the purpose of preservation and augmentation thereof as well as the investment of such resources shall be carried out by a managing company under a contract of trust administration of resources of the compensation fund of the self-regulating organisation.

**15.** The managing company shall:

invest the resources of the compensation fund of the self-regulating organisation of qualified receivers only in the interests of the self-regulating organisation;

ensure the compliance of the amount of, the composition of, and the procedure for investment of the resources of, the compensation fund of the self-regulating organisation with the requirements established by the present Federal Law;

invest resources of the compensation fund of the self-regulating organisation in a reasonable and bona fide manner on the basis of the need for ensuring the principles of reliability, liquidity and diversification;

conclude a contract with a specialised depositary and carry out transactions in the resources of the compensation fund of the self-regulating organisation which have been put under administration by the self-regulating organisation. Control over such transactions shall be carried out by the specialised depositary;

separate the resources of the compensation fund of the self-regulating organisation which are under administration under the contract of trust administration of such resources, in accordance with the provisions of Article 1018 of the Civil Code of the Russian Federation;

remit funds for the purpose of making compensation pay-outs within ten working days after the date of receipt of a notice from the self-regulating organisation or the national association of self-regulating organisations;

provide a report on the results of investment of resources of the compensation fund of the self-regulating organisation every year no later than December 31 of the current year;

send information on a monthly basis to the self-regulating organisation and to the control (supervision) body about the composition and structure of the property that makes up the compensation fund of the self-regulating organisation;

observe the provision prohibiting being an affiliated person of a self-regulating organisation and specialised depositary or their affiliated persons.

**16.** Control over the observance by companies of restrictions on the placement and investment of resources of the compensation fund of the self-regulating organisation, the rules for the placement thereof and the requirements governing the investment thereof shall be exercised by the specialised depositary under a contract for the provision of the services of specialised depositary. The self-regulating organisation and the control (supervision) body shall be notified by the specialised depositary of all cases of breach of the requirements established by the present Federal Law in respect of the amount and composition of resources of the compensation fund of a self-regulating organisation and the procedure for the investment thereof.

**17.** An income received from the placement of resources of the compensation fund of the self-regulating organisation shall be used to replenish it, cover the expenses relating to the maintenance of appropriate conditions for investment of resources of the compensation fund of the self-regulating organisation, for instance to pay out a fee to the managing company, as well as to pay taxes and to make other mandatory payments in respect of which the duty of their payment arises in connection with deriving incomes from placement of the compensation fund's assets of a self-regulating organisation of qualified receivers.

**18.** The self-regulating organisation of qualified receivers shall conclude contracts with the managing companies and with the specialised depositary which have been selected according to the results of a tender carried out in the procedure established by internal documents of the self-regulating organisation.

**19.** The collective managerial body shall confirm an investment declaration of the compensation fund of the self-regulating organisation. In accordance with the terms of the investment declaration of the compensation fund of the self-regulating organisation its resources may be placed exclusively in:

state securities of the Russian Federation;

state securities of subjects of the Russian Federation;

*[Unofficial translation from Russian]*

bonds of Russian issuers apart from those specified in Paragraphs 2 and 3 of the present item;

shares of Russian issuers formed as public joint stock companies;

mortgage securities issued in accordance with the legislation of the Russian Federation on mortgage securities;

amounts of money in roubles on accounts in Russian credit organisations, for instance, deposits;

participatory shares of investment trusts and shares of joint stock investment companies;

foreign currency amounts on accounts in Russian credit organisations, for instance, deposits.

The regulator is entitled to establish requirements applicable to the credit rating of the issuer of the securities envisaged by Paragraphs 4-6 of the present Item, and also to the credit rating of the securities envisaged by Paragraphs 3 and 5 of the present Item.

**20.** The managing companies shall observe the following restrictions while placing resources of the compensation fund of the self-regulating organisation:

resources of the compensation fund of the self-regulating organisation may be placed in the assets specified in Paragraphs 2-6 of Item 19 of the present article only if they are traded on the organised securities market;

the assets specified in Paragraphs 3, 4 and 7 of Item 19 of the present Article may make up in their entirety up to 30 per cent of the resources of the compensation fund of the self-regulating organisation;

securities of one issuer, except for state securities of the Russian Federation, may make up to five per cent of the resources of the compensation fund of the self-regulating organisation;

the assets specified in Paragraph 2 of Item 19 of the present Article shall make up at least 20 per cent of the resources of the compensation fund of the self-regulating organisation.

**21.** In its investment declaration the self-regulating organisation of qualified receivers is entitled to establish additional requirements applicable to the composition and structure of its property.

**22.** A managing company's breach of the requirements established by the present Federal Law and an investment declaration as applicable to the composition and structure of the property that makes up the compensation fund of the self-regulating organisation shall be deemed ground for rescission of the contract concluded with the managing company.

**23.** The procedure for placement of resources of the compensation fund of the self-regulating organisation that has been transferred to the national association of self-regulating organisations and the procedure for paying out compensations from its resources are subject to the requirements which are similar to those governing the procedure for placement of resources of the compensation fund of a self-regulating organisation and the procedure for paying out compensations from its resources.

**Article 26.** Abrogated.

**Article 26.1.** Associations of Self-Regulating Organisations of Qualified Receivers. The National Association of Self-Regulating Organisations of Qualified Receivers

**1.** Self-regulating organisations of qualified receivers are entitled to form associations of self-regulating organisations and to be members thereof.

**2.** An association of self-regulating organisations of qualified receivers incorporating more than 50 per cent of all the self-regulating organisations about which information is included in the uniform state register of self-regulating organisations of qualified receivers is entitled to acquire the status of national association of self-regulating organisations in the procedure established by the present Federal Law.

**3.** The association of self-regulating organisations of qualified receivers shall acquire the status of national association of self-regulating organisations of qualified receivers from the date when information about it is included in the uniform state register of self-regulating organisations of qualified receivers.

The control (supervision) body shall include information on the national association of self-regulating organisations of qualified receivers in the uniform state register of self-regulating organisations of qualified receivers within three working days after the date on which the following documents are submitted to the body:

an application for inclusion of information about the national association of self-regulating organisations of qualified receivers in the uniform state register of self-regulating organisations of qualified receivers together with the decision of a general meeting of participants in the national association of self-regulating organisations of qualified receivers whereby said application has been confirmed;

copies of the constitutive documents of the association of self-regulating organisations of qualified receivers attested by it;

*[Unofficial translation from Russian]*

copies of the membership applications of each member of the association of self-regulating organisations of qualified receivers attested by it.

**4.** The control (supervision) body shall refuse to include information about a national association of self-regulating organisations of qualified receivers in the uniform state register of self-regulating organisations of qualified receivers if:

the non-profit organisation has not submitted all the documents envisaged by Item 3 of the present article;

information about another national association of self-regulating organisations of qualified receivers has been included in the uniform state register of self-regulating organisations of qualified receivers.

**5.** The membership of a self-regulating organisation in the national association of self-regulating organisations of qualified receivers shall be terminated if:

the self-regulating organisation has submitted an application to the national association of self-regulating organisations of qualified receivers opting out from it;

the self-regulating organisation has been expelled from the national association of self-regulating organisations of qualified receivers on the grounds set out in the charter of the national association.

**6.** The control (supervision) body shall remove information about a national association of self-regulating organisations of qualified receivers from the uniform state register of self-regulating organisations of qualified receivers if:

a decision on its liquidation has been adopted by a court or the empowered body of the national association of self-regulating organisations of qualified receivers;

the number of members of the national association of self-regulating organisations of qualified receivers is less than 50 per cent of all the self-regulating organisations about which information has been included in the uniform state register of self-regulating organisations of qualified receivers, on an application of the association or also on an application of any self-regulating organisation that is not a member of this association, such application being filed at least six months after the occurrence of this circumstance.

**7.** A collective managerial body shall be formed in the national association of self-regulating organisations of qualified receivers, and it shall by all means include representatives of the self-regulating organisations being members of the national association of self-regulating organisations, and also one representative from the control (supervision) body and one from the regulator.

Independent experts, representatives of scientific, educational and public organisations who are not representatives of self-regulating organisations shall constitute up to 25 per cent of the members of the collective managerial body of the national association of self-regulating organisations of qualified receivers.

**8.** A self-regulating organisation of qualified receivers about which information is included in the uniform state register of self-regulating organisations of qualified receivers shall not be refused admission as member to the national association of self-regulating organisations of qualified receivers, except for cases when such self-regulating organisation has been expelled from this national association, provided less than two years have passed since the date of the expulsion.

**9.** The national association of self-regulating organisations of qualified receivers is entitled to:

elaborate federal standards;

elaborate a uniform qualified receiver training curriculum;

represent the interests of self-regulating organisations in their relations with governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation and local self-government bodies;

protect the rights and lawful interests of self-regulating organisations of qualified receivers;

take appeal to courts from acts and actions of governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation, local self-government bodies and their officials that infringe on the rights and lawful interests of any self-regulating organisation or a group of self-regulating organisations;

invite unions, associations and alliances of legal entities and individual entrepreneurs and other organisations to take part in a discussion of the legal, economic and social problems relating to the activities of qualified receivers;

prepare proposals for improving the legal and economic regulation of activities of qualified receivers;

exchange information and hold joint events with Russian legal entities, international organisations, foreign organisations, foreign scientists and specialists concerned;

send representatives to take part in the deliberations of commissions for holding a theory examination according to a uniform qualified receiver training curriculum;

*[Unofficial translation from Russian]*

send representatives to take part in the deliberations of liquidation commissions of self-regulating organisations;

execute the other powers corresponding to the goals of its activities.

**10.** The national association of self-regulating organisations of qualified receivers shall:

ensure the preservation of the compensation funds of self-regulating organisations that have been transferred thereto in accordance with Article 25.1 of the present Federal Law and pay out compensations from them in connection with compensation for the losses inflicted by qualified receivers who are members of self-regulating organisations to the persons deemed party to a bankruptcy case or to other persons;

establish the list of obligatory information, included by the self-regulated organisation into the register of qualified receivers, and the procedure for keeping such register by the self-regulated organisation;

establish a procedure for, and intervals between, the gathering, processing and storing information by self-regulating organisations concerning the activities of their members;

inform the control (supervision) body on changes in the composition of members of the national association of self-regulating organisations of qualified receivers, amendments to the constitutive documents of the national association of self-regulating organisations of qualified receivers and on changes in the other details concerning it;

establish requirements and criteria for the accreditation by the self-regulating organisations of the insolvency administrators of insurance organisations, professional participants of the securities market who carry out activity on the maintenance of the register of owners of securities, auditor organisations (auditors), appraisers, organisers of tenders, operators of electronic platforms and other persons involved by the insolvency administrator for ensuring the execution of duties assigned to him in bankruptcy proceedings funded by means of the debtor (hereinafter referred to as the accredited persons).

Such requirements and criteria of the accreditation shall establish an exhaustive list of conditions, including the term of accreditation which shall not be allowed to be less than one year, and the grounds for of its termination, the requirement to the aforementioned persons, including requirements to ensuring the liability of the accredited person.

**11.** The national association of self-regulating organisations of qualified receivers shall elaborate federal standards, for instance, in as much as it concerns the following:

the procedure for keeping and the maintenance of a register of creditors' claims;

the preparation, organisation and holding of meetings of creditors and creditors' committees;

an analysis of the financial state of a debtor;

the preparation of reports of a qualified receiver;

the performance of probation in the capacity of an assistant to a qualified receiver;

the verification by a self-regulating organisation of the activities of its members being qualified receivers.

**12.** The federal standards and the uniform qualified receiver training curriculum shall be sent by the national association of self-regulating organisations of qualified receivers to the regulator for confirmation.

**Article 27.** Proceedings Applicable in a Bankruptcy Case

**1.** The following proceedings shall be implemented when a case of bankruptcy of a debtor being a legal person is being heard:

supervision;

financial rehabilitation;

external administration;

administration;

amicable agreement.

**2.** For consideration of a bankruptcy case of an individual, including individual entrepreneurs, debt restructuring, asset sale or amicable agreement shall be used.

**Article 28.** Procedure for Disclosure of Information Envisaged by this Federal Law

**1.** Information subjected to publication in accordance with this Federal Law shall, on condition of their preliminary payment, be included in the Unified Register of Information on Bankruptcy and shall be published in the official printed media defined by the Government of the Russian Federation in compliance with the federal law.

*[Unofficial translation from Russian]*

**2.** The Unified Federal Register of Information on Bankruptcy is a federal information resource and it shall be maintained by means of including therein the information envisaged by this Federal Law. The Unified Federal Register of Information on Bankruptcy is an integral part of the Comprehensive Federal Register of Information on the Activities of Legal Entities.

The data contained in the Unified Federal Register of Data on Bankruptcy shall be public and generally accessible.

The data contained in the Unified Federal Register of Data on Bankruptcy is subject to placement on the Internet and may be used without any restrictions, in particular by way of their further transfer and/or dissemination.

The Uniform Federal Register of Information on Bankruptcy shall be kept and formed by the operator of the Uniform Federal Register of Information on Bankruptcy.

The operator of the Unified Federal Register of Data on Bankruptcy shall complete the development of the software-hardware complex of the Unified Federal Register on Data on Bankruptcy, in particular for ensuring the compliance of the functions of the Unified Federal Register of Data on Bankruptcy with the requirements of the legislation, for optimization of its functioning and for protecting the information contained therein.

For the purpose of this Federal Law, operator of the Unified Federal Register of Information on Bankruptcy shall be a legal entity registered in the Russian Federation, has technical facilities making it possible to ensure forming and keeping of such Register in electronic form and defined by the regulating authority in accordance with the federal law.

Paragraph 7 has lost force.

The procedure of the interaction of the operator of the Unified Federal Register of Information on Bankruptcy and the regulatory body shall be established by the regulatory body.

**3.** Along with the information that shall be included in the Unified Federal Register of Information on Bankruptcy according to this Federal Law, the information defined by a regulation authority shall also be subjected to inclusion in the register.

The reliability of the data on a debtor shall be checked prior to their inclusion in the Unified Federal Register of Information on Bankruptcy by the operator of the Unified Federal Register of Information on Bankruptcy by way of their comparison with the information contained in the comprehensive state register of legal entities and the comprehensive state register of individual businessmen.

**4.** An impediment for prompt and unrestricted access of any interested person to the information envisaged by this Federal Law shall not be the procedure for forming and keeping of the unified federal register of information on bankruptcy established by the regulating authority, the procedure and the terms for inclusion in it of the information specified above, by bankruptcy managers, self-regulating institutions, a control (supervision) body, market makers, electronic floor operators or other persons obliged to include such information in the unified federal register of information on bankruptcy according to this Federal Law, other federal laws, regulatory legal acts of the regulating authority, and the procedure for its publication on the Internet. The amount of payment for inclusion of the information in the unified federal register of information on bankruptcy, set by the regulating authority, shall be increased not more than once per year by the index of consumer price growth over the year that has passed.

Access to the official edition where the data cited in Item 1 of this article are published, its circulation, frequency, procedure for and time of publishing information about bankruptcy in such official edition, price of publishing the data cited in Item 1 of this article in such official edition (to be fixed by the Government of the Russian Federation) must not be an obstacle for the rapid and free access of any person concerned to the cited data.

The price of publishing of the data specified in Item 1 of the present Article shall be allowed to be indexed not more often than once a year by the index of the growth of consumer prices for the last year.

**4.1.** The information subject to inclusion in the Unified Federal Register of Information on Bankruptcy shall be included therein by a qualified receiver, unless liability for inclusion of the relevant information is vested in another person according to the present Federal Law.

The information subject to inclusion in the Unified Federal Register of Information on Bankruptcy may be included therein in the procedure established by Article 86 of the Fundamentals of the Legislation of the Russian Federation on the Notariate.

**4.2.** The person which in keeping with Federal Law includes information in the Unified Federal Register of Information on Bankruptcy shall sign the information in electronic form that includes appropriate information with an electronic signature, except as otherwise envisaged by the legislation of the Russian Federation.

A piece of information that has been included in the Unified Federal Register of Information on Bankruptcy in keeping with Paragraph 2 of Item 4.1 of the present article shall be signed with the qualified electronic signature of the notary who has

45

*[Unofficial translation from Russian]*

included said piece of information.

**5.** The outlays connected with inclusion by a qualified receiver of data in the Unified Federal Register of Information on Bankruptcy and their publication shall be reimbursed on account of the debtor's property, if not otherwise provided for by this Federal Law or by a decision of creditors' meeting.

If the debtor's property is insufficient for reimbursement of the outlays connected with inclusion of data in the Unified Federal Register of Information on Bankruptcy and their publication, appropriate actions shall be made on account of assets of the creditor applying for initiation of bankruptcy proceedings in respect of the debtor.

The outlays connected with publication of data on self-regulating organisations in the Unified Federal Register of Information on Bankruptcy shall be reimbursed on account of assets of a self-regulating organisation.

Expenses related to publishing of information on the release or suspension of an insolvency practitioner from his duties in a bankruptcy case, acknowledgement of his actions (omission) illegitimate, charging of losses from the insolvency practitioner and inclusion of such information in the unified federal register of information on bankruptcy shall be compensated with funds of such insolvency practitioner.

If the information on release or suspension of an insolvency practitioner from his duties in a bankruptcy case, acknowledgement of his actions (omission) illegitimate or charging of losses from the insolvency practitioner is not included in the unified federal register of information on bankruptcy by such insolvency practitioner in accordance with this Federal Law within a month from the day of delivery of the respective court act, the information shall be included by the self-regulating organisation of insolvency practitioners at the account of its own funds with the subsequent compensation of the expenses with funds of the said insolvency practitioner.

The state power bodies and local authorities shall include data in the Unified Federal Register of Information on Bankruptcy on a free-of-charge basis.

**6.** When following the procedures applicable in a bankruptcy case, the given below data shall be published without fail:

on institution of supervision, financial rehabilitation and external administration, on deeming the debtor bankrupt and on the commencement of a winding-up proceeding;

on termination of a proceeding in the bankruptcy case;

on confirming, dismissal or relieving a qualified receiver;

on satisfying third persons' applications stating an intention to repay the debtor's liabilities;

on holding a sale of the debtor's property and on the results thereof;

on the cancellation or modification of the information envisaged by Paragraphs 2 - 6 of the present item and/or of the judicial acts containing such information;

the other information envisaged by the present Federal Law.

**6.1.** Not later than within 10 days after the date of completion of the procedure applied in the bankruptcy case, the bankruptcy manager shall include in the Unified Federal Register of Information on Bankruptcy the notification of the results of the applied procedure as such information (report). The notification shall contain the following:

Name of the debtor, its address and identification information (state registration number of record on state registration of legal entity, state registration number of record on state registration of individual entrepreneur, taxpayer identification number, insurance number of individual personal account);

Name of the commercial court considering the bankruptcy case, name of the procedure applied in the case and the number of the bankruptcy case;

surname, name and patronymic of the approved bankruptcy manager as of the date of completion of the procedure applied in the bankruptcy case, his taxpayer identification number, insurance number of individual personal account, address for sending mail and name of the corresponding self-regulating institution, state registration number of record on state registration of such institution, its taxpayer identification number and address;

existence of applications for acknowledging the debtor's transactions invalid, filed in compliance with Chapter III.1 of this Federal Law specifying the date of consideration of the applications, results of the consideration and the results of appealing against judicial acts issued following the results of consideration of such applications;

existence of a complaint against actions or omissions of the bankruptcy manager specifying the date of the complaint, the person against whom the complaint was directed, brief description of the complaint and the decision taken on the basis of its consideration;

*[Unofficial translation from Russian]*

value of the debtor's property revealed in the course of inventory and the date of end of the inventory, if it was carried out within the procedure applied in the bankruptcy case;

amount of expenses for the procedure applied in the bankruptcy case, including specification of the amount of compensation paid to the bankruptcy manager and justification of the amounts paid, including expenses for payment for services of persons involved by the bankruptcy manager for support of his activities and the grounds for the excess of the amount of payment for such services defined in compliance with Article 20.7 of this Federal Law;

book value (if any) of the debtor's property as of the last reporting date preceding the date of implementation of the corresponding procedure applied in the bankruptcy case, and the date as of which such value was defined;

conclusions regarding the existence or absence of signs of premediated and fictitious bankruptcy;

source of reimbursement of expenses for the procedure applied in the bankruptcy case;

date and grounds for termination of proceedings on the bankruptcy case, if the commercial court takes such decision.

**6.2.** Following the results of the supervision, the notification shall also contain the following information:

Dates of judicial acts on start and end of the supervision and dates of passing judicial acts on change of terms of such procedure;

Amounts of creditors' claims as fixed in the register of creditors' claims as of the date of passing a judicial act on the end of the supervision (including specification of the amount of claims for payment of retirement benefits and salaries to persons working or who worked under a labour contract, of the principal and forfeits (penalties or late payment fees) charged and other financial sanctions) and total amount of claims of each priority satisfied within the period of supervision;

Conclusions following the results of analysis of the debtor's financial standing (including those on sufficiency of the debtor's funds for covering court fees and expenses for payment of compensation to the bankruptcy manager, the possibility or impossibility of recovery of the debtor's solvency), information on the date of the first meeting of the creditors and decisions taken by them, information on the resolution part of the judicial act on the results of the supervision.

data on the number of the debtor's employees and former employees that have claims for payment of severance benefits and/or labour wages included into the register of creditors' claims.

**6.3.** Following the results of the financial rehabilitation, the notification shall also contain the following information:

Dates of passing judicial acts on start and end of the financial rehabilitation and dates of passing judicial acts on change of terms of such procedure;

Amount of creditors' claims in compliance with the register of creditors' claims as of the date of passing the judicial act on end of the financial rehabilitation (including specification of the amount of claims for payment of retirement benefits and salaries to persons working or who worked under a labour contract, of the principal and forfeits (penalties or late payment fees) charged and other financial sanctions) and the total amount of claims of each priority satisfied within the period of financial rehabilitation;

date of holding of meeting of creditors following the results of the financial rehabilitation and the decisions taken by them, as well as information on resolution part of the judicial act on the results of the financial rehabilitation.

data on the number of the debtor's employees and former employees that have claims for payment of severance benefits and/or labour wages included into the register of creditors' claims.

**6.4.** Following the results of the external management, the notification shall also contain the following information:

Dates of passing judicial acts on the start and end of the external management and dates of passing judicial acts on change of the terms of such procedure;

Amount of creditors' claims according to the register of creditors' claims as of the date of passing the judicial act on the end of the external management (including specification of the amount of claims for payment of retirement benefits and salaries to persons working or who worked under a labour contract, of the principal and forfeits (penalties or late payment fees) charged and other financial sanctions) and the total amount of claims of each priority satisfied within the period of the external management;

Date of holding of the general meeting of creditors that has approved the plan of the external management, transactions subjected to coordination with the meeting of creditors (committee of creditors), according to Article 104 of this Federal Law;

Information on the proposal of the bankruptcy manager following the results of the external management, contained in the report on the external manager, date of holding the meeting of creditors following the results of the external management and the decisions taken, and on the resolution part of the judicial act on the results of the external management.

*[Unofficial translation from Russian]*

data on the number of the debtor's employees and former employees that have claims for payment of severance benefits and/or labour wages included into the register of creditors' claims.

**6.5.** Following the results of the bankruptcy proceedings, the notification shall also include the following information:

Dates of passing the judicial acts on acknowledging the debtor bankrupt, start and end of bankruptcy proceedings and dates of passing the judicial acts on change of the terms of such procedure;

Amount of claims of the creditors, according to the register of creditors' claims as of the date of closure of the register of creditors' claims (including specification of the amount of claims for payment of retirement benefits and salaries to persons working or who worked under a labour contract, of the principal and forfeits (penalties or late payment fees) charged and other financial sanctions) and the total amount of claims of each priority satisfied within the period of the bankruptcy proceedings;

The value of assets not included in the bankruptcy estate, information on the subsidiary responsibility of the persons controlling the debtor, on the results of evaluation of the debtor's property if it was carried out, specifying the property, dates of the evaluation and the value of property as stated in the evaluation report;

Date of holding the meeting of creditors following the results of the bankruptcy proceedings and the decisions taken, and information on resolution part of the judicial act on the results of the bankruptcy proceedings.

data on the number of the debtor's employees and former employees that have claims for payment of severance benefits and/or labour wages included into the register of creditors' claims.

**6.6.** Each quarter an operator of the Unified Federal Register of Information on Bankruptcy shall provide consolidated information for the corresponding period to federal executive authorities authorized by the Russian Federation Government, on the basis of information on the results of procedures applied in the bankruptcy procedure envisaged by Items 6.1 - 6.5 of this Article. Such information shall contain the following:

Total amount of creditors' claims as of the date of provision of the consolidated information on bankruptcy (insolvency) cases pending in commercial courts or completed for the corresponding period, including specification of the amount of claims for payment of retirement benefits and salaries to persons working or who worked under a labour contract, of the principal and forfeits (penalties or late payment fees) charged and other financial sanctions citing the number of the debtor's employees and former employees that have claims for payment of severance benefits and/or labour wages included into the register of creditors' claims;

total amount of claims of each priority satisfied in the course of the procedures applied in the bankruptcy case;

amount of expenses for the procedures applied in the bankruptcy case specifying the amount of compensation paid by the bankruptcy manager and the amount of expenses for compensation to persons involved by bankruptcy managers to support their activities;

number of conclusions regarding the existence and those regarding the absence of signs of premediated and fictitious bankruptcy;

other information established by the Government of the Russian Federation.

**7.** On the basis of a decision of a meeting of creditors or of a committee of creditors the information subject to compulsory publication may be published in the official edition designated in accordance with Item 1 of the present article as well as in other mass media.

A decision of a meeting of creditors may provide for other data to be included in the Comprehensive Federal Register of Information on Bankruptcy.

**8.** Except as otherwise envisaged by the present Federal Law, the information subject to publication shall contain:

the debtor's name, address and identification data thereof (the state registration number of the entry on the state registration of the legal entity, the state registration number of the entry on the state registration of the individual entrepreneur, the taxpayer identification number and the insurance number of the individual personal account);

the name of the commercial court that has adopted the judicial act, the date of the judicial act, an indication of the name of the proceeding being applied in the bankruptcy case and the number of the bankruptcy case;

the surname, first name and patronymic of the qualified receiver that has been confirmed, his/her taxpayer's individual number, the insurance number of the individual personal account and his/her address for correspondence, as well as the name of the relevant self-regulating organisation, the state registration number of the entry on the state registration of such organisation, its taxpayer's individual number and address;

the date of the next court session set by the commercial court for the hearing of the bankruptcy case if it is required by the present Federal Law;

*[Unofficial translation from Russian]*

other information in the cases envisaged by the present Federal Law and normative legal acts of the regulating body.

**Article 29.** The Powers of Executive Governmental Bodies and Local Self-Government Bodies to Resolve Issues of Financial Rehabilitation and Bankruptcy

**1.** For the purpose of implementing a state policy on issues of financial rehabilitation and bankruptcy the Government of the Russian Federation shall:

establish a procedure for the body empowered for representation purposes in a bankruptcy case and in the proceedings applicable in a bankruptcy case to file claims for compulsory payments and claims of the Russian Federation for money obligations and applications for deeming a debtor bankrupt;

establish a procedure for consolidating and representing claims in a bankruptcy case and in the proceedings applicable in a bankruptcy case for compulsory payments and claims of the Russian Federation for money obligations;

coordinate the activities of representatives of federal executive governmental bodies and representatives of state non-budget funds as creditors for money obligations and compulsory payments;

establish a procedure for keeping record of, and analysing the solvency of, strategic enterprises and organisations.

**2.** In a bankruptcy case and in the proceedings applicable in a bankruptcy case the federal executive governmental bodies deemed "empowered bodies" according to Article 2 of the present Federal Law shall present claims for compulsory payments and claims of the Russian Federation for money obligations.

**3.** The control (supervision) body shall:

include information about non-profit organisations in the uniform state register of self-regulating organisations of qualified receivers and shall keep it;

exercise control (supervision) over the observance by self-regulating organisations of qualified receivers of the federal laws and the other normative legal acts of the Russian Federation regulating the activities of self-regulating organisations;

carry out inspections of self-regulating organisations of qualified receivers in the procedure established by the regulator;

file an application with a commercial court for removal of information about non-profit organisations from the uniform state register of self-regulating organisations of qualified receivers in the cases established by the present Federal Law;

take part in the organisation of training of qualified receivers and in the conducting and holding a theory examination according to a uniform curriculum for training them;

bring action in a case of administrative offence in respect of a qualified receiver, self-regulating organisation of qualified receivers and/or an official thereof and shall consider such case or refer it to a commercial court for hearing;

render support to self-regulating organisations of qualified receivers and to qualified receivers in the course of the proceedings applicable in a bankruptcy case and related to issues of transborder insolvency (an insolvency (bankruptcy) complicated by a foreign element);

establish the status of association of self-regulating organisations of qualified receivers as a national association of self-regulating organisations of qualified receivers by means of including relevant information in the uniform state register of self-regulating organisations of qualified receivers;

include information on qualified receivers in a consolidated state register of qualified receivers that has information nature, and shall keep the consolidated state register of qualified receivers in accordance with the procedure established by the regulating body;

confirm the composition of a commission for holding a theory examination according to the uniform qualified receiver training curriculum;

remove information about non-profit organisations from the uniform state register of self-regulating organisations of qualified receivers in the cases envisaged by the present Federal Law;

execute the other powers vested therein by the present Federal Law, other federal laws and other normative legal acts of the Russian Federation.

**4.** The regulator shall confirm:

a uniform qualified receiver training curriculum and rules for conducting and taking a theory examination according to such curriculum;

federal standards.

The regulator shall confirm federal standards or if they do not comply with the provisions of Federal Law or of other federal laws it shall issue a substantiated refusal to grant confirmation thereto, within 60 working days after the date of submission of the federal standards by the national association of self-regulating organisations of qualified receivers.

Confirmed federal standards shall be published by the regulator in the procedure established for the publication of normative legal acts of federal executive governmental bodies and placement on the regulator's official internet website, and they shall enter into force upon the expiry of ten days after the date of their publication.

Confirmed federal standards are not subject to state registration.

**5.** The Government of the Russian Federation shall establish a procedure for taking into account the opinions of executive governmental bodies of subjects of the Russian Federation and local self-government bodies when federal executive governmental bodies shape up their position as creditors in respect of compulsory payments in the course of the proceedings applicable in a bankruptcy case.

**6.** Every quarter the territorial bodies of the federal executive governmental body charged with security matters shall provide information on the organisations holding licences for performance of works with the use of information classified as state secret to the commercial courts at the place where said organisations are located and to the territorial bodies of the control (supervision) body.

### Chapter II. Bankruptcy Prevention

**Article 30.** Measures for Preventing Organisations' Bankruptcy

**1.** If evidence of bankruptcy established by Item 2 of Article 3 of the present Federal Law appears, the head of the debtor shall send information on the availability of the signs of bankruptcy to the owner of the property of the debtor being an unitary enterprise and to the persons having the right of initiating the convocation of an off-schedule general meeting of shareholders (stockholders) within 10 days after the date when the head learned or had to learn about the occurrence thereof.

**2.** In the cases specified by a federal law the promoters (stockholders) of the debtor, the owner of property of the debtor being a unitary enterprise, federal executive governmental bodies, the executive bodies of Russian regions, local government bodies shall take timely measures for preventing organisations' bankruptcy.

**3.** For the purposes of preventing organisations' bankruptcy the promoters (stockholders) of the debtor, the owner of property of the debtor being a unitary enterprise before the filing of a petition for declaring the debtor bankrupt with a commercial court shall take measures with a view to restoring the solvency of the debtor. The measures aimed at restoring the solvency of the debtor may be taken by creditors or other persons under an agreement with the debtor.

**Article 31.** Rehabilitation

**1.** The promoters (stockholders) of a debtor, the owner of property of a debtor being a unitary enterprise, the creditors and other persons within the framework of bankruptcy prevention measures may provide financial assistance to the debtor in an amount sufficient for repayment of monetary obligations, claims for paying severance benefits and/or wages to the persons who are working or have been working under a labour contract and mandatory payments and for restoration of the debtor's solvency (rehabilitation).

**2.** When financial assistance is being provided the debtor or other persons may assume obligations for the benefit of persons which provide financial assistance.

### Chapter III. The Hearing of Bankruptcy Cases
### in a Commercial Court

**Article 32.** Procedure for Hearing Bankruptcy Cases

**1.** Cases of bankruptcy of a legal person or an individual, in particular an individual entrepreneur, shall be heard by a commercial court in accordance with the rules set out by the Arbitration Procedural Code of the Russian Federation, and with due regard to the features established by the present Federal Law.

**2.** The features of hearing bankruptcy cases established by the present chapter shall be applicable, except as otherwise envisaged by other chapters of the present Federal Law.

**Article 33.** The Cognisance and Jurisdiction Concerning Bankruptcy Cases

**1.** Cases of bankruptcy of a legal person or an individual, in particular an individual entrepreneur, shall be heard by the commercial court at the location of the debtor being a legal person or at the place of residence of the natural person.

**2.** The application for declaring a debtor bankrupt shall be accepted by a commercial court if claims to the debtor being a legal person in the aggregate make up at least 300,000 roubles, or to the debtor being an individual at least 500,000 roubles, and if the said claims are undercharged within the three-month term after their due date, except as otherwise envisaged by the

[Unofficial translation from Russian]

present Federal Law.

**3.** A bankruptcy case shall not be referred to arbitration for consideration.

**Article 34.** The Persons Deemed Party to a Bankruptcy Case

**1.** The persons deemed party to a bankruptcy case shall be as follows:

the debtor;

a qualified receiver;

the bankruptcy creditors;

authorised bodies;

the federal executive governmental bodies and also the governmental bodies of Russian regions and local government bodies at the location of the debtor in the cases specified by the present Federal Law;

the person which has provided security for the conduct of financial rehabilitation.

**2.** In the course of any proceeding applicable in a bankruptcy case the persons specified in Item 1 of the present Article are entitled to file a petition with the commercial court for an exert examination to be ordered for the purpose of detecting signs of a deliberate or fictitious bankruptcy and committing the procedural actions envisaged by the present Federal Law in the arbitration litigation in the case of bankruptcy and the other actions required for the realisation of the rights granted.

Expenses towards the performance of said expert examination shall be compensated for with funds of the person that has filed the petition for said expert examination.

**3.** Persons participating in the bankruptcy case shall have the right to submit the documents envisaged by this Federal Law to the commercial court in electronic form and to fill out the forms published on the official website of the commercial court through the procedure set by the Supreme Court of the Russian Federation within its authority.

**Article 35.** The Persons Deemed Party to Arbitration Litigation in a Bankruptcy Case

**1.** The following persons are deemed party to an arbitration litigation in a bankruptcy case:

a representative of the debtor's employees;

a representative of the owner of property of the debtor being an unitary enterprise;

a representative of the debtor's founders (stockholders);

a representative of a creditors' meeting or a representative of a creditors' committee

a representative of the federal executive governmental body charged with security matters if the execution of the powers of the qualified receiver is relating to access to information deemed state secret;

the following bodies empowered in the proceedings applicable in a bankruptcy case to represent the interests of subjects of the Russian Federation and municipal formations: executive governmental bodies of the subjects of the Russian Federation and local self-government bodies respectively at the place where the debtor is located;

other persons in the cases envisaged by the Arbitration Procedural Code of the Russian Federation and the present Federal Law.

**2.** The following are entitled to take part in an arbitration litigation in a bankruptcy case:

the self-regulating organisation of qualified receivers that nominates qualified receivers for being confirmed in the bankruptcy case or whose member has been confirmed as a qualified receiver in the bankruptcy case, when issues relating to the confirmation, dismissal or relief of qualified receivers and also complaints against actions of qualified receivers are being heard;

the control (supervision) body when issues relating to the confirmation of qualified receivers are being heard;

creditors for current payments when issues relating to infringement on the creditors' rights relating to current payments are being heard.

**3.** The persons specified in Item 2 of the present article are entitled to read bankruptcy case materials, make excerpts from them and copies of them.

**4.** Persons participating in the bankruptcy case shall have the right to submit the documents envisaged by this Federal Law to the commercial court in electronic form and to fill out the forms published on the official website of the commercial court through the procedure set by the Supreme Court of the Russian Federation within its authority.

*[Unofficial translation from Russian]*

**Article 36.** Representation in a Bankruptcy Case

**1.** The individuals, in particular individual entrepreneurs, and the organisations deemed party to a bankruptcy case or deemed participants in the arbitration process in a bankruptcy case may be represented by any individuals having dispositive legal capacity and appropriately documented powers to conduct the bankruptcy case.

**2.** The powers of the heads of organisations acting in the name of the organisations within the scope of the powers set out by a federal law, another regulatory legal act or constitutive documents shall be confirmed by the documents they file with the court as identifying their positions and also by constitutive and other documents.

**3.** The powers of legal representatives shall be confirmed by the documents filed with the court to identify their status and powers.

**4.** Other representatives' powers to conduct a bankruptcy case in a commercial court shall be expressed in a power of attorney issued and drawn up in compliance with federal law and in the cases specified by an international treaty of the Russian Federation or a federal law, or another document.

**Article 37.** The Application of a Debtor

**1.** The application of a debtor shall be filed with the commercial court in written form. The said application shall be signed by the head of the debtor being a legal person or by a person authorised under the debtor's constitutive documents to file applications for declaring a debtor bankrupt or by the debtor being an individual.

The application of a debtor shall be signed by a representative of the debtor if such power is expressly stated in the representative's power of attorney.

**2.** The following shall be indicated in the application of a debtor:

the name of the commercial court with which said application is filed;

the sum of creditors' claims relating to monetary obligations in an amount not disputed by the debtor;

the sum of debts owing as compensation for harm inflicted on individuals' life and health, compensation to be paid in excess of the compensation for harm, wages/salaries and severance benefits payable to the debtor's employees, the sum of royalties payable to the authors of the results of intellectual activity;

the sum of debts relating to mandatory payments;

an explanation of the impossibility of meeting the creditors' claims in full or of a significant aggravation in economic activity in the event of levying execution against the debtor's property;

information on the statements of claim to the debtor, writs of execution, as well as other documents presented for the purpose of writing off amounts of money from the debtor's accounts according to the compulsory procedure, which are accepted by courts of general jurisdiction, commercial courts, arbitral tribunals to institute proceedings upon;

information on the property owned by the debtor, in particular funds and accounts receivable;

the numbers of the debtor's accounts opened with banks and other credit organisations, the addresses of the banks and other credit organisations;

the name and address of the self-regulating organisation from among whose members the commercial court approves an interim receiver;

the denomination and address of the self-regulating organisation which is determined in the procedure established in compliance with Item 5 of this article from among whose members the interim receiver is to be approved;

a list of the documents attached.

If a debtor uses in its activities data constituting state secrets, in the application shall be indicated the form of access to state secrets of the debtor's head.

The application of a debtor may comprise other information concerning the hearing of the bankruptcy case.

The debtor's petitions may be also attached to the application of the debtor.

The application of a debtor shall not comprise requirements concerning an interim receiver nominee.

**3.** The application of a debtor being an individual shall also comprise information on the debtor's obligations not relating to his/her entrepreneurial activity.

**4.** The debtor shall send copies of his/her application to the bankruptcy creditors, authorised bodies, the owner of property of the debtor being a unitary enterprise, the board of directors (supervisory board) or another similar collective

*[Unofficial translation from Russian]*

managerial body and also to other persons in the cases specified by the present Federal Law. If before the filing of the debtor's application a representative of the owner of property of the debtor being a unitary enterprise, a representative of the debtor's promoters (stockholders), or a representative of the debtor's employees have been elected (appointed), copies of the debtor's application shall be sent to these persons.

At least 15 calendar days before filing a debtor's application the debtor shall publish a notice of a debtor's application being filed with the commercial court by means of including it in the Unified Federal Register of Information on the Activities of Legal Entities.

5. For the purposes of indicating a self-regulating organisation of qualified receivers in the debtor's application it shall be designated by random selection in the procedure established by the regulator when the notice of the debtor's application being filed with the commercial court is being published.

**Article 38.** The Documents Attached to the Application of a Debtor

**1.** Apart from the documents envisaged by the Arbitration Procedural Code of the Russian Federation the debtor's application may be filed together with documents confirming:

the existence of the debt and also debtor's inability to meet creditors' claims in full;

the ground for the occurrence of the debt;

the other circumstances serving as basis for the debtor's application.

**2.** The following shall be also attached to the application of a debtor:

the constitutive documents of a debtor being a legal person and also the certificate of state registration of the legal person or the document of the state registration of the individual businessman;

a list of the applicant's creditors and debtors together with a breakdown of accounts payable and accounts receivable and an indication of the addresses of the applicant's creditors and debtors;

the balance sheet as of the last accounting date, or documents substituting it, or documents showing the composition and value of the property of a debtor being an individual;

the decision of the owner of property of a debtor being a unitary enterprise or of the debtor's promoters (stockholders), and also of another authorised body of the debtor, to file the debtor's application, if any, with the commercial court;

the decision of the owner of property of a debtor being a unitary enterprise or of the debtor's promoters (stockholders), and also of other authorised body of the debtor, to elect (appoint) a representative of the debtor's promoters (stockholders) or a representative of the owner of property of the debtor being a unitary enterprise;

the minutes of the meeting of the debtor's employees which elected a representative of the debtor's employees to take part in the commercial court proceedings on the bankruptcy case, if said meeting had been held before filing the debtor's application;

a report on the value of the debtor's property prepared by an appraiser, if any;

documents proving the head of the debtor has access to state secrets with an indication of the form of such access (if the debtor has a licence for carrying out works with the use of the data constituting state secrets);

other documents in the cases specified by the present Federal Law.

**3.** The originals of the documents specified in this article or their appropriately attested copies shall be attached to the application of a debtor.

**Article 39.** The Application of a Bankruptcy Creditor, of the Debtor's Employee or Former Employee

**1.** The application of a bankruptcy creditor, of the debtor's employee or former employee for declaring a debtor bankrupt (hereinafter referred to as "creditor's application") shall be filed with a commercial court in written form. The application of a creditor being a legal person shall be signed by the person's head or representative, and the application of a creditor being an individual shall be signed by the individual or his/her representative.

**2.** The following shall be indicated in the creditor's application:

the name of the commercial court with which the creditor's application is filed;

the name (surname, first name and patronymic) of the debtor and its/his/her address;

the registration details of the debtor being a legal entity (the state registration number of the entry of the state registration of the legal entity and the taxpayer identification number);

*[Unofficial translation from Russian]*

the name (surname, first name and patronymic) of the bankruptcy creditor and the debtor's employee or former employee, as well as their addresses;

the amount of claim of the bankruptcy creditor, of the debtor's employee or former employee to the debtor and the amount of interest and forfeit money (fines and penalties) payable;

the obligation from which the debtor's claim in respect of the bankruptcy creditor, of the debtor's employee or former employee has occurred, and the due date of the obligation;

where it is provided for by this Federal Law, an effective decision of a general jurisdiction court, commercial court or an arbitral tribunal that have considered the claims against the debtor of a bankruptcy creditor, the debtor's employee or former employee, as well as the judicial act of a general jurisdiction court or commercial court serving as the basis for issuance of a writ of execution for enforcement of an arbitral tribunal's award;

an evidence of the grounds for the occurrence of the debt (invoices, consignment notes and other documents);

the candidature of an interim receiver (the surname, first name and patronymic of a qualified receiver, and the designation and address of the self-regulated organisation whose member he is), or the designation and address of the self-regulated organisation from among whose members an interim receiver shall be approved;

a list of the documents attached to the application.

The bankruptcy creditor, the debtor's employee or former employee in the creditor's application is entitled to indicate additional qualifications for interim receiver nominee. Another information relating to the hearing of the bankruptcy case may be provided in the creditor's application.

The petitions the bankruptcy creditor, the debtor's employee or former employee has may be attached to the creditor's application.

**3.** The bankruptcy creditor shall send a copy of his application to the debtor.

**4.** The application of a creditor may be based on a consolidated debt relating to different circumstances.

**5.** Bankruptcy creditors or the debtor's employees or former employees are entitled to put their claims to the debtor together and file a single creditor's application with the court. Such an application shall be signed by the bankruptcy creditors or by the debtor's employees or former employees which have put together their claims.

**Article 40.** The Documents Attached to the Application of a Creditor

**1.** Apart from the documents specified by the Arbitration Procedural Code of the Russian Federation the application of a creditor shall be accompanied with documents confirming:

the debtor's obligations to the bankruptcy creditor, the debtor's employee or former employee and also the availability and sum of the debt relating to the said obligations;

proof of the grounds for the occurrence of the debt (invoices, waybills and other documents);

other circumstances on which the creditors' application is based.

**2.** A creditor's application signed by a representative of the bankruptcy creditor or a representative of the debtor's employees shall also have attached thereto power of attorney proving the authority of the person that has signed the cited application to file it or, where it is provided for an international treaty of the Russian Federation or by federal law some other document proving the authority of such representatives.

**3.** Where it is provided for by this Federal Law, attached to a creditor's application shall be an effective decision of a general jurisdiction court, commercial court or arbitral tribunal that have considered the claims against the debtor of a bankruptcy creditor, of the debtor's employee or former employee.

Where the claim against the debtor of a bankruptcy creditor, of the debtor's employee or former employee is confirmed by an arbitral tribunal's award, attached to a bankruptcy creditor's application shall be likewise the judicial act of a general jurisdiction court or commercial court serving as the basis for issuance of a writ of execution for enforcement of the arbitral tribunal's award.

**Article 41.** The Empowered Body's Application

**1.** An application of the empowered body for a debtor to be deemed bankrupt in as much as it concerns a debt relating to money obligations (hereinafter referred to as "the empowered body's application") shall meet the requirements applicable to the creditor's application.

**2.** The empowered body's application shall be filed with the commercial court in writing.

54

*[Unofficial translation from Russian]*

**3.** The following shall be indicated in the empowered body's application:

the name of the commercial court with which the creditor's application is filed.

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the debtor and its/his/her address;

the registration details of the debtor being a legal entity (the state registration number of the entry on the state registration of the legal entity and the taxpayer identification number);

the name of the empowered body and its address;

the amount of the empowered body's claims addressed to the debtor and the amount of interest and forfeit money (fines and penalties) payable;

the requisite elements of an effective decision of the general jurisdiction court or arbitral tribunal that considered the authorized body's claims against the debtor where it is provided for by the legislation of the Russian Federation, as well as the judicial act of a general jurisdiction court or commercial court serving as the basis for issuance of a writ of execution for enforcement of the arbitral tribunal's award;

an evidence of the occurrence of the debt;

the candidature of an interim receiver (the surname, first name and patronymic of a qualified receiver, and the designation and address of the self-regulated organisation whose member he is), or the designation and address of the self-regulated organisation from among whose members an interim receiver shall be approved;

a list of the documents attached to the creditor's application.

Also another information relating to the hearing of the bankruptcy case may be provided in the empowered body's application.

The petitions the empowered body has may be attached to the empowered body's application.

**4.** The empowered body shall send a copy of its application to the debtor.

**5.** The empowered body's application may be based on consolidated debts relating to different liabilities.

**6.** The following shall be attached to the empowered body's application containing a claim for compulsory payments: the non-performed or partially performed decision of the tax body and/or decision of the customs body on collection of the debtor's amounts of money and/or property for debts. The empowered application shall be filed together with information -- according to the empowered body - about the debts relating to compulsory payments.

**Article 42.** Accepting an Application for Declaring a Debtor Bankrupt

**1.** The commercial court judge shall accept an application for declaring a debtor bankrupt filed in compliance with the standards set by the Arbitration Procedural Code of the Russian Federation and the present Federal Law.

In case when the filing of an application of a debtor with a commercial court is compulsory but such an application is not accompanied by all the documents required under Article 38 of the present Federal Law, the said application shall be accepted by the commercial court for further proceedings and the lacking documents shall be demanded when a bankruptcy case is prepared for court hearing.

**2.** The commercial court judge shall issue a ruling on the acceptance of the application for declaring the debtor bankrupt within five days after the receipt of the said application by the commercial court.

**3.** The following shall be indicated in a ruling on deeming a debtor bankrupt: a nominated qualified receiver and/or the self-regulating organisation from among whose members the commercial court is going to confirm a qualified receiver (hereinafter referred to as "declared self-regulating organisation"), the registration details of the debtor being a legal entity (the state registration number of the entry on the state registration of the legal entity and the taxpayer identification number) and also the date of consideration of existence of ground for the application for the debtor's being deemed bankrupt. The registration details of the debtor being a legal entity shall be indicated in all court judgements turned out by the commercial court in the bankruptcy case.

The declared self-regulating organisation shall be entitled to familiarise itself with the materials of the bankruptcy case, and make abstracts from them and copies of them.

**4.** The commercial court shall send the ruling on acceptance of the application for declaring the debtor bankrupt to the applicant, the debtor, to the control (supervision) body and to the declared self-regulating organisation.

Where the debtor has a licence for carrying out works with the use of data constituting state secrets, the commercial court shall direct a ruling on acceptance of the application for declaring the debtor bankrupt to the territorial agency of the

*[Unofficial translation from Russian]*

federal executive body in charge of ensuring security.

An indication shall be provided in the commercial court ruling sent to the declared self-regulating organisation of additional qualifications for an interim receiver nominee, if such qualifications are indicated in the application for deeming the debtor bankrupt and information about the fact that the debtor has or does not have a licence for carrying out works through the use of information deemed state secret.

**5.** If an application for declaring a debtor bankrupt is not accompanied by the debtor's financial statements as of the last accounting date the commercial court shall demand that such documents be filed by the debtor. The debtor shall file his/her/its financial statements with the commercial court within five days after the receipt of the ruling whereby such documents are demanded.

**6.** Supervision shall be instituted according to the results of consideration of the grounds for the application for deeming the debtor bankrupt.

A court hearing dedicated to verification of the grounds for application for deeming the debtor bankrupt shall be held at least after 15 days and within thirty days after the date of the issuance of the ruling on acceptance of the application for declaring the debtor bankrupt.

**7.** On the application of the person which filed the application for declaring the debtor bankrupt the commercial court shall be entitled to take measures for securing the application as envisaged by the Arbitration Procedural Code of the Russian Federation.

The petition for taking measures for securing the application for declaring a debtor bankrupt shall be considered by the judge not later than the day following the date of receipt of the petition, without the parties being notified.

According to the results of the consideration of the petition a ruling shall be issued.

The ruling on taking measures for securing the application shall take effect immediately.

The ruling on taking measures for securing an application or refusing to take measures for securing an application shall be subject to appeal. An appeal taken from the said ruling shall not cause suspension of the ruling.

**8.** If prior to the hearing scheduled by the court, the commercial court receives applications for its consideration for declaring the debtor bankrupt from other persons, all the applications received shall be seen by the commercial court as applications for entering the bankruptcy case. These applications shall be considered within 15 days after the date of the court hearing dedicated to verification of the grounds for the claims of the first applicant which applied to the commercial court.

The persons whose applications' consideration has been postponed shall have the rights specified in Item 7 of the present article.

**9.** The commercial court shall approve a temporary manager whose candidacy is specified in the application for acknowledging the debtor bankrupt admitted justified, or a temporary manager or financial administrator whose candidacies are presented by the self-regulating organisation of insolvency practitioners specified in the application.

If there are several applications for acknowledging the debtor bankrupt, including cases when consideration of justification of the application received first is postponed by the commercial court, the commercial court shall approve a temporary manager whose candidacy is specified in the application for acknowledging the debtor bankrupt that is received by the commercial court first, or a temporary manager or financial administrator whose candidacies are presented by the self-regulating organisation of insolvency practitioners specified in the application.

**Article 43.** Refusal to Accept an Application for Declaring a Debtor Bankrupt

The commercial court judge shall refuse to accept an application for declaring a debtor bankrupt in the case of:

a breach of the terms set out in Item 2 of Article 33 of the present Federal Law;

the filing of the application for declaring the debtor bankrupt if a legal proceedings have been commenced in a bankruptcy case in respect of this debtor and a proceeding applicable in a bankruptcy case has been instituted;

Paragraph four is abrogated.

**Article 44.** Suspending and Returning an Application for Deeming a Debtor Bankrupt

**1.** If in the course of considering an issue of accepting an application for deeming a debtor bankrupt the commercial court establishes that it has been filed in breach of the requirements set out in Articles 37-41 of the present Federal Law the commercial court shall issue a ruling on suspending the application.

**2.** In the application mentioned in Item 1 of the present Article the commercial court shall indicate grounds for suspension of the application for deeming the debtor bankrupt and a term for the applicant to eliminate the circumstances

*[Unofficial translation from Russian]*

serving as ground for the suspension of the application for deeming the debtor bankrupt.

No later than on the day following the date of the ruling copies of the ruling on suspension of the application for deeming the debtor bankrupt shall be sent to the debtor and to the creditor being the applicant.

**3.** If the circumstances specified in Item 2 of the present article are eliminated within the term set by the commercial court ruling the application for deeming the debtor bankrupt shall be deemed filed as of the date when it is received by the commercial court and it shall be accepted by the commercial court to commence proceedings thereon.

**4.** If the circumstances specified in Item 2 of the present Article are not eliminated within the term set by the commercial court ruling on suspension of the application for deeming the debtor bankrupt the commercial court shall issue a ruling on return of the application for deeming the debtor bankrupt and it shall return such application together with the documents attached thereto.

**5.** Copies of the ruling on return of the application for deeming the debtor bankrupt shall be sent to the debtor and to the creditor being the applicant.

**Article 45.** Procedure for Confirmation of a Qualified Receiver

**1.** Having received the commercial court ruling on acceptance of the application for deeming the debtor bankrupt containing an indication of a qualified receiver nominee or the minutes of creditors on selection of a qualified receiver nominee, the declared self-regulating organisation of qualified receivers in which the selected qualified receiver is member shall provide information to the commercial court on the compliance of said nominee with the requirements envisaged by Articles 20 and 20.2 of the present Federal Law.

Having received the commercial court ruling on acceptance of the application for deeming the debtor bankrupt which does contains no indication of a qualified receiver nominee or the minutes of a meeting of creditors on selection of a self-regulating organisation the declared self-regulating organisation shall nominate a qualified receiver from among its members who have expressed their consent to be confirmed by the commercial courts in the bankruptcy case.

The declared self-regulating organisation is not entitled to nominate a qualified receiver who has no state secret clearance of the established form if the availability of such clearance is a condition sine qua non for the commercial court to confirm the qualified receiver.

**2.** Within two days and seven days respectively from the date of receipt of the commercial court ruling on acceptance of the application for deeming the debtor bankrupt the debtor and the territorial body of the federal executive governmental body charged with security matters shall provide information to the commercial court and to the declared self-regulating organisation of qualified receivers on the state secret clearance form of the head of the debtor and on the degree of secrecy of the information circulating at the debtor's enterprise or on the lack of such clearance or such information.

**3.** The declared self-regulating organisation of qualified receivers shall provide unfettered access for persons concerned to the implementation of the procedure of nominating a qualified receiver.

A decision on nomination of a qualified receiver shall be taken by the declared self-regulating organisation on a collective basis.

**4.** Within nine days after the receipt of the commercial court ruling on acceptance of the application for deeming the debtor bankrupt or the minutes of the meeting of creditors on selection of the qualified receiver nominee the declared self-regulating organisation of qualified receivers shall send information to the commercial court, the applicant (to the meeting of creditors or a representative of the meeting of creditors) on the compliance of the person nominated for a qualified receiver with the requirements set out in Articles 20 and 20.2 of the present Federal Law, by a method ensuring delivery within five days after the date of dispatching or shall nominate a qualified receiver, and also if necessary, information on the availability of the qualified receiver's state secret clearance.

The declared self-regulating organisation shall be accountable for the provision of unreliable information on qualified receivers.

On the applicant's petition a replacement may be provided for the qualified receiver nominee or the self-regulating organisation specified in the application for deeming the debtor bankrupt, before the date of dispatch of the commercial court ruling on acceptance of the application for deeming the debtor bankrupt or the minutes of the meeting of creditors on selection of the qualified receiver nominee to the declared self-regulating organisation.

**5.** According to the results of consideration of the information provided by the self-regulating organisation of qualified receivers on the compliance of the qualified receiver nominee with the requirements set out in Items 2 - 4 of Article 20 (inter alia, the requirements established by the self-regulating organisation of qualified receivers as a condition for membership in it) and Article 20.2 of the present Federal Law, or the qualified receiver nominee the commercial court shall confirm the qualified receiver who meets such requirements.

*[Unofficial translation from Russian]*

If the self-regulating organisation of qualified receivers provides information according to which the qualified receiver nominee does not meet the requirements envisaged by Article 20.2 of the present Federal Law, and also information according to which the qualified receiver lacks sufficient competence, conscientiousness and independence for the implementation of a proceeding applicable in a bankruptcy case the commercial court may take a decision on refusal to confirm the qualified receiver nominee for the bankruptcy case.

If the commercial court confirms the qualified receiver nominee in respect of whom the self-regulating organisation of qualified receivers has provided the information specified in Paragraph 2 of the present item the qualified receiver shall conclude an additional contract of insurance of qualified receiver's liability and present this contract to the commercial court and to the self-regulating organisation of qualified receivers in which he/she is a member, within 10 days after being confirmed by the commercial court. The insurance sum under the additional contract of insurance of qualified receiver's liability shall not be less than the amount of the compensation fund of the self-regulating organisation of qualified receivers as of the last accounting date preceding the date of confirmation of the qualified receiver nominee.

**6.** If a qualified receiver has been relieved or removed by a commercial court from a bankruptcy case and a decision on selection of another qualified receiver or another self-regulating organisation of qualified receivers has not been presented by a meeting of creditors to the commercial court within ten days after the date of the qualified receiver's relief or removal the self-regulating organisation in which he/she was member shall nominate a qualified receiver to the commercial court in the procedure established by the present article for confirmation in the bankruptcy case.

Concurrently with the petition of the qualified receiver for relieving him of the discharge of the duties in a bankruptcy case the declared self-regulating organisation of which the qualified receiver is a member shall introduce to a commercial court the candidacy of a new qualified receiver in the procedure established by this article, except if the self-regulating organisation has no qualified receivers who have given their consent to be endorsed by a commercial court in a bankruptcy case. The self-regulating organisation shall notify the commercial court about the impossibility of introducing the candidacy of a qualified receiver in connection with the absence of qualified receivers who have given their consent to be endorsed by the commercial court in the bankruptcy case.

**7.** If the declared self-regulating organisation of qualified receivers does not nominate a qualified receiver or provide information on the compliance of a nominated qualified receiver with the requirements set out in Articles 20 and 20.2 of the present Federal Law to the commercial court within 14 days after the receipt of the commercial court ruling on acceptance of the application for deeming the debtor bankrupt or the minutes of the meeting of creditors on selection of a qualified receiver or self-regulating organisation the commercial court shall adjourn by 30 days the hearing of the issue of confirmation of a qualified receiver in the bankruptcy case. In this case the applicant and also the other persons deemed party to the bankruptcy case are entitled to file a petition for confirmation of a qualified receiver in the bankruptcy case from among the members of another self-regulating organisation.

If within said term the applicant does not file a petition with the commercial court or the self-regulating organisation specified in such petition does not provide information on the compliance of the qualified receiver nominee with the requirements set out in Articles 20 and 20.2 of the present Federal Law or nominate a qualified receiver the commercial court shall consider petitions of the other persons deemed party to the bankruptcy case.

If several petitions are received from the other persons deemed party to the bankruptcy case the commercial court shall confirm a qualified receiver, the candidate of which nominated in the petition was received first by the commercial court, or a qualified receiver the candidate of which nominated by the self-regulating organisation mentioned in such petition.

**8.** Abrogated.

**9.** If no nomination is done for a qualified receiver within three months after the date when a qualified receiver is to be confirmed according to the present Federal Law the commercial court shall terminate proceedings in the case.

**10.** If the qualified receiver nominated in the commercial court ruling on acceptance of the application for deeming the debtor bankrupt or in the minutes of the meeting of creditors on selection of a qualified receiver nominee or if other qualified receivers being members of the declared self-regulating organisation of qualified receivers do not have state secret clearance, provided such clearance is a condition sine qua non for the commercial court to confirm a qualified receiver, the declared self-regulating organisation shall inform the commercial court about it within the term set by Item 4 of the present article.

**11.** The commercial court shall apply to the declared self-regulating organisation of qualified receivers, unless in the event of non-receipt or late receipt of information about the availability of the state secret clearance of the debtor's head and about the form of such clearance, so that information on the compliance of the person nominated for a qualified receiver with the requirements set out in Articles 20 and 20.2 of the present Federal Law be confirmed or the self-regulating organisation nominate again a qualified receiver in the procedure established by Item 4 of the present Article.

**Article 46.** Measures for Securing Creditors' Claims and Debtor's Interests

**1.** On a petition of the applicant or on a petition of another person deemed party to the bankruptcy case the commercial

*[Unofficial translation from Russian]*

court is entitled to take security measures in accordance with the Arbitration Procedural Code of the Russian Federation.

**2.** Upon the institution of supervision, the commercial court shall be entitled to prohibit the conclusion of transactions, unless approved by the qualified receiver, not listed in Item 2 of Article 64 of the present Federal Law, apart from the measures set out in the Arbitration Procedural Code of the Russian Federation.

**3.** Measures for securing creditors' claims and the debtor's interests shall be effective until the date of the commercial court's ruling on the institution of supervision, refusal to accept the application, return of the application without consideration or termination of proceedings in the bankruptcy case.

**4.** At the petition of persons being party to the case the commercial court shall be entitled to revoke the measures for securing creditors' claims and the debtor's interests before the onset of the circumstances specified in Item 3 of the present article.

**5.** The ruling on measures for securing creditors' claims and the debtor's interests shall take its effect immediately and it shall be subject to appeal. An appeal of the said ruling shall not cause its suspension.

**Article 47.** The Debtor's Reply to an Application for Declaring the Debtor Bankrupt

**1.** Within ten days after the date of receipt of the ruling on acceptance of an application of a creditor or an application of the empowered body the debtor shall send a reply to such application to the commercial court, the bankruptcy creditor, the debtor's employee or former employee or to the empowered body and also to a representative of the debtor's founders (stockholders) and/or the owner of the property of the debtor being an unitary enterprise. The debtor's reply sent to the commercial court shall be accompanied with evidence of the fact that a copy of the reply has been sent to the applicant.

**2.** Apart from the information envisaged by the Arbitration Procedural Code of the Russian Federation the following shall be indicated in the debtor's reply sent to the commercial court and the applicant:

the debtor's objections, if any, to the applicant's claims;

the sum total of the debtor's debt owing for obligations to creditors, wages/salaries of the debtor's employees and compulsory payments;

information on all accounts of the debtor in credit organisations;

information on the execution proceedings under way concerning the debtor;

an evidence, if any, of the non-existence of ground for the applicant's claims.

Another information that has to do with the hearing of the bankruptcy case may be provided in the debtor's reply sent to the applicant.

Also the petitions the debtor has may be attached to the debtor's reply sent to the commercial court and the applicant.

**3.** The lack of a reply from the debtor shall not impede the consideration of the bankruptcy case.

**Article 48.** Considering the Existence of Ground for the Application for Deeming the Debtor Bankrupt

**1.** A meeting of the commercial court for the purpose of verifying the existence of ground for the application for deeming the debtor bankrupt shall be conducted by a judge of the commercial court in the procedure established by the Arbitration Procedural Code of the Russian Federation with due regard to the details established by the present Federal Law.

**2.** About the time and place of the court-room meeting the judge of the commercial court shall notify the person that has filed the application for deeming the debtor bankrupt, the debtor, the owner of the property of the debtor being an unitary enterprise and a representative of the founders (stockholders) of the debtor (if according to the information available he/she has been elected) whose failure to be present shall not obstruct a hearing of the issue of instituting supervision.

**3.** According to the results of consideration of the existence of ground for the application for deeming the debtor bankrupt the commercial court shall issue one of the below rulings:

on deeming the applicant's claims well-grounded and on instituting supervision;

on refusal to institute supervision and on dismissal of the application;

on refusal to institute supervision and terminating proceedings in the bankruptcy case.

Said rulings are subject to appeal.

A ruling on deeming the applicant's claims well-grounded and on instituting supervision shall be issued if the applicant's claim complies with the conditions established by Item 2 of Article 33 of the present Federal Law, is deemed to be well-grounded and has not been met by the debtor as of the date of the commercial court meeting and it has been established that the grounds envisaged by Item 2 of Article 3 of the present Federal Law exist, or the debtor's application meets the

*[Unofficial translation from Russian]*

requirements set out in Article 8 or 9 of the present Federal Law.

A ruling on refusal to institute supervision and on dismissal of an application for deeming the debtor bankrupt shall be issued, if there is another application for deeming the debtor bankrupt or one of the following circumstances exists:

at the session of the commercial court the claim of the person that has filed the application for deeming the debtor bankrupt was deemed unfounded;

it is established that there are no conditions envisaged by Item 2 of Article 33 of the present Federal Law as of the date of the commercial court's session;

the applicant's claim has been met by the debtor;

the creditor's claims are not confirmed by a court judgement that has become final, except for the cases envisaged by Paragraph 2 of Item 2 of Article 7 of the present Federal Law;

not a single condition of those envisaged by Articles 8 and 9 of the present Federal Law has been established.

The ruling on refusal to institute supervision and terminating proceedings in the bankruptcy case shall be issued by the commercial court if there are no applications of other creditors for deeming the debtor bankrupt if as of the date of the commercial court's meeting for the purpose of verifying the existence of ground for the application for deeming the debtor bankrupt the claim of the person that has filed that application has been met or the creditor's claim has been deemed lacking ground or the lack of at least one of the conditions envisaged by Articles 8, 9 or Item 2 of Article 33 of the present Federal Law is established as of the date of filing of the application.

**4.** If the commercial court deems that the application for deeming the debtor bankrupt is well-grounded the claims of the other creditors that have filed applications for deeming the debtor bankrupt shall be considered in the procedure established by Article 71 of the present Federal Law.

If the application for deeming the debtor bankrupt is deemed lacking ground and there are other applications for deeming the debtor bankrupt the commercial court shall consider the existence of ground for such applications in the procedure established by the present Article.

**Article 49.** Ruling on the Institution of Supervision

**1.** abrogated.

**2.** The ruling of a commercial court on the institution of supervision shall contain a reference to:

the recognition of the application for deeming the debtor bankrupt well grounded and to the institution of supervision;

the approval of an interim receiver;

Paragraph 4 is abrogated.

**3.** If no interim receiver nominee can be designated when the ruling on the institution of supervision is being issued, the commercial court shall issue a ruling on the postponement of hearing of interim receiver approval by a term not exceeding 15 days from the date of the ruling on the institution of supervision.

**4.** The ruling on the institution of supervision and also the ruling on the approval of an interim receiver shall take effect immediately.

The said rulings shall be subject to appeal. The appeal of the said rulings shall not cause a suspension thereof.

**Article 50.** Preparation of a Bankruptcy Case for a Court Hearing

**1.** A bankruptcy case shall be prepared for a court hearing by a commercial court judge in the manner envisaged by the Arbitration Procedural Code of the Russian Federation with due regard to the features established by the present Federal Law.

**2.** While preparing cases for court hearings the commercial court shall examine the applications, complaints and petitions of the persons being party to the bankruptcy case, establish the availability of good grounds for creditors' claims in the manner specified in Article 71 of the present Federal Law, exercise the other powers envisaged by the present Federal Law.

**3.** When the bankruptcy case is being prepared for court-room hearing and also when the bankruptcy case is being examined the commercial court is entitled to order an expert examination, for instance on its own initiative, to resolve issues requiring special knowledge.

**4.** While preparing a case for a court hearing the commercial court judge may take measures for achieving a voluntary arrangement between the parties. The taking of such measures shall not serve as a ground for suspending proceedings in the bankruptcy case.

**Article 51.** The Term for Consideration of a Bankruptcy Case

60

*[Unofficial translation from Russian]*

A bankruptcy case shall be considered at a commercial court hearing within a term not exceeding seven months after the receipt by the commercial court of the application for declaring a debtor bankrupt.

**Article 52.** The Powers of an Commercial Court

**1.** According to the results of consideration of a bankruptcy case the commercial court shall adopt one of the below court decisions:

a decision to declare the debtor bankrupt and to open liquidation proceedings;

a decision to refuse declaring the debtor bankrupt;

a ruling on the institution of financial rehabilitation;

a ruling on the institution of external administration;

a ruling on terminating the proceedings in the bankruptcy case;

a ruling on dismissing the application for declaring the debtor bankrupt;

a ruling on approving an amicable agreement.

**2.** The court decisions envisaged by Item 1 of the present article and also the other court decisions envisaged by the present Federal Law shall take effect immediately, except as otherwise established by the present Federal Law.

**Article 53.** The Decision to Declare the Debtor Bankrupt and to Open Liquidation Proceedings

**1.** The decision of the commercial court to declare the debtor that is a legal entity bankrupt and to open liquidation proceedings shall be adopted in cases when the evidence of the debtor's bankruptcy set out in Article 3 of the present Federal Law has been discovered, given the lack of grounds for dismissing the application for declaring the debtor bankrupt, for instituting financial rehabilitation, external administration, approving a amicable agreement or terminating proceedings in the bankruptcy case.

**2.** The decision of the commercial court to declare a debtor as being a bankrupt legal person and to institute liquidation proceedings shall contain a reference to:

the recognition of the debtor as bankrupt;

the institution of liquidation proceedings.

**3.** Abrogated from October 1, 2015.

**4.** The decision of a commercial court to declare a debtor bankrupt and to institute liquidation proceedings shall be subject to appeal.

**5.** At the petition of a creditors' meeting or a winding-up receiver in the cases specified in the present Federal Law the commercial court shall be entitled to issue a ruling on terminating liquidation proceedings and switching to supervision.

The ruling of the commercial court on terminating liquidation proceedings and switching to supervision shall be subject to appeal. An appeal in respect of this ruling shall not suspend its execution.

**Article 54.** Abrogated.

**Article 55.** The Commercial Court's Decision to Refuse Declaring a Debtor Bankrupt

The decision of a commercial court to refuse declaring a debtor bankrupt shall be adopted in the case of:

lack of the evidence of bankruptcy envisaged by Article 3 of the present Federal Law;

Paragraph three is abrogated;

in other cases specified by the present Federal Law.

**Article 56.** The Consequences of Adoption of a Decision to Refuse Declaring a Debtor Bankrupt by the Commercial Court

The adoption of a decision by a commercial court to refuse declaring a debtor bankrupt shall serve as a ground for terminating the effect of all the limitations envisaged by the present Federal Law and being the consequence of the adoption of a declaration of the bankrupt debtor and/or the institution of supervision.

**Article 57.** Grounds for Terminating Proceedings in a Bankruptcy Case

**1.** The commercial court shall terminate proceedings in a bankruptcy case if:

61

*[Unofficial translation from Russian]*

the debtor's solvency has been restored in the course of financial rehabilitation;

the debtor's solvency has been restores in the course of external administration;

an amicable agreement has been concluded;

the applicant's claims serving as ground for commencing proceedings in the bankruptcy case have been deemed as lacking ground, provided there are no creditors' claims which are declared and recognised in the procedure established by the present Federal Law and comply with the provisions of Article 6 of the present Federal Law;

all the creditors deemed party to the bankruptcy case have withdrawn declared claims or claims for deeming the debtor bankrupt;

all the claims of the creditors included in the register of creditors' claims have been met in the course of any proceeding applicable in a bankruptcy case;

no funds are available sufficient to meet legal expenses for the purpose of implementing the proceedings applicable in a bankruptcy case, for instance, expenses towards the payment of a fee to a qualified receiver;

in the other cases envisaged by the present Federal Law.

**2.** In the cases envisaged by Item 1 of the present article the consequences of termination of proceedings in a bankruptcy case established by Article 56 of the present Federal Law shall be applicable, except as otherwise established by the present Federal Law.

**Article 58.** Suspension of Proceedings in a Bankruptcy Case

**1.** Bankruptcy case proceedings may be suspended upon the petition of a person being party to the bankruptcy case if:

an appeal is made against the court decisions, as specified in Article 52 of the present Federal Law;

an appeal is made against decisions of a creditors' meeting (creditors' committee);

in the other cases envisaged by the Arbitration Procedural Code of the Russian Federation and by the present Federal Law.

**2.** In case of suspension of proceedings in a bankruptcy case the commercial court shall not be entitled to adopt the court decisions envisaged in Article 52 of the present Federal Law.

**3.** The suspension of case proceedings shall not impede the issuance of other rulings envisaged by the present Federal Law and also the committal of the other actions envisaged by the present Federal Law by the qualified receiver and other persons taking part in the bankruptcy case.

**Article 59.** Allocation of Court Expenses and Expenses for Disbursement or Remuneration to Qualified Receiver

**1.** Except as otherwise envisaged by the present Federal Law or an agreement with creditors, all court expenses, in particular those incurred as payment of state duty on which a grace period or an instalment payment schedule was granted, expenses towards the inclusion of the data stipulated by this Federal Law in the Unified Federal Register of Information on Bankruptcy and publication of such information according to the procedure established by Article 28 of this Federal Law, and expenses towards the disbursement of remuneration to qualified receivers in a bankruptcy case and payment for the services of persons recruited by qualified receivers with a view to performing their activity shall be borne at the expense of the debtor's property and shall be reimbursed at the expense of the property as top priority.

An amicable agreement may envisage another procedure for the distribution of the said expenses.

**2.** If, according to the results of consideration of whether there are good grounds for creditors' claims, the commercial court issued a ruling on denying the institution of supervision and on dismissing the application or on denying the institution of supervision and on terminating proceedings in the case, except for meeting the claims of the applicant after the filing of an application for declaring a debtor bankrupt, which are specified in Item 1 of the present article, expenses are to be borne by the applicant that filed an application of a creditor with the commercial court, except when an applicant is the debtor's employee or former employee. If the application was filed in the manner established by Item 5 of Article 39 of the present Federal Law the expenses specified in Item 1 of the present article shall be distributed among the applicants in proportion to the amounts of their claims.

**3.** If the debtor has no funds sufficient for the coverage of expenditures envisaged in Item 1 of the present Article, the applicant is obliged to cover the said expenditures in the part, not covered at the expense of the debtor's property, with the exception of expenditures for the payment out of the sum of interest on the remuneration to a qualified receiver.

If the case on the debtor's bankruptcy is continued, the payments made by the applicant in offsetting the expenditures stipulated in Item 1 of this Article, shall be recompensed at the settlement of the creditor's claims on the current payments by

*[Unofficial translation from Russian]*

way of satisfaction of the claims of the creditors of that level, to which the payments made by the applicant were referred.

This item shall not apply to an applicant who is the debtor's employee or former employee.

**4.** The procedure for distribution of court expenses and expenses towards the disbursement of remuneration to qualified receivers in the bankruptcy case shall be established in a decision of the commercial court or in a ruling of the commercial court adopted according to the results of consideration of the bankruptcy case.

**Article 60.** Consideration of Disagreements, Applications, Requests and Complaints in a Bankruptcy Case

**1.** Applications and requests of an insolvency practitioner, including those concerning disagreements between him and the creditors, and in cases envisaged by this Federal Law - between him and the debtor, complaints of creditors about violation of their rights and legal interests shall be considered at a meeting of the commercial court not later than one month after receipt of such applications, requests and complaints, unless otherwise envisaged by this Federal Law.

Following the results of consideration of the applications, requests or complaints the commercial court shall deliver a ruling.

The ruling can be appealed against through the procedure and within terms established by this Federal Law.

**2.** The procedure and the terms set by Item 1 of this Article shall be used for consideration of disputes between an insolvency practitioner and the individuals for whose benefit the court act for charging of indemnification of damage to life or health is delivered, as well as between the insolvency practitioner and a representative of the debtor's employees in cases envisaged by Item 11 of Article 16 of this Federal Law.

**3.** The procedure and the terms set by Item 1 of this Article shall be used for consideration of complaints of an individual, a representative of establishers (participants) of the debtor, representative of owner of assets of the debtor that is a unitary enterprise, other participants of the bankruptcy case or persons participating in proceedings on the bankruptcy case, about actions of the insolvency practitioner, decisions of the meeting or creditors or creditors' committee that violate the rights and/or legal interests of the individual and other persons participating in the bankruptcy case and in the proceedings on the bankruptcy case.

**4.** Applications and complaints filed by persons having no right to appeal or with violation of the procedure set by this Article shall be returned.

**5.** Rulings of the commercial court not envisaged by procedural legislation shall be appealed against using the procedure set by this Federal Law.

**Article 61.** The Procedure for Reviewing Rulings of a Commercial Court Issued on the Results of Consideration of Disagreements in a Bankruptcy Case

**1.** The commercial court rulings issued according to the results of consideration by a commercial court of applications, petitions and complaints in the manner established by Articles 50, 71 and 100 of the present Federal Law may be appealed in accordance with the procedure established by the Arbitration Procedural Code of the Russian Federation with due regard to the features envisaged by the present article.

**2.** The rulings setting the amount of creditors' claims may be appealed in accordance with the Arbitration Procedural Code of the Russian Federation. When such cases are examined by higher courts the commercial court that issued the ruling shall send to a higher court in the manner described by the Arbitration Procedural Code of the Russian Federation only those bankruptcy case materials that are directly related to the dispute of the debtor and the creditor(s) as to the establishment of the presence of good grounds, the amount and priority ranking of the claims.

**3.** The other commercial court rulings adopted within the framework of a bankruptcy case but not envisaged by the Arbitration Procedural Code of the Russian Federation and not subject to appeal in a manner established specifically for them may be appealed in accordance with the appellate procedure within 14 days after the time they are issued. According to the results of consideration of a complaint the appellate court shall issue a decision within 14 days, this decision being deemed final. An appeal in respect of such rulings to an appellate court shall not impede procedural actions in the bankruptcy case and shall not serve as a ground for suspending the effect thereof.

## Chapter III.1. Disputing the Debtor' Deals

**Article 61.1.** Disputing the Debtor's Deals

**1.** Deals made by the debtor or by other persons on account of the debtor may be invalidated under the Civil Code of the Russian Federation, as well as for the reasons and in the procedure which are cited in this Federal Law.

**2.** For the purposes of this Federal Law, a deal made under condition shall be deemed concluded at the time of the

*[Unofficial translation from Russian]*

onset of the appropriate condition.

**3.** The rules of this chapter may be applied to disputing actions aimed at the discharge of the obligations and duties which arise in compliance with the civil, labour, family legislation, the legislation on taxes and fees, the customs legislation of the Customs Union and (or) the legislation of the Russian Federation on the customs business, the procedural legislation of the Russian Federation and other branches of the legislation of the Russian Federation, in particular to disputing agreements and orders to increase the rate of labour remuneration, to pay bonuses and to make other payments in compliance with the labour legislation of the Russian Federation and to disputing such payments proper. The rules provided for by this article shall apply to the actions made in pursuance of judicial acts or legal acts of other state power bodies.

**4.** Information on filing to the commercial court of an application for acknowledgement of a transaction invalid on grounds specified in this Federal Law, on delivery of a court act following the results of consideration of the application and the court acts on its review shall be included by the insolvency practitioner in the unified federal register of information on bankruptcy through the procedure set by Article 28 of this Federal Law not later than within three business days from the date when the insolvency practitioner learned on filing of the application or delivery of the court act, and in case of filing of the application by the insolvency practitioner - not later than on the business day following the day of filing of the application.

Article 61.2. Disputing the Debtor's Suspicious Deals

**1.** A deal made by the debtor within a year before acceptance of the application for declaring bankrupt or after acceptance of the said application may be invalidated by a commercial court in case of unequal counter-discharge of obligations by the other party to the deal, in particular if the price of this deal and/or other conditions thereof are much worse for the debtor than the price and/or other conditions under which similar deals are made in a comparable situation (a suspicious deal). As an unequal counter-discharge of obligations shall be deemed, in particular, any transfer of property or other discharge of obligations, if the market value of the property transferred by the debtor or of other discharge of obligations by it is much higher that the value of the obtained counter-discharge of obligations which is determined subject to the terms and obligations of such counter-discharge of obligations.

If property is sold, work is carried out and service is rendered at the state-controlled prices (tariffs) fixed in compliance with the legislation of the Russian Federation, the said prices (tariffs) shall be applied for the purposes of this article.

**2.** The deal made by the debtor for the purpose of causing harm to creditors' property rights may be invalidated by a commercial court, if such deal was made within three years before the acceptance of the application for declaring the debtor bankrupt or after acceptance of the said application and as a result of making it harm was caused to creditors property rights, as well as if the other party to the deal knew about the cited debtor's aim by the time of making the deal (a suspicious deal). It is presumed that the other party knew about it, if it is recognized as an interested person or if it knew or had to know about infringement of interests of the debtor's creditors or about the signs of the debtor's inability to pay or insufficiency of property thereof.

The aim of causing harm to creditors' property rights is presumed, if at the time of making a deal the debtor had or as a result of conclusion of the transaction started to have signs of the inability to pay or insufficiency of the property thereof and the deal was made on a gratuitous basis or in respect of an interested person, or aimed at paying a share (stock) in the debtor's property (apportionment of participatory shares) to the founder (stockholder) thereof in connection with withdrawal from the composition of the debtor's founders (stockholders), or made under one of the following terms:

the cost of the property transferred as a result of making the deal or several interrelated deals or of assumed obligations and/or duties constitutes twenty or more per cent of the balance sheet value of the debtor's assets estimated on the basis of the debtor's accounting reports/statements as of the last accounting date before making the said deal or deals;

the debtor has changed its place of residence or location thereof without notifying creditors thereof just before making the deal or after making it, or has hidden the property thereof, or has eliminated or distorted the right-proclaiming documents, accounting reports/statements or other records whose keeping is provided for by the legislation of the Russian Federation or if the said documents have been eliminated or distorted as a result of improper discharge by the debtor of the duty of storing and keeping accounting reports/statements;

after making the deal involving the property transfer the debtor went on using and/or possessing this property or giving instructions to its owner concerning this property's further fate.

Article 61.3. Disputing the Debtor's Deals Entailing Preference of One of the Creditors to the Other Ones

**1.** A deal made by the debtor in respect of a creditor or other person may be invalidated by a commercial court, if such deal entails or may entail preference of one of the creditors to the other ones, as regards satisfaction of their claims, in particular when one of the following conditions exists:

the deal is aimed to ensuring the discharge of the debtor's obligation or a third person's obligation towards a creditor

which has arisen before making the disputed deal;

the deal has led or may lead to changes in the order of satisfaction of a creditor's claims which has arisen before making the disputed deal;

the deal has led or may lead to satisfaction of some creditors' claims whose date comes after the time of making the deal while there are obligations towards other creditors which are not discharged in due time;

as a result of the deal a creditor is given or may be given a greater preference in respect of satisfaction of claims which have arisen before making the disputed deal than would be given if settlements with creditors were made in the order of priority in compliance with the legislation of the Russian Federation on insolvency (bankruptcy).

**2.** The deal cited in Item 1 of this article may be invalidated by a commercial court, if it is made after acceptance by the commercial court of the application for declaring the debtor bankrupt or within one month before acceptance by the commercial court of the application for declaring the debtor bankrupt.

**3.** The deal cited in Item 1 of this Article and made by the debtor within six months before acceptance by a commercial court of the application for declaring the debtor bankrupt may be invalidated by a commercial court if the conditions provided for by Paragraphs 2 and 3 of Item 1 of this Article exist or if it is established that the creditor or other person in respect of which such deal is made knew about the sign of inability to pay or insufficiency of property or about the circumstances which enabled to come to the conclusion that the sign of inability to pay or insufficiency of property existed.

It is presumed that the interested person knew about the sign of inability to pay or insufficiency of property, if not proved otherwise.

### Article 61.4. Specifics of Disputing Some Debtor's Deals

**1.** Deals made in the course of organized trade on the basis of at least one bid addressed to an indefinite circle of trading participants, as well as actions aimed at the discharge of the obligations and duties resulting from such deals may not be disputed on the basis of Articles 61.2 and 61.3 of this Federal Law.

**2.** Deals involving property transfer and assuming of duties which are made in the course of normal business activities may not be disputed on the basis of Item 1 of Article 61.2 and Article 61.3 of this Federal Law, if the price of the property transferred under one or several interrelated deals or the extent of assumed obligations or duties do not exceed one per cent of the value of the debtor's assets estimated on the basis of the debtor's accounting reports/statements for the last accounting period.

**3.** The debtor's deals aimed at discharging the obligations in respect of which the debtor had received an equal counter-discharge of obligations just before making the contract may be only disputed on the basis of Item 2 of Article 61.2 of this Federal Law.

**4.** Transactions related to fulfillment of monetary obligations following from the loan agreement or the obligation of making mandatory payments shall not be contested on the basis of Article 61.3 of this Federal Law, if the debtor had no monetary obligations or an obligation of making mandatory payments to other bankruptcy creditors (authorised bodies) that became mature by the moment of execution, following from the loan agreement or the legislation of the Russian Federation, known to the related bankruptcy creditor (authorised body), and fulfillment of the monetary obligation following from the loan agreement or of the obligation of making mandatory payments did not differ from the obligation or duty defined in the loan agreement or the legislation of the Russian Federation by terms and amounts of payments made or charged.

### Article 61.5. Disputing the Debtor's Deals in Respect of Legal Successors Thereof

The debtor's deals may be disputed on respect of heirs thereof and in other instances of universal legal succession in respect of the person in whose interests the disputed deal is made.

### Article 61.6. Effects of Declaring a Deal Invalid

**1.** Everything that has beep passed over by the debtor or by some other person at the expense of the debtor or on account of discharging obligations towards the debtor, as well as seized from the debtor under the deal declared invalid in compliance with this Chapter, is to be returned for inclusion into the bankruptcy assets. Where it is impossible to return property in kind for inclusion to the bankruptcy assets, the acquirer shall reimburse the actual value of this property at the time of acquisition thereof, as well as the losses caused by subsequent alteration of the property's value, in compliance with the provisions of the Civil Code of the Russian Federation on the liabilities arising as a result of unjust enrichment.

**2.** Creditors and other persons, which property have been transferred to, or in respect of which the debtor has discharged obligations or duties under the deal declared invalid on the basis of Item 2 of Article 61.2 and Item 3 of Article 61.3 of this Federal Law, should the property obtained under an invalidated deal be returned for inclusion into the bankruptcy assets, shall acquire the right of claim in respect of the debtor to be satisfied in the procedure provided for by the legislation of the Russian Federation on insolvency (bankruptcy) after satisfying the third-turn creditors claims included into the register of

*[Unofficial translation from Russian]*

creditors' claims.

**3.** Creditors and other persons, which property have been transferred to, or in respect of which the debtor has discharged obligations or duties under the deal declared invalid on the basis of Item 1 of Article 61.2, Item 2 of Article 61.3 of this Federal Law and the Civil Code of the Russian Federation, should the property obtained under an invalidated deal be returned for inclusion into the bankruptcy assets, shall acquire the right of claim in respect of the debtor to be satisfied in the procedure provided for by the legislation of the Russian Federation on insolvency (bankruptcy).

**4.** In case of declaring invalid on the basis of Article 61.3 of this Federal Law the debtors' actions aimed at paying money, transfer of articles or at discharging obligations in some other way, as well as at making some other debtor's deal aimed at termination of an obligation (by setting off a homogeneous counter-claim, provision of compensation for release from an obligation or in some other way), the debtor's obligation with respect of the appropriate creditor shall be deemed originated from the time of making the invalid deal. With this, the creditor's right of claim towards the debtor under this obligation shall be deemed having existed regardless of making this deal.

If the pecuniary obligation to be terminated by the said deal had arisen before acceptance of the application for declaring the debtor bankrupt, the creditor's claim towards the debtor under this obligation shall not pertain to current payments, such creditor shall be deemed the debtor's bankruptcy creditor, the claim thereof shall be deemed raised in due time and subject to inclusion into the register of creditors' claims.

If by the time of including a creditor's claim towards the debtor under this obligation into the register of creditors' claims settlements with third-turn creditors have not yet started, the settlements concerning this claim shall be made on equal terms with the claims of third-turn creditors raised before the expiry of two months as of the date when data on declaring the debtor bankrupt and on initiating bankruptcy proceedings is published.

If by the time of including a creditor's claim towards the debtor under this obligation into the register of creditors claims, settlements with the third-turn creditors, whose claims are included into the register of creditors' claims, have been completed, the settlements in respect of this claim shall be effected on account of the property left after satisfying claims of the third-turn creditors whose claims are included into the register of creditors' claims.

If at the time of starting settlements with third-turn creditors the winding-up receiver knows that the application for declaring invalid the debtor's deal aimed at termination of an obligation thereof is under consideration, the winding-up receiver is obliged to reserve monetary resources in the amount which is sufficient for proportionate satisfaction of creditors' claims of the same turn in respect of the given claim.

The rules provided for by this item shall likewise extend to the claim of the other party to the deal declared invalid for the reasons provided for by Article 61.3 of this Federal Law towards the debtor for return of all the property obtained by the debtor under this deal or for reimbursement of its value in monetary terms.

**5.** The effect of declaring invalid on the basis of Item 2 of Article 61.2 or Article 61.3 of this Federal Law a debtor's contract made with the central contractor, as well as the actions aimed at discharging the obligations and duties resulting from such contract, shall be compensation for losses by a party to an interrelated contract. With this, an interrelated contract means a contract made by the central contractor on the basis of an offer, in particular of a bid made in the course of organised trade, whose terms correspond to the offer, in particular of the bid made in the course of organised trade, that serves as a basis for making the invalid contract with the central contractor.

**Article 61.7.** Refusal to Dispute the Debtor's Deals

An commercial court may refuse to declare a deal invalid, if the value of the property acquired by the debtor as a result of the disputed deal exceeds the cost of everything that can be returned for inclusion into the bankruptcy assets as a result of disputing the deal or if the acquirer under the invalid deal has returned everything, that has been acquired, for inclusion into the bankruptcy assets.

**Article 61.8.** The Specifics of Considering the Application for Disputing a Debtor's Deal in a Bankruptcy Case

**1.** The application for disputing a debtor's deal shall be filed with the commercial court trying the case on the debtor's bankruptcy and is to be considered within the framework of bankruptcy proceedings in respect of the debtor.

**2.** The session of a commercial court in respect of the application for disputing the debtor's deal shall be held by the commercial court's judge in the procedure established by the Arbitration Procedural Code of the Russian Federation subject to the specifics provided for by this Federal Law.

**3.** The form and content of the application for disputing the debtor's deal within the framework of bankruptcy proceedings and the procedure for filing it with a commercial court shall satisfy the requirements for a statement of claim in compliance with the Arbitration Procedural Code of the Russian Federation. The applicant is obliged to send to creditors or other persons in respect of which the disputed deal is made copies of the application and of the document attached thereto by registered mail with delivery confirmation.

*[Unofficial translation from Russian]*

**4.** Creditors or other persons in respect of which the disputed deal is made or on whose rights and duties a judicial act may be adopted concerning the disputed deal, shall be deemed the persons participating in consideration by a commercial court of the application for disputing the debtor's deal.

The said persons shall enjoy in respect of the merits of the claims raised in connection with the disputed deal the right to get familiar with materials of the case, to make extracts from them, copy them, propose disqualifications, adduce evidence and get familiar with the evidence adduced by other persons participating in consideration by a commercial court of the application for disputing the debtor's deal before the start of court proceedings; to participate in examination of evidence; to pose questions to the other persons participating in consideration by a commercial court of the application for disputing the debtor's deals, to file petitions, to make statements, to give explanations to a commercial court, to advance arguments thereof in respect of all the issues arising in the course of trying the case; to get familiar with petitions filed by the other persons participating in consideration by a commercial court of the application for disputing the debtor's deal, to protest against petitions and arguments of the other persons participating in consideration by a commercial court of the application for disputing the debtor's deal, to know about the complaints filed by the other persons participating in consideration by a commercial court of the application for disputing the debtor's deal, about the judicial acts adopted in respect of this case and to obtain copies of the judicial acts adopted as a separate document and to appeal against rulings issued in compliance with this Chapter.

**5.** The commercial court's judge shall notify of the time and place of holding the court session the person that has filed the application for disputing a debtor's deal, the debtor and the person in respect of which the disputed deal is made.

**6.** On the basis of the results of considering the application for disputing a debtor's deal the court shall issue one of the following rulings:

on declaring the deal invalid and/or on applying the effects of invalidity of a void deal;

on rejection of the application for declaring the debtor's deal invalid.

The ruling may be appealed against in compliance with Part 3 of Article 223 of the Arbitration Procedural Code of the Russian Federation.

**Article 61.9.** Persons Authorised to File Applications for Disputing a Debtor's Transaction

**1.** The application for disputing the debtor's transaction may be filed with a commercial court by the receiver or winding-up receiver on their own initiative in the debtor's name or by decision of a meeting of creditors or the creditors' committee; for this, the limitation period shall be estimated starting from the time when the qualified receiver learnt or should have learned that there were grounds for disputing the deal which are provided for by this Federal Law. The votes of the creditor in respect of which or in respect of whose affiliated persons a deal has been made shall not be taken into account when determining the quorum and adopting a decision by a meeting (committee) of creditors on the issue of filling an application for disputing this transaction. If an application for disputing a transaction in pursuance of the decision of the meeting (committee) of creditors is not filed by the qualified receiver within the time period fixed by the given decision, such application may be filed by a representative of the meeting (committee) of creditors or by other person authorised by the decision (committee) of creditors.

**2.** An application for disputing the debtor's transaction may be filed with a commercial court, along with the persons cited in Item 1 of this article, by the bankruptcy creditor or by an authorised body, if the amount of the credit indebtedness with respect to him included into a register of creditors' claims makes up more than 10 per cent of the total amount of the credit indebtedness included into the register of creditors' claims, regardless of the amount of claims of the creditor in respect of which the transaction is disputed and of affiliated persons thereof.

**3.** Where it is established by this Federal Law, an application for disputing the debtor's transaction may be filed with a commercial court by the provisional administration of a financial organisation.

**4.** The claim of the head of the provisional administration for invalidating a transaction and for applying the effects of its invalidity shall be raised in the name of the financial organisation.

**5.** An application of the head of the provisional administration of a financial organisation for invalidating a transaction on the grounds provided for by Article 61.2 or 61.3 of this Federal Law, as well as on the grounds connected with breaking the rules of this Federal Law, shall be filed with the commercial court at the location of the financial organisation, and from the time of initiation of a bankruptcy case in respect of the financial organisation and up to the date of declaring it bankrupt in the bankruptcy case of the financial organisation.

**6.** Cases on invalidating deals which are initiated by a commercial court at the claim of the head of the provisional administration of a financial organisation before the date of declaring it bankrupt are subject after this date to combining with the bankruptcy case and to further consideration in this case. Such combining shall be effected by the commercial court trying the case on bankruptcy of the financial organisation.

**7.** The time periods within which transactions were made that could be declared invalid (Articles 61.2 and 61.3 of this

[Unofficial translation from Russian]

Federal Law) or the time periods within which the financial organisation's obligations cited in Item 4 of Article 61.6 of this Federal Law originated shall be counted from the date of the Bank of Russia appointing the provisional administration of a financial organisation or from the date of issuance by the commercial court of a decision on acceptance of the application for acknowledging the financial institution bankrupt, depending on which event comes first.

**8.** The limitation period in respect of the claim of the head of the provisional administration of a financial organisation for invalidating a deal on the grounds provided for by Article 61.2 or 61.3 of this Federal Law shall be counted starting from the date when the provisional administration learnt or should have learnt about the presence of such grounds, as well as about the presence of the signs of bankruptcy of the financial organisation, depending on which of the events occurred first.

### Chapter IV. Supervision

**Article 62.** Instituting Supervision

**1.** Except as otherwise envisaged by the present Federal Law, supervision shall be instituted according to the results of consideration by a commercial court of the availability of good grounds for the application for deeming the debtor bankrupt, in the manner envisaged by Article 48 of the present Federal Law.

**2.** Abrogated.

**3.** Supervision shall be completed with account taken of the term for consideration of a bankruptcy case set out by Article 51 of the present Federal Law.

**Article 63.** The Consequences of a Ruling on the Institution of Supervision Issued by a Commercial Court

**1.** The following consequences shall emerge as of the date of issuance of a ruling on the institution of supervision by a commercial court:

the creditors' claims relating to the monetary obligations and mandatory payments, with the exception of the current payments, may be presented to the debtor only in compliance with the procedure for presenting claims to a debtor established by the present Federal Law;

upon the petition of a creditor proceedings shall be suspended in cases relating to the collection of amounts of money from a debtor. In this case the creditor shall be entitled to present his/her claims to the debtor in the manner established by the present Federal Law;

execution of writs of execution relating to property collection shall be suspended; in particular, the debtor's property seizure shall be lifted as well as other restrictions as to the disposal of the debtor's property imposed within the execution proceedings, except for the writs of execution issued under court decisions that have become final and which concern collection of debt owing as wages, royalties to the authors of the results of intellectual activity, demanding and obtaining property from another's illegal possession, compensation for harm inflicted to life or health, compensation to be paid in excess of the compensation for harm. The ground for suspending the execution of writs of execution shall be a ruling of a commercial court on the institution of supervision;

it is not admissible to meet the claims of the debtor's promoter (stockholder) for the partition of participatory share (stock) in the debtor's property in connection with ceasing to be a promoter (stockholder), purchase or acquisition by the debtor of floated shares or disbursement of the actual value of a participatory share (stock);

Paragraph six is abrogated;

it shall be prohibited to discharge the debtor's monetary obligations by means of offsetting a homogenous counterclaim if in this case the priority ranking of creditors' claims established by Item 4 of Article 134 of the present Federal Law is broken. In respect of the obligations resulting from financial contracts whose amount is estimated in the procedure provided for by Article 4.1 of this Federal Law the cited prohibition shall only apply to termination of the debtor's net obligation;

it is not admissible for the owner of the property of the debtor being an unitary enterprise to seize the property belonging to the debtor;

it is not admissible to pay out dividends, income on stocks (participatory shares) and also to distribute profit among the debtor's founders (stockholders).

no forfeit money (fines, penalties) and other financial sanctions are accrued for a default on, or the improper performance of, monetary obligations and compulsory payments, except for current payments.

**2.** For the purposes of ensuring the onset of the consequences envisaged by Item 1 of the present article the commercial court's ruling on the institution of supervision shall be sent by the commercial court to the credit organisations with which the debtor has concluded a bank account contract and also to the general jurisdiction court, the chief bailiff at the location of the debtor and the debtor's branches and representative offices and to authorised bodies.

*[Unofficial translation from Russian]*

**3.** For the purpose of participation in the bankruptcy case the due date for performance of the obligations that had come into being before the commercial court accepted the application for deeming the debtor bankrupt is deemed to have come. The creditors are entitled to present claims to the debtor in the procedure established by the present Federal Law.

**4.** Interest at the rate of the refinancing rate set by the Central Bank of the Russian Federation as of the date of instituting the observation shall be accrued on the sum of claims of the bankruptcy creditor, of the authorised body in the amount established in accordance with Article 4 of the present Federal Law as of the date of instituting the next proceeding applicable in a bankruptcy case.

Said interest for the period of implementation of the observation shall not be included in the register of creditors' claims and shall not be taken into account in the determination of the number of votes the creditor has at the meeting of creditors.

If the creditor presents a claim to the debtor in the course of financial improvement, external management and winding-up then in the computation in keeping with Item 1 of Article 4 of the present Federal Law of the amount of his claim the amount of interest shall be computed as of the date of the institution of the observation.

**5.** In the event of termination of proceedings in a bankruptcy case on the ground envisaged by Paragraph 7 of Item 1 of Article 57 of the present Federal Law (inter alia, as a result of the debtor's meeting all the creditors' claims included in the register of creditors' claims, in the course of observation or such claims being met in the course of any proceeding applicable in a bankruptcy case, by a third person in the procedure established Article 113 or 125 of the present Federal Law) the creditor has the right to present a claim to the debtor for collection of the remaining interest at the rate of the refinancing rate established by the Central Bank of the Russian Federation as of the date of institution of the observation which was accrued for the period of implementation of the proceedings applicable in a bankruptcy case, according to the rules of the present Federal Law in the procedure established by the procedural legislation.

**6.** If while hearing a bankruptcy case the court in the course of any proceeding applicable in a bankruptcy case establishes that the debtor or the creditor being an interested person has filed an application for deeming the debtor bankrupt and in this case said persons knew that the debtor was able to pay and was pursuing the objective of getting unfounded wrongful gains from the institution of the proceedings applicable in a bankruptcy case, the court shall have the right to terminate proceedings in the bankruptcy case on the condition that as of that time the debtor keeps being able to pay and that corresponds to the creditor's interests.

In such case, the debtor shall pay the interest accruable according to the terms of the obligation for the period of implementation of the proceedings applicable in a bankruptcy case. If these circumstances are established by the court when proceedings in the bankruptcy case are terminated on another ground the court also has the right to refer in the ruling on such termination to the debtor's duty to pay the interest accruable according to the terms of the obligation for the period of implementation of the proceedings applicable in a bankruptcy case.

**Article 64.** Debtor's Limitations and Duties within Supervision

**1.** The institution of supervision shall not be deemed a ground for removing the head of the debtor and other managerial bodies of the debtor, which shall keep exercising their powers subject to the limitations established by Items 2, 3 and 3.1 of the present article.

**2.** Except for the cases expressly stated by the present Federal Law, the debtor's managerial bodies may execute, exclusively with the consent of the interim receiver in writing, deals or several interrelated deals:

relating to the acquisition, alienation or possibility of alienation, directly or indirectly, of the debtor's property of which the balance sheet value makes up over five per cent of the balance sheet value of the debtor's assets as of the date of institution of supervision;

relating to the receipt and granting of loans (credits), granting of a suretyship and guarantee, claim assignment, debt assignment and also the institution of a trust in respect of the debtor's property.

**3.** The debtor's managerial bodies shall not be entitled to adopt decisions on:

the organisation (merger, accession, division, separation, transformation) and liquidation of the debtor;

the formation of legal persons or the debtor's interest in other legal persons;

the formation of branches and representative offices;

the disbursement of dividends or distribution of the profit of the debtor among the debtor's promoters (stockholders);

the floatation of bonds and other issue securities by the debtor, except for shares;

somebody's ceasing to be a promoter (stockholder) of a debtor, on the purchase of the shares placed earlier from shareholders;

*[Unofficial translation from Russian]*

participation in associations, unions, holding companies, financial and industrial groups and other associations of legal persons;

the conclusion of a contract of simple partnership.

**3.1.** The owner of the property of a debtor being an unitary enterprise is not entitled to:

take decisions on re-organisation (merger, accession, division, separation or transformation) and liquidation of the debtor;

give its consent to the debtor's forming legal entities or the debtor's having interest in other legal entities;

give its consent to the formation of branches and the opening of representative offices of the debtor;

take decisions on the debtor's floating bonds and other serial securities.

**3.2.** Within 15 days after the date of confirmation of the interim receiver the head of the debtor shall provide the interim receiver and send to the commercial court a list of the debtor's property, including for instance, property rights, and also bookkeeping and other documents reflecting the debtor's economic activities for the three years prior to the commencement of supervision. Every month, the head of the debtor shall inform the interim receiver of changes in the composition of the debtor's property.

**4.** Within ten days after the issuance of a ruling on the institution of supervision the head of the debtor shall propose to the debtor's promoters (stockholders) to hold a general meeting of the debtor's promoters (stockholders), and to the owner of the debtor being a unitary enterprise, to consider issues concerning the making of a proposal to the first meeting of the debtor's creditors to institute financial rehabilitation in respect of the debtor, to effect an additional issue of shares and on other issues envisaged by the present Federal Law.

**5.** The debtor shall be entitled to increase its authorised capital by means of a public-subscription flotation of additional ordinary shares at the expense of additional contributions of its promoters (stockholders) and third persons in the manner established by federal laws and the debtor's constitutive documents. In this case the state registration of a report on the results of an issue of additional ordinary shares and amendments to the debtor's constitutive documents shall be effected before the date of the court hearing dedicated to consideration of the bankruptcy case.

**Article 65.** The Interim Receiver

**1.** The interim receiver shall be approved by a commercial court in the manner set out in Article 45 of the present Federal Law.

**2.** Abrogated.

**3.** The interim receiver may be released from the duties of an interim receiver by a commercial court:

in connection with the fact that the commercial court has satisfied the complaint of the person deemed party to the bankruptcy case on the interim receiver's default on or improper performance of the duties vested therein, on the fact that such default or improper performance of the duties infringed upon the applicant's rights or legal interests, and that it has caused or could cause losses to the debtor or the debtor's creditors;

in the case of discovery of circumstances obstructing the approval of the person as interim receiver, in particular in case when such circumstances have occurred after the person was approved as interim receiver;

on the grounds of the petition of the self-regulating organisation of insolvency administrators in the case of expulsion of an insolvency administrator of the self-regulating organisation in connection with infringement by the insolvency administrator of conditions of the membership in the self-regulating organisation, infringement by the insolvency administrator of the requirements of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of professional work;

on the grounds of the petition of the self-regulating organisation of insolvency administrators in the case of application to the insolvency administrator of an administrative punishment in the form of disqualification for the fulfillment of an administrative offence;

in other cases specified by federal law.

**4.** The interim receiver may be relieved from the duties vested therein in the bankruptcy case on the basis of:

his/her application;

petitions of the self-regulating organisation of insolvency administrators the member of which he is, in the case of the withdrawal of the insolvency administrator from the self-regulating organisation or the petition of the self-regulating organisation of the insolvency administrators adopted by such an organisation according to Item 2 of Article 20.5 of this Federal

*[Unofficial translation from Russian]*

Law.

**Article 66.** The Rights of the Interim Receiver

**1.** The interim receiver shall be entitled to:

lodge a demand with a commercial court in his/her name for declaring as null and void deals and decisions, and also a demand for the application of consequences for the invalidity of null and void deals concluded or accomplished by the debtor in breach of the provisions of Articles 63 and 64 of the present Federal Law;

lodge objections to creditors' claims in cases specified by the present Federal Law, for instance to declare the expiry of the period of limitations;

attend commercial court hearings dedicated to verification of the presence of a good ground for the debtor's lodged objections to creditors' claims;

file a petition with a commercial court for the taking of additional measures for preserving the debtor's property, in particular, for an injunction on the accomplishment of deals without the consent of the interim receiver as envisaged by Item 2 of Article 64 of the present Federal Law;

file a petition with a commercial court for the removal of the head of the debtor;

obtain any information and documents concerning the debtor's activity;

exercise other powers established by the present Federal Law.

**2.** The debtor's managerial bodies shall provide the interim receiver on his/her request with all information concerning the debtor's activity.

Information on the debtor and the property thereof, including without limitation, property rights and on liabilities that has been requested by the interim receiver from natural persons, legal entities, state bodies and local self-government bodies shall be provided by said persons/entities and bodies to the interim receiver within seven days after the receipt of the qualified receiver's request on a free-of-charge basis.

**Article 67.** The Duties of an Interim Receiver

**1.** The interim receiver shall:

take measures for preserving the property of the debtor;

analyse the financial state of the debtor;

reveal the debtor's creditors;

keep a register of creditors' claims, except for the cases specified by the present Federal Law;

notify the creditors of the institution of supervision;

convene and hold the first meeting of creditors.

**2.** The interim receiver shall submit to the commercial court a report on its activities and the minutes of the first meeting of creditors together with the documents defined by Item 7 of Article 12 of the present Federal Law at least five days before the date of the commercial court's meeting specified in the commercial court ruling on the institution of supervision.

The following shall be attached to the interim receiver's report:

a statement on the financial state of the debtor;

a statement on the availability or lack of grounds for disputing the debtor's transactions;

an assessment of the possibility or impossibility of the debtor's recovering solvency and of the feasibility of institution of subsequent proceedings applicable in a bankruptcy case.

**Article 68.** Notice of the Institution of Supervision

**1.** An interim receiver is obliged to direct for publication in accordance with the procedure established in Article 28 of the present Federal Law, a communication on the introduction of supervision.

**2.** Abrogated.

**3.** The head of the debtor shall notify the following persons of the fact that the commercial court has issued a ruling on the institution of supervision within ten days after the date of issuance of the ruling: the debtor's employees, the debtor's promoters (stockholders), the owner of property of the debtor being a unitary enterprise.

**4.** The announcement of the institution of supervision shall contain the following:

the name of the debtor being a legal person or the full name of the debtor being a natural person as well as the address thereof;

the name of the commercial court that issued the ruling on the institution of supervision, the date of the ruling and the number of the bankruptcy case;

the full name of the approved interim receiver and his/her address for correspondence;

the date of the court hearing dedicated to the bankruptcy case as set by the commercial court.

**Article 69.** Removal of the Head of a Debtor

**1.** The commercial court shall remove the head of a debtor on a petition of the interim receiver in the case of violation of provisions of the present Federal Law.

**2.** When the interim receiver files a petition with a commercial court for the removal of the head of the debtor, the interim receiver shall file copies of the petition to the head of the debtor, the representative of the debtor's promoters (stockholders), or the representative of the owner of property of the debtor being a unitary enterprise.

**3.** The commercial court shall issue a ruling on the consideration of a court hearing of the interim receiver's petition for removal of the head of the debtor and shall notify the representative of the debtor's promoters (stockholders) or the representative of the owner of property of the debtor being a unitary enterprise of the date of the hearing and of the need for presenting a nominee to the court to the position of acting head of the debtor for the duration of the supervision term.

**4.** If the commercial court satisfies the petition of the interim receiver for removing the head of the debtor the commercial court shall issue a ruling on the removal of the head of the debtor and on vesting the duties of head of the debtor in the person presented as nominee to the position of head of the debtor by the representative of the debtor's promoters (stockholders) or another collective managerial body of the debtor, the representative of the owner of property of the debtor being a unitary enterprise in the case of non-presentation by the said persons of a nominee to the position of acting head of the debtor - in one of the deputies of the head of the debtor, or in the case of lack of deputy heads - in one of the employees of the debtor.

**5.** On the petition of the interim receiver the commercial court may remove an acting head of the debtor in case of violation of provisions of the present Federal Law. In this case responsibility for executing the duties of the head of the debtor shall be vested in the person presented as a nominee to the position of head of the debtor in the manner specified in Item 4 of the present article, or in the case of non-presentation of a nominee - in one of the deputies of the head of the debtor, or in the case of a lack of deputy heads - in one of the employees of the debtor.

At the application of the interim receiver the commercial court may prohibit the acting head of the debtor to accomplish certain deals and actions or to accomplish them without the consent of the interim receiver.

**Article 70.** Analysis of the Debtor's Financial State

**1.** The analysis of a debtor's financial state shall be performed with a view to assess the sufficiency of the property the debtor has to cover expenses in the bankruptcy case, for instance, expenses towards the disbursement of remuneration to qualified receivers and also with a view to assessing the possibility/impossibility of restoration of the debtor's solvency in the manner and within the term established by the present Federal Law.

**2.** If under the legislation of the Russian Federation the debtor's bookkeeping and financial (bookkeeping) accounting is subject to compulsory audit then the financial state shall be analysed on the basis of the bookkeeping and financial (bookkeeping) accounting documents whose reliability has been confirmed by an auditor.

If there are no bookkeeping and financial (bookkeeping) accounting documents whose reliability has been confirmed by an auditor, for instance, due to the debtor's default on the duty to carry out compulsory audit the interim receiver shall recruit an auditor to analyse the debtor's financial state, with payment for the services thereof being made with funds of the debtor.

**3.** On the basis of an analysis of the debtor's financial state, for instance the results of a stock-taking of the debtor's property, if such results are available and an analysis of the documents confirming the state registration of rights of ownership shall assess the possibility or impossibility of the debtor's recovering solvency and the feasibility of institution of subsequent proceedings applicable in a bankruptcy case.

**Article 71.** Establishing the Amount of Creditors' Claims

**1.** For the purposes of attending the first creditors' meeting the creditors shall be entitled to present their claims to the debtor within 30 calendar days after the date of publication of the advertisement of the institution of supervision. The said claims shall be sent to the commercial court, the debtor and the interim receiver together with the court decision or other documents confirming the availability of a good ground for these claims. The said claims shall be included in the register of

*[Unofficial translation from Russian]*

creditors' claims on the basis of a ruling of the commercial court on the inclusion of the said claims in the register of creditors' claims.

**2.** The debtor, the interim receiver and creditors which presented their claims to the debtor, a representative of the debtor's promoters (stockholders) or a representative of the owner of the debtor being a unitary enterprise may lodge their objections to creditors' claims with the commercial court within 15 calendar days after the expiry of the claim presentation term set for creditors.

The persons participating in the bankruptcy case have the right to declare the expiry of the period of limitations in respect of the creditors' claims which have been presented to the debtor.

**3.** If objections to creditors' claims exist the commercial court shall verify the availability of good grounds for the claims and for the inclusion of the said claims in the register of creditors' claims.

**4.** The creditors' claims to which objections have been received shall be considered in a commercial court hearing. A ruling shall be issued according to the results of the consideration on including/refusing to include the said claims in the register of creditors' claims. The commercial court's ruling on including the claims in the register of creditors' claims shall comprise the number and priority ranking of these claims.

If in the debtor's bankruptcy case the interests of creditors being bond owners are represented by the representative of bond owners defined in compliance with the legislation of the Russian Federation on securities, in the ruling of a commercial court on the claims inclusion into the register of creditors' claims shall be cited the total amount of claims of the cited creditors and the order of satisfying such claims in compliance with this Federal Law, as well as the order of satisfying claims in compliance with the terms of the corresponding issue of bonds.

Should the interim receiver have any objections, the claims of the creditor being the bond owner shall be excluded by a ruling of a commercial court from the register of creditors' claims, if in the debtor's bankruptcy case the interests of creditors which are owners of bonds of a corresponding issue are represented by the representative of the bond owners defined in compliance with the legislation of the Russian Federation on securities.

**5.** The creditors' claims to which no objections have been received shall be examined by the commercial court for the purpose of verifying the availability of good grounds for them and of grounds for including them in the register of creditors' claims. According to the results of such a consideration the commercial court shall issue a ruling on including/refusing to include the claims in the register of creditors' claims. The said claims may be considered without the invitation of persons deemed party to the case.

The ruling on including/refusing to include creditors' claims in the register of creditors' claims shall take effect immediately and it is subject to appeal. The ruling on including/refusing to include creditors' claims shall be sent by the commercial court to the debtor, the qualified receiver and the creditor which has presented the claims and to the registrar.

**6.** When it is necessary to complete the consideration of creditors' claims presented within the established term, the commercial court issues a ruling on adjournment of the hearing of the case which is binding on the interim receiver to postpone the first creditors' meeting.

**7.** The creditors' claims presented upon the expiry of the claim presentation term envisaged by Item 1 of the present article shall be subject to consideration by the commercial court after the institution of a procedure following the supervision procedure.

**8.** The claims of creditors envisaged by Items 1-6 of the present article shall be considered by a judge of the commercial court within one month after the date of expiry of the term established by Item 2 for presentation of objections concerning creditors' claims.

**Article 71.1.** The Repayment of Debts Relating to Compulsory Payments by the Debtor's Founders (Stockholders), the Owner of the Property of the Debtor Being an Unitary Enterprise and/or Third Person in the Course of Supervision

**1.** In the course of supervision the claims to the debtor for compulsory payments included in the register of creditors' claims may be repaid by the debtor's founders (stockholders), the owner of the property of the debtor being an unitary enterprise and/or a third person in the procedure established by the present article.

If the debtor's founders (stockholders), the owner of the property of the debtor being an unitary enterprise or/and a third person repay the claims addressed to the debtor for compulsory payments all the claims of creditors addressed to the debtor for compulsory payments shall be repaid.

**2.** A person intending to repay a claim addressed to the debtor for compulsory payments in full shall send a declaration of such intent to the commercial court that is hearing the bankruptcy case, the debtor, the interim receiver and also to the authorised bodies.

*[Unofficial translation from Russian]*

**3.** The following shall be indicated in the declaration of intent to repay the claims addressed to the debtor for compulsory payments in full (hereinafter also referred to as "declaration of intent"):

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the applicant;

the term for repayment of the claims addressed to the debtor for compulsory payments which shall not exceed 30 business days after the date of the relevant ruling of the commercial court.

**4.** The declaration of intent shall be considered by the commercial court within 14 working days after the receipt thereof.

If declarations of intent have been received by the commercial court from several persons/entities they shall be considered in the chronological order of their being received by the commercial court.

**5.** According to the results of consideration of the declaration of intent the commercial court shall issue a ruling upholding the declaration of intent or a ruling refusing to uphold the declaration of intent if the register of creditors' claims does not contain claims to the debtor for compulsory payments or if the applicant has decided not to repay the claims to the debtor for compulsory payments until such declaration is considered.

**6.** The following shall be indicated in the commercial court ruling upholding the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the person that repays the claims addressed to the debtor for compulsory payments;

the amount of the claims addressed to the debtor for compulsory payments, the principal debt amount and accrued forfeit money (fines and penalties);

the term and procedure for repayment of the claims addressed to the debtor for compulsory payments;

the date of the court-room hearing according the results of repayment of the claims addressed to the debtor for compulsory payments ;

bank account details and also the other information required for remittance of amounts of money to repay the claims addressed to the debtor for compulsory payments.

**7.** The consideration of the declaration of intent may be adjourned if there is a similar declaration received earlier from another person until the date of consideration of the results of repayment of the claims addressed to the debtor for compulsory payments.

The consideration of the declaration of intent may be adjourned if there is a dispute as to the amount and composition of the claims addressed to the debtor for compulsory payments until the date when the court judgement establishing the composition and amount of the claims to the debtor for compulsory payments included in the register of creditors' claims becomes final.

**8.** For the purposes of repayment of the claims addressed to the debtor for compulsory payments the empowered body shall serve a notice to the commercial court indicating the date of service of the notice, the surname, first name, patronymic and position of the official who has signed the notice and also the information required according to the rules for filling in the payment documents acknowledging the remittance of amounts of money for repayment of the claims addressed to the debtor for compulsory payments including the amount of claim in respect of each of the beneficiaries of these amounts of money.

**9.** Within the term set by the commercial court ruling upholding the declaration of intent the applicant shall remit funds in the amount and in the procedure specified in the ruling.

**10.** Upon the expiry of the term established by the commercial court for repayment of the claims addressed to the debtor for compulsory payments the applicant shall send an application to the commercial court for deeming the claims addressed to the debtor for compulsory payments discharged and for replacing the creditor in the register of creditors' claims.

Attached to the application shall be payment documents acknowledging the remittance of funds in the amount and in the procedure specified in the commercial court ruling upholding the declaration of intent.

**11.** According to the results of consideration of the application for deeming the claims addressed to the debtor for compulsory payments discharged and for replacing the creditor in the register of creditors' claims, provided the repayment completed complies with the commercial court ruling upholding the declaration of intent, the commercial court shall issue a ruling on deeming the claims addressed to the debtor for compulsory payments discharged and on replacing the creditor in the register of creditors' claims.

The amount of, and the priority rating of, the claims of the person that has repaid the claims addressed to the debtor for compulsory payments shall be recorded in the register of creditors' claims in the same amount and with the same priority rating as the discharged claims addressed to the debtor for compulsory payments.

*[Unofficial translation from Russian]*

**12.** If the claims addressed to the debtor for compulsory payments have not been repaid in full or have been paid in breach of the procedure or repayment due dates established by the commercial court ruling then the commercial court shall issue a ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid.

A refund for the amounts of money remitted shall be provided to the applicant within ten business days after the date when the commercial court ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid becomes final.

The remittance of funds in an amount exceeding the one set by the commercial court ruling upholding the declaration of intent shall not be deemed ground for the commercial court to issue a ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid, and equally, for increasing the amount of claims to the debtor of the person that has repaid the claims addressed to the debtor for compulsory payments.

The funds remitted in excess over the amount of money envisaged by said ruling shall be refunded to the applicant within ten business days after the date when the commercial court ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims.

**13.** The Government of the Russian Federation shall establish a procedure for settlements of accounts for the purposes of repaying claims addressed to a debtor for compulsory payments.

**14.** The repayment of claims for compulsory payments addressed to a debtor in respect of which the present Federal Law establishes details of implementation of the proceedings applicable in a bankruptcy case is admissible in cases when a provision for this is available in the present Federal Law as establishing the details of bankruptcy of debtors of specific categories.

**Article 72.** Convocation of the First Creditors' Meeting

**1.** The interim receiver shall set the date of the first creditors' meeting and notify accordingly all the revealed bankruptcy creditors, authorised bodies, the representative of the debtor's employees and other persons entitled to attend the first creditors' meeting. Notification of the first creditors' meeting shall be carried out by the interim receiver in the manner and within the term envisaged by Article 13 of the present Federal Law.

The first creditors' meeting shall be held at least ten days prior to the date of termination of the supervision.

**2.** The following shall be deemed participants in the first creditors' meeting with voting rights: the bankruptcy creditors and the authorised bodies whose claims were presented in the manner and within the term envisaged by Item 1 of Article 71 of the present Federal Law and included in the register of creditors' claims.

**3.** The first meeting of creditors shall be attended without voting right by the head of the debtor, a representative of the debtor's founders (stockholders) or a representative of the owner of the property of the debtor being an unitary enterprise, a representative of the debtor's employees and a representative of the control (supervision) body. The absence of these persons shall not be deemed a ground for recognising the first creditors' meeting invalid.

**4.** In the event of inclusion into a register of creditors' claims solely the claims for paying severance benefits and/or labour wages of the persons who are working or have been working under a labour contract and non-satisfaction of the cited claims, the first meeting of creditors shall not be held and a commercial court shall render the decision on introduction of the procedure applied in a bankruptcy case in compliance with Paragraph Two of Item 2 of Article 75 of this Federal Law.";

**Article 73.** The Competence of the First Creditors' Meeting

**1.** The competence of the first creditors' meeting shall include the following:

the adoption of a decision to institute financial rehabilitation and file a petition to this effect with the commercial court;

the adoption of a decision to institute external administration and file a petition to this effect with the commercial court;

the adoption of a decision to file a petition with the commercial court for declaring the debtor bankrupt and for commencing winding-up procedure;

the formation of a creditors' committee, the determination of the number of members and the powers of the creditors committee, and the election of members of the creditors' committee;

the setting of additional qualification standards applicable to the administrative receiver, the receiver, and the winding-up receiver nominees;

determining the candidacy of a qualified receiver or of the self-regulated organisation from among whose members the qualified receiver shall be approved;

the choosing of a registrar from among the registrars accredited by the self-regulating organisation;

*[Unofficial translation from Russian]*

the making of decisions on other issues specified by the present Federal Law.

**2.** A creditors' meeting that has decided to file a petition with a commercial court for the institution of financial rehabilitation, external administration or the declaration of the debtor bankrupt and the institution of winding-up procedure shall be entitled to formulate additional qualification standards to be applied to administrative receiver, receiver or winding-up receiver nominees and to send a request for such nominees to a self-regulating organisation.

**3.** If the creditors' meeting that considers the issues put by the present article within the competence of the first meeting of creditors is convened after the termination of observation, such meeting shall be subject to the norms of the present Federal Law concerning the first creditors' meeting.

**Article 74.** The Decision of the First Creditors' Meeting on the Proceedings Applicable in a Bankruptcy Case

**1.** The decision of the first creditors' meeting on the institution of financial rehabilitation shall contain a proposed financial rehabilitation term, approved financial rehabilitation plan and debt repayment schedule.

**2.** The decision of the first creditors' meeting on the institution of external administration shall contain a proposed external administration term.

**3.** The decision of the first creditors' meeting on filing a petition with the commercial court for declaring the debtor bankrupt and instituting winding-up procedure may also contain a proposed winding-up term.

**4.** The decision of the first creditors' meeting on concluding a amicable agreement shall contain the information specified in Article 151 of the present Federal Law.

**Article 75.** The Termination of Supervision

**1.** Except as otherwise established by the present article, the commercial court acting on the basis of a decision of the first creditors' meeting shall issue a ruling on the institution of financial rehabilitation or external administration, or shall adopt a decision to declare the debtor bankrupt and to commence winding-up procedure or shall approve an amicable agreement and terminate proceedings in the bankruptcy case.

**2.** If the first creditors' meeting did not adopt a decision to apply any of the proceedings applicable in a bankruptcy case, the commercial court shall postpone the case hearing within the term set by Article 51 of the present Federal Law and shall obligate the creditors to have adopted an appropriate decision by the date set by the commercial court.

If the case hearing cannot be postponed within the term set by Article 51 of the present Federal Law, the commercial court shall:

issue a ruling on the institution of financial rehabilitation if there exists a petition of the debtor's promoters (stockholders), the owner of property of the debtor being a unitary enterprise, an authorised state body or a third person or third persons, on the condition that security is provided for the sufficient performance of the debtor's obligations in keeping with a debt repayment schedule in an amount that must exceed at least by 20 per cent of the amount of the debtor's obligations included in the register of creditors' claims as of the date of the court hearing. In this case the debt repayment schedule shall envisage the beginning of debt repayment within one month after the commercial court ruling on the institution of financial rehabilitation and the satisfaction of the creditors' claims on a monthly pro rata basis in equal installments within one year after the date of commencement of satisfaction of the creditors' claims;

if no grounds exist for the institution of financial rehabilitation as envisaged by the present article, the commercial court shall issue a ruling on the institution of external administration if the commercial court has sufficient grounds for believing that the debtor's solvency can be restored;

if there exists bankruptcy evidence established by the present Federal Law and if no grounds exist for instituting financial rehabilitation and external administration as envisaged by the present article, the commercial court shall adopt a decision whereby the debtor is declared bankrupt and the winding-up procedure is commenced.

**3.** If the first creditors' meeting adopts a decision to file a petition with the commercial court for the institution of external administration and for the declaration of the debtor as bankrupt and commencement of winding-up procedure, the commercial court may issue a ruling on the institution of financial rehabilitation on the condition that a petition is filed by the debtor's promoters (stockholders), the owner of property of the debtor being a unitary enterprise, an authorised state body and also by a third person or third persons and that a bank guarantee is provided as a security for the performance of the debtor's obligations in keeping with a debt repayment schedule. The amount for which the bank guarantee is granted shall exceed by at least 20 per cent the amount of the debtor's obligations included in the register of creditors' claims as of the date of the first creditors' meeting. In this case the debt repayment schedule shall envisage the beginning of debt repayment within one month after the commercial court ruling on the institution of financial rehabilitation and the satisfaction of the creditors' claims on a monthly pro rata basis in equal instalments within one year after the date of commencement of satisfaction of the creditors' claims.

*[Unofficial translation from Russian]*

The supervision shall be terminated as of the date of institution of financial rehabilitation, external administration, or declaration of the debtor bankrupt by the commercial court and commencement of the winding-up procedure or approval of an amicable agreement.

If no administrative receiver, receiver or winding-up receiver has been approved simultaneously with the institution of a specific proceeding, and also in the necessary cases, the commercial court shall vest the duties of a relevant qualified receiver in the interim receiver and obligate the interim receiver to hold a creditors' meeting for the purpose of considering the issue of choosing the self-regulating organisation from among whose members an administrative receiver, receiver or winding-up receiver is to be approved and setting qualification standards applicable to such qualified receiver.

### Chapter V. Financial Rehabilitation

**Article 76.** Petition for the Institution of Financial Rehabilitation

**1.** During supervision the debtor, acting on the basis of the debtor's promoters (stockholders), the body authorised by the owner of property of the debtor being a unitary enterprise and a third person or third persons shall be entitled to address a petition for the institution of financial rehabilitation to the first creditors' meeting, and in the cases specified by the present Federal Law, to the commercial court in the manner established by the present Federal Law.

**2.** While addressing a petition for the institution of financial rehabilitation to a creditors' meeting the persons which decided to write such a petition shall file the said petition and the documents attached thereto with the interim receiver and the commercial court within 15 days after the date of the creditors' meeting.

The interim receiver shall provide the creditors with an opportunity of getting acquainted with the said documents.

**Article 77.** Petition of Promoters (Stockholders) of a Debtor or of the Owner of a Debtor Being a Unitary Enterprise for the Institution of Financial Rehabilitation

**1.** The decision to present a petition for the institution of financial rehabilitation to the first creditors' meeting shall be adopted by the general meeting by a majority vote of the debtor's promoters (stockholders) that attended the said meeting or the body authorised by the owner of property of the debtor being a unitary enterprise.

**2.** Upon the decision to present a petition for the institution of financial rehabilitation to the first creditors' meeting the general meeting of the debtor's promoters (stockholders), the body authorised by the owner of property of the debtor being a unitary enterprise shall be entitled to terminate before the due date the powers of the head of the debtor and elect (appoint) a new head of the debtor.

**3.** The debtor's promoters (stockholders) which have voted for the adoption of the decision to present a petition to the first creditors' meeting for the institution of financial rehabilitation shall be entitled to provide security for the debtor's performing the debtor's obligations in compliance with a debt repayment schedule in the manner and in the amount envisaged by the present Federal Law or to arrange for the provision of such a security.

**4.** The decision to address a petition for the institution of financial rehabilitation to the first creditors' meeting shall contain the following:

information on the security offered by the debtor's promoters (stockholders), the owner of property of the debtor being a unitary enterprise for the debtor's performing the debtor's obligations in compliance with a debt repayment schedule;

the financial rehabilitation term which is proposed by the debtor's promoters (stockholders), the owner of property of the debtor being a unitary enterprise.

**5.** The following shall be attached to the decision to present a petition for the institution of financial rehabilitation to the first creditors' meeting:

a financial rehabilitation plan;

a debt repayment schedule;

the minutes of the general meeting of the debtor's promoters (stockholders) or the decision of the body authorised by the owner of property of the debtor being a unitary enterprise;

a list of the debtor's promoters (stockholders) which have voted for presenting a petition for the institution of financial rehabilitation to the meeting of creditors;

information on the security offered by the debtor's promoters (stockholders) or the owner of property of the debtor being a unitary enterprise for the debtor's performing the debtor's obligations in compliance with a debt repayment schedule (if there is such security);

other documents required under the present Federal Law.

*[Unofficial translation from Russian]*

**Article 78.** Third Person's (Third Persons') Petition for the Institution of Financial Rehabilitation

**1.** By agreement with the debtor a petition for the institution of financial rehabilitation may be filed by a third person or third persons. The said petition shall contain information on the security offered by the third person(s) for the performance of the debtor's obligations in keeping with a debt repayment schedule.

**2.** The following shall be attached to a petition for the institution of financial rehabilitation:

a debt repayment schedule signed by an authorised person;

documents on the security offered by third person(s) for the performance of the debtor's obligations in compliance with the debt repayment schedule.

Paragraph four is abrogated.

**Article 79.** Security for a Debtor's Performing Obligations under a Debt Repayment Schedule

**1.** A security for a debtor's performing obligations under a debt repayment schedule may be provided in the form of a pledge (mortgage), independent guarantee, state or municipal guarantee, suretyship or other, as not being inconsistent with the present Federal Law.

A security for a debtor's performing obligations under a debt repayment schedule shall not be in the form of withholding, deposits or forfeits money.

The subject matter of the security for a debtor's performing obligations under a debt repayment schedule shall not be a property or rights in rem which were owned by the debtor or held in economic jurisdiction.

**2.** The rights and duties of the person(s) which provided security for the debtor's performing obligations under a debt repayment schedule shall result from the said security and they shall emerge as of the date when the commercial court issues its ruling on the institution of financial rehabilitation.

**3.** An agreement on the provision of a security for the debtor's obligations in accordance with a debt repayment schedule shall be concluded in writing before the date of the decision on institution of financial rehabilitation, and it shall be signed by the person(s) that has/have provided the security and also by the interim receiver in the interests of creditors.

The agreement on the provision of a security for the debtor's obligations in accordance with the debt repayment schedule and also the transactions concluded pursuant to said agreement before the commencement of financial rehabilitation by the commercial court in respect of the debtor shall enter into force simultaneously with the issuance of the ruling on the commencement of financial rehabilitation.

**4.** The person(s) which provided security for a debtor's performing obligations under a debt repayment schedule shall be liable for the debtor's defaulting on the said obligations within the value of the property and rights in rem provided as the security for the debtor's performing the said obligations.

**5.** When a security is provided for a debtor's performing obligations under a debt repayment schedule in the form of a bank guarantee, the qualifications applicable to a guarantor shall be presented by the qualified receiver in the bankruptcy case of the creditors whose claims are subject to satisfaction under the approved debt repayment schedule.

When a security is provided for a debtor's performing obligations under a debt repayment schedule in the form of mortgage the state registration of the mortgage shall be effected within 45 days after the institution of financial rehabilitation under a commercial court ruling on the institution of financial rehabilitation and the agreement for the provision of the security for the debtor's obligations in compliance with the debt repayment schedule.

**6.** The institution of new proceedings applicable in a bankruptcy case, in respect of a debtor shall not be deemed a discharge of the obligation to provide security for the debtor's performing obligations under a debt repayment schedule. In this case no settlements of accounts shall be carried out with creditors and proceeds from the collection of security for debts shall be included in the composition of the debtor's property.

**Article 80.** Procedure for Instituting Financial Rehabilitation

**1.** Financial rehabilitation shall be instituted by a commercial court on the basis of a decision of a creditors' meeting, except for the cases specified by Items 2 and 3 of Article 75 of the present Federal Law.

**2.** Simultaneously with the issuance of a ruling on the institution of financial rehabilitation, the commercial court shall approve an administrative receiver, except for the cases specified in Item 2 of Article 75 of the present Federal Law.

**3.** The ruling on the institution of financial rehabilitation shall specify the financial rehabilitation term and it shall also include the debt repayment schedule approved by the court.

When a security is provided for the performance of obligations under a debt repayment schedule the ruling on the

*[Unofficial translation from Russian]*

institution of financial rehabilitation shall contain information on the persons which have provided the security and on the rate and methods of the security.

**4.** The ruling of a commercial court on the institution of financial rehabilitation shall take effect immediately.

**5.** The ruling of a commercial court on the institution of financial rehabilitation shall be subject to appeal.

**6.** Financial rehabilitation shall be instituted for a term not exceeding two years.

**Article 81.** The Consequences of Institution of Financial Rehabilitation

**1.** The following consequences shall take effect as of the date when the commercial court issues a ruling on commencement of financial rehabilitation:

creditor's claims for money obligations and for compulsory payments, except for current payments, may be presented to the debtor only in the observance of the procedure established by the present Federal Law for presentation of claims to a debtor;

the measures taken earlier to provide a security for creditors' claims shall be cancelled;

the distraint of the debtor's property and other restrictions on the debtor in as much as the debtor's disposal of its/his/her property is concerned may be implemented only in an arbitration litigation in a bankruptcy case;

the collection of property under writs of execution shall be suspended, except for such collection under writs of execution issued on the basis of decisions -- that had taken effect before the date of commencement of financial rehabilitation -- on collection of debts relating to wages/salaries, royalties payable to the authors of the results of intellectual activities, recovery of property from someone's unlawful possession, compensation for harm inflicted to life or health, compensation to be paid in excess of the compensation for harm;

the meeting of claims of a founder (stockholder) of the debtor for apportionment of a participatory share from the debtor's property in connection with its/his/her ceasing to be its founder (stockholder), the buy-out or acquisition of floated shares by the debtor or the payout of the actual value of the stock (participatory share) is not admissible;

the withdrawal of the debtor's property by the owner of the property of the debtor being an unitary enterprise is not admissible;

the pay-out of dividends and other payment on serial securities or incomes on stocks (participatory shares) and the distribution of profit among the debtor's founders (stockholders) are not admissible;

the termination of the debtor's money obligations by means of setting off a reciprocal homogenous claim, earnest money or otherwise is not admissible, if in such case the priority rating of meeting the creditors' claims established by Item 4 of Article 134 of the present Federal Law is not observed or if such termination causes a predominant satisfaction of the claims of creditors of one priority rating category whose obligations are terminated as compared with other creditors;

forfeit money (fines and penalties), interest payable and other sanctions for a default on, or the improper performance of monetary obligations and compulsory payments shall not be accrued, except for current payments.

**2.** Interest shall be accrued on the sum of creditors' claims relating to monetary obligations and mandatory payments subject to satisfaction under a debt repayment schedule at the refinancing rate established by the Central Bank of the Russian Federation as of the date of commencement of financial rehabilitation, on the basis of the outstanding amount of claims in accordance with the debt repayment schedule. An agreement between the debtor and the bankruptcy creditor may envisage a smaller rate of the interest accruable.

The interest specified in this item shall be subject to accrual on the sum of the creditor's claims from the date of issuance of the ruling on the institution of financial rehabilitation to the date of discharge of the creditor's claims, and if no such discharge occurs before the date of the decision whereby the debtor is declared bankrupt and a winding-up procedure is commenced, to the date of such decision.

The interest accrued in accordance with the present article is payable simultaneously with the repayment of creditors' claims for money obligations and for compulsory payments in accordance with the debt repayment schedule. Unless such repayment had taken place before the date of the decision on deeming the debtor bankrupt and on commencing a winding-up proceeding the interest accrued shall be payable simultaneously with the meeting of creditors' claims for money obligations and for compulsory payments following the priority rating established by Article 134 of the present Federal Law.

**3.** Forfeit money (fines, penalties) and also the sums of inflicted losses in the form of lost benefits, which the debtor has to pay to creditors in the amounts existing as of the date of institution of financial rehabilitation, shall be subject to payment within financial rehabilitation in keeping with the debt repayment schedule after all the other creditors' claims have been met.

**4.** Settlement of a debtor's obligations that became due before the institution of financial rehabilitation shall be effected

*[Unofficial translation from Russian]*

exclusively in compliance with the present Federal Law.

**5.** Creditors' claims shall be considered by the commercial court in the manner specified in Article 100 of the present Federal Law.

Creditors' claims presented within financial rehabilitation and included in the register of creditors' claims shall be satisfied within one month after the termination of discharge of obligations under the debt repayment schedule, except as otherwise envisaged by the present Federal Law.

**Article 82.** Management of the Debtor within Financial Rehabilitation

**1.** During financial rehabilitation the managerial bodies of the debtor shall exercise their powers subject to the limitations/restrictions established by the present chapter.

**2.** On the basis of a petition of a creditors' meeting, the administrative receiver or persons that provided security, such petition containing information on the improper implementation of the financial rehabilitation plan by the head of the debtor or on the committal of actions by the head of the debtor whereby the rights and legal interests of creditors and/or persons that provided security have been violated, the commercial court may remove the head of the debtor from his/her position in the manner established by Article 69 of the present Federal Law. The commercial court shall issue a ruling on the removal of the head of the debtor, such ruling being subject to appeal.

**3.** Without the consent of a creditors' meeting (the creditors' committee), the debtor shall not be entitled to enter into deals or several inter-related deals in the accomplishment of which she/he/it is interested, or which:

are connected to the acquisition, alienation or possibility of alienation, either directly or indirectly, of the debtor's property of which the balance sheet value makes up over five per cent of the balance sheet value of the debtor's assets as of the last accounting date preceding the date of conclusion of transaction;

cause the issuance of loans (credits), the issuance of suretyships and guarantees and also the institution of trust in respect of the debtor's property.

Without the consent of a creditors' meeting (the creditors' committee) and the person(s) which provided security the debtor shall not be entitled to make decisions concerning its reconstruction (merger, accession, division, separation, transformation).

If the amount of the debtor's monetary obligations that have occurred after the institution of financial rehabilitation makes up over 20 per cent of the sum of the creditors' claims included in the register of creditors' claims the deals that cause new obligations for the debtor may be concluded exclusively with the consent of a creditors' meeting (the creditors' committee).

**4.** Without the consent of the administrative receiver, except as explicitly provided for by this Federal Law, the debtor shall not be entitled to conclude deals or several inter-related deals which:

cause an increase in the debtor's account payable of more than five per cent of the sum of the creditors' claims included in the register of creditors' claims as of the date of institution of financial rehabilitation;

are related to the acquisition, alienation or the possibility of alienation either directly or indirectly of the debtor's property, except for the sale of the debtor's property being finished products (works, services) manufactured or sold by the debtor in the course of ordinary economic activity;

cause a claim assignment, a debt assignment;

cause the receipt of loans (credits).

**5.** The deals executed by the debtor in breach of the present article may be declared null and void on an application of persons being party to the bankruptcy case.

**6.** Abrogated.

**Article 83.** The Administrative Receiver

**1.** The administrative receiver shall be approved by a commercial court in the manner specified by Article 45 of the present Federal Law.

**2.** The administrative receiver shall act from the date of his/her approval by the commercial court to the termination of financial rehabilitation or to his/her removal or release by the commercial court.

**3.** Within financial rehabilitation the administrative receiver shall:

keep a register of creditors' claims, except for the cases specified by the present Federal Law;

convene meetings of creditors in the cases established by the present Federal Law;

*[Unofficial translation from Russian]*

consider reports on the progress of implementation of the debt repayment schedule and of the financial rehabilitation plan (if it is available) presented by the debtor and to present statements to a meeting of creditors on the progress of implementation of the debt repayment schedule and of the financial rehabilitation plan;

present to a meeting of creditors or to the creditors' committee information on the progress of implementation of the debt repayment schedule in the procedure and on the scope established by a meeting or creditors or the creditors' committee, to be considered by them;";

monitor the debtor's timely performance of the creditors' current claims;

monitor the progress of implementation of the financial rehabilitation plan and debt repayment schedule;

monitor the proper timing and completeness of money remittances for the purpose of meeting creditors' claims;

in the case of the debtor's default on obligations under the debt repayment schedule, demand that the persons which have provided security for the debtor's performance of obligations under the debt repayment schedule execute the duties arising out of the security provided;

execute the other duties envisaged by the present Federal Law.

4. The administrative receiver shall be entitled to:

demand the provision of information from the head of the debtor on the debtor's current activity;

take part in a stock-take if it is performed by the debtor;

grant approval for the debtor's deals and decisions in the cases specified by the present Federal Law and provide information to the creditors on the said deals and decisions;

file a petition with the commercial court for removing the head of the debtor in the cases specified by the present Federal Law;

file a petition with the commercial court for the taking of additional measures for preservation of the debtor's property and also for lifting such measures;

file a claim in his/her own name with the commercial court for declaring as null and void deals and decisions, and also for the application of measures for the invalidity of null and void deals concluded or accomplished by the debtor in breach of the provisions of the present Federal Law;

exercise other powers specified by the present Federal Law.

5. The administrative receiver may be relieved from the duties vested therein in the bankruptcy case by the commercial court:

on an application of the administrative receiver;

on the grounds of the petition of the self-regulating organisation of insolvency administrators a member of which he is, in the case of the withdrawal of the insolvency administrator from the self-regulating organisation or the petition of the self-regulating organisation of the insolvency administrators adopted by such an organisation according to Item 2 of Article 20.5 of this Federal Law;

in the other cases envisaged by the present Federal Law.

The administrative receiver may be relieved from the duties vested therein in the bankruptcy case by the commercial court:

under a decision of a meeting of creditors if he/she has defaulted on, or improperly executed the duties vested therein in the bankruptcy case;

in connection with the commercial court's upholding a complaint of a person deemed party to the bankruptcy case against the administrative receiver's default on, or improper execution of, the duties vested therein in the bankruptcy case if such default or improper execution has infringed on the rights or lawful interests of the person and also has caused or could cause losses to the debtor or the debtor's creditors;

if circumstances have been discovered which obstructed the person's being confirmed as administrative receiver, for instance, if such circumstances have occurred after the person was confirmed as administrative receiver;

on the grounds of the petition of the self-regulating organisation of insolvency administrators in the case of the expulsion of the insolvency administrator from the self-regulating organisation in connection with an infringement by the insolvency administrator of conditions of membership in the self-regulating organisation, infringements by the insolvency administrator of the requirements of this Federal Law, other federal laws, other normative legal acts of the Russian Federation,

*[Unofficial translation from Russian]*

federal standards, standards and rules of professional work;

on the grounds of the petition of the self-regulating organisation of insolvency administrators in the case of application to the insolvency administrator of administrative punishment in the form of disqualification for the commission of an administrative offence;

in the other cases envisaged by a federal law.

When the administrative receiver is relieved the commercial court shall confirm a new administrative receiver in the procedure established by the present article.

A ruling of an arbitration on relief or removal of an administrative receiver from a bankruptcy case shall be performed immediately. It is subject to appeal. The appeal of the ruling on relief or removal of the administrative receiver shall not cause suspension of the execution of the ruling.

**6.** Termination of proceedings in a bankruptcy case in connection with the discharge of creditors' claims in the course of financial rehabilitation shall cause termination of the powers of the administrative receiver.

**7.** If the commercial court issued a ruling on the institution of external administration or decided to declare the debtor bankrupt and commence winding-up and if another person is approved as the receiver or the winding-up receiver, the administrative receiver shall keep executing his/her duties until the approval of the receiver or the winding-up receiver.

**Article 84.** The Financial Rehabilitation Plan and the Debt Repayment Schedule

**1.** A financial rehabilitation plan shall be elaborated if there is no security for the debtor's performance of obligations in accordance with the debt repayment schedule.

A financial rehabilitation plan prepared by the debtor's founders (stockholders) or the owner of the property of the debtor being an unitary enterprise shall be confirmed by a meeting of creditors. The financial rehabilitation plan shall substantiate the possibility of meeting creditors' claims in accordance with the debt repayment schedule.

**2.** The debt repayment schedule shall be signed by the person authorised to do so by the debtor's promoters (stockholders) and the owner of property of the debtor being a unitary enterprise, and a duty shall emerge on the debtor's part as of the date of approval of the debt repayment schedule to repay the debtor's debts owing the creditors within the term set by the schedule.

If a security is available for the debtor's performing the debtor's obligations under the debt repayment schedule it shall also be signed by the persons which have provided the security.

**3.** The debt repayment schedule shall envisage the discharge of all the creditors' claims included in the register of creditors' claims at least one month before the expiry of the financial rehabilitation term and also the discharge of claims of the first and second priority rating creditors within six months after the institution of financial rehabilitation.

Paragraph 2 is abrogated.

In the event of institution of financial rehabilitation in the manner established by Items 2 or 3 of Article 75 of the present Federal Law the debt repayment schedule shall meet the standards set by Article 75 of the present Federal Law.

**4.** The debt repayment schedule shall envisage a pro rata repayment of creditor's claims according to the priority rating set by Article 134 of the present Federal Law.

**5.** The debtor is entitled to complete the performance under a debt repayment schedule ahead of time.

**Article 85.** Amending a Debt Repayment Schedule

**1.** If the debtor defaults on a debt repayment schedule (non-payment of a debt when due and/or at a set rate) the debtor's promoters (stockholders), the owner of property of the debtor being a unitary enterprise, third persons which provided security shall within 14 days after the date set as the due date in the debt repayment schedule be entitled to address a petition to a creditors' meeting for approving the amendments introduced in the debt repayment schedule or for satisfying creditors' claims in compliance with the debt repayment schedule. A copy of the petition shall be sent to the administrative receiver. The administrative receiver shall convene a creditors' meeting within 14 days after the receipt of the petition.

If a decision is adopted to amend the debt repayment schedule, a creditors' meeting shall be entitled to file a petition with the commercial court for approval of the amendments made to the debt repayment schedule.

If the creditors' meeting refuses to approve the amendments made to the debt repayment schedule the creditors' meeting shall adopt a decision to file a petition with the commercial court for terminating financial rehabilitation before the due date.

**2.** If the amount of claims presented by creditors within financial rehabilitation and included in the register of creditors' claims exceeds by more than 20 per cent the sum of creditors' claims subject to repayment under the debt repayment schedule,

*[Unofficial translation from Russian]*

the administrative receiver shall within 14 days after the inclusion of these claims in the register of creditors' claims convene a creditors' meeting for the purpose of adopting a decision on amending the debt repayment schedule.

If a decision is made to amend the debt repayment schedule the creditors' meeting shall be entitled to file a petition with the commercial court for approving the amendments made to the debt repayment schedule.

If the creditors' meeting refuses to approve the amendments made to the debt repayment schedule the creditors' meeting shall be entitled to petition for terminating financial rehabilitation before the due date.

**3.** The creditors' meeting that has adopted a decision to amend the debt repayment schedule may propose to the person(s) which provided security for the debtor's performing obligations under the debt repayment schedule to increase the amount of the security for the debtor's performing obligations in compliance with the debt repayment schedule.

**4.** The commercial court shall be entitled to issue a ruling on amending a debt repayment schedule only in respect of the claims included in the register of creditors' claims.

**5.** Amending a debt repayment schedule shall not be deemed a ground for the person(s) that provided security for the debtor's performing obligations under a debt repayment schedule to refuse discharging their obligation to secure the debtor's performance under the debt repayment schedule which was the subject matter of the contract for provision of a security for the debtor's obligations.

**Article 85.1.** The Repayment of Debts for Compulsory Payments in the Course of Financial Rehabilitation by the Debtor's Founders (Stockholders), the Owner of the Property of the Debtor Being an Unitary Enterprise and/or a Third Person

**1.** In the course of financial rehabilitation the claims addressed to the debtor for compulsory payments included in the register of creditors' claims may be repaid in the procedure established by the present article by the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise and/or a third person.

When the claims addressed to the debtor for compulsory payments are being repaid by the debtor's founders (stockholders), the owner of the property of the debtor being an unitary enterprise and/or a third person all the claims addressed to the debtor for compulsory payments that have been included in the register of creditors' claims shall be repaid.

**2.** A person intending to repay the claims addressed to the debtor for payment of compulsory payment sin full shall send a declaration of such intent to the commercial court that is considering the bankruptcy case, to the debtor, administrative receiver and the empowered bodies.

**3.** The following shall be indicated in the declaration of the intent to repay the claims addressed to the debtor for compulsory payments in full:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the applicant;

the term for repayment of the claims addressed to the debtor for compulsory payments not exceeding 30 business days after the date of issuance of the relevant ruling by the commercial court.

**4.** The declaration of intent shall be considered by the commercial court within 14 business days after the receipt thereof.

If several declarations of intent are received by the commercial court from several persons they shall be considered in the chronological order of being received by the commercial court.

**5.** According to the results of consider of the declaration of intent the commercial court shall issue a ruling upholding the declaration of intent or a ruling refusing to uphold the declaration of intent if in the register of creditors' claims there are no claims addressed to the debtor for compulsory payments or if the applicant has decided not to repay the claims addressed to the debtor for compulsory payments until the declaration is considered.

**6.** The following shall be indicated in the commercial court ruing upholding the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the person that repays the claims addressed to the debtor for compulsory payments;

the amount of the claims addressed to the debtor for compulsory payments , the principal debt amount and the forfeit money (fines and penalties) accrued;

the term and procedure for repayment of the claims addressed to the debtor for compulsory payments ;

the date of the court-room hearing on the results of repayment of the claims addressed to the debtor for compulsory payments ;

bank account details and also the other information required for remittance of funds for repayment of the claims

addressed to the debtor for compulsory payments .

**7.** The consideration of the declaration of intent shall be adjourned until the date of consideration of the results of repayment of the claims addressed to the debtor for compulsory payments if there is a similar application that has been earlier received from another person.

If there is a dispute as to the amount and composition of the claims addressed to the debtor for compulsory payments the consideration of the declaration of intent may be adjourned until the date when the court judgement on establishment of the composition and amount of the claims addressed to the debtor for compulsory payments that have been included in the register of creditors' claims becomes final.

**8.** For the purpose of repaying the claims addressed to the debtor for compulsory payments the empowered body shall serve a notice to the commercial court containing the date of service of the notice, the surname, first name, patronymic and position of the official who signed the notice and also the information required according to the rules for completion of the payment documents that acknowledge the remittance of funds for repayment of claims addressed to a debtor for compulsory payments , including an indication of the amount of claim in respect of each of the beneficiaries of the funds.

**9.** Within the term set by the commercial court ruling upholding the declaration of intent the applicant shall remit funds in the amount and in the procedure specified in the ruling.

**10.** Upon the expiry of the term set by the commercial court for repayment of the claims addressed to the debtor for compulsory payments the applicant shall send an application to the commercial court for deeming the claims addressed to the debtor for compulsory payments repaid and for replacing the creditor in the register of creditors' claims.

Attached to the application shall be payment documents acknowledging that funds have been remitted in the amount and in the procedure specified in the commercial court ruling upholding the declaration of intent.

**11.** According to the results of consideration of the application for deeming the claims addressed to the debtor for compulsory payments repaid and for replacing the creditor in the register of creditors' claims, provided the repayment completed complies with the commercial court ruling upholding the declaration of intent, the commercial court shall issue a ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims.

The claims of the person that has repaid the claims addressed to the debtor for compulsory payments shall be recorded in the register of creditors' claims in the same amount and with the same priority rating as repaid claims addressed to the debtor for compulsory payments.

**12.** If the claims addressed to the debtor for compulsory payments have not been repaid in full or have been repaid in breach of the procedure or term for repayment established by the commercial court ruling the commercial court shall issue a ruling refusing to deem the claims addressed to the debtor for compulsory payments repaid.

A refund shall be provided for the funds remitted to the applicant within ten business days after the commercial court ruling refusing to deem the claims addressed to the debtor for compulsory payments repaid becomes final.

The remittance of funds in an amount below the one envisaged by the commercial court ruling upholding the declaration of intent shall not be deemed ground for the commercial court's issuing a ruling refusing to deem repaid claims addressed to the debtor for compulsory payments discharged, and equally, and also for increasing the amount of claims to the debtor of the person that has repaid the claims addressed to the debtor for compulsory payments.

The funds remitted in excess over the amount of money envisaged by said ruling shall be refunded to the applicant within ten business days after the commercial court ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims becomes final.

**13.** The Government of the Russian Federation shall establish a procedure for settlements of accounts for the purpose of repaying the claims addressed to a debtor for compulsory payments.

**14.** The repayment of the claims for compulsory payments addressed to a debtor in respect of which the present Federal Law established details of implementation of the proceedings applicable in a bankruptcy case is admissible in cases when there is a provision for this in the present Federal Law that establishes the details of bankruptcy of debtors of specific categories.

**Article 86.** Termination of Financial Rehabilitation before the Due Date

**1.** If the debtor discharges all the creditors' claims envisaged by the debt repayment schedule before the expiry of the financial rehabilitation term set by the commercial court, the debtor shall file a report on termination of financial rehabilitation before the due date.

**2.** The procedure for filing the report and for consideration of the results of financial rehabilitation by the commercial court and also the composition of the materials to be attached to the report are established by Items 1-4 of Article 88 of the

84

Case 1:16-cv-09139-PGG   Document 53-3   Filed 03/06/17   Page 101 of 137

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 86
of 317                          *[Unofficial translation from Russian]*

present Federal Law.

**3.** According to the results of consideration of the results of financial rehabilitation and creditor's complaints the commercial court shall issue one of the below rulings:

on terminating proceedings in the bankruptcy case if there is no outstanding debt and if the creditors' complaints have been deemed without ground;

on refusing to terminate proceedings in the bankruptcy case if an outstanding debt has been discovered and the creditors' complaints have been deemed valid.

The said rulings shall take effect immediately and shall be subject to appeal.

**Article 87.** Termination of Financial Rehabilitation before the Due Date

**1.** Below are the grounds for terminating financial rehabilitation before the due date:

the non-filing of a contract for providing security for the debtor's obligations under the debt repayment schedule with the commercial court within the term specified in Item 3 of Article 79 of the present Federal Law;

a repeated or significant (for a term exceeding 15 days) breach of the creditors' claim repayment due dates established by the debt repayment schedule within financial rehabilitation.

**2.** Within 15 days after the occurrence of grounds for termination before the due date of financial rehabilitation, the administrative receiver shall convene a creditors' meeting to consider the issue of filing a petition with the commercial court for terminating financial rehabilitation before the due date.

**3.** The debtor shall provide a report to the creditors' meeting convened in keeping with Item 2 of the present article on the results of implementation of the debt repayment schedule and financial rehabilitation plan (if any).

The following shall be attached to the report: the debtor's balance sheet as of the last accounting date, statement of the debtor's profits and losses, information on the amount of paid up creditors' claims and documents to acknowledge that creditors' claims have been satisfied.

The administrative receiver shall present his/her statement to a meeting of creditors concerning the progress of implementation of the debt repayment schedule and the financial rehabilitation plan (if such plan is available).

**4.** According to the results of consideration of the debtor's report and the administrative receiver's statement the creditors' meeting shall be entitled to adopt a decision to file one of the below petitions with the commercial court:

on the institution of external administration;

on declaring the debtor bankrupt and commencing winding-up procedure.

Attached to the petition of the creditors' meeting shall be a copy of the minutes of the creditors' meeting and a list of the creditors which have voted against the decision adopted by the creditors' meeting or which did not take part in voting on the issue.

**5.** On the basis of the petition of the creditors' meeting the commercial court shall issue one of the below court decisions:

a ruling on refusing to satisfy a relevant petition of the creditors' meeting in case when the court hearing has revealed that the debtor has satisfied the creditors' claims in compliance with the debt repayment schedule and that the creditors' claims have been deemed without ground;

a ruling on the institution of external administration if the debtor's solvency can be restored;

a decision to declare the debtor bankrupt and to commence winding-up procedure if there are no grounds for instituting external administration and if evidence of bankruptcy is present.

**6.** If financial rehabilitation has been instituted by the commercial court in the manner established by Item 3 of Article 75 of the present Federal Law on the petition of a person participating in the bankruptcy case the commercial court may terminate financial rehabilitation before due time if a breach of the creditors' claim repayment due dates set by the debt repayment schedule took place within financial rehabilitation. In the said case the commercial court shall issue a ruling on the institution of a proceeding applicable in a bankruptcy case for which the first creditors' meeting petitioned.

**Article 88.** Termination of Financial Rehabilitation

**1.** At least one month before the expiry of the established financial rehabilitation term the debtor shall file a report with the administrative receiver on the results of implementation of financial rehabilitation.

**2.** The following shall be attached to the debtors' report:

*[Unofficial translation from Russian]*

the debtor's balance sheet as of the last accounting date;

a statement of the debtor's profits and losses;

documents confirming repayment of creditors' claims.

**3.** The administrative receiver shall consider the debtor's report on the results of completion of financial rehabilitation and draw up a statement on the progress of the debt repayment schedule, the meeting of creditors' claims and the implementation of the financial rehabilitation plan (if such plan is available) which shall be sent to the creditors whose claims are included in the register of creditors' claims and to the commercial court within ten days after the date of receipt of the debtor's report on the results of completion of financial rehabilitation.

**4.** If the creditors' claims included in the register of creditors' claims have not been met as of the date of consideration of the debtor's report or if the said report has not been filed to the administrative receiver within the term established by Item 1 of the present article the administrative receiver shall convene a meeting of creditors, which is empowered to adopt one of the below decisions:

on filing a petition with the commercial court for instituting external administration;

on filing a petition with the commercial court for declaring the debtor bankrupt and commending winding-up procedure.

**5.** Upon the receipt of a statement of the administrative receiver or a petition of the creditors' meeting, the commercial court shall set a date for the hearing to consider the results of financial rehabilitation and creditors' claims in respect of actions of the debtor and the administrative receiver. The commercial court shall notify the persons participating in the bankruptcy case of the date and place of the court hearing in the manner established by the present Federal Law.

**6.** According to the results of consideration of progress of financial rehabilitation and of creditors' claims, the commercial court shall adopt one of the below court decisions:

a ruling on terminating proceedings in the bankruptcy case if no outstanding debt exists and if the creditors' complaints have been deemed without ground;

a ruling on instituting external administration if the debtor's solvency can be restored;

a decision to declare the debtor bankrupt and commence winding-up procedure if there are no grounds for the institution of external administration and if evidence of bankruptcy exists.

**Article 89.** Performance of Obligations by Persons Which Provided Security for a Debtor's Performing Obligations under a Debt Repayment Schedule

**1.** If the debtor defaults on implementing a debt repayment schedule for more than five days, the administrative receiver shall apply to the persons which provided security for the debtors' discharging obligations under the debt repayment schedule with a demand for the debtor's discharging the obligations under the debt repayment schedule.

**2.** The amounts of money received as a result of the discharge by the persons which provided security for the debtor's discharging the obligations shall be remitted to the debtor's account for the purpose of effecting settlement with creditors.

Settlement with creditors shall be effected by the debtor in the manner established by Item 4 of Article 84 of the present Federal Law.

**3.** From the date when creditors' claims are satisfied the administrative receiver or registrar shall make a relevant entry in the register of creditors' claims.

**4.** If creditors' claims are satisfied by the persons which provided a security for the debtors' discharging obligations under a debt repayment schedule, the claims of the persons which provided the security for the debtor's discharging obligations under the debt repayment schedule shall be repaid by the debtor after the termination of proceedings in the bankruptcy case or in the course of winding-up as part of the claims of the third priority ranking creditors.

**5.** Disputes between the persons which provided security for the debtor's discharging obligations under a debt repayment schedule and the administrative receiver, bankruptcy creditors, and authorised bodies shall be resolved by the commercial court in whose cognisance the bankruptcy case is.

**Article 90.** The Consequences of Discharge of Obligations by the Persons Which Provided a Security for the Debtor's Discharging Obligations under a Debt Repayment Schedule

**1.** The persons which provided security for a debtor's discharging obligations under a debt repayment schedule and which have discharged the obligations resulting from such a security are entitled to present their claims to the debtor in accordance with the general procedure envisaged by a federal law.

Case 1:16-cv-09139-PGG   Document 53-3   Filed 03/06/17   Page 103 of 137

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 88
of 317
*[Unofficial translation from Russian]*

**2.** If within financial rehabilitation the persons which provided security for a debtor's discharging obligations under a debt repayment schedule satisfied the creditors' claims, the said persons' claims within subsequent proceedings applicable in a bankruptcy case, shall be subject to inclusion in the register of creditors' claims as bankruptcy creditors' claims.

**Article 91.** The Consequences of a Default on Obligations by the Persons Which Provided a Security for a Debtor's Discharging Obligations under a Debt Repayment Schedule

A default by the persons which provided security for a debtor's discharging obligations under a debt repayment schedule in their obligations ensuing the security provided, within the term set by Item 1 of Article 89 of the present Federal Law, shall cause the said person's liability under the civil legislation.

**Article 92.** Transition to External Administration

**1.** According to the results of consideration of the progress of financial rehabilitation, the commercial court shall be entitled to issue a ruling on the institution of external administration in the following cases:

if the possibility of the debtor's restoring solvency is established within the term envisaged by the present Federal Law;

if a petition of a creditors' meeting was filed with the commercial court for a transition to external administration in the cases specified by the present Federal Law;

if creditors' meeting petition with the commercial court for deeming the debtor bankrupt and for commencing a winding-up proceeding is filed, if circumstances have occurred after the meeting of creditors that allow one to believe that the debtor's solvency can be restored within the term established by the present Federal Law;

if a creditors' meeting was held which adopted a decision to file a petition with the commercial court for declaring the debtor bankrupt and commencing winding-up procedure, if circumstances emerged that made it possible to believe that the debtor's solvency can be restored;

in other cases envisaged by the present Federal Law.

**2.** The aggregate term of financial rehabilitation and external administration shall not exceed two years.

If more than 18 months elapse from the date of institution of financial rehabilitation to the date when the commercial court hears the issue of institution of external administration, the commercial court shall not be entitled to issue a ruling on the institution of external administration.

### Chapter VI. External Administration

**Article 93.** Procedure for Instituting External Administration

**1.** External administration shall be instituted by a commercial court on the basis of a decision of a creditors' meeting, except for the cases specified by the present Federal Law.

**2.** External administration shall be instituted for a term not exceeding 18 months, which can be extended in the manner specified by the present Federal Law by up to six months, except as otherwise established by the present Federal Law.

A ruling with which an external administration term is established or extended shall take effect immediately and it shall be subject to appeal in the manner established by Item 3 of Article 61 of the present Federal Law.

**3.** At the petition of a creditors' meeting or the receiver, the established external administration term may be reduced.

A ruling on termination of the term of external administration shall be performed immediately, and it is subject to appeal in the procedure established by Item 3 of Article 61 of the present Federal Law.

**Article 94.** The Consequences of Institution of External Administration

**1.** Effective from the date of institution of external administration:

the powers of the head of the debtor are terminated, and the duty to manage the affairs of the debtor is vested in the receiver;

the receiver shall be entitled to issue an order of dismissal of the head of the debtor or propose to the head of the debtor to leave his/her office for another position in the manner and on the terms established by the labour legislation;

the powers of the managerial bodies of the debtor and the owner of property of the debtor being a unitary enterprise shall be terminated, and the powers of the head of the debtor and other debtors' managerial bodies shall be transferred to the receiver, except for the powers of the debtor's managerial bodies and the owner of the property of the debtor being an unitary enterprise specified in Items 2 and 3 of the present Article. The managerial bodies of the debtor, the interim receiver, and the administrative receiver shall within three days after the approval of the receiver ensure the transfer of the debtor's accounting and other documentation, seals and rubber stamps, material and other valuables to the receiver;

*[Unofficial translation from Russian]*

the measures for securing creditors' claims adopted before shall be revoked;

the property of the debtor may be seized and other restrictions/limitations on the debtor in as much as it concerns the debtor's disposing of his/her/its property may be imposed exclusively within the framework of the bankruptcy proceedings except for the distraints and other restrictions imposed in a civil or an arbitration proceedings or execution proceeding in respect of collection of debts for current payments and garnishment;

a moratorium on meeting creditors' claims relating to monetary obligations and mandatory payments shall be imposed, except for the cases specified by the present Federal Law;

creditors' claims for money obligations and for compulsory payments, except for the current payments that may be presented to the debtor only in the observance of the procedure for presenting claims to a debtor established by the present Federal Law.

**2.** Within the competence established by a federal law, the managerial bodies of the debtor shall be entitled to make decisions:

Paragraph two is abrogated;

on designating the number and face value of announced shares;

on an increase in the joint stock company's authorised capital by means of floating additional ordinary shares;

on addressing a petition to a creditors' meeting for including the possibility of an additional issue of shares in the external administration plan;

on designating a procedure for conducting a general meeting of shareholders;

on filing a petition for the sale of the debtor's enterprise;

on replacing the debtor's assets;

on electing a representative of the debtor's promoters (stockholders);

on concluding an agreement on the terms for the provision of funds for discharging the debtor's obligations between a third person or third persons and the managerial bodies of the debtor authorised under the constitutive documents to adopt a decision to conclude large deals;

other decisions as may be required for floating additional ordinary shares of the debtor.

The petition of the debtor's managerial bodies for the sale of the debtor's enterprise shall contain information on the minimum selling price for the debtor's enterprise.

The funds spent to hold a meeting of shareholders and a meeting of the board of directors (supervisory board) or other managerial body of the debtor shall be reimbursed at the expense of the debtor only if such a possibility is envisaged in the external administration plan.

**3.** Within the scope of powers established by a federal law the owner of the property of a debtor being an unitary enterprise is entitled to take decisions:

on filing a petition for an enterprise of the debtor to be sold;

on the debtor's assets being replaced;

on concluding an agreement with a third person or third persons on the conditions for the provision of funds for the purpose of performing the debtor's obligations.

A petition of the owner of the property of a debtor being an unitary enterprise for an enterprise of the debtor to be sold shall contain information on the minimum selling price of the debtor's enterprise.

**Article 95.** Moratorium on Meeting Creditors' Claims

**1.** The moratorium on meeting creditors' claims shall extend to the monetary obligations and mandatory payments, except for current payments.

**2.** Within the effective term of a moratorium on meeting creditors' claims relating to the monetary obligations and the mandatory payments specified in Item 1 of the present article:

performance under writs of execution relating to asset collection and under other documents for collection in an uncontested proceeding shall be suspended, forced performance under them shall be prohibited, except for performance under writs of execution issued under decisions on collection of wages/salaries debt, on disbursement of royalties to the authors of the results of intellectual activity, on demanding property from another's illegal possession, on compensation for harm to life or

88

health, compensation to be paid in excess of the compensation for harm and also collection of current payments on debt that became final before the institution of external administration;

no forfeit money (fines, penalties) and other financial sanctions shall be accrued for a default on or improper performance of monetary obligations and mandatory payments, except for current payments.

Interest shall be accrued on the sum of claims of a bankruptcy creditor, an authorised body at the rate set in compliance with Article 4 of the present Federal Law as of the date of institution of external administration in the manner and at the rate specified by the present article.

Interest on the sum of claims of a bankruptcy creditor or an authorised body denominated in Russian currency shall be accrued at the rate of the refinancing rate set by the Central Bank of the Russian Federation as of the date of institution of external administration.

The agreement between the receiver and a bankruptcy creditor may envisage a lower rate of interest payable or a shorter interest accrual term in comparison with those envisaged by the present article.

The interest subject to accrual and payment under the present article shall be accrued on the sum of claims of the creditors of each priority ranking from the date of institution of external administration to the date of the commercial court's ruling on the commencement of settlements with creditors for claims of the creditors of each priority ranking or to the time when the said claims are satisfied by the debtor or by a third person within external administration or to the time when the debtor is declared bankrupt and winding-up is commenced.

The interest accrued in compliance with the present article shall not be taken into account in counting the number of votes belonging to a bankruptcy creditor or an authorised body at creditors' meetings.

The payment of the interest accrued in accordance with the present article shall be done simultaneously with the meeting of creditors' claims for money obligations and for compulsory payments in the procedure established by Article 121 of the present Federal Law. If such meeting did not take place before the date of the decision on deeming the debtor bankrupt and on commencing a winding-up proceeding the interest accrued shall be paid simultaneously with the meeting of creditors' claims for money obligations and for compulsory payments according to the priority rating established by Article 134 of the present Federal Law.

**3.** The moratorium on meeting creditors' claims shall also extend to creditors' claims for compensation for the losses relating to the receiver's refusal to perform the debtor's contracts.

**4.** Abrogated.

**5.** The moratorium on meeting creditors' claims shall not extend to claims for debt collection relating to wages/salaries, disbursement of royalties to the authors of the results of intellectual activity, compensation for harm inflicted to life or health, compensation to be paid in excess of the compensation for harm.

**Article 96.** The Receiver

**1.** The receiver shall be approved by a commercial court simultaneously with the institution of external administration, except for the cases envisaged by the present Federal Law.

**2.** Before the date of approval of a receiver the commercial court shall vest the duties and rights of a receiver established by the present Federal Law in the person who executed the duties of the interim receiver, administrative receiver or winding-up receiver of the debtor, except for the drawing up of an external administration plan.

The commercial court shall issue a ruling on the approval of the receiver.

**3.** The ruling on the approval of a receiver shall take effect immediately.

**4.** The ruling on the approval of a receiver shall be subject to appeal. An appeal taken from a ruling on the approval of a receiver shall not cause suspension of the implementation thereof.

**5.** The receiver shall be approved by a commercial court in the manner established by Article 45 of the present Federal Law.

**Article 97.** Releasing a Receiver from His/Her Duties

**1.** A receiver may be relieved by the commercial court from the bankruptcy case:

on an application of the interim receiver;

on the grounds of a petition of the self-regulating organisation of insolvency administrators whose member he is, in the case of the withdrawal of the insolvency administrator from the self-regulating organisation or the petition of the self-regulating organisation of the insolvency administrators adopted by such an organisation according to Item 2 of Article 20.5 of this Federal

89

*[Unofficial translation from Russian]*

Law;

in the other cases envisaged by the present Federal Law.

**2.** The ruling of a commercial court on the release of a receiver from his/her duties shall take effect immediately and shall be subject to appeal.

**3.** A receiver released from his/her duties shall ensure the transfer of the accounting and other documentation of the debtor, seals and rubber stamps, material and other valuables to a newly approved receiver within three days.

**4.** In the case of release of a receiver the commercial court shall approve another receiver in the manner envisaged by Article 96 of the present Federal Law.

**Article 98.** Removing a Receiver

**1.** The receiver may be removed by the commercial court:

on the basis of a decision of a creditors' meeting to file a petition with the commercial court in case of the receiver's defaulting on or improperly performing the duties vested therein, or a failure to complete the solvency restoration measures envisaged by the external administration plan;

in connection with the fact that the commercial court has satisfied the complaint of a person participating in the bankruptcy case in respect of the receiver's defaulting or improperly performing the duties vested therein on the condition that such a default or improper performance of the duties has violated the rights or legal interests of the person which filed the complaint and has also caused or could cause losses to the debtor or the debtor's creditors;

if circumstances have been discovered which obstructed the approval of the person as the receiver and also in case when such circumstances occurred after the approval of the person as the receiver;

on the grounds of a petition of the self-regulating organisation of insolvency administrators in the case of expulsion of the insolvency administrator from the self-regulating organisation in connection with an infringement by the insolvency administrator of conditions of membership in the self-regulating organisation, infringements by the insolvency administrator of the requirements of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of professional work;

on the grounds of the petition of a self-regulating organisation of insolvency administrators in the case of application to the insolvency administrator of administrative punishment in the form of disqualification for the commission of an administrative offence;

in other cases envisaged by federal law.

**2.** The ruling of a commercial court on the removal of a receiver shall take effect immediately and it shall be subject to appeal. An appeal of the ruling of a commercial court on removal of a receiver shall not cause suspension of the performance of such a ruling.

**3.** In the case of removal of a receiver the commercial court shall approve a new receiver in the manner established by Article 96 of the present Federal Law.

**4.** A receiver removed from the execution of his/her duties shall ensure the transfer of the debtor's accounting and other documentation, seals and rubber stamps, material and other valuables to the newly approved receiver within three days from the time she/he is approved.

**Article 99.** The Rights and Duties of a Receiver

**1.** The receiver shall be entitled to:

dispose of the debtor's property in compliance with the external administration plan with due regard to the restrictions/limitations envisaged by the present Federal Law;

conclude an amicable agreement in the debtor's name;

declare a waiver of performance of the debtor's contracts in compliance with Article 102 of the present Federal Law;

file claims and applications with the commercial court in the name of the debtor for declaring deals and decisions invalid and also for applying the effects of invalidity of null and void deals concluded or performed by the debtor in defiance of the requirements of the present Federal Law, as well as raise claims for the recovery of losses caused by actions (omission to act) of members of the debtor's collective executive bodies, members of the board of directors (supervisory board), the debtor's one-man executive body, owner of the debtor's property, persons acting in the name of the debtor in compliance with a power of attorney and other persons acting in compliance with the debtor's constituent documents;

commit other actions envisaged by the present Federal Law.

*[Unofficial translation from Russian]*

**2.** The receiver shall:

accept the debtor's property for management and perform a stocktake of the property;

within three working days as of the end date of an inventory check of the debtor's property include in the Comprehensive Federal Register of Data on Bankruptcy data on the results of such inventory check;

elaborate an external administration plan and present it to a creditors' meeting for approval;

do the bookkeeping, keep financial and statistical records and prepare statements/reports;

file objections in the established manner to the creditor's claims presented to the debtor;

take measures for collecting debt for the benefit of the debtor;

keep a register of creditors' claims;

implement the measures envisaged by the external administration plan in the manner and on the terms established by the present Federal Law;

inform the creditors' committee of the completion of the measures envisaged by the external administration plan;

present a report on the results of implementation of the external administration plan to a creditors' meeting;

exercise other powers envisaged by the present Federal Law.

**Article 100.** Establishing the Amount of Creditors Claims

**1.** Creditors shall be entitled to present their claims to the debtor at any time within the external administration period. Said claims shall be sent to the commercial court and to the receiver together with the court decision or other documents confirming the validity of the claims. Said claims shall be included by the receiver or the registrar in the register of creditors' claims on the basis of a ruling of the commercial court on the inclusion of the claims in the register of creditors' claims.

**2.** Within five days after receiving a creditor's claims the receiver shall include in the Unified Federal Register of Information on Bankruptcy information about the receipt of the creditor's claims with an indication of the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the creditor, taxpayer's identification number, basic state registration number (if they are available), the sum of declared claims, the grounds for the occurrence of the claims and shall provide the opportunity to the persons participating in the bankruptcy case for getting acquainted with the creditor's claims and with the documents attached to them.

**3.** Objections to creditors' claims may be filed with the commercial court by the receiver, a representative of the debtor's promoters (stockholders) or a representative of the owner of the property of a debtor being a unitary enterprise and also by the creditors whose claims have been included in the register of creditors' claims. Such objections shall be filed within 30 days after the date of inclusion in the Unified Federal Register of Information on Bankruptcy of information on the receipt of the claims of the relevant creditor. The persons participating in the bankruptcy case have the right to declare the expiry of the period of limitations in respect of the creditors' claims presented to the debtor.

**4.** If objections exist to creditors' claims the commercial court shall verify the availability of good grounds for the relevant creditors' claims. According to the results of the scrutiny a ruling shall be issued by the commercial court on inclusion of, or refusal to include, said claims in the register of creditors' claims. The commercial court ruling on inclusion of said claims in the register of creditors' claims shall include an indication of the amount of and the priority order for meeting, said claims.

If in the case of the bankruptcy of a debtor the interests of the creditors being the holders of bonds are represented by the representative of bondholders designated in accordance with the legislation of the Russian Federation on securities, then the commercial court ruling on inclusion of claims in the register of creditors' claims shall specify the total amount of such creditors' claims and the priority order for meeting said claims in keeping with the present Federal Law, and also the priority order for meeting said claims in accordance with the terms of the relevant bond issue.

On an objection of the receiver the claims of a creditor being a bondholder shall removed by the commercial court from the register of creditors' claims if in the case of bankruptcy of the debtor the interests of the creditors being the holders of the bonds of the relevant issue are represented by the representative of bondholders designated in accordance with the legislation of the Russian Federation on securities.

**5.** The creditors' claims to which no objections have been received shall be considered by the commercial court so as to verify their having good grounds and the availability of grounds for inclusion in the register of creditors' claims. According to the results of the consideration the commercial court shall issue a ruling on inclusion or on refusal to include the creditors' claims in the register of creditors' claims. Said claims may be considered by the commercial court without inviting the persons participating in the bankruptcy case.

**6.** A ruling on inclusion or on refusal to include creditors' claims in the register of creditors' claims is subject to

Case 1:16-cv-09139-PGG   Document 53-3   Filed 03/06/17   Page 108 of 137

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 93
of 317
*[Unofficial translation from Russian]*

immediate implementation and to appeal.

The ruling on inclusion or on refusal to include creditors' claims in the register of creditors' claims shall be sent by the commercial court to the receiver or to the registrar and the applicant.

**7.** If the commercial court deems as no good the reasons for non-filing a creditors' claim in the course of the observation the commercial court in its ruling on inclusion of the creditor's claim in the register of creditors' claims has the right of vesting in the creditor the duty to compensate for the expenses incurred to notify creditors of the filing of such claim.

**8.** The creditors' claims envisaged by the present article shall be considered by a judge of the commercial court within 30 days after the date of expiry of the term for filing objections.

**Article 101.** Disposal of the Debtor's Property

**1.** Large transactions and also transactions in the accomplishment of which someone has an interest shall be concluded by the receiver only on the consent of a creditors' meeting (the creditors' committee), except as otherwise envisaged by the present Federal Law.

**2.** For the purposes of the present Federal Law "large transactions" means transactions or several inter-related transactions relating to the acquisition, alienation or possibility of alienation, either directly or indirectly, of a debtor's property whose balance sheet value exceeds ten per cent of the balance sheet value of the debtor's assets as of the last accounting date preceding the date when the transaction is concluded.

**3.** For the purposes of the present Federal Law "transactions in the accomplishment of which someone has an interest" means transactions the parties of which are interested persons in relation to the receiver or a bankruptcy creditor or to the debtor.

**4.** Transactions entailing the receipt or granting of loans, the granting of suretyships or guarantees, claim assignment, debt assignment, the alienation or acquisition of shares, participatory shares in economic partnerships and companies, the institution of a trust shall be executed by the receiver after approval by a creditors' meeting (the creditors' committee). The transactions mentioned in this item may be concluded by the receiver without the approval of a creditors' meeting (the creditors' committee) if the possibility of and terms for conclusion of such transactions are envisaged by the external administration plan, as well as in other instances provided for by this Federal Law.

**5.** Abrogated.

**Article 102.** Refusal to Perform the Debtor's Transactions

**1.** Within three months after the institution of external administration the receiver shall be entitled to refuse to perform the debtor's contracts and other transactions.

**2.** Refusal to perform the debtor's contracts and other transactions may be declared only in respect of the transactions which have not been fully or partially discharged by the parties, if such transactions are an obstacle for restoring the debtor's solvency or if the debtor's performance of such transactions is going to entail losses for the debtor in comparison with similar transactions concluded in comparable circumstances.

**3.** In the cases specified in Item 2 of the present article a contract shall be deemed rescinded from the date when all parties to the contract receive the receiver's declaration of refusal to fulfill the contract.

**4.** A party to a contract in respect of which a refusal to perform has been declared shall be entitled to demand from the debtor a compensation for the losses caused by the refusal to fulfill the debtors' contract.

**5.** The provisions of the present article shall not apply to the debtor's contracts concluded within supervision on the consent of an interim receiver or within financial rehabilitation if such contracts were concluded in compliance with the present Federal Law.

**6.** The refusal to execute financial agreements satisfying the requirements defined by Item 1 of Article 4.1 of this Federal Law may be only declared in respect of all the financial agreements between the creditor and debtor.

**Article 103.** Abrogated.

**Article 104.** The Monetary Obligations of a Debtor During External Administration

**1.** In cases when the amount of the debtor's monetary obligations that have emerged after the institution of external administration exceeds by 20 per cent the amount of the bankruptcy creditors' claims included in the register of creditors' claims, transactions entailing new monetary obligations for the debtor, except for the transactions envisaged by the external administration plan, may be concluded by the receiver only with the consent of a creditors' meeting (the creditors' committee).

**2.** The transactions concluded in breach of Item 1 of the present article may be declared invalid by a court on an application of a bankruptcy creditor or an authorised body, or on an application of a newly approved receiver in case when these transactions were concluded by a person who earlier executed the rights and duties of a receiver of the debtor.

*[Unofficial translation from Russian]*

A transaction concluded by a receiver in breach of Item 1 of the present article may be declared invalid by a court if it is proven that the other party to the transaction knew or should have known of such a breach.

**Article 105.** Regulating the Consumption Funds of a Debtor

Decisions entailing an increase in the debtor's expenses not envisaged in the external administration plan may be taken by the receiver only with the consent of a creditors' meeting (the creditors' committee), except for the cases specified by the present Federal Law.

**Article 106.** The External Administration Plan

**1.** Within one month after the date of his/her approval the receiver shall elaborate an external administration plan and present it to a creditors' meeting for approval.

The external administration plan shall envisage measures for restoring the debtor's solvency, the terms and procedure for implementing the measures, and expenses towards the implementation thereof and other expenses of the debtor.

The debtor's solvency shall be recognised as restored if the bankruptcy evidence established by Article 3 of the present Federal Law is lacking.

**2.** The external administration plan shall:

comply with the standards established by federal laws;

envisage a term for the restoration of the debtor's solvency;

contain a feasibility study relating to the possibility of restoring the debtor's solvency within the set term.

**3.** The external administration plan shall envisage delineation of competence between the creditors' meeting and the creditors' committee in as much as it concerns approving the transactions of the debtor, unless such a delineation was established by a creditors' meeting or if grounds exist for redistributing competence between the creditors' meeting and the creditors' committee.

**4.** At the demand of a creditors' meeting or the creditors' committee the receiver shall render a report to the creditors on the progress of external administration and the external administration plan.

**Article 107.** Considering an External Administration Plan

**1.** Consideration of the issue of approving and amending an external administration plan shall be within the exclusive competence of the creditors' meeting.

**2.** The external administration plan shall be considered by a creditors' meeting convened by the receiver within two months after the time when the receiver was approved. The receiver shall notify the bankruptcy creditors and authorised bodies of the date, time and place of the said meeting in the manner established by the present Federal Law and provide them with an opportunity for familiarising themselves with the external administration plan at least 14 days prior to the date of the said meeting.

**3.** The creditors' meeting shall be entitled to adopt one of the below decisions:

to approve the external administration plan;

to dismiss the external administration plan and to file a petition with the commercial court for declaring the debtor bankrupt and commencing winding-up procedure;

to dismiss the external administration plan. The said decision shall include a provision for the date of next creditors' meeting intended to consider a new external administration plan, the term within which the creditors' meeting is to be convened not exceeding two months after the date of the said decision;

to dismiss the external management plan and to dismiss the receiver with an indication of the grounds for discharging the receiver stipulated by this Federal Law with simultaneously selecting the candidature of a receiver (the surname, first name and patronymic of a qualified receiver, the designation and address of the self-regulated organisation whose member he is, shall be indicated), or of the self-regulated organisation from among whose members the receiver shall be approved, and approving additional demands made on the candidature of a receiver.

**4.** The external administration plan approved by the creditors' meeting shall be presented to the commercial court within five days after the date of the creditors' meeting.

**5.** If within four months after the institution of external administration no external administration plan approved by a creditors' meeting has been presented to the commercial court and no petition has been filed by a creditors' meeting as envisaged by the present article the commercial court may adopt a decision to declare the debtor bankrupt and to commence the winding-up procedure.

*[Unofficial translation from Russian]*

If external administration has been instituted by the commercial court in the manner established by Item 6 of Article 87 of the present Federal Law and if no external administration plan approved by a creditors' meeting has been filed with the commercial court within two months after the institution of external administration the commercial court may adopt the decision to declare the debtor bankrupt and commence winding-up procedure.

**6.** The external administration plan may be deemed invalid in full or in part by the commercial court hearing the bankruptcy case, at the petition of the person(s) whose rights and legal interests have been violated. A ruling on declaring an external administration plan fully or partially invalid shall be subject to appeal.

**7.** The external administration plan may be amended in the manner established for the purposes of consideration of an external administration plan.

**Article 108.** Prolongation of the Effective Term of External Administration

**1.** The effective term of external administration set by a commercial court shall be prolonged by the commercial court if:

a creditors' meeting has adopted a decision to approve or amend the external administration plan, such a decision envisaging an effective term for the external administration exceeding the term originally set but not exceeding the maximum effective term of external administration;

a decision has been adopted by a creditors' meeting according to the results of the examination of the receiver's report in connection with the results of external administration, to file a petition with the commercial court for prolongation of the external administration by a term specified by the decision of the creditors' meeting but not exceeding the maximum term of external administration.

**2.** External administration shall not be prolonged by a term exceeding the aggregate term of financial rehabilitation and external administration established by Item 2 of Article 92 of the present Federal Law.

**Article 109.** Measures for Restoring the Solvency of a Debtor

The following measures may be envisaged by the external administration plan with a view to restoring the debtor's solvency:

changing the profile of the production facilities;

closing down unprofitable production facilities;

collecting accounts receivable;

selling a portion of the debtor's property;

assigning the debtor's rights of claim;

the debtor's obligations being discharged by the owner of property of the debtor being a unitary enterprise, the debtor's promoters (stockholders) or a third person or third persons;

the authorised capital of the debtor being increased at the expense of contributions of stockholders and third persons;

floating additional ordinary shares of the debtor;

selling an enterprise of the debtor;

replacing the debtor's assets;

other measures for restoring the debtor's solvency.

**Article 110.** Selling an Enterprise of a Debtor

**1.** For the purposes of the present Federal Law "an enterprise of a debtor" means a property complex intended for the pursuance of entrepreneurial activities (hereinafter also referred to as "enterprise").

**2.** The sale of an enterprise may be included in the external administration plan on the basis of a decision of the debtor's managerial body empowered according to the constitutive documents to take a decision on conclusion of relevant large-scale transactions of the debtor.

**3.** When the enterprise is being sold alienation shall extend to all types of property intended for the pursuance of entrepreneurial activities, for instance, land plots, buildings, houses, installations, equipment, implements, raw materials, products, things in action, and also rights to the means of individualisation of the debtor, the debtor's products (works and services) (commercial designation, trademarks and service marks) and other exclusive rights belonging to the debtor, except for the rights and duties that cannot be assigned to other persons.

94

When the enterprise is being sold in accordance with the present article the debtor's money obligations and compulsory payments shall not be included in the composition of the enterprise, except for the debtor's obligations that have come into being after the acceptance of the application for deeming the debtor bankrupt, and may be assigned to the buyer of the enterprise in the procedure and on the terms established by the present Federal Law.

**4.** The sale of the enterprise shall be carried out in the procedure established by the present Federal Law by means of a public sale in the form of an auction, except for the property which according to the legislation of the Russian Federation is sold out by tender.

The sale of the enterprise shall be done by means of a public sale, except for cases when the composition of the enterprise includes property which is according to the legislation of the Russian Federation is deemed restricted-transaction property. In this case the sale of the enterprise shall be carried out by means of a closed sale open only to the persons which under a federal law are entitled to own or otherwise possess the restricted-transaction property.

When a cultural heritage item (a monument of history and culture) of the peoples of the Russian Federation is being sold out the conditions sine qua non of the tender also include buyers' obligation to observe the restrictions imposed according to Federal Law No. 73-FZ of June 25, 2002 on Cultural Heritage Items (Monuments of History and Culture) of the Peoples of the Russian Federation on the use of the given cultural heritage item, the requirements governing its preservation, content and use, the provision of access to the given cultural heritage item, the preservation of its appearance and interior (if the interior is the subject matter of protection), the observance in respect of the given item of the requirements set out in the protection document, the observance of the special regime of using lands within the protection zone of the given cultural heritage item and the conclusion of a contract for observance of said requirements.

A tender for the sale of an enterprise incorporating a cultural heritage item (monument of history and culture) of the peoples of the Russian Federation shall be conducted in the procedure established by the legislation of the Russian Federation on the privatisation of state and municipal property for the purpose of selling out cultural heritage items (monuments of history and culture) of the peoples of the Russian Federation by tender. A contract of the purchase/sale of such enterprise shall meet the requirements applicable to a contract of purchase/sale of a cultural heritage item (monument of history and culture) of the peoples of the Russian Federation established by the legislation of the Russian Federation on the privatisation of state and municipal property.

In case of sale of object of the agreement on public-private partnership or municipal-private partnership, the obligatory term of the tender shall be fulfillment by the buyer of obligations of the private partner not fulfilled by it by the moment of holding of the tender, on the basis of data on obligations under the agreement on public-private partnership or municipal-private partnership actually fulfilled by the private partner by such moment. Participants of the tender for sale of object of the agreement on public-private partnership or municipal-private partnership shall meet the requirements of the legislation of the Russian Federation on public-private partnership and municipal-private partnership and the tender documentation approved for holding of tenders for the right to conclude the agreement on public-private partnership or municipal-private partnership.

If objects of the agreement on public-private partnership or municipal-private partnership were not sold using the procedure set by this Article, such objects shall be transferred to the public partner that is a party to the agreement on public-private partnership or municipal-private partnership in accordance with this Article, on condition of reimbursement of expenses of the private partner and/or the sponsor incurred in accordance with the direct agreement, the amount of which is reduced by the amount of the loss inflicted to the public partner and third parties in relation to non-fulfillment of its obligations by the private partner.

**5.** The sale of the enterprise shall be carried out by auction, unless the buyer must comply with certain terms in respect of this enterprise.

The participant that has offered the highest price for the enterprise put up for sale shall be deemed to have won the auction (hereinafter referred to as "the winner in the auction").

The sale of the enterprise shall be done by tender if in respect of the enterprise the buyer must observe the terms established by a decision of a meeting of creditors or the creditors' committee in accordance with the legislation of the Russian Federation (hereinafter referred to as "the terms of the tender").

The participant that has offered the highest price for the enterprise put up for sale shall be deemed to have won the tender, provided the participant observes the terms of the tender (hereinafter referred to as "the winner in the tender").

**5.1.** Within thirty working days as from the date of inclusion of data on the results of an inventory check of the debtor's property to the Comprehensive Federal Register of Data on Bankruptcy the bankruptcy creditor or an authorised body are entitled, if the rate of claim of the bankruptcy creditor or the rate of claim of the authorised body exceeds two per cent of the total amount of the claims of bankruptcy creditors and authorised bodies included in the register of creditors' claims, to send to the receiver a demand to recruit an appraiser citing the property to be appraised.

Within two months as from the date of receiving such claim the receiver is bound to ensure the appraisal of the cited

Case 1:16-cv-09139-PGG   Document 53-3   Filed 03/06/17   Page 112 of 137

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 97
of 317
*[Unofficial translation from Russian]*

property on account of the debtor's property.

If the debtor's monetary assets are insufficient for conducting the property's appraisal on demand of the bankruptcy creditor or authorised body, the receiver shall notify thereof the person that has raised the corresponding claim within two working days as from the date when it is received. On such occasion, the property shall be appraised, if the bankruptcy creditor or authorised body that has raised the claim for the property's appraisal remit onto the debtor's account monetary assets to make payment for the appraiser's services in the amount of the cost of them. On the basis of the results of sale of the debtor's enterprise (property) the cited monetary assets are subject to repayment to the bankruptcy creditor or authorised body in the order established by Item 2 of Article 134 of this Federal Law.

A report on the appraisal of the debtor's property is subject to inclusion by the receiver to the Comprehensive Federal Register of Data on Bankruptcy within two working days as from the date of receiving a copy of this report in electronic form.

A repeated appraisal of the property of the debtor in respect of which a claim has been earlier raised for making an appraisal in compliance with this item shall be made if the bankruptcy creditor or authorised body defray the cost of making such appraisal.

**6.** The initial selling price of the enterprise shall be fixed by a decision of a meeting of creditors or of the creditors' committee subject to the market price of the debtor's property determined in compliance with an appraiser's report, if such appraisal has been conducted on demand of the bankruptcy creditor or authorised body in compliance with this Federal Law.

**7.** In a sale of an enterprise a closed form of bidding may be used to offer price for the enterprise (bids offering a price for the enterprise are submitted simultaneously with participation applications and they cannot be disclosed before bidding is started) or an open form of bidding to offer a price for the enterprise (bids offering a price for the enterprise are announced openly by participants in bidding).

The sale of the enterprise is conducted in an electronic form.

**7.1.** After inclusion of the report on evaluation of assets of the debtor into the unified federal register of information on bankruptcy, if such evaluation was carried out upon demand of the bankruptcy creditor or the authorised body in accordance with this Federal Law, or after expiration of the term for direction of such demand the external administrator shall present his proposals regarding sale of the company to the board of creditors or the committee of creditors for approval, that shall include information:

subjected to inclusion in the announcement of sale of the debtors' assets in accordance with Item 10 of this Article;

on mass media and websites where it is proposed to publish and place the announcement of sale of the debtor's assets and on terms of publication and placement of such announcement;

on special purpose vehicle proposed to be involved as the market maker.

A meeting of creditors or a committee of creditors shall have the right to approve the procedure for sale of the company other than that proposed by the bankruptcy manager.

The procedure, the terms and the conditions for sale of the company shall be aimed at sale of assets of the debtor at the highest price and shall ensure attraction of the higher number of buyers to the sale.

If the meeting of creditors or the committee of creditors does not approve information on the company, terms for is sale, form of the trade, terms of the tender (if the sale is to take the form of a tender in accordance with the legislation of the Russian Federation), form for making proposals on price of the company, the starting sales price, mass media and websites where it is offered to publish and place an announcement of sale of the company and on terms for publication and placement of the announcement within the terms established by the external administration plan or within 2 months from the date of making a proposal for sale of the debtor's company by the external administrator to the meeting of creditors or the committee of creditors (if the plan for external administration does not establish the terms of the approval), the external manager, the bankruptcy manager and/or the authorised body, if the amount of principal receivable payable to it and included in the register of creditors' claims is more than 20 percent of the total amount of principal receivable included in the register of creditors' claims, shall have the right to file an application to the commercial court for approval of the procedure, the terms and the conditions for sale of the debtor's company.

Decision of the commercial court on approval of the procedure, the terms and the conditions for sale of the debtor's company can be contested.

A contest of the report on evaluation of assets of the debtor prepared in the case envisaged by Item 5.1 of this Article, shall not be the ground for suspension of the trade.

**8.** As the trade organiser shall come out a receiver or a specialised organisation invited with the consent of the meeting of creditors or the committee of creditors for this purpose, the services of which shall be remunerated at the expense of funds of the debtor's enterprise. This organisation shall not be an interested person with respect to the debtor, the creditors or the

*[Unofficial translation from Russian]*

receiver.

The organiser of the sale shall carry out the following functions:

publish and place an announcement of the fact that the enterprise is put up for sale and an announcement of the results of the sale;

accept participation applications and bids offering a price for the enterprise;

paragraph 5 has lost force;

designate participants in the sale;

conduct the sale if the open form of bidding is used to offer a price for the enterprise;

designate the winner in the sale and sign minutes on the results of the sale;

notify the applicants and participants in the sale of the results of the sale.

The amount of earnest money for participation in the sale shall be set by the receiver, and it shall not exceed 25 per cent of the initial selling price for the enterprise.

The term for filing participation applications for the sale shall not be less than 25 business days after the publication and placement of the announcement of the sale.

**9.** Not later than 30 days prior to the date of the trade, the market maker shall be obliged to publish a message on sale of the company through the procedure established by Article 28 of this Federal Law.

A market maker shall be obliged to take reasonable necessary measures for searching and attraction of buyers, taking into account the specifics of the debtor's assets put on sale.

A market maker shall be obliged to ensure the possibility of familiarisation with the debtor's assets subjected to sale on trade and the documents of title to such assets, including that by way of examination, photographing and copying of the said documents of title.

**10.** The announcement of the sale of the enterprise shall contain the following:

information on the enterprise, its composition and characteristics, a description of the enterprise and a procedure for getting acquainted with the enterprise;

information on the form of the sale and the form of bidding;

participant qualification requirements if the sale is a closed one;

the terms of tender if the sale is conducted in the form of tender;

the procedure for, the place of, the term for, and the time of, submission of participation applications and bids (the date and time of commencement and termination of submission of said applications and bids. In the event of holding the sale of an enterprise with the use of a public form of bidding, the end time of bidding shall not be fixed);

the procedure for completing formalities for participation in the sale, a list of the documents to be filed by participants and the requirements applicable to the form thereof;

the amount of earnest money, the term and procedure for depositing earnest money, the details of the accounts into which earnest money is to be paid;

the initial selling price of the enterprise;

bidding increment value for increasing the initial selling price of the enterprise ("auction step") if the public form of bidding is used to offer a price for the enterprise;

the procedure and criteria for selecting the winner in the sale;

the date, time and place of drawing up the results of the sale;

Paragraph 13 is abrogated;

the procedure and term for conclusion of a contract of purchase/sale of the enterprise;

the term for payments and the details of the accounts into which payments are to be made;

information on the organiser of the sale, its postal address, email address and contact phone number.

During preparation for the sale of the enterprise the organiser of the sale shall accept participation applications and bids

*[Unofficial translation from Russian]*

of participants in the sale offering a price for the enterprise and also conclude earnest money contracts.

A draft contract for the purchase and sale of an enterprise and an earnest money contract with the electronic signature of the sale organizer shall be inserted in the Unified State Register of Information on Bankruptcy, without its publication in an official edition.

**11.** A participation application for the sale shall meet the requirements which are established in accordance with the present Federal Law and mentioned in the announcement of the sale, and it shall be drawn up as an electronic document.

A participation application for the sale shall be drawn up in an arbitrary form in writing in the Russian language, and it shall contain the following details specified in the announcement of the sale:

the name, organisational legal form, location and postal address (for a legal entity) of the applicant;

the surname, first name and patronymic, passport details and residence details (for a natural person) of the applicant;

the contact phone number and e-mail address of the applicant.

A participation application for the sale shall also contain information on the applicant's having or not having an interest in respect of the debtor, the creditors and the receiver and on the nature of such interest, information on an interest of the receiver in the applicant's capital, and also information on the self-regulating organisation of qualified receivers in which the receiver is member or head.

If the closed form of bidding is used to offer a price for the enterprise, a participation application for the sale may contain a bid that is not subject to disclosure before the commencement of the sale.

Copies of the following documents shall attached to the participation application for the sale (except for the cases of holding the trade in electronic form):

an excerpt from the comprehensive state register of legal entities (for a legal entity), an excerpt from the comprehensive state register of individual entrepreneurs (for an individual entrepreneur), identification documents (for a natural person), an appropriately-attested Russian translation of documents on the state registration of the legal entity or the state registration of the natural person as an individual entrepreneur under the legislation of the relevant state (for a foreign entity/person);

a document confirming the powers of a person to commit actions on behalf of the applicant.

In the event of a closed sale, a participation application for the sale shall be filed with the documents confirming that the applicant meets the qualifications established in respect of a participant in the sale in accordance with the legislation of the Russian Federation in respect of restricted-transaction property and mentioned in the announcement of the sale.

In the event of a tender, a participation application for the tender shall contain the applicant's undertaking to observe the terms of the tender.

A bid for the sale submitted to the organiser of the sale shall be registered in the book of participation applications for the sale including the serial number as well as the date and exact time of submission thereof.

An acknowledgement of registration of a participation application for the sale shall be also sent to the applicant in the form of an electronic document on the date of registration of the application to the applicant's e-mail address cited therein.

The documents attached to a participation application shall be filed in the form of electronic documents with the applicant's electronic signature.

The organiser of the sale shall ensure the non-disclosure status of information and the offers contained in the participation applications filed for the sale or the bids offering a price for the enterprise until the commencement of the sale or until the time when access is opened to the bids filed for the sale in the form of electronic documents.

An applicant is entitled to modify or withdraw its participation application for the sale at any time before the expiry of the term for filing participation applications for the sale.

Application for participation in sale shall bear a digital signature of the applicant.

It shall not be allowed to demand other documents and information from the applicant, except for those envisaged by this Article.

**12.** A decision of the organiser of the sale on clearing applicants for participation in bidding shall be taken on the results of consideration of the participation applications submitted for the sale, and it shall be formalised by means of minutes designating participants in the sale.

The following shall be cleared for participating in the sale: the applicants that have submitted participation applications for the sale and the documents attached thereto which comply with the requirements established by the present Federal Law and

98

*[Unofficial translation from Russian]*

mentioned in the announcement of the sale. The applicants cleared for taking part in the sale shall be deemed bidders.

A decision on refusal to clear an applicant for participation in bidding shall be taken if:.

the participation application for the sale does not meet the requirements established in accordance with the present Federal Law and mentioned in the announcement of the sale;

the documents filed by the applicant do not comply with the requirements established for them or are not reliable;

no acknowledgement has been received as of the date of drawing up of the minutes whereby bidders are designated as concerning the receipt of earnest money into the accounts specified in the announcement of the sale.

The organiser of the sale shall notify all applicants of the results of consideration of the participation applications submitted for the sale and of the applicant's being deemed or not being deemed bidders, by means of sending copies in writing or in the form of an electronic document of the minutes whereby bidders are designated to the applicants within five days after the day on which the minutes are signed.

A decision on deeming or refusal to deem an applicant bidder is subject to appeal in the procedure established by the legislation of the Russian Federation.

**13.** If in the course of the sale the public form of bidding is used to offer a price for the enterprise the organiser of the sale shall conduct an auction during which bids are made by participants in the sale publicly in the course thereof.

The auction shall be conducted by means of increasing the initial selling price by the "auction step" set by the organiser of the sale at five to ten per cent of the initial price and is indicated in the announcement of the sale.

If before the third announcement of the last bid neither of the participants in the sale declares its/his/her intent to offer a higher price the auction shall be terminated, and the highest bidder in the auction shall be deemed the winner, the highest price being the one called out last by the organiser of the auction.

If in the course of the sale the closed form of bidding is being used to offer a price for the enterprise then bids offering a price for the enterprise shall be presented by participants in the sale simultaneously with their participation applications for the sale or on the day when the results of the sale are being drawn up before the sale deadline indicated in the announcement of the sale.

The bids presented by participants in the sale to offer a price for the enterprise shall be announced in public by the organiser of the sale on the date and at the time and place specified in the announcement of the sale.

The organiser of the sale shall examine the bids of the participants in the sale offering a price for the enterprise and select the winner in the sale. If two or more bids filed by participants in the sale offer the same price for the enterprise the winner in the sale shall be the one that has submitted its/his/her participation application for the sale before the other participants.

**14.** The organiser of the sale shall provide equal access for all persons to the sale, for instance, to information on the conduct of the sale, and ensure the persons' right to participant in the sale without their being charged with the payments for which there is no provision in the present Federal Law.

For the purpose of conducting the sale the organiser of the sale shall use information systems which ensure:

unfettered and free-of-charge access to information on the conduct of the sale and on the rules for operation involving the use of such system;

the right to take part in the sale free-of-charge;

the possibility of submitting a participation application for the sale and the documents attached thereto as well as copies thereof in the form of electronic documents;

the storage and processing in electronic form of participation applications for the sale and the other documents submitted by applicants through the use of cryptographic data protection means certified in the procedure established by the legislation of the Russian Federation;

the protection of the information (participation applications and other documents) provided by applicants, for instance, the preservation of that information, the prevention of information deletion and its unauthorised modification and copying;

the creating, processing, storing and presenting of information and documents in electronic form, for instance, minutes of the commission on the results of the sale;

the uninterrupted operation of such systems and access thereto for users, for instance, applicants within the entire term of the sale.

**15.** A decision of the organiser of the sale on selecting the winner in the sale shall be taken on the day when the results

99

of the sale are being drawn up, and it shall be formalised by means of minutes on the results of the sale containing the following:

the name and location (for a legal entity) or the surname, first name, patronymic and residential address (for a natural person) of each participant in the sale;

the bids of each participant in the sale offering a price for the enterprise, if the closed form of bidding is used to offer a price for the enterprise;

the results of consideration of the bids submitted by participants in the sale to offer a price for the enterprise;

the name and location (for a legal entity) or the surname, first name, patronymic and residential address (for a natural person) of the participant in the sale who has offered the highest price for the enterprise as compared with the bids of other participants in the sale, except for the bid of the winner in the sale (if the closed form of bidding is used to offer a price for the enterprise) or the participant in the sale who did the last but one bid during the auction (if the public form of bidding is used to offer a price for the enterprise);

the name and location (for a legal entity) or the surname, first name, patronymic and residential address (for a natural person) of the winner in the sale;

a substantiation for the decision taken by the organiser of the sale to deem a participant in the sale the winner.

The organiser of the sale shall notify all the participants in the sale of the results of the sale by means of sending thereto the minutes on the results of the sale in the form of an electronic document at the latest on the working day following the date when such minutes are signed to the e-mail address cited in a participation application for the sale.

The decision on deeming a participant in the sale the winner is subject to appeal in the procedure established by the legislation of the Russian Federation.

The earnest money amounts deposited by the applicants shall be refunded to all the applicants, except for the winner in the sale, within five business days after the day on which the minutes on the results of the sale were signed.

Within 15 working days after the signing of the minutes on the results of the sale or after the date of the decision on deeming the sale unaccomplished the organiser of the sale shall promulgate an announcement of the results of the sale in an official edition in the procedure established by Article 28 of the present Federal Law and place on the internet website of that official edition, in masse media at the place where the debtor is located and in the other mass media used to publish the announcement of the sale. If the sale is deemed accomplished an indication shall be made in that information announcement of the winner in the sale, including information on the existence or lack of an interest of the winner in the sale in respect of the debtor, the creditors and the receiver and on the nature of that interest, information on an interest of the receiver in the capital of the winner in the sale, on the self-regulating organisation of qualified receivers in which the receiver is member or head, and also information on the price offered by the winner for the enterprise.

**16.** Within two business days after the signing of the minutes on the results of the sale the organiser of the sale shall send copies of the minutes to the winner in the sale and the receiver. Within five days after the signing of the minutes the receiver shall send an offer to the winner in the sale to conclude a contract of purchase/sale of the enterprise together with a draft contract in accordance with the price offered by the winner in the sale for the enterprise.

If the winner in the sale refuses or evades to sign the contract within five days after the receipt of said offer of the receiver the earnest money amount deposited shall not be refunded thereto and the receiver shall be entitled to make a proposal for conclusion of the contract of purchase/sale of the enterprise to the participant in the sale that has offered the highest price for the enterprise as compared with the other participants in the sale, except for the winner in the sale.

**17.** If no participation applications have been submitted for the sale or only one participant has been cleared for bidding the organiser of the sale shall take a decision on deeming the sale unaccomplished.

If only one participant has been cleared for bidding, with its/his/her participation application for the sale meeting the terms of the sale (if the sale is carried out in the form of a tender) or contains a bid offering a price for the enterprise not below the initial selling price of the enterprise set then a contract of purchase/sale of the enterprise shall be concluded by the receiver with this bidder in accordance with the terms of the sale (if the sale is carried out in the form of a tender) or with the offer of a price for the enterprise it/he/she has offered.

**18.** If the sale is deemed unaccomplished and if no contract of purchase/sale is concluded with the sole bidder and also if no contract of purchase/sale of the enterprise is concluded according to the results of the sale the receiver shall do the following within two days after the expiry of the term set by the present Federal Law for taking decisions on deeming the sale unaccomplished, for concluding a contract of purchase/sale of the enterprise with the sole bidder, for concluding a contract of purchase/sale of the enterprise according to the results of the sale: taking a decision on conducting a repeated sale and on setting an initial selling price of the enterprise. The repeated sale shall be carried out in the procedure established by the present Federal

*[Unofficial translation from Russian]*

Law. The initial selling price of the enterprise in the repeated sale shall be set at ten per cent lower than the initial selling price of the enterprise set according to the present Federal Law in the initial sale.

**19.** The sale of the enterprise shall be made formal by means of a contract of purchase/sale of the enterprise concluded by the receiver with the winner in the sale.

The terms and conditions sine qua non of the contract of purchase/sale of the enterprise are as follows:

information on the enterprise, its composition and characteristics and a description of the enterprise;

the selling price of the enterprise;

the procedure and term for transferring the enterprise to the buyer;

the terms according to which the enterprise is acquired and the buyer's undertaking to comply with these terms (if the enterprise is sold by tender);

information on the existence or lack of an encumbrance on the enterprise, including without limitation a public easement;

the other terms and conditions envisaged by the legislation of the Russian Federation.

When the enterprise is being sold payment according to the contract of purchase/sale of the enterprise shall be effected by the buyer within 30 days after the date of signing of the contract.

The delivery of the enterprise by the receiver and the acceptance thereof by the buyer shall be carried out through the use of certificate of acceptance signed by the parties and drawn up in accordance with the legislation of the Russian Federation.

Proceeds from the sale of the enterprise shall be included in the property of the debtor.

**20.** For the purpose of conducting a sale in electronic form for selling property or an enterprise of a debtor in the course of the proceedings applicable in a bankruptcy case a qualified receiver or an organiser of trade shall conclude a contract for the sale with an electronic marketplace operator that meets the requirements established by the present Federal Law. The electronic site's operator shall make earnest money agreements with applicants.

For the purposes of the present Federal Law "the operator of an electronic marketplace" means any legal entity irrespective of its organisational legal form, form of ownership, location and the place of origin of capital or a natural person in the capacity of an individual businessman which have undergone state registration in the established procedure on the territory of the Russian Federation, conduct trading in electronic form in keeping with the present Federal Law and are members of a self-regulating organisation of operators of electronic marketplaces.

For the purpose of conducting the sale in electronic form an electronic marketplace operator shall have a website on the Internet used to carry out trading in electronic form (hereinafter referred to as "electronic marketplace").

The procedure for conducting trading in electronic form, the requirements applicable to electronic marketplace operators, and to electronic marketplaces, including, inter alia, the technological, software, linguistic, legal and organisational facilities required for a sale in electronic form of property or an enterprise of debtors in the course of the proceedings applicable in a bankruptcy case shall be endorsed by the regulator.

**Article 111.** The Sale of a Part of the Debtor's Property

**1.** Where it is envisaged by the external management plan, after the completion of an inventory check, as well as after appraising the debtor's property, if such appraisal has been conducted on demand of the bankruptcy creditor or authorised body in compliance with this Federal Law, the receiver is entitled to start selling part of the debtor's property.

**2.** The sale of the part of the debtor's property shall not cause the impossibility for the debtor to pursue its economic activities.

The sale of the part of the debtor's property shall be carried out in the procedure established by Items 4-19 of Article 110 of the present Federal Law with due regard to the details established by the present article.

**3.** The following is subject to a sale conducted in an electronic form:

immovable property;

securities;

property rights;

mortgaged property;

items of historical or artistic value;

a thing whose market value exceeds 500,000 roubles, for instance, an indivisible thing, a complex thing, the main thing and a thing relating to it as it has a common intended purpose (belonging).

The regulator may define other types of property (including property rights) subject to a compulsory sale carried out in an electronic form.

**4.** Paragraph 1 is abrogated.

A part of the debtor's property whose balance-sheet value as of the last accounting date preceding the date of confirmation of the external administration plan is below 100,000 roubles shall be sold in the procedure established by the external administration plan.

**5.** The provisions of the present article do not extend to the cases of sale of a part of the debtor's property which is products manufactured by the debtor in the course of its economic activities.

**Article 111.1.** The Self-Regulating Organisation of Electronic Marketplace Operators

**1.** The following shall be recognised as a self-regulating organisation of electronic marketplace operators: a membership-based non-profit organisation that meets the requirements established by Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations and the present Federal Law, has been formed for the purposes of developing and regulating the activities of electronic marketplace operators and about which information has been included in the state register of self-regulating organisations of electronic marketplace operators.

A non-profit organisation shall acquire the status of a self-regulating organisation of electronic marketplace operators from the date on which information about it is entered in the state register of self-regulating organisations of electronic marketplace operators.

The rights and duties of a self-regulating organisation of electronic marketplace operators, the principles and procedure for its pursuing its activities, the requirements applicable to the bodies of the self-regulating organisation of electronic marketplace operators and its in-house documents are established by Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations, with account being taken of the details envisaged by the present Federal Law.

**2.** The ground for inclusion of information about a non-profit organisation in the state register of self-regulating organisations of electronic marketplace operators shall be its meeting the following mandatory requirements:

1) the non-profit organisation has as its members at least 10 entrepreneurs (individual businessmen and/or legal entities) which conduct trading in electronic form, meet the requirements applicable to electronic marketplace operators established in accordance with Items 14 and 20 of Article 110 of the present Federal Law and the conditions for members in the self-regulating organisation of electronic marketplace operators endorsed by that self-regulating organisation;

2) at least 70 per cent of the members of the non-profit organisation have a record of conducting trading in electronic form for the sale of debtors' property or enterprise in the course of the proceedings applicable in a bankruptcy case of at least four years after the date of publication of the first minutes on the results of conducting a sale by means of their being included in the Unified Federal Register of Information on Bankruptcy;

3) the total number of the sales in electronic form which have been conducted by all members of the non-profit organisation and have been completed, for instance by means of public tender, for selling debtors' property or enterprise in the course of the proceedings applicable in a bankruptcy case as confirmed on the basis of information included the Unified Federal Register of Information on Bankruptcy concerning the sales is at least eighty thousand;

4) the availability of the following documents confirmed by the self-regulating organisation of electronic marketplace operators:

rules for admission for membership in that self-regulating organisation and for termination of membership therein;

terms for membership in that self-regulating organisation;

standards and rules governing the professional activities of electronic marketplace operators of conducting trading in electronic form which are binding on all members of that self-regulating organisation (hereinafter referred to as "standards and rules of professional activities of electronic marketplace operators);

professional ethics rules for electronic marketplace operators;

a list of disciplinary measures, a procedure and grounds for the application thereof to members of that self-regulating organisation if they violate the legislation of the Russian Federation, the standards and rules of the professional activities of electronic marketplace operators or conditions for membership in that self-regulating organisation;

requirements applicable to the disclosure of information on the activities of the self-regulating organisation and its members;

5) the availability of a compensation fund of the self-regulating organisation of electronic marketplace operators which is maintained with the dues of its members for the purposes of securing the property liabilities of the members of that self-regulating organisation for compensation or damages caused to third persons in the course of electronic trading in connection with an electronic marketplace operator's default on, or the improper observance of, the requirements established by the legislation of the Russian Federation and the standards the standards and rules of the professional activities of electronic marketplace operators.

**Article 111.2.** Membership in a Self-Regulating Organisation of Electronic Marketplace Operators

**1.** Below are the conditions sine qua non for the membership of an electronic marketplace operator in a self-regulating organisation of electronic marketplace operators:

1) the electronic marketplace operator and the electronic marketplace used by it to conduct trading in electronic form, including, inter alia, the technological, software, linguistic, legal and organisational facilities required for trading in electronic form for the sale of debtors' property or enterprise in the course of the proceedings applicable in a bankruptcy case meet the requirements established in accordance with Items 14 and 20 of Article 110 of the present Federal Law;

2) the electronic marketplace operator meets the conditions for membership in the self-regulating organisation of electronic marketplace operators which have been endorsed by that self-regulating organisation;

3) the electronic marketplace operator has a contract of compulsory insurance of liability that meets the requirements established by the present article;

4) the electronic marketplace operator pays the dues established by that self-regulating organisation, and also dues to its compensation fund.

**2.** Apart from the requirements envisaged by the present article the self-regulating organisation of electronic marketplace operators may establish as conditions for membership in it other professional requirements applicable to the qualifications, competence and independence of an electronic marketplace operator and its employees.

**3.** Within the period of membership in a self-regulating organisation of electronic marketplace operators an electronic marketplace operator shall meet the conditions for membership in it which are established by that self-regulating organisation in accordance in accordance with the present article. The procedure for confirmation that an electronic marketplace operator meets the conditions for membership in a self-regulating organisation of electronic marketplace operators shall be established by that self-regulating organisation.

A member of a self-regulating organisation of electronic marketplace operators that does not meet the conditions established for membership in it shall be expelled from among its members in accordance with the procedure established by that self-regulating organisation for termination of membership in it.

**4.** A self-regulating organisation of electronic marketplace operators on the basis of the requirements established in accordance with Items 14 and 20 of Article 110 of the present Federal Law as applicable to electronic marketplace operators, electronic marketplaces, inter alia, including technological, software, linguistic, legal and organisational facilities required for conducting trading in electronic form for the sale of debtors' property or enterprise in the course of the proceedings applicable in a bankruptcy case, and also the other conditions for membership in it endorsed by that self-regulating organisation shall define a list of the documents to be filed by the persons seeking admittance for membership in self-regulating organisation and the provisions governing the drawing up of these documents.

Within 30 days after the date of filing of an application for membership in the self-regulating organisation of electronic marketplace operators and the other documents envisaged by said documents a general meeting of members of that self-regulating organisation shall consider the documents filed and if the person that has filed them and the electronic marketplace used for trading in electronic form meet the requirements envisaged by the present article, for instance the conditions established by that self-regulating organisation for membership in it shall take a decision on admittance of such person as member.

**5.** A decision on admittance of a person as a member of a self-regulating organisation of electronic marketplace operators shall enter into force from the date on which the person submits to the self-regulating organisation documents confirming that the person has concluded a contract of compulsory insurance of liability that meets the requirements established by the present Federal Law and paid the dues established by that self-regulating organisation, for instance dues to a compensation fund.

If the person in respect of which the decision on admittance as a member in the self-regulating organisation of electronic marketplace operators has been taken defaults on meeting said requirements within two months after the date of that decision it shall be deemed cancelled.

**6.** Information on a person that has been admitted as a member in a self-regulating organisation of electronic marketplace operators shall be included in the register of members of the self-regulating organisation within three working days

after the entry into force of the decision on admittance of such person as a member in the self-regulating organisation.

**7.** If the person that has filed an application for admittance as a member in a self-regulating organisation of electronic marketplace operators does not meet the requirements established by the conditions for membership in it a general meeting of members of that self-regulating organisation shall take a decision on refusal to admit such person as a member in the self-regulating organisation with an indication of the reason for the refusal, which shall be sent to such person within 10 working days after the date of this decision.

**8.** The membership of an electronic marketplace operator in a self-regulating organisation of electronic marketplace operators shall be terminated by a decision of a general meeting of its members on an application of the electronic marketplace operator for opting out of the self-regulating organisation or in the case of expulsion of the electronic marketplace operator from that self-regulating organisation in connection with its breach of:

1) the conditions for membership in the self-regulating organisation;

2) the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, standards and rules of professional activities of electronic marketplace operators.

**9.** If legal proceedings have been instituted in respect of the electronic marketplace operator that has filed an application for opting out of a self-regulating organisation of electronic marketplace operators in a case of imposition of a disciplinary sanction on it then a decision on termination of membership in electronic marketplace operator shall be taken after the completion of the proceedings instituted in respect thereof and the imposition of the defined disciplinary sanction on the electronic marketplace operator.

The membership of an electronic marketplace operator in a self-regulating organisation of electronic marketplace operators shall be terminated from the date of inclusion of an entry on termination of membership of the electronic marketplace operator in the register of members of that self-regulating organisation.

**10.** Disputes relating to the conducting of trading in electronic form by an electronic marketplace operator for the sale of debtors' property or enterprise in the course of the proceedings applicable in a bankruptcy case, and also disputes relating to the relations of an electronic marketplace operator with the self-regulating organisation of electronic marketplace operators of which it is a member shall be resolved in the judicial procedure.

**Article 111.3.** The Managerial Bodies and Specialised Bodies of a Self-Regulating Organisation of Electronic Marketplace Operators

**1.** The structure of, the procedure for the formation of, and the term of powers of, the managerial bodies of a self-regulating organisation of electronic marketplace operators, and the procedure for said bodies to take decisions shall be established by the charter and in-house documents of that self-regulating organisation in accordance with the present Federal Law and other federal laws.

**2.** The general meeting of members of the self-regulating organisation of electronic marketplace operators is the supreme managerial body of that self-regulating organisation authorised to consider the issues placed within its competence by the present Federal Law, other federal laws and the charter of that self-regulating organisation.

A general meeting of members of the self-regulating organisation of electronic marketplace operators shall be convened at least once a year in the procedure established by its charter.

**3.** Apart from the issues envisaged by Article 16 of Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations the competence of the general meeting of members of the self-regulating organisation of electronic marketplace operators encompasses the following issues:

1) establishing conditions for membership in that self-regulating organisation, a procedure for admittance as a member and a procedure for termination of membership in it, a procedure for confirmation of the compliance of an electronic marketplace operator with the conditions for membership in the self-regulating organisation;

2) taking decisions on admittance as a member in the self-regulating organisation and on termination of membership in it;

3) establishing a procedure for consideration of the cases of imposition of disciplinary sanctions on members of the self-regulating organisation;

4) establishing a procedure for consideration of complaints against actions of members of the self-regulating organisation;

5) establishing the rate of membership dues, and a procedure for the payment thereof;

6) taking decisions on additional property contributions of members of the self-regulating organisation and on the creation of ad hoc funds.

**4.** The general meeting of members of the self-regulating organisation of electronic marketplace operators has the authority to take the decisions placed within its competence, if attended by over 50 per cent of the total number of the self-regulating organisation's members.

Decisions of the general meeting of members of the self-regulating organisation of electronic marketplace operators shall be taken by a majority of votes of the votes of the self-regulating organisation's members attending its general meeting, or if it is conducted by absentee voting by a majority of the votes of the total number of votes of the members of the self-regulating organisation.

Decisions on the issues envisaged by Items 1, 4, 5, 8 and 9 of Part 3 of Article 16 of Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations and Subitems 1 and 2 of Item 3 of the present article shall be taken by the majority of two thirds of the votes of the total number of votes of the members of the self-regulating organisation of electronic marketplace operators attending the general meeting of its members, and shall not be placed by the charter of a non-profit organisation within the competence of other managerial bodies of the self-regulating organisation.

**5.** A collective managerial body shall be set up in the self-regulating organisation of electronic marketplace operators, the number of the members thereof being established by the charter of the self-regulating organisation. Independent members shall not make up over 25 per cent of the number of members of the collective managerial body. No state or municipal employees shall be among the members of the collective managerial body.

**6.** The following issues fall within the competence of the collective managerial body of the self-regulating organisation of electronic marketplace operators:

1) endorsing standards and rules of professional activities of electronic marketplace operators, and amending said standards and rules;

2) endorsing rules for monitoring the observance by members of the self-regulating organisation of the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of professional activities of electronic marketplace operators;

3) setting up specialised bodies of the self-regulating organisation, endorsing regulations on these bodies and rules for them to pursue their activities;

4) appointing an audit organisation for carrying out verification of the bookkeeping, for instance the financing (accounting) statements, of the self-regulating organisation, taking decisions on conducting verification of the activities of the executive body of the self-regulating organisation;

5) introducing to the general meeting of members of the self-regulating organisation nominee(s) for appointment to the position of sole executive body of the self-regulating organisation;

6) establishing qualification requirements applicable to the head of the body monitoring the activities of the members of the self-regulating organisation;

7) presenting a recommendation to the general meeting of members of the self-regulating organisation for expulsion of a member of the self-regulating organisation.

**7.** The competence of the sole executive body of the self-regulating organisation of electronic marketplace operators encompasses the issues of economic and other activities of the self-regulating organisation which do not fall within the competence of the general meeting of the self-regulating organisation and its collective managerial body, including, inter alia, the taking of decisions on imposition of disciplinary sanctions on a member of the self-regulating organisation such as a direction whereby the member of the self-regulating organisation is obligated to eliminate discovered irregularities and a term is set for the elimination thereof, and a warning.

**8.** The following bodies shall be formed by the self-regulating organisation of electronic marketplace operators for the purpose of ensuring the realisation of the rights and duties defined by the present Federal Law:

1) a body for consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation;

2) a body monitoring the observance by members of the self-regulating organisation of the provisions of federal laws, other normative legal acts of the Russian Federation, standards and rules of professional activities of electronic marketplace operators.

**9.** The body for consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation of electronic marketplace operators shall consider the cases of breach by members of the self-regulating organisation of the provisions of federal laws, other normative legal acts of the Russian Federation, standards and rules of professional activities of electronic marketplace operators and imposition of disciplinary sanctions and send proposals to the managerial bodies of the self-regulating organisation for imposition of the following disciplinary sanctions on its members:

*[Unofficial translation from Russian]*

1) issuing a direction whereby a member of the self-regulating organisation is obligated to eliminate discovered irregularities and a term is set for the elimination thereof;

2) issuing a warning to a member of the self-regulating organisation;

3) imposing a fine on a member of the self-regulating organisation at the rate set by its in-house documents;

4) giving a recommendation for expulsion of a member of the self-regulating organisation, to be considered by its collective managerial body;

5) the other measures established by in-house documents of the self-regulating organisation.

**10.** The results of consideration of complaints against actions of a member of the self-regulating organisation of electronic marketplace operators (inter alia, complaints concerning the member's breach of the procedure for trading in electronic form relating to a breach of the procedure established by the legislation of the Russian Federation for placing information about a sale in electronic form, the procedure for filing applications for participation in the sale, infringement on the rights or lawful interests of a person as a result of a breach by an electronic marketplace operator of the procedure for trading in electronic form) and the decisions whereby one is obligated to eliminate discovered irregularities and a term is set for the elimination thereof and which are taken in respect of a member of the self-regulating organisation are subject to placement on the website of the self-regulating organisation on the Internet within 14 working days after the date of the relevant decision.

Appeal may be taken from decisions of the collective managerial body and of the sole executive body of the self-regulating organisation of electronic marketplace operators on the imposition disciplinary sanctions on a member of the self-regulating organisation to the general meeting of members of the self-regulating organisation or to the collective managerial body respectively.

**Article 111.4.** The Rights and Duties of a Self-Regulating Organisation of Electronic Marketplace Operators

**1.** A self-regulating organisation of electronic marketplace operators has the rights envisaged by Article 6 of Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations.

**2.** The self-regulating organisation of electronic marketplace operators shall elaborate and establish standards and rules of professional activities binding on the members of the self-regulating organisation and shall carry out the other functions envisaged by Article 6 of Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations.

**Article 111.5.** Federal State Supervision over the Activities of Self-Regulating Organisations of Electronic Marketplace Operators

**1.** Federal state supervision over the activities of self-regulating organisations of electronic marketplace operators shall be carried out by the authorised federal executive governmental body in charge of supervision (hereinafter referred to as "the supervision body") in the procedure established by the regulator in accordance with Article 23 of Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations, with account being taken of the details established by the present article.

**2.** If it is discovered that a self-regulating organisation of electronic marketplace operators does not meet the requirements established by Item 2 of Article 111.1 of the present Federal Law, the supervision body shall send a binding direction to the self-regulating organisation for elimination of the irregularity that is to be performed within the term set by the direction, i.e., at least 30 working days from the date of receipt thereof by the self-regulating organisation.

**3.** If another breach of the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation is discovered the supervision body shall send a direction to the self-regulating organisation for elimination of the breach with a completion term, whose duration shall not be less than two months after the date of receipt of the direction by the self-regulating organisation.

Appeal may be taken from the direction of the supervision body for elimination of the breach by the self-regulating organisation of electronic marketplace operators to the commercial court.

**4.** A self-regulating organisation of electronic marketplace operators which has on its own discovered that it did not meet the requirements established by Item 2 of Article 111.1 of the present Federal Law shall do the following within 14 working days after detecting such irregularity: file an application in writing with the supervision body in accordance with Paragraph 1 of Item 13 of Article 23.1 of the present Federal Law.

In this case the supervision body shall file a claim with the commercial court for removal of information about the non-profit organisation form the state register of self-regulating organisations of electronic marketplace operators in the procedure established by Paragraph 5 of Item 13 of Article 23.1 of the present Federal Law.

**5.** Within one year after the date of removal of information about the non-profit organisation from the state register of self-regulating organisations of electronic marketplace operators the status of self-regulating organisation shall not be granted to

Case 1:16-cv-09139-PGG   Document 53-3   Filed 03/06/17   Page 123 of 137

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 108
of 317                                    *[Unofficial translation from Russian]*

that non-profit organisation.

### Article 111.6. The Liability of an Electronic Marketplace Operator

**1.** An electronic marketplace operator shall compensate for the damage caused to third persons when trading in electronic form was conducted in connection with the electronic marketplace operator's default on observing, or improper observance of, the requirements established by the legislation of the Russian Federation and of standards and rules of the professional activities of electronic marketplace operators, if the fact of such damage having been caused has been established by a court decision that has become final. For the purposes of security the property liability of the electronic marketplace operator for compensating for such damages it shall conclude a contract of compulsory insurance of liability meeting the requirements established by the present Federal Law.

Standards and rules of the professional activities of electronic marketplace operators may establish additional requirements applicable to security for the property liability of the electronic marketplace operator for compensating for the damages caused by it.

**2.** An electronic marketplace operator shall provide compensation to members of the self-regulating organisation of electronic marketplace operators in which it is a member for the damage caused when a compensation disbursement was made out of the compensation fund of that self-regulating organisation due to the compensation for the damages caused to third persons in the course of trading in electronic form in connection with the electronic marketplace operator's default on observing, or improper observance of the requirements established by the legislation of the Russian Federation and standards and rules of the professional activities of electronic marketplace operators.

The procedure for securing the property liability of an electronic marketplace operator for compensating for such damages shall be established by standards and rules of the professional activities of electronic marketplace operators, and for instance these standards and rules may establish an electronic marketplace operator's duty to insure the risk of its property liability that might occur through the infliction of actual losses to members of the self-regulating organisation of electronic marketplace operators in connection with the decrease in the amount of the compensation fund of the self-regulating organisation occurring when compensation disbursements are made out of it to third persons in the course of trading in electronic form.

### Article 111.7. The Contract of Compulsory Insurance of Liability of an Electronic Marketplace Operator

**1.** A contract of compulsory insurance of liability of an electronic marketplace operator for causing damages to third persons in the course of trading in electronic form in connection with the electronic marketplace operator's default on observing, or improper observance of, the requirements established by the legislation of the Russian Federation and standards and rules of the professional activities of electronic marketplace operators shall be concluded with an insurance organisation accredited by the self-regulating organisation of electronic marketplace operators, for a term of at least one year on the condition that it is going to be resumed for the same term.

**2.** The minimum insurance sum under the contract of compulsory insurance of liability of the electronic marketplace operator shall be 30,000.000 roubles per year.

**3.** The insured object under the contract of compulsory insurance of liability of the electronic marketplace operator shall be the property interests of the electronic marketplace operator which do not contravene the legislation of the Russian Federation and are relating to the operator's duty to provide compensation for the damages to third persons in the course of trading in electronic form in connection with the electronic marketplace operator's default on observing, or improper observance of, the requirements established by the legislation of the Russian Federation and standards and rules of the professional activities of electronic marketplace operators.

**4.** The insured accident under the contract of compulsory insurance of liability of the electronic marketplace operator shall be the fact -- confirmed by a court decision that has become final -- of damages caused to third persons by the electronic marketplace operator within the effective term of said contract in the course of trading in electronic form in connection with its default on observing, or improper observance of, the requirements established by the legislation of the Russian Federation and standards and rules of the professional activities of electronic marketplace operators.

**5.** The insured risk under the contract of compulsory insurance of liability of the electronic marketplace operator shall be the probability of onset of its liability for compensating for damages to third persons, except for the onset of liability as a result of:

1) the causing of damages due to force majeure, the negative consequences of activities relating to the use of nuclear fuel, including, inter alia, the pollution of atmospheric air, soil, a body of water, the radioactive contamination of the environment, individuals' exposure to radiation, and also hostilities, armed mutiny, people's rioting, the activities of an illegal armed formation, terrorist activities, and the institution of martial law or state of emergency;

2) the causing of moral harm;

*[Unofficial translation from Russian]*

3) the illegal actions or omissions of another person;

4) the actions or omissions of the electronic marketplace operator which are not relating to its conducting trading in electronic form.

**6.** In the cases specified in Item 5 of the present article caused damages are subject to compensation in accordance with the legislation of the Russian Federation.

**7.** The contract of compulsory insurance of liability of the electronic marketplace operator may envisage payment of an insurance premium by the electronic marketplace operator in several insurance contributions within the term established by said contract.

The date of payment of the insurance premium (the making of the insurance contribution) shall be the date on which the insurance premium (insurance contribution) is remitted to the insurer's settlement account.

The contract of compulsory insurance of liability of the electronic marketplace operator shall enter into force as of the time when the insured pays the insurance premium or makes the first insurance contribution (if the insurance premium is paid in several insurance contributions).

**8.** Upon the onset of the insured accident the insurer shall pay out an indemnity in the amount of the damages caused to third persons and established by a court decision that has become final, but not exceeding the insurance sum under the contract of compulsory insurance of liability of the electronic marketplace operator.

**9.** The insurer has the right to have recourse against the electronic marketplace operator which has caused damages and whose risk of liability is insured under the contract of compulsory insurance of liability of the electronic marketplace operator, in the amount of the insurance indemnity paid by the insurer if the damages have been caused due to deliberate actions or omissions of the electronic marketplace operator which have manifested themselves in the operator's violating the provisions of the present Federal Law, other federal laws or other normative legal acts of the Russian Federation or standards and rules of professional activities of electronic marketplace operators.

**10.** The electronic marketplace operator's compulsory insurance of its liability shall be monitored by the self-regulating organisation of electronic marketplace operators (whose member the operator is) which is entitled to establish additional requirements which are applicable to the contract of compulsory insurance of liability of an electronic marketplace operator concluded by members of that self-regulating organisation and do not contravene the legislation of the Russian Federation.

Failure by an electronic marketplace operator to observe the requirements applicable to the contract of compulsory insurance of its liability shall serve as ground for expulsion of the electronic marketplace operator from the self-regulating organisation of electronic marketplace operators.

**Article 111.8.** The Compensation Fund of a Self-Regulating Organisation of Electronic Marketplace Operators

**1.** The compensation fund of a self-regulating organisation of electronic marketplace operators is separate property belonging to that self-regulating organisation by the right of ownership. Initially, said compensation fund shall be maintained only in monetary form with membership dues of the members of the self-regulating organisation of electronic marketplace operators in an amount of at least 3,000,000 roubles per member thereof. It is prohibited to relieve a member of the self-regulating organisation from the duty to pay dues to its compensation fund, for instance by means of setting off his claims to the self-regulating organisation.

**2.** For the purposes of preserving and increasing the amount of the compensation fund of the self-regulating organisation of electronic marketplace operators the resources of its compensation fund shall be placed in special accounts in Russian credit organisations. If it is necessary to pay compensation out of the compensation fund of the self-regulating organisation the term for refund of resources of the compensation fund from said account shall not exceed 10 working days.

A contract of special bank account shall include a provision according to which the resources of the compensation fund of the self-regulating organisation of electronic marketplace operators may be spent only for making compensation disbursements.

The resources of the compensation fund available in a special bank account of the self-regulating organisation of electronic marketplace operators are not subject to levy of execution for the liabilities of that self-regulating organisation and also for the liabilities of members of that self-regulating organisation which are not relating to the payment of compensation out of the compensation fund.

**3.** It is hereby prohibited to spend the compensation fund of the self-regulating organisation of electronic marketplace operators for purposes other than those envisaged by the present article, for instance for paying or refunding dues to members of that self-regulating organisation.

Income received from the placement of the resources of the compensation fund of the self-regulating organisation of electronic marketplace operators shall be used to replenish it, cover the expenses relating to the placement of resources of such

Case 1:16-cv-09139-PGG   Document 53-3   Filed 03/06/17   Page 125 of 137

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 110
of 317
*[Unofficial translation from Russian]*

compensation fund, payment of taxes and the other compulsory payments which become payable in connection with the receipt of income from the placement of resources of such compensation fund.

**4.** A claim for compensation out of the compensation fund of the self-regulating organisation of electronic marketplace operators may be presented to the self-regulating organisation of electronic marketplace operators in which the electronic marketplace operator was a member as of the date of commission of the actions or omissions which have ensued the infliction of damages to third persons in the course of trading in electronic form in connection with the electronic marketplace operator's default on observing, or improper observance of, the requirements established by the legislation of the Russian Federation and standards and rules of the professional activities of electronic marketplace operators.

**5.** A claim for compensation out of the compensation fund of the self-regulating organisation of electronic marketplace operators may be presented to that self-regulating organisation by the person for whose benefit a decision has been taken on collection of damages only if the following conditions simultaneously exist:

1) the insufficiency of the funds received by such person under the contract of compulsory insurance of liability of an electronic marketplace operator to compensate for the damages caused to such person;

2) the electronic marketplace operator's refusal to satisfy the claim of such person or a default by the electronic marketplace operator on satisfying the claim of such person within 30 working days after the date on which said demand is received.

**6.** The following shall be attached to the claim for compensation out of the compensation fund of the self-regulating organisation of electronic marketplace operators:

1) a court decision on collection of damages in a certain sum from the electronic marketplace operator;

2) a document confirming that the insurance organisation has paid an insurance indemnity under the contract of compulsory insurance of liability of an electronic marketplace operator, and the amount of the insurance indemnity so paid;

3) a document confirming the electronic marketplace operator's refusal to satisfy said claim or a document confirming that said claim has been sent to the electronic marketplace operator and was not satisfied by it within 30 working days after the date of receipt thereof.

**7.** The self-regulating organisation of electronic marketplace operators shall pay compensation within 60 working days after the date of receipt of the relevant claim or to issue a substantiated refusal to pay it to the person that has filed the claim for compensation.

**8.** On the following grounds the self-regulating organisation of electronic marketplace operators has the right to refuse to pay compensation to the person that has filed a claim for compensation:

1) damages have been compensated for in full with insurance indemnity under the contract of compulsory insurance of liability of an electronic marketplace operator or at the expense of the electronic marketplace operator;

2) the electronic marketplace operator was not a member of that self-regulating organisation as of the date of commission of the actions or omissions which have ensued the causing of damages to third persons in the course of trading in electronic form;

3) the documents established by the present article have not been attached to the compensation claim.

**9.** A compensation disbursement in monetary form shall be sent to the account specified in the compensation claim.

The amount of a compensation out of the compensation fund of the self-regulating organisation of electronic marketplace operators on a compensation claim as applicable to one case of causing of damages in respect of one electronic marketplace operator shall not exceed 5,000,000 roubles.

**Article 112.** Assignment of a Debtor's Right of Claim

**1.** The receiver shall be entitled to proceed to assign the debtor's rights of claim by means of selling them with the consent of a creditors' meeting (the creditors' committee), if a different procedure is not established by this Federal Law.

**2.** The sale of the debtor's rights of claim shall be done by the receiver in the manner and on the terms set out in Article 110 of the present Federal Law, except as otherwise established by a federal law or ensues the essence of the claim. The terms of the contract of sale of a debtor's right of claim shall envisage the following:

the receipt of proceeds from the sold right of claims within 30 days after the conclusion of the sale contract;

the transfer of the right of claim is effected only after payment for it has been made in full.

**Article 112.1.** The Repayment of Debts for Compulsory Payments in the Course of External Administration by the Founders (Stockholders) of the Debtor, the Owner of the Property of the Debtor Being an Unitary

Enterprise and/or a Third Person

**1.** In the course of external administration the claims to the debtor for compulsory payments included in the register of creditors' claims may be repaid by the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise and/or a third person in the procedure established by the present article.

When the founders (stockholders) of the debtor or the owner of the property of the debtor being an unitary enterprise or/and a third person are repaying the claims addressed to the debtor for compulsory payments all the claims to the debtor for compulsory payments included in the register of creditors' claims shall be paid.

**2.** A person intending to repay the claims addressed to the debtor for compulsory payments shall send a declaration of such intent to the commercial court that is considering the bankruptcy case, to the receiver and the empowered bodies.

**3.** The following shall be indicated in the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the applicant;

the term for repayment of the claims addressed to the debtor for compulsory payments not exceeding 30 business days after the issuance of the relevant ruling by the commercial court.

**4.** The declaration of intent shall be considered by the commercial court within 14 business days after the date of receipt thereof.

If declarations of intent have been received by the commercial court from several persons they shall be considered in the chronological order of their being received by the commercial court.

**5.** According to the results of consideration of the declaration of intent the commercial court shall issue a ruling upholding the declaration of intent or a ruling on refusal to uphold the declaration of intent if the register of creditors' claims does not contain claims addressed to the debtor for compulsory payments or if the applicant has decided not to repay the claims addressed to the debtor for compulsory payments before the consideration of such declaration.

**6.** The following shall be indicated in the commercial court ruling upholding the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the person that is repaying the claims addressed to the debtor for compulsory payments ;

the amount of the claims addressed to the debtor for compulsory payments , the principal debt amount and the forfeit money (fines and penalties) accrued;

the term and procedure for repayment of the claims addressed to the debtor for compulsory payments ;

the date of the court-room hearing on the results of repayment of the claims addressed to the debtor for compulsory payments ;

bank account details and the other information required for the remittance of funds for repayment of the claims addressed to the debtor for compulsory payments .

**7.** The consideration of the declaration of the intent to repay the claims addressed to the debtor for compulsory payments shall be adjourned until the date of consideration of the results of repayment of the claims addressed to the debtor for compulsory payments if a similar declaration has been received earlier from another person.

If there is a dispute as to the amount and composition of such claims the consideration of the declaration of the intent to repay the claims addressed to the debtor for compulsory payments may be adjourned until the date when the court judgement establishing the composition and amount of the claims to the debtor included in the register of creditors' claims for compulsory payments becomes final.

**8.** For the purpose of repaying the claims addressed to the debtor for compulsory payments the empowered body shall serve a notice to the commercial court containing the date of submission of the notice, the surname, first name, patronymic and position of the official who has signed the notice and also the information required according to the rules for completion of the payment documents acknowledging that funds have been remitted for repayment of the claims addressed to the debtor for compulsory payments including an indication of the amount of claim in respect of each of the beneficiaries of the funds.

**9.** Within the term established by the commercial court ruling upholding the declaration of intent the applicant shall remit funds in the amount and in the procedure specified in the ruling.

**10.** Upon the expiry of the term set by the commercial court for repayment of the claims addressed to the debtor for compulsory payments the applicant shall send an application to the commercial court claiming that the claims addressed to the debtor for compulsory payments be deemed repaid and that the creditor be replaced in the register of creditors' claims.

Attached to the application shall be payment documents acknowledging that funds have been remitted in the amount

*[Unofficial translation from Russian]*

and in the procedure specified in the commercial court ruling upholding the declaration of intent.

**11.** According to the results of consideration of the application for deeming the claims addressed to the debtor for compulsory payments repaid and for replacing the creditors in the register of creditors' claims, given the compliance of the repayment completed with the commercial court ruling upholding the declaration of intent the commercial court shall issue a ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims.

The claims of the person that has repaid the claims addressed to the debtor for compulsory payments shall be recorded in the register of creditors' claims in the same amount and with the same priority rating as the repaid claims to the debtor for compulsory payments.

**12.** If the claims addressed to the debtor for compulsory payments have not been repaid in full or have been repaid in breach of the procedure or term for repayment established by the commercial court ruling the commercial court shall issue a ruling on refusing to deem repaid the claims addressed to the debtor for compulsory payments.

The funds remitted shall be refunded to the applicant within ten business days after the commercial court ruling on refusal to deem repaid the claims addressed to the debtor for compulsory payments became final.

The remittance of funds in excess over the amount of money envisaged by the commercial court ruling upholding the declaration of intent shall not be deemed ground for the commercial court's issuing a ruling on refusal to deem repaid the claims addressed to the debtor for compulsory payments, and equally, increasing the amount of claims to the debtor of the person that has completed repayment of the claims addressed to the debtor for compulsory payments.

The funds remitted in excess over the amount of money envisaged by said ruling shall be refunded to the applicant within ten business days after the commercial court ruling on deeming repaid the claims addressed to the debtor for compulsory payments and on replacing the creditor in the register of creditors' claims became final.

**13.** The Government of the Russian Federation shall establish a procedure for settlements of accounts for the purpose of repaying the claims addressed to a debtor for compulsory payments.

**14.** The repayment of the claims for compulsory payments addressed to a debtor for which the present Federal Law established details of implementation of the proceedings applicable in a bankruptcy case is admissible in cases when there is a provision for this in the present Federal Law establishing the details of bankruptcy of debtors of specific categories.

**Article 113.** The Performance of Obligations of a Debtor by the Founders (Stockholders) of the Debtor, the Owner of the Property of the Debtor Being an Unitary Enterprise or a Third Person

**1.** The founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise, a third person or third persons are entitled at any time before the end of external administration for the purpose of terminating proceedings in the bankruptcy case to meet all the creditors' claims included in the register of creditors' claims or to provide the debtor with funds sufficient to meet all the claims of the creditors according to the register of creditors' claims.

If the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise, a third person or third persons meet creditors' claims all the claims included in the register of creditors' claims shall be met, including forfeit money (fines and penalties), interest and other sanctions for a default on, or the improper performance of obligations.

**2.** A person intending to meet in full the creditors' claims addressed to the debtor shall send a declaration of such intent to the commercial court that is considering the bankruptcy case and to the receiver.

**3.** The following shall be indicated in the declaration of the intent to meet in full the creditors' claims addressed to the debtor:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the applicant;

the term for meeting the creditors' claims not exceeding 20 days after the issuance of the relevant ruling by the commercial court;

the method of meeting the creditors' claims in full (the remittance of funds into a special bank account of the debtor or into a deposit of a notary).

**4.** The declaration of intent shall be considered by the commercial court within 14 business days after being received.

If several declarations of intent have been received by the commercial court from several persons they shall be considered in the chronological order of their being received by the commercial court.

According to the results of consideration of the declaration of intent the commercial court shall issue a ruling upholding the declaration of intent or a ruling on refusal to uphold such declaration if the applicant has decided not to repay the creditors' claims.

*[Unofficial translation from Russian]*

**5.** The following shall be indicated in the commercial court ruling upholding the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the person that meets the creditors' claims;

the registration details of the debtor being a legal entity (the state registration number of the entry on the state registration of the legal entity and the taxpayer identification number);

the amount of creditors' claims included in the register of creditors' claims;

the term for meeting the creditors' claims;

the date of the court-room hearing of the results of meeting the creditors' claims;

the method of meeting the creditors' claims (the remittance of funds into a special bank account of the debtor or a deposit of a notary);

the other information required for the purpose of remitting funds into a special bank account of the debtor or a deposit of a notary.

**6.** The consideration of the declaration of the intent to meet the creditors' claims addressed to the debtor shall be adjourned until the date of consideration of the results of meeting the creditors' claims if a similar declaration has been received from another person earlier.

**7.** For the purpose of meeting the creditors' claims addressed to the debtor by means of remitting funds into a special bank account of the debtor the receiver shall do the following on the basis of the commercial court ruling upholding the declaration of intent: opening a separate account of the debtor in a credit organisation as intended only to meet the creditors' claims included in the register of creditors' claims, in accordance with the present article (special bank account of the debtor).

In the contract of special bank account of the debtor an indication shall be made of the person into whose accounts the funds available in the special bank account of the debtor are to be remitted in accordance with the commercial court ruling upholding the declaration of intent.

Funds from the special bank account of the debtor shall be written off on orders of the receiver only for the purpose of meeting the creditors' claims included in the register of creditors' claims, and they shall not be written off for other obligations of the debtor (current obligations included) or of the receiver or the third person(s) that meets/meet the creditors' claims.

The funds available in the special bank account of the debtor are not subject to levy of execution for other obligations of the debtor or of the receiver or of the third person(s) that meets/meet the creditors' claims.

Transactions accomplished in breach of the provisions of the present item may be deemed null and void.

**8.** For the purpose of meeting the creditors' claims by means of remitting funds into a deposit of a notary the receiver shall serve a notice to the commercial court indicating the date of the notice, and also information on the beneficiaries of the funds as required in accordance with the rules for completing the payment documents that acknowledge the remittance of the funds, with the amount of claim in respect of each of the beneficiaries of the funds being indicated.

**9.** Within the term set by the commercial court ruling upholding the declaration of intent the applicant shall remit funds into the special bank account of the debtor or a deposit of a notary in the amount and in the procedure specified in the ruling.

Within three business days after the receipt of the funds from the applicant into the special bank account of the debtor the receiver shall meet the creditors' claims in accordance with the ruling upholding the declaration of intent.

If within said term the creditors' claims included in the register of creditors' claims are not met in full because the information required to meet said claims cannot be established the balance of funds from the special bank account of the debtor shall be remitted into a deposit of a notary.

**10.** Upon the expiry of the term established by the commercial court for meeting the creditors' claims by means of remitting funds into the special bank account of the debtor or a deposit of a notary the receiver or the applicant shall send an application to the commercial court for deeming the creditors' claims met.

To this applicant's application the applicant shall attach payment documents acknowledging that the funds have been remitted into a deposit of a notary in the amount specified in the commercial court ruling upholding the declaration of intent, and the receiver shall attach payment documents acknowledging that the creditors' claims included in the register of creditors' claims have been met by means of remittance of funds into the special bank account of the debtor in the amount specified in the commercial court ruling upholding the declaration of intent. In the case specified in Paragraph 3 of Item 9 of the present article the receiver shall also attach to the application payment documents confirming that the balance of the funds from the special bank account of the debtor has been remitted into a deposit of a notary.

**11.** According to the results of consideration of the application for deeming the creditors' claims met, given the

*[Unofficial translation from Russian]*

compliance of the repayment completed with the terms of the commercial court ruling upholding the declaration of intent, the commercial court shall issue a ruling on deeming the creditors' claims met.

**12.** If the creditors' claims have not been met in full or if when the creditors' claims were being met by means of remittance of funds to the special bank account, or into a deposit of a notary funds were remitted in an amount below the one envisaged by the commercial court ruling or in breach of the term set by it for repayment then the commercial court shall issue a ruling on refusal to deem the creditors' claims met.

The funds remitted to the special bank account, or into the deposit of the notary shall be refunded to the applicant within ten business days after the commercial court ruling on refusal to deem the creditors' claims met became final.

The remittance of the funds to the special bank account, or into a deposit of a notary in excess of the amount of money envisaged by the commercial court ruling upholding the declaration of intent shall not be deemed ground for the commercial court to issue a ruling on refusal to deem the creditors' claims met.

The funds remitted to the special bank account, or into a deposit of a notary in excess over the amount of money envisaged by the commercial court ruling shall be refunded to the applicant within ten business days after the commercial court ruling on deeming the creditors' claims met becomes final.

**13.** Amounts of money from the deposit of the notary shall be remitted to creditors in the amount specified in the ruling upholding the declaration of intent, within ten business days after the commercial court ruling on deeming the creditors' claims met became final.

**14.** The amounts of money remitted into a special bank account of the debtor or into a deposit of a notary shall be deemed provided to the debtor on the terms of an interest-free loan contract whose due date is determined by call time but not preceding the end of the term for which external administration has been instituted.

Other terms for provision of funds for the purpose of performing the debtor's obligations may be established by an agreement approved by the debtor's managerial bodies empowered under the debtor's constitutive documents to take decisions on conclusion of large-scale transactions, with the person that meets creditors' claims.

**15.** If the debtor's obligations are performed by the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise, a third person or third persons the completion of external administration and termination of proceedings in the bankruptcy case shall be done in accordance with Article 116 of the present Federal Law.

**Article 114.** Flotation of Debtor's Additional Ordinary Shares

**1.** For the purpose of restoring a debtor's solvency the external administration plan may envisage an increase in the authorised capital of the debtor being a joint stock company by means of floating additional ordinary shares.

An increase in the authorised capital by means of floating additional ordinary shares may be included in the external administration plan exclusively at the petition on the debtor's managerial body that has adopted the decisions specified in Item 2 of Article 94 of the present Federal Law.

In the case of receipt of a petition from the debtor's managerial body for including an increase of the authorised capital of the debtor being a joint stock company in the external administration plan by means of floating additional ordinary shares of the debtor the receiver shall hold a creditors' meeting for the purpose of considering the petition of the debtor's managerial body for inclusion of a decision on the issuance of additional ordinary shares of the debtor in the external administration plan.

**2.** The flotation of the debtor's additional ordinary shares may be performed only by closed subscription. The term of flotation of the debtor's additional ordinary shares shall not exceed three months. The state registration of a report on the results of flotation of the debtor's additional ordinary shares shall be effected within one month after the termination of external administration.

**3.** The shareholders of the debtor shall have a priority right to acquire the debtor's additional ordinary shares being floated, in the manner envisaged by a federal law.

The term provided to the shareholders of the debtor to exercise their priority right to acquire the debtor's additional ordinary shares shall not exceed 45 days after the commencement of flotation of the said shares.

**4.** The prospectus of issue (decision on the issuance of) of the debtor's additional ordinary shares shall comprise a provision for payment for additional ordinary shares only in monetary form.

**5.** If an issue of debtor's additional ordinary shares is deemed unaccomplished or invalid, the funds received by the debtor from the persons which have acquired the debtors' additional ordinary shares shall be refunded to such persons above the priority ranking of creditors' claims established by the present Federal Law.

**Article 115.** Substitution of Debtor's Assets

113

*[Unofficial translation from Russian]*

**1.** The substitution of assets of a debtor shall be effected by means of forming on one public joint stock company or several public joint stock companies on the basis of the debtor's property. In the case of formation of one public joint stock company its authorised capital shall incorporate the property (including property rights) included in the enterprise and intended for the pursuit of entrepreneurial activity. The composition of the enterprise shall be determined in accordance with Items 1 and 2 of Article 110 of the present Federal Law.

**2.** The substitution of assets of a debtor by means of forming one public joint stock company or several public joint stock companies on the basis of the debtor's property may be included in the external administration plan under a decision of the debtor's managerial body authorised under the constitutive documents to adopt decisions on the conclusion of relevant transactions of the debtor.

The possibility of replacing the debtors' assets may be included in the external administration plan on the condition that this decision is upheld by the voting of all the creditors whose obligations are secured by a pledge/ mortgage of the debtor's property.

**3.** The external administration plan may envisage the formation of several public joint stock companies whose authorised capital shall be paid for by the debtor's property intended for the pursuit of specific types of activity. The composition of the debtor's property contributed to the authorised capitals of the public joint stock companies in formation shall be determined by the external administration plan.

Paragraph two is abrogated.

**3.1.** When the debtor's assets are replaced the debtor is the sole founder of a joint stock company or of several public joint stock companies. The participation of other founders in the formation of a public joint stock company or of several public joint stock companies is inadmissible.

**3.2.** The amount of the authorised capitals for the public joint stock companies to be established shall be determined by a decision of a meeting of creditors or of the creditors' committee and shall be fixed in the amount of the market value of the property contributed in payment for the authorised capitals of the public joint stock companies to be established fixed in the appraisal report.

The property to be contributed as payment for the authorised capitals of public joint stock companies to be established shall be appraised in the procedure established by Article 130 of this Federal Law.

**4.** In the case of substitution of assets of a debtor all the labour contracts effective when the decision was made to substitute the debtor's assets shall remain effective, with the employer's rights and duties being transferred to the newly formed public joint stock company (public joint stock companies).

The document confirming the availability of a licence for the pursuance of specific types of activity shall be subject to formalities with a view to issuing a document confirming the fact that the newly formed public joint stock company (companies) holds (hold) a relevant licence in accordance with the procedure established by a federal law.

**5.** The shares of the public joint stock company or the public joint stock companies formed on the basis of the debtor's property shall be included in the debtors' estate and they can be sold at a public sale, except as otherwise established by the present article.

The sale of shares of the public joint stock company or the public joint stock companies formed on the basis of the debtor's property shall ensure an accumulation of funds for the restoration of the debtor's solvency.

**6.** The sale at a public sale of the shares of a public jointstock company or the public joint stock companies formed on the basis of the debtors' property shall be effected in the manner set out in Article 110 of the present Federal Law.

The external administration plan may envisage a sale of the shares of the public joint stock company or the public joint stock companies formed on the basis of the debtor's property on the organised securities market.

**7.** When the debtor's assets are substituted the object of pledge/mortgage is also replaced for the bankruptcy creditors whose obligations are secured with the pledge/mortgage of the debtor's property, the right of pledge/mortgage comes into being in respect of the shares of the formed joint stock company or several joint stock companies.

The value of the shares put in pledge/mortgage shall be pro rata to the value of the property that has been pledged and has been contributed into the charter capital of the joint stock company or into the charter capitals of the several joint stock companies, on the basis of its market value.

**8.** The sole executive body of the formed joint stock company or several joint stock companies is a receiver or another person appointed and removed by a receiver under a decision on the meeting of creditors.

**9.** The charter of the formed joint stock company or several joint stock companies shall be endorsed by a decision of the meeting of creditors or of the creditors' committee.

114

*[Unofficial translation from Russian]*

**10.** A decision of the meeting of creditors or of the creditors' committee may envisage the formation of a collective managerial body of the formed joint stock company. The election of members of the collective managerial body of the joint stock company is within the competence of the meeting of creditors or of the creditors' committee.

**11.** The formed joint stock company does not have the right to dispose of the property contributed into its charter capital until the time of full sale of its shares in the course of the proceedings applicable in a debtor's bankruptcy case.

**Article 116.** The Features of Completion of a Proceeding Applicable in a Bankruptcy Case and Termination of Proceedings in a Bankruptcy Case by the Owner of Property of a Debtor Being a Unitary Enterprise, a Debtor's Promoters (Stockholders) or a Third Person or Third Persons

**1.** Upon the completion of discharge of the obligations of a debtor by the owner of property of the debtor being a unitary enterprise, the debtor's promoters (stockholders) or by a third person or third persons the receiver shall within ten days notify all the creditors whose claims have been included in the register of creditors' claims that their claims have been met.

**2.** A report of the receiver shall be sent to the commercial court within 14 days without having been considered by a creditors' meeting.

**3.** The commercial court shall approve the report of the receiver in the manner and on the terms envisaged by Items 1, 3-7 of Article 119 of the present Federal Law.

**Article 117.** Receiver's Report

**1.** The receiver shall present a report of the receiver to a creditors' meeting for consideration:

on the results of external administration;

when grounds exist for terminating external administration before due time;

at the demand of the persons entitled to convene a creditors' meeting;

when sufficient funds have been accumulated for meeting all the claims of the creditors included in the register of creditors' claims.

**2.** If during external administration all the claims of the creditors included in the register of creditors' claims have been met in compliance with the present Federal Law, the receiver shall within one month after the date when all the claims of the creditors included in the register of creditors' claims were met notify thereof all the persons whose claims were included in the register of creditors' claims and lodge a receiver's report with the commercial court for approval.

**3.** The receiver's report shall contain the following:

the debtor's balance sheet as of the last accounting date;

a cash-flow statement;

a statement of the debtor's profits and losses;

information on the availability of free funds and other amounts of money of the debtor that can be used to meet creditors' claims relating to monetary obligations and the debtor's mandatory payments;

a breakdown of the debtor's outstanding accounts receivable, information on measures for the collection thereof and on the debtor's rights of claim that have remained unrealised;

information on meeting the claims of the creditors included in the register of creditors' claims;

information on the current debtor's liabilities with an indication of the proceeding applicable in a bankruptcy case in the course of which they came into being, their purpose, grounds for the occurrence thereof, and the amounts of the liability and of the outstanding balance;

information on the measures taken for deeming as invalid the debtor's transactions, and also for declaring refusal to perform the debtor's contracts;

other information on the possibility of repayment of the debtor's outstanding accounts payable.

The register of creditors' claims shall be attached to the receiver's report.

**4.** The receiver's report shall comprise one of the below proposals:

for terminating external administration in connection with the fact that the debtor's solvency has been restored and for proceeding to effect settlements with the creditors;

for prolonging the established effective term of external administration;

Case 1:16-cv-09139-PGG   Document 53-3   Filed 03/06/17   Page 132 of 137

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 117 of 317
*[Unofficial translation from Russian]*

for terminating proceedings in the bankruptcy case in connection with satisfaction of all creditors' claims in compliance with the register of creditors' claims;

for terminating external administration and filing a petition with the commercial court for declaring the debtor bankrupt and commencing winding-up procedure.

### Article 118. Consideration of the Receiver's Report by a Creditors' Meeting

**1.** In cases when the report of a receiver is subject to consideration by a creditors' meeting, such a meeting shall be convened within three weeks after the announcement of the demand for holding the meeting of creditors for the purpose of considering the receiver's report or within three weeks after the occurrence of grounds for terminating external administration before due time or at least one month prior to the date of expiry of the established effective term of external administration.

**2.** The receiver shall provide the creditors with an opportunity for familiarising themselves in advance with the receiver's report at least 45 days prior to the expiry of the established effective term of external administration or at least ten days prior to the set date of the creditors' meeting.

**3.** On the results of consideration of the receiver's report the creditors' meeting shall be entitled to adopt one of the below decisions:

to file a petition with the commercial court for terminating external administration in connection with restoration of the debtor's solvency and for proceeding to effect settlements with the creditors;

to file a petition with the commercial court for terminating proceedings in the case due to the fact that all the claims of the creditors are met in compliance with the register of creditors' claims;

to file a petition with the commercial court for declaring the debtor bankrupt and commencing winding-up procedure;

to conclude an amicable agreement.

**4.** While considering a receiver's report in connection with the expiry of the external administration term set by the commercial court the creditors' meeting shall be entitled to adopt a decision to file a petition with the commercial court for prolonging the set external administration term on the condition that the total period of external administration does not exceed the maximum duration of external administration admissible under the present Federal Law.

### Article 119. Approval of a Receiver's Report by the Commercial Court

**1.** It is compulsory for the report of a receiver to be subject to consideration by the commercial court, except for the case when the receiver's report has been considered by a creditors' meeting at the demand of the persons entitled to convene a creditors' meeting and the creditors' meeting after consideration of the report adopted neither of the decisions specified in Item 3 of Article 118 of the present Federal Law.

**2.** If under the present Federal Law it is compulsory for the receiver's report to be subject to consideration by a creditors' meeting, the receiver's report that has been considered by a creditors' meeting and the minutes of the creditors' meeting shall be sent to the commercial court within five days after the date of the creditors' meeting.

Attached to the receiver's report shall be the register of creditors' claims as of the date of the creditors' meeting and complaints of the creditors which voted against the decision adopted by the creditors' meeting or of the creditors which did not take part in the voting.

**3.** The receiver's report and complaints against actions of the receiver, if any, shall be considered by the commercial court within one month after the receipt of the receiver's report.

**4.** The receiver's report shall be subject to approval by the commercial court if:

all the creditors' claims included in the register of creditors' claims have been met in compliance with the present Federal Law;

a creditors' meeting has adopted a decision to terminate external administration in connection with restoration of the debtor's solvency and commencement of settlements with the creditors;

an amicable agreement has been concluded between the creditors and the debtor;

a creditors' meeting has adopted a decision to prolong the external administration term, except for the cases specified by the present Federal Law.

**5.** The commercial court shall refuse to approve a receiver's report if:

the creditors' claims included in the register of creditors' claims have not been met;

there is no evidence of restoration of the debtor's solvency;

circumstances exist which prevent the conclusion of an amicable agreement.

**6.** According to the results of consideration of a receiver's report a ruling shall be issued on:

the termination of proceedings in the bankruptcy case if all the creditors' claims in compliance with the register of creditors' claims have been met, or if the commercial court has approved an amicable agreement;

the commencement of settlements with the creditors if the petition filed by a creditors' meeting for terminating external administration in connection with the restoration of the debtor's solvency and commencement of settlements with the creditors has been satisfied;

the prolongation of the external administration term if a petition for prolongation of the external administration term has been satisfied;

to refuse approving the receiver's report if the circumstances defined by Item 5 of the present article are discovered by a court as preventing the approval of the receiver's report.

**7.** If there is a petition of a creditors' meeting for declaring the debtor bankrupt and commencing winding-up procedure and also if the commercial court has refused to approve the receiver's report or if this report was not filed within one month after the expiry of the established external administration term the commercial court may adopt a decision to declare the debtor bankrupt and commence winding-up procedure.

**Article 120.** The Consequences of Issuance of a Ruling on Commencing Settlements with Creditors

**1.** The issuance of a ruling by a commercial court on commencing settlements with creditors shall be deemed a ground for commencing settlements with all the creditors in compliance with the register of creditors' claims.

**2.** The ruling on commencement of settlements with creditors shall indicate a term for completing settlements with the creditors which shall not exceed six months after the date of this ruling.

After the termination of settlements with the creditors the commercial court shall issue a ruling on the approval of the receiver's report and on termination of proceedings in the bankruptcy case.

**3.** If settlements with the creditors have not been completed within the term set by the commercial court the commercial court shall adopt a decision to declare the debtor bankrupt and commence winding-up procedure.

**Article 121.** Settlements with Creditors

**1.** Settlements with creditors shall be effected by the receiver in compliance with the register of creditors' claims beginning from the date of the commercial court ruling on commencement of settlements with the creditors or ruling on commencement of settlements with creditors of a specific priority ranking category.

**2.** Settlements with creditors shall be effected in the manner envisaged by Articles 134-138 of the present Federal Law with due regard to the features established by the present article.

**3.** Having met the claim of a creditor included in the register of creditors' claims the receiver or registrar shall delete the claim from the register of creditors' claims.

If the register of creditors' claims is kept by a registrar the documents confirming that the claims of a creditor have been met shall be sent by the receiver to the registrar.

**Article 122.** Abrogated.

**Article 122.1.** The Termination of External Administration on an Application of a Person Deemed Party to the Bankruptcy Case

**1.** Unless the decisions envisaged by Item 3 of Article 118 of the present Federal Law are taken, the commercial court shall take a decision on deeming the debtor bankrupt and on commencing in respect of the debtor a winding-up proceeding on a petition of a person deemed party to the bankruptcy case, provided the maximum term of external administration established by Article 93 of the present Federal Law has expired.

**2.** A ruling on refusal to uphold the petition mentioned in Item 1 of the present article is subject to appeal.";

**Article 123.** Procedure for Terminating the Powers of a Receiver

**1.** The termination of proceedings in a bankruptcy case or the adoption of a decision by the commercial court whereby a debtor is declared bankrupt and winding-up procedure is commenced shall entail termination of the powers of the receiver.

**2.** If an external administration is terminated by the conclusion of an amicable agreement or by repayment of the creditors' claims the receiver shall keep executing his/her duties within the competence of head of the debtor until the date of election (appointment) of a new head of the debtor.

117

*[Unofficial translation from Russian]*

The receiver shall convene the managerial body of the debtor within the scope of powers of which, under the present Federal Law and the constitutive documents of the debtor, falls the consideration of the issue of electing (appointing) the head of the debtor so that the managerial body considers the issue of electing (appointing) the head of the debtor.

The powers of the other managerial bodies of the debtor and of the owner of property of the debtor being a unitary enterprise shall be restored.

**3.** In case when the commercial court adopted the decision to declare the debtor bankrupt and commence winding-up procedure and approved another person as the winding-up receiver or if the winding-up receiver cannot be approved simultaneously with the adoption of such a decision, the receiver shall perform the duties of the winding-up receiver until the date when the winding-up receiver is approved.

The receiver shall transfer his powers and documentation to the winding-up receiver within three working days after the date of approval of the winding-up receiver.

## Chapter VII. Winding-Up

**Article 124.** General Provisions on Winding-Up

**1.** The adoption of the decision to declare a debtor bankrupt shall entail commencement of winding-up procedure.

**2.** Winding-up procedure shall be instituted for a term of up to six months. The effective term of the winding-up procedure may be extended at the petition of a person deemed party to the case by up to six months.

**3.** The commercial court ruling on prolongation of the effective term of winding-up procedure shall take effect immediately and shall be subject to appeal in the manner established by Item 3 of Article 61 of the present Federal Law.

**Article 125.** Performance of the Obligations of a Debtor by the Owner of Property of the Debtor Being a Unitary Enterprise, by the Promoters (Stockholders) of the Debtor or by a Third Person or Third Persons During Winding-Up Procedure

**1.** The owner of property of a debtor being a unitary enterprise, the promoters (stockholders) of a debtor or a third person or third persons at any time before the winding-up term shall be entitled to simultaneously meet all the creditors' claims in compliance with the register of creditors' claims or to provide funds to the debtor sufficient for meeting all the creditors' claims in compliance with the register of creditors' claims in the manner and on the terms set out in Article 113 of the present Federal Law.

**2.** When the debtor's obligations are discharged by the owner of property of the debtor being a unitary enterprise, the founders (stockholders) of the debtor or a third person or third persons, a report shall be presented by the winding-up receiver in the manner envisaged in Items 1 and 2 of Article 116 of the present Federal Law.

**3.** The approval of the winding-up receiver's report shall be effected by the commercial court in the manner and on the terms set out in Item 3, Paragraphs 1 and 2 of Item 4 and Paragraphs 1 and 2 of Item 5 of Article 119 of the present Federal Law.

**4.** According to the results of consideration of the winding-up receiver's report the commercial court shall issue a ruling whereby proceedings are terminated in the bankruptcy case if all the creditors' claims in compliance with the register of creditors' claims have been met or if the commercial court has approved an amicable agreement.

**Article 126.** The Consequences of Commencement of Winding-Up

**1.** As of the date of adoption of the decision by the commercial court whereby a debtor is declared bankrupt and winding-up procedure is commenced:

the monetary obligations and mandatory payments of the debtor that occurred prior to the institution of winding-up procedure shall be deemed due;

the accrual of interest, forfeit money (fines and penalties) and other sanctions for a default on, or the improper performance of, money obligations and compulsory payment, except for current payments, and also of the interest envisaged by the present article shall be terminated;

information on the debtor's financial state is no longer classified as confidential or as a commercial secret;

the conclusion of transactions relating to alienation of the debtor's property or entailing transfer of the debtor's property to third persons for use is allowed exclusively in the manner established by the present chapter;

execution is terminated under writs of execution, in particular, those that were being executed during the proceedings applicable in a bankruptcy case that have been instituted earlier, except as otherwise established by the present Federal Law;

all creditors' claims relating to monetary obligations, mandatory payments, or other claims on property, except for the

*[Unofficial translation from Russian]*

current payments specified in Item 1 of Article 134 of the present Federal Law and for claims for recognition of a right of ownership, demanding property from another's illegal possession, recognition of transactions as null and void and on application of the measures for the invalidity thereof, may be presented only during the winding-up procedure;

the execution documents under which execution has been terminated in compliance with the present Federal Law shall be subject to transfer by bailiffs to the administrator in the manner established by a federal law;

the seizure imposed earlier on the debtor's property and other injunctions concerning the disposal of the debtor's property are lifted. The ground for lifting the seizure imposed on the debtor's property shall be deemed as follows: a court decision whereby the debtor is declared bankrupt and winding-up procedure is commenced. The imposition of a new seizure on the debtor's property and other limitations on disposal of the debtor's property is prohibited;

the debtor's obligations, in particular as regards the execution of judicial acts, acts of other bodies and officials issued in compliance with the civil legislation and criminal legislation of the Russian Federation, procedural legislation and legislation of the Russian Federation on taxes and fees, shall be discharged by the bankruptcy receiver in the procedure and in the instances which are established by this chapter.

**2.** Starting from the day when the commercial court adopts a decision on deeming the debtor bankrupt and on commencing a winding-up proceeding the powers of the head of the debtor and of the debtor's other managerial bodies and of the owner of the property of the debtor being an unitary enterprise (except for the powers of the general meeting of the stockholders of the debtor and of the owner of the property of the debtor to take decisions on conclusion of agreements on the terms of provision of funds by a third person or by third persons for the purpose of performing the debtor's obligations) are terminated.

The head of the debtor, and also the interim receiver, administrative receiver and receiver shall within three days after the approval of the winding-up receiver ensure the transfer of the debtor's accounting and other documentation, seals, rubber stamps, material and other valuables to the winding-up receiver.

If they decline from performing the said duty the head of the debtor, and also the interim receiver, administrative receiver and receiver shall be held accountable under the legislation of the Russian Federation.

**2.1.** Interest shall be accrued in the procedure and in the amount envisaged by the present article on the sum of the claims of a bankruptcy creditor and an empowered body in the amount established in accordance with Article 4 of the present Federal Law.

Interest on the Russian Federation currency-denominated sum of the claims of the bankruptcy creditor and the empowered body shall be accrued at the rate of the re-financing rate established by the Central Bank of the Russian Federation of the date of commencement of the winding-up proceeding.

A lower rate of interest payable or a shorter interest-accrual term as compared with the ones envisaged by the present article may be envisaged by agreement between the winding-up receiver and the winding-up creditor.

The interest accruable and payable in accordance with the present article shall be accrued on the sum of the creditors of each priority rating category starting from the date of commencement of the winding-up proceeding until the date of repayment of said claims by the debtor.

The interest accrued in accordance with the present article shall not be taken into account in the count of the number of votes belonging to the bankruptcy creditor or the empowered body at meetings of creditors.

The interest accrued in accordance with the present article shall be paid off simultaneously with the repayment of creditors' claims for money obligations and of the claims addressed to the debtor for compulsory payments in the priority rating procedure established by Article 134 of the present Federal Law.

**3.** During winding-up procedure representatives of the owner of property of the debtor being a unitary enterprise, and also the promoters (stockholders) of the debtor shall enjoy the rights of persons deemed party to the bankruptcy case.

**4.** Where it is provided for by Item 4 of Article 72 of this Federal Law, in the course of bankruptcy proceedings the decisions pertaining to the scope of authority of a meeting of creditors and the creditor's committee may be adopted by a commercial court.

**Article 127.** The Winding-up Receiver

**1.** While adopting a decision whereby a debtor is declared bankrupt and winding-up procedure is commenced, the commercial court shall approve a winding-up receiver in the manner envisaged by Article 45 of the present Federal Law with a ruling to this effect being issued by the court. The said ruling shall take effect immediately and shall be subject to appeal.

**1.1.** When adopting the decision on declaring the debtor bankrupt and on initiation of bankruptcy proceedings where it is provided for by Item 4 of Article 72 of this Federal Law, a commercial court shall endorse the bankruptcy receiver whose

*[Unofficial translation from Russian]*

candidacy shall be presented by the self-regulated organisation of which the interim receiver is a member.

**2.** The winding-up receiver shall act until the date of completion of the winding-up procedure or termination of proceedings in the bankruptcy case.

**Article 128.** Publication of Information on Declaration of a Debtor Bankrupt and Commencement of Winding-Up Procedure

**1.** The publication of information on declaration of a debtor bankrupt and commencement of winding-up procedure shall be executed by the winding-up receiver in the manner envisaged by Article 28 of the present Federal Law. Within ten days after his/her approval the winding-up receiver shall send the information for publication.

**2.** The following information on the declaration of a debtor as bankrupt and commencement of winding-up procedure shall be subject to publication:

the debtor's designation, his address and information, identifying him (the state registration number of an entry on the state registration of the legal entity, the state registration number of an entry on the state registration of the individual businessman and the identification number of the taxpayer);

the name of the commercial court responsible for proceedings in the bankruptcy case, and the number of the case;

the date of the commercial court decision whereby the debtor was declared bankrupt and winding-up procedure was commenced;

the date of closing of the register of creditors' claims set in compliance with Item 1 of Article 142 of the present Federal Law;

the address of the debtor for the purpose of creditors' presenting their claims to the debtor;

information on the winding-up receiver and the relevant self-regulating organisation.

**Article 129.** The Powers of a Winding-up Receiver

**1.** From the date of approval of a winding-up receiver to the date of termination of proceedings in the bankruptcy case or conclusion of an amicable agreement or dismissal of the winding-up receiver, the winding-up receiver shall exercise powers of head of the debtor and other managerial bodies of the debtor, as well as those of the owner of property of the debtor being a unitary enterprise, within the limits, in the manner and on the terms established by the present Federal Law.

**2.** The winding-up receiver shall:

take the debtor's assets into the supervision, carry out its inventory within not less than 3 months from the date of introduction of the bankruptcy proceedings, unless longer term is established by the court considering the bankruptcy case, on the basis of an application of the bankruptcy manager due to the essential amount of the debtor's assets;

include into the Comprehensive Federal Register of Data on Bankruptcy data on the results of an inventory check of the debtor's property within three working days as from the end date thereof;

recruit an appraiser to evaluate the debtor's property in the cases envisaged by the present Federal Law;

take measures for searching, discovering and returning the debtor's property items held by third persons;

take measures for ensuring the preservation of the debtor's property;

notify the debtor's employees of forthcoming dismissal within one month after the commencement of the winding-up proceeding;

present claims to the third persons having debts owing the debtor for collection of such debts in the procedure established by the present Federal Law;

declare in the established procedure objections to the creditors' claims presented to the debtor;

keep a register of creditors' claims, except as otherwise envisaged by the present Federal Law;

deliver for storage the debtor's documents subject to compulsory storage under federal laws. The procedure and terms for the delivery of a debtor's documents for storage are established by federal laws and other normative legal acts of the Russian Federation;

conclude the transactions in the conclusion of which there is an interest only on the consent of a meeting of creditors or of the creditors' committee;

execute the other duties established by the present Federal Law.

*[Unofficial translation from Russian]*

**3.** The winding-up receiver shall be entitled to:

dispose of the debtor's property in the manner and on the terms established by the present Federal Law;

dismiss the debtor's employees, in particular, the head of the debtor in the manner and on the terms established by a federal law;

declare a refusal to perform contracts and other transactions in the manner established by Article 102 of the present Federal Law. The winding-up receiver shall not be entitled to declare a refusal to perform the debtor's contracts if there exist circumstances preventing restoration of the debtor's solvency;

Paragraph five is abrogated;

file with a commercial court in the debtor's name applications for declaring invalid deals and decisions, as well as for applying the effects of invalidity of void deals concluded or performed by the debtor, claims for recovery of losses caused by actions (omission to act) of the debtor's head, persons who are members of the board of directors (supervisory board), the debtor's collective executive body or other managerial body, owner of the debtor's property, persons which have acted on behalf of the debtor in compliance with a power of attorney, other persons that have acted in compliance with the debtor's constituent documents, raise claims for obtaining on demand the debtor's property from third persons, for dissolving contracts made by the debtor and make other actions provided for by federal laws and other regulatory legal acts of the Russian Federation which are aimed at the return of the debtor's property;

exercise other rights relating to the execution of the duties vested therein as established by the present Federal Law.

**4.** Abrogated.

**5.** If grounds established by a federal law exist, the winding-up receiver shall present demands to third persons which having subsidiary liability under a federal law for the debtor's obligations.

Paragraph 2 is abrogated.

**6.** A meeting of creditors is entitled to take a decision on termination of the debtor's economic activity, provided such termination is not going to cause man-made and/or ecological disasters, the termination of operation of the facilities used to support the operation of pre-school educational organisations, other educational organisations, medical-treatment and disease-prevention institutions, the facilities used for the purpose of organisation of pre-medical aid, urgent and emergency ambulance and out-patient and in-patient medical aid, the utility infrastructure facilities relating to life-support systems, for instance, water, heat, gas and power supply, water removal waste water purification and facilities intended for the treatment, utilisation, decontamination and burial of solid household waste, the facilities intended for lighting urban and rural settlements and the facilities intended for landscaping (hereinafter referred to as "social-significance facilities") needed for supporting the life of individuals. The winding-up receiver shall terminate the debtor's manufacturing of goods (performing of works and providing of services) on the basis of a decision of a meeting of creditors on termination of the debtor's economic activities within three months after the date of such decision.

**Article 129.1.** The Repayment of Debts for Compulsory Payments in the Course of Winding Up by the Founders (Stockholders) of the Debtor, the Owner of the Property of the Debtor Being an Unitary Enterprise and/or a Third Person

**1.** In the course of winding up the claims to the debtor for compulsory payments that have been included in the register of creditors' claims may be repaid by the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise and/or a third person or third persons in the procedure established by the present article.

If the claims addressed to the debtor for compulsory payments are repaid by the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise and/or a third person or third persons all the claims addressed to the debtor for compulsory payments included in the register of creditors' claims shall be repaid.

**2.** A person intending to repay in full the claims addressed to the debtor for compulsory payments shall send a declaration of such intent to the commercial court that is considering the bankruptcy case, to the winding-up receiver and the empowered bodies.

**3.** The following shall be indicated in the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the applicant;

the term for repayment of the claims addressed to the debtor for compulsory payments not exceeding 30 business days after the issuance of the relevant ruling by the commercial court.

**4.** The declaration of intent shall be considered by the commercial court within 14 business days after being received.

If several declarations of intent have been received by the commercial court from several entities/persons they shall be