considered in the chronological order of their being received by the commercial court.

**5.** According to the results of consideration of the declaration of intent the commercial court shall issue a ruling upholding the declaration of intent or a ruling on refusal to uphold the declaration of intent if the register of creditors' claims does not contain claims addressed to the debtor for compulsory payments or if the applicant decided not to repay the claims addressed to the debtor for compulsory payments before the consideration of such declaration.

**6.** The following shall be indicated in the commercial court ruling upholding the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the person that repays the claims addressed to the debtor for compulsory payments ;

the amount of the claims addressed to the debtor for compulsory payments , the principal debt amount and the forfeit money (fines and penalties) accrued;

the term and procedure for repayment of the claims addressed to the debtor for compulsory payments ;

the date of the court-room hearing on the results of repayment of the claims addressed to the debtor for compulsory payments ;

bank account details and also the other information required for remittance of funds for the purpose of repaying the claims addressed to the debtor for compulsory payments .

**7.** The consideration of the declaration of the intent to repay the claims addressed to the debtor for compulsory payments shall be adjourned until the date of the consideration of the results of repayment of the claims addressed to the debtor for compulsory payments if a similar declaration has been earlier received from another person.

The consideration of the declaration of the intent to repay the claims addressed to the debtor for compulsory payments may be adjourned if there is a dispute as to the amount and composition of the claims addressed to the debtor for compulsory payments until the court judgement establishing the composition and amount of the claims to the debtor for compulsory payments included in the register of creditors claims becomes final.

**8.** For the purposes of repayment of the claims addressed to the debtor for compulsory payments the empowered body shall serve a notice to the commercial court indicating the date of service of the notice, the surname, first name, patronymic and position of the official who has signed the notice, and also the information required according to the rules for completion of the payment documents confirming that funds have been remitted to repay the claims addressed to the debtor for compulsory payments, with the amount of claim in respect of each of the beneficiaries of the funds being specified.

**9.** Within the term established by the commercial court ruling upholding the declaration of intent the applicant shall remit funds in the amount and in the procedure specified in the ruling.

**10.** Upon the expiry of the term established by the commercial court for repayment of the claims addressed to the debtor for compulsory payments the applicant shall send an application to the commercial court for deeming the claims addressed to the debtor for compulsory payments repaid and for replacing the creditor in the register of creditors' claims.

Attached to the application shall be payment documents acknowledging that funds have been remitted in the amount and in the procedure specified in the commercial court ruling upholding the declaration of intent.

**11.** According to the results of consideration of the application for deeming the claims addressed to the debtor for compulsory payments repaid and for replacing the creditor in the register of creditors' claims, provided the repayment completed complies with the commercial court ruling upholding the declaration of intent the commercial court shall issue a ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims.

The claims of the person that has repaid the claims addressed to the debtor for compulsory payments shall be recorded in the register of creditors' claims in the same amount and with the same priority rating as the repaid claims to the debtor for compulsory payments.

**12.** If the claims addressed to the debtor for compulsory payments have not been repaid in full or have been repaid in breach of the procedure or term for repayment established by the commercial court ruling the commercial court shall issue a ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid.

The funds remitted shall be refunded to the applicant within ten business days after the commercial court ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid becomes final.

The remittance of funds in excess over the amount of money envisaged by the commercial court ruling upholding the declaration of intent shall not be deemed ground for the commercial court to issue a ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid, and equally, for increasing the amount of claims to the debtor of the person that has repaid the claims addressed to the debtor for compulsory payments.

*[Unofficial translation from Russian]*

The funds remitted in excess over the amount of money envisaged by said ruling shall be refunded to the applicant within ten business days after the commercial court ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims becomes final.

**13.** The Government of the Russian Federation shall establish a procedure for settlements of accounts for the purpose of repaying the claims addressed to a debtor for compulsory payments.

**14.** The repayment of the claims addressed for compulsory payments to a debtor for which the present Federal Law established details of implementation of the proceedings applicable in a bankruptcy case is admissible if there is a provision for this in the present Federal Law establishing the details of bankruptcy of debtors of specific categories.

**Article 130.** Appraising the Debtor's Property

**1.** The qualified receiver shall recruit an appraiser for assessing the cost of the debtor's property and shall pay for the services thereof from the debtor's property where it is provided for by this Federal Law.

An appraisal of the debtor's property shall be carried out by an appraiser that has to meet the requirements established by the legislation of the Russian Federation on appraising, and he/she shall not be an interested person in respect of the qualified receiver, the debtor or the debtor's creditors.

A meeting of creditors or the creditors' committee is entitled to designate a person in which the duty to make payment for said services of appraisers is vested, given the person's consent, with the expenses incurred by the person being compensated for on an out-of-order basis with the debtor's property.

A report on the appraisal of the debtor's property is subject to inclusion by the qualified receiver into the Comprehensive Federal Register of Data on Bankruptcy within two working days as from the date of receiving a copy of this report in electronic form.

**2.** If under this Federal Law the engagement of the appraiser for assessing the cost of the debtor's property is mandatory, the appraiser's report on assessing the property of the debtor being a unitary enterprise or the property of the debtor being a joint stock company (hereinafter also referred to as the valuation report) that have over twenty five per cent of the voting stocks under the state or municipal ownership shall be sent by the receiver or by the bankruptcy receiver to the federal executive power body authorised by the Government of the Russian Federation for preparing opinions in respect of appraisers' reports (hereinafter referred to as the body authorised to prepare opinions in respect of appraisers' reports).

**3.** Within 30 days after the receipt of the appraisal report the body empowered to prepare statements on appraisers' reports is entitled to send a substantiated statement concerning that report to the qualified receiver. The procedure for preparation of said statement is established by the regulator. If a positive statement or no statement is received upon the expiry of the established term the meeting, a meeting of creditors or the creditors' committee shall establish an initial selling price for the enterprise or other property of the debtor on the basis of the market value of such property assessed in accordance with the appraisal report.

**4.** A negative opinion of the body authorised to give opinions on reports of valuers, containing justification incompliance of a report with the legislation of the Russian Federation on evaluation activities, used in the evaluation report, shall be directed to the bankruptcy manager, attaching a copy of the evaluation report provided to the body authorised to give opinions on reports of valuers.

Paragraph 2 has lost force.

If there is a positive opinion of the body authorised o give opinions on reports of valuers, the meeting of creditors of the creditors' committee shall set an initial sales price for the company or other assets of the debtor, calculated on the basis of the market value in accordance with the evaluation report.

**5.** On the basis of the decision of the meeting of creditors or of the creditors' committee an appraisal of the debtor's movable property whose balance-sheet value is below 100,000 roubles as of the last accounting date preceding the date of filing of the application for deeming the debtor bankrupt may be carried out without an appraiser being invited.

**6.** The founder (stockholders) of the debtor or the owner of the property of the debtor being an unitary enterprise, bankruptcy creditors and empowered bodies are entitled to take appeal from the results of an appraisal of the debtor's property, in the procedure established by a federal law.

**Article 131.** The Debtor's Estate

**1.** All the property of a debtor available as of the date of the winding-up procedure commencement and revealed during winding-up procedure shall be deemed the estate of the debtor.

**2.** The following shall be excluded from the property of the debtor that makes up the debtor's estate: property exempt from alienability, rights in rem relating to the debtor's personality, in particular, rights based on a held licence for the pursuance

of specific types of activity and also other property specified by the present Federal Law.

The property being the subject matter of a pledge/mortgage shall be taken into account within the debtor's property and it shall be subject to compulsory appraisal.

In the cases established by a federal law, the property which is the mortgage cover of a debtor that carried out, in accordance with Federal Law No. 152-FZ of November 11, 2003 on Mortgage Securities (hereinafter, the "Federal Law on Mortgage Securities") an emission of bonds with mortgage cover shall be excluded from the bankruptcy assets of a debtor, and the demands of the creditors holding bonds with mortgage cover shall be satisfied in the procedure established by the Federal Law on Mortgage Securities.

**3.** For the purpose of keeping appropriate record of the debtor's property that makes up the debtor's estate, the winding-up receiver shall be entitled to recruit accountants, auditors and other specialists.

**Article 132.** The Debtor's Property Not Included in the Debtor's Estate

**1.** If there is property exempt from alienability within the composition of the debtor's property, the winding-up receiver shall notify thereof the owner of the property exempt from alienability.

**2.** The owner of the property exempt from alienability shall accept this property from the winding-up receiver or attach it to other persons within six months after the date of receipt of the notice from the winding-up receiver.

**3.** If the owner of the property exempt from alienation defaults on the duty specified in Item 2 of the present article upon the expiration of six months after the date of receipt of the notice from the winding-up receiver all expenses towards the maintenance of the property exempt from alienation shall be borne by the owner of this property, except as otherwise established by the present article.

**4.** Socially significant facilities, cultural heritage objects (monuments of history and culture) of nations of the Russian Federation and other objects whose sale in accordance with the legislation of the Russian Federation shall take the form of a trade that is a tender, as well as the objects, in respect of which agreements on public-private partnership or municipal-private partnership are concluded, shall be sold according to the procedure established by Article 110 of this Federal Law.

The conditions sine qua non of the tender for sale of said items shall be buyers' undertaking to ensure the appropriate maintenance and use of said items in accordance with their intended purpose and also honouring the other obligations established in accordance with the legislation of the Russian Federation.

A sale of a cultural heritage item (monument of history and culture) of the peoples of the Russian Federation shall be carried out in the observance of the requirements established by Item 4 of Article 110 of the present Federal Law.

A contract of purchase/sale of a cultural heritage item (monument of history and culture) of the peoples of the Russian Federation shall comply with the requirements established by the legislation of the Russian Federation on the privatisation of state and municipal property as applicable to a contract of purchase/sale of cultural heritage items (monuments of history and culture) of the peoples of the Russian Federation.

In the event of sale of utility infrastructure facilities the conditions sine qua non of the tender also include buyers' undertaking to provide goods (works and services) at regulated prices (tariffs) in accordance with the established price (tariff) mark-ups to the individuals and organisations which operate social-use housing facilities and also to the organisations financed with funds of the budgets of the budget system of the Russian Federation and also to provide said consumers with the privileges established by federal laws, laws of subjects of the Russian Federation and normative legal acts of local self-government bodies, including without limitation privileges for payment for goods (works and services).

Paragraphs 6 - 8 are abrogated.

**4.1.** Unless facilities of social significance, cultural heritage sites (monuments of history and culture) of the peoples of the Russian Federation or utility infrastructure facilities have been sold in the procedure established Item 4 of the present article, the further procedure for the sale thereof shall be established by the meeting of creditors or by the committee of creditors, inter alia, by means of holding a new sale, by means of public offer in the procedure established Article 139 of the present Federal Law, or an invitation to make offers within 30 days after the date of publication of the relevant announcement.

In this case, participants in bidding for the sale of the debtor's property by public offer, and also the persons which have sent an offer shall undertake to conclude an agreement with local self-government bodies on observance of the conditions mentioned in Item 4 of the present article.

**4.2.** After the completion of bidding for the sale of property by tender, by means of public offer or of receipt of acceptance of one of the offers received the local self-government body shall conclude an agreement on observance of the conditions mentioned in Item 4 of the present article with a buyer of the facilities of social significance.

In the event of a substantial breach or default by the buyer of the facilities of social significance of the agreement on

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 4 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 126
of 317                                   *[Unofficial translation from Russian]*

observance of the conditions mentioned in Item 4 of the present article that agreement and the contract of purchase/sale of the facilities of social significance shall be subject to rescission by a court on an application of the local self-government body.

If the court rescinds the agreement and the contract of purchase/sale of the facilities of social significance such facilities are subject to transfer for ownership of the municipal formation, and the amounts of money paid under the contract of purchase/sale of the facilities of social significance shall be refunded to the buyer at the expense of the local budget.

**5.** The items of social significance that have not been sold in the procedure established by Items 4 and 4.1 of the present Article are subject to transfer into the municipal ownership of the relevant municipal formation as represented by local self-government bodies, with said bodies being notified by the winding-up receiver.

Social-use housing facilities are subject to transfer to the owner of such housing facilities.

**6.** The transfer of the items of social significance specified in Item 5 of the present article and of social-use housing facilities into municipal ownership and to the owner of the social-use housing facilities respectively shall be carried out without any additional conditions whatsoever on the basis of a commercial court ruling within the term set by such ruling.

**7.** The officials of governmental bodies and the officials of local self-government bodies who do not observe the provisions of Items 5 and 6 of the present article shall be held accountable as envisaged by a federal law.

**8.** Abolished from January 1, 2005.

**9.** Abolished from January 1, 2005.

**10.** Abolished from January 1, 2005.

**11.** Abolished from January 1, 2005.

**Article 133.** Debtor's Accounts in Winding-Up

**1.** The winding-up receiver shall use only one debtor's account in a bank or other credit organisation (the principal account of the debtor), or if it is not available or if transactions cannot be accomplished on existing accounts, she/he shall open such an account during winding-up, except for the cases stipulated by this Federal Law.

If third persons have a foreign-currency denominated debt to the debtor the winding-up receiver shall be entitled to open or use the debtor's foreign-currency denominated account in the manner established by federal law.

The other debtor's accounts in credit organisations known as of the time of commencement of the winding-up and also discovered during the winding-up, except for the accounts opened for settlements relating to an activity relating to trust administration, and special broker's activities of a professional participant in the securities market, special depository accounts, clearing accounts, collateral accounts, accounts of the guarantee fund of the payment system opened in accordance with Federal Law No. 161-FZ of June 27, 2011 On National Payment System and accounts of the central payment clearing counterparty, shall be subject to closure by the winding-up receiver as they are discovered, except as otherwise established by the present article. The debtor's cash balance of the said accounts shall be remitted to the debtor's principal account.

If a bank or another credit organisation defaults on observing bank account terms due to the revocation of the organisation's banking activity licence, the winding-up receiver shall be entitled to assign the right of claim of cash from the bank account in the manner envisaged by Article 140 of the present Federal Law.

**2.** The debtor's principal account shall be credited with the debtor's funds coming in as the winding-up progresses.

Payments to creditors shall be made from the debtor's principal account in the manner envisaged by Article 134 of the present Federal Law.

**3.** The winding-up receiver shall present a report on the uses of the debtor's funds to the commercial court or creditors' meeting (creditors' committee) if requested to do so, but not more than once a month.

**4.** If a debtor carried out, in accordance with the Federal Law on Mortgage Securities, an emission of bonds with mortgage cover, then the winding-up receiver must open a separate account in a bank or in another credit organisation for entering thereto the monetary funds representing the mortgage cover and which are received in the course of the bankruptcy proceedings in execution of the liabilities, the rights of demand on which make up the mortgage cover, and also open a special mortgage account for entering thereto the monetary funds received in the course of the realisation of the mortgage cover.

If a debtor carried out several emissions of bonds with different mortgage covers, then a special mortgage account shall be opened for each mortgage cover.

From the special mortgage account payments shall be made to the creditors holding bonds with the relevant mortgage cover, and also the payments for the current liabilities connected with the realisation of the mortgage cover.

**5.** The provisions of this article do not extend to special accounts for the purposes of a capital repairs fund maintained

*[Unofficial translation from Russian]*

for common property in the block of flats, in particular if there exist an outstanding debt for a loan and/or credit received for performance of capital repair of common property in a block of flats, until the liability owing the creditor for the loan and/or credit received for performance of capital repair of common property in this block of flats is discharged in full.

**Article 134.** The Priority Ranking of Creditors' Claims

**1.** The following shall be repaid with the bankrupt's estate on an out-of-order basis: creditors' claims for current payments prior to the creditors whose claims had come into being before the acceptance of the application for deeming the debtor bankrupt.

If the termination of the activities of the debtor organisation or of its structural units may cause man-made and/or ecological disasters or human death also expenses towards measures for prevention of such consequences shall be repaid on an out-of-order basis with a priority to any other claims of creditors on current payments.

**2.** The creditors' claims in respect of the current payments shall be satisfied in the following order:

in the first turn shall be satisfied the claims in respect of the current payments connected with the court costs related to the bankruptcy case, payment of remuneration to the qualified receiver, recovery of debts on payment of remuneration to the persons that have discharged the duty of the qualified receiver in the bankruptcy case, claims in respect of the current payments connected with payment for the activities of the persons whose engagement by the qualified receiver for discharging the duties imposed thereupon in the bankruptcy case in compliance with this Federal Law is mandatory, including the recovery of debts on payment for the activities of the cited persons;

in the second turn shall be satisfied the claims for labour wages of the persons who are working or have been working (after the date of acceptance of an application for declaring the debtor bankrupt) under a labour contract, and the claims for paying severance benefits;

in the third turn shall be satisfied the claims for paying for the activities of the persons engaged by the qualified receiver to ensure the discharge of the duties in the bankruptcy case imposed thereupon, in particular for recovery of debts on payment for the activities of these persons, except for the persons cited in Paragraph Two of this item;

the fourth priority shall have claims on maintenance payments (utility payments, payments under agreements of power supply and other similar ones);

in the fifth turn shall be satisfied the claims in respect of the current payments.

The creditors' claims in respect of the current payments that pertain to the same turn shall be satisfied in calendar order.

**2.1.** The claims of the debtor's head, his/her deputies, of the persons included into the debtor's collective executive body, of the debtor's chief accountant, his/her deputies, of the head of the debtor's branch or representative office, of his/her deputies, of the chief accountant of the debtor's branch or representative office, of his/her deputies for paying thereto a discharge allowance and/or payment of other compensations whose rate is fixed by a corresponding labour contract, if it is terminated, as regards their part exceeding the minimum rate of such payments fixed by the labour legislation, shall not pertain to creditors' claims in respect of the current payments and shall be satisfied after allowing the claims of creditors of the third-turn provided for by Paragraph Four of Item 4 of this article.

**3.** While considering a creditor's complaint concerning current payments the commercial court is entitled to determine the amount and priority rating for meeting the creditor's claim for current payments if it upholds the complaint.

**4.** Creditors' claims shall be satisfied in the following order:

in the first turn shall be made settlements in respect of the claims of the individuals with respect to which the debtor is liable for inflicting harm to their life or health by way of capitalization of appropriate time-based payments, as well as settlements in respect of other claims established by this Federal Law;

in the second turn shall be made settlements as to payment of severance benefits and/or labour wages to the person who are working or have been working under a labour contract and as to paying remunerations to authors of the results of intellectual activities;

in the third turn, settlements shall be made with other creditors, in particular with creditors under net obligations.

After making settlements with the third-turn creditors settlements shall be made with creditors as to satisfaction of claims under the deal declared invalid on the basis of Item 2 of Article 61.2 and Item 3 of Article 61.3 of this Federal Law.

The creditors' claims in respect of the obligations secured by pledge of the debtor's property shall be allowed on account of the value of the subject of pledge in the procedure established by Article 138 of this Federal Law.

**5.** When remuneration is paid for the labour of the debtor's employees who keep working within the winding-up period and who have been hired within the winding-up period, the winding-up receiver shall carry out the withholdings required under

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 6 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 128
of 317                                       *[Unofficial translation from Russian]*

law (alimony, income tax, trade union dues, insurance premiums, etc.) and effect the payments for which the employer is responsible under federal law.

**Article 135.** The Amount of and Payment Procedure for First Priority Ranking Creditors' Claims

**1.** The amount of claims of the individuals to which the debtor is liable for harm to life or health shall be calculated by means of capitalising the relevant time-based payments that were established as of the date of adoption by the commercial court of the decision whereby the debtor was declared bankrupt and winding-up was commenced and which are payable to the individuals until they reach the age of 70 but at least for ten years. The procedure and terms for capitalising relevant time-based payments shall be determined by the Government of the Russian Federation.

If the age of an individual exceeds 70 years, the period of capitalisation of relevant time-based payments shall make up ten years.

**2.** The disbursement of the capitalised time-based payments of which the amount is determined in the manner set out in Item 1 of the present article shall discharge the relevant obligation of the debtor.

**3.** On the individual's consent his/her right of claim in the amount of capitalised time-based payments shall be transferred to the Russian Federation.

If it is transferred to the Russian Federation, the said claim shall also be met as top priority.

In this case the debtor's obligation to the individual in the form of capitalised time-based payment disbursement shall be transferred to the Russian Federation and shall be performed by the Russian Federation in compliance with a federal law in the manner determined by the Government of the Russian Federation.

Abrogated.

Claims for payment of compensation in excess of the compensation for harm shall be satisfied in the amount fixed by the Town-Planning Code of the Russian Federation.

**Article 136.** The Amount of and Procedure for Meeting Second Priority Ranking Creditors' Claims

**1.** While determining the amount of claims relating to the disbursement of severance benefits and wages/salaries of the persons who are working or have been working under a labour contract, and disbursement of royalties to the authors of the results of intellectual activity, account shall be taken of the outstanding debts that have occurred as of the date when the commercial court accepted the application for declaring the debtor bankrupt and also interest for breach of the established term for the disbursement of wages/salaries, vacation payment, severance payment and other disbursable amounts payable to the employee in the amount and in the procedure established in accordance with the labour legislation.

**2.** If, within the period from the issuance by the commercial court of the ruling on acceptance of the application for declaring the debtor bankrupt to the time when the debtor is declared bankrupt and winding-up is commenced, the debtor has not fulfilled in full his/her/its obligations relating to remuneration for the labour of the persons who are working or have been working under a labour contract and disbursement of royalties to the authors of the results of intellectual activity, the amounts of money that have not been disbursed before the adoption by the commercial court of the decision on declaring the debtor bankrupt and commencing winding-up shall be met as part of the current claims.

**3.** The claims of the debtor's head, his/her deputies, of the persons included into the debtor's collective executive body, of the debtor's chief accountant, his/her deputies, of the head of the debtor's branch or representative office, of his/her deputies, of the chief accountant of the debtor's branch or representative office, of his/her deputies for paying thereto a discharge allowance and/or payment of other compensations whose rate is fixed by a corresponding labour contract, if it is terminated, as regards their part exceeding the minimum rate of such payments fixed by the labour legislation, shall not pertain to the claims of second-turn creditors and shall be allowed after satisfying the claims of third-turn creditors.

**4.** An commercial court on the basis of an application of the bankruptcy receiver is entitled to reduce the amount of claims to labour wages of the debtor's employees who are working or were working under labour contracts which are subject to satisfaction within the composition of creditors' claims in respect of the current payments and/or within the composition of claims of second-turn creditors, if within six months before the acceptance by the commercial court of an application for declaring the debtor bankrupt the rate of labour wages of such persons has been increased as compared to the rate of labour wages fixed before the start of the cited time period. This application is subject to consideration within the case on the debtor's bankruptcy.

In the event of the adoption by a commercial court of the decision cited in Paragraph One of this item, the claims of relevant persons concerning compensation for the difference between the increased rate of labour wages and the initial rate of labour wages shall be allowed after satisfying the claims of third-turn creditors.

**5.** The claims of the second-turn creditors are subject to proportionate satisfaction in the following order:

127

*[Unofficial translation from Russian]*

in the first turn shall be satisfied the claims for paying severance benefits and/or labour wages to the persons who are working or have been working under a labour contract in the amount of at most 30 thousand roubles for each month per person;

in the second turn shall be satisfied the remaining claims for paying severance benefits and/or labour wages to the persons who are working or have been working under a labour contract;

in the third turn shall be satisfied the claims for paying remuneration to authors of the results of intellectual activities.

**Article 137.** The Claims of Third Priority Ranking Creditors

**1.** While assessing the amount of third priority ranking creditors' claims one shall take into account the claims of the bankruptcy creditors and authorised bodies.

**2.** If, in the period from the issuance by the commercial court of the ruling on accepting the application for declaring the debtor bankrupt to the commencement of winding-up, the debtor has not paid in full mandatory payments, the claims that have not been met before the adoption by the commercial court of the decision on declaring the debtor bankrupt and commencing winding-up procedure shall be met as top priority.

**3.** The claims of third priority ranking creditors for compensation of losses in the form of lost advantage, collection of forfeit money (fines, penalties) and other financial sanctions, in particular, those imposed for a default on or improper performance of the duty to make mandatory payments shall be recorded separately in the register of creditors' claims and they shall be met after the payment of the principal debt and payable interest.

**4.** The features of record-keeping and meeting the claims of third priority ranking creditors related to the obligations secured by a pledge/mortgage of the debtor's property shall be defined by Article 138 of the present Federal Law.

**5.** The specifics of estimating the amount of creditors' claims resulting from financial agreements are defined by Article 4.1 of this Federal Law.

**Article 138.** Creditors' Claims Relating to Obligations Secured by a Pledge/Mortgage of the Debtor's Property

**1.** Seventy per cent of the assets derived from realization of the subject of pledge shall be sent for satisfaction of the creditor's claims in respect of the obligation secured by pledge/mortgage of the debtor's property but at most the principal amount of debt related to the obligation secured by pledge and interest due.

The remainder of the monetary funds derived from realisation of the subject of pledge shall be entered onto the debtor's special bank account in the following manner:

twenty per cent of the sum derived from selling the subject of pledge - for satisfying claims of first-priority and second-priority creditors, if debtor's other property is not sufficient for satisfying the said claims;

the remaining monetary funds - for covering court costs, outlays on the remuneration of qualified receivers and payment for the services rendered by the persons attracted by a qualified receiver for the purpose of discharging the duties imposed thereupon.

**2.** Where the pledge of the debtor's property secures the claims of a bankruptcy creditor under a credit contract, eighty per cent of the funds derived from the sale of the subject of pledge shall be allocated for satisfaction of the bankruptcy creditor's claims under the credit contract secured by pledge of the debtor's property but at most the principal amount of debt in respect of the obligation secured by pledge and interest due. The remainder of the amount derived from realization of the subject of pledge shall be entered into the debtor's special bank account in the following manner:

fifteen per cent of the sum derived from selling the subject of pledge - for satisfaction of claims of first-priority and second-priority creditors, if other debtor's property is insufficient for satisfaction of the said claims;

the remaining monetary funds - for covering court costs, outlays on the remuneration of qualified receivers and payment for the services rendered by the persons attracted by a qualified receiver for the purpose of discharging the duties imposed thereupon.

Paragraph 4 is abrogated.

Paragraph 5 is abrogated.

**2.1.** Monetary funds intended for the settlement of claims of creditors of the first and the second level and left on the debtor's special bank account after the complete satisfaction of such claims, shall be directed towards the settlement of claims of the competition creditors provided for by a pledge of the debtor's property, not settled at the expense of the cost of the pledge in connection with the withdrawal of a part of the cost to meet the claims of the creditors of the first and of the second level in conformity with Items 1 and 2 of the present Article.

Monetary funds left after the complete satisfaction of the claims of the creditors of the first and of the second level and of the claims of the creditor provided for by a pledge of the realised property, shall be included into the competition mass.

128

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 8 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 130
of 317                                                          *[Unofficial translation from Russian]*

Monetary funds left after the complete settlement of the court expenditures, of outlays on payment out of the remuneration to the qualified receivers and on the remuneration of the services of the persons invited by the qualified receiver to provide for the execution of the duties imposed upon him, shall be included into the competition mass.

Creditors' claims not satisfied at the expense of the cost of the object of pledge on the liabilities provided for by the pledge of the debtor's property, shall be satisfied in the composition of claims of the creditors' of the third level.

**2.2.** The creditor's claims in respect of the obligation secured by the pledge of rights under an agreement of bank account shall be satisfied by way of writing off by a bank on the basis of the bankruptcy receiver's order monetary assets from the debtor's pledged account and their issuance to the creditor under the obligation secured by the pledge of rights under the agreement of bank account or their entry onto the account cited by such creditor.

The claims of the creditors cited in this item shall be satisfied in the amount of 70 per cent of the monetary assets kept on the pledged account or, if the pledge of rights under an agreement of bank account secures the claims of the bankruptcy creditor under a credit agreement, in the amount of eighty per cent of the monetary assets kept on the cited account, but no more than the amount of the pledge-secured rights under the agreement of bank account.

The monetary assets left after satisfaction of the claims of the creditors provided for by this item shall be used according to the rules provided for by Items 1-2.1 of this article.

The non-satisfied claims of the bankruptcy creditor under the obligations which are secured by pledge of rights under an agreement of bank account shall be satisfied within the composition of creditors' claims of the third turn.

**3.** The winding-up receiver shall open a separate debtor's account with a credit institution intended solely for satisfaction of creditors' claims on account of the monetary funds derived from realization of the subject of pledge in compliance with this article (debtor's special bank account).

It shall be specified in the contract of the debtor's special bank account that the monetary funds kept on the debtor's special bank account may only be withdrawn for satisfaction of claims of first-priority and second-priority creditors, as well as for covering court costs, outlays on the remuneration of qualified receivers and on payment for services of the persons attracted by the qualified receiver for the purpose of discharging the duties imposed thereupon.

Monetary funds shall only be withdrawn from the debtor's special bank account at the direction of the winding-up receiver for the purpose of satisfaction of creditors' claims in the procedure provided for by this article.

Transactions made in defiance of this item's requirements may be declared invalid.

**4.** The subject of pledge shall be sold in the procedure established by Items 4, 5, 8-19 of Article 110 and Item 3 of Article 111 of this Federal Law, and taking account of the provisions of the present Article.

The initial selling price of the object of pledge, the procedure and terms for conducting bidding, the procedure and terms for ensuring the preservation of the object of pledge shall be defined by the bankruptcy creditor whose claims are secured by the pledge of the property being sold. Said information is subject to inclusion by the qualified receiver at the expense of the debtor in the Unified Federal Register of Information on Bankruptcy at least 15 days before the date of commencement of the sale of the object of pledge at a public sale.

If disagreements occur between the bankruptcy creditor under the obligation secured by the pledge of the debtor's property and the bankruptcy receiver or the persons participating in the bankruptcy case concerning the issues of initial selling price, the procedure and terms for conducting the public sale for the sale of the object of pledge or the procedure and terms for ensuring the preservation of the object of pledge, then each of them has the right to file an application within 10 days after the date of inclusion of information in the Unified Federal Register of Information on Bankruptcy for resolution of such disagreements with the commercial court that is considering the bankruptcy case according to the results of consideration of which the commercial court shall issue a ruling on setting the initial selling price, endorsing a procedure and terms for conducting the public sale for the sale of the object of pledge, a procedure and terms for securing the preservation of the object of pledge, which ruling is subject to appeal. If the sale of the object of pledge takes place jointly with the sale of another property of the debtor the procedure and terms of such sale shall not be established without the consent in writing of the bankruptcy creditor whose claims are secured by the pledge of the property being sold.

If divergences of opinion arise between the winding-up creditor on a liability provided for by a pledge of the debtor's property, and the winding-up receiver, as well as the bankruptcy creditors in respect of the obligations secured by pledge of the same debtor's property, in the issues on the procedure and terms for holding a bidding on the realisation of the object of pledge, each of them has the right to file an application for the resolution of such divergences of opinion to the commercial court, considering the case on bankruptcy, in accordance with the results of the consideration of which the commercial court shall pass a ruling on the approval of the procedure and terms for holding a bidding on the realisation of the object of pledge, which may be appealed against.

**4.1.** If the repeated bidding is recognised as not having taken place, on the liabilities provided for by a pledge of the

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 9 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 131
of 317                                    *[Unofficial translation from Russian]*

debtor's property, the competition creditor has the right to leave the object of pledge for himself with its estimate in a sum ten per cent less than the starting selling price at the repeated bidding.

If the winding-up creditor on the liabilities provided for by a pledge of the debtor's property leaves the object of pledge for himself, he is obliged to transfer monetary funds in an amount, defined in accordance with Items 1 and 2 of the present Article, onto the special bank account in conformity with the procedure, established in Item 3 of the present Article, within ten days from the date of directing to the winding-up receiver an application for leaving the object of pledge by himself.

If the creditor has not made use of the right to leave the object of pledge for himself on the liabilities provided for by a pledge of the debtor's property, within 30 days from the day of recognising the repeated bidding as not having taken place, it shall be sold in a public offer in accordance with the procedure established in Item 4 of Article 139 of the present Federal Law.

**4.2.** The bankruptcy creditor under the obligations secured with the pledge of the debtor's property has the right to retain the object of pledge in the course of bidding for the sale of the debtor's property by means of public offer at any stage of reducing the price of such property, provided there are no applications for participation in bidding at the price set for that stage of reduction of the price of the property.

If he retains the object of pledge in the course of the public sale for the sale of property by means of public offer the bankruptcy creditor under the obligations secured by the pledge of the debtor's property shall remit the amount of money defined in keeping with Items 1 and 2 of the present article to a special bank account in the procedure established Item 3 of the present article simultaneously with the sending of an application for retaining the object of pledge to the bankruptcy receiver.

From the date on which the funds come to the special bank account and the application for retaining the object of pledge is received by the qualified receiver the public sale for the sale of the object of pledge shall be subject to termination.

**5.** Pledge holders' claims under contracts of pledge made with the debtor to secure the discharge of obligations of other persons shall be likewise satisfied in the procedure provided for by this article. The said pledge holders shall enjoy the rights of bankruptcy creditors whose claims are secured by pledge of the debtor's property, in all procedures applied in a bankruptcy case.

**6.** Expenses towards the preservation of the object of pledge and the sale thereof at the public sale shall be covered with the proceeds from the sale of the object of pledge before these funds are spent in accordance with Items 1 and 2 of the present article.

**Article 139.** Selling the Debtor's Property

**1.** Within ten working days from the date of the inclusion of data on the results of an inventory check of the debtor's property into the Comprehensive Federal Register of Data on Bankruptcy the bankruptcy creditor or an authorised body are entitled, if the rate of claim of the bankruptcy creditor or the rate of claim of the authorised body exceeds two per cent of the total amount of the claims of bankruptcy creditors and authorised bodies included into the register of creditors' claims, to send to the bankruptcy receiver a demand to recruit an appraiser citing the property to be appraised.

Within two months as from the date of receiving such claim the bankruptcy receiver is bound to ensure the appraisal of the cited property on account of the debtor's property.

A report on the appraisal of the debtor's property is subject to inclusion by the bankruptcy receiver to the Comprehensive Federal Register of Data on Bankruptcy within two working days as from the date of receiving a copy of this report in the electronic form.

A repeated appraisal of the property of the debtor in respect of which a claim has been earlier raised for making an appraisal in compliance with this item shall be made, if bankruptcy creditors or authorized bodies defray the cost of making such appraisal.

**1.1.** Within one month from the date of end of inventory of the debtor's company (hereinafter in this Article - the debtor's assets) if such evaluation was carried out upon demand of the creditor or the authorised authority in accordance with this Federal Law, the bankruptcy manager shall provide his proposals regarding procedure for sale of the debtor's assets to the meeting of creditors or the committee of creditors for approval, that shall include:

information subjected to inclusion in the announcement of sale of the debtor's assets in accordance with Item 10 of Article 110 of this Federal Law;

on mass media and websites where it is offered to publish or place the announcement of sale of the debtor's assets and on terms for its publication and placement;

on special purpose vehicle intended to be involved as the market maker.

The procedure for sale of the debtor's assets can envisage that, if the debtor's assets was not sold on the first trade, it shall be sold by parts, starting from the first trade, and the terms established for sale of the debtor's asset shall start anew.

130

*[Unofficial translation from Russian]*

A meeting of creditors or a committee of creditors shall have the right to approve the procedure for sale of the debtor's assets other than that proposed by the bankruptcy manager.

The procedure, the terms and the conditions for sale of the debtor's assets shall be aimed at sale of the debtor's assets at the highest price possible and shall provide attraction of the maximum number of potential buyers to the sale.

If the meeting of creditors or the committee of creditors fails to approve also a proposal including information on composition of the debtor's assets, terms for their sale, the form of trade, conditions of the tender (if the debtor's assets are to be sold through a tender, in accordance with the legislation of the Russian Federation), on form for representation of price offers for the debtor's assets, on the starting sales price, mass media and websites where it is proposed to publish or place the announcement of sale of the debtor's assets and on terms for publication and placement of the said announcement, within 2 months from the date of making a proposal by the bankruptcy manager to the meeting of creditors or the committee of creditors regarding sale of the debtor's assets, the bankruptcy manager, the bankruptcy creditor and/or the authorised body, if the amount of accounts payable to it included in the register of creditors' claims exceeds 20 percent of the total accounts payable included in the register of creditors' claims, shall have the right to file an application with the commercial court for approval of the procedure, the terms and the conditions for sale of the debtor's assets.

The decision of the commercial court approving the procedure, the terms and the conditions for sale of the debtor's assets can be appealed against.

**2.** If in the course of the winding up circumstances occur due to which there is a need for changing the procedure, term and/or conditions of the sale of the debtor's property the winding-up receiver shall present proposals for such changes to a meeting of creditors or the creditors' committee for confirmation.

**3.** After the completion of the stock-taking and appraisal of the debtor's property the winding-up receiver shall start selling it. The sale of the debtor's property shall be carried out in the procedure established by Items 3-19 of Article 110 and by Item 3 of Article 111 of the present Federal Law, with account being taken of the details established by the present article. The appraisal of the debtor's property shall be carried out in the procedure established by Article 130 of the present Federal Law. Proceeds from the sale of the debtor's property shall be included in the composition of the debtor's property.

**4.** If a repeated sale of the debtor's property is deemed unaccomplished or if no contract of purchase/sale is concluded with the sole participant therein and also if no contract of purchase/sale is concluded according to the results of the repeated sale then the debtor's property sold at the sale is subject to sale by means of a public offering.

When the debtor's property is being sold by means of a public offering the following shall be indicated in the announcement of the sale apart from the information envisaged by Article 110 of the present Federal Law: the amount of reduction in the initial selling price of the debtor's property and the term upon the expiry of which said initial price is gong to be successively reduced. As this is being done, the initial selling price of the debtor's property shall be set in the amount of the initial price specified in the announcement of the sale of the debtor's property at the repeated sale.

The organiser of the sale shall consider the participation application for the sale and take a decision on clearing an applicant for bidding in the procedure established by Article 110 of the present Federal Law.

If within the established term there no participation application is submitted for the sale as containing a bid offering a price for the debtor's property not below the established initial selling price of the debtor's property then the initial selling price of the debtor's property shall be reduced within the term indicated in the announcement of the sale of the debtor's property by means of a public offering.

The right to acquire the debtor's property shall be held by the participant in the sale of the debtor's property by means of a public offering which submitted a participation application for the sale within the established term containing a bid for the debtor's property not below the initial selling price of the debtor's property set for the specific period of the sale, in the absence of bids on the part of other participants in the sale of the debtor's property by means of a public offering.

If several participants in the sale of the debtor's property by means of a public offering submitted applications for participation in the sale of the debtor's property within the established term containing various bids for the debtor's property not below the initial selling price of the debtor's property fixed for a definite period of the sale, the right to acquire the debtor's property shall be held by the sale participant that has offered the maximum price for this property.

If several participants in the sale of the debtor's property by means of a public offering submitted applications within the established term containing equal bids for the debtor's property not below the initial selling price of the debtor's property fixed for a definite period of the sale, the right to acquire the debtor's property shall be held by the sale participant that was the first to file an application for participation in the sale of the debtor's property by means of a public offering within the established time period.

The acceptance of applications shall be stopped from the time when the winner in the sale of the debtor's property by means of a public offering is designated.

*[Unofficial translation from Russian]*

**5.** The debtor's property whose balance-sheet value as of the last accounting date before the date of commencement of the winding up is below 100,000 roubles shall be sold in the procedure established by a decision of a meeting of creditors or the creditors' committee.

**6.** The provisions of the present article do not extend to cases when a debtor's property being a product manufactured by the debtor in the course of the debtor's economic activities is being sold.

**Article 140.** Assignment of Debtor's Rights of Claim

**1.** On the consent of a creditors' meeting (creditors' committee) the winding-up receiver shall be entitled to commence assigning the debtor's rights of claim by means of selling them, if a different procedure is not established by this Federal Law.

**2.** The sale of the debtor's rights of claim shall be effected by the winding-up receiver in the manner and on the terms established by Article 139 of the present Federal Law, except as otherwise established by a federal law or ensue the essence of the claim. The terms of a contract of sale of debtor's rights of claim shall envisage the following:

the receipt of funds for the sold thing in action within 30 business days after the conclusion of the contract of purchase/sale;

the transfer of a right of claim only after payment for the right of claim has been made in full.

**3.** If disagreements exist between the winding-up receiver and the creditors' meeting (the creditors' committee) on an issue concerning agreement on the procedure for the sale of the debtors' rights of claim, these disagreements shall be resolved in accordance with the procedure set out in Item 2 of Article 139 of the present Federal Law.

**Article 141.** Substitution of Debtor's Assets in Winding-Up

**1.** Under a decision of a creditors' meeting within the winding-up period, the debtor's assets may be substituted so as to meet the creditors' claims to the most extent. The substitution of the debtor's assets in winding-up is subject to the provisions of Article 115 of the present Federal Law, except as otherwise envisaged by the present article and contravenes the essence of winding-up.

**2.** In winding-up the debtor's assets shall be replaced under a decision of a creditors' meeting, provided all the creditors whose obligations are secured with the pledge of the debtor's property have voted in favour of such decision.";

**Article 142.** Settlements with Creditors in Winding-Up

**1.** The winding-up receiver or the persons entitled under Articles 113 and 125 of the present Federal Law to discharge the debtor's obligations shall effect settlements with creditors in compliance with the register of creditors' claims.

The amount of creditors' claims shall be determined in the manner set out in Article 100 of the present Federal Law.

The register of creditors' claims shall be subject to closure upon the expiration of two months after the publication of information on the debtor's having been declared bankrupt and winding-up procedure having been commenced.

**2.** The claims of creditors of each priority ranking category shall be met after the meeting in full of the claims of creditors of the preceding priority ranking category, except for the cases specified in the present Federal Law for meeting the creditors' claims secured by the pledge/mortgage of the debtor's property.

If funds cannot be remitted into a creditor's account (deposit) money payable thereto shall be deposited by the winding-up receiver with a notary at the debtor's location, and notice shall be given to the creditor to this effect.

In the event the funds deposited with a notary are not claimed by the creditor within three years after they are deposited with the notary, the said funds shall be remitted by the notary to the federal budget.

**3.** If the debtor's funds are insufficient to meet the claims of creditors of a specific priority ranking category the funds shall be distributed among the creditors of this category pro rata to the amounts of their claims included in the register of creditors' claims, except as otherwise envisaged by the present Federal Law.

**4.** The claims of bankruptcy creditors and/or authorised bodies declared after the closing of the register of creditors' claims shall be met at the expense of the debtor's property remaining after the creditors' claims included in the register of creditors' claims have been met.

Settlements with creditors relating to such claims shall be effected by the winding-up receiver in the manner established by the present article.

Rules of this Item shall not be applied to claims stated before expiration of 6 months from the date of closure of the register of creditors' claims, if a court act or an act of other authorised state body, obligatory for revelation of the debt pursuant to the legislation of the Russian Federation, in respect of which the claims are stated, has not been issued or has not entered into force as of the day of closure of the register of creditors' claims. The claims shall be deemed stated within the set term.

*[Unofficial translation from Russian]*

**5.** The claims of first priority ranking creditors declared before the completion of settlements with all the creditors (in particular, after the closure of the register of creditors' claims) but after the completion of settlement with the first priority ranking creditors which declared their claims within the established term shall be met before the meeting of the creditors of lower categories. The meeting of creditors of lower categories shall be suspended until the time when the said claims of first priority ranking creditors have been met.

If such claims were declared before the completion of settlements with first priority ranking creditors, they shall be met after the completion of settlements with first priority ranking creditors which declared their claims within the established term, if there are sufficient funds for meeting them.

The claims of second priority ranking creditors declared before the completion of settlements with all the creditors (in particular, after the closure of the register of creditors' claims) shall be met in accordance with the procedure similar to the one established by Paragraphs 1 and 2 of the present item.

**6.** If as of the time of commencement of settlements with the creditors of a specific priority ranking category there are disagreements between the winding-up receiver and creditor in respect of a declared claim of the creditor which are scrutinised by the commercial court the winding-up receiver shall put aside funds in an amount sufficient for meeting the claims of the creditor on a pro rata basis.

The interest amounts as the fee of the winding-up receiver payable in accordance with Article 20.6 of the present Federal Law shall be reserved on the debtor's account and paid out simultaneously with the end of settlements of accounts with creditors.

**7.** The claims of third priority ranking creditors declared within the set term but established by the commercial court after the commencement of repayment of claims of third priority ranking creditors shall be met in the amount envisaged for repayment of third priority ranking creditors' claims.

**8.** "Settled creditors' claims" shall mean claims met and also claims in respect of which a release-money agreement has been reached or an announcement of termination of obligation by set-off has been made by the winding-up receiver if there exist other grounds for the discharge of the obligation.

Paragraph 2 has lost force from September 1, 2016.

Termination of obligation by set-off shall be allowed only if priority ranking is observed and if creditors' claims are met on a pro rata basis.

**9.** Paragraph 1 has lost force from September 1, 2016.

Settlement of creditors' claims by means of concluding an obligation novation agreement is prohibited in winding-up procedure.

The claims of creditors not settled due to insufficiency of the debtor's property shall be deemed settled. Also settled shall be deemed the claims of creditors not recognised by the winding-up receiver if the creditor has not applied to a commercial court or if such claims have been declared by the commercial court as lacking grounds.

**10.** The winding-up receiver shall enter information on the settlement of creditors' claims in the register of creditors' claims.

**11.** The creditors whose claims have not been met in full during winding-up shall be entitled to demand recovery of the debt by collection of the debtor's property that has been illegally obtained by third persons, in the amount of the claims that remained outstanding in the bankruptcy case. If there is no such property or if at the application of the third person the court is entitled to meet the claims of these creditors by means of collecting the amount without a need for collecting the debtor's property. The said claim may be presented within the term set by a federal law.

**12.** Abrogated.

**13.** In respect of the claims resulting from financial agreements under which the amount of obligations is estimated in the procedure provided for by Article 4.1 of this Federal Law the provisions of this article shall only apply to the creditors' claims concerning net obligations.

**Article 142.1.** Satisfaction of Creditors' Claims through a Payoff

**1.** Satisfaction of claims of creditors by way of a payoff shall only be allowed in respect of assets of the debtor that is a legal entity not sold and not transferred through the procedure established by this Federal Law, if there are no outstanding claims belonging to the current payments and claims of the first or second priority.

**2.** A payoff can only be assets of the debtor not encumbered by pledge.

**3.** Satisfaction of creditors' claims by way of a payoff shall only be allowed on condition of observance of priority and

*[Unofficial translation from Russian]*

proportionality of satisfaction of creditors' claims, taking into account provisions of Items 12 and 13 of this Article.

**4.** Satisfaction of creditors' claims by way of a payoff shall be allowed upon decision of the meeting of creditors or the committee of creditors. Meeting of creditors or committee of creditors shall approve the proposal of the bankruptcy manager regarding the procedure for making a payoff that shall contain information on composition of the debtor's assets, their value, procedure and terms for directing by creditors of their consent to satisfaction of claims by way of a payoff, procedure for distribution of the debtor's assets among creditors, if the same assets are claimed by several creditors and on the procedure for conclusion of an agreement between the bankruptcy manager and the creditor (creditors), according to which the payoff is made (hereinafter - the payoff agreement).

**5.** Value of the debtor's assets proposed to be transferred to the creditors as a payoff shall be determined by the meeting of creditors or the committee of creditors. Such value shall not be less than 50 percent of the minimum sales price of the debtor's assets specified in the announcement of trade for sale of the debtor's assets through a public offer, where the debtor's assets were not sold.

**6.** For transfer of the debtor's assets to the creditors as a payoff, the bankruptcy manager shall direct to the related creditors a proposal for satisfaction of their claims by way of a payoff, approved by the meeting of creditors or the committee of creditors.

**7.** If the number of creditors whose claims are not satisfied exceeds 50, a due notification of creditors of the proposal to satisfy them by way of a payoff shall be acknowledged inclusion of such proposal into the unified federal register of information on bankruptcy within 5 business days from the day of approval by the meeting of creditors or the committee of creditors of the proposal of the bankruptcy manager regarding procedure for making a payoff to the creditors.

**8.** Within the term established by Item 7 of this Article, the bankruptcy manager shall be obliged to include the text of the proposal for satisfaction of creditors' claims by way of a payoff into the unified federal register of information on bankruptcy.

**9.** The proposal cited in Item 4 of this Article shall contain:

1) name, location of the debtor and its details;

2) name, value of the debtor's assets defined in accordance with this Article that is offered for transfer to the creditors as a payoff and other information on assets of the debtor;

3) procedure for familiarization of creditors with the assets of the debtor;

4) information on bankruptcy manager and the mail address;

5) term for direction by creditors of information on their consent to satisfaction of their claims by way of a payoff that shall not be less than 30 business days from the day of sending by the bankruptcy manager of a proposal for satisfaction of creditors' claims by way of a payoff or from the day of inclusion of the proposal for satisfaction of the creditors' claims by way of a payoff to the unified federal register of information on bankruptcy.

**10.** Assets of the debtor shall be transferred as a payoff to the creditors that directed their consents to the bankruptcy manager within the term set in the proposal of the bankruptcy manager.

**11.** The consent of a creditor to satisfaction of its claim by way of a payoff shall contain information on assets of the debtor claimed by such creditor.

**12.** A creditor that failed to direct its consent to satisfaction of its claim by way of a payoff to the bankruptcy manager within the set term and/or failed to give information on assets of the debtor shall be deemed refused satisfaction of its claim by way of a payoff.

**13.** Assets of the debtor provided as a payoff shall be distributed among the creditors that directed their consents to the bankruptcy manager for satisfaction of their claims by way of a payoff, by order of priority established by this Federal Law, proportionally to the amount of claims of such creditors to be satisfied by way of a payoff.

Debtor's assets, in respect of which the consents were received for satisfaction of claims by way of a payoff can be transferred to the creditors that directed the consents, into a common share ownership.

**14.** If the legislation of the Russian Federation envisages the possibility of satisfaction of claims of a creditor or an authorised body only in monetary form, the obligatory condition of the payoff agreement concluded with the creditor of the same or the subsequent priority shall be charging of the amount of funds on a special bank account of the debtor that is sufficient for satisfaction of claims of the creditors or the authorised body, whose satisfaction is envisaged by the legislation of the Russian Federation only in monetary form, proportionally to the amount of claims to be satisfied of the creditor that concludes the payoff agreement.

The bankruptcy manager shall open a separate account for the debtor in the credit institution, that is only intended for

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 14 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 136
of 317                                    *[Unofficial translation from Russian]*

satisfaction of claims of the creditors or the authorised body that can, in accordance of the legislation of the Russian Federation, be satisfied only in monetary form (special bank account of the debtor).

The agreement of the special bank account shall specify that the funds on the special bank account of the debtor can only be written down for satisfaction of claims of the creditors or the authorised body that can be satisfied only in monetary form, according to the legislation of the Russian Federation.

Funds shall be written down from the special bank account of the debtor by order of the bankruptcy manager only for satisfaction of claims of the creditors or the authorised body through the procedure envisaged by paragraphs 2 and 3 of this Item, and shall not be written down on other obligations of the debtor (including its current obligations). A writing down shall be performed within 10 days from the day of execution of the payoff agreement concluded with the creditor that deposited the funds for satisfaction of such claims.

**15.** Provisions of this Article shall not be applied to cases of transfer of the debtor's assets through the procedure envisaged by Articles 201.10, 201.11 and 201.15-1 of this Federal Law.";

**Article 143.** Monitoring the Activity of a Winding-up Receiver

**1.** The winding-up receiver shall present a report to a creditors' meeting (creditors' committee) on his/her activity, information on the debtor's financial state and on the debtor's property as of the time of commencement of the winding-up proceedings and within the winding-up period, and also other information at least once three months, unless otherwise established by a creditors' meeting.

**2.** The winding-up receiver's report shall contain information on:

the debtor's estate that has been formed, in particular, on the progress and results of stock-taking of the debtor's property, on the progress and results of appraisal of the debtor's property in the event of recruiting an appraiser for assessment of such property;

the amounts of money received in the debtor's principal account, and on the sources of these receipts;

the progress of sale of the debtor's property, complete with an indication of receipts from the sale of property;

the quantity and the sum total of claims for debt collection presented by the winding-up receiver to third persons;

the measures taken for preserving the debtor's property and for revealing and demanding the debtor's property from third persons' possession;

the measures taken for declaring the debtors' transactions as invalid and also for declaring a refusal to perform the debtor's contracts;

keeping the register of creditors' claims complete, with an indication of the sum total of the creditors' claims included in the register, with such data for each priority ranking category being indicated separately;

the number of the debtor's employees who continue their work within the winding-up period, and also on the number of the debtor's employees dismissed (laid off) within the winding-up period;

the work performed by the winding-up receiver in terms of closing down the debtor's accounts and on the results of such work;

the sum of the debtor's current liabilities with an indication of the proceeding applicable in a debtor's bankruptcy case in the course of which they came into being, their purpose, grounds for their occurrence, the amount of the liability and of the outstanding balance;

holding as subsidiarily liable the third persons which are subsidiarily liable under Russian law for the debtor's obligations in connection with the debtor's being made bankrupt;

other information in the course of winding-up proceedings of which the nature shall be determined by the winding-up receiver and also by the demands of a creditors' meeting (the creditors' committee) or the commercial court.

**3.** If the commercial court so demands, the winding-up receiver shall provide it with all the information concerning the winding-up procedure, in particular, a report on his/her activity.

**Article 144.** Dismissal of a Winding-up Receiver

**1.** The winding-up receier may be dismissed by the commercial court from executing the duties vested therein in the bankruptcy case:

on his/her application;

on a petition to the self-regulating organisation of qualified receivers in which he/she is member sent under a decision

*[Unofficial translation from Russian]*

of a collective managerial body of a self-regulating organisation of qualified receivers, under the petition of the self-regulating organisation of qualified receivers a member of which he is, in the case of the withdrawal of the qualified receiver from the self-regulating organisation or the petition of the self-regulating organisation of the qualified receiver taken by such an organisation according to Item 2 of Article 20.5 of this Federal Law;

in the other cases envisaged by the present Federal Law.

**2.** When the winding-up receiver is dismissed from his/her duties, the commercial court shall approve another winding-up receiver in the manner established by Item 1 of Article 127 of the present Federal Law.

**3.** The ruling of a commercial court on dismissal of a winding-up receiver from his/her duties as a winding-up receiver shall take effect immediately and it shall be subject to appeal.

**Article 145.** Removal of a Winding-up Receiver

**1.** The winding-up receiver may be removed by the commercial court:

at the petition of a creditors' meeting (creditors' committee) in the event of his/her defaulting on or improperly performing the duties vested therein;

in connection with satisfaction by the commercial court of a complaint of a person deemed a party to the bankruptcy case against the winding-up receiver's default on or improper performance of the duties vested therein, if such a default on or improper performance has violated the rights or legal interests of the person which filed the complaint and has also caused or could cause losses to the debtor or the debtor's creditors;

if circumstances have been discovered which prevented the approval of the person as a winding-up receiver and also in case when such circumstances have occurred after the person was approved as a winding-up receiver;

on the grounds of the petition of the self-regulating organisation of insolvency administrators in the case of expulsion of the insolvency administrator from the self-regulating organisation in connection with infringement by the insolvency administrator of membership conditions of the self-regulating organisation, infringements by the insolvency administrator of requirements of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of professional work;

on the grounds of a petition of the self-regulating organisation of insolvency administrators in the case of application to the insolvency administrator of administrative punishment in the form of disqualification for the commission of an administrative offence.

Simultaneously with the removal of the winding-up receiver the commercial court shall approve another winding-up receiver in the manner established by Item 1 of Article 127 of the present Federal Law.

**2.** The ruling of a commercial court on the removal of a winding-up receiver shall take effect immediately.

**3.** The ruling of a commercial court on the removal of a winding-up receiver shall be subject to appeal.

**Article 146.** Possibility of Transition to External Administration

**1.** If financial rehabilitation and/or external administration proceedings have not been instituted in respect of the debtor and if within the winding-up period the winding-up receiver began to have sufficient grounds, in particular grounds backed up by financial analysis data, to believe that the debtor's solvency can be restored, the winding-up receiver shall convene a creditors' meeting within one month after the discovery of these circumstances to examine the issue of filing a petition with the commercial court for terminating the winding-up procedure and switching to external administration proceedings.

**2.** The decision of a creditors' committee to file a petition with the commercial court for terminating winding-up procedure and switching to external administration shall be adopted by a majority vote of the total number of the creditors whose claims are included in the register of creditors' claims and have not been repaid as of the date of the creditors' meeting which is considering the issue of making such a decision.

The decision of a creditors' meeting to file a petition with the commercial court for terminating winding-up procedure and switching to external administration shall contain a proposed external administration term and the desirable qualifications of the receiver.

On the petition of the creditors' meeting for terminating winding-up procedure and switching to external administration, the commercial court may issue a ruling on terminating the winding-up procedure and switching to external administration.

The said ruling may only be issued if the debtor has the property required to pursue economic activity on its own.

**3.** If the commercial court issues a ruling on terminating winding-up procedure and switching to external administration:

*[Unofficial translation from Russian]*

the limitations imposed on the debtor's managerial bodies in compliance with the present chapter shall be terminated;

a register of creditors' claims shall be opened;

the creditors' claims relating to monetary obligations and mandatory payments that have emerged within the winding-up period shall be deemed current from the date of the ruling on switching to external administration;

the creditors' claims relating to the obligations which under the terms of the obligation were not due as of the time of winding-up commencement shall also be deemed current from the date of the ruling on switching to external administration;

the claims met within the winding-up period shall be deemed settled and shall not be restorable.

Interest shall be accrued at the rate and in the manner established by Item 2 of Article 95 of the present Federal Law on the claims of creditors, authorised bodies relating to the debtor's monetary obligations and mandatory payments that occurred prior to the decision whereby the debtor was declared bankrupt and winding-up procedure was commenced.

**4.** If, as of the date of issuance by the commercial court of a ruling on a switch to external administration less than three months have passed since the date of the winding-up proceedings commencement, the passage of the term established by Item 1 of Article 102 of the present Federal Law shall be suspended until the time when the receiver is approved.

**Article 147.** The Winding-up Receiver's Report on the Results of Winding-Up

**1.** Upon the completion of settlements with creditors and also in the event of termination of proceedings in the bankruptcy case in the instances envisaged by Article 57 of the present Federal Law the winding-up receiver shall lodge a report with the commercial court on the results of the winding-up procedure.

**2.** The following shall be attached to the winding-up receiver's report:

documents confirming the sale of the debtor's property;

the register of creditors' claims complete with an indication of the amount of settled creditors' claims;

documents confirming the fact that creditors' claims have been settled;

a document confirming the submission to the territorial body of the Pension Fund of the Russian Federation of information in accordance with Subitems 1 - 8 of Item 2 of Article 6 and Item 2 of Article 11 of Federal Law No. 27-FZ of April 1, 1996 on Individual (Personified) Registration in the System of Obligatory Pension Insurance.

**3.** The winding-up creditors and empowered bodies shall be notified by the winding-up receiver of the fact that the report on the results of the winding up has been sent.

**Article 148.** Assets of the Debtor not Sold in the Course of Bankruptcy Proceedings or Remaining after Completion of Settlements with Creditors

**1.** The owner of assets of the debtor that is a unitary enterprise, a founder (participant) of the debtor acknowledged bankrupt through the procedure established by this Federal Law shall have the right to obtain the debtor's assets in the following cases:

1) in case of refusal of creditors to accept the debtor's assets for satisfaction of their claims, that had been offered for sale but were not sold in the course of the bankruptcy proceedings (hereinafter - the unsold assets);

2) the debtor's assets remaining after completion of settlements with its creditors (hereinafter - the remaining assets).

**2.** If the debtor has unsold or remaining assets, the bankruptcy manager shall direct to the owner of assets of the debtor that is a unitary enterprise or to founders (participants) of the debtor a notification of their right to obtain such assets or include a statement on availability of such assets of the debtor and the right of owner of assets of the debtor that is a unitary enterprise to obtain the assets into the unified federal register of information on bankruptcy.

Transfer of the unsold or remaining assets and their distribution among owner of assets of the debtor that is a unitary enterprise and the founders (participants) of the debtor shall comply with the priority and the procedure established by federal laws, considering the specifics envisaged by this Federal Law.

**3.** If there is no application of the owner of assets of the debtor that is a unitary enterprise and the founders (participants) of the debtor for transfer of the rights to claim of the debtor, the rights to claim shall be written off from the debtor by the bankruptcy manager in accordance with this Article.

Assets shall be written down from the debtor on the basis of a motivated opinion of the bankruptcy manager, subjected to inclusion in the report of the latter.

Written down from the debtor in accordance with the procedure of this Item can also be the assets not revealed by the bankruptcy manager, on condition that the bankruptcy manager has taken measures for their revelation.

*[Unofficial translation from Russian]*

**4.** Statement of the owner of assets of the debtor that is a unitary enterprise and the founders (participants) of the debtor of the intent to obtain the unsold or remaining assets shall be directed to the bankruptcy manager in writing during one month from the date of direction of a notification of the right to obtain such assets by it or inclusion of the statement in the unified federal register of information on bankruptcy in accordance with Item 2 of this Article, and shall include the following:

1) information on the owner of assets of the debtor that is a unitary enterprise and the founder (participant) of the debtor;

2) surname, name, patronymic, date of birth, detail of the identification number of the applicant, mail address, details of the bank account (if any) for remittance of funds (for individuals);

3) name, location, details of the bank account for remittance of funds (for legal entities);

4) indication that the applicant is the owner of assets of the debtor that is a unitary enterprise or the founder (participant) of the debtor, and the state of will for obtaining of the unsold or remaining assets.

**5.** Attached to the statement of the owner of assets of the debtor that is a unitary enterprise or the founder (participant) of the debtor of the intent to obtain the unsold or remaining assets shall be copies of the documents duly certified and confirming the right of the applicant to obtain such assets.

**6.** The bankruptcy manager shall consider the statement of the owner of assets of the debtor that is a unitary enterprise or the founder (participant) of the debtor of the intent to obtain the unsold or remaining assets within 10 business days from the day of receipt of the statement. Following the results of consideration of the statement, the bankruptcy manager shall direct a notification to the applicant of the amount of share in the assets to be transferred to the owner of assets of the debtor that is a unitary enterprise or the founder (participant) of the debtor. If the applicant is not the owner of assets of the debtor that is a unitary enterprise or the founder (participant) of the debtor as of the date of consideration of the statement, the bankruptcy manager shall direct a notification of a refusal to transfer the assets.

Unsold or remaining assets can be transferred to the owner of assets of the debtor that is a unitary enterprise or the founder (participant) of the debtor that directed the statement in accordance with Item 4 of this Article, into common shared ownership.

**7.** Any objections of the owner of assets of the debtor that is a unitary enterprise or the founder (participant) of the debtor against the refusal to transfer the unsold or remaining assets to them can be filed with the commercial court within 5 business days from the day of receipt by the owner of assets of the debtor that is a unitary enterprise or the founder (participant) of the debtor of the notification of the bankruptcy manager of the refusal to transfer the assets.

Objections of the owner of assets of the debtor that is a unitary enterprise or the founder (participant) of the debtor shall be considered by the commercial court using the procedure established by Article 60 of this Federal Law.

**8.** If there is no statement of the owner of assets of the debtor that is a unitary enterprise or the founder (participant) of the debtor on the rights to the unsold or remaining assets or it is impossible to transfer the assets to the owner of assets of the debtor that is a unitary enterprise or the founder (participant) of the debtor, the bankruptcy manager shall direct a statement of transfer of the assets signed by him to local authorities at the location of the debtor's assets or to the related federal executive authority.

Assets of the debtor that cannot be owned by creditors or local authorities by virtue of the federal law shall be transferred into the federal ownership.

**9.** Not later than within 30 days from the date of receipt of the statement of transfer of the debtor's assets to the local authority or in the cases envisaged by Item 8 of this Article, the federal executive authority shall accept the assets cited in Item 8 of this Article and bear all expenses of its maintenance.

**10.** In case of a refusal or evasion of the local authority of in the cases of refusal of the federal executive authority envisaged by Item 8 of this Article to accept the assets cited in Item 8 of this Article, the bankruptcy manager shall be obliged to refer to the commercial court that carries out the proceedings on the bankruptcy case, with an application for coercion of the local authority or the federal executive authority to accept the assets.

**11.** If there is disagreement related to the transfer of assets cited in Item 8 of this Article between the bankruptcy manager and the local authority or with the federal executive authority in the cases envisaged by Item 8 of this Article, the local authority or the federal executive authority in the cases envisaged by Item 8 of this Article, shall be obliged to direct a statement of disagreements to the bankruptcy manager not later than within 14 days from the date of receipt of the notification of the bankruptcy manager.

In case of a rejection of the statement, the bankruptcy manager shall be obliged to apply for consideration of the disagreements to the commercial court that carries out the proceedings on the bankruptcy case.

**12.** In the course of consideration of the application cited in Item 11 of this Article, the commercial court shall

determine the terms for transfer of the assets cited in Item 8 of this Article, in respect of which there were disagreements, to the local authority or to the Russian Federation.

**13.** Following the results of consideration of the applications cited in Items 10 and 11 of this Article, the commercial court shall issue a ruling.

From the date of issuance of the ruling of the commercial court following the results of consideration of the applications of the bankruptcy manager, expenses for maintenance of the assets cited in Item 8 of this Article shall be borne by the related budgets.

**14.** The ruling issued by the commercial court by the results of consideration of applications of the bankruptcy manager cited in Items 10 and 11 of this Article shall be executed immediately.

Non-execution or delayed execution of the ruling of the commercial court shall not be the ground for a refusal for the commercial court to issue a ruling on completion of the bankruptcy proceedings.

**15.** The ruling of the commercial court issued by the results of consideration of applications of the bankruptcy manager cited in Items 10 and 11 of this Article can be contested.

**16.** If there are remaining assets whose value is not less than the minimum authorised capital envisaged by the legislation of the Russian Federation for legal entities of the respective form of incorporation, the managing body of the debtor authorised to take decisions on its liquidation shall have the right to take a decision to apply to the commercial court considering the bankruptcy case, for termination of proceedings on the bankruptcy case in accordance with paragraph 7 of Item 1 of Article 57 of this Federal Law.

### Article 149. Terminating a Winding-Up Procedure

**1.** After the commercial court has considered the report of a winding-up receiver on the results of winding-up procedure the commercial court shall issue a ruling on completing the winding-up procedure, and in the case of settlement of creditors' claims in compliance with Article 125 of the present Federal Law, a ruling on terminating proceedings in the bankruptcy case.

The ruling on completing a winding-up procedure shall take effect immediately.

The ruling on terminating proceedings in a bankruptcy case shall take effect immediately.

If the event of issuance of a ruling on terminating proceedings in a bankruptcy case the commercial court decision to declare the debtor bankrupt and commence winding-up procedure shall not be subject to further performance.

**2.** An commercial court after the expiry of 30 but within 60 days after issuance of a ruling by a commercial court on completing a winding-up procedure shall send the cited ruling to the body in charge of the state registration of legal persons by registered mail with confirmation of delivery.

**3.** The ruling of a commercial court on completing a winding-up procedure shall be deemed a ground for making an entry on liquidation of the debtor in the comprehensive state register of legal persons.

A relevant entry shall be made in this register within five days after the filing of the said commercial court's ruling with the body in charge of state registration of legal persons.

The ruling of a commercial court on completing winding-up procedure may be appealed before the date when an entry on liquidation of the debtor is made in the state register of legal persons.

An appeal of the commercial court's ruling on completion of the winding up shall cause suspension of the performance of the ruling.

If a commercial court has taken on an appeal against the commercial court's ruling on completing a winding-up procedure, the commercial court shall send the ruling on taking on the appeal to the body engaged in the state registration of legal entities by registered mail with confirmation of delivery, as well as in electronic form via public information telecommunication networks, in particular the Internet, within the working day following the date when such ruling is issued. The judicial act adopted on the basis of the results of considering an appeal against the ruling of a commercial court on completing a winding-up procedure shall be sent to the body engaged in the state registration of legal entities by registered mail with confirmation of delivery, as well as in electronic form via public information telecommunication networks, in particular the Internet, within the working day, following the date when such judicial act is issued.

**4.** As of the date when the entry of liquidation of the debtor is made in the comprehensive state register of legal persons, the winding-up procedure shall be deemed completed.

## Chapter VIII. The Amicable Agreement

### Article 150. General Provisions Concerning the Conclusion of an Amicable Agreement

*[Unofficial translation from Russian]*

**1.** At any stage of consideration of a bankruptcy case by a commercial court, the debtor, the debtor's bankruptcy creditors and authorised bodies shall be entitled to conclude an amicable agreement.

**2.** The decision to conclude an amicable agreement on the part of bankruptcy creditors and authorised bodies shall be adopted by a creditors' meeting. The decision of the creditors' meeting to conclude an amicable agreement shall be made by a majority vote of the total number of votes of the bankruptcy creditors and authorised bodies in compliance with the register of creditors' claims and it shall be deemed passed if voted for by all the creditors relating to the obligations secured by a pledge/mortgage of the debtor's property.

The powers of a representative of a bankruptcy creditor and a representative of an authorised body for voting on the issue of conclusion of an amicable agreement shall be expressly stated in his/her power of attorney, or in another document where it is provided for by an international treaty made by the Russian Federation or federal law.

A decision on conclusion of an amicable agreement from the part of an individual shall be taken by the individual and from the part of the debtor that is a legal entity - by the head of the debtor, acting head of the debtor, external manager or bankruptcy manager.

**3.** The following third persons may take part in an amicable agreement:

those assuming the rights and duties envisaged by the amicable agreement.

**4.** The amicable agreement shall be approved by a commercial court.

While approving an amicable agreement the commercial court shall issue a ruling on approval of the amicable agreement which comprises an indication of termination of proceedings in the bankruptcy case. If the amicable agreement is concluded within the winding-up period the ruling on approval of the amicable agreement shall comprise an indication that the decision whereby the debtor has been declared bankrupt and winding-up was commenced shall not be performed.

**5.** For the debtor, bankruptcy creditors and authorised bodies, as well as third persons deemed party to the amicable agreement, the amicable agreement shall enter into force from the date when it is approved by the commercial court, and it shall be binding on the debtor, bankruptcy creditors, authorised bodies and third persons deemed party to the amicable agreement.

**6.** A unilateral refusal to perform an amicable agreement that has become final is prohibited.

**Article 151.** The Features of Conclusion of an Amicable Agreement During Supervision

**1.** The decision to conclude an amicable agreement on the part of the debtor shall be adopted by the debtor being an individual, by the head of the debtor being a legal person or by the acting head thereof.

**2.** If for the debtor an amicable agreement is a transaction which under federal laws and/or the debtor's constitutive documents is concluded under a decision of the debtor's managerial bodies or is subject to agreement upon (approval) with/by the debtor's managerial bodies the decision to conclude the amicable agreement may be adopted after the adoption of a relevant decision by the debtor's managerial bodies or after a relevant agreement (approval) has been secured.

**3.** The amicable agreement shall not be subject to approval by the interim receiver.

**4.** When an amicable agreement is concluded with the participation of third persons that are interested persons in relation to the debtor, interim receiver or bankruptcy receiver, the creditors' meeting shall be informed on the presence and the nature of the interest in conclusion of the transaction, and the amicable agreement shall contain information to the effect that the amicable agreement is a transaction in the completion whereof there is an interest, and it shall expressly state the nature of the interest.

**5.** The provisions of Item 2 of the present article shall not prevent the creditors' meeting from adopting in the name of bankruptcy creditors and authorised bodies a decision to conclude an amicable agreement.

**6.** Where an amicable agreement is concluded during supervision it shall extend to the claims of bankruptcy creditors' authorised bodies included in the register of creditors' claims as of the date when the creditors' meeting was held that adopted the decision to conclude the amicable agreement.

**Article 152.** The Features of Conclusion of an Amicable Agreement During Financial Rehabilitation

**1.** The decision to conclude an amicable agreement on the part of the debtor shall be adopted by the head of the debtor being a legal person or by the acting head thereof.

**2.** If, for the debtor, the amicable agreement is a transaction which, under federal laws and/or the debtor's constitutive documents, is concluded under a decision of the debtor's managerial bodies, or is subject to agreement upon with the managerial bodies of the debtor, the decision to conclude the amicable agreement in the name of the debtor may be adopted after the adoption of a relevant decision by the debtor's managerial bodies or after a relevant agreement is secured.

**3.** The amicable agreement shall not be subject to the approval of the administrative receiver.

*[Unofficial translation from Russian]*

**4.** When an amicable agreement is concluded with the participation of third persons which are interested persons in relation to the debtor, administrative receiver or bankruptcy creditor the creditors' meeting shall be informed of the availability and the nature of the interest in conclusion of the transaction and the amicable agreement shall comprise information to the effect that the amicable agreement is a transaction in the conclusion whereof there is an interest and it shall expressly state the nature of the interest.

**5.** The provisions of Item 2 of the present article shall not prevent the creditors' meeting from adopting a decision to conclude an amicable agreement in the name of the bankruptcy creditors and authorised bodies.

**6.** Where an amicable agreement is concluded during financial rehabilitation the amicable agreement shall extend to the claims of bankruptcy creditors and authorised bodies included in the register of creditors' claims as of the date of the creditors' meeting that adopted the decision to conclude the amicable agreement.

**Article 153.** The Features of Conclusion of an Amicable Agreement During External Administration

**1.** The decision to conclude an amicable agreement on the part of the debtor shall be adopted by the receiver.

**2.** If, for the debtor, an amicable agreement is a transaction which under federal laws and/or the debtor's constitutive documents is concluded under a decision of the debtor's managerial bodies or is subject to agreement upon (approval) with/by the debtor's managerial bodies, the decision to conclude the amicable agreement in the name of the debtor may be adopted after the adoption of a relevant decision by the debtor's managerial bodies or after a relevant agreement (approval) has been secured.

**3.** When an amicable agreement is concluded with the participation of third persons that are interested persons in relation to the debtor, receiver or bankruptcy creditor, the creditors' meeting shall be informed of the presence and the nature of the interest in conclusion of the transaction and the amicable agreement shall comprise information to the effect that the amicable agreement is a transaction in the conclusion whereof there is an interest, and it shall expressly state the nature of the interest.

**4.** Where an amicable agreement is concluded during external administration, the amicable agreement shall extend to the claims of bankruptcy creditors and authorised bodies included in the register of creditors' claims as of the date when the creditors' meeting was held that adopted the decision to conclude the amicable agreement.

**5.** The provisions of Item 2 of the present article shall not prevent the creditors' meeting adopting, in the name of the bankruptcy creditors and authorised bodies, a decision to conclude an amicable agreement.

**Article 154.** The Features of Conclusion of an Amicable Agreement During Winding-Up Proceedings

**1.** The decision to conclude an amicable agreement on the part of the debtor shall be adopted by the winding-up receiver.

**2.** If for the debtor an amicable agreement is a transaction which under federal laws and/or the debtor's constitutive documents is concluded under a decision of the debtor's managerial bodies or is subject to agreement upon (approval) with/by the debtor's managerial bodies the decision to conclude the amicable agreement in the name of the debtor may be adopted after the adoption of a relevant decision by the debtor's managerial bodies or after a relevant agreement (approval) has been secured.

**3.** When an amicable agreement is concluded with the participation of third persons which are interested persons in relation to the debtor, a winding-up receiver or winding-up creditor, the amicable agreement shall comprise information to the effect that the amicable agreement is a transaction in the conclusion whereof there is an interest and it shall expressly state the nature of the interest.

**4.** Where an amicable agreement is concluded within winding-up proceedings, the amicable agreement shall extend to all the claims of winding-up creditors and authorised bodies included in the register of creditors' claims as of the date when the creditors' meeting was held that adopted the decision to conclude the amicable agreement.

**Article 155.** The Form of an Amicable Agreement

**1.** The amicable agreement shall be concluded in writing.

**2.** For the debtor, the amicable agreement shall be signed by the person which under the present Federal Law adopted the decision to conclude it. In the name of the bankruptcy creditors and authorised bodies the amicable agreement shall be signed by a representative of a creditors' meeting or by a person authorised to do so by a creditors' meeting.

**3.** If third persons are party to the amicable agreement it shall be signed for their part by themselves or by their authorised representatives.

**Article 156.** The Content of an Amicable Agreement

**1.** An amicable agreement shall contain information on the procedure and term for discharging the debtor's obligations in monetary form.

*[Unofficial translation from Russian]*

On the consent of a specific bankruptcy creditor and/or authorised body the amicable agreement may contain provisions for terminating the debtor's obligations by means of release-money, exchange of claims for participatory shares in the debtor's authorised capital, shares, bonds convertible into shares or other securities, obligation novation, forgiveness of debt or by other means envisaged by a federal law, unless such means of terminating obligations violates the rights of the other creditors whose claims are included in the register of creditors' claims.

The amicable agreement may contain provisions concerning changes in the due dates of and procedure for making the mandatory payments included in the register of creditors' claims.

, The terms of an amicable agreement concerning the repayment of a debt owing as a mandatory payment levied under the legislation on taxes and fees shall not be inconsistent with the provisions of the legislation on taxes and fees.

Meeting bankruptcy creditors' claims in non-monetary form shall not create an advantage for such creditors over the creditors whose claims are satisfied in monetary form.

**2.** Interest shall be accrued on the sum of creditors' claims for the money obligations subject to repayment in terms of money under an amicable agreement, and also of the claims addressed to the debtor for compulsory payments, at the re-financing rate established by the Central Bank of the Russian Federation as of the date of confirmation of the amicable agreement by the commercial court on the basis of the outstanding sum of the claims in accordance with the creditors' claim repayment schedule under the amicable agreement.

On the creditors' consent the amicable agreement may establish a lower interest rate, a shorter interest accrual term or relief from the duty to pay interest.

**3.** The terms of an amicable agreement for the bankruptcy creditors and authorised bodies which have voted against the conclusion of the amicable agreement or which have not taken part in the voting shall not be worse than those for the bankruptcy creditors and authorised bodies which have voted for it.

Except as otherwise envisaged by the amicable agreement, the pledge/mortgage on the debtor's property securing the debtor's performance of the debtor's obligations shall remain effective.

**4.** A bankruptcy creditor and/or authorised body which has voted for the conclusion of an amicable agreement, the debtor's promoters (stockholders), or the owner of property of the debtor being a unitary enterprise, shall be entitled to perform in full and in monetary form the debtor's obligations to the bankruptcy creditors or to provide funds to the debtor that are required for meeting the claims of the authorised bodies that have voted against the conclusion of the amicable agreement or which have not participated in the voting, in particular, for the purpose of paying the interest accrued under the present Federal Law as well as the amounts of forfeit money (fines, penalties). In this case the bankruptcy creditor shall accept the performance offered in lieu of the debtor, the debtor shall repay the claims of authorised bodies at the expense of the funds provided thereto, and the rights of the bankruptcy creditor shall be transferred to the person which has discharged the debtor's obligations. The funds provided to the debtor for the purpose of meeting the claims of authorised bodies shall be deemed granted on interest-free loan contract terms with its due date deemed the date of calling.

**Article 157.** Third Persons' Participation in an Amicable Agreement

**1.** Third persons may take part in an amicable agreement if their participation does not infringe on the rights and legal interests of the creditors whose claims are included in the register of creditors' claims and also of the creditors whose claims have emerged after the date of acceptance of the application for declaring the debtor bankrupt and whose claims' due date preceded the date of conclusion of the amicable agreement.

**2.** Third persons taking part in an amicable agreement shall be entitled to provide a suretyship or a guarantee for the debtor's performing obligations under the amicable agreement or otherwise secure the appropriate performance thereof.

**Article 158.** Terms for Approval of an Amicable Agreement by the Commercial Court

**1.** An amicable agreement can only be approved by the commercial court after repayment of debt upon the demand of the creditors of the first and second priority.

**2.** Not earlier than after five days and not later than after 10 days from the date of conclusion of an amicable agreement the debtor, the external manager, the bankruptcy manager or financial administrator shall file an application for approval of the amicable agreement to the commercial court.

**3.** The following shall be attached to the application for approval of the amicable agreement:

text of the amicable agreement;

minutes of the meeting of creditors that took a decision on conclusion of the amicable agreement;

the list of all known bankruptcy creditors and authorised bodies not having stated their claims to the debtor, specifying their addresses and amounts of the debt;

142

*[Unofficial translation from Russian]*

register of creditors' claims;

documents confirming repayment of debt upon demand of creditors of first and second priorities;

decision of the managing bodies of the debtor that is a legal entity, if the necessity of such decision is envisaged by this Federal Law;

written objections of bankruptcy creditors and the authorised bodies that voted against conclusion of the amicable agreement or did not participate in the voting on conclusion of the amicable agreement, if any;

other documents obligatory for provision in accordance with this Federal Law.

**4.** The commercial court shall notify the persons participating in the bankruptcy case of the date of consideration of the application for approval of the amicable agreement. Failure to appear duly of the notified persons shall not impede consideration of the application for approval of the amicable agreement.

**5.** Approval of the amicable agreement can be refused insofar as a representative of the creditor went beyond the authority granted to him by this Federal Law, a power of attorney or authorising documents of the creditor in the course of approval of the amicable agreement, if it has been proven that the person acting from the part of the debtor was aware and could not fail to be aware of limitation of such authority.

**6.** The commercial court shall have the right to approve the amicable agreement even if the person acting on the part of the debtor was aware or could not fail to be aware of the limitation of authority of a representative of the creditor, but the vote of such representative had no influence on taking of the decision to conclude the amicable agreement.

**Article 159.** The Consequences of Approval of an Amicable Agreement by a Commercial Court

**1.** The approval of an amicable agreement by a commercial court during proceedings applicable in a bankruptcy case shall be deemed a ground for terminating proceedings in the bankruptcy case.

**2.** If an amicable agreement is approved by a commercial court during financial rehabilitation the performance of the debt repayment schedule shall be terminated.

If an amicable agreement is approved during external administration the moratorium on meeting creditors' claims shall be terminated.

**3.** If an amicable agreement is approved by a commercial court during winding-up procedure the commercial court decision whereby the debtor is declared bankrupt and winding-up proceedings are commenced shall no longer be subject to performance from the date of approval of the amicable agreement.

**4.** From the date of approval of an amicable agreement by a commercial court the powers of the following persons shall be terminated: interim receiver, administrative receiver, receiver and winding-up receiver.

The person who has been acting as the receiver or winding-up receiver of a debtor being a legal person shall exercise the duties of head of the debtor until the date when the head of the debtor is appointed (elected).

From the date of appointment (election) of the head of the debtor the debtor shall be deemed the procedural successor in respect of actions brought earlier by the qualified receiver.

**5.** From the date of approval of an amicable agreement the debtor or third person shall commence to repay the debts owing the creditors.

**Article 160.** Refusal by the Commercial Court to Approve an Amicable Agreement

**1.** The commercial court shall refuse to approve an amicable agreement in the event of a default on repayment of indebtedness relating to first and second priority ranking creditors' claims.

**2.** Below are the grounds for the commercial court to refuse approving an amicable agreement:

a breach of the procedure for conclusion of an amicable agreement established by the present Federal Law;

the non-observance of the form of an amicable agreement;

a violation of third persons' rights;

a conflict between the terms of the amicable agreement and the present Federal Law, other federal laws and other regulatory legal acts;

the availability of other grounds for deeming transactions null and void according to the civil legislation.

**3.** A ruling shall be issued by the commercial court on the refusal to approve an amicable agreement, such a ruling being subject to appeal.

*[Unofficial translation from Russian]*

**Article 161.** The Consequences of Refusal to Approve an Amicable Agreement

**1.** If a commercial court has issued a ruling on refusal to approve an amicable agreement the amicable agreement shall be deemed unconcluded.

**2.** The issuance of a ruling by a commercial court on refusal to approve an amicable agreement shall not prevent the conclusion of a new amicable agreement.

**Article 162.** Appeal and Review of the Ruling on Approval of an Amicable Agreement

**1.** Upon a complaint of persons deemed party to a bankruptcy case, third persons deemed party to an amicable agreement as well as the other persons whose rights and legal interests have been violated or can be violated by an amicable agreement, the ruling on approval of the amicable agreement may be appealed in accordance with the procedure established by the Arbitration Procedural Code of the Russian Federation.

**2.** The ruling on approval of an amicable agreement may be reviewed if new circumstances have been discovered if:

the circumstances preventing the conclusion of the amicable agreement were not and could not be known to the applicant at the time when the amicable agreement was approved;

the applicant did not take part in the conclusion of the amicable agreement, and however, his/her/its rights and legal interests have been violated by the amicable agreement.

The applicant shall be entitled to file an application for reviewing the ruling on approval of the amicable agreement on the grounds established by the present article within one month after the discovery of the circumstances deemed a ground for reviewing this ruling.

**Article 163.** The Consequences of Revocation of a Ruling on Approval of an Amicable Agreement

**1.** The revocation of a ruling on approval of an amicable agreement shall be deemed a ground for resuming proceedings in the bankruptcy case. The commercial court shall issue a ruling on resumption of proceedings in the bankruptcy case, which shall take immediate effect and shall be subject to appeal.

In the event of resumption of proceedings in a bankruptcy case, the proceeding in which the amicable agreement was concluded shall be instituted in respect of the debtor. Qualified receiver nominees shall be presented to the commercial court in the manner envisaged by Article 45 of the present Federal Law by the self-regulating organisation which presented such a nominee during the said proceeding applicable in a bankruptcy case.

Within one month after the approval of the qualified receiver he/she shall hold a creditors' meeting, which is empowered to adopt the decisions specified in Item 1 of Article 73 of the present Federal Law.

If the ruling whereby an amicable agreement was approved is revoked, and proceedings applicable in a bankruptcy case were instituted in respect of the debtor in a new bankruptcy case, the bankruptcy creditors and authorised bodies that participated in the conclusion of the amicable agreement shall be entitled to declare their claims to the debtor in the new bankruptcy case in the composition and amount envisaged by the present article.

**2.** In the event of revocation of the ruling on approval of an amicable agreement the creditors' claims in respect of which a grace period and/or an installment repayment schedule or a debt rebate has been implemented shall be restored in as much as their outstanding portion is concerned.

**3.** The revocation of the ruling on approval of an amicable agreement shall not entail an obligation on part of first and second priority ranking creditors to refund to the debtor whatever has been received by them as debt repayment.

**4.** In the event of revocation of the ruling on approval of an amicable agreement the commercial court that has decided to resume the proceedings' shall be responsible for publishing an announcement of resumption of proceedings in the debtor's bankruptcy case in the manner established by Article 28 of the present Federal Law.

**5.** The claims of the creditors with which settlements have been effected on an amicable agreement terms which are consistent with the present Federal Law shall be deemed settled. The creditors whose claims have been met in compliance with the amicable agreement terms, whereby the said creditors were entitled to an advantage or whereby the rights and legal interests of other creditors were infringed upon, shall refund whatever they received as performance under the amicable agreement, with the claims of the said creditors being restored in the register of creditors' claims.

The compositions and amounts of creditors' claims and authorised bodies shall be assessed as of the date of resumption of proceedings in the bankruptcy case.

**6.** In as much as it concerns matters not regulated by the present article, the consequences of invalidity of transactions envisaged by the civil legislation shall apply.

**Article 164.** Rescission of an Amicable Agreement

144

**1.** Rescission of an amicable agreement approved by a commercial court by agreement between separate creditors and the debtor is prohibited.

**2.** An amicable agreement may be rescinded by a commercial court in respect of all the bankruptcy creditors and authorised bodies on an application of the bankruptcy creditor or bankruptcy creditors and/or authorised bodies which had as of the time of approval of the amicable agreement at least one quarter of the claims of bankruptcy creditors and authorised bodies to the debtor.

Winding-up creditors or authorised bodies shall be entitled to file an application for rescission of an amicable agreement in respect of all the bankruptcy creditors and authorised bodies in the event of the debtor's defaulting on or significantly violating the terms of the amicable agreement as it concerns the claims of such bankruptcy creditors and authorised bodies having in their entirety at least one quarter of the claims of bankruptcy creditors and authorised bodies to the debtor as of the date of approval of the amicable agreement.

**Article 165.** Procedure for Considering an Application for Rescission of an Amicable Agreement

**1.** Disputes concerning rescission of an amicable agreement shall be considered by the commercial court that heard the bankruptcy case.

**2.** An application for rescission of an amicable agreement shall be signed by the bankruptcy creditor or the bankruptcy creditors or authorised bodies whose claims have not been settled by the debtor on the terms of the amicable agreement and/or in respect of whose claims the debtor has significantly violated the terms of the amicable agreement.

**3.** If the commercial court receives an application for rescission of an amicable agreement, the commercial court shall issue a ruling on arranging a hearing for the purpose of considering the application for rescission of the amicable agreement.

The following shall be notified of the date and time of the court hearing for the purpose of considering the application for rescission of the amicable agreement in respect of a specific creditor: the debtor, the bankruptcy creditor or bankruptcy creditors or the authorised bodies that filed the application for rescission of the amicable agreement, and also the third persons deemed party to the amicable agreement.

A notice of the date and time of the court hearing for the purpose of considering the application for rescission of the amicable agreement in respect of all bankruptcy creditors and authorised bodies shall be served to the persons deemed party to the bankruptcy case as of the date of approval of the amicable agreement and also third persons which participated in the amicable agreement.

**4.** According to the results of consideration of an application for rescission of an amicable agreement approved by a commercial court the court shall issue a ruling which shall take effect immediately and shall be subject to appeal in the manner envisaged by the Arbitration Procedural Code of the Russian Federation.

**5.** In the event of refusal to satisfy an application for rescission of an amicable agreement, the commercial court shall issue a ruling on refusing to rescind the amicable agreement.

**Article 166.** The Consequences of Rescission of an Amicable Agreement in Respect of All Bankruptcy Creditors and Authorised Bodies

**1.** The rescission of an amicable agreement in respect of all bankruptcy creditors and empowered bodies shall be deemed ground for resumption of proceedings in the bankruptcy case, except for cases when the debtor is subjected to the proceedings applicable in a new bankruptcy case.

When proceedings are resumed in the bankruptcy case in respect of the debtor the proceeding which is applied in the bankruptcy case and in the course of which the amicable agreement was concluded shall be instituted. Qualified receiver nominees shall be presented to the commercial court in the procedure established by Article 45 of the present Federal Law by the self-regulating organisation which presented such nominees in the course of said proceeding applicable in the bankruptcy case.

If the amicable agreement is rescinded when the debtor is subjected to the proceedings applicable in a new bankruptcy case then the bankruptcy creditors and authorised bodies whose claims have been settled by means of the amicable agreement are entitled to present their claims to the debtor in the new bankruptcy case in the composition and amount which are envisaged by that amicable agreement.

**2.** In the event of resumption of a bankruptcy case the amount of such creditors' claims shall be determined on the basis of the register of creditors' claims as of the date of approval of the amicable agreement. In this case the claims of bankruptcy creditors and authorised bodies settled during the performance of the amicable agreement in keeping with the present Federal Law shall not be taken into account in the register of creditors' claims, except for the cases specified by the present article.

**3.** The rescission of an amicable agreement in respect of all bankruptcy creditors and authorised bodies shall not entail the duty of the bankruptcy creditors and authorised bodies whose claims have been settled during the performance of the

*[Unofficial translation from Russian]*

amicable agreement to refund to the debtor everything they received during the performance of the amicable agreement.

The bankruptcy creditors and authorised bodies shall refund everything they received during the performance of the amicable agreement if they knew or should have known that their claims were met in breach of the rights and legal interests of the other bankruptcy creditors and authorised bodies, with the said claims being restored to the register of creditors' claims.

**4.** In the event of rescission of an amicable agreement the terms thereof that envisage an instalment repayment schedule, a grace period on the settlement of bankruptcy creditors' and authorised bodies' claims, and also a debt rebate shall be terminated in respect of the portion of creditors' claims that was outstanding as of the date of rescission of the amicable agreement.

**5.** The rescission of an amicable agreement shall not entail the duty of first and second priority ranking creditors to refund to the debtor whatever they received as offsetting the debt owing them.

**6.** The composition and amount of the claims of creditors and authorised bodies shall be determined as of the date of resumption of bankruptcy case proceedings.

**Article 167.** The Consequences of Default on the Performance of an Amicable Agreement

**1.** If the debtor has defaulted on the performance of an amicable agreement the creditors have the right -- without rescinding the amicable agreement -- to the commercial court that has considered the bankruptcy case so as to receive a writ of execution for collection of the claims which have remained unsatisfied.

**2.** If a proceeding is commenced in a new bankruptcy case in respect of a debtor the amount of the creditors' claims covered by the amicable agreement shall be determined by the terms contained in the amicable agreement.

### Chapter IX. The Features of Bankruptcy of Specific Categories of Debtors Being Legal Entities

#### §1. General Provisions

**Article 168.** General Provisions Concerning the Bankruptcy of Specific Categories of Debtors Being Legal Entities

The relationships relating to the bankruptcy of a city's backbone enterprise, agricultural and financial organisations, strategic enterprises and organisations, natural monopoly entities and also the relations relating to the bankruptcy of developers are subject to the provisions of the present Federal Law regulating the bankruptcy of debtors being legal entities, except as otherwise envisaged by the present chapter.

#### §2. The Bankruptcy of City-Forming Organisations

**Article 169.** The Status of a City-Forming Organisation

**1.** For the purposes of the present Federal Law "city-forming organisations" are legal persons whose employees make up at least 25 per cent of the number of the employed population of the relevant inhabited locality.

**2.** The provisions of the present paragraph shall also be applicable to other organisations having more than 5,000 employeers persons.

**Article 170.** Considering the Case of Bankruptcy of a City-Forming Organisation

**1.** When a case of the bankruptcy of a city-forming organisation is being considered, the relevant local government body shall be deemed party to the bankruptcy case.

**2.** Also, the following may be deemed party to the bankruptcy case and involved in the case: federal executive governmental bodies and the executive governmental bodies of a relevant Russian region.

**3.** When grounds for creditors' claims are being examined evidence shall be provided to the commercial court of the fact that the city-forming organisation complies with the provisions of Article 169 of the present Federal Law.

**Article 171.** Instituting External Administration for a City-Forming Organisation under Suretyship

**1.** If a creditors' meeting has not decided to institute external administration for a city-forming organisation, the commercial court shall institute external administration on the grounds specified in the present Federal Law and also at the petition of the local government body or the relevant federal executive governmental body involved in the bankruptcy case or the executive governmental body of the Russian region on the condition that a suretyship is provided for the debtor's obligations.

Suretyship for the debtor's obligations may be provided by the Russian Federation, a Russian region or a municipal entity as represented by their authorised bodies.

**2.** The local government body or the relevant federal executive governmental body involved in the case of bankruptcy of a city-forming organisation or the executive governmental body of a Russian region that has provided a suretyship for

obligations of a debtor shall determine the qualifications to be complied with by the receiver nominee and send them to self-regulated organisations of qualified receivers.

**3.** In cases when external administration of a city-forming organisation has been instituted in the manner envisaged by the present article, the surety shall be subsidiarily liable for the debtor's obligations to the debtor's creditors.

**Article 172.** Prolongation of Financial Rehabilitation or External Administration in Respect of a City-Forming Organisation at the Petition of a Local Government Body

Financial rehabilitation or external administration in respect of a city-forming organisation may be prolonged by a commercial court by up to one year if there is a petition filed by a local government body or a relevant federal executive governmental body involved in the bankruptcy case or the executive governmental body of a Russian region on the condition that a suretyship is provided for the debtor's obligations.

**Article 173.** Suretyship

**1.** For the purposes of the present Federal Law "suretyship" is a unilateral duty of the person that has provided a suretyship for a debtor to be liable for the latter's discharging all monetary obligations thereof with respect to bankruptcy creditors, the duty to pay severance benefits, the duty to pay wages to the person who is working or have been working under a labor contract and also the duty to make mandatory payments to the budgets and non-budget funds.

A suretyship for obligations of a debtor may be provided by the Russian Federation, a Russian region or a municipal entity as represented by their authorised bodies in the manner and on the terms envisaged by a federal law.

**2.** A surety for obligations of a debtor shall be presented to the commercial court in writing. The following shall be indicated in the suretyship:

the sum of the debtor's obligations owing the creditors and of the duty to make mandatory payments;

a debt repayment schedule.

Attached to the suretyship shall be documents to confirm that the obligations relating to the suretyship have been included in the relevant budget as of the date when the suretyship is granted.

**3.** The debtor and its surety shall commence settlements with the creditors under the debt repayment schedule set out in the suretyship.

**4.** In the event of a default on settling creditors' and authorised bodies' claims in the manner and within the terms envisaged by the debt repayment schedule, the creditors and authorised bodies shall be entitled to present claims to the debtor for collection of outstanding amounts of money in accordance with the general procedure envisaged by law.

**5.** The surety's breach of its obligations in respect of the creditors and authorised bodies holding one third of all the claims to the debtor may serve as a ground for terminating financial rehabilitation or external administration before due date, for declaring the debtor bankrupt and commencing winding-up proceedings.

**Article 174.** Settlement of Creditors' Claims During Financial Rehabilitation or External Administration in Respect of a City-Forming Organisation

**1.** At any time before the termination of financial rehabilitation of a city-forming organisation or external administration of a city forming organisation, the Russian Federation, the Russian region or the municipal entity shall be entitled to effect settlement with all the creditors or to repay the creditors' claims relating to monetary obligations, for payment of severance benefits and/or payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments by another method envisaged by the present Federal Law.

**2.** Settlements with creditors shall be effected according to the priority ranking established by Articles 134-138 of the present Federal Law.

**3.** If the creditors' claims relating to monetary obligations, for payment of severance benefits and/or payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments are settled in the manner specified in Items 1 and 2 of the present article the bankruptcy case proceeding shall be subject to termination.

**Article 175.** Sale of an Enterprise of the City-Forming Organisation

**1.** During the external administration or winding-up period, an enterprise of the city-forming organisation may be sold.

**2.** If there is a petition filed by the local government body or the federal executive governmental body involved in the bankruptcy case or the executive governmental body of the Russian region, a significant term of the contract of sale/purchase of the enterprise of the city-forming organisation may be preservation of jobs for at least 50 per cent of the employees of such an enterprise as of the date of its sale over a specific term not exceeding three years after the entry of the contract into force.

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 27 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 149
of 317                              *[Unofficial translation from Russian]*

Other conditions may be established at the proposal of the local government body or the federal executive governmental body involved in the bankruptcy case or the executive governmental body of the Russian region exclusively with the consent of a creditors' meeting in the manner envisaged by Article 15 of the present Federal Law.

**3.** If the buyer of the enterprise of the city-forming organisation defaults on observing the terms set out in Item 2 of the present article, the contract of sale/purchase shall be subject to rescission by a commercial court on the application of the local government body, the federal executive governmental body or the governmental executive body of the Russian region on whose petition the tender was held. In the event of rescission of the contract of sale/purchase, the buyer of the enterprise shall be reimbursed at the expense of a relevant budget for funds spent to buy the enterprise and to make investments during the effective term of the contract, and the enterprise shall be subject to transfer to the municipal entity.

**4.** If the petition specified in Item 2 of the present article has not been filed or if the enterprise of the city-forming organisation has not been sold on the said terms and conditions the enterprise shall be subject to sale in the manner and on the terms established by Articles 110, 111 and 139 of the present Federal Law.

**Article 176.** Sale of the Property of a City-Forming Organisation Declared Bankrupt

**1.** In the event of sale of the property of a city-forming organisation that has been declared bankrupt, the qualified receiver shall put up the debtor's enterprise for sale on the terms set out in Article 175 of the present Federal Law.

**2.** If the debtor's enterprise has not been sold in the manner specified in Item 1 of the present article the sale of property of the city-forming organisation shall be effected according to the rules established by Article 111 of the present Federal Law.

### §3. The Bankruptcy of Agricultural Organisations

**Article 177.** General Provisions on the Bankruptcy of Agricultural Organisations

**1.** For the purposes of the present Federal Law "agricultural organisations" means legal persons whose basic types of activity are the production or the production and processing of agricultural products, with receipts from the sale of the products making up at least 50 per cent of the sum total of receipts.

**2.** The features of bankruptcy of agricultural organisations set out in the present Federal Law shall also be applicable to fishing artels (collective farms) whose receipts from the sale of produced or produced and processed agricultural products and catches of aquatic biological resources makes up at least 70 per cent of the total sum of receipts.

**3.** Abrogated.

**4.** If an agricultural organisation has been declared bankrupt land plots may be alienated or transferred to another person, to the Russian Federation, the Russian region or the municipal entity to the extent their alienability is allowed under the land legislation.

In the event of declaring bankrupt the fishing artel (collective farm) cited in Item 2 of this article, the right to the extraction (catching) of aquatic biological resources may be alienated or transferred to other persons insofar as the turnover of aquatic biological resources is allowed by the legislation on fishing and conservation of aquatic biological resources.

**5.** For initiation of proceedings in respect of a case on bankruptcy of an agricultural organisation shall be taken into consideration the claims amounting in the aggregate to at least five hundred thousand roubles.

**6.** An application for declaring an agricultural organisation bankrupt shall be accepted by a commercial court, if the claims for the agricultural organisation constitute in the aggregate the sum cited in Item 5 of this article and such claims have not been met within three months as from the date when they had to be met.

**Article 178.** The Supervision or Financial Rehabilitation of an Agricultural Organisation, and the External Administration of an Agricultural Organisation

**1.** During supervision, when the financial state of an agricultural organisation is being analysed account shall be taken of the seasonal nature of agricultural production and its dependence on the natural and climatic conditions and also of the possibility of meeting creditors' claims at the expense of incomes that can be received by the agricultural organisation upon the expiry of a specific period of agricultural work.

**2.** The financial rehabilitation of an agricultural organisation shall be instituted for a term ending at the end of a specific period of agricultural work with due regard to the time required to sell the agricultural products produced or produced and processed.

If during financial rehabilitation the financial state of the agricultural organisation has suffered a recession and deterioration due to a natural disaster, epizootic or other circumstances of an extraordinary nature the term of financial rehabilitation may be extended by one year on the condition that amendments are made to the debt repayment schedule in the manner set out in Article 85 of the present Federal Law.

*[Unofficial translation from Russian]*

**3.** External administration for an agricultural organisation shall be instituted before the end of a relevant agricultural work period with due regard to the time required for selling the agricultural products produced or produced and processed. The effective term of external administration shall not exceed the duration set in Item 2 of Article 92 of the present Federal Law by more than three months.

If during external administration the financial state of the agricultural organisation has suffered a recession and deterioration due to a natural disaster, epizootic or other circumstances of an extraordinary nature, as well as if the grounds have originated for rendering agricultural commodity producers established by Article 8 of Federal Law No. 260-FZ of July 25, 2011 on the State Support in the Sphere of Agricultural Insurance and on Amending the Federal Law on Agriculture Development, the external administration term may be prolonged by one year.

**Article 179.** The Features of Sale of Property Rights in Rem of an Agricultural Organisation

**1.** When selling the property of the debtor being an agricultural organisation, the qualified receiver must put up for sale the enterprise of the debtor being the agricultural organisation by way of holding an auction.

If the enterprise of the debtor being an agricultural organisation has not been sold through an auction, the qualified receiver is bound to put up for sale as a single lot the property of the debtor being the agricultural organisation which is used for making agricultural products, their storage, processing and sale (hereinafter referred to as the industrial-engineering complex of the debtor being an agricultural organisation).

Where it is cited by Paragraphs One and Two of this item, the enterprise of the debtor being an agricultural organisation and put up for sale as a single lot of the industrial-engineering complex of the debtor being the agricultural organisation shall be sold in the procedure established by Items 4 - 19 of Article 110 of this Federal Law. The property of the debtor being an agricultural organisation shall be evaluated in the procedure established by Article 130 of this Federal Law.

If the industrial-engineering complex of the debtor being an agricultural organisation put up for sale as a single lot has not been sold through an auction, the property of the debtor being the agricultural organisation shall be sold in compliance with Article 111 and Item 4 of Article 139 of this Federal Law.

**2.** The priority right to acquire the debtor's property being sold in the procedure established by Paragraph Four of Item 1 of this article shall belong to the persons engaged in the production or production and processing of agricultural products and owning the land plots directly adjacent to the debtor's land plot. If there are no such persons, the priority right to acquire the debtor's property which is used for the purposes of agricultural production and belongs to the agricultural organisation declared bankrupt, given other equal conditions, shall belong to the agricultural organisations and peasant farms situated in the same locality as the cited agricultural organisation, as well as to the appropriate constituent entity of the Russian Federation or the appropriate municipal entity.

For the purpose of ensuring the implementation of the priority right to acquire the debtor's property the qualified receiver shall send a notice of sale of the debtor's enterprise and of the debtor's property to the persons which pursue production or productions and processing of agricultural products and possess a land plot immediately adjacent to the land plot of the debtor, and shall also publish information on the sale of the debtor's enterprise and the debtor's property in a printed edition at the place where the debtor is located with an indication of the initial selling price of the debtor's enterprise and the debtor's property put up for sale.

**3.** The qualified receiver shall sell the debtor's enterprise or the debtor's property to a person having the right of priority acquisition thereof at the price determined by means of a sale. If several persons have declared their intent to use the priority right of acquisition then the debtor's property shall be sold at the price determined by means of a sale to the person whose application was the first to be received by the qualified receiver.

If within one month the said persons have not declared their will to acquire the property and rights in rem the qualified receiver shall effect realisation of the property and rights in rem in the manner envisaged by the present Federal Law.

### §4. The Bankruptcy of Financial Organisations

**Article 180.** General Provisions on Insolvency (Bankruptcy) of Financial Organisations

**1.** This paragraph defines the specifics of insolvency (bankruptcy) of financial organisations.

**2.** For the purposes of this Federal Law, financial organisations mean the following:

1) credit organisations;

2) insurance organisations;

3) professional securities market participants;

4) non-governmental pension funds;

*[Unofficial translation from Russian]*

5) management companies of investment funds, unit investment funds and non-governmental pension funds.

6) clearing organisations;

7) market makers;

8) credit consumer co-operative societies (hereinafter - credit co-operatives);

9) microfinance organisations.

**3.** The provisions of this paragraph shall not apply to the relations connected with insolvency (bankruptcy) of credit organisations.

The relations connected with insolvency (bankruptcy) of credit organisations shall be regulated by Paragraph 4.1 of this Federal Law.

**4.** Control functions envisaged by this paragraph, as related to financial institutions, shall be executed by the Bank of Russia (hereinafter - the supervisory body).

**5.** In cases and through the procedure provided for by federal law, the Agency shall exercise powers of a liquidator of financial institutions and a bankruptcy manager in case of insolvency (bankruptcy) of financial institutions.

**Article 181.** Abrogated.

**Article 182.** Abrogated.

**Article 183.** Abrogated.

**Article 183.1** Measures Aimed at Preventing the Bankruptcy of a Financial Organisation

**1.** As measures aimed at preventing bankruptcy of a financial organisation shall be deemed the following:

1) the rendering of financial aid to the financial organisation by its founders (participants) and other persons;

2) changing the structure of assets and the structure of liabilities of the financial organisation;

3) increasing the amount of the financial organisation's authorized capital and the amount of its assets (capital);

4) the financial organisation's re-organisation;

5) other measures which are not prohibited by the legislation of the Russian Federation.

**2.** Where there are grounds for taking measures aimed at preventing the bankruptcy of a financial organisation, it is obliged to endorse and to send to the control body a plan for restoration of its solvency in the procedure established by Article 183.2 of this Federal Law.

**3.** A plan for restoration of the solvency of a financial organisation shall contain an analysis of the financial organisation's financial status, as well as a list of measures aimed at preventing its bankruptcy and the time period for their application which may not exceed six months as from the date when the grounds for taking such measures arise. To a plan for restoration of the solvency of a credit organisation shall be attached the documents proving the feasibility of taking measures aimed at preventing the credit organisation's bankruptcy which are provided for by the plan of restoration of the financial organisation's solvency.

**4.** Control over execution of the plan of reestablishing solvency of a financial institution shall be performed by a supervisory body using the procedure established by it.

**Article 183.2.** Grounds for Taking Measures Aimed at Preventing a Financial Organisation's Bankruptcy

**1.** As grounds for taking measures aimed at preventing a financial organisation's bankruptcy shall be deemed the following:

1) repeated refusal within a month to meet creditors' claims under pecuniary obligations. Here, such refusal means failure to meet creditors' claims under pecuniary obligations or their improper meeting within ten working days of the date when the duty of meeting such claims arises, if not otherwise provided for by this Federal Law;

2) failure to discharge the duty of making obligatory payments within a time period exceeding ten working days from the date when they should have been discharged;

3) insufficiency of monetary funds for discharging pecuniary obligations in due time and/or the duty to make obligatory payments, if the time for discharging such obligations and/or the duty has come.

**2.** Where there are the grounds cited in Item 1 of this Article, a financial organisation within 15 days from the date when they arise is bound to send to the control body a notice of it with a plan of restoration of its solvency attached thereto, if

*[Unofficial translation from Russian]*

there are no signs of the financial organisation's bankruptcy.

**3.** The control body within 30 working days as from the date of receiving a plan of restoration of a financial organisation's solvency shall adopt on the basis of the results of its analysis the decision on appointing the provisional administration of the financial organisation or on the inexpediency of such appointment.

**4.** Following the results of analysis of the plan for reestablishing solvency of a financial institution the supervisory body shall take a decision to carry out on-site inspection of the activities of the financial institution using the procedure established by it and in cases established by it. The on-site inspection of activities of the financial institution shall be carried out within the term specified in Item 3 of this Article.

**5.** In the event of detecting the signs of a financial organisation's bankruptcy on the basis of the results of analyzing the financial organisation's plan of restoration of its solvency or on the basis of the results of a visiting inspection of the financial organisation's activities (if it has been held), the control body shall file an application for declaring the financial organisation bankrupt in the procedure established by this Federal Law.

**Article 183.3.** Alteration of the Structure of a Financial Organisation's Assets and Liabilities

**1.** The alteration of a financial organisation's structure of assets may provide for the following:

1) bringing the structure of the financial organisation's assets into accord with the obligations' periods to maturity to ensure their discharge;

2) reducing the financial organisation's outlays, in particular on servicing the debt thereof and outlays on the financial organisation's management;

3) sale or transfer of the financial organisation's non-profitable and other assets, if their sale or transfer do not impede satisfaction of the licence requirements and the requirements for the financial organisation's solvency;

4) other measures aimed at changing the financial organisation's structure of assets.

**2.** The alteration of the structure of a financial organisation's liabilities may provide for the following:

1) increasing the amount of the financial organisation's own assets (capital);

2) reducing the amount and/or share of current and short-term liabilities in the total structure of the financial organisation's liabilities;

3) increasing the share of medium-term and long-term obligations in the total structure of the financial organisation's liabilities;

4) other measures aimed at changing the structure of the financial organisation's liabilities.

**Article 183.4.** Changing the Organisational Structure of a Financial Organisation

The organisational structure of a financial organization may be changed:

1) by changing the composition and number of the financial organisation's employees;

2) by changing the structure (in particular by way of terminating the activities of structural subdivisions, as well as of a branch, representative office or other separate structural unit of the financial organisation) or in other ways ensuring the elimination of the reasons for the need to take measures aimed at restoration of the financial organisation's solvency.

**Article 183.5.** Appointing the Provisional Administration of a Financial Organisation

**1.** The control body shall appoint a provisional administration of a financial organisation, if:

1) the control body has detected the grounds cited in Subitems 1 and 2 of Item 1 of Article 183.2 of this Federal Law, if the financial organisation has not notified the control body of the existence of appropriate circumstances;

2) the control body in the course of a visiting inspection in the procedure established by Item 4 of Article 183.2 of this Federal Law or on the basis of the results of analyzing a plan of restoration of the financial organisation's solvency in compliance with Item 3 of Article 183.2 of this Federal Law has adopted the decision to appoint the financial organisation's provisional administration for implementation of the plan of restoration of its solvency or the exercise of control over the plan's implementation;

3) the financial organisation does not implement or does not implement properly a plan of restoration of its solvency.

**2.** The provisional administration of a financial organisation shall be appointed for the reasons provided for by Item 1 of this Article without fail, if not otherwise established by this Federal Law.

**3.** The decision of the control body to appoint a provisional administration of a financial organisation and on extension

*[Unofficial translation from Russian]*

of the term of its operation shall be subject to publication in the procedure established by Article 28 of this Federal Law, as well as to insertion in the official Internet site of the control body and shall contain the following:

1) financial organisation's denomination, its address and data identifying the financial organisation (the state registration number of the entry on the state registration of a legal entity, taxpayer's identification number);

2) denomination of the control body that has adopted the decision on appointing the financial organisation's provisional administration, date of adoption of such decision and time period for which this provisional administration is appointed;

3) grounds for appointing the financial organisation's provisional administration;

4) data on limitation or suspension of the authority of the financial organisation's executive bodies;

5) full name of the head of the financial organisation's provisional administration and address, for sending correspondence thereto.

5.1) name of the self-regulating organisation whose member the head of the temporary administration of the financial institution is and the address of such self-regulating organisation, if the bankruptcy manager is appointed head of the temporary administration of the financial institution;

6) other information where it is provided for by this Federal Law.

4. The control body's decision on appointing the provisional administration of a financial organisation, in particular the decision on limitation or suspension of the authority of the financial organisation's executive bodies, may be appealed against with a general jurisdiction court or a commercial court by the financial organisation.

**Article 183.6.** Provisional Administration of a Financial Organisation

**1.** The provisional administration of a financial organisation means a special temporary managerial body of the financial organisation appointed by the control body (hereinafter referred to as the provisional administration).

**2.** As the purposes of appointing the provisional administration shall be deemed restoration of a financial organisation's solvency and/or ensuring the safekeeping of the financial organisation's property.

**3.** The tasks set for the provisional administration shall be as follows:

1) taking measures aimed at preventing bankruptcy of a financial organisation and/or exercise of control over taking of such measures;

2) removal of the grounds for suspension or limitation of the operation of the financial organisation's licence.

**4.** The composition of the provisional administration, procedure and grounds for changing the composition thereof shall be endorsed by the control body according to the procedure established by it.

**5.** The provisional administration shall include the head of the provisional administration and members thereof.

**6.** As the head of the provisional administration shall be appointed the qualified receiver satisfying the requirements established by Article 183.25 of this Federal Law, unless otherwise established by this Federal Law. The candidacies of the head of the provisional administration and of its members shall be selected by the control body according to the procedure established by it.

The head of the provisional administration shall distribute duties to members of the provisional administration. The head of the provisional administration shall be obliged within three working days as from the date of appointment thereof to make a contract of his/her liability insurance under the terms and conditions provided for by Article 24.1 of this Federal Law, unless otherwise established by this Federal Law.

Representatives of the self-regulated organisation or of the self-regulated organisations of which a financial organisation is a member are entitled to be included in the composition of the provisional administration on the proposal of an appropriate self-regulated organisation.

**7.** As a member of the provisional administration may not be appointed the person:

1) who has an previous conviction for a willful crime which is not quashed or cancelled;

2) who was exercising the functions of the one-man executive body or was within the collective executive body of the financial organisation at the time when the violations were made by this organisation for which the licence thereof for the exercise of appropriate kinds of activities was withdrawn or cancelled, if from the date of such withdrawal or cancellation less than three years have passed;

3) in respect of whom the disqualification term has not yet expired;

4) who is a person concerned with respect to the financial organisation;

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 32 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 154
of 317   *[Unofficial translation from Russian]*

5) that is an employee of a controlling body, except when a provisional administration is appointed to a non-state pension fund or insurance organisation.

**8.** The outlays of the provisional administration connected with the activities thereof, in particular payment of remunerations to the head and members of the provisional administration, shall be reimbursed on account of the financial organisation. A list and the limit level of such outlays, in particular a procedure for fixing the rate of and procedure for paying remunerations to the head and members of the provisional administration, shall be defined by the regulation body.

**9.** In the event of initiation of bankruptcy proceedings in respect of a financial organisation, claims for paying remunerations to the provisional administration's members, as well as for reimbursement of the provisional administration's outlays, shall be satisfied within the composition of third-turn creditors' claims for current payments in the procedure established by Article 134 of this Federal Law.

**10.** The head of the provisional administration shall be held liable with respect to the financial organisation and its creditors for causing losses to the financial organisation and its creditors as a result of failure to discharge or improper discharge by the provisional administration of the duties it is charged with.

**11.** The control body is entitled to send its representatives to a financial organisation for exercising control over the activities of the financial organisation and provisional administration.

Representatives of the supervisory body shall be appointed by a decision of the said body out of its officers.

The control body's representatives are entitled to participate in general meetings of a financial organisation's founders (participants) and in meetings of other managerial bodies of the financial organisation without vote, to get familiar with records and other materials of a general meeting of the financial organisation's founders (participants) and meetings of other managerial bodies of the financial organisation, to receive information about the provisional administration's activities and to get familiar with any documents of the financial organisation.

**12.** The procedure for interaction of temporary administration, the supervisory body and its representatives in the course of exercising their powers, forms of control over the temporary administration performed by the supervisory body and its representatives shall be established by the supervisory body.

**Article 183.7. The Provisional Administration's Functions**

**1.** The provisional administration is entitled:

1) to give orders to be follows without fail to the financial organisation's employees for the purpose of accomplishing the tasks set for the provisional administration in compliance with this Federal Law;

2) to apply to court on behalf of the financial organisation for declaring invalid the transactions made by the financial organisation or on account of the financial organisation, as well as for applying the effects of invalidity of null and void transactions for the grounds provided for by the Civil Code of the Russian Federation;

3) to take part in general meetings of the financial organisation's founders (participants) and in meetings of other managerial bodies of the financial organisation without vote, to get familiar with records and other materials of a general meeting of the financial organisation's founders (participants) and of meetings of other managerial bodies of the financial organisation, to get familiar with any documents thereof, in particular to receive from the financial organisation's managerial bodies and employees, as well as from third persons, information and documents concerning the financial organisation's activities.

**2.** The provisional administration is obliged:

1) to take measures aimed at preventing the financial organisation's solvency (bankruptcy), should the authority of the financial organisation's managerial bodies be suspended;

2) to control implementation by the financial organisation of a plan of restoration of its solvency, if the authority of the financial organisation's managerial bodies is suspended;

3) to ensure the safekeeping of the financial organisation's property;

4) to apply in the instances and in the procedure which are established by this Federal Law to a commercial court on behalf of the financial organisation for declaring the financial organisation bankrupt;

5) to file the petition with the control body for withdrawal, cancellation or suspension of the financial organisation's licence where there are grounds for withdrawal, cancellation or suspension of such licence;

6) to discharge other duties provided for by this Federal Law.

**3.** The provisional administration's actions may be appealed against by the financial organisation with the control body or commercial court.

153

*[Unofficial translation from Russian]*

**Article 183.8.** Effects of Appointing the Provisional Administration

**1.** For the period of the provisional administration's activities the authority of executive bodies of the financial organisation shall be limited or suspended by decision of the control body in the procedure and under the conditions which are established by this Federal Law.

**2.** As from the date of appointment of the provisional administration accompanied by suspension of the authority of the executive bodies of a financial organisation the validity of the powers of attorney issued by the financial organisation before the date of appointment of the provisional administration, including irrevocable ones, shall be terminated.

**Article 183.9.** Restricting and Suspending the Authority of a Financial Organisation's Executive Bodies

**1.** For the period of the activities to be exercised by the provisional administration the authority of the financial organisation's executive bodies shall be limited, if not otherwise established by this Federal Law.

**2.** The authority of a financial organisation's managerial bodies shall be suspended in the following instances:

1) when the provisional administration is appointed in connection with detecting by the control body the grounds cited in Subitems 1 and 2 of Item 1 of Article 183.2 of this Federal Law, if there are no appropriate notifications of the control body on the part of the financial organisation;

2) when the financial organisation fails to implement or improperly implements a plan of its solvency's restoration;

3) in other instances established by this Federal Law.

**3.** In the event of restriction of the authority of a financial organisation's executive bodies, they are entitled solely by the provisional administration's authorization to make transactions:

1) which are connected with letting of the financial organisation's immovable property on lease, its putting in pledge, contributing to the authorised capital of third persons, as well as with the disposal of such property in some other way;

2) with are connected with the disposal of the financial organisation's other property whose balance sheet value exceeds one per cent of the balance sheet value of the financial organisation's assets;

3) which are connected with obtainment and issuance of loans (credits), assignment of the right of claim and transfer of debt, debt forgiveness, novation and compensation for release from obligation;

4) which are of interest.

**4.** In the event of suspending the authority of a financial organisation's executive bodies for the period while the provisional administration is exercising its activities:

1) the authority of the financial organisation's executive bodies shall be exercised by the provisional administration and the financial organisation's executive bodies are not entitled to adopt decisions on the matters which are referred to their scope of authority by federal laws and the financial organisation's constituent documents;

2) decisions of other managerial bodies of the financial organisation in respect of dividends' payment, redemption or acquisition of placed stocks or payment of the real value of a stock (share), approval of major deals and other decisions which can entail an increase of the financial organisation's creditor indebtedness shall enter into effect after their coordination with the provisional administration.

3) as from the fate of appointment of the provisional administration and up to the date of a commercial court rendering the decision on declaring a financial organisation insolvent (bankrupt) or of entry into legal force of the decision of a commercial court on its liquidation or termination of the activity of the provisional administration the following shall be suspended the state registration of transactions, transfer or restriction (encumbrance) of the right to the immovable property held by the financial organisation on the basis of the right of ownership thereto, other real right or held by it in pledge.

**5.** The head of a financial organisation, in case of adoption of the decision to suspend the authority of the financial organisation's managerial bodies for the period while the provisional administration exercises its activities, is bound to transfer at the latest on the day following the date of the provisional administration's appointment to the head of the provisional administration seals and stamps, as well as at the time, coordinated with the provisional administration, accounting and other documentation of the financial organisation and the material and other valuables he/she is in charge of.

At the latest in fifteen days as from the date of the provisional administration's appointment the financial organisation's head is bound to present to the provisional administration a list of the debtor's property, including property rights, as well as the accounting and other documents showing the financial organisation's economic activities with the last three years before the appointment of the provisional administration.

**6.** Impeding by a financial organisation's head, deputy head or other employees thereof, as well as by other persons, the exercise of the provisional administration's functions (in particular, impeding access to the financial organisation's premises, to

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 34 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 156
of 317
*[Unofficial translation from Russian]*

its documentation and other information media, refusal to transfer seals, stamps, documents and in other cases) shall entail liability under the legislation of the Russian Federation.

**7.** In the event of suspension of the authority of a financial organisation's executive body for the period while the provisional administration is exercising its activities, the financial organisation's one-man executive body that was entitled before the provisional administration's appointment to act on behalf of the financial organisation without a power of attorney is empowered to represent its interests in a commercial court in case of complaining against the provisional administration's appointment or actions (omission to act) of the provisional administration.

**Article 183.10.** The Provisional Administration's Functions in the Event of Limitation of the Authority of a Financial Organisation's Executive Bodies

**1.** In the event of imitation of the authority of a financial organisation's executive bodies, the provisional administration, along with the exercise of the functions cited in Article 183.7 of this Federal Law, shall participate in the development of measures aimed at restoration of the financial organisation's solvency and shall exercise control over their taking.

**2.** When exercising the functions cited in Item 1 of this Article, the provisional administration shall:

1) give its consent to making by the financial organisation's managerial bodies the transactions cited in Item 3 of Article 183.9 of this Federal Law;

2) file with the control body the petition for suspending the authority of the financial organisation's managerial bodies, if the financial organisation's head, deputy head or other employees thereof impede the exercise by the provisional administration of its functions or if there is a need for taking measures aimed at preventing the financial organisation's bankruptcy.

**3.** Basing on the application of the temporary administration for suspension of authority of the managing bodies of a financial institution the supervisory body shall take a decision to suspend the authority of managing bodies of the financial institution using the procedure established by it.

**4.** In case of taking a decision to liquidate the financial institution during the period of operation of the temporary administration, the temporary administration shall control the activities of the liquidation commission (liquidator) according to the procedure established by the supervisory body.

**5.** In the event of endorsement of the interim receiver, the provisional administration shall exercise the functions imposed upon it, except for the functions pertaining to the interim receiver's scope of authority.

**Article 183.11.** The Functions of the Provisional Administration in the Event of Suspending the Authority of a Financial Organisation's Executive Bodies

**1.** In the event of suspension of the authority of a financial organisation's executive bodies, the provisional administration shall exercise the following functions:

1) exercise the authority of the financial organisation's executive bodies;

2) devise measures aimed at restoration of solvency of the financial organisation, arrange and control their taking;

3) detect the financial organisation's creditors and the amount of their claims under pecuniary obligations;

4) take measures aimed at recovering debts with respect to the financial organisation;

5) other functions in compliance with this Federal Law.

**2.** When exercising the functions cited in Item 1 of this Article, the provisional administration is entitled:

1) to make claims on behalf of the financial organisation with general jurisdiction courts, commercial courts and tribunals of arbitrators;

2) to take members of the financial organisation's executive bodies off their jobs and/or dismiss them;

3) to apply to law enforcement bodies and courts for calling to account the one-man executive body of the financial organisation and/or members of the collective executive body of the financial organisation;

4) to have free access to all premises of the financial organisation;

5) to place under seals the financial organisation's premises.

**3.** In the event of adoption of the decision on liquidation of a financial organisation within the period of the provisional administration's activities or in the event of appointing the provisional administration of the financial organisation to be liquidated, the provisional administration shall discharge the duties of the liquidation commission (liquidator).

*[Unofficial translation from Russian]*

**Article 183.12.** The Time Period of the Provisional Administration's Activities

**1.** The provisional administration shall be appointed for a time period from three to six months. On application of the provisional administration the time period of the provisional administration's activities may be prolonged by decision of the control body by at most three months, provided that the total time period of the provisional administration's activities does not exceed nine months.

**2.** If within the period of the provisional administration's activities bankruptcy proceedings are initiated in respect of the financial organisation, the provisional administration shall exercise the functions imposed upon it pending the date of endorsement of the winding-up receiver by a commercial court.

**3.** If the provisional administration discharges the duties of the liquidation commission (liquidator) or exercises control over the activities of the liquidation commission (liquidator), the provisional administration shall discharge its duties pending the complete liquidation of the financial organisation or the date when the winding-up receiver is endorsed by a commercial court.

**Article 183. 13.** Analysis of the Financial Status of a Financial Organisation

**1.** The provisional administration shall analyse the financial organisation's financial status and shall submit to the control body an opinion about the financial organisation's financial status at the latest in 45 days from the date of its appointment.

**2.** An opinion about the financial status of a financial organisation shall contain a reference to the reasons for appearance of the grounds for taking measures aimed at preventing bankruptcy of the financial organisation, conclusions as to whether it is possible or not to restore its solvency, as well as planned measures to be taken by the financial organisation for prevention of its bankruptcy.

**3.** The provisional administration within at most twelve working days since the date when it submits an opinion about the financial status of the financial organisation, if the cited opinion contains the conclusion that it is possible to restore the solvency thereof, shall file with the control body a plan of restoration of the financial organisation's solvency. If the term of such plan's implementation exceeds the time period for which the provisional administration is appointed, the control body shall extend the term of the provisional administration's activities in compliance with Item 1 of Article 183.12 of this Federal Law.

**4.** If on the basis of the results of analyzing the financial status of a financial organisation the provisional administration comes to the conclusion that it is impossible to restore the financial organisation's solvency, it shall be stated in the opinion about the financial organisation's financial status that it is expedient to file an application for declaring the financial organisation bankrupt.

**5.** Within ten working days from the date of receiving an opinion about the financial status of a financial organisation the control body shall take one of the following decisions:

1) on the provisional administration's applying to a commercial court for declaring the financial organisation bankrupt;

2) on checking by the provisional administration how the discharge of the financial organisation's obligations is ensured and on subsequent preparation of measures aimed at preventing bankruptcy thereof upon receiving by the control body the documents which concern ensuring by the financial organisation's participants or by other persons the discharge of the financial organisation's obligations.

**6.** The provisional administration shall make possible for the financial organisation's head to get familiar with an opinion about the financial status of the financial organisation.

The provisional administration is obliged to send to the financial organisation's head a notice that it is possible to get familiar with an opinion about the financial status of the financial organisation at the latest on the day following the date when an opinion about the financial organisation's financial status is sent to the control body in such a way which enables to deliver the cited opinion at the latest in five days as of the date when it is sent to the control body.

**Article 183.14.** Termination of the Provisional Administration's Activities

**1.** The provisional administration's activities may be terminated for the following reasons:

1) expiry of the provisional administration's term of authority, in particular attainment of the goals of its appointment and accomplishment of the tasks set for it;

2) preschedule termination of its activities in compliance with Article 183.15 of this Federal Law.

**2.** At the latest in ten working days as from the date of expiry of the term of the provisional administration's authority, as well as upon attainment of the goals of its appointment and accomplishment of the tasks set for it, the provisional administration shall send to the control body a report on the provisional administration's activities.

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 36 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 158
of 317
*[Unofficial translation from Russian]*

**3.** A report on the provisional administration's activities shall contain data on taking measures aimed at preventing the financial organisation's bankruptcy and on the results of the cited measures' taking.

A report on the provisional administration's activities shall contain an opinion on the restoration or on the impossibility to restore the financial organisation's solvency.

The control body within ten days as from the date of submitting a report on the provisional administration's activities, if the financial organisation's solvency is restored on the basis of the results of the cited report's consideration, shall render the decision on termination of the provisional administration's activities.

Within ten working days as from the date of submitting a report on the provisional administration's activities, if it is impossible to restore the financial organisation's solvency within the period of the provisional administration's activities on the basis of the results of the cited report's consideration, the control body shall render the decision on the provisional administration's applying to a commercial court for declaring the financial organisation bankrupt and at the latest on the working day following the date when such decision is rendered shall send it to the provisional administration. The provisional administration shall send to a commercial court an application for declaring the financial organisation bankrupt with the cited report attached hereto at the latest in ten working days as from the date when the appropriate decision of the control body is received.

**4.** If an application for declaring a financial organisation bankrupt is filed with a commercial court, the provisional administration's activities shall be terminated from the date when the winding-up receiver is endorsed by the commercial court.

Within the term of at most ten working days from the date of endorsement of the winding-up receiver, the provisional administration shall transfer to the winding-up receiver the seals and stamps of the financial organisation available to it, as well as the accounting and other documentation (including data on the amount of claims of the financial organisation's creditors), material and other valuables of the financial organisation accepted from the financial organisation's executive bodies.

**5.** A report on termination of the provisional administration's activities shall be subject to publication by the control body in the procedure established by Article 28 of this Federal Law, as well as to insertion in official Internet site of the control body, and shall contain the following:

1) the financial organisation's denomination, its address and data identifying the financial organisation (the state registration number of the entry on the state registration of a legal entity, taxpayer's identification number);

2) denomination of the control body that has taken the decision on the provisional administration's appointment, date when such decision is adopted and time period for which the provisional administration is appointed;

3) full name of the provisional administration's head and address for sending mail thereto, as well as denomination of the self-regulating organisation of which the provisional administration's head is a member, as well as the address thereof;

4) grounds for termination of the provisional administration's activities;

5) other information as provided for by this Federal Law.

**6.** If the commercial court suspends the proceedings on the bankruptcy case during the period of operation of the temporary administration of the financial institution, the message envisaged by Item 5 of this Article shall be directed to the commercial court not later than on the date of its publication by the controlling body.

**Article 183.15.** Preschedule Termination of the Provisional Administration's Activities

**1.** The provisional administration shall terminate its activities ahead of time in case of the following:

1) relieving the provisional administration's head of the duties he/she is charged with;

2) suspension of the discharge by the provisional administration's head, in respect of whom an administrative sanction in the form of disqualification is applied, of the duties imposed upon him/her.

**2.** The control body shall render the decision to relieve the provisional administration's head of discharging the duties he/she is charged with on the basis of an application of the provisional administration's head or in the event of separation of the qualified receiver heading the provisional administration from a self-regulated organisation of qualified receivers.

In the event of separation of the qualified receiver heading the provisional administration from a self-regulated organisation of qualified receivers, this organisation is obliged to send to the control body a petition for relieving the provisional administration's head of discharging his/her duties within seven working days from the date when the standing collective managerial body of the self-regulated organisation of qualified receiver adopts the decision on termination of membership of the qualified receiver heading the provisional administration in the given self-regulated organisation in connection with separation thereof from this organisation. The control body on the basis of a petition of the self-regulated organisation of qualified receivers at the time and in the procedure which are established by the supervisory body shall relieve the provisional administration's head of discharging the duties he/she is charged with. If the petition of the self-regulated organisation of

*[Unofficial translation from Russian]*

qualified receivers has not been received by the control body within fourteen working days from the date of adoption by the standing collective executive body of the self-regulated organisation of the decision to terminate membership of the qualified receiver heading the provisional administration in the given self-regulated organisation, the head of the financial organisation, the control body's representative, self-regulated organisation of which the financial organisation is a member and other persons concerned are entitled to send a petition for relieving the provisional administration's head of discharging the duties he/she is charged with, and the control body on the basis of such petition shall adopt in the procedure established by the federal executive power body engaged in normative legal regulation in the area of the financial organisation's activities a decision on relieving the provisional administration's head of discharging the duties he/she is charged with.

**3.** The control body shall render the decision on relieving the provisional administration's head of discharging the duties he/she is charged with in the event of failure to discharge or improper discharge of the duties the provisional administration's head is charged with in compliance with this Federal Law on the basis of a petition of the financial organisation's head, a representative the control body or the self-regulated organisation of which the financial organisation is a member and of other persons concerned.

**4.** The control body, concurrently with rendering the decision on preschedule termination of the provisional administration's activities, shall adopt a decision on appointing the new provisional administration in the procedure established by this Federal Law.

**Article 183.16.** Bankruptcy Signs and Trying of the Case on a Financial Organisation's Bankruptcy

**1.** A financial organisation shall be deemed unable to satisfy the creditors claims under pecuniary obligations, the claims for payment of severance benefits and/or payment of labour wages to the persons who are working or have been working under a labour contract which are proved by effective judicial acts and/or to discharge the duty of making obligatory payments, if at least on the following bankruptcy signs is present:

1) the amount of creditors' claims concerning pecuniary obligations, the claims for payment of severance benefits and/or payment of labour wages to the persons who are working or have been working under a labour contract which are proved by effective judicial acts and/or obligatory payments against the financial organisation totals to at least one hundred thousand roubles and these claims are not satisfied within fourteen days as from the date when they have to be discharged;

2) the decisions of a general jurisdiction court, commercial court or the judicial act of a general jurisdiction court or commercial court which were not executed within 14 days from the date of their entry into force that serve as the basis for issuance of a writ of execution for enforcement of the arbitral tribunal's award for recovery of monetary assets from the financial organisation, regardless of the amount of creditors' claims;

3) the value of the property (assets) of the financial organisation is insufficient for discharging the financial organisation's pecuniary obligations towards creditors thereof and the duty to make obligatory payments;

4) the financial organisation's solvency was not restored within the period of the provisional administration's activities.

**2.** The case on a financial organisation's bankruptcy shall be tried by a commercial court according to the rules provided for by the Arbitration Procedural Code of the Russian Federation and this Federal Law subject to the specifics established by this paragraph.

**3.** An application for declaring a financial organisation bankrupt shall be accepted by a commercial court, if at least one of the signs of a financial organisation's bankruptcy cited in Item 1 of this Article are present.

**Article 183.17.** Procedures Applicable in Trying the Case on a Financial Organisation's Bankruptcy

**1.** When trying a case on a financial organisation's bankruptcy, the financial improvement and external management provided for by this Federal Law shall not apply.

**2.** In the event of initiating bankruptcy proceedings in respect of a financial organisation on the basis of an application of the provisional administration in connection with impossibility of restoration of the financial organisation's solvency established by the provisional administration, the supervision provided for by this Federal Law shall not apply.

**Article 183.18.** Persons Participating in Commercial Court Proceedings in Respect of the Case on a Financial Organisation's Bankruptcy

**1.** When trying a case on a financial organisation's bankruptcy, the control body shall be recognized as a person participating in commercial court proceedings in respect of the bankruptcy case, along with the other persons cited in Item 1 of Article 35 of this Federal Law.

**2.** When trying a case on bankruptcy of a financial organisation, the self-regulated organisation of financial organisations of which the financial organisation is a member shall recognized, along with the other persons cited in Item 2 of Article 35 of this Federal Law, as a person participating in the commercial court proceedings in respect of the bankruptcy case within the scope of authority established for it by this Federal Law.

*[Unofficial translation from Russian]*

**3.** In the event of introducing supervision in respect of a financial organisation or declaring a financial organisation bankrupt and initiating bankruptcy proceedings in respect of it in the procedure established by this Federal Law, the qualified receiver is obliged to notify within ten working days from the date of introduction of an appropriate procedure applicable in the bankruptcy case the persons cited in Items 1 and 2 of this Article of introducing in respect of the financial organisation the appropriate procedure applicable in the bankruptcy case.

**Article 183.19.** An Application for Declaring a Financial Organisation Bankrupt

**1.** Where it is established by this Federal Law, the right to apply to a commercial court for declaring a financial organisation bankrupt shall be enjoyed, along with the persons cited in Article 7 of this Federal Law, by the provisional administration and control body.

**2.** The right of the bankruptcy creditor to apply to a commercial court for declaring a financial organisation bankrupt shall arise in respect of pecuniary obligations upon the expiry of fourteen days as from the date when such pecuniary obligations become mature.

The right of an authorised body to apply to a commercial court for declaring a financial organisation bankrupt shall arise upon the expiry of fourteen days as from the date of adoption of the decision on recovering debts on account of monetary assets or on account of other debtor's property, or from the date of entry into legal force of the decision of a general jurisdiction court or a commercial court on recovering from the financial organisation debts on obligatory payments.

The right of the provisional administration to apply to a commercial court for declaring a financial organisation bankrupt shall arise from the date of adoption by the control body of the decision on filing by the provisional administration with a commercial court of an application for declaring the financial organisation bankrupt, unless otherwise envisaged by this Federal Law.

The right of the control body to apply to a commercial court for declaring a financial organisation bankrupt shall arise from the date of detecting by the control body of the signs of the financial organisation's bankruptcy, if the provisional administration is not appointed.

The right to file with a commercial court an application for declaring a financial organisation bankrupt shall originate for the debtor's employee or former employee if there is a debt on payment of severance benefits and labour wages in the amount and in the procedure established in compliance with the labour legislation which is proved by an effective judicial act and not discharged within more than three months.

**3.** When applying to a commercial court for declaring a financial organisation bankrupt, the requirements provided for by Item 3 of Article 6 and Item 2 of Article 7 of this Federal Law shall not apply.

**4.** An application of the bankruptcy creditor, the debtor's employee or former employee and of the authorised body for declaring a financial organisation bankrupt shall satisfy the requirements provided for by this Federal Law for an application of the bankruptcy creditor and authorised body respectively, subject to the specifics established by this Article.

**5.** When filing an application for declaring a financial organisation bankrupt, the candidacy of the qualified receiver, denomination and address of the self-regulated organisation one whose member is to be appointed as the qualified receiver shall not be cited therein.

When accepting an application for declaring a financial organisation bankrupt, a commercial court shall apply to the control body which shall introduce to the commercial court the candidacy of the qualified receiver or the self-regulated organisation one of whose members is to be endorsed in the capacity of the qualified receiver within seven working days from the date when the commercial court's address is received.

A procedure for selection by the control body of the candidacy of the qualified receiver or the self-regulated organisation one of whose members is to be endorsed in the capacity of qualified receiver shall be established by the regulation body.

Provisions of paragraphs 2 and 3 of this Item shall not be applied in the case of bankruptcy of an insurance company.

**6.** A copy of an application for declaring a financial organisation bankrupt and copies of the documents to be attached to it shall be sent by the applicant to be debtor and to the control body.

A copy of an application of a financial organisation and/or of the provisional administration for declaring the financial organisation bankrupt and copies of the documents to be attached thereto shall be sent by the applicant to the persons cited in Item 4 of Article 37 of this Federal Law and to the self-regulated organisation of financial organisations of which the financial organisation is a member.

In the application of a bankruptcy creditor for declaring a financial organisation bankrupt where it is established by this Federal Law may not be cited and may not be attached to this application the effective decision of the general jurisdiction court, commercial court or arbitral tribunal that have considered the claims of a bankruptcy creditor against the debtor and the judicial

*[Unofficial translation from Russian]*

act of a general jurisdiction court or commercial court serving as the basis for issuance of a writ of execution for enforcement of an arbitral tribunal's award.

### Article 183.20. An Application of the Control Body for Declaring a Financial Organisation Bankrupt

**1.** An application of the control body for declaring a financial organisation bankrupt shall be filed with a commercial court in writing. The cited application shall be signed by the head of the control body or by the person authorized by the control body's head to file an application for declaring the financial organisation bankrupt.

**2.** The following shall be cited in an application of the control body for declaring a financial organisation bankrupt:

1) denomination of the commercial court with which the cited application is to be filed;

2) denomination of the financial organisation, its address and data identifying the financial organisation (the state registration number of the entry on the state registration of a legal entity, taxpayer's identification number);

3) denomination of the control body and its address;

4) amount of creditors' claims under pecuniary obligations, amount of debts on obligatory payments, value of the financial organisation's property (assets) or other data related to trying the bankruptcy case;

5) candidacy of the interim receiver (full name of the qualified receiver, denomination and address of the self-regulated organisation of which he/she is a member) or denomination of the self-regulated organisation one of whose members is to be endorsed as the interim receiver and its address;

6) list of attached documents.

**3.** The petitions available to the control body may be attached to an application of the control body for declaring a financial organisation bankrupt.

**4.** A copy of an application for declaring a financial organisation bankrupt shall be sent by the control body to the financial organisation and to the self-regulated organisation of financial organisations of which the financial organisation is a member.

**5.** A procedure for selection by the control body of the candidacy of the qualified receiver or of the self-regulated organisation one of whose members is to be endorsed as the qualified receiver shall be established by the regulation body.

### Article 183.21. The Application of the Provisional Administration for Declaring a Financial Organisation Bankrupt

**1.** An application of the provisional administration for declaring a financial organisation bankrupt shall be filed with a commercial court in writing. The cited application shall be signed by the head of the provisional administration.

**2.** The following shall be cited in an application of the provisional administration for declaring a financial organisation bankrupt:

1) denomination of the commercial court which the cited application is to be filed with;

2) denomination of the financial organisation, its address and data identifying the financial organisation (the state registration number of the entry on the state registration of a legal entity, taxpayer identification number);

3) full name of the head of the provisional administration and address for sending mail thereto, document proving the endorsement thereof in the capacity of the provisional administration's head;

3.1) name of the self-regulating organisation, whose member the head of the temporary administration of the financial institution is and address of the self-regulating organisation, if the bankruptcy manager is appointed head of the temporary administration of the financial institution;

4) amount of creditors' claims under pecuniary obligations, amount of debts on obligatory payments, value of the property (assets) of the financial organisation or other data related to trying the bankruptcy case;

5) candidacy of the winding-up receiver (full name of the qualified receiver, denomination and address of the self-regulated organisation of which he/she is a member), if it is not the Agency by virtue of this Federal Law, or denomination of the self-regulated organisation one of whose members is to be endorsed in the capacity of the winding-up receiver and its address;

6) list of attached documents.

**3.** To an application of the provisional administration for declaring a financial organisation bankrupt may be attached a copy of the control body's decision on filing by the provisional administration with a commercial court an application for declaring the financial organisation bankrupt, unless this Federal Law establishes that such decision shall be taken by the temporary administration, as well as may be attached the petitions available to the provisional administration.

*[Unofficial translation from Russian]*

**4.** A copy of an application for declaring a financial organisation bankrupt shall be sent by the provisional administration to the control body, financial organisation and self-regulated organisation of financial organisations of which the financial organisation is a member.

**5.** The candidacy of the qualified receiver or the self-regulated organisation one whose members is to be endorsed in the capacity of the qualified receiver shall be selected by the control body in compliance with Item 5 of Article 183.20 of this Federal Law.

**Article 183.22.** Documents to Be Attached to Applications of the Provisional Administration and the Control Body for Declaring a Financial Organisation Bankrupt

**1.** Along with the documents provided for by the Arbitration Procedural Code of the Russian Federation, the following documents shall be attached to the provisional administration's application for declaring a financial organisation bankrupt:

1) the financial organisation's constituent documents, certificate of the state registration of a legal entity;

2) the accounting balance sheet of the financial organisation as of the last reporting date or documents used in place of it;

3) the decision of the control body on filing by the provisional administration an application with a commercial court for declaring the financial organisation bankrupt, unless this Federal Law establishes that such decision shall be taken by the temporary administration;

4) a report on the value of the financial organisation's property drawn up by an appraiser (if such report is available);

5) an opinion about the financial status of the financial organisation, if an application for declaring the financial organisation bankrupt is filed in compliance with Article 183.13 of this Federal Law, or a report on the provisional administration's activities, if an application for declaring the financial organisation bankrupt is filed in compliance with Article 183.14 of this Federal Law;

6) other documents where it is provided for by this Federal Law.

**2.** Along with the documents provided for by the Arbitration Procedural Code of the Russian Federation to the control body's application for declaring a financial organisation bankrupt shall be attached a copy of the control body's decision on applying to a commercial court for declaring the financial organisation's bankrupt and the copies of the financial organisation's constituent documents available to it, of the certificate of the state registration of a legal entity, the financial organisation's accounting balance sheet as of the last reporting date or copies of the documents used instead of it.

**Article 183.23.** Acceptance of an Application for Declaring a Financial Organisation Bankrupt and Initiation of Bankruptcy Proceedings in Respect of a Financial Organisation

**1.** Copies of a commercial court's ruling on acceptance of an application for declaring a financial organisation bankrupt shall be sent at the latest on the working day following the date when it is issued to the applicant, the financial organisation and the control body.

**2.** The control body at the latest on the working day following the date when a copy of a commercial court's ruling on acceptance of an application for declaring a financial organisation bankrupt is received is bound to send a copy of the cited ruling to the Agency and the self-regulated organisation of financial organisations, of which the financial organisation is a member.

**Article 183.24.** Specifics of Court Proceedings in Respect of a Case on Bankruptcy of a Financial Organisation

In case of initiating bankruptcy proceedings in respect of a financial organisation on the basis of the provisional administration's application for declaring the financial organisation bankrupt the case on bankruptcy of the financial organisation shall be tried by a commercial court within the time period of at most four months as from the date of acceptance by the commercial court of the application for declaring the financial organisation bankrupt, including the time period for preparing the case for trying and adoption of a decision on this case.

**Article 183.25.** Requirements for the Qualified Receiver in a Case on Bankruptcy of a Financial Organisation

**1.** Along with the requirements established by Articles 20 and 20.2 of this Federal Law, the qualified receiver in a case on bankruptcy of a financial organisation is obliged to pass an additional examination according to the programme of training qualified receivers in cases on bankruptcy of appropriate financial organisations endorsed by the Bank of Russia, namely:

1) abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

2) the qualified receiver in a case on bankruptcy of a non-governmental pension fund is obliged to pass an examination according to the programme of training qualified receivers in cases on bankruptcy of non-governmental pension funds;

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 41 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 163
of 317
*[Unofficial translation from Russian]*

3) the qualified receiver in a case on bankruptcy of a professional securities market participant or the a management company of investment funds, unit investment funds and non-governmental pension funds is obliged to pass an examination according to the programme of training qualified receivers in cases on bankruptcy of professional securities market participants and management companies of investment funds, unit investment funds and non-governmental pension funds.

4) the qualified receiver in the bankruptcy case of a credit co-operative shall pass examination according to the program of the preparation of insolvency administrators in bankruptcy cases of the credit co-operatives;

5) a bankruptcy manager involved in the bankruptcy case of a clearing institution must pass an examination under the training program for bankruptcy managers in cases of clearing institutions bankruptcy;

6) a bankruptcy manager involved in the bankruptcy case of a market maker must pass an examination under the training program for bankruptcy managers in cases of market makers bankruptcy;

7) a bankruptcy manager involved in the bankruptcy case of a microfinance organisation must pass an examination under the training program of bankruptcy managers in cases of microfinance organisations bankruptcy.

**2.** An commercial court may not endorse as the interim receiver or winding-up receiver in a case on bankruptcy of a financial organisation the qualified receiver:

1) who was taken off discharging the duties he/she had been charged with within the last two years in connection with failure to discharge them or with their improper discharge;

2) who acted within the last three years as the head or deputy head of a financial organisation whose licence for exercising an appropriate kind of activities was withdrawn or cancelled, except when discharging the duties of the provisional administration members;

3) who was exercising the functions of the one-man executive body or was a member of the collective executive body of a financial organisation when this financial organisation made the violations for which its licence for exercising an appropriate kind of activities was withdrawn or cancelled, if less that three years have passed since the date of such withdrawal or cancellation.

4) not meeting the requirements envisaged by Item 1 of the present article.

**3.** A person included in the provisional administration may not be endorsed in the capacity of the qualified receiver.

**4.** The requirements for the head of an appropriate financial organisation established by the legislation of the Russian Federation regulating the activities of an appropriate financial organisation shall not apply to the qualified receiver in a case on bankruptcy of the financial organisation.

**Article 183.26.** Specifics of Establishing Creditors' Claims in a Case on Bankruptcy of a Financial Organisation

**1.** For the purpose of participating in a case on bankruptcy of a financial organisation creditors are entitled to raise their claims against the financial organisation:

1) in the course of supervision within thirty calendar days as from the date of publishing information about the introduction of supervision;

2) in course of bankruptcy proceedings within two months as from the date of publishing data on declaring the financial organisation bankrupt.

**2.** The creditors' claims cited in Item 1 of this Article shall be sent to a commercial court, financial organisation and qualified receiver with the documents proving the reasonableness of these claims attached thereto.

**3.** The qualified receiver shall include the received claims into the register of creditors' claims which shall be kept in the procedure established by Article 16 of this Federal Law subject to the specifics established by this Article. The qualified receiver is not entitled to deny the inclusion of received claims in the register of creditors' claims. A register of creditors claims shall be subject to closure upon the expiry of the time periods fixed by Item 1 of this Article.

The qualified receiver is obliged to make possible for a financial organisation, a representative of the founders (participants) of the financial organisation, of the self-regulated organisation of financial organisations of which the financial organisation is a member, creditors that have raised claims against the debtor, as well as for other persons participating in bankruptcy proceedings, to get familiar with the register of creditors' claims and with grounds for inclusion of claims in the register of claims of the financial organisation's creditors (in particular with the claims and with the documents attached to them).

**4.** When drawing up a register of creditors' claims, the following shall be included in it:

1) in the course of supervision - the claims raised within the time periods fixed in Subitem 1 of Item 1 of this Article;

*[Unofficial translation from Russian]*

2) in the course of supervision - the claims raised in the course of supervision upon the expiry of the time periods fixed in Subitem 1 of Item 1 of this Article, as well as the claims raised in the course of bankruptcy proceedings before the expiry of the time periods fixed by Subitem 2 of Item 1 of this Article.

**5.** Objections as to the creditors' claims included in the register of creditors' claims may be presented to a commercial court by the financial organisation, interim receiver or winding-up receiver, by a representative of the financial organisation's founders (participants), the self-regulated organisation of financial organisations of which the financial organisation is a member, as well as by the creditors that have raised claims against the financial organisation. Such objections shall be presented within 30 days as from the date of closing a register of creditors' claims.

**6.** Where there are objections as to the claims of the creditors cited in Item 1 of this Article, a commercial court shall check if the cited claims are reasonable and if there are grounds for inclusion of the cited claims in a register of creditors' claims.

The creditors' claims in respect of which there are objections shall be considered by a judge of a commercial court in the commercial court's session within a month as of the end date of the time period for making objections against creditors' claims which is fixed by Item 5 of this Article.

On the basis of the results of the cited claims' consideration a ruling shall be issued as to the inclusion of the cited claims in the register of creditors' claims or on the refusal to do it. An commercial court's ruling on the inclusion of creditors' claims in a register of creditors' claims shall specify the extent of the cited claims and an order of their satisfaction.

A ruling on the inclusion of creditors' claims in a register of creditors' claims or on the refusal to do it shall enter into effect immediately and may be appealed against. A ruling on the inclusion of creditors' claims in a register of creditors' claims or on the refusal to do it shall be sent by the commercial court to the financial organisation, the qualified receiver, the creditor that has raised the cited claims and to the holder of the register.

**7.** The creditors' claims which are cited in Item 1 of this Article and in respect of which there are no objections received in the procedure and at the time which are established by this Federal Law shall be recognized as established in the composition, extent and order which are declared by creditors in compliance with the requirements of this Federal Law and shall be subject to inclusion by the qualified receiver in the register of creditors' claims after closing the register of creditors' claims.

For the purpose of determining the number of votes held by bankruptcy creditors and authorised bodies at a creditors' meeting shall be taken into account the claims included into the register of creditors' claims.

In the event of inclusion by an qualified receiver in a register of creditors' claims in defiance of the rules established by Paragraph One of this item a claim in respect of which there is an objection, the person that has made such objection is entitled to file within ten days from the date when this person learnt or could learn about such inclusion with a commercial court a complaint against the given actions of the qualified receiver which shall be considered by the commercial court according to the rules established by Item 6 of this Article.

**8.** The composition, extent and order of allowing other creditors' claims, in particular the claims raised after closing the register of creditors' claims, shall be established in the procedure set by this Federal Law without regard to the provisions provided for by this Article.

**Article 184.** Abrogated.

**Article 184.1.** Additional Grounds for Taking Measures Aimed at Preventing Bankruptcy of an Insurance Organisation

**1.** The refusal to allow creditors' claims under the pecuniary obligations provided for by Subitem 1 of Item 1 of Article 183.2 of this Federal Law means the following for insurance organisations:

1) failure to discharge or improper discharge at the time fixed by a federal law and an insurance contract the duty of making an insurance payment or payment of an insured amount, return of a part of the insurance premium or payment of a surrender value due to the early termination of the insurance agreement, or failure to discharge or improper discharge of the cited duty established by an effective judicial act;

2) failure to discharge or improper discharge of any other claim of creditors under pecuniary obligations.

**2.** The duty provided for by Subitem 1 of Item 1 of this Article to allow creditors' claims under the pecuniary obligations whose composition and extent are established by an effective judicial act shall arise starting from the date when the writ of execution issued on the basis of the effective judicial act is surrendered for execution.

**3.** As additional grounds for taking measures aimed at preventing bankruptcy of an insurance organisation shall be deemed the following:

1) repeated violation of requirements for financial stability and solvency as related to the regulatory ratio of own funds (capital) of the insurance company and the obligations taken and/or the procedure and the terms for investment of own funds (capital) and/or funds of insurance reserves, established by the legislation of the Russian Federation regulating insurance

*[Unofficial translation from Russian]*

activities during 12 months from the date of revelation of the first violation;

2) abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

3) withdrawal of the licence for exercising insurance activities;

4) suspension of the licence for exercising insurance activities;

5) restriction of operation of the licence for exercising insurance activities with respect to obligatory kinds of insurance.

**4.** Where an insurance organisation is engaged in the kind of insurance connected with the activities of a professional association of insurers or other organisation which is charged under federal law with the duty of making compensation payments under this kind of insurance, in particular, as a result of following the procedures applicable in a case on bankruptcy of an insurance organisation or withdrawal of the licence for exercising insurance activities (hereinafter referred to as a professional association), the head of the insurance organisation shall be also obliged to send a notice to such professional association within seven working days as from the date when the grounds for taking measures aimed at preventing the insurance organisation's bankruptcy arise.

When taking measures aimed at preventing bankruptcy of an insurance organisation, following procedures applicable in a case on bankruptcy of an insurance organisation, professional associations shall enjoy the rights and discharge the duties provided for by Articles 183.1-183.26 of this Federal Law for self-regulated organisations of financial organisations.

**5.** In case of suspension or restriction of a licence for insurance activities on compulsory types of insurance, the supervisory body shall, on grounds envisaged in Article 183.2 of this Federal Law and in cases established by it, assign a temporary administration of an insurance company.

**6.** Unless otherwise envisaged by this Federal Law, the controlling body shall have the right to appoint a temporary administration of the insurance company on the following grounds:

1) suspension or recall of the licence for insurance activities since the insurance company is carries out operations prohibited by the legislation of the Russian Federation, violates the requirements of the legislation of the Russian Federation regulating insurance activities;

2) insufficiency of funds for timely fulfillment of monetary obligations and/or the obligation of making mandatory payments;

3) revelation of grounds cited in Subitem 1 of Item 3 of this Article, if the insurance company failed to notify the controlling body on existence of the violations, attaching the solvency recovery plan;

4) initiation of proceedings on the case of bankruptcy of the insurance company.

**6.1.** Appointment of a temporary administration of the insurance company shall be obligatory in the following cases:

1) recall of the licence for insurance activities or its suspension due to the non-observance by the insurance company of the legislation of the Russian Federation regulating insurance activities as related to the procedure and the terms for formation, placement or investment of funds of insurance reserves and/or own funds (capital) and/or the regulatory ratio of the assets and the obligations taken and/or other established requirements for ensuring financial stability and solvency;

2) issuance by the commercial court of a ruling on acknowledgement of claims of the applicant justified.


**6.2.** Appointment of temporary administration of the insurance company on the grounds cited in this Article and determination of its members shall be done by the controlling body not later than on the date of taking of the decision regarding recall of the licence for insurance activities or its suspension or issuance by the commercial court of a ruling for acknowledgement of claims of the applicant in the application for acknowledgement of the debtor bankrupt justified. In other cases, the term of appointment of temporary administration of the insurance company shall be determined by the controlled body at taking of the decision regarding appointment of the temporary administration of the insurance company and shall be specified in the respective act of the controlling body.

Temporary administration of the insurance company shall be accountable to the controlling body for execution of functions imposed on it, using the procedure established by regulatory acts of the controlling body.

**6.3.** Upon decision of the controlling body, the head of the temporary administration and/or other member of the temporary administration of the insurance company shall be released from the position in case of non-fulfillment or undue fulfillment of their duties.

Together with taking of the decision regarding release of the head of the temporary administration and/or other member

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 44 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 166
of 317                              *[Unofficial translation from Russian]*

of the temporary administration of the insurance company from the position, the controlling body shall take a decision to appoint other head and/or other member of the temporary administration through the procedure established by this Federal Law.

**7.** In case of appointment of temporary administration of the insurance company on grounds envisaged by Subitems 1 and 2 of Item 6.1 of this Article, the authority of the executive bodies of the insurance company shall be suspended by the decision of the controlling body.

**8.** The control body's decision on appointing the provisional administration of an insurance organisation shall be adopted on the basis of the results of an inspection of the insurance organisation's activities held by the control body at most six months before the date of adoption of the decision on appointing the insurance organisation's provisional administration, except when the appointment of the provisional administration of an insurance organisation is obligatory as provided for by Item 1 of this Article and Article 183.5 of this Federal Law.

The control body's decision on appointing the provisional administration of an insurance organisation may be adopted upon the completion of an inspection of the insurance organisation's activities, if in the course of this inspection the grounds have been detected for obligatory appointment of the insurance organisation's provisional administration.

A regulatory act of the supervisory body may provide for other grounds on the basis of which the control body in the course of inspecting the insurance organisation's activities is entitled to appoint the provisional administration of the insurance organisation prior to completing such inspection or upon its completion.

A procedure for adoption by the control body of the decision on appointing the provisional administration of an insurance organisation shall be approved by the monitoring body.

**9.** An official of the controlling body shall be appointed head of the temporary administration of the insurance company. In case of suspension of the authority of executive bodies of the insurance company, head of the temporary administration of the insurance company shall operate in the name of the insurance company without a power of attorney.

The composition of the temporary administration of the insurance company shall be determined by an order of the controlling body to be included by the controlling body in the unified federal register of information on bankruptcy not later than on the business day following the day of adoption of the said act. Head of the temporary administration of the insurance company shall distribute duties among members of the temporary administration and shall bear responsibility for its operation.

members of the temporary administration of the insurance company shall be:

employees of the controlling body:

employees of the Agency upon agreement with the Agency:

representatives of the professional association, whose member the insurance company is or was, upon agreement with such professional association:

representatives of the self-regulating organisation, whose member the insurance company is, upon agreement with such self-regulating organisation.

With that, provisions of Item 11 of Article 183.6 of this Federal Law shall not be applicable.

**10.** The remuneration provided for by Article 183.6 of this Federal Law for the members of the provisional administration of an insurance organisation who are employees of the controlling body or the Agency's employees shall not be paid.

To ensure fulfillment of duties imposed on the temporary administration of the insurance company, the head of the temporary administration shall have the right to involve accountants, auditors, specialised depositories, valuers, actuaries, electronic floor operators and other persons on a contract basis using the procedure set by the controlling body, with payment for their services with the assets of the insurance company, and to bear other current expenses related to fulfillment of their duties on the basis of the operating budget. If the liquid assets of the insurance company are insufficient, the expenses shall be covered with funds on the controlling body through the procedure established by the controlling body. The procedure for referral of assets of the insurance company to liquid assets shall be set by the controlling body. Claims acquired by the controlling body as a result of expenses borne with involvement of the persons cited in this paragraph, shall be satisfied at the account of assets of the insurance company or at the account of bankruptcy estate within the third priority of claims of creditors of the insurance company on current payments.

Estimate of expenses related to the activities of temporary administration of the insurance company shall be approved by the controlling body through the procedure established by it.

**11.** Claims of creditors stated to the insurance company that the temporary administration of the insurance company has shall be transferred to the bankruptcy manager according to a checklist and using the procedure set by Item 4 of Article 183.14 of this Federal Law and shall be the ground for the subsequent inclusion of such claims in the register of creditors'

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 45 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 167
of 317
*[Unofficial translation from Russian]*

claims.

**12.** Temporary administration of the insurance company shall have the right to appeal in the commercial court against transactions of the insurance company on grounds and through the procedure envisaged by Chapter III.1 of this Federal Law.

**13.** Temporary administration of the insurance company shall operate in accordance with this Federal Law, other federal laws and regulatory acts of the controlling body.

**Article 184.1-1.** Analysis of Financial Standing of the Insurance Company

**1.** For analysis of financial standing of the insurance company by temporary administration, provisions of Article 183.13 of this Federal Law shall not be applied.

**2.** Temporary administration of the insurance company shall analyse financial standing of the insurance company and prepare an opinion on the results not later than within 45 days after the date of its appointment.

Requirements for the procedure of analysis of financial standing of the insurance company and for the form of the opinion on its financial standing shall be determined by the controlling body.

**3.** Opinion on financial standing of the insurance company, except for the cases when it is prepared after recall of the licence for insurance activities from the insurance company, shall also contain:

1) indication of reasons behind creation of grounds for taking bankruptcy prevention measures;

2) result of analysis of the insurance portfolio, considering the reinsurance activities of the insurance company and the scope of obligations taken by the insurance company under insurance agreements;

3) conclusions regarding the possibility of transfer of the insurance portfolio;

4) conclusions regarding the possibility of recovery of solvency of the insurance company.

**4.** If the opinion on financial standing of the insurance company contains a conclusion regarding impossibility of recovery of its solvency, the temporary administration shall prepare a plan of solvency recovery within not more than 12 business days from the day of drawing up of the opinion on financial standing of the insurance company. If the term for implementation of such plan exceeds the term, for which the temporary administration is appointed, the controlling body shall extend the term of operation of the temporary administration in accordance with Item 1 of Article 183.12 of this Federal Law.

**5.** If the opinion on financial standing of the insurance company contains a conclusion regarding a possibility of transfer of the insurance portfolio, including that by types of insurance, for which compensatory payments are envisaged, the temporary administration shall organise transfer of the insurance portfolio by the said insurance types according to the procedure and on conditions established by the controlling body.

**6.** If the temporary administration of the insurance company draws a conclusion that recovery of its solvency is impossible following the results of analysis of its financial standing, the temporary administration shall apply to the commercial court for acknowledgement the insurance company bankrupt within 5 business days from the date of drawing up of a conclusion on financial standing of the insurance company.

**7.** Temporary administration of the insurance company shall ensure the possibility of familiarization with the opinion on financial standing of the insurance company for the head of the insurance company.

Temporary administration of the insurance company shall be obliged to direct a notification of the possibility of familiarization with the opinion on financial standing of the insurance company to its head not later than on the day following the day of drawing up of the opinion using the method ensuring delivery of the notification within 3 days from the day of direction of the notification.

**Article 184.2.** Specifics of Defining Bankruptcy Signs in Respect of an Insurance Organisation

When defining the signs of bankruptcy of an insurance organisation provided for by Subitem 1 of Item 1 of Article 183.16 of this Federal Law in respect of the insurance organisation's duty connected with making an insurance payment shall be taken into account the duty of making the insurance payment or payment of the insured amount, as well as of return of a part of the insurance premium or payment of the surrender value in connection with preschedule termination of an insurance contract, established by a federal law, or a contract of insurance, or an effective judicial act.

**Article 184.3.** Specifics of Executing Functions of a Temporary Administration of the Insurance Company in Case of Suspension of Authority of Executive Bodies of the Insurance Company

**1.** In case of suspension of authority of executive bodies of an insurance company, its temporary administration shall withdraw accountable forms on all types of activities and other documents whose safety the insurance company shall be obliged to provide in accordance with the legislation of the Russian Federation regulating the insurance activities, and regulatory acts of the controlling body, from insurance agents of the insurance company and other persons whom the said documents were

*[Unofficial translation from Russian]*

transferred.

**2.** In case of initiation of bankruptcy proceedings in respect of the insurance company, the documents cited in Item 1 of this Article shall be transferred by the temporary administration to the bankruptcy manager within the term not exceeding 10 business days from the day of issuance by the commercial court of the decision on acknowledgement of the insurance company bankrupt, through the procedure established by the controlled body.

**Article 184.4.** Specifics of Consideration of Case of Bankruptcy of the Insurance Company

**1.** The right to apply to a court for declaring an insurance organisation bankrupt shall be enjoyed, along with the persons cited in Articles 7 and 183.19 of this Federal Law, by a professional association.

**2.** An application of a professional association for declaring an insurance organisation bankrupt shall satisfy the requirements provided for by Article 183.19 of this Federal Law.

**3.** In case of initiation of a bankruptcy case in respect of the insurance company, the consideration envisaged by this Federal Law shall not be applied.

If the commercial court issues a ruling on acknowledgement of claims of the applicant justified, the commercial court shall suspend the proceedings on the bankruptcy case of the insurance company until the moment of application by the controlling body or the temporary administration to the commercial court for acknowledgement of the debtor bankrupt or for termination of operation of the temporary administration of the insurance company with the conclusion of recovery of solvency of the debtor and the possibility of satisfaction of creditors' claims. Provisions of this paragraph shall not be applied, if the applicant on the bankruptcy case is the controlling body or the temporary administration of the insurance company.

**Article 184.4-1.** Specifics of Bankruptcy Proceedings in the Case of Bankruptcy of the Insurance Company

**1.** Bankruptcy proceedings shall be initiated for one year. The term of bankruptcy proceedings can be extended for 6 months upon application of the person participating in the case of bankruptcy of the insurance company.

**2.** The Agency shall have the authority of the bankruptcy manager in the case of bankruptcy of the insurance company.

The Agency shall exercise the authority of a bankruptcy manager via a representative (representatives) appointed out of its employees and acting on the basis of an order (hereinafter - the Agency representative).

The Agency representative shall have the right to issue powers of attorney in the name of the insurance company and recall them, if he/she has such authority. The order of the Agency on appointment of a representative shall be published on the official website of the Agency at the date of its adoption.

**3.** Requirements of this Federal Law related to insurance of liability for the case of infliction of loss to persons participating in the bankruptcy case of the insurance company, to membership in the self-regulating organisation of bankruptcy managers, to release or suspension from obligations imposed on the bankruptcy manager, shall not be applicable to the Agency as the bankruptcy manager of the insurance company and to representatives of the Agency.

**4.** As the bankruptcy manager of the insurance company, the Agency shall be the person participating in the case of bankruptcy of the insurance company and keep a register of claims of creditors of the insurance company without involvement of the register holder.

In the course of exercise of authority of the bankruptcy manager, the Agency shall be guided by provisions of this Federal Law, except for paragraphs 5, 8 and 9 of Item 1, paragraph 10 of Item 2 and Item 6 of Article 20.3 of this Federal Law.

The Agency shall start executing functions of the bankruptcy manager from the day of issuance by the commercial court of the decision on acknowledgement of the insurance company bankrupt and on initiation of bankruptcy proceedings, and shall operate until the day of making an entry on liquidation of the insurance company in the unified state register of legal entities.

In the course of bankruptcy proceedings, a key account of the debtor shall be opened with the Agency for the insurance company.

For execution of functions of the bankruptcy manager envisaged by this Federal Law, the Central Bank of the Russian Federation shall open accounts for funds in the currency of the Russian Federation for the Agency.

Depending on the number of types of foreign currency that the insurance company has, the Agency as the bankruptcy manager shall open the necessary number of foreign currency accounts for the insurance company in credit institutions using the procedure established by the controlling body.

**5.** The bankruptcy manager shall withdraw accountable forms and other documents, whose safety the insurance company shall be obliged to provide in accordance with the legislation of the Russian Federation regulating insurance activities and regulatory acts, and insurance agents and other persons whom accountable forms of the insurance company were

*[Unofficial translation from Russian]*

transferred, shall transfer them to the bankruptcy manager within a month from the day of acknowledgement of the insurance company bankrupt through the procedure established by the controlling body.

Accountable forms shall be destroyed by the bankruptcy manager before completion of the bankruptcy proceedings in the presence of representatives of the professional association according to the procedure established by the controlling body.

Within a month from the date of acknowledgement of the insurance company bankrupt, the persons that had the authority to conclude insurance agreements shall be obliged to provide information on the insurance agreements concluded, not provided to the insurance company earlier, to the bankruptcy manager. The bankruptcy manager shall be obliged to ensure collection of such information and enter them in the respective information systems according to the requirements of the legislation of the Russian Federation regulating the insurance activities, within 10 business days from the day of their receipt.

**6.** The bankruptcy manager shall have the right to request the necessary information on the insurance company, persons that are members of the managing bodies of the insurance company, controlling persons, their assets (including property rights), counterparties and on obligations of the insurance company, including information that is official, commercial or bank secret, from individuals (including employees of the insurance company), legal entities (including asset management companies, specialised depositories, actuaries and audit companies), state authorities, management bodies of state extra-budgetary funds of the Russian Federation and local authorities, and to receive such information from them. For the purpose of bankruptcy proceedings, no consent to processing of personal data is required.

The persons cited in this Item shall be obliged to provide information at request of the bankruptcy manager not later than within 10 business days from the day of receipt of the request.

**7.** No remuneration shall be paid to the Agency for exercise of authority of the bankruptcy manager in the case of bankruptcy of the insurance company.

Expenses of the Agency related to exercise of authority of a bankruptcy manager shall be compensated with assets of the insurance company in accordance with the operating budget.

The bankruptcy manager shall have the right to advance the expenses related to fulfillment of his duties, including expenses for payment of services rendered by persons whose involvement for such fulfillment of duties in the bankruptcy case is obligatory in accordance with this Federal Law, out of his own funds with their subsequent return at the account of bankruptcy estate, within the creditors' claims on current payments in compliance with the priority set for the respective type of expenses referred to current payments.

To secure fulfillment of obligations of the bankruptcy manager in the case of bankruptcy of the insurance company, the bankruptcy manager shall have the right to involve accountants, auditors, specialised depositories, valuers, actuaries, electronic floor operators and other persons with payment for their services with assets of the insurance company using the procedure established by the controlling body, on a contract basis, and to undertake other current expenses related to exercise of his authority, in the amount set by the operating budget of the insurance company.

The operating budget of the insurance company as related to expenses incurred after the first meeting of creditors shall be approved (amended) by the meeting of creditors or, if a committee of creditors is formed by it - by such committee by the proposal of the bankruptcy manager.

The operating budget of the insurance company shall be submitted to the first meeting of creditors for approval or, if a committee of creditors is formed - to such committee not later than within 3 days from the day of its formation. In case of non-approval (a refuse to approve) of the operating budget of the insurance company by the meeting of creditors or the committee of creditors, the meeting of creditors, the committee of creditors or the bankruptcy manager shall have the right to apply to the commercial court considering the case of bankruptcy of the insurance company, within such case, for settlement of the disagreement between the bankruptcy manager and the meeting of creditors or the committee of creditors. Following the results of consideration of the disagreement, the commercial court shall approve the operating budget of the insurance company to be spent after issuance of the related court act.

The operating budget of the insurance company approved by the meeting of creditors, committee of creditors or the commercial court using the procedure established by this Item, shall be amended by the meeting of creditors or the committee of creditors by the proposal of the bankruptcy manager and, if there is a disagreement between them regarding making amendments to the operating budget - by the commercial court considering the case of bankruptcy of the insurance company, within such case.

Before approval (amendments) of the operating budget of the insurance company by the meeting of creditors, the committee of creditors or the commercial court through the procedure established by this Item, the operating budget of the insurance company approved (amended) by the controlling body shall be applicable.

Payment for services of the persons, whose involvement is envisaged by the decision of the meeting of creditors, shall be at the account of funds of creditors that voted for such decision, proportionally to the amount of their claims included in the

register of creditors claims as of the date of holding of the meeting of creditors, except for the cases when one or several creditors have undertaken to pay for services of such persons.

Payment for services of persons, the decision on whose involvement is taken by the creditor, whose claims are secured with pledge of assets, shall be at the account of funds of the related creditor.

**8.** If exercise of authority of the head of the insurance company is related to access to information that is a state secret, the representative of the Agency shall have the access to the state secret according to the form corresponding to the access form necessary for exercise of authority of the head of such insurance company and corresponding to the top secret information circulating in such insurance company.

**9.** The bankruptcy manager shall be obliged to direct a copy of the report on its activities to be drawn up in accordance with Article 143 of this Federal Law, to the controlling body through the procedure and within terms established by the controlling body, after its submission and consideration by the board of creditors and/or the committee of creditors and, subsequently - a copy of the report on the results of the bankruptcy proceedings, prepared in accordance with Article 147 of this Federal Law.

**10.** The bankruptcy manager shall submit the accounting (financial) and statistical reports of the insurance company and information on the progress of the bankruptcy proceedings, including the report on use of funds of the debtor, to the controlling body using the procedure established by the controlling body, on a quarterly basis.

**11.** The controlling body shall have the right to carry out inspections of activities of the bankruptcy manager in cases and through the procedure established by the controlling body.

**12.** The meeting of creditors and/or the committee of creditors shall have the right to refer to the controlling body or the commercial court considering the bankruptcy case of the insurance company, within such case, with a complaint about actions (omission) of the bankruptcy manager. If the controlling body receives a complaint about actions (omission) of the bankruptcy manager from the meeting of creditors and/or the committee of creditors, the controlling body shall be obliged to consider the complaint and take one of the following decisions within a 30-day term:

1) to direct an order for elimination of violation of regulatory legal acts regulating the relations connected to insolvency (bankruptcy) of the insurance company to the bankruptcy manager;

2) to carry out inspection of the activities of the bankruptcy manager;

3) to acknowledge the complaint unjustified.

**13.** The controlling body shall direct an order for elimination of violation of regulatory legal acts regulating the relations connected to insolvency (bankruptcy) of the insurance company that are revealed according to the data of the reporting provided by the bankruptcy manager or during the inspection of his activities, to the bankruptcy manager.

If the controlling body reveals violations in the course of exercise by the Agency of the authority of bankruptcy manager, the Agency shall be obliged to take measures for elimination of the violations and inform the controlling body of it within 10 business days from the day of receipt of the order of the controlling body.

Failure of the Agency to execute the order of the controlling body for elimination of the violation shall be the ground for application of the controlling body to the commercial court considering the bankruptcy case, within such case, for acknowledgement of actions of the bankruptcy manager illegal and for coercion of the bankruptcy manager to eliminate the violation or for suspension of the representative of the Agency and/or with a demand for indemnification of losses inflicted as a result of the said actions.

**14.** The damage inflicted as a result of actions of a representative of the Agency in the course of fulfillment of duties of a bankruptcy manager to the persons participating in the bankruptcy case or to other persons, shall be indemnified at the account of the Agency.

**15.** A ruling of the commercial court on acknowledgement of actions of the bankruptcy manager illegal and on coercion of the bankruptcy manager to eliminate the violation or to suspend the representative of the Agency and/or on recovery of damages inflicted as a result of the said actions, in the course of fulfillment of duties of the bankruptcy manager shall be immediately executed and can be appealed against.

Not later than on the day following the day of issuance by the commercial court of the ruling for suspension of the representative of the Agency from fulfillment of duties of the bankruptcy manager, the Agency shall be obliged to appoint another representative for exercise of authorities of the bankruptcy manager out of its employees.

**Article 184.5.** The Right of Claim of Insurants and Other Persons in Case of Declaring an Insurance Organisation Bankrupt and Initiating Bankruptcy Proceedings

**1.** In the event of adoption by a commercial court of the decision on declaring an insurance organisation bankrupt and

*[Unofficial translation from Russian]*

on initiating bankruptcy proceedings, insurants are entitled to unilaterally renounce an insurance contract within a month from the date of receiving a notice of the winding-up receiver of declaring the insurance organisation bankrupt.

Due notification of the insurants shall be deemed publication of information on acknowledgement of the debtor bankrupt and on initiation of bankruptcy proceedings using the procedure established by Article 28 of this Federal Law, if the number of creditors exceeds 500, and in case of impossibility of revelation of information necessary for personal notification of the insurant at the place of its permanent or prevailing residence, or if there are other circumstances making the notification of the said persons impossible.

**2.** When terminating an insurance contract for the grounds cited in Item 1 of this Article, the insurant is entitled to a part of the insurance premium paid by the insurance organisation which is proportionate to the difference between the term for which the insurance contract has been made and the time period within which it was in effect (an unexpired validity term of the insurance contract) or to payment of a redemption amount.

**3.** When receiving by an insurant or other person for whose benefit an insurance contract has been made (an insured person or beneficiary) a compensation payment under the insurance contract which provides under federal law for the right of receiving it on account of the assets of professional associations, the given persons shall enjoy the right of claim against the debtor in the amount exceeding the amount of the received compensation payment.

When receiving by an insurant, insured person or beneficiary a compensation payment according to the claim (a part of the claim) included into a register of creditors' claims, the amount of such claim shall be reduced by the winding-up receiver by the sum of the compensation payment on the basis of an application of the person that has received the compensation payment or of the person that has made the compensation payment.

**4.** The claims of an insurant, insured person or beneficiary under insurance contracts (in particular, as provided for by Item 2 of this Article) shall be included in a register of creditors' claims in the order provided for by Article 184.10 of this Federal Law, regardless of the date when an obligation arises.

**Article 184.6.** Right to Claim of a Professional Association

**1.** For the purpose of participation in the procedures applicable in the bankruptcy case, a professional association shall be acknowledge having a right to claim to the debtor that is an insurance company, within the following amounts:

1) admission fees, membership fees, targeted fees and other payments made to the professional association by its members in accordance with its rules;

2) compensatory payments made before closure of the register of stated creditors' claims and other expenses related to the said compensatory payments, pursuant to the legislation of the Russian Federation regulating the insurance activities;

3) amounts intended for making compensatory payments after closure of the register of stated creditors' claims.

**2.** The amounts intended for compensatory payments after closure of the register of state creditors' claims shall be determined by the professional association for each effective insurance agreement in the sum of a share of the insurance premium directly intended for insurance payments, proportionally to the period of validity of the agreement remaining after the date of closure of the register of stated creditors' claims, on the basis of data of information systems of the professional association, or on the basis of statistical information on providing insurance after fulfillment by the bankruptcy manager of the obligation envisaged by the third paragraph of Item 5 of Article 184.4-1 of this Federal Law.

**Article 184.7.** The Sale of an Insurance Organisation's Property Complex

**1.** The property complex of an insurance organisation may be sold in the course of bankruptcy proceedings according to the rules provided for by Article 139 of this Federal Law, subject to the requirements of the legislation of the Russian Federation regulating insurance activities.

An insurance organisation's property complex shall comprise all kinds of the insurance organisation's property, including the insurance portfolio of the insurance organisation being the debtor. For the purposes of this Article, the insurance portfolio of an insurance organisation shall include the insurance contracts whose validity term has not yet expired and under which an insured incident has not yet occurred on the date of declaring the insurance organisation bankrupt, as well as the assets accepted for covering the insurance reserves formed by the insurer in the procedure established by the legislation of the Russian Federation regulating insurance activities.

In case of detecting after determining the composition of the insurance portfolio insurance contracts, the obligations under which have not been transferred within the composition of the insurance portfolio, the obligations under such contract shall not be subject to inclusion in the composition of the insurance portfolio.

The cited obligations shall be discharged on account of the bankruptcy estate in the order established by Article 184.10 of this Federal Law.

*[Unofficial translation from Russian]*

**2.** As the purchaser of the property complex of an insurance organisation may only act an insurance organisation holding the licence of the control body for exercising an appropriate kind of insurance activities and possessing assets which are sufficient for discharging the obligations assumed under insurance contracts.

**Article 184.8.** Abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**Article 184.9.** The Transfer of the Insurance Portfolio of an Insurance Organisation

**1.** When taking measures aimed at preventing bankruptcy of an insurance organisation, as well as in the course of the procedures applied in a bankruptcy case, except for the cases related to recall of the licence for insurance activities from the insurer, the insurance portfolio of the insurance organisation in respect of an individual kind of insurance or several kinds of insurance, in particular in respect of the kinds of insurance under which making of compensation payment is provided for as a result of applying to the insurer the procedure applicable in a bankruptcy case or withdrawal of the insurer's licence for exercising insurance activities, may be transferred by the insurance organisation (if the authority of executive bodies of the insurance organisation is suspended - by the insurance organisation's provisional administration) or by the winding-up receiver to another insurance organisation or insurance organisations (hereinafter referred to as the managing insurance organisation) by approbation of the control body.

Transfer of insurance portfolio of the insurance company on a certain type or several types of insurance to a managing insurance company can only be possible, if it does not violate the priority for satisfaction of creditors' claims established by this Federal Law.

**2.** The following shall be included in an insurance organisation's insurance portfolio when transferring it:

1) liabilities under insurance contracts (in respect of an individual kind of insurance or several kinds of insurance) which are not discharged as of the date of adoption of the decision on the transfer of the insurance organisation's insurance portfolio (insurance reserves) in compliance with the legislation of the Russian Federation regulating insurance activities;

2) assets accepted for covering the insurance reserves formed by the insurer in the procedure established by the legislation of the Russian Federation regulating insurance activities.

**3.** A procedure for transfer of the insurance portfolio, including a procedure for discharging obligations under insurance contracts detected after transfer of the insurance organisation's insurance portfolio and not transferred within the composition thereof, a procedure for discharging obligations by the managing insurance organisation shall be established by the supervisory body.

The specifics of the insurance portfolio's transfer, including a procedure for discharging obligations under insurance contracts detected after transfer of the insurance organisation's insurance portfolio and not transferred within the composition thereof, a procedure for discharging obligations by the managing insurance organisation and a procedure for selection of the managing insurance company for the kinds of insurance under, which making of compensation payments is provided for, shall be established by the supervisory body.

**4.** In the event of insufficiency or unavailability of an insurance organisation's assets for discharging by the managing insurance organisation obligations under insurance contracts pertaining to the kinds of insurance, under which making of compensation payments is provided for, the lacking part of the assets may be compensated for by a professional association out of the funds intended for financing compensation payments in the procedure and under the terms which are established by the monitoring body.

**5.** Insurants and beneficiaries shall be subject to notification by an insurance organisation (in case of suspending the authority of managerial bodies of an insurance organisation - by the provisional administration of the insurance organisation) or by the winding-up receiver of the forthcoming transfer of the insurance portfolio of the insurance organisation by the managing insurance organisation by way of publishing a notice of the transfer of the insurance portfolio of the insurance organisation in the procedure established by Article 28 of this Federal Law. The cited notice shall be subject to publication at least one month before the supposed date of transfer of the insurance organisation's insurance portfolio. A notice of transfer of an insurance organisation's insurance portfolio shall contain the following:

1) denomination of the insurance organisation transferring the insurance portfolio, its address and data identifying the insurance organisation (the state registration number of the entry on the state registration of a legal entity, taxpayer's identification number);

2) grounds for transfer of the insurance portfolio;

3) data on limitation or suspension of authority of executive bodies of the insurance organisation transferring the insurance portfolio;

4) denomination of the managing insurance organisation, its address and identification data (the state registration

171

*[Unofficial translation from Russian]*

number of the entry on the state registration of a legal entity, taxpayer's identification number).

**6.** Within a month since the date of publishing a notice of transfer of the insurance portfolio of an insurance organisation insurants and beneficiaries are entitled to send to the insurance organisation a claim in writing for dissolution of the insurance contract under which the rights and obligations are subject to transfer. In the event of dissolution of an insurance contract, such insurance contract and the proportionate share of the insurance reserves to be transferred shall be excluded from the insurance portfolio of the insurance organisation from the time when the insurance organisation (should the authority of managerial bodies of the insurance organisation be suspended - the provisional administration of the insurance organisation) or the winding-up receiver receives the cited claim of the insurant and/or beneficiary.

Insurants or beneficiaries under insurance contracts that have presented in writing a claim for dissolution of an insurance contract are entitled to demand of the insurance company repayment thereto of a part of the insurance premium paid by them in proportion to the difference between the term for which the insurance contract has been made and the time period within which it was in effect, or payment of redemption amounts, if not otherwise provided for by federal law.

The cited claims shall be subject to inclusion in a register of creditors' claims in the order established by Article 184.10 of this Federal Law.

**7.** The remainder of the insurance reserves transferred to the managing insurance organisation and not used by this managing insurance organisation for discharging obligations under transferred insurance contracts shall be returned by the managing insurance organisation to the bankruptcy estate in the procedure and at the time which are established by the monitoring body.

**8.** The remainder of the assets intended for financing the compensation payments transferred to the managing insurance organisation and not used by this managing insurance organisation for discharging obligations under insurance contracts shall be returned by the managing insurance organisation to the professional association in the procedure and at the time which are established by the monitoring body.

**Article 184.10.** Specifics of Satisfaction of Claims of Creditors of the Insurance Company

**1.** Claims of the insured persons, in respect of which the obligation of the insurance company of payment of insurance indemnity under life insurance agreements envisaging survival of the insured to certain age or time has entered into force, shall be satisfied within claims of creditors of the first priority.

**2.** Apart from the claims envisaged by the fourth paragraph of Item 2 of Article 134 of this Federal Law, satisfied shall be claims acquired by the controlling boxy as a result of expenses incurred in case of involvement of persons cited in the second paragraph of Item 10 of Article 184.1 of this Federal Law, within claims of creditors of the third priority on current payments, at the account of bankruptcy estate.

**3.** Claims of creditors of the third priority shall be satisfied as follows:

1) in the first place - claims of the insurants, insured persons or beneficiaries under agreements of compulsory insurance and claims of a professional association envisaged by Subitems 2 and 3 of Item 1 of Article 184.6 of this Federal Law;

2) in the second place - claims of the insured persons or beneficiaries and insurants under life insurance agreements and other types of personal insurance;

3) in the third place - claims of beneficiaries and insurants under agreements of insurance of civil liability for infliction of damage to life or health, claims for payment of a compensation in excess of indemnification of damage;

4) in the fourth place - claims of insurants under agreements of insurance of civil liability for infliction of damage to property of third parties and under property insurance agreements;

5) in the fifth place - claims of other creditors, including claims related to reimbursement of expenses in relation to making compensatory payments under agreements of compulsory insurance, payment of admission fees, membership fees and other obligatory payments subjected to making to the association of insurers by its members in accordance with the rules of the professional association on the basis of federal laws that envisage obligatory membership of the insurance company in the association of insurers.

**4.** Claims of creditors on subordinated loans and on financial sanctions for non-fulfillment of obligations on the subordinated loans shall be satisfied after satisfaction of claims of all other creditors.

**5.** The period, during which obligations of the insurance company cited in Item 4 of Article 4 of Article 136 of this Federal Law have formed, shall start from the day of issuance by the commercial court of a ruling on acceptance of the application for acknowledgement of the debtor bankrupt or on appointment of a temporary administration of the insurance company with suspension of authority of executive bodies of the insurance company, depending on which event comes first.

**Article 184.11.** Specifics of Endorsing an Amicable Agreement

**1.** An amicable agreement may be only endorsed by a commercial court after repayment of debts related to first-turn and second-turn creditors, debts related to claims of insured persons, beneficiaries and insurants under obligatory insurance contracts, as well as to claims connected with reimbursement of compensation payments and outlays in connection with making compensation payments under obligatory insurance contracts.

**2.** To an application for endorsing an amicable agreement, along with the documents provided for by Item 3 of Article 158 of this Federal Law, shall be attached the documents proving repayment of the debts cited in Item 1 of this Article.

**Article 184.12.** Specifics of Bankruptcy of a Non-Existing Insurance Company

**1.** In case of implementation of a bankruptcy procedure in respect of an absent insurance company, all provisions of this Federal Law shall be applied, considering the specifics established by this Article.

**2.** In cases when the debtor insurance company has actually terminated its operation, is non-existing or it is impossible to determine its location and location of its permanently operating executive body or any other body or person authorised to act in the name of the insurance company by virtue of a federal law, other regulatory act or an authorising document, the application for acknowledgement of the insurance company bankrupt can be filed by the controlling body in accordance with Article 227 of this Federal Law.

**3.** Claims of creditors of a non-existing insurance company that is the debtor shall be satisfied by order of priority established by Articles 134 - 138 and 184.10 of this Federal Law.

**Article 184.13.** Specifics of Bringing of a Person Controlling the Insurance Company to Responsibility

**1.** Together with the person cited in paragraph 34 of Article 2 of this Federal Law, a person controlling the insurance company shall be acknowledged a person that ha or has the rights listed in the said paragraph during less than 3 years before appointment of a temporary administration of the insurance company on grounds envisaged by Subitems 1 and 2 of Item 6.1 of Article 184.1 of this Federal Law.

Officials of the controlling body and employees of the Agency shall not be referred to persons controlling the debtor insurance company.

In case of bankruptcy of insurance companies the documents cited in paragraphs 4 and 5 of Item 4 of Article 10 of this Federal Law shall also be deemed databases of information systems of the insurance company (their backup copies) that contain information on insurance reserves, own funds (capital) and their movement, and the obligation of forming and maintenance of which is established by Law of the Russian Federation No. 4015-1 of November 27, 1992 On Organisation of Insurance Activities in the Russian Federation.

**2.** Application for bringing of the person controlling the insurance company to subsidiary responsibility can be filed not later than within 3 years from the day of acknowledgement of the insurance company bankrupt. If such term is missed due to a considerable ground, it can be restored by the court.

**3.** In case of filing of an application for brining of the person controlling the insurance company to responsibility, the court shall have the right to take injunctive measures, including arrest of assets of the controlling person. Such measures shall also keep being in effect for the period of suspension of consideration of the application for brining of the person controlling the insurance company to responsibility.

**4.** Application for brining of the person controlling the insurance company to subsidiary responsibility, to the responsibility in the form of indemnification of losses can be filed by the bankruptcy creditor in the course of bankruptcy proceedings, if the bankruptcy manager fails to execute the decision of the meeting of creditors and/or the committee of creditors regarding its filing.

**5.** Filing of the application by the bankruptcy creditor or the authorised body for brining of the person controlling the insurance company to subsidiary responsibility shall not impede referral of the bankruptcy manager to the commercial court with the application for the same subject and on the same grounds, if the bankruptcy manager provides new evidence to the commercial court.";

**Article 185.** Abrogated.

**Article 185.1.** Specifics of Bankruptcy of Professional Securities Market Participants, of Management Companies of Investment Funds, Unit Investment Funds and Non-Governmental Pension Funds, Clearing Organisations

**1.** The specifics of bankruptcy of financial organisations established by Articles 183.1-183.26 of this Federal Law shall

extend to professional securities market participants, management companies of investment funds, unit investment funds and non-governmental pension funds as well as clearing organisations subject to the provisions of Articles 185.2 - 185.7 of this Federal Law, if not otherwise provided for by Paragraph 8 of this chapter.

**2.** For the purposes of this paragraph, a client of a professional securities market participant, the management company of an investment fund, unit investment fund and non-governmental pension fund (hereinafter referred to as the management company), a clearing organisation means a natural person or legal entity whose property is used by the cited professional securities market participant and management company in transactions on the basis of federal law or a contract made, in particular the owner of investment shares of a unit investment fund and the person that has contributed property in payment for investment shares of a unit investment fund (hereinafter also referred to as a client).

**Article 185.2.** Specifics of Effects of Appointing the Provisional Administration of a Professional Securities Market Participant, Management Company and Clearing Organisation

**1.** The provisional administration of a professional securities market participant, management company and clearing organisation while exercising its activities, shall be bound to do the following:

1) to ensure safekeeping of the monetary funds, securities and other property possessed by a client;

2) to ascertain that the monetary funds, securities and other property possessed by clients and kept on a special broker's account, depo account, separate bank account of a professional securities market participant, management company or clearing organisation, on the trading account or clearing account are sufficient for satisfying in full clients' claims for repayment of monetary funds, return of securities and other property.

**2.** Within the period while the provisional administration of a professional securities market participant, of a management company and of a clearing organisation exercises its activities, the provisional administration is entitled to send requests for providing information which is necessary for discharging its duties to a trade promoter, a currency exchange and commodity exchange, to a clearing organisation, custodian, registrar, the credit organisation with which the professional securities market participant, management company and or a clearing organisation have made appropriate contracts or for which personal accounts have been opened in the system of keeping a register of securities' owners.

**Article 185.3.** A Register of Clients of a Professional Securities Market Participant, Management Company and Clearing Organisation

**1.** In the course of supervision or bankruptcy proceedings the qualified receiver or the register's holder, for the purpose of satisfying the claims of creditors of a professional securities market participant and management company, shall keep a register of clients of the professional securities market participant, management company and a clearing organisation (hereinafter referred to as a clients' register).

If the number of clients of a professional securities market participant and management company is over 100, it shall be obligatory to attract a register's holder for keeping a client's register.

Into a clients' register shall not be included the management company's clients possessing investment shares of the unit investment fund which is in trust management of this management company and the persons who have not been paid monetary compensation in connection with redemption of the cited fund's investment shares.

**2.** A contract with the register's holder may be only made if he has made a contract of liability insurance in case of causing losses to clients of a professional securities market participant, management company, clearing organisation and persons participating in bankruptcy proceedings.

Information about the register's holder, in particular its denomination, address, state registration number of the entry on the state registration of a legal entity shall be presented by the qualified receiver to a commercial court at the latest in five working days as from the date when a contract of keeping a clients' register is made.

The services of the register's holder shall be paid for on account of a debtor.

**3.** The register's holder shall be bound to cover the losses caused by his failure to discharge or improper discharge of the duties thereof provided for by this Federal Law.

If the register's holder is entrusted with keeping a clients' register, the qualified receiver shall not be held liable for the losses caused in connection with failure to discharge or improper discharge of the duties involved in keeping the clients' register.

**4.** A clients' register shall contain the following:

1) data on a client;

2) data on the client's property kept by a professional securities market participant, management company or clearing organisation;

174

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 54 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 176
of 317                                    *[Unofficial translation from Russian]*

3) data on the obligations to be discharged on account and/or for the benefit of each client.

**5.** When changing the data cited in Item 4 of this Article, appropriate entries on it shall be made to the clients' register.

**Article 185.4.** Introducing Supervision in Respect of a Professional Securities Market Participant, Management Company and Clearing Organisation

**1.** While analyzing the financial status of a professional securities market participant, the management company or a clearing organisation, the interim receiver shall ascertain if there are enough monetary assets, securities and other property on a special broker's account, the DEPO account, trading account, clearing account, the separate bank account opened for making settlements in respect of operations connected with trust management of the professional securities market participant and management company, for the purpose of satisfying clients' claims and discharging obligations of the professional securities market participant, management company and clearing organisation in the procedure established by Article 185.5 of this Federal Law.

**2.** In case of introducing supervision, a professional securities market participant, management company and clearing organisation are not entitled to do the following:

1) to make transactions on their own account or on a client's account, if at the time when they are to be made the property or monetary funds are insufficient for discharging obligations under these transactions and under those made before. This requirement shall not extend to the instances when a professional securities market participant and management company are entitled to demand the cited property under a transaction made with the central contractor in the quantity and at the time which would enable it (them) to discharge their obligations in a proper way;

2) to use in their own interests the monetary funds kept on a special broker's account;

3) to use own property as a security for discharging third persons' obligations;

4) to loan own property;

5) to make repo accounts without authorization of the interim receiver;

6) to transfer client's monetary funds and other property, as well as to make transactions in a client's securities and other property thereof on the client's instructions or demand, if the client has debts with respect to a professional securities market participant or clearing organisation, in particular as to payment of remuneration to the professional securities market participant or the clearing organisation.

**3.** Monetary assets and other property of a client shall be transferred and transactions in client's securities and other property on the client's instructions or demand shall be made in the procedure established by Article 185.5 of this Federal Law.

**Article 185.5.** Specifics of Allowing Claims of Clients of a Professional Securities Market Participant, Management Company and a Clearing Organisation

**1.** Claims of clients of a professional securities market participant, management company and clearing organisation shall be subject to satisfaction in the course of supervision or bankruptcy proceedings in the order established by this Article.

**2.** If the clients' property kept on accounts of a professional securities market participant, management company and clearing organisation is sufficient for allowing clients' claims, such claims shall be satisfied in full.

**3.** If the property of several clients is jointly kept on a single special broker's account, special depository account, depo account of a nominal holder, depo account of a foreign nominal holder or personal account opened for a nominal holder in a register of securities' owners, and this property is not sufficient for satisfying in full their claims for transfer of all the property possessed by them, this property shall be transferred in the quantity which is proportionate to the amount of the cited claims.

Abrogated.

**4.** Unsatisfied clients' claims shall be subject to inclusion in a register of creditors' claims and to satisfaction within the composition of third-turn creditors' claims.

**5.** The provisions of this Article shall not extend to the clients' property which is in trust management of the professional securities market participant or management company.

**Article 185.6.** Specifics of Bankruptcy Proceedings in Respect of a Professional Securities Market Participant, Management Company and Clearing Organisation

**1.** In the bankruptcy estate of a professional securities market participant, management company and a clearing organisation shall not be included their clients' property kept on a special broker's account, trading account, clearing account, special depository account, transit account, depo account, transit depo account and personal account in a register of securities owners, separate bank account opened for making settlements in respect of the transactions connected with trust management, as well as other property which is in trust management of the management company or is transferred as payment for investment

175

*[Unofficial translation from Russian]*

shares.

**2.** Should a commercial court render the decision on declaring a professional securities market participant, management company, or a clearing organisation bankrupt and on initiating bankruptcy proceedings in respect of them, the winding-up receiver shall terminate contracts made with clients in compliance with the requirements of federal laws and normative acts adopted in compliance with them. If not otherwise provided for by federal laws and normative legal acts adopted in compliance with them, the winding-up receiver when terminating the cited contracts shall do the following:

1) discharge obligations (assume execution) in respect of the transactions made at a client's expense before adoption by a commercial court of the decision on declaring a professional securities market participant and management company bankrupt and on initiating bankruptcy proceedings in respect of them;

2) transfer the remaining clients' property to clients.

**3.** The winding-up (bankruptcy) receiver, if clients have debts with respect to a professional securities market participant, management company and a clearing organisation, shall deduct the remuneration and other payments which are due to the professional securities market participant, management company and to the clearing organisation or, if the clients' monetary funds are insufficient, is entitled to demand of the clients the repayment of debts. If clients fail to repay debts, the winding-up receiver upon the expiry of seven working days from raising the cited claim is entitled to levy execution against the clients' property kept by the professional securities market participant, management company and clearing organisation or, where such property is securities, is entitled to sell them according to the rules provided for by Article 185.7 of this Federal Law.

**4.** If the property of several clients is jointly kept on a single bank account, depo account of a nominal holder, depo account of a foreign nominal holder, or personal account opened for a nominal holder in a register of securities' owners and such property is insufficient for allowing in full their claims for transfer of all the property possessed by them, such property shall be transferred in the quantity which is proportionate to the extent of such claims.

**5.** If upon the expiry of six months from the date of adoption by a commercial court of the decision on declaring a professional securities market participant, management company or a clearing organisation as a bankrupt and on initiating bankruptcy proceedings the clients' property has not been transferred to clients, the winding-up receiver shall transfer such property to a notary for depositing.

**6.** The provisions of Item 2 of this Article shall not apply to termination of unit investment funds, if under federal law a unit investment fund is terminated by a specialized custodian. If under federal law a unit investment fund may not be terminated by a specialized custodian, the winding-up receiver is entitled or, where it is provided for by federal law, is obliged to transfer the rights and duties under an agreement of trust management of this unit investment fund to another management company.

After finishing the procedure for termination of a unit investment fund the specialized custodian shall draw up a report on termination of the unit investment fund and present it to the winding-up receiver.

**7.** In the event of initiation of bankruptcy proceedings in respect of the professional securities market participant engaged in keeping a register of securities owners, the winding-up receiver is bound within three months since the date of opening bankruptcy proceedings to transfer the information and documents making possible to identify the persons, that are registered in the system of keeping a register of securities owners and other registers (hereinafter referred to as a register of securities owners) and whose contracts that have been made serve as a basis for keeping a register of securities owners, to the professional securities market participant holding an appropriate licence.

A register of securities owners shall be transferred by the winding-up receiver in the order established by the control body.

**Article 185.7.** Specifics of Selling the Property of a Professional Securities Market Participant, a Management Company and a Clearing Organisation

**1.** The securities possessed by a professional securities market participant, management company and a clearing organisation and circulating in the organised securities market shall be subject to sale at organised auctions.

**2.** Where the securities possessed by a professional securities market participant, a management company or a clearing organisation are not admitted at organised auctions, such securities shall be sold in the procedure established by Article 111 of this Federal Law.

**Article 186.** Abrogated.

**Article 186.1.** Specifics of Bankruptcy of Non-Governmental Pension Fund

**1.** The specifics of bankruptcy of financial organisations established by Articles 183.1-183.26 of this Federal Law shall extend to non-governmental pension funds subject to the provisions of Articles 186.2 - 186.11, 187.2 - 187.12 of this Federal Law.

*[Unofficial translation from Russian]*

2. The bankruptcy of non-state pension funds that are concurrently engaged in the activities of non-state pension provision and of mandatory pension insurance shall be effected in the procedure established by Articles 187.1 - 187.12 of this Federal Law. In so doing, the provisions of Articles 186.4 - 186.10 of this Federal Law shall apply to bankruptcy of the cited funds, if other rules are not established by Articles 187.2 - 187.12 of this Federal Law.

Article 186.2. Additional Grounds for Taking Measures Aimed at Preventing Bankruptcy of a Non-Governmental Pension Fund

As additional grounds for taking measures aimed at preventing bankruptcy of a non-governmental pension fund shall be deemed the following:

1) reduction, according to the results of a quarter, of the normative rate of pension reserves for pension schemes with fixed payments below the level provided for by the control body;

2) detecting an increase of the actuarial deficit, according to the results of an annual actuarial assessment of the non-governmental pension fund's activities, as compared to the previous year.

Article 186.3. Covering Outlays of the Provisional Administration of a Non-Governmental Pension Fund

The outlays of the provisional administration of a non-governmental pension fund connected with activities thereof, in particular remuneration to this provisional administration's members, shall be covered on account of the property intended for securing this fund's statutory activities (of own assets).

Article 186.4. The Specifics of Establishing Creditors' Claims in a Case on Bankruptcy of a Non-State Pension Fund Exercising the Activities Involved in Non-State Pension Provision

1. For the purposes of this paragraph, the obligations involved in non-governmental pension provision shall provide for the following:

1) payment of redemption amounts or their transfer to another funds;

2) transfer of the duty to pay life non-governmental pensions to participants of a non-governmental pension fund (hereinafter referred to as life non-governmental pensions) and pension reserves to another non-governmental pension fund by approbation of the control body for discharging the cited duty.

2. Abrogated from January 1, 2014.

3. The interim receiver shall define and account separately in a register of declared creditors' claims the following:

1) obligations under contracts of non-governmental pension insurance (hereinafter referred to as a pension contract) (including obligations to pay granted non-governmental pensions);

2) composition of creditors whose claims are subject to satisfaction on account of pension reserves, as well as sum of creditor indebtedness.

3.1. The form of a register of creditors' claims of a non-state pension fund shall be established by a regulatory act of the controlling body by approbation of the Agency.

4. The interim receiver shall attract an appraiser for assessing the market value of pension reserves and pension savings, as well as of other assets which constitute a non-governmental pension fund's own property in the procedure established by Article 130 of this Federal Law.

5. Starting from the date of adoption by a commercial court of the decision on declaring a non-governmental pension fund bankrupt and on initiating bankruptcy proceedings, contracts of non-governmental pension provision shall be terminated.

Effects of terminating the cited contracts shall be defined in compliance with this Federal Law.

6. Within three months from the date of adoption by a commercial court of the decision on declaring a non-governmental pension fund bankrupt and on initiating bankruptcy proceedings the winding-up receiver shall do the following:

1) notify in writing depositors and participants of such fund about adoption by the commercial court of the decision on declaring the non-state pension fund bankrupt and on initiating bankruptcy proceedings at the latest in 30 days as from the date of adoption by the commercial court of the cited decision;

2) define obligations under pension contracts (in particular obligations involved in payment of granted non-state pensions) on the basis of the data available in the non-state pension fund;

3) define the composition of creditors whose claims are subject to satisfaction on account of pension reserves, as well as the sum of creditor indebtedness. For the purpose of estimation of the amount of obligations in respect of life non-state

*[Unofficial translation from Russian]*

pensions, the winding-up receiver shall attract an actuary;

4) estimate the market value of the assets making up pension reserves which circulate in organised trade, engage an appraiser for assessing the market value of other assets making up pension reserves, as well as of other assets making up the cited fund's own property, in the procedure established by Article 130 of this Federal Law.

**7.** Within six months from the date of adoption by a commercial court of the decision on declaring a non-governmental pension fund bankrupt and on initiating bankruptcy proceedings the winding-up receiver shall do the following:

1) ensure payment or remittance to other funds of payback amounts or their transfer on account of payment of insurance premiums under contract of pension's insurance made with insurance organisations;

2) ensure transfer of the duty of paying life non-state pensions and assets of pension reserves to another non-governmental pension fund in compliance with Article 186.9 of this Federal Law.

**Article 186.5.** Specifics of Using Pension Reserves

**1.** Abrogated from January 1, 2014.

**2.** Pension reserves shall not be included in the bankruptcy estate and shall be only used for the purposes which are provided for by Item 7 of Article 186.4 of this Federal Law, except as established by Item 3 of Article 186.7 of this Federal Law.

Redemption amounts shall be paid to depositors and participants of a non-governmental pension fund in compliance with the a pension contract.

Redemption amounts may be transferred as pension contributions to other non-governmental pension funds which are specified by depositors and participants of a non-governmental pension fund and with which they have made contracts of non-governmental pension provision.

Redemption amounts may be transferred on account of payment of insurance premiums under contracts of pension insurance of depositors and participants of a non-governmental pension fund made with insurance organisations at the choice of this fund's depositor or participant. Requirements for the cited insurance organisations shall be established by federal laws.

Procedure for payment of the redemption sum or for its transfer to the related non-state pension fund in compliance with this Article shall be established by the supervisory body.

**3.** Redemption amounts shall not be paid under mature obligations of a non-governmental pension fund to pay a life non-governmental pension. The cited obligations shall be subject to an actuarial assessment in total for all contracts of pension insurance of such fund's participants in respect of whom such fund's obligation to pay a life non-governmental pension is mature. A fund shall be formed to the amount of the cited obligations made up of the assets constituting pension reserves of a non-governmental pension fund and, should an actuarial deficit be found on the basis of the results of an actuarial assessment, it shall be covered on account of the assets provided for by Item 4 of this Article (hereinafter referred to as a payment fund).

**4.** For the purposes cited in Items 2 and 3 of this Article may be likewise used the assets of the united guarantee funds of which a non-governmental pension fund is a member, payments under insurance contracts providing additional guarantees of discharge of such fund's obligations towards depositors and participants of the non-governmental pension fund and/or payments made by mutual insurance societies of which such fund is a member.

**5.** Where pension reserves and other property provided for by this Article are insufficient for discharging the duties cited in this Article with respect to creditors of a non-governmental pension fund, unsatisfied claims of these creditors shall be satisfied in the procedure established by Article 186.8 of this Federal Law.

**Article 186.6.** Accounts of a Non-Governmental Pension Fund in the Course of Bankruptcy Proceedings

**1.** The winding-up receiver shall be obliged to use the debtor's special bank accounts for entering thereupon pension reserves and the assets constituting the bankruptcy estate of a non-governmental pension fund.

**2.** Redemption amounts shall be paid or remitted from the special bank account of a non-governmental pension fund being the debtor where pension reserves are kept in compliance with Article 186.5 of this Federal Law.

**3.** Abrogated from January 1, 2014.

**4.** Payments to creditors shall be made in the order established by Article 186.8 of this Federal Law from the master account of a non-governmental pension fund being the debtor where the assets constituting the bankruptcy estate of the non-governmental pension fund are kept.

**Article 186.7.** A Procedure for Satisfying Creditors' Claims on Account of Pension Reserves

**1.** Obligations with respect to depositors and participants of a non-governmental pension fund shall be discharged on

*[Unofficial translation from Russian]*

account of pension reserves in the following order:

1) in the first turn - claims of participants of the non-governmental pension fund in respect of which the duty of such fund to pay a life non-governmental pension is mature by way of defining such fund's obligations as to payment of life non-governmental pensions and allocation of assets out of pension reserves for forming a payment fund which is sufficient for discharging the cited obligations;

2) in the second turn - claims to pay out the redemption amounts of participants of the non-governmental pension fund in respect of which such fund's duty to pay a non-governmental pension within the time period specified by a pension contract is mature;

3) in the third turn - claims of depositors and participants of the non-governmental pension fund being natural persons;

4) in the forth turn - claims of depositors of the non-governmental pension fund being legal entities;

5) in the fifth turn - claims of other creditors which are subject to satisfaction on account of pension reserves in compliance with Federal Law No. 75-FZ of May 7, 1998 on Non-Governmental Pension Funds (hereinafter referred to as the Federal Law on Non-Governmental Pension Funds).

**2.** Abrogated from January 1, 2014.

**3.** If the sum of pension reserves exceeds the amount of creditors' claims which are subject to satisfaction under this Article on account of pension reserves, the pension reserves left after allowing the claims provided for by this Article shall be subject to inclusion in the bankruptcy estate.

**Article 186.8.** Specifics of Allowing Claims of Creditors of a Non-Governmental Pension Fund

**1.** Within the composition of claims of first-turn creditors shall be subject to satisfaction:

1) claims of participants of a non-governmental pension fund in respect of which the cited fund's duty to pay a life non-governmental pension is mature and which have not been satisfied on account of pension reserves in the procedure established by Subitem 1 of Item 1 of Article 186.7 of this Federal Law;

2) abrogated from January 1, 2014;

3) claims as to payment of the redemption amount of participants of a non-governmental pension fund in respect of which the cited fund's obligation to pay a non-governmental pension within the time period fixed by a pension contract is mature and which have not been satisfied on account of pension reserves.

**2.** Claims of third-turn creditors shall be subject to satisfaction in the following order:

1) in the first turn - claims of depositors and participants of a non-governmental pension fund being natural persons as to payment of the redemption amount which are not satisfied on account of pension reserves;

2) in the second turn - claims as to payment of the redemption amount of depositors of a non-governmental pension fund being legal entities which are not satisfied on account of pension reserves;

3) in the third turn - claims of other creditors.

**3.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**4.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**5.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**6.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**7.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**Article 186.9.** Transfer of the Duty to Pay a Non-Governmental Pension

**1.** When taking measures aimed at preventing bankruptcy of a non-governmental pension fund, as well as in the course of the procedures applied in a bankruptcy case, the duty of paying life non-governmental pensions and pension reserves may be transferred to another non-governmental pension fund by approbation of the control body for discharge of the cited duty. In so doing, the cited obligation and pension reserves in respect of all participants of a non-governmental pension fund, which a non-governmental pension is granted to, must be transferred to a single non-governmental pension fund.

*[Unofficial translation from Russian]*

A procedure for and the terms of the cited obligation, as well as of the claims against the non-governmental pension fund, which the cited obligation and pension reserves may be transferred to, shall be established by the control body.

When transferring the obligation to pay life pensions and assets of pension reserves to another non-state pension fund, the rules for receiving the consent of creditors of a non-state pension fund to the transfer of the rights of claim thereof on another person and for preliminary notification of creditors about the transfer of the cited obligation to another non-state pension fund shall not apply.

**2.** The decision provided for by Item 1 of this Article shall be adopted:

1) by the provisional administration of a non-governmental pension fund by approbation of the debtor's managerial body authorised in compliance the debtor's constituent documents - in the course of taking measures aimed at preventing bankruptcy of the non-governmental pension fund;

2) by the winding-up receiver by approbation of the control body - in the course of bankruptcy proceedings.

**3.** The decision to transfer the duty of paying a life non-governmental pension and pension reserves to another non-governmental pension fund for discharging the cited duty shall be subject to publication in the procedure established by Article 28 of this Federal Law.

Abrogated from January 1, 2014.

This notice shall define the terms of transfer to another non-state pension fund of the obligation to pay life non-state pensions and pension reserves for its discharge, data on leaving unchanged or on changing the terms of payment to participants of a non-state pension fund of the life non-state pension, as well as other terms of payment to the participants of the given fund the life non-state pension, should they be changed.

**4.** If the assets cited in Article 186.7 of this Federal Law, as well as the assets allocated for satisfying the claims established by Subitem 1 of Item 1 of Article 186.8 of this Federal Law, are sufficient for forming the payment fund enabling to discharge the obligation of the non-governmental pension fund to pay life non-governmental pensions in the amount fixed by contracts under which life non-governmental pensions are paid, the terms of paying a life non-governmental pension to a participant of the fund whose duties are to be transferred shall be preserved when transferring the obligation of paying life non-governmental pensions and pension reserves to another non-governmental pension fund for discharging the cited duty.

If the assets cited in Article 186.7 of this Federal Law, as well as the assets allocated for satisfying the claims established by Subitem 1 of Item 1 of Article 186.8 of this Federal Law, are insufficient for forming the payment fund enabling to discharge the obligation of a non-governmental pension fund as to payment of life non-governmental pensions in the amount established by the contracts under which a life non-governmental pension is paid, the obligations of the non-governmental pension fund, which obligations under these contracts are transferred to, shall be proportionally reduced.

**Article 186.10.** Specifics of Selling the Property of a Non-Governmental Pension Fund

**1.** All the operations involved in selling the property of a non-governmental pension fund in which pension reserves are placed shall be subject to registration by a specialized custodian.

A procedure for making registration operations by a specialized custodian shall be established by the control body.

**2.** The securities which are possessed by a non-governmental pension fund and which are admitted at organised auctions shall be subject to sale through the cited sales.

**3.** Abrogated from January 1, 2014;

**Article 186.11.** Restrictions as to the Sale of an Enterprise and Replacement of Assets of a Non-Governmental Pension Fund

The sale of an enterprise and replacement of assets of a non-governmental pension fund provided for by this Federal Law shall not be allowed.

**Article 187.** Abrogated.

**Article 187.1.** The Specifics of Bankruptcy of Non-State Pension Funds Exercising the Activity of Mandatory Pension Insurance

The specifics of bankruptcy of financial organisations which are established by Articles 183.1 - 183.26 of this Federals Law, as well as the specifics of bankruptcy of non-state pension funds established by Articles 186.2 - 186.11 of this Federal Law, shall extend to the non-state pension funds that have exercised or are exercising the activity of mandatory pension insurance, subject to the provisions of Articles 187.2 - 187.12 of this Federal Law.

**Article 187.2.** Additional Grounds for Taking Measures Aimed to Preventing Bankruptcy of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

*[Unofficial translation from Russian]*

**1.** As additional grounds for taking measures aimed at preventing bankruptcy of a non-state pension fund exercising the activity of mandatory pension insurance, along with the grounds provided for by Article 186.2 of this Federal Law, shall be deemed the following:

1) failure to discharge the duty of replenishment of the payback reserve and/or assets of pension savings of the insured persons for whom a time pension payment is established where it is provided for by the Federal Law on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Assets of Pension Savings, Establishing and Making Payments on Account of Pension Savings' Assets;

2) insufficiency of the reserve for mandatory pension insurance and of the property for ensuring the fund's statutory activities (of the fund's own assets) for replenishment of the shortage of assets on the insured person's account where it is provided for by the Federal Law on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Assets of Pension Savings, Establishing and Making Payments on Account of Pension Savings' Assets;

3) failure to discharge the duty of restoration of the amount of the reserve for mandatory pension insurance where it is provided for by the Federal Law on Non-State Pension Funds.

**2.** In the event of origination of the grounds for taking measures aimed at preventing bankruptcy which are provided for by this Federal Law, a non-state pension fund within fifteen calendar days as from the date of their origination is bound to send to the control body a notice of it, with a plan of restoration of its ability to pay to be attached thereto, if, with this, there no signs of bankruptcy of the non-state pension fund.

**3.** The activities involved in preventing bankruptcy of non-state pension funds may be financed in the procedure and under the terms which are provided for by federal laws, with the participation of the control body and the Agency.

**Article 187.3.** The Specifics of Appointing and of the Activities of the Interim Administration of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** As additional grounds for appointing by the control body of the interim administration of a non-state pension fund exercising the activity of mandatory pension insurance shall be deemed the following:

1) the grounds cited in Item One of Article 187.2 of this Federal Law, where there is no notice of the presence of the appropriate circumstances;

2) ban on making all or a part of operations of the non-state pension fund;

3) cancellation of the licence for exercising the activities of the non-state pension finds involved in pension provision and pension insurance (hereinafter also referred to as the licence), except for cancellation of the licence on the basis of the licencee's application about the rejection of the licence, in connection with declaring the licencee bankrupt and initiating bankruptcy proceedings or in connection with re-organisation or liquidation of a non-state pension fund;

4) taking over by a commercial court an application of the debtor, bankruptcy creditor or authorized body in respect of declaring a non-state pension fund bankrupt.

**2.** In the event of failure of a non-state pension fund to discharge the duty of notifying the control body of the presence of the grounds for taking measures aimed at preventing bankruptcy cited in Item One of Article 187.2 of this Federal Law, in the event of cancellation of the licence thereof for exercising the activity of pension provision and pension insurance, except for cancellation of the licence on the basis of the licencee's application about the rejection of the licence, in connection with declaring the licencee bankrupt and initiation of bankruptcy proceedings or in connection with re-organisation or liquidation of a non-state pension fund, the appointment of the interim administration shall be obligatory.

**3.** Employees of the controlling body shall be appointed as the head and members of the provisional administration of a non-state pension fund. The head of the provisional administration, in the event of suspending the authority of executive bodies of a non-state pension fund, shall exercise the activity thereof on behalf of the non-state pension fund without a power of attorney.

The composition of the provisional administration shall be defined by an order of the controlling body to be included by the controlling body into the Unified Federal Register of Data on Bankruptcy at the latest on the following working day after the date of adoption of the cited act. The head of the provisional administration shall distribute the duties to the provisional administration's members and shall be held responsible for the activities thereof.

By approbation of the Agency the employees thereof may be included into the composition of the provisional administration.

The remuneration to the head and members of the provisional administration of a non-state pension fund provided for by Article 183.6 of this Federal Law shall not be paid.

**4.** In the event of appointment of the interim administration in connection with the circumstances cited in Item Two of this article, the authority of executive bodies of a non-state pension fund shall be suspended.

As from the date of appointing the interim administration the supreme managerial body of a non-state pension fund is not entitled to render the decision on liquidation or re-organisation of the non-state pension fund.

**5.** The interim administration of a non-state pension fund exercising the activity of mandatory pension insurance shall take measures aimed at covering the insufficiency of assets of pension savings and discharge of the cited fund's obligations with respect to insured persons.

**6.** Within a month since the date of its appointment the interim administration shall:

1) form a register of obligations of the non-state pension fund with respect to insured persons in compliance with the Federal Law on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Assets of Pension Savings, Establishing and Making Payments on Account of Pension Savings' Assets;

2) within a month since the date when it is appointed shall draw up an estimate of current expenses of the non-state pension fund and shall present it to the control body for endorsement in compliance with Article 187.5 of this Federal Law.

**7.** The interim administration is entitled to file with a commercial court applications for declaring invalid transactions of the non-state pension fund and management companies of the non-state pension fund, as well as about disputing their actions on the grounds provided for by Chapter III.1 of this Federal Law.

The time periods, within which the transactions that may be declared invalid were made or the obligations of a non-state pension fund cited in Articles 61.2, 61.3 and Item Four of Article 61.6 of this Federal Law originated, shall be estimated starting from the date when the interim administration is appointed.

In the case initiated on the basis of an application of the head of the interim administration of a non-state pension fund, should the interim administration stop exercising its activities, as the claimant shall be declared the non-state pension fund and, in the event of adoption by a commercial court of the decision on declaring a non-state pension fund bankrupt and on initiation of bankruptcy proceedings, as the claimant shall be declared the bankruptcy receiver.

**8.** The interim administration is entitled to file with a commercial court an application about failure to discharge or improper discharge by specialised depositories, actuaries, audit organisations, organisations engaged in keeping pension accounts of obligations under the contracts made with the non-state pension fund and about reimbursement of damages to the non--state pension fund.

**9.** The interim administration is entitled to declare about its refusal to execute the contracts made by the non-state pension fund, except for the contracts of mandatory pension insurance and pension contracts, in compliance with Article 102 of this Federal Law.

**10.** If on the basis of the results of analysis of the financial status of a non-state pension fund the interim administration has filed with the control body a plan of restoration of the ability to pay whose term of implementation exceeds the one for which the interim administration is appointed, the control body is entitled to extend the term of the interim administration's activity by the time period which is required for implementation of the cited plan.

**11.** The interim administration is entitled to request for and receive from employees of a non-state pension fund, management companies, specialized depositories, actuaries, audit organisations, organisations engaged in keeping pension accounts and actuaries engaged in actuarial assessment of the activities of the non-state pension fund any information concerning the non-state pension fund's activities including the data protected by federal law (including the data constituting an official or commercial secret).

The persons cited in this item are bound to supply information at the request of the interim administration at the latest in ten working days as from the date when a request is received.

**Article 187.4.** The Specifics of the Activities of the Interim Administration of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance Which Is Appointed in Case of Cancellation of Its Licence for Exercising the Activity of Pension Provision and Pension Insurance

**1.** The interim administration appointed by the control body after cancellation of a non-state pension fund's licence for exercising the activity of pension provision and pension insurance shall exercise the same functions and shall have the same authority which are provided to the interim administration in compliance with this Federal Law in case of suspension of the authority of executive bodies of the non-state pension fund, except for the functions involved in taking measures aimed at preventing insolvency (bankruptcy) of the non-state pension fund, working out measures aimed at restoration of its ability to pay, organisation and exercise of control over their taking, as well as except for taking measures aimed at covering the insufficiency of assets of pension savings and for discharging obligations with respect to insured persons.

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 62 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 184
of 317                                      *[Unofficial translation from Russian]*

**2.** Paragraph 1 has lost force.

In the event of initiation of the proceedings involved in compulsory liquidation of a non-state pension fund, Item Three of Article 183.11 of this Federal Law shall not apply.

**3.** As from the date of appointing the interim administration of a non-state pension fund:

1) it is not allowed for an insured person to transfer to another non-state pension fund or the Pension Fund of the Russian Federation, to refuse to allocate the assets (a part of the assets) of the maternal (family) capital for forming the accumulative pension, as well as to register appropriate amendments in the comprehensive register of insured persons by the Pension Fund of the Russia n Federation;

2) shall be terminated consideration of applications of insured persons for granting the accumulative pension and/or a time pension payment on account of the assets of pension savings recorded on the pension account of the accumulative pension and received by the non-state pension fund.

**4.** As from the date of its appointing the interim administration shall exercise the functions provide for by Article 7.2 of the Federal Law on Non-State Pension Funds for a non-state pension fund whose licence has been cancelled.

**5.** Abrogated.

**6.** The interim administration, in case of insufficiency of monetary assets for making current payments of the non-state pension fund connected with safekeeping of its property and protection of the interests of creditors of the non-state pension fund is entitled to file with a general jurisdiction court or a commercial court an application for the withdrawal of previously imposed arrests of the monetary assets kept on bank accounts in the amount required to ensure the functioning of the non-state pension fund according to the estimate of expenses approved by the control body.

**7.** Creditors are entitled to raise their claims against a non-state pension fund at any time within the period while the interim administration is exercising its activities.

The creditors' claims made against a non-state pension fund within the period while the interim administration is exercising its activities in it shall be transferred according to a list thereof to the bankruptcy receiver or the liquidator of the non-state pension fund in the procedure established by Item Four of Article 183.14 of this Federal Law.

> **Article 187.5.** The Current Payments in the Course of the Interim Administration's Activity and in the Course of Bankruptcy Proceedings in Respect of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** For the purposes of this article, the current payments of a non-state pension fund exercising the activity of mandatory pension insurance mean the following:

1) the duty of paying the debt built up before the date of appointing the interim administration which is appointed after cancellation of the licence or the date of initiating bankruptcy proceedings (depending on what date came first) for carrying out the works (rendering the services) connected with continuation of the non-state pension fund's functioning within the limits of the estimate of expenses approved in compliance with this article:

2) the monetary obligations the grounds for which originated within the period from the date of appointing the interim administration which was appointed after the licence's cancellation or the date of initiation of bankruptcy proceedings (depending on what date came first) up to the date of completion of bankruptcy proceedings, in particular:

obligations to cover the expenses connected with continuation of functioning of the non-state pension fund, including labour wages of the persons working on the basis of labour contracts, payment of discharge allowances to these persons, should they be dismissed, subject to the specifics established by Item 2.1 of Article 134 of this Federal Law;

court costs of the non-state pension fund, outlays on the inclusion into the Comprehensive Federal Register of Data on Bankruptcy and publication of the reports provided for by this Federal Law, as well as other outlays resulting from this Federal Law, which are connected with the activity of the interim administration and bankruptcy proceedings:

3) the duties involved in making obligatory payments which originated within the period from the date of appointing the interim administration or the date of initiation of bankruptcy proceedings (depending on what date came first) up to the date of starting bankruptcy proceedings, as well as the duty of making obligatory payments which originated in the course of the interim administration's activities or in the course of bankruptcy proceedings when paying wages to the non-state pension fund's employees:

4) the duties involved in deducting monetary assets from wages of the non-state pension fund's employees paid in connection with the discharge of the duties cited in Item 1 of this item within the period from the date of appointing the interim administration or the date of initiation of bankruptcy proceedings (depending on what date came first) and up to the end date of bankruptcy proceedings, as well as the duties involved in remittance of the amounts of such deductions in compliance with the

*[Unofficial translation from Russian]*

legislation of the Russian Federation (alimony, personal income tax, trade union dues and other payments imposed upon the employer in compliance with federal law).

**2.** The outlays on making current payments by a non-state pension fund shall be included into an estimate of current expenses of the non-state pension fund and shall be made by the interim administration and the bankruptcy receiver on the basis of such estimate.

**3.** If not otherwise established by this article, an estimate of current payments of a non-state pension fund shall be endorsed (changed) by the control body in the course of the interim administration, as well as by the bankruptcy receiver in the course of bankruptcy proceedings.

**4.** An estimate of current expenses of a non-state pension fund in the course of bankruptcy proceedings, as regards the outlays made before the first meeting of creditors, is subject to endorsement (changing) by the creditors' meeting or, if it has established the creditors' committee, by the creditor's committee on the proposal of the bankruptcy receiver.

An estimate of current expenses of a non-state pension fund shall be presented for endorsement to the first meeting of creditors or, if it has established a creditors' committee, to the creditors' committee at the latest in three working days as from the date of its establishment. In the event of non-endorsement (refusal to endorse) by a meeting of creditors or by a creditors' committee of an estimate of current expenses of a non-state pension fund, the meeting of creditors or the creditors' committee is entitled to file with a commercial court an application for settling differences between the bankruptcy receiver and the meeting of creditors or the creditors' committee. On the basis of the results of consideration of the cited differences a commercial court shall endorse the estimate of current expenses of the non-state pension fund made after rendering the appropriate judicial act on its endorsement.

**5.** In the course of bankruptcy proceedings an estimate of current expenses of a non-state pension fund endorsed by a meeting of creditors, a creditors' committee or a commercial court in the procedure established by Item Four of this article may be changed by the meeting of creditors or the creditors' committee on the proposal of the bankruptcy proceedings or, where there are differences between them in respect of the issue of making amendments in the cited estimate, by a commercial court in the procedure provided for by Item Four of this article.

**6.** Before the endorsement (changing) of an estimate of current expenses by a meeting of creditors, a creditors' committee or a commercial court in the procedure provided for by Items Four and Five of this article the estimate of current expenses of the non-state pension fund endorsed (changed) by the bankruptcy receiver shall be in effect.

**Article 187.6.** The Specifics of Trying the Case on Bankruptcy of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** When trying the case on bankruptcy of a non-state pension fund exercising the activity of mandatory pension insurance, the observation, financial improvement, external management and amicable agreement shall not apply.

**2.** In the event of initiation of proceedings in respect of the case on bankruptcy of a non-state pension fund exercising the activity of mandatory pension insurance, the control body is entitled to appoint the interim administration on the basis of an application of a debtor, bankruptcy creditor or authorized body.

**3.** If at the time of taking over by a commercial court of an application of a debtor, bankruptcy receiver or authorized body for declaring a non-state pension fund bankrupt the interim administration is appointed by the control body or the interim administration was appointed by the control body in the course of trying the bankruptcy case, the commercial court shall suspend proceedings in the bankruptcy case pending the termination of the activities of the interim administration on the grounds cited in Item One of Article 183.14 of this Federal Law.

**4.** As the person participating in commercial court proceedings in respect of a case on bankruptcy of a non-state pension fund exercising the activity of mandatory pension insurance, pending the date of adoption by a commercial court of the decision on declaring the debtor bankrupt and on starting bankruptcy proceedings or pending the date of termination of the bankruptcy case, shall be deemed, along with the persons cited in Article 183.18 of this Federal Law, the Agency.

**5.** A copy of the ruling of a commercial court on acceptance of an application for declaring a non-state pension fund exercising the activity of mandatory pension insurance bankrupt shall be sent by the commercial court to the applicant, to the non-state pension fund, control body and the Pension Fund of the Russian Federation, as well as to the Agency, at the latest on the working day following the date when it is issued.

**6.** In an application for declaring a non-state pension fund exercising the activity of mandatory pension insurance bankrupt the candidacy of the qualified receiver, denomination and address of a self-regulated organisation shall not be cited.

**Article 187.7.** The Specifics of Bankruptcy Proceedings in Respect of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** Bankruptcy proceedings shall be introduced for a term of three years. The time period of bankruptcy proceedings

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 64 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 186
of 317
*[Unofficial translation from Russian]*

may be extended by six months at a petition of a person participating in a bankruptcy case.

**2.** From the date of adoption by a commercial court of the decision on declaring a non-state pension fund exercising the activity of mandatory pension insurance bankrupt and on starting bankruptcy proceedings:

shall be terminated contracts of mandatory pension insurance. The effects of termination of the cited contracts shall be determined in compliance with this Federal Law;

shall not be allowed to transfer (to remit) to the Pension Fund of the Russian Federation or other non-state pension fund assets of pension savings of insured persons, except as established by Article 187.11 of this Federal Law;

shall not be allowed to an insured person to allocate the assets (a part of the assets) of the maternal (family) capital for forming the accumulative pension, as well as to register the appropriate amendments in the comprehensive register of insured persons by the Pension Fund of the Russian Federation;

shall be terminated consideration of applications of insured persons for granting the accumulative pension and/or a time pension payment on account of the assets of pension savings recorded on the pension account of the accumulative pension and received by the non-state pension fund.

Assets of pension savings and assets of pension reserves shall not be included into the bankruptcy estate of a non-state pension fund.

**3.** Within two months from the date of publishing data on declaring a non-state pension fund bankrupt an on starting bankruptcy proceedings the bankruptcy receiver shall:

draw up a register of declared creditors' claims by way of including thereto the claims raised in the course of the activities of the interim administration and of the creditors' claims raised in the course of bankruptcy proceedings;

if the non-state pension fund has concurrently exercised the activities of non-state pension provision and of non-state pension insurance, determine and separately record in the register of declared creditors' claims:

obligations under pension contracts (including the obligations involved in paying granted non-state pensions);

list of creditors whose claims are subject to satisfaction on account of assets of pension reserves.

The creditors' claims shall be established in the procedure provided for by Article 183.26 of this Federal Law. A register of declared creditors' claims and a register of creditors' claims of a non-state pension fund shall be kept by the bankruptcy receiver.

**4.** From the date of starting bankruptcy proceedings the bankruptcy receiver shall keep the register of obligations of a non-state pension fund with respect to insured persons provided for by the Federal Law on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Assets of Pension Savings, Establishing and Making Payments on Account of Pension Savings' Assets (hereinafter referred to as a register of obligations).

The amount of obligations with respect to insured persons is subject to reduction by the amount of the guarantee reimbursement made in case of occurrence of an insured event in respect of a non-state pension fund or by the amount of assets remitted by the Bank of Russia to the Pension Fund of the Russian Federation in compliance with Part 6 of Article 23 of Federal Law No. 422-FZ of December 28, 2013 on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing the Assets of Pension Savings, Establishing and Making Payments from the Assets of Pensions Savings.

In a bankruptcy case and in the course of bankruptcy proceedings in respect of a non-state pension fund exercising the activities involved in mandatory pension insurance the Pension Fund of the Russian Federation shall enjoy the rights of a bankruptcy creditor with respect to the claims of insured persons and legal successors of deceased insured persons included into a register of creditors' claims left after making the guarantee reimbursement in case of the occurrence of an insured event in respect of a non-state pension fund or after the remittance of assets by the Bank of Russia to the Pension Fund of the Russian Federation in the procedure provided for by this item, in particular by the right of vote at a meeting of creditors.

Insured persons and legal successors of deceased insured persons shall not be bankruptcy creditors.

**5.** Within three months as from the date of selling the property making up the assets of pension savings the bankruptcy receiver shall make settlements concerning obligations with respect to insured persons (their legal successors) by way of transferring the assets (a part of the assets) derived from selling the cited property to the Pension Fund of the Russian Federation in the procedure established by this Federal Law.

**6.** The bankruptcy receiver is bound to use a debtor's separate special account for entering thereupon assets of pension savings, as well as the assets derived from selling the property making up pension savings.

*[Unofficial translation from Russian]*

The settlements in respect of the obligations towards insured persons (their legal successors) , as well as the creditors whose claims are subject to satisfaction on account of the assets of pension savings in compliance with Article 187.11 of this Federal Law, shall be made from the cited special account of the debtor being a non-state pension fund.

The debtor's accounts provided for by Article 186.6 of this Federal Law and by this item in the course of bankruptcy proceedings in respect of a non-state pension fund exercising the activity of mandatory pension insurance shall be opened with the Agency.

**7.** For entering to the bankruptcy estate (to the composition of the debtor's property) monetary assets in a foreign currency the bankruptcy receiver shall use the accounts of the non-state pension fund opened before the date of declaring it bankrupt and starting bankruptcy proceedings in respect of it with resident credit organisations and/or, where necessary, shall open with resident credit organisations other foreign currency accounts corresponding to the currencies of available claims of the non-state pension fund against third persons in the procedure established by the control body.

**8.** For the purposes of exercising the functions of the bankruptcy receiver provided for by this Federal Law the Central Bank of the Russian Federation shall open for the Agency accounts for monetary assets in the currency of the Russian Federation.

**9.** The claims of the Agency acquired by it in connection with payment of the guarantee reimbursement in compliance with Federal Law No. 422-FZ of December 28, 2013 on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Pension Savings Assets, Establishing and Making Payments from Pension Savings Assets, as well as the claims of the Bank of Russia acquired as a result of remittance of assets by the Bank of Russia to the Pension Fund of the Russian Federation in compliance with Part 6 of Article 23 of the cited Federal Law, shall be included into a register of creditors' claims, regardless of the date of closing the register of creditors' claims.

**10.** From the date of starting bankruptcy proceedings in respect of a non-state pension fund shall not apply the provisions of Item One of Article 32 and Article 32.1 of the Federal law on Non-State Pension Funds.

A procedure for submitting by the bankruptcy receiver reports, as well as other information in the course of bankruptcy proceedings, and the requirements for their composition shall be established by the control body.

**11.** The bankruptcy receiver is entitled to request for and receive from management companies, specialized depositories, audit organisations engaged in keeping pension accounts and actuaries engaged in actuarial assessment of the activities of a non-state pension fund any information concerning the activities of the non-state pension fund, including the data protected by federal law (including the data constituting an official or commercial secret).

The persons cited in this item are bound to present information at the request of the bankruptcy receiver within at most ten working days as from the date receiving the request.

**12.** The bankruptcy receiver is entitled to file with a commercial court an application for declaring invalid the transactions made by a non-state pension fund and by management companies of a non-state pension fund on the grounds provided for by Chapter III.1 of this Federal Law. In so doing, if prior to declaring a non-state pension fund bankrupt the interim administration had been appointed, the periods, within which were made the transactions that can be declared invalid or the obligations of the non-state pension fund cited in Articles 61.2, 61.3 and Item 4 of Article 61.6 of this Federal law originated, shall be estimated starting from the date of appointment of the interim administration.

The bankruptcy receiver is entitled to file with a commercial court an application about failure to discharge or improper discharge by specialized depositories, actuaries, audit organisations and organisations engaged in keeping pension accounts of obligations under the contracts made with a non-state pension fund and about compensation for losses incurred by the non-state pension fund.

**13.** To ensure the discharge of the duties imposed upon the bankruptcy receiver in a bankruptcy case the bankruptcy receiver is bound to engage on a contractual basis accountants, auditors, specialized depositories, appraisers, actuaries, electronic sites' operators and other persons with their services to be paid for on account of the property of the non-state pension fund in the amount established by an estimate of current expenses of the non-state pension fund.

**14.** Where property of a non-state pension fund is insufficient for covering the losses connected with the inclusion into the Comprehensive State Register of Data on Bankruptcy and publication of the data cited in this Federal Law, if the case on bankruptcy of the non-state pension fund is initiated on the basis of an application of the interim administration or the control body, they shall be published in the official edition of the Central Bank of the Russian Federation - Vestnik Banka Rossii and they shall be included into the Comprehensive Federal Register of Data on Bankruptcy on a free-of-charge basis.

**Article 187.8.** The Bankruptcy Receiver in the Case on Bankruptcy of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** Seen as the bankruptcy receiver in the case on bankruptcy of a non-state pension fund exercising the activity of

*[Unofficial translation from Russian]*

mandatory pension insurance shall be the Agency.

In the decision of a commercial court on declaring bankrupt a non-state pension fund exercising the activity of mandatory pension insurance and on starting bankruptcy proceedings in respect of it shall be cited the denomination of the Agency and its address for sending correspondence thereto.

**2.** The Agency shall not be paid remuneration for exercising the authority of the bankruptcy receiver provided for by this Federal Law.

**3.** The Agency shall exercise the authority of the bankruptcy receiver through the representative (representatives) acting on the basis of a power of attorney appointed by the agency from among its employees.

**4.** A representative of the Agency while discharging the duties of a representative of the bankruptcy receiver may be taken off by a commercial court from discharging the cited duties in connection with satisfaction by the commercial court of a complaint of a person participating in the bankruptcy cases against the failure to discharge or improper discharge by the representative of the Agency of the duties of a representative of the bankruptcy receiver on condition that such failure to discharge or improper discharge of the cited duties have violated the rights or legal interests of the applicant filing the complaint or have entailed losses incurred by the non-state pension fund or its creditors.

The ruling of a commercial court on taking a representative of the Agency off discharging the duties of a representative of the bankruptcy receiver is subject to immediate execution and may be appealed.

**5.** The bankruptcy receiver is entitled to prepay the outlays connected with the exercise of the authority imposed upon it, including the outlays on payment for the services of the persons whose engagement for discharging the duties imposed thereupon in the bankruptcy case in compliance with this Federal Law is mandatory, out of own funds with the subsequent reimbursement of these outlays on account of the bankruptcy estate within the composition of creditors' claims in respect of current payments in the order established for an appropriate kind of outlays classified as current payments.

**Article 187.9.** The Sale of the Property Making Up Assets of Pension Savings

**1.** In the course of bankruptcy proceedings of a non-state pension fund the bankruptcy receiver shall sell the property making up the assets of pension savings for ensuring settlements in respect of the obligations towards insured persons and their legal successors, as well as towards creditors of the non-state pension fund whose claims are subject to satisfaction in compliance with Article 187.11 of this Federal Law.

**2.** The property making up the assets of pension savings shall be sold in the procedure established by this Federal Law and subject to the provisions of this article.

When selling the property making up pension savings the provisions of Article 139 of this Federal Law shall not apply.

**3.** If within the composition of the property there are securities that do not circulate in the organised trade, their cost shall be estimated in compliance with Article 130 of this Federal Law with an appraiser to be engaged for it.

**4.** Abrogated.

**Article 187.10.** The Specifics of Transfer of the Duty of Paying Life Non-State Pensions and Assets of Pension Reserves

If a non-state pension fund has concurrently exercised the activities of non-state pension provision and mandatory pension insurance, the duty of the non-state pension fund as to payment of the non-state pension and assets of pension reserves of the non-state pension fund exercising the activity of mandatory pension insurance may be transferred subject to the following specifics:

1) the non-state pension fund, which the obligations involved in payment of the state pension and the property making up pension reserves are to be transferred to, shall be determined by the bankruptcy receiver by way of selection on a competitive basis whose procedure and terms shall be established by the Agency;

2) when conducting the selection of a competitive basis, the participants thereof shall provide data on the composition of the obligations as to payment of the non-state pension and assets of pension reserves to be transferred, on the composition and cost of the assets they are placed into;

3) as the condition of admittance of a non-state pension fund to participation in the selection on a competitive basis shall be deemed the financial status which is sufficient for discharge of the obligations to be assumed, as well as for meeting by it the normative requirements established by the control body;

4) information about the non-state pension funds participating in the selection on a competitive basis shall be sent to the control body. The control body is entitled to prohibit the transfer of the obligations involved in payment of the non-state pension and of the property making up pension reserves in the event of non-compliance of a non-state pension fund participating in the selection on a competitive basis with the requirements established by Subitem 3 of this article;

5) the non-state pension fund, which the obligations as to payment of the non-state pension and the property making up pension reserves are to be transferred to, and the bankruptcy receiver shall make an agreement on the transfer of the cited obligations and property where the terms of the transfer shall be cited;

6) the agreement on the transfer of obligations and property may provide for changing the terms and rate of payment of non-state pensions, as well as for the effects of transfer to the non-state pension fund of property of improper quality;

7) after transfer of the property making up pension reserves to another non-state pension fund the latter is bound to discharge the obligations involved in payment of non-state pensions and/or payback amounts under the terms which are provided for by an agreement on transfer of the cited obligations and property;

8) assets of pension reserves shall be deemed transferred to another non-state pension fund as from the date of signing the transfer deed by both parties. From this time the risk of accidental destruction or accidental damage of the received property shall be transferred to another non-state pension fund.

**Article 187.11.** The Order of Satisfying the Claims of Insured Persons, Their Legal Successors, as Well as of Creditors, on Account of Assets of Pension Savings and on Account of the Bankruptcy Estate

**1.** For the purposes of this Federal Law, the claims of insured persons and of their legal successors mean the obligations of a non-state pension fund with respect to insured persons and their legal successors which are defined by the bankruptcy receiver in the amount of the obligations registered in a register of obligations with respect to insured persons. On account of the assets derived from selling the property making up pension savings shall be satisfied the claims of insured persons and their legal successors and the requirements of the Agency acquired as a result of the paid guaranty reimbursement, as well as the requirements of other creditors to be satisfied on account of assets of pension savings in compliance with the Federal Law on Non-State Pension Funds.

**2.** The requirements to be satisfied on account of assets of pension savings shall be satisfied in the following order:

1) in the first turn - the claims of the Agency acquired as a result of paying the guaranty reimbursement;

2) in the second turn - the claims of insured persons and their legal successors in the part thereof exceeding the amount of guaranteed assets by way of transferring to the Pension Fund of the Russian Federation assets of pension savings in the procedure established by this Federal Law;

3) in the third turn - the claims of creditors of a non-state pension fund to be satisfied on account of assets of pension savings in compliance with the Federal Law on Non-State Pension Funds.

**3.** If the assets of pension savings are insufficient for satisfying the claims cited in Item 2 of this article, such claims shall be satisfied on account of the bankruptcy estate in the following order:

1) within the composition of the first-turn creditors' claims provided for by this Federal Law shall be satisfied the claims of the Agency acquired as a result of payment of the guaranty reimbursement, the claims of insured persons in the part thereof exceeding the amount of guaranteed assets which are not satisfied on account of assets of pension savings, as well as the claims of insured persons' legal successors;

2) within the composition of the claims of creditors of the third turn provided for by this Federal Law shall be satisfied the claims of creditors of a non-state pension fund which are subject to satisfaction on account of assets of pension savings in compliance with the Federal Law on Non-State Pension Funds and not satisfied on account of assets of pension savings.

**Article 187.11-1.** The Specifics of Satisfying Claims from Pension Savings in the Course of Bankruptcy Proceedings in Respect of a Non-State Pension Fund Which Is Not a Participant of the System of Guaranteeing the Rights of Insured Persons

**1.** In the course of bankruptcy proceedings in respect of a non-state pension fund which is not a participant of the system of guaranteeing the rights of insured persons the claims to be satisfied from the pension savings shall be satisfied in the following order:

1) in the first group:

the claims of the Bank of Russia acquired as a result of remittance of assets by the Bank of Russia to the Pension Fund of the Russian Federation, assets in respect of an insured person in compliance with Part 6 of Article 23 of Federal Law No. 422-FZ of December 28, 2013 on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Pension Savings, Establishing and Making Payments from Pension Savings Assets;

the claims of insured persons and of their legal successors, these meaning the obligations of a non-state pension fund with respect to insured persons and legal successors thereof which are determined by the bankruptcy receiver in the amount of the obligations determined by the interim administration (hereinafter referred to as the aggregate claims in respect of insured

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 68 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 190
of 317
*[Unofficial translation from Russian]*

persons) in the part thereof exceeding the sum of assets remitted by the Bank of Russia to the Pension Fund of the Russian Federation in compliance with Part 6 of Article 23 of Federal Law No. 422-FZ of December 28, 2013 on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Pension Savings Assets, Establishing and Making Payments from Pension Savings Assets (hereinafter referred to as the claim of an insured persons);

2) in the second group - the claims of creditors of a non-state pension fund which are subject to satisfaction from assets of pension savings in compliance with the Federal Law on Non-State Pension Funds.

**2.** To satisfy the claims of the first-group creditors, the assets of pension savings shall be forwarded for satisfaction of the aggregate claim in respect of an insured person in proportion to the shares of the given claim in aggregate claims in respect of all insured persons. The aggregate claim in respect of an insured person means the sum of claims of an insured person and the claims of the Bank of Russia in respect of the insured person. For this the claims of an insured person shall not be satisfied pending full satisfaction of the claims of the Bank of Russia in respect of this insured person.

**3.** To satisfy the claims of the second-group creditors assets shall be distributed to them in proportion to the amounts of their claims.

**4.** If the assets of pension savings are insufficient for satisfying the claims of the creditors cited in Item 1 of this article, such claims are subject to satisfaction from the fund's property making up the bankruptcy estate in the following order:

1) within the composition of the claims of the first-group creditors provided for by this Federal Law shall be satisfied claims of the Bank of Russia, as well as claims of insured persons;

2) within the composition of the claims of the third-group creditors provided for by this Federal Law shall be satisfied the claims of creditors of a non-state pension fund which are subject to satisfaction from pension savings assets in compliance with the Federal Law on Non-State Pension Funds and have not been satisfied from the pension savings assets.

**Article 187.12.** The Specifics of Calling to Account Controlling Persons of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** For the purposes of this paragraph, as controlling persons of a non-state pension fund exercising the activity of mandatory pension insurance shall be deemed the persons which have or had within less than two years before the date of appointing the interim administration or the date of acceptance by a commercial court of an application about declaring the debtor bankrupt (depending on the date that came first) the right to give instructions to be followed by the debtor without fail or the possibility to determine in some other way the debtor's actions, in particular by way of coercing the head or members of the debtor's managerial bodies or by way of exerting a definite influence upon the head or members of the debtor's managerial bodies in some other way.

**2.** The persons controlling the debtor on the basis of an application of the interim administration may be brought by a commercial court to liability in the form of reimbursement of the losses caused to a non-state pension fund by their delinquent actions (omission to act).

**3.** The monetary assets recovered from the persons brought to responsibility in compliance with this article on the basis of the interim administration's application shall be included into the composition of the property for ensuring the statutory activities (of own of assets) of a non-state pension fund.

**4.** Where there is not enough property of a non-state pension fund, if the accounting documents and/or reports/statements, as well as other documents showing the economic activity of the non-state pension fund in respect of which the duty to prepare, draw up or keep them is established by the legislation of the Russian Federation, the databases of the non-state pension fund on electronic media (reserve copies of the databases) containing information about the property and obligations of the non-state pension fund, as well as about their flow, and in respect of which the duty of keeping them is established by the Federal Law on Non-State Pension Funds, are not transferred in the established procedure to the interim administration or the bankruptcy receiver or are missing in full or in part, the persons obliged to ensure the safekeeping of the documentation and/or of the property of non-state pension fund shall be held subsidiary liable in respect of monetary obligations of the non-state pension fund and/or the obligations thereof to make obligatory payments.

**Article 188.** Abrogated.

**Article 189.** Abrogated.

**Article 189.1.** Particular Features of the Bankruptcy of the Credit Co-operatives

**1.** Particular features of the bankruptcy of financial organisations established by Articles 183.1 - 183.26 of the present Federal Law shall extend to credit co-operatives taking into account the provisions of the present article and Articles 189.2 - 189.6 of the present Federal Law.

**2.** In case the control over the activity of the credit co-operative is not carried out directly by the control body

according to Article 5 of Federal Law No. 190-FZ of July 18, 2009 on Credit Cooperation, the right to recourse to the commercial court with the application for the recognition of the credit co-operative bankrupt shall arise with the control body from the date of the detection by it of the signs of the bankruptcy of the credit co-operative or if the provisional administration of the credit co-operative has not been appointed from the date of the reception of the petition of the self-regulating organisation of the credit co-operatives to whose membership such a credit co-operative belongs about the necessity of filing the aforementioned application.

The procedure of the filing by the control body of the application for the recognition of the credit co-operative bankrupt under the petition of the self-regulating organisation of the credit co-operatives to whose membership such a credit co-operative belongs shall be established by the control body.

**3.** Unless the present paragraph establishes otherwise, from the date of the acceptance by commercial court of the application for the recognition of the credit co-operative bankrupt, satisfaction shall not be allowed of the claims of the members of the credit co-operative (unit holders) about the return of the accrued units (stock), i.e. the claims connected with the termination of membership in the credit co-operative.

**4.** During the conduct of the meeting of the creditors of the credit co-operative the members of the credit co-operative (unit holders) included in the register of claims of creditors as of the date of the conduct of the meeting of the creditors of the credit co-operative shall be empowered to take part in such a meeting or to send the completed bulletins for voting to the insolvency administrator to the address indicated in the notice on the conduct of the meeting of the creditors of the credit co-operative by means of a postal service, electronic mail or other means of communication.

The publication by the insolvency administrator of the message on conducting such a meeting according to the procedure established by article 28 of the present Federal law shall be recognized as the appropriate notice on the conduct of the meeting of the creditors of the credit co-operative.

Simultaneously with the inclusion in the Unified Federal Register of Information on Bankruptcy of the information on the publication of the communication on the conduct of the meeting of the creditors of the credit co-operative, the bulletins for voting shall be subject to inclusion in the aforementioned register without publication in an official release.

During the counting of the votes and the making by meeting of the creditors of the credit co-operative of decisions, the bulletins for the voting shall be taken into account that were completed by the members of the credit co-operative (unit holders), as well as those received by the insolvency administrator not later than the date of conducting of such a meeting.

**Article 189.2.** Additional Bases for the Application of Measures for the Prevention of Bankruptcy of the Credit Co-operative

**1.** The additional bases for the application of measures for the prevention of bankruptcy of the credit co-operative shall be:

1) multiple breaches of the financial normatives established according to the legislation of the Russian Federation in the sphere of credit cooperation in the course of twelve months from the date of detection of the first of such breaches;

2) the passing by the control body of the order on the interdiction for the credit co-operative to carry out the borrowing of money resources, admission of new members and granting of loans.

**2.** In case of the occurrence of the bases for the application of measures for the prevention of bankruptcy of the credit co-operative, it shall direct the plan of the restoration of solvency to the control body if the oversight of the activity of such a credit co-operative according to Article 5 of Federal Law No. 190-FZ of July 18, 2009 on Credit Cooperation is carried out directly by the control body, or, in other cases, to the self-regulating organisation of the credit co-operatives to whose membership such a credit co-operative belongs.

**Article 189.3.** Particular Features of the Appointment of a Provisional Administration of the Credit Co-operative

**1.** Along with the bases for the appointment of the provisional administration envisaged by Article 183.5 of the present Federal Law, the control body shall appoint a provisional administration of the credit co-operative if by the control body or in case of a failure according to Article 5 of the Federal Law No. 190-FZ of July 18, 2009 on Credit Cooperation of control over the activity of the credit co-operative directly by the control body, the self-regulating organisation of the credit co-operatives to whose membership such a credit co-operative belongs revealed at least one of the bases mentioned in Item 1 of Article 189.2 of the present Federal Law in the absence of the notification by such a credit co-operative of the control body or such a self-regulating organisation of the credit co-operatives accordingly about the existence of the particular circumstances.

The decision on the appointment of the provisional administration of the credit co-operative shall be substantiated.

**2.** In addition to the requirements envisaged by Article 183.6 of the present Federal law regarding the composition of the provisional administration, the structure of the provisional administration of the credit co-operative shall include representatives of the self-regulating organisation of the credit co-operatives to whose membership such a credit co-operative

*[Unofficial translation from Russian]*

belongs.

**3.** From the date of the appointment of the provisional administration of the credit co-operative the disposal of the property of the credit co-operative, except for the settlement of the municipal payments, operational payments, other payments necessary for the conduct of the activity of the credit co-operative, money liabilities for the payment of the goods delivered, services rendered and works executed, obligatory payments, i.e. the performance of payments in connection with the termination of membership in the credit co-operative envisaged by Part 4 of article 14 of Federal Law No. 190-FZ of July 18, 2009 on Credit Cooperation shall be allowed only according to the decision of the provisional administration of the credit co-operative.

**4.** The decision on the appointment of the provisional administration of the credit co-operative, control over the activity of which according to Article 5 of Federal Law 190-FZ of July 18, 2009 on Credit Cooperation is carried out directly by the control body shall be made by the control body on the basis of the results of the check of the activity of the credit co-operative held by the control body no more than one month before the date of making the decision on the appointment of the provisional administration of the credit co-operative.

The decision of the control body on the appointment of the provisional administration of the credit co-operative may be made in accordance with the procedure established by the control body before the end of the check of the activity of the credit co-operative if during such a check the bases for the obligatory appointment of the provisional administration of the credit co-operative are detected.

**5.** In case the self-regulating organisation of the credit co-operatives detects the bases indicated in Item 1 of Article 183.2 and Item 1 of Article 189.2 of the present Federal Law, the self-regulating organisation of the credit co-operatives, within five working days from the date of detection of the aforementioned bases, shall be obliged to direct to the control body in accordance with the procedure established by the control body a petition for the appointment of the provisional administration of the credit co-operative.

In such a case the control body shall appoint the provisional administration of the credit co-operative in the course of thirty working days from the date of receipt of the petition for the appointment of the provisional administration of the credit co-operative directed to the control body by the self-regulating organisation of the credit co-operatives to the membership of which such a credit co-operative belongs. The appointment procedure by the control body of the provisional administration of the credit co-operative following the petition of the self-regulating organisation of the credit co-operatives shall be established by the control body.

**Article 189.4.** Particular Features of the Activity of the Provisional Administration of the Credit Co-operative

**1.** In case the powers of the executive bodies of the credit co-operative are limited, the executive bodies of the credit co-operative in addition to the right to perform the transactions mentioned in Item 3 of Article 183.9 of the present Federal Law shall be empowered to make decisions on the admission of new members to the credit co-operative and the decision on the borrowing of money resources of the members of the credit co-operative (unit holders) only with the consent of the provisional administration of the credit co-operative.

**2.** The reimbursement of the expenses of the provisional administration of the credit co-operative connected with its activity, i.e. payment of compensation to members of the provisional administration of the credit co-operative, shall be carried out at the expense of the means of the credit co-operative.

**Article 189.5.** Particular Features of the Satisfaction of the Claims of the Creditors of the Credit Co-operative and of the Members of the Credit Co-operative (Unit Holders)

**1.** The satisfaction of claims of the creditors of the credit co-operative shall be carried out in the order of precedence mentioned in article 134 of the present Federal law, taking into account the particular features envisaged by the present article.

**2.** In the first turn after satisfying the claims of the individuals to whom the debtor is liable for inflicting harm on their life and health are subject to satisfaction the claims of members of a credit cooperative (shareholders) being natural persons and creditors of the credit cooperative on the basis of the contracts made with them that involve the transfer of their personal savings in the amount of at most 700 thousand roubles but not more that the principal debt amount in respect of each member of the credit cooperative (shareholder).

**3.** The claims of creditors of the third priority shall be subject to satisfaction in the following order:

1) in the first place - the unsatisfied claims envisaged by Item 2 of the present article of the members of the credit co-operative (shareholders) being natural persons who are creditors of the credit co-operative on the basis of the contracts concluded with them on the transfer of personal savings, in particular those for reparation of the loss in the form of lost earnings, as well as for payment of the sums of financial sanctions;

2) In the second place the claims of the members of the credit co-operative (unit holders) legal bodies who are creditors of the credit co-operative on the basis of loan contracts concluded with them;

191

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 71 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 193
of 317
*[Unofficial translation from Russian]*

3) In the third place the claims of the persons who are not members of the credit co-operative (unit holders).

**4.** Claims of the members of the credit co-operative (unit holders) about the repayment of the share (unit) accumulations shall be subject to satisfaction after the settlements with the creditors of the credit co-operative for the satisfaction of the claims aforementioned in the fifth paragraph of Item 4 of Article 134 of the present Federal Law, in the following order:

1) In the first place the claims of the members of the credit co-operative (unit holders) (except for the persons aforementioned in subitem 2 of the present Item), including the claims connected with the termination of membership in the credit co-operative before the recognition of the credit co-operative bankrupt;

2) in the second place claims of the members of the credit co-operative (unit holders) who are or were the individual executive office of the credit co-operative or members of the board of the credit co-operative, members of control and auditing body of the credit co-operative or their affiliated persons.

**5.** The creditors' claims in respect of the obligations secured by pledge of the credit cooperative's property shall be satisfied on account of the cost of the subject of pledge in preference to the other creditors, except for the obligations with respect to the first-turn and second-turn creditors.

**Article 189.6.** Liability of the Credit Co-operative and Its Members

**1.** Along with the cases envisaged by Article 10 of the present Federal Law in the insufficiency of money resources of the credit co-operative for the repayment of debts to its creditors, the members of the credit co-operative (unit holders), as well as the persons whose membership in the credit co-operative ceased within six months before the date of the filing of the application with the commercial court about the recognition of the credit co-operative bankrupt bear joint and several subsidiary liability within the limit of the non-contributed part envisaged by the Federal Law No. 190-FZ of July 18, 2009 on Credit Cooperation of the additional contribution of each of the members of the credit co-operative (unit holders).

**2.** Along with the cases envisaged by Item 1 of the present article the members of the credit co-operative (unit holders) who are members of the board of the credit co-operative, members of the control and auditing body of the credit co-operative, or member of the credit co-operative (unit holder) who is the individual executive office of the credit co-operative bear joint and several subsidiary liability within the limit of the accumulated units subject to repayment or repaid during termination of the membership in the credit co-operative if the signs of bankruptcy of the credit co-operative were a result of wrongful acts or lack of action of the aforementioned persons.

The aforementioned persons may be found guilty if their decisions or actions (i.e. excess of powers), followed by the occurrence of signs of bankruptcy did not correspond to the conscientiousness and rationality principles established by the civil legislation, the charter of the credit co-operative, and good business practices.

**3.** In case the self-regulating organisation of the credit co-operatives did not direct to the control body the petition for the appointment of the provisional administration of the credit co-operative, the petition for the necessity of the filing of the application for the recognition of the credit co-operative bankrupt the self-regulating organisation of the credit co-operatives may be brought to joint and several liability in accordance with the procedure established by Item 12 of Article 142 of the present Federal Law.

**Article 189.6-1.** Specifics of Satisfying the Claims of Creditors of Microfinance Company

**1.** The claims of creditors of a microfinance company shall be satisfied in the order cited in Article 134 of this Federal Law, subject to the specifics provided for by this article.

**2.** In the first turn after satisfying the claims of the individuals to whom the debtor is liable for inflicting harm on their life and health are subject to satisfaction the claims of creditors of a microfinance company being natural persons who are not founders (participants, stock holders) thereof on the basis of the loan contracts made with it in the amount of at most three million roubles but not more than the principal debt amount in respect of each creditor.

**3.** The claims of employees of a microfinance company for making a severance pay, for making compensatory and other kinds of payments whose rate is fixed by an appropriate labour contract, should it be terminated, in the part thereof exceeding the minimum amount of appropriate payments which is established by the labour legislation, shall not belong to the number of claims of second-turn creditors and shall be satisfied after satisfying the claims of third-turn creditors.

**4.** The creditors' claims in respect of the obligations secured by pledge of a microfinance company's property shall be satisfied on account of the cost of the subject of pledge in preference to the other creditors, except for the obligations with respect to first-turn and second-turn creditors.

**5.** The claims of third-turn creditors are subject to satisfaction in the following order:

1) in the first turn - the unsatisfied claims envisaged by Item 2 of the present article of the microfinance organisation's creditors being natural persons who are not founders (participants, stockholders) thereof on the basis of contracts of loan

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 72 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 194
of 317
*[Unofficial translation from Russian]*

concluded with it, in particular those for reparation of the loss in the form of lost earnings, as well as for payment of the sums of financial sanctions;

2) in the second turn - the claims of creditors of a microfinance organisation being individual businessmen who are not founders (participants, stockholders) thereof on the basis of the contracts of loan made with it;

3) in the third turn - claims of other persons.

### § 4.1. Bankruptcy of Credit Organisations

**Article 189.7.** The Legal Regulation of Credit Organisations' Bankruptcy

**1.** This paragraph establishes a procedure for and terms of taking measures aimed at preventing the insolvency (bankruptcy) of credit organisations, as well as the specifics of the grounds and procedure for declaring credit organisation insolvent (bankrupt) and of their liquidation by way of bankruptcy proceedings.

**2.** The relations connected with taking measures aimed at preventing the insolvency (bankruptcy) of a credit organisation which are not regulated by this Federal Law shall be regulated by other federal laws and regulatory acts of the Bank of Russia adopted in compliance with them.

**3.** The relations connected with insolvency (bankruptcy) of credit organisations which are not regulated by this paragraph shall be regulated by Chapters I, III, III.1, VII and XI of this Federal Law or, where it is provided for by this Federal Law, by regulatory acts of the Bank of Russia.

**Article 189.8.** The Insolvency (Bankruptcy) of a Credit Organisation

**1.** A credit organisation shall be deemed unable to satisfy creditors' claims in respect of pecuniary obligations, for paying severance benefits and/or labour wages to the persons who are working or have been working under a labour contract and/or to discharge the duty of making mandatory payments, if the appropriate duties are not discharged by it within 14 days after their maturity date and/or the cost of the credit organisation's property (assets) is insufficient for discharging the obligations thereof with respect to creditors and/or the duty of making mandatory payments.

**2.** For the purposes of this paragraph, the credit organisation's duty to make mandatory payments means the duty of the credit organisation as an independent taxpayer to make the mandatory payments to appropriate budgets which are defined in compliance with this Federal Law, as well as the duty of the credit organisation to follow the instructions (orders) to remit mandatory payments to appropriate budgets from its clients' accounts.

**Article 189.9.** The Measures Aimed at Preventing the Bankruptcy of Credit Organisations

**1.** In compliance with this paragraph, before the date of withdrawal of the licence for making banking operations the following measures aimed at preventing the bankruptcy of credit organisations shall be taken:

1) financial rehabilitation of a credit organisation. For the purposes of this paragraph, financial rehabilitation of a credit organisation means taking the measures provided for by Article 189.14 of this Federal Law in an extrajudicial procedure;

2) appointment of the provisional administration for managing a credit organisation, except when the provisional administration is appointed in connection with withdrawal of the licence for making banking operations;

3) reorganisation of a credit organisation;

4) measures aimed at preventing bankruptcy of a credit organisation holding a permit (licence) for borrowing monetary assets of natural persons for depositing and for opening and keeping natural persons' banking accounts to be issued by the Bank of Russia in the procedure established by the Federal Law on Banks and Banking Activity (hereinafter referred to as the bank) which shall be taken with the Agency's participation in compliance with this paragraph.

**2.** The measures aimed at preventing bankruptcy of credit organisations provided for by Subitems 1-3 of Item 1 of this article shall be taken when the grounds established by Article 189.10 of this Federal Law arise.

**3.** The measures aimed at preventing banks' bankruptcy provided for by Subitem 4 of Item 1 of this article shall be taken when the grounds established by Article 189.47 of this Federal Law arise.

**4.** A credit organisation, its founders (stockholders), members of the board of directors (supervisory council), the head of a credit organisation recognized as such in compliance with Article 11.1 of the Federal Law on Banks and Banking Activity (hereinafter referred to as the head of a credit organisation), if the grounds cited in Article 189.10 of this Federal Law arise, are bound to take necessary and timely measures aimed at financial rehabilitation and/or reorganisation of the credit organisation.

**5.** The Bank of Russia is entitled to demand a credit organisation take measures aimed at financial rehabilitation and reorganisation thereof, as well as to appoint a provisional administration for managing the credit organisation in the procedure established by regulatory acts of the Bank of Russia, should the grounds provided for by Article 189.10 of this Federal Law arise.

193

Case 1:16-cv-09139-PGG    Document 53-4    Filed 03/06/17    Page 73 of 122

17-10516    Doc 3-1    Filed 03/03/17    Entered 03/03/17 23:50:39    Exhibit A    Pg 195
of 317    *[Unofficial translation from Russian]*

**6.** The demand to take measures aimed at financial rehabilitation of a credit organisation shall not be sent, if the Bank of Russia is obliged to withdraw the credit organisation's licence for making banking operations on one or several grounds provided for by Part Two of Article 20 of the Federal Law on Banks and Banking Activity.

**Article 189.10.** Grounds for Taking Measures Aimed at Preventing Bankruptcy of a Credit Organisation

If not otherwise provided for by this Federal Law, the measures aimed at preventing bankruptcy of a credit organisation provided for by Subitems 1-3 of Item 1 of Article 189.9 of this Federal Law shall be taken when a credit organisation:

1) does not satisfy the claims of creditors (creditor) in respect of pecuniary obligations (obligation) and/or does not discharge the duty of making mandatory payments within up to three days as from the date of their discharge in connection with the absence or insufficiency of monetary assets on correspondent accounts of the credit organisation repeatedly during the last six months;

2) does not satisfy the claims of creditors (creditor) in respect of pecuniary obligations (obligation) and/or does not discharge the duty of making mandatory payments within the time period exceeding three days as from their maturity date and/or the date of their discharge in connection with the absence or insufficiency of monetary assets on correspondent accounts of the credit organisation;

3) allows an absolute reduction of the amount of own assets (capital) as compared to their maximum value attained for the last 12 months by more than 20 per cent with the concurrent failure to observe the mandatory normatives established by the Bank of Russia;

4) breaks any of the normatives of sufficiency of a bank's own assets (capital) established by the Bank of Russia;

5) breaks the normative of current liquidity of a credit organisation established by the Bank of Russia within the last month by more than 10 per cent;

6) allows a reduction of the amount of own assets (capital) on the basis of the results of the accounting month down to a level below the amount of the authorized capital fixed by the constituent documents of the credit organisation registered in the procedure established by federal laws and normative legal acts and by normative legal acts of the Bank of Russia adopted in compliance with them. In the event of origination of the cited ground within the first two days as from the date of issuance of the licence for making banking operations, measures aimed at preventing bankruptcy shall not be taken in respect of a credit organisation.

**Article 189.11.** The Duties of a Credit Organisation When the Grounds for Taking Measures Aimed at Preventing Bankruptcy Arise

**1.** As from the date of origination of the grounds provided for by Article 189.10 of this Federal Law and up to the date of their removal a credit organisation is bound to notify the Bank of Russia about the following:

1) holding general meetings of the credit organisation's founders (stockholders), as well as sittings of the board of directors (supervisory council), in the procedure provided for notification of the founders (stockholders) and members of the board of directors (supervisory council) of the credit organisation;

2) making transactions (several interrelated transactions):

with related mpersons or with those which are affiliated in respect of the credit organisation, these to be defined in compliance with federal law, or with the persons in respect of which the credit organisation in compliance with federal law is a related person, or with the persons whose activities are controlled or significantly influenced by the credit organisation, or with the persons which exercise control or significantly influence the credit organisation;

connected with the disposal of the property (assets) of the credit organisation whose value exceeds one per cent of the balance sheet value of the credit organisation's property evaluated on the basis of data of its accounting reports/statements as of the last accounting date or exceeds 15 million roubles, if one per cent of the balance sheet value of the property of the credit organisation exceeds 15 million roubles, in particular connected with the disposal of immovable property, receipt and issuance of credits and loans, bills' discounting, making operations with securities (including the issuance of own securities), granting guarantees and suretyships, assignment of rights (right of claim), debt assumption and forgiving, novation and release-money, well as with the establishment of trust management;

connected with acquisition of stocks (shares) in the authorised capital of companies or with participation in the creation (establishment) of other legal entities.

**2.** A notice of making the transactions cited in Paragraphs Two-Four of Subitem 2 of Item 1 of this article shall be sent by a credit organisation to the Bank of Russia within a five-day term as from the date of making a transaction.

**3.** A notice on holding a general meeting of founders (stockholders) of a credit organisation or of a sitting of its board

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 74 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 196
of 317
*[Unofficial translation from Russian]*

of directors (supervisory board) shall be sent to the Bank of Russia at the latest five days before the date of holding such meeting or sitting, except if the grounds provided for by Article 189.10 of this Federal Law arise within the limits of the time period for notification fixed by this item. On such occasion, a credit organisation shall notify about holding a general meeting of its founders (stockholders) or sitting of its board of directors (supervisory council) at the latest on the date following the day of origination of the grounds provided for by Article 189.10 of this Federal Law.

**4.** A credit organisation that has the grounds provided for by Article 189.10 of this Federal Law and is taking measures aimed at financial rehabilitation without the Bank of Russia sending the demand provided for by Article 189.20 of this Federal Law shall stop notifying the Bank of Russia about the events cited in Item 1 of this article from the date of removal of the grounds provided for by Article 189.10 of this Federal Law.

**5.** The Bank of Russia is entitled to send an observer or observers for participation in a general meeting of founders (stockholders) of a credit organisation in a sitting of its board of directors (supervisory council).

**6.** An observer or observers shall be admitted to participate in a general meeting of the board of directors (supervisory council) of a credit organisation or a sitting of its board of directors (supervisory board) on the basis of a decision of the Bank of Russia.

**7.** An observer or observers shall take part in a general meeting of founders (stockholders) of a credit organisation or a sitting of its board of directors (supervisory council) without enjoying the right of vote, as well as shall have access to records and other materials of such meeting or sitting.

**Article 189.12.** The Duty of the Head, Members of Managerial Bodies and Founders (Stockholders) of a Credit Organisation When the Signs of Insolvency (Bankruptcy) of the Credit Organisation Arise

**1.** In the event of origination of the signs of insolvency (bankruptcy) of a credit organisation provided for by Article 189.8 of this Federal Law and/or of the grounds provided for by Part Two of Article 20 of the Federal Law on Banks and Banking Activity, the one-man executive body of the credit organisation within 10 days as from the date of their origination is bound:

1) to send the board of directors (supervisory council) of the credit organisation a reasoned demand for calling an extraordinary general meeting of founders (stockholders) of the credit organisation for considering the issue of liquidation of the credit organisation and of sending a petition the Bank of Russian for cancellation or withdrawal of the credit organisation's licence for making banking operations:

2) to notify the Bank of Russian about the origination of the cited signs of insolvency (bankruptcy) of a credit organisation and/or of the cited grounds and about sending the board of directors (supervisory council) of the credit organisation the demand provided for by Paragraph Two of this item.

**2.** Within three days as from the date of receiving the demand of the one-man executive body of a credit organisation provided for by Subitem 1 of Item One of this article the board of directors (supervisory council) of the credit organisation is bound:

1) to render a decision on calling an extraordinary general meeting of founders (stockholders) of the credit organisation, as well as at the latest in 20 days as from the date of rendering the cited decision to inform the credit organisation's founders (stockholders) about holding such general meeting:

2) to notify the one-man executive body of the credit organisation and the Bank of Russia about the adopted decision.

**3.** If the one-man executive body of a credit organisation is not elected or appointed, the duty of taking the measures provided for by Item 1 of this article shall be imposed on members of the board of directors (supervisory council) of the credit organisation.

**4.** If the board of directors (supervisory council) of a credit organisation does not discharge the duties provided for by Items 2 and 5 of this article, they shall be discharged without fail by the one-man executive body of the credit organisation within three days as from the date of expiry of the time period provided for by Paragraph One of Item 2 and Item 5 of this article.

**5.** If the board of directors (supervisory council) of a credit organisation has not rendered the decision on calling an extraordinary general meeting of founders (stockholders) of the credit organisation in the procedure established by Subitem 1 of Item 2 of this article, members of the board of directors (supervisory council) of the credit organisation are bound to file a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations with the Bank of Russia within three days as from the date of expiry of the time period provided for by Subitem 1 of Item 2 of this article.

**6.** If the decision on liquidation of a credit organisation and on filing a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations with the Bank of Russia is not adopted by an extraordinary general meeting of founders (stockholders) of the credit organisation, members of the board of directors (supervisory council) of the

credit organisation are obliged to file a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations with the Bank of Russia within three days after the date of holding an extraordinary general meeting of the credit organisation's founders (stockholders).

**7.** The decision on liquidation of a credit organisation and on sending the Bank of Russia a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations shall be adopted by a general meeting of founders (stockholders) of the credit organisation by a majority vote of the total number of votes of the credit organisation's founders (stockholders) that took part in voting.

**8.** The founders (participants) of a credit organisation which are entitled to give instructions to be followed without fail or are capable of determining its actions in some other way but which have not adopted in due time the decision on liquidation of the credit organisation and on sending the Bank of Russia a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations and members of the board of directors (supervisory council) of the credit organisation that have not discharged the duties provided for by Items 2, 3 and 5 of this article, as well as the one-man executive body of the credit organisation that has not discharged the duties provided for by Items 1 and 4 of this article, if the credit organisation's property is insufficient for satisfying creditors' claims, shall bear joint and subsidiary liability in respect of the credit organisation's pecuniary obligations and/or the discharge of its duty to make mandatory payments originating after the appearance of the signs of insolvency (bankruptcy) provided for by Article 189.8 of this Federal Law.

**9.** If the decision on liquidation of a credit organisation and on sending the Bank of Russia a petition for cancellation or withdrawal of a credit organisation's licence for making banking operations is not rendered by a general meeting of founders (stockholders) of the credit organisation called in compliance with Subitem 1 of Item 2 of this article, the following founders (stockholders) of the credit organisation do not bear subsidiary liability in compliance with Item 8 of this article:

1) those jointly with their affiliated persons holding less that 10 per cent of voting stocks of a joint stock company in the total number of votes of stockholders of the joint stock company or of shares in the authorised capital of a limited liability company in the amount of below 10 per cent;

2) those voting for adoption of the decision on liquidation of the credit organisation and on sending the Bank of Russia a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations;

3) those that have not been notified in a proper way about the convocation of a general meeting of the credit organisation's founders (stockholders).

**Article 189.13.** Proceedings in a Bankruptcy Case of a Credit Organisation

**1.** When a commercial court considers a bankruptcy case of a credit organisation, bankruptcy proceedings shall be applied.

**2.** In the event of bankruptcy of a credit organisation, the observation, financial rehabilitation, external management and amicable agreement provided for by Chapters IV, V, VI and VIII, respectively, shall not apply.

**Article 189.14.** The Measures Aimed at Financial Rehabilitation of a Credit Organisation

For the purpose of financial rehabilitation of a credit organisation the following measures shall be taken:

1) the rendering of financial assistance to the credit organisation by its founders (stockholders) and by other persons;

2) changing the structure of assets and the structure of liabilities of the credit organisation;

3) changing the organisational structure of the credit organisation;

4) bringing into accord the amount of the credit organisation's authorized capital and of the amount of its own assets (capital);

5) other measures taken in compliance with federal laws.

**Article 189.15.** The Rendering of Financial Assistance to a Credit Organisation by Its Founders (Stockholders) and by Other Persons

**1.** Financial assistance may be rendered to a credit organisation by its founders (stockholders) and by other persons in the following form:

1) depositing monetary assets with the credit organisation with a repayment time of at least six months and with accrual of interest at a rate that does not exceed the interest refinancing rate of the Bank of Russia;

2) granting suretyships (bank guarantees) in respect of credits for the credit organisation;

3) allowing a delay in payment and/or payment by installments;

4) transfer of the credit organisation's debt by approbation of its creditor;

*[Unofficial translation from Russian]*

5) refusing to distribute the credit organisation's profits in the form of dividends and allocating them for taking measures aimed at financial rehabilitation of the credit organisation;

6) making an additional contribution to the authorised capital of the credit organisation;

7) forgiving the credit organisation's debt;

8) novations and other forms conducive to the removal of the reasons causing the need to take measures aimed at financial rehabilitation of the credit organisation.

**2.** The monetary assets kept on banking accounts and deposited at a credit organisation may be used by creditors thereof for increasing the credit organisation's authorized capital in the procedure established by the Bank of Russia.

**3.** A decision in respect of the forms and terms of rendering financial assistance to a credit organisation shall be rendered by the credit organisation proper and by the person rendering financial assistance thereto.

**4.** In the event of the Agency rendering financial assistance to a bank or persons acquiring the bank's stocks (shares in the authorized capital) by way of taking measures aimed at preventing the bank's bankruptcy, the forms and terms of rendering financial assistance thereto shall be defined in a plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy endorsed in the procedure established by Article 189.49 of this Federal Law.

**Article 189.16.** Changing the Structure of Assets and Liabilities of a Credit Organisation

**1.** Changing the structure of assets of a credit organisation may provide for the following:

1) improvement of the quality of the credit portfolio of the credit organisation, including the replacement of non-liquid assets by liquid assets;

2) bringing the asset structure from the point of maturity into compliance with the maturity of obligations ensuring their discharge;

3) reduction of the credit organisation's outlays, in particular on servicing the debt of the credit organisation, and of outlays on its management;

4) sale of non-profitable assets, as well as of the assets whose sale will not obstruct making banking operations of the credit organisation;

5) other measures aimed at changing the structure of assets of the credit organisation.

**2.** Changing the structure of liabilities of a credit organisation may provide for the following:

1) increase of its own assets (capital);

2) reduction of the amount of and/or shares of current and short-term obligations in the total structure of liabilities;

3) increase of the share of medium-term and long-term liabilities in the total structure of liabilities;

4) other measures aimed at changing the structure of liabilities of the credit organisation.

**Article 189.17.** Bringing into Accord the Amount of the Authorised Capital of a Credit Organisation and the Amount of Own Assets (Capital) of a Credit Organisation

**1.** If the amount of own assets (capital) of a credit organisation on the basis of the results of the accounting month turns out to be less that the amount of the authorized capital thereof, the credit organisation is bound to bring into accord the amount of the authorised capital and the amount of own assets (capital) thereof.

**2.** A credit organisation is bound to render a decision on liquidation thereof, if the amount of own assets (capital) of the credit organisation upon the end of the second and each subsequent financial year becomes less than the minimum amount of the authorized capital thereof established by Federal Law No. 208-FZ of December 26, 1995 on Joint Stock Companies (hereinafter referred to as the Federal Law on Joint Stock Companies) or Federal Law No. 14-FZ of February 8, 1998 on Limited Liability Companies (hereinafter referred to as the Federal Law on Limited Liability Companies.

**3.** In the event of failure of a credit organisation to render within three months as of the end date of a financial year the decision on its liquidation, the Bank of Russia is bound to file an application for liquidation of the given credit organisation with a commercial court.

**Article 189.18.** Changing the Organisational Structure of a Credit Organisation

The organisational structure of a credit organisation may be changed by way of the following:

1) changing the composition and number of the credit organisation's employees;

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 77 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 199
of 317
*[Unofficial translation from Russian]*

2) changing the structure, reduction and liquidation of detached and other structural units of the credit organisation, as well as in other ways conducive to the removal of the reasons causing a need for taking measures aimed at financial rehabilitation of the credit organisation.

**Article 189.19.** A Petition of the Head of a Credit Organisation for Taking Measures Aimed at Preventing Bankruptcy of a Credit Organisation

**1.** The one-man executive body of a credit organisation, in the event of occurrence of the circumstances provided for by Article 189.10 of this Federal Law, within 10 days as from the time of their occurrence is bound to file a petition for taking measures aimed at financial rehabilitation of the credit organisation or a petition for reorganisation of the credit organisation with the board of directors (supervisory council) of the credit organisation if the reasons for occurrence of the cited circumstances cannot be removed by the credit organisation's executive bodies.

**2.** A petition of the head of a credit organisation for taking measures aimed at financial rehabilitation of the credit organisation or a petition for reorganisation of the credit organisation shall contain recommendations concerning the forms, nature and time of their realization.

**3.** The board of directors (supervisory council) of a credit organisation with which in compliance with Item 1 of this article a petition for taking measures aimed at financial rehabilitation of the credit organisation or a petition for reorganisation of the credit organisation is to be filed shall render a decision in respect of the petition filed therewith within 10 days as from the time of its sending and shall inform the Bank of Russia about the adopted decision.

**4.** The head of a credit organisation, within three days as from the date of expiry of the time period fixed by Item 3 of this article, is bound to file a petition with the Bank of Russia for taking measures aimed at preventing bankruptcy of the credit organisation, if the board of directors (supervisory council) of the credit organisation has not rendered a decision in respect of the petition for taking measures aimed at preventing bankruptcy at the time fixed by Item 3 of this article or has denied the adoption of the decision on taking measures aimed at preventing bankruptcy or has refused to call a general meeting of founders (stockholders) of the credit organisation when the need for holding such meeting results from the essence of measures aimed at preventing bankruptcy of the credit organisation or if the founders (stockholders) of the credit organisation have not adopted the decision on taking measures aimed at preventing bankruptcy when the need for such decision results from the essence of measures aimed at preventing bankruptcy of the credit organisation.

**Article 189.20.** Taking Measures Aimed at Financial Rehabilitation of a Credit Organisation on Demand of the Bank of Russia

**1.** Where it is provided for by Article 189.10 of this Federal Law or by Article 74 of Federal Law No. 86-FZ of July 10, 2002 on the Central Bank of the Russian Federation (the Bank of Russia) (hereinafter referred to as the Federal Law on the Central Bank of the Russian Federation (the Bank of Russia), the Bank of Russia is entitled to send a credit organisation a demand for taking measures aimed at its financial rehabilitation. Such a demand shall contain an indication of the reasons serving as grounds for sending it, as well as recommendations in respect of the forms and time of taking measures aimed at financial rehabilitation of the credit organisation, subject to the requirements established by Item 7 of this article.

**2.** Within five days as from the date of receiving the demand of the Bank of Russia to take measures aimed at financial rehabilitation of a credit organisation the head of the credit organisation is bound to file a petition for taking measures aimed at financial rehabilitation of the credit organisation and/or a petition for its reorganisation with the board of directors (supervisory council) of the credit organisation.

**3.** If it is detected on the basis of data of reports/statements of a credit organisation and/or the results of an inspection held by the Bank of Russia, that the amount of own assets (capital) of the credit organisation has turned out to be less that the amount of the authorized capital thereof, the Bank of Russian is bound to send such credit organisation a demand on bringing into accord the amount of the authorised capital of the credit organisation and the amount of its own assets (capital).

**4.** If within the last 12 months preceding the time when in compliance with this article the Bank of Russia is bound to send a credit organisation a demand to bring into accord the amount of authorized capital of the credit organisation and the amount of its own assets (capital) the Bank of Russia changed the methods for estimation of the amount of own assets (capital) of the credit organisation, for the purposes of this article the methods in compliance with which the amount of own assets (capital) of the credit organisation amounts to the maximum value shall be applied.

**5.** Where it is impossible to increase the amount of own assets (capital) of a credit organisation to the amount of its authorised capital, the credit organisation, within 45 days as from the date of receiving the cited demand of the Bank of Russia, is bound to reduce the size of the authorised capital thereof down to an amount that does not exceed the amount of own assets (capital) thereof and to make appropriate amendments in the constituent documents thereof.

**6.** Creditors of a credit organisation are not entitled to demand termination or preschedule discharge of the credit organisation's obligations on the basis of the reduction of the size of the authorized capital thereof made in compliance with the requirements of this article. For this, the provisions of the legislation of the Russian Federation on creditors' mandatory

notification about their right to demand termination or preschedule discharge of its obligations and compensation for the losses connected with it from the credit organisation shall not apply.

**7.** As from the date of receiving the demand of the Bank of Russia to take measures aimed at financial rehabilitation of a credit organisation containing the grounds for this and up to the date of receiving an appropriate permit of the Bank of Russia a credit organisation is not entitled to render a decision on distribution of profits to its founders (stockholders), on payment (declaring) of dividends, as well as to distribute profits to its founders (stockholders), to pay dividends thereto, to satisfy the claims of the credit organisation's founders (stockholders) as to the apportionment of the participatory shares (a part of the participatory sharer) thereto or for payment of its real value or for redemption of stocks of the credit organisation, if the given actions could lead to breaking the normative standards established by the Bank of Russia.

**8.** The Bank of Russia, within a five-day term as from the date of receiving documentary proof of removing the grounds provided for by Article 189.10 of this Federal Law from a credit organisation taking measures aimed at financial rehabilitation thereof in compliance with a demand of the Bank of Russia is bound to send the credit organisation a report on cancellation of the demand for taking measures aimed at financial rehabilitation. As from the date of a credit organisation receiving such report, the restrictions provided for by Item 7 of this article shall not apply, and the duties of the credit organisation provided for by Article 189.11 of this Federal Law when there are grounds for taking measures aimed at preventing bankruptcy shall be terminated.

**9.** In the event of occurrence of the grounds provided for by Article 189.10 of this Federal Law, the Bank of Russia is entitled to demand that an appropriate managerial body of a credit organisation arranges that the credit organisation hold a meeting of the board of directors (supervisory council) of the credit organisation or an extraordinary general meeting of founders (stockholders) of the credit organisation for rendering the decision on taking measures aimed at financial rehabilitation of the credit organisation within a 10-day term.

**Article 189.21.** A Plan of Measures Aimed at Financial Rehabilitation of a Credit Organisation

**1.** In the event of establishing the grounds provided for by Article 189.10 of this Federal Law, the Bank of Russia is entitled to demand that a credit organisation develop and implement a plan of measures aimed at financial rehabilitation thereof.

**2.** A plan of measures aimed at financial rehabilitation of a credit organisation shall contain without fail the following:

1) assessment of the financial status of the credit organisation;

2) indication as to the form and extent of participation of the credit organisation's founders (stockholders) and of other person in its financial rehabilitation;

3) measures aimed at reducing the outlays on the credit organisation's maintenance;

4) measures aimed at receiving additional income;

5) measures aimed at repayment of outstanding debtor's indebtedness;

6) measures aimed at changing the organisational structure of the credit organisation;

7) time for restoration of the level of sufficiency of own assets (capital) and of the current liquidity of the credit organisation.

**3.** The form of a plan of measures aimed at financial rehabilitation of a credit organisation shall be established by a normative act of the Bank of Russia.

**4.** The procedure for and time of presenting a plan of measures aimed at financial rehabilitation of a credit organisation, as well as the procedure for and time of exercising control over its implementation, shall be established by normative acts of the Bank of Russia.

**Article 189.22.** Plan of Measures for Financial Rehabilitation of a Credit Institution whose Approval Entails Non-Application of Measures to the Credit Institution in Order of Supervision and Granting of a Deferral (Payment by Installments) to the Credit Institution for Payment of Deficient Amounts in Obligatory Reserves, Deposited in the Bank of Russia

**1.** Plan of measures for financial rehabilitation of a credit institution can envisage the following conditions:

1) elimination of grounds for application of measures for prevention of bankruptcy of the credit institution through implementation of measures envisaged by Item 2 of Article 189.21 of this Federal Law, specifying the terms for their implementation, within 3 years from the day of approval of the plan of measures for financial rehabilitation of the credit institution;

2) satisfaction of claims of creditors on monetary obligations and/or making obligatory payments within 14 calendar days from the day of approval of the plan of measures for financial rehabilitation of the credit institution.

*[Unofficial translation from Russian]*

**2.** If the banking supervision committee of the Bank of Russia approves the plan of measures containing all conditions envisaged by Item 1 of this Article, the Bank of Russia shall take one of the following decisions:

1) to not apply measures envisaged by Article 74 of the Federal Law On Central Bank of the Russian Federation (the Bank of Russia) to the credit institution on grounds formed before approval of the plan of measures;

2) to not introduce a prohibition envisaged by Article 48 of Federal Law No. 177-FZ On Insurance of Deposits of Individuals in Banks of the Russian Federation (hereinafter - the Federal Law On Insurance of Funds of Individuals in Banks of the Russian Federation) for attraction of funds of individuals into deposits and opening bank accounts for individuals on grounds formed before approval of the plan of measures;

3) not to recall a licence for banking operations from the credit institution on grounds formed before approval of the plan of measures in the cases envisaged by Part 2 of Article 20 of the Federal Law On Banks and Banking Activities;

4) to grant a deferral (payment by installments) to the credit institution for payment of a deficient amount to the obligatory reserves deposited in the Bank of Russia, for the term of implementation of the plan of measures envisaged by Item 1 of this Article. In such case, the credit institution shall be obliged to make a monthly calculation of obligatory reserves subjected to depositing and provide it to the Bank of Russia using the procedure established by the Bank of Russia.

**3.** Decisions envisaged by Item 2 of this Article shall be cancelled by the Banking Supervision Committee of the Bank of Russia in case of end of validity of the plan of measures for financial rehabilitation of the credit institution, but not later than within 3 years from the day of approval of the plan by the Banking Supervision Committee or the Bank of Russia, or in case of acknowledging the plan impossible to execute by the Banking Supervision Committee of the Bank of Russia.

**Article 189.23.** The Liability of the Persons Exercising Control over a Credit Organisation

**1.** If a credit organisation's bankruptcy has resulted from actions and/or failure to act of the persons exercising control over the credit organisation, such persons, if the credit organisation's property is insufficient, shall bear subsidiary liability in respect of the obligations thereof in the procedure established by Article 10 of this Federal Law, subject to the specifics established by this article.

**2.** When determining the debtor's (credit organisation's) controlling person, the provision of Paragraph 31 of Article 2 of this Federal Law on the time period (less than two years before the acceptance by a commercial court of an application for declaring the debtor bankrupt) within which such person has the right or had the right to give instructions to be followed by the debtor without fail or could determine the debtor's actions in some other way) shall not apply.

**3.** Until proved otherwise, it shall be assumed that a credit organisation's bankruptcy has resulted from actions and/or omission of the persons exercising control over the credit organisation, where there is one of the circumstances cited in Paragraphs Three and Four of Item 4 of Article 10 of this Federal Law. The provisions of Paragraph Four of Item 4 of Article 10 of this Federal Law shall apply in respect of the persons upon which is imposed the duty of compiling, keeping and storing the documents showing the economic activities of the credit organisation and of the credit organisation's databases on electronic media (of reserve copies of databases), as well as the duty of their transfer to the provisional administration engaged in its management or to the liquidator (bankruptcy receiver).

**4.** As the documents cited in Paragraphs Four and Five of Item 4 of Article 10 of this Federal Law shall also be deemed the documents showing economic activities of a credit organisation and the credit organisation's databases on electronic media (reserve copies of databases) the duty to form and keep which is established by the Federal Law on Banks and Banking Activity, which are subject in compliance with the requirements of this Federal Law to transfer to the provisional administration engaged in the credit organisation's management (to the bankruptcy receiver or liquidator).

**5.** A credit organisation or the Agency of behalf thereof are entitled to make a claim with a commercial court for repair of the damage caused by faulty actions (omissions) of the person exercising control over the credit organisation in respect of which the measures aimed at preventing bankruptcy with the Agency's participation provided for by Article 189.49 of this Federal Law have been taken.

**6.** An application for holding the person exercising control over a credit organisation subsidiarily liable on the grounds provided for by this article may be filed at the latest in three years as from the date of declaring the credit organisation bankrupt. Should this time period be missed for a sound reason, it may be restored by a court.

**7.** An application for holding the person exercising control over a credit organisation subsidiarily liable in the form of repair of damage (except as provided for by Item 5 of this article) shall be filed by the bankruptcy receiver on the initiative thereof or by decision of a meeting of creditors or of the creditors' committee, as well as by an authorised body. Such application may be filed by the bankruptcy creditor in the course of bankruptcy proceedings, if the bankruptcy receiver fails to execute the decision of a meeting or committee of creditors on its filing.

**8.** Filing an application for holding the persons exercising control over a credit organisation subsidiarily liable by the bankruptcy creditor or authorized person shall not serve as an obstacle to the bankruptcy receiver filing an application in respect

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 80 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 202
of 317                    *[Unofficial translation from Russian]*

of the same subject-matter and on the same grounds with a commercial court, if the bankruptcy receiver presents new evidence to a commercial court.

**9.** In a case initiated on the basis of an application of a credit organisation or the Agency for holding the person exercising control over the credit organisation liable in the form of repair for damage for the benefit of the credit organisation, if a commercial court renders a decision on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings (endorsement of the bankruptcy receiver) or a decision on appointing a bankruptcy receiver, the credit organisation in the person of the bankruptcy receiver or liquidator shall be deemed the claimant.

**10.** In the event of filing an application for holding the person exercising control liable, a court is entitled to take security measures on the basis of a petition of the bankruptcy receiver, in particular to arrest the property of the person exercising control. Such security measures shall be also in effect within the time period when the consideration of a petition for holding the person exercising control liable is suspended.

**11.** The persons held subsidiarily liable in compliance with this Federal Law, as well as liable in the form of recovery of damages for the benefit of a credit organisation, are not entitled to acquire stocks (shares in the authorized capital) of another credit organisation making up over five per cent of the authorised capital thereof or to establish direct or indirect (through third persons) control in respect of stockholders (participants) of a credit organisation possessing over five per cent of the stocks (shares) of the credit organisation within five years as from the date of the cited persons discharging the duty established by the judicial act on such liability.

**12.** The persons held subsidiarily liable in compliance with this Federal Law, as well as liable in the form of recovery of damages for the benefit of a credit organisation, are not entitled to hold the positions of heads of credit organisations for five years from the date of the cited person discharging the duty established by a judicial act on such liability.

**Article 189.24.** The Effects of Failure to Satisfy the Requirements Provided for by Articles 189.17 and 189.19-189.21 of this Federal Law

Failure of a credit organisation to satisfy the requirements provided for by Articles 189.17 and 189.19-189.21 of this Federal Law shall serve as grounds for the Bank of Russia taking the measures of supervision established by federal laws.

**Article 189.25.** The Provisional Administration for Managing a Credit Organisation

**1.** The provisional administration for managing a credit organisation is a special managerial body of the credit organisation appointed by the Bank of Russia in the procedure established by this paragraph and regulatory acts of the Bank of Russia.

**2.** The provisional administration for managing a credit organisation shall act in compliance with this paragraph, other federal laws and regulatory acts of the Bank of Russia.

**3.** Within the period while the provisional administration for managing a credit organisation is exercising its activities the authority of executive bodies of the credit organisation may be restricted by the act of the Bank of Russia on appointing the provisional administration or suspended in the procedure and under the terms established by this Federal Law.

**4.** In the event of suspending the authority of executive bodies of a credit organisation, as from the date of appointing the provisional administration and up to the date of a commercial court rendering the decision on declaring the credit organisation insolvent (bankrupt) or of entry into legal force of the commercial court decision on its liquidation or termination of the activities of the provisional administration, the state registration of transactions, transfer, limitation (encumbrance) of the right to the immovable property held by the credit organisation on the basis of the right of ownership thereto or held by it in pledge shall be suspended.

**Article 189.26.** The Grounds for Appointing a Provisional Administration for Managing a Credit Organisation

**1.** The Bank of Russian is entitled to appoint a provisional administration for managing a credit organisation if:

1) the credit organisation does not satisfy creditors' (creditor's) claims in respect of pecuniary obligations (obligation) and/or does not discharge the duty of making mandatory payments within a time period exceeding seven days or more from the date when they have to be discharged and/or made in connection with an absence or insufficiency of monetary assets on the credit organisation's correspondent accounts;

2) the credit organisation allows the reduction of its own assets (capital) as compared to their maximum value attained within the last 12 months by more than 30 per cent, concurrently failing to observe one of the mandatory normatives established by the Bank of Russia;

3) the credit organisation violates the current liquidity normative established by the Bank of Russia by more than 20 per cent within the last month;

4) the credit organisation does not satisfy the demand of the Bank of Russia to replace the head of the credit

organisation or to take measures aimed at financial rehabilitation or reorganisation of the credit organisation in due time;

5) in compliance with the Federal Law on Banks and Banking Activity there are grounds for withdrawal of the credit organisation's licence for conducting banking operations;

6) the Banking Supervision Committee has approved a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy.

**2.** The Bank of Russia is bound to appoint a provisional administration for managing a credit organisation at the latest on the day following the date of withdrawal of the credit organisation's licence for conducting banking operations.

**3.** The act of the Bank of Russia on appointing the provisional administration for managing a credit organisation shall be included by the Bank of Russia into the Comprehensive Federal Register of Data on Bankruptcy at the latest on the following working day as from the date of adoption of the cited act and shall be published by the Bank of Russia in the "Vestnik Banka Rossii" within 10 days as from the date of its adoption.

**Article 189.27.** The Duration of the Provisional Administration for Managing a Credit Organisation

**1.** The provisional administration for managing a credit organisation shall be appointed by the Bank of Russia for a term of at most six months.

**2.** If by the end of the duration of the provisional administration for managing a credit organisation fixed by this paragraph the grounds for its appointment provided for by this paragraph persist, the provisional administration for managing a credit organisation shall send to the Bank of Russia a petition for withdrawing the credit organisation's licence for conducting banking operations.

**3.** The provisional administration for managing a credit organisation appointed by the Bank of Russia after the withdrawal of the credit organisation's licence for conducting banking operations shall exercise its authority in the credit organisation provided for by this paragraph from date of its appointment and up to a commercial court rendering the decision on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings (on appointing a bankruptcy receiver) or up to the date of entry into legal force of a decision of a commercial court on appointing the credit organisation's liquidator.

**Article 189.28.** The Head of the Provisional Administration for Managing a Credit Organisation

**1.** As the head of the provisional administration for managing a credit organisation shall be appointed an employee of the Bank of Russia.

**2.** The composition of the provisional administration for managing a credit organisation shall be determined by an order of the Bank of Russia to be included by the Bank of Russia in the Comprehensive Federal Register of Data on Bankruptcy at the latest on the following working day after the date of adoption of the cited act. The head of the provisional administration for managing a credit organisation shall distribute duties to members thereof and shall be held responsible for its activities. The provisional administration for managing a credit organisation may have the Agency's employees within its composition with its approbation.

**3.** The head of the provisional administration for managing a credit organisation, if the authority of the credit organisation's executive bodies are suspended, shall exercise its activities in the name of the credit organisation without a power of attorney.

**Article 189.29.** The Liability of the Head of the Provisional Administration for Managing a Credit Organisation for Failure to Discharge or Improper Discharge of the Duties Thereof

In the event of failure to discharge or improper discharge by the head of the provisional administration for managing a credit organisation of the duties thereof, he/she shall be held liable in compliance with federal law.

**Article 189.30.** The Functions of the Provisional Administration for Managing a Credit Organisation in Case of Restriction of the Authority of a Credit Organisation's Executive Bodies

**1.** In case of restriction of the authority of the executive bodies of a credit organisation, the provisional administration for managing a credit organisation shall exercise the following functions:

1) conduct an examination of the credit organisation;

2) establish the presence of grounds for withdrawal of the licence for conducting banking operations provided for by Article 20 of the Federal Law on Banks and Banking Activity;

3) participate in developing measures aimed at financial rehabilitation of the credit organisation and exercise control over their taking;

4) exercise control over the disposal of the credit organisation's property within the limits established by this article:

*[Unofficial translation from Russian]*

5) exercise other functions in compliance with federal law.

**2.** When exercising the functions cited in Item 1 of this article, the provisional administration for managing a credit organisation shall:

1) receive from managerial bodies of the credit organisation the necessary information and documents concerning the activities of the credit organisation;

2) give its consent to the managerial bodies of the credit organisation conducting the transactions cited in Item 3 of this article;

3) file a petition with the Bank of Russia for suspending the authority of the credit organisation's managerial bodies if they obstruct the exercise by the provisional administration for managing the credit organisation of its functions or if it is necessary for taking measures aimed at preventing bankruptcy of the credit organisation. For the purposes of this paragraph, obstructing the exercise by the provisional administration for managing a credit organisation of its functions means officials of the credit organisation or the persons acting on their instructions taking wrongful actions, their failure to act (failure to discharge the duties imposed by federal law, including failure to present documents for coordinating transactions where it is provided for by federal law), as well as the creation of conditions under which the provisional administration for managing the credit organisation cannot exercise in full or in part its functions imposed on it by federal laws and regulatory legal acts of the Bank of Russia.

**3.** The managerial bodies of a credit organisation are entitled solely with approbation of the provisional administration for managing a credit organisation to conduct transactions:

1) connected with letting the credit organisation's property on lease, putting it in pledge, contributing it to the authorised capital of third persons, as well as with disposal of such property in some other way;

2) connected with the disposal of other property of the credit organisation whose balance sheet value makes up more than one per cent of the balance sheet value of assets of the credit organisation, in particular with receiving and issuing credits and loans, issuance of guarantees and suretyships, assignment of rights of claim, debt assumption and forgiving, novation and release-money, well as with the establishment of trust management;

3) with persons related or affiliated to the credit organisation which are determined in compliance with federal law or with the persons in respect of which the credit organisation in compliance with federal law is a related person, or with the persons whose activities are controlled or significantly influenced by the credit organisation, or with the persons that exercise control or significantly influence the credit organisation.

**Article 189.31.** The Functions of the Provisional Administration for Managing a Credit Organisation in Case of Suspension of the Authority of Executive Bodies of the Credit Organisation

**1.** In case of suspension of the authority of the executive bodies of a credit organisation, the provisional administration for managing the credit organisation shall exercise the following functions:

1) exercise the authority of executive bodies of the credit organisation;

2) conduct an examination of the credit organisation;

3) establish the presence of grounds for withdrawal of the licence for conducting banking operations provided for by Article 20 of the Federal Law on Banks and Banking Activity;

4) develop measures aimed at financial rehabilitation of the credit organisation, organise and exercise control over their taking;

5) take measures aimed at safekeeping of the credit organisation's property and documentation;

6) establish creditors of the credit organisation and the extent of their claims in compliance with pecuniary obligations;

7) take measures aimed at recovering debts with respect to the credit organisation;

8) file a petition with the Bank of Russia for imposing a moratorium on satisfaction of claims of the credit organisation's creditors;

9) exercise other functions in compliance with federal law.

**2.** While exercising the functions cited in Item 1 of this article, the provisional administration for managing a credit organisation:

1) shall receive the necessary information and documents concerning the activities of the credit organisation from the head of the credit organisation, its other employees and other persons;

2) shall raise claims on behalf of the credit organisation with general jurisdiction courts, commercial courts and

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 83 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 205
of 317
*[Unofficial translation from Russian]*

tribunals of arbitrators;

3) shall appoint representatives of the provisional administration for managing the credit organisation to affiliates of the credit organisation, as well as to managerial bodies of its branch organisations;

4) shall coordinate decisions of the board of directors (supervisory council) of the credit organisation or of a general meeting of its founders (stockholders), except for decisions on conducting the transactions provided for by Item 3 of this article;

5) is entitled to remove members of executive bodies of the credit organisation from this job;

6) is entitled to call a meeting of founders (stockholders) of the credit organisation in the procedure established by federal laws;

7) is entitled to make a claim with a commercial court on behalf of the credit organisation for calling to account the persons exercising control over the credit organisation, if their guilty actions (omissions) have caused damage to the credit organisation;

8) shall make a claim with a court or a commercial court on behalf of the credit organisation for declaring invalid the transactions made by the credit organisation or by other persons at the expense of the credit organisation on the grounds and in the procedure provided for by Articles 61.1-61.9 of this Federal Law, subject to the specifics established by Article 189.40 of this Federal Law;

9) shall, in the procedure established by Item 4 of Article 136 of this Federal Law, file court applications for reducing the rate of claims of the head of the credit organisation, chief accountant of the credit organisation, his/her deputies, the head of a branch or representative office of the credit organisation, his/her deputies, the chief accountant of a branch or representative office of a credit organisation, his/her deputies and other employees of the credit organisation in respect of the labour remuneration thereof, if within six months before the date of appointing the provisional administration the rate of labour remuneration of such persons was increased compared to the rate of labour remuneration fixed before the start of the cited time period;

10) shall have free access to all the premises of the credit organisation;

11) is entitled to seal the credit organisation's premises, if necessary.

**3.** The provisional administration for managing a credit organisation is only entitled with approbation of the board of directors (supervisory council) of the credit organisation or a general meeting of its founders (stockholders), within the scope of their authority established by federal laws and the credit organisation's constituent documents, to make transactions connected with the following:

1) letting the credit organisation's immovable property on lease, putting it in pledge, contributing it to the authorized capital of third persons and disposal of such property in some other way;

2) disposal of other property of the credit organisation whose balance sheet value makes up over five per cent of the balance sheet value of the credit organisation's assets, in particular with receiving and issuing credits and loans, issuance of guarantees and suretyships, assignment of rights of claim, debt transfer and forgiving, novation and release-money, as well as with the establishment of trust management.

**4.** The board of directors (supervisory council) of a credit organisation or a general meeting of its founders (stockholders), within the scope of authority thereof established by federal law and constituent documents of the credit organisation, is entitled to expand the scope of authority of the provisional administration for managing the credit organisation as to the disposal of the credit organisation's property.

**Article 189.32.** The Functions of the Provisional Administration for Managing a Credit Organisation in Case of Its Appointment after the Withdrawal of the Credit Organisation's Licence for Conducting Banking Operations

**1.** The provisional administration for managing a credit organisation appointed by the Bank of Russia after the withdrawal of the credit organisation's licence for conducting banking operations shall exercise the same functions and have the same scope of authority which are granted to the provisional administration for managing the credit organisation in compliance with Article 189.31 of this Federal Law, except for the function of developing measures aimed at financial rehabilitation of the credit organisation, their organising and exercise of control over their taking.

**2.** The provisional administration for managing a credit organisation appointed by the Bank of Russia after the withdrawal of the credit organisation's licence for conducting banking operations is bound to make an examination of the credit organisation and to identify if it has the signs of insolvency (bankruptcy) provided for by Item 1 of Article 189.8 of this Federal Law. In the event of detecting the cited signs the provisional administration for managing a credit organisation appointed by the Bank of Russia after the withdrawal of the credit organisation's licence for conducting banking operations shall send the Bank of Russia a petition for the Bank of Russia to send an application to a commercial court for declaring the credit organisation bankrupt.

*[Unofficial translation from Russian]*

**3.** The provisional administration for managing a credit organisation after the withdrawal of the credit organisation's licence for conducting banking operations shall determine if there are signs of premeditated bankruptcy, and shall notify creditors about the acceptance by a commercial court of an application for declaring the credit organisation bankrupt by way of publishing information in the "Vestnik Banka Rossii" and in a periodical print at the location of the credit organisation within 10 calendar days at the expense of the credit organisation.

**4.** The provisional administration for managing a credit organisation shall disclose information on the debtor's financial status within 10 calendar days after the acceptance by a commercial court of an application for declaring the credit organisation bankrupt in the procedure established by the Bank of Russia.

**5.** The provisional administration for managing a credit organisation shall present a statement on the debtor's financial status, the creditors' composition and the presence of signs of premeditated bankruptcy when a commercial court considers an application of the Bank of Russia for declaring the credit organisation bankrupt.

**6.** Within three working days as from the date of publishing the data cited in Items 3 and 4 of this article the provisional administration shall send these data to the Bank of Russia for them to be included into the Comprehensive Federal Register of Data on Bankruptcy.

**7.** The discharge by a credit organisation after the withdrawal of the licence for conducting banking operations and up to the date of initiation of bankruptcy proceedings of its current obligations (in particular making transactions on behalf thereof entailing the origination of the current obligations) which are provided for by this Federal Law shall be effected on the basis of an estimate of expenditures to be endorsed by the Bank of Russia.

**8.** The kinds of transactions made by a credit organisation since the date of withdrawal of the licence for conducting banking operations, including the transactions connected with spending monetary assets and other kind of alienation of the credit organisation's property and the procedure for conducting them shall be established by the Federal Law on Banks and Banking Activity and normative acts of the Bank of Russia adopted in compliance with them.

**9.** The provisional administration for managing a credit organisation, if there are not enough monetary assets for the discharge of the credit organisation's current obligations connected with ensuring the safekeeping of its property and protection of the credit organisation's interests, is entitled to file an application with a general jurisdiction court or commercial court for lifting the previously imposed arrests of the monetary assets kept on its banking accounts in the amount which is necessary for ensuring the credit organisation's functioning according to the estimate of expenditure endorsed by the Bank of Russia.

**10.** To establish creditors of a credit organisation and the extent of their claims against the credit organisation the provisional administration for managing the credit organisation is entitled to register creditors' claims in a register of creditors' claims whose form is established by a normative act of the Bank of Russia with the Agency's approbation in the procedure established by Items 11-17 of this article.

**11.** For the purpose of creditors of a credit organisation raising their claims against the credit organisation the provisional administration for managing the credit organisation shall send an announcement containing data on the credit organisation (denomination and other requisite elements), the credit organisation's address, data on the provisional administration for managing the credit organisation to an official publication in compliance with this Federal Law, to the "Vestnik Banka Rossii" for publication and to the Bank of Russia for inclusion of the data contained therein into the Comprehensive Federal Register of Data on Bankruptcy. The cited announcement shall be published by the provisional administration for managing a credit organisation at the expense of the property of the credit organisation.

**12.** Creditors of a credit organisation are entitled to raise their claims against the credit organisation at any time within the time period while the provisional administration for managing the credit organisation is exercising its activities. When raising such claims, a creditor is bound to specify, along with the essence of the raised claims, data on himself, including the family name, first name, patronymic, date of birth, requisite elements of the document certifying the identity thereof, and the postal address for sending correspondence thereto (if a natural person) or the denomination and location (if a legal entity), as well as banking requisites (if any).

**13.** A person raising a claim against a credit organisation is bound to inform the provisional administration for managing the credit organisation in due time about changes in the data cited in Item 12 of this article. In the event of failure to present such data or to present them in due time, the provisional administration for managing the credit organisation and the credit organisation shall not be held liable for the damage caused in connection with this.

**14.** A claim against a credit organisation with an effective decision of a court or commercial court, rulings on issuance of a writ of execution for compulsory execution of decisions of a tribunal of arbitrators and other judicial acts, as well as other original documents or properly attested copies thereof proving the reasonableness of this claim to be attached thereto, shall be raised by the provisional administration for managing the credit organisation.

**15.** The provisional administration for managing a credit organisation shall consider the raised claim and on the basis of the results of its consideration at the latest in 30 working days as from the date of receiving this claim shall enter it to a

*[Unofficial translation from Russian]*

register of creditors' claims if the claim raised is substantiated. Within the same time period the provisional administration for managing a credit organisation shall notify the appropriate creditor about the inclusion of the claim thereof into the register of creditors' claim or about the denial of such inclusion into the cited register or about the incomplete inclusion of the claim into this register.

**16.** A claim under a bank deposit contract and/or a bank account contract raised by a creditor may be entered by the provisional administration for managing a credit organisation into the register of creditors' claims in the amount of the balance of monetary assets on the account which are due to the creditor on the basis of the data available to the credit organisation.

**17.** The claim of a creditor under a bank deposit contract and/or a bank account contract enjoying in compliance with the Federal Law on Insurance of Natural Persons' Deposits Made with Banks of the Russian Federation the right to receive insurance compensation shall be entered by the provisional administration for managing the credit organisation into the register of creditors' claims in the amount of the balance of monetary assets on the account exceeding the amount of insurance compensation which is due to the creditor.

**18.** In the event of entering a creditor's claim into the register of creditors' claims, data on the amount and composition of the claim thereof against the debtor, as well as about the order of its satisfaction shall be cited in the appropriate notice to be sent to the creditor.

**19.** On the basis of the received creditors' claims the provisional administration for managing a credit organisation shall compile a register of creditors' claims of the credit organisation, this citing data on the creditors that have raised their claims, on the extent of such claim, on the order of satisfying each such claim, as well as grounds for their origination.

**20.** In a register of creditors' claims creditors' claims shall be registered in the currency of the Russian Federation. The creditors' claims shown in foreign currency shall be registered in a register of creditors claims in roubles at the exchange rate established by the Bank of Russia as of the date of withdrawal of the credit organisation's licence for conducting banking operations.

**21.** A register of creditors' claims of a credit organisation shall be transferred to the bankruptcy receiver or the liquidator of the credit organisation in the procedure established by Item 2 of Article 189.43 of this Federal Law.

**22.** The creditors' claims raised against a credit organisation within the period while the provisional administration for managing the credit organisation is exercising its activities and not considered by this provisional administration as of the date of expiry of the time period of its authority in the procedure established by Items 10-17 of this article shall be transferred according to a list thereof to the bankruptcy receiver or the liquidator of the credit organisation in the procedure established by Item 2 of Article 189.43 of this Federal Law.

**Article 189.33.** The Specifics of Functioning of the Provisional Administration for Managing a Credit Organisation Appointed after the Withdrawal of the Licence for Conducting Banking Operations of a Credit Organisation Exercising Professional Activities in the Securities Market

**1.** After the withdrawal of the licence for conducting banking operations of a credit organisation exercising professional activities in the securities market the provisional administration for managing the credit organisation shall return to such credit organisation's clients their securities and other property accepted and/or acquired by such credit organisation on their account under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts, this to be shown on appropriate accounts or depo accounts subject to the specifics provided for by Paragraph 8 of this chapter.

**2.** For the purpose of returning to clients of a credit organisation exercising professional activities in the securities market the securities and other property accepted and/or acquired by the credit organisation on their account under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts the provisional administration for managing the credit organisation shall conduct an inventory of the securities and other property kept (registered) on accounts of such credit organisation.

**3.** A report on the results of holding the inventory provided for by Item 2 of this article shall be drawn up at the latest in 14 calendar days from the date of appointment of the provisional administration for managing a credit organisation.

**4.** Within five working days as from the date of drawing up a report on the results of conducting the inventory provided for by Item 2 of this article the provisional administration for managing a credit organisation shall notify clients of the credit organisation exercising professional activities in the securities market about the possibility of filing applications for the return to clients of such credit organisation of their securities and other property accepted and/or acquired by such credit organisation on their account under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts by way of publishing an appropriate announcement in an official publication, as well as send the text of the cited announcement to the Bank of Russia for it to include the data contained in the cited announcement in the Unified Federal Register of Data on Bankruptcy.

**5.** Applications of clients of a credit organisation exercising professional activities in the securities market for return of

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 86 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 208
of 317
*[Unofficial translation from Russian]*

their securities and other property accepted and/or acquired by such credit organisation on their account under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts shall be accepted within six months as from the date of withdrawal of such credit organisation's licence for conducting banking operations by the provisional administration for managing the credit organisation or, in case of declaring a credit organisation bankrupt and initiation of bankruptcy proceedings, by the bankruptcy receiver.

**6.** After conducting the inventory provided for Item 2 of this article the provisional administration for managing a credit organisation within at the latest two working days as from the date of receiving applications of clients of the credit organisation exercising professional activities in the securities market for return of their securities and other property accepted and/or acquired by such credit organisation on their account under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts, shall return the cited property by way of its transfer onto the accounts opened by clients of such credit organisation with other professional participant of the securities market.

**7.** The return to clients of a credit organisation exercising professional activities in the securities market of the securities and other property accepted and/or acquired by the credit organisation under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts shall be effected in compliance with the requisite elements cited in an appropriate application of such credit organisation's client.

**8.** If for the purpose of returning the property cited in Item 7 of this article to clients of a credit organisation exercising professional activities in the securities market it is impossible to distribute to them the securities in the quantity thereof making up a whole number, non-distributed securities shall be sold in the procedure established by Article 185.7 of this Federal Law. The monetary assets derived from selling non-distributed securities shall be distributed to clients in proportion to the amount of claims of each of them.

If the property of several clients of a credit organisation exercising professional activities in the securities market is united on a single account and the cited property is insufficient for returning their property to the given clients in full, the cited property shall be transferred to the given clients in the quantity which is proportionate to the amount of claims of each of them.

**9.** The claims of the clients of a credit organisation exercising professional activities in the securities market which are not satisfied because of insufficiency of property on the accounts of such clients are subject to inclusion into a register of creditors' claims of the credit organisation and shall be satisfied in the order established by Article 189.92 of this Federal Law.

**10.** The securities accepted by a credit organisation exercising professional activities in the securities market for custody and/or entered into its records shall be returned to a depositor on the basis of the depositor's application in the procedure established by Items 1-9 of this article on the basis of the depository registration data by way of the following:

1) reregistration of registered securities in the name of the possessor thereof in a register of holders of registered securities with some other depository specified by the depositor;

2) return of certificates of certified securities to the depositor or their transfer to some other depository specified by the depositor.

**11.** If within the time period while the provisional administration for managing a credit organisation is exercising its activities or in the course of bankruptcy proceedings in the event of declaring a credit organisation exercising professional activities in the securities market bankrupt such credit organisation did not receive an application of its client for return of securities and other property thereof accepted and/or acquired by such credit organisation on account thereof under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts, the securities shall be entered onto the personal account of the cited client in the register of securities' owners or onto the depo account of the given client made with the depository engaged in mandatory centralized custody of securities. Other property is to be transferred to a notary for depositing.

**12.** The property which is under trust management of a credit organisation exercising professional activities in the securities market shall be returned to the trust management founders on the basis of applications of the trust management founders in the procedure established by Items 1-11 of this article.

**Article 189.34.** The Specifics of Functioning of the Provisional Administration for Managing a Bank in Case of the Agency's Participation in Taking Measures Aimed at Preventing the Bank's Bankruptcy

**1.** In the event of endorsement by the Banking Supervision Committee of the Bank of Russia of a plan for the Agency's participation in taking measures aimed at preventing the bank's management, the functions of the provisional administration for managing the bank may be imposed upon the Agency by an order of the Bank of Russia. The Agency shall exercise the functions and authority of the provisional administration for managing the bank through a representative appointed from among employees thereof and acting on the basis of a power of attorney.

**2.** The provisional administration for managing a bank whose functions are imposed on the Agency shall exercise the same functions and shall be vested with the same authority which are provided to the provisional administration for managing a

Case 1:16-cv-09139-PGG    Document 53-4    Filed 03/06/17    Page 87 of 122

17-10516    Doc 3-1    Filed 03/03/17    Entered 03/03/17 23:50:39    Exhibit A    Pg 209
of 317
*[Unofficial translation from Russian]*

credit organisation in compliance with Article 189.31 of this Federal Law, subject to the specifics established by this article.

**3.** Within the period while the provisional administration for managing a bank appointed in compliance with this article is exercising its activities the following shall be suspended:

1) the authority of the bank's managerial bodies connected with making decisions on the matters put within the scope of their authority by federal laws and the bank's constituent documents;

2) the rights of the bank's founders (stockholders) connected with participation in the authorized capital thereof, including the right to call a general meeting of the bank's stockholders (stockholders).

**4.** Apart from exercising the authority cited in Item 2 of this article, the provisional administration for managing a bank is entitled:

1) to take actions connected with reduction of the amount of the bank's authorised capital down to the amount of its own assets (capital) or to one rouble and to render decisions on amending the bank's statutes;

2) to take actions connected with an increase of the bank's authorized capital, in particular to render the decision on placing its stocks, to endorse the decision on stock issuance and a report on the results of this issuance and to render a decision on amending the bank's statutes;

3) to render a decision on the bank's reorganisation;

4) to sell the bank's property, in particular to the Agency, in compliance with a plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy;

5) to render decisions on opening and closing the bank's affiliates and on making appropriate amendments in the bank's statutes in connection with the given decisions;

6) to take other measures aimed at preventing bank's bankruptcy;

7) to render a decision on the bank's liquidation.

**Article 189.35.** The Effects of Suspending the Authority of Executive Bodies of a Credit Organisation for the Period While the Provisional Administration for Managing the Credit Organisation Is Exercising Its Activities

**1.** In the event of suspending the authority of executive bodies of a credit organisation for the period while the provisional administration for managing the credit organisation is exercising its activities:

1) the credit organisation's executive bodies are not entitled to render decisions on the matters put within their scope of authority by federal laws and constituent documents of the credit organisation;

2) decisions of other managerial bodies of the credit organisation shall enter into force after their coordination with the provisional administration for managing the credit organisation.

**2.** The executive bodies of a credit organisation in case of suspension of their authority for the period while the provisional administration for managing the credit organisation is exercising its activities at the latest on the day following the date of appointment of the provisional administration for managing the credit organisation are bound to pass over to it the credit organisation's seals and stamps and at the time coordinated with the provisional administration for managing the credit organisation the accounting and other documentation, as well as databases of the credit organisation on electronic media (reserve copies of databases) the duty to keep which is established by the Federal Law on Banks and Banking Activity, material and other valuables of the credit organisation.

**3.** Obstruction on the part of the head of a credit organisation, other employees of the credit organisation and other persons to the exercise by the provisional administration for managing the credit organisation of the functions thereof (in particular obstruction to access to the credit organisation's premises, access to its documentation and other information media, refusal to transfer documents and seals) shall serve as grounds for the Bank of Russia taking by way of supervision the measures provided for by federal law, as well as entail liability in compliance with federal law.

**4.** In the event of suspension of the authority of executive bodies of a credit organisation for the period while the provisional administration is exercising its activities, the head of the credit organisation who was entitled before appointing the provisional administration for managing the credit organisation to act on behalf of the credit organisation without a power of attorney is entitled to represent its interests in a commercial court when the decision of the Bank of Russia for appointing the provisional administration for managing the credit organisation is complained against or the order of the Bank of Russia to withdraw the licence for making banking operations is complained against.

**5.** As from the date of appointment of the provisional administration the validity of the powers of attorney issued by a credit organisation before the date of appointment of the provisional administration, including irrevocable ones, shall be terminated.

*[Unofficial translation from Russian]*

**Article 189.36.** A Petition of the Head of the Provisional Administration for Managing a Credit Organisation for Withdrawal of the Licence for Conducting Banking Operations

In the event of establishing grounds for withdrawal of a credit organisation's licence for conducting banking operations provided for by Article 20 of the Federal Law on Banks and Banking Activity, the head of the provisional administration for managing the credit organisation is bound to file a petition for withdrawal of the cited licence with the Bank of Russia.

**Article 189.37.** Disputes Concerning the Activities of the Provisional Administration for Managing a Credit Organisation

**1.** A credit organisation is entitled to complain against the decision of the Bank of Russia on appointing a provisional administration for managing the credit organisation with a commercial court in the procedure established by federal laws.

Complaining against the decision of the Bank of Russia on appointing the provisional administration for managing a credit organisation, as well as taking measures aimed at securing risks in respect of a credit organisation, shall not suspend the activities of the provisional administration for managing the credit organisation.

**2.** The credit organisation's founders (stockholders) possessing in the aggregate at least one per cent of the credit organisation's authorized capital are entitled to make a claim with a commercial court against the Bank of Russia for compensation to the credit organisation for actual damage if it is caused as a result of unfounded appointment of a provisional administration for managing the credit organisation.

**Article 189.38.** A Moratorium on Satisfaction of Claims of a Credit Organisation's Creditors

**1.** In the event of suspension of the authority of executive bodies of a credit organisation and where there are grounds provided for by Subitem 1 of Item 1 of Article 189.26 of this Federal Law, the Bank of Russia is entitled to impose a moratorium on satisfaction of claims of the credit organisation's creditors for at most three months.

The operation of the cited moratorium shall extend to pecuniary obligations and the duty of making mandatory payments originating before the appointment of the provisional administration for managing the credit organisation.

**2.** Within the time period while the moratorium is in effect:

1) the forfeits (fines, penalties), interest, other financial sanctions provided for by law or a contract shall not be charged and other punitive sanctions for failure to discharge or improper discharge by a credit organisation of pecuniary obligations and/or the duty of making mandatory payments shall not be imposed;

2) recovery under execution and other documents in an uncontestable procedure (without acceptance) shall not be allowed;

3) the execution of executive documents, except as provided for by Item 4 of this article, shall be suspended;

4) it shall be prohibited to satisfy the claims of the founder (stockholder) of a credit organisation for apportioning thereto the participatory share (contribution) in the authorised capital of the credit organisation in connection with the withdrawal thereof from the composition of its founders (stockholders).

**3.** Interest shall be accrued on the amount of claims of a creditor in respect of pecuniary obligations and/or mandatory payments shown in the currency of the Russian Federation at the rate established as of the date of imposing a moratorium (less the accrued interest) in the amount of two thirds of the interest refinancing rate of the Bank of Russia. Interest shall be accrued on the amount of claims of a creditor in respect of pecuniary obligations and/or mandatory payments shown in foreign currency at the rate established as of the date of imposing a moratorium (less the accrued interest) on the basis of the average rate of bank interest on short-tern foreign currency credits granted at the creditor's location. The accrued interest is subject to payment after the end of the moratorium.

**4.** The moratorium's operation shall not extend:

1) to claims of individuals to whom a credit organisation is liable for inflicting harm on their life or health;

2) to the claims of individuals for making severance payments, labour remuneration to individuals working under a labour agreement (contract) and for paying remuneration to the authors of the results of intellectual activities;

3) to the claims for covering the administrative-and-economic outlays which are necessary for the activities of a credit organisation;

4) to the execution of executive documents issued before the date of the moratorium's imposition on the basis of decisions on collecting the credit organisation's debts under bank deposit agreements and bank account agreements made with natural persons.

**Article 189.39.** The Refusal to Execute Contracts and other Transactions of a Credit Organisation

*[Unofficial translation from Russian]*

The head of the provisional administration for managing a credit organisation, should the authority of executive bodies of the credit organisation be suspended, is entitled from the time of appointment of the provisional administration for managing the credit organisation to refuse to execute contracts and other transactions of the credit organisation on the grounds and in the procedure provided for by Article 102 of this Federal Law.

**Article 189.40.** The Specifics of Declaring Transactions of a Credit Organisation Invalid

**1.** A transaction made by a credit organisation (or by another persons at the expense of the credit organisation) before the date of appointment of the provisional administration for managing the credit organisation or after such date may be declared invalid on the basis of an application of the head of such administration in the procedure and on the grounds provided for by this Federal Law, as well as by the Civil Code of the Russian Federation and other federal laws, subject to the specifics established by this paragraph.

**2.** An application for declaring a transaction made by a credit organisation invalid may be filed with a commercial court by the provisional administration for managing the credit organisation, as well as by the Agency on behalf of the credit organisation, if the Bank of Russia has endorsed a plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy.

**3.** The time periods within which the transactions that may be declared invalid or the credit organisation's circumstances cited in Articles 61.2, 61.3 and Item 4 of Article 61.6 of this Federal Law originated shall be counted as from the date of appointing by the Bank of Russia the provisional administration for managing the credit organisation or, if in respect of a credit organisation measures aimed at preventing bankruptcy with the Agency's participation are being taken, as from the date of endorsement by the Banking Supervision Committee of the Bank of Russia of a plan of the Agency's participation in taking measures aimed at preventing the bank's bankruptcy.

**4.** In the event of the head of the provisional administration for managing a credit organisation disputing the following transactions on the basis of Article 61.3 of this Federal Law: transactions that involve the credit organisation writing-off monetary assets from a client's account made with this credit organisation on account of repayment of the client's debt with respect to the credit organisation (both on the basis of the client's instructions and without such), remittance by a credit organisation of monetary assets from the client's account opened with this credit organisation onto the account of the same or another person with some other credit organisation (both on the basis of the client's instructions and without such) or issuance of monetary assets in cash from the client's account, the burden of proof that the appropriate transactions go beyond the limits of ordinary economic activities of the credit organisation shall be the responsibility of the head of the provisional administration for managing the credit organisation.

**5.** It is assumed (if not proved otherwise) that a transaction has gone beyond ordinary economic activities where there is at least one of the following circumstances:

1) the disputed payment has been made by a credit organisation through the correspondent account (subaccount) in defiance of the order established by the Civil Code of the Russian Federation where there are other clients' instructions nominated in the same currency and not executed in due time because of insufficiency of monetary assets on the cited correspondent account (subaccount) of this credit organisation or if it is proved that the client that has made the disputed payment or the payment's recipient knew about the presence of other such non-executed instructions in respect of another correspondent account (subaccount) of this credit organisation;

2) a client or payment recipient is a related person or controlling person in respect of the credit organisation;

3) the purpose or amount of the disputed payment significantly differ from the clients' payments made before subject to previous relations thereof with the credit organisation, and the client cannot present a reasonable convincing substantiation of this payment, and the amount of payment or an aggregate of the client's payments made within a single business day has exceeded one million roubles and in respect of the payments made in foreign currency have exceeded the sum which is equivalent to one million roubles at the exchange rate of the Central Bank of the Russian Federation fixed as of the date of payment. This subitem shall not apply to disputing payments aimed at the discharge of the credit organisation's pecuniary obligations in respect of credit contracts, bank account contracts or deposit contracts made with other credit organisations.

**6.** The rule of Item 2 of Article 61.4 of this Federal Law in respect of the possibility of declaring invalid the transactions made in the course of ordinary economic activities, if their price or extent exceed one per cent of the assets' value, shall not apply while disputing payments aimed at the discharge of monetary obligations of the credit organisation under the credit contracts, contracts of banking account or contracts of deposit made with other credit organisations. Such payments may be declared invalid on the basis of Item 1 of Article 61.2 or Article 61.3 of this Federal Law solely in compliance with Item 5 of this article.

**7.** When disputing transactions of a credit organisation in compliance with Items 5 and 6 of this article, Item 4 of Article 61.4 of this Federal Law shall not apply.

**8.** In a case initiated on the basis of an application of the head of the provisional administration for managing a credit

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 90 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 212
of 317
*[Unofficial translation from Russian]*

organisation, if the activities of the provisional administration for managing the credit organisation are terminated, as the claimant shall be recognised the credit organisation in the name of its authorized managerial body or, in the event of adoption by a commercial court of the decision on declaring the credit organisation bankrupt and on initiation of bankruptcy proceedings (endorsement of a bankruptcy receiver) or of the decision of a commercial court on appointing the liquidator of the credit organisation, in the name of the bankruptcy receiver or liquidator of the credit organisation.

**9.** A transaction made by a credit organisation participating in a payment system, by the central payment clearing contractor, the payment system's settlement centre and in respect which the credit organisation is liable as a result of defining payment clearing positions on the net-basis within the framework of the payment system, provided that the cited transaction satisfies the requirements of Federal Law No. 161-FZ of June 27, 2011 on the National Payment System, may not be declared invalid on the grounds provided for by this article.

**10.** A transaction or transfer of monetary assets made by a credit organisation participating in a foreign payment system may not be declared invalid on the grounds provided for by this article, if made by an credit organisation participating in the foreign payment system or some other credit organisation (including by a foreign credit organisation or foreign bank) on its instructions and by a foreign central payment clearing contractor for which a bank account is opened with the Bank of Russia.

**11.** A transaction made by a bank or other person at the bank's expense in respect of which measures aimed at preventing bankruptcy with the Agency's participation have been taken (are being taken) which are provided for by this paragraph may be declared invalid at an application of the cited bank or Agency in the procedure and on the grounds provided for by this Federal Law, as well as by the Civil Code of the Russian Federation and other federal laws, subject to the specifics established by this paragraph. The rules provided for by Chapter III.1 of this Federal Law and Items 1-10 of this article shall apply when disputing such transactions, if not otherwise provided for by this item. The time periods within which are made the transactions that may be declared invalid in compliance with Article 61.2 or 61.3 of this Federal Law shall be counted starting from the date of endorsement by the Banking Supervision Committee of the Bank of Russia of a plan for the Agency's participation in taking measures aimed at preventing the banks' bankruptcy.

**12.** In a case initiated on the basis of the Agency's application upon termination of the time period for implementation of a plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy (completing measures aimed at preventing bankruptcy) as the claimant shall be recognized a credit organisation in the name of its authorized managerial body or, in the event of adoption by a commercial court of a decision on declaring a bank bankrupt and on initiating bankruptcy proceedings (endorsement of a bankruptcy receiver) or a decision of a commercial court on appointing the liquidator of the credit organisation, in the name of the bankruptcy receiver or liquidator of the credit organisation.

**Article 189.41.** The Expenses of the Provisional Administration for Managing a Credit Organisation

**1.** The outlays of the provisional administration for managing a credit organisation connected with the activities thereof shall be made at the expense of the credit organisation.

**2.** An estimate of outlays of the provisional administration for managing a credit organisation shall be endorsed by the Bank of Russia.

**3.** The outlays of the provisional administration for managing a credit organisation within the limits of the estimate endorsed by the Bank of Russia are subject to priority payment.

**4.** If there are no monetary assets on the correspondent account of a credit organisation, on the order of the head of the provisional administration for managing the credit organisation the foreign currency kept on correspondent accounts of the credit organisation with other credit organisations may be sold within the limits of the amount of outlays endorsed in the estimate and the sum derived may be entered onto the correspondent account of the credit organisation with an institution of the Bank of Russia.

**Article 189.42.** A Report of the Provisional Administration for Managing a Credit Organisation

The provisional administration for managing a credit organisation shall be accountable to the Bank of Russia in the procedure established by regulatory acts of the Bank of Russia.

**Article 189.43.** The Termination of the Activities of the Provisional Administration for Managing a Credit Organisation

**1.** The Bank of Russia shall render a decision on termination of the activities of the provisional administration for managing a credit organisation:

1) in the event of removal of the reasons serving as a basis for its appointment;

2) after a commercial court renders a decision on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings (on endorsing the bankruptcy receiver) or after entry into force of a decision of a commercial court on appointing a liquidator of the credit organisation;

*[Unofficial translation from Russian]*

3) on other grounds provided for by this paragraph and regulatory acts of the Bank of Russia.

**2.** In the event of declaring a credit organisation bankrupt or adopting a decision on compulsory liquidation thereof, the provisional administration for managing the credit organisation, within at most 10 working days after a commercial court renders a decision on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings (on endorsing the bankruptcy receiver) or after the date of entry into legal force of the decision of a commercial court on appointing a liquidator of the credit organisation, is bound to pass over thereto the credit organisation's stamps and seals, accounting and other documentation, including a register of creditors' claims of the credit organisation, material and other valuables of the credit organisation accepted from the executive bodies of the credit organisation in compliance with Item 2 of Article 189.35 of this Federal Law.

The procedure for termination of the activities of the provisional administration for managing a credit organisation shall be established by regulatory acts of the Bank of Russia.

**3.** The termination of the activities of the provisional administration for managing a credit organisation in case of removed of the reasons serving as grounds for its appointment shall entail the restoration of the authority of the credit organisation's executive bodies.

**4.** The authority of the head of a credit organisation removed from the office thereof for the time period while the provisional administration for managing the credit organisation is exercising its activities shall be restored after termination of the activities of the provisional administration for managing the credit organisation, if the head of the credit organisation is not dismissed in compliance with the labour legislation.

**5.** The act of the Bank of Russia on termination of the activities of the provisional administration for managing a credit organisation shall be published by the Bank of Russia in the "Vestnik Banka Rossii" and at the latest on the following working day after the date of adoption of the cited act shall be included by the Bank of Russia into the Unified Federal Register of Data on Bankruptcy.

**Article 189.44.** The Inclusion by the Bank of Russia of Data into the Unified Federal Register of Data on Bankruptcy

**1.** The data received from the provisional administration for managing a credit organisation, as well as the data and documents cited in Articles 189.25-189.43 of this Federal Law, shall be included by the Bank of Russia into the Unified Federal Register of Data on Bankruptcy within five working days as from the time of the Bank of Russia receiving the appropriate data and documents.

**2.** The data and documents cited in Articles 189.25-189.43 of this Federal law shall be included by the Bank of Russia into the Comprehensive Federal Register of Data on Bankruptcy without collecting payment from the Bank of Russia.

**Article 189.45.** The Demand of the Bank of Russia for Reorganising a Credit Organisation

**1.** The Bank of Russia is entitled to demand reorganisation of a credit organisation where it is established by Subitems 1-3 of Item 1 of Article 189.26 of this Federal Law. The procedure for sending the demand of the Bank of Russia for reorganisation of a credit organisation is established by Items 1 and 2 of Article 189.20 of this Federal Law.

**2.** A credit organisation shall be reorganised in the form of merger or affiliation in the procedure established by federal laws and regulatory legal acts adopted in compliance with them.

**Article 189.46.** The Credit Organisation's Actions in Case of Receiving a Demand of the Bank of Russia for Its Reorganisation

**1.** In the event of receiving a demand of the Bank of Russia for reorganisation of a credit organisation, the one-man executive body of the credit organisation is bound within five days of the date of receiving it to file a petition that there is a need for reorganisation of the credit organisation with the credit organisation's executive bodies cited in Item 1 of Article 189.19 of this Federal Law.

**2.** The credit organisation's managerial bodies cited in Article 189.19 of this Federal Law are bound at the latest in 10 days as from the date of receiving the demand of the Bank of Russia for reorganisation to notify the Bank of Russia about the adopted decision.

**3.** The requirements for the stability of the credit organisations originating in the event of merger of credit organisations are defined by regulatory acts of the Bank of Russia.

**Article 189.47.** A Proposal of the Bank of Russia for the Agency's Participation in Taking Measures Aimed at Preventing Bankruptcy or Settlement of the Obligations of a Bank

**1.** The Bank of Russia is entitled to send a proposal on the Agency's participation in taking measures aimed at preventing a bank's bankruptcy where there are signs that the financial position thereof is unstable, this endangering the interests of its creditors (depositors) and/or the stability of the banking system.

212

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 92 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 214
of 317
*[Unofficial translation from Russian]*

**2.** The Bank of Russia is entitled to send a proposal on the Agency's participation in settling a bank's obligations where there are signs of the instability of its financial position endangering the interests of its creditors (depositors).

**3.** For the purposes of this paragraph, the signs of instability of a bank's financial position endangering the interests of its creditors (depositors) shall include, in particular, a bank showing in its reports/statements and/or the establishment by the Bank of Russia, Agency or other persons of the facts and (transactions) operations proved by documents whose truthful showing in the bank's reports/statements leads (will lead) to the bank breaking obligations and/or conditions of participation in the system of mandatory deposit insurance and/or to the origination of grounds for taking measures aimed at preventing the bank's insolvency (bankruptcy) and/or the availability of other proof of a threat to the interests of creditors/depositors supported by documents.

**4.** The Bank of Russia is entitled to render a decision on sending representatives of the Bank of Russia and the Agency's representatives to a bank for the purpose of analyzing the bank's financial position for resolving the issue as to whether it is expedient to send the Agency a proposal on the Agency's participation in taking measures aimed at preventing bankruptcy or a proposal on participation in settling the bank's obligations.

**5.** The time period for analysing the financial position of a bank may not exceed 45 calendar days. The cited time period may be extended by the Bank of Russia on the basis of the Agency's reasoned petition by at most 10 calendar days.

**6.** The procedure for analyzing the financial position of a bank and methods for effecting it shall be defined by a regulatory act of the Bank of Russia.

**7.** Representatives of the Bank of Russia and representatives of the Agency shall enjoy the right of access to all the bank's premises, to all the bank's documents and information systems, as well as the right to request and receive from the bank's employees any information (including data constituting official, commercial and banking secrets) and documents.

Representatives of the Bank of Russia and representatives of the Agency are entitled to participate without enjoying the right of vote in sittings of the bank's managerial bodies, its committees, commissions and other advisory bodies.

**8.** Obstruction on the part of a bank's top managers, other bank's employees and other persons of the exercise by representatives of the Bank of Russia and by representatives of the Agency of the functions thereof (including obstruction to access to the bank's premises, its documentation and information media or their concealment) shall entail liability in compliance with the legislation of the Russian Federation.

**9.** While analyzing a bank's financial position, the Agency is entitled to assess the sufficiency of the bank's property for settling the bank's obligations in compliance with Article 189.51 of this Federal Law.

Methods for assessing the sufficiency of a bank's property for settling the bank's obligations shall be defined by a regulatory act of the Bank of Russia with the Agency's approbation.

To assess the market value of a bank's property, including the property rights possessed by it, the Agency is entitled to engage an appraiser at its own expense.

**10.** On the basis of the results of analysis of a bank's financial position representatives of the Bank of Russia and representatives of the Agency shall send to the Bank of Russia and the Agency a joint report on the results of their activities for adoption by the Bank of Russia of the decision on the expediency of the Agency sending a proposal as to the Agency's participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations.

**11.** The report of representatives of the Bank of Russia and representatives of the Agency provided for by Item 10 of this article shall contain conclusions as to the expediency of the Agency sending a proposal on the Agency's participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations.

**12.** The decision on the Agency sending a proposal on the Agency's participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations shall be taken by the Banking Supervision Committee of the Bank of Russia.

**13.** As from the date of the Bank of Russia sending the Agency a proposal on the Agency's participation in taking measurers aimed at preventing bankruptcy and up to the end date of the time period for taking measures aimed at preventing bankruptcy the Bank of Russia is entitled to render the following decisions:

1) not to take the measures provided for by Article 74 of the Federal Law on the Central Bank of the Russian Federation (the Bank of Russia) in respect of the bank;

2) not to impose a ban on attracting monetary assets of natural persons and opening bank accounts for natural persons provided for by Article 48 of the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation;

3) not to withdraw the bank's licence for conducting banking operations where it is provided for by Part Two of Article

20 of the Federal Law on Banks and Banking Activity;

4) to grant the bank a postponement in payment (payment by installments) of the shortage of assets to be paid to the mandatory reserves deposited with the Bank of Russia for the time period while a plan for the Agency's participation in preventing the bank's bankruptcy is being implemented. On such occasion, the bank is bound to draw up a monthly estimation of the mandatory reserves which are subject to depositing and to submit it to the Bank of Russia in the procedure established by the Bank of Russia.

**Article 189.48.** The Decision on the Agency's Participation in Taking Measures Aimed at Preventing Bankruptcy or in Settling a Bank's Obligations

**1.** While considering the proposal of the Bank of Russia on participation in taking measures aimed at preventing bankruptcy or in settling a banks obligations, the Agency is entitled to take the appropriate decision:

1) to request and receive from the Bank of Russia additional data and documents on the bank's financial position;

2) to present to the Bank of Russia and other persons a proposal to develop measures aimed at preventing bankruptcy;

3) to hold talks with the bank's managerial bodies, its founders (stockholders) and other persons having contractual relations with the bank about taking measures aimed at preventing bankruptcy or on settling the bank's obligations;

4) to take other actions for the purpose of adopting a decision on the expediency of its participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations.

**2.** The Agency's decision on the issue of expediency of its participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations shall be taken on the basis of the principles of fairness, reasonableness, sufficient awareness of the bank's financial position and minimization of the expenditure of assets of the fund for mandatory deposit insurance and of other Agency property.

**3.** The Agency, at the latest in 10 days as from the date of receiving a proposal of the Bank of Russia on the Agency's participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations, shall notify the Bank of Russia on adopting a decision on its participation in taking measurers aimed at preventing bankruptcy or in settling obligations of the bank or on the denial of such participation.

**4.** The Agency's decisions on the denial of participation in taking measures aimed at preventing bankruptcy or in settling obligations of a bank, as well as the decision on participation in settling obligations of the bank in respect of which the proposal of the Bank of Russia on the participation in taking measures aimed at preventing bankruptcy has been sent to the Agency's address, shall be substantiated.

**Article 189.49.** The Agency's Participation in Taking Measures Aimed at Preventing a Bank's Bankruptcy

**1.** Measures aimed at preventing bankruptcy may be taken by the Agency by way of the following:

1) rendering the financial assistance provided for by this article;

2) arranging sales of property securing the discharge of the bank's obligations, in particular with respect to the Bank of Russia;

3) exercising the functions of the provisional administration for managing a bank in compliance with Article 189.34 of this Federal Law;

4) in other ways provided for by this paragraph.

**2.** Measures aimed at preventing a bank's bankruptcy with the Agency's participation shall be taken on the basis of the plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy endorsed by the Banking Supervision Committee of the Bank of Russia which shall be sent by the Agency to the Bank of Russia at the latest in 20 days as from the date of the Agency sending a notice to the Bank of Russia about the adoption of the decision on its participation in preventing the bank's bankruptcy.

**3.** Within 10 days as from the date of receiving a plan for the Agency's participation in taking measures aimed preventing a bank's bankruptcy the Banking Supervision Committee of the Bank of Russia shall render a decision on its endorsement or on refusal to endorse it.

If a plan for the Agency's participation in taking measures aimed at preventing bankruptcy of a bank provides for using assets of the Bank of Russia, the plan endorsed by the Banking Supervision Committee of the Bank of Russia is also subject to endorsement by the Board of Directors of the Bank of Russia within the cited time period.

A procedure for endorsement of a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy and amendments to be made in the plan for the Agency's participation in taking measures aimed at preventing the banks' bankruptcy endorsed by the Bank of Russia shall be established by a regulatory act of the Bank of Russia.

*[Unofficial translation from Russian]*

The cited plan shall specify the forms and extent of the financial assistance to be rendered by the Agency.

Where necessary, the Agency shall make amendments in the cited plan in the procedure stipulated for adoption and endorsement of this plan.

**4.** The Banking Supervision Committee of the Bank of Russia shall render a decision on endorsement of the amendments or on refusal to make amendments in a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy at the time fixed by Item 3 of this article as from the date of the Bank of Russia receiving the amendments made in the plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy.

**5.** Within the time period as from the date of endorsement of a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy and up to the last day of the time period for its implementation (completion of taking measures aimed at preventing the bank's bankruptcy) the Agency shall submit a report to the Bank of Russia on a monthly basis on taking the measures provided for by the cited plan. The composition of the report and the procedure for its submission shall be established by a regulatory act of the Bank of Russia.

**6.** In the event of adoption of a decision on the refusal to endorse a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy or if it is impossible to implement the cited plan, in particular as a result of failure to implement the cited plan by the bank, the Bank of Russia shall reverse the decisions adopted in compliance with Item 13 of Article 189.47 of this Federal Law.

**7.** The Bank of Russia and the Agency shall exchange information about the presence of the grounds proving the impossibility of implementing a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy.

**8.** While taking measures aimed at preventing a bank's bankruptcy, the Agency is entitled to render financial assistance to:

1) the persons (person) acquiring stocks of the bank in the quantity of at least 75 per cent of ordinary stocks of a bank in the form of a joint stock company (shares in the authorized capital representing at least three quaters of votes of the total number of votes of participants of a bank in the form of a limited liability company) (hereinafter referred to as investors) in compliance with the endorsed plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy;

2) a bank on condition of the Agency and/or investors acquiring stocks of the bank in the quantity of at least 75 per cent of ordinary stocks of a bank in the form of a joint stock company (shares in the authorized capital granting the right of vote in the amount of at least three quaters of votes of the total number of votes of participants of a bank in the form of a limited liability company) in compliance with the endorsed plan of the Agency's participation in taking measures aimed at preventing a bank's bankruptcy.

**9.** The financial assistance shall be rendered by the Agency in compliance with Subitem 1 of Item 8 of this article on condition of satisfaction by an investor of the requirements established by the Bank of Russia.

**10.** An investor is bound to present the Bank of Russia information about satisfaction of the requirements cited in Item 9 of this article. When the Agency renders financial assistance to an investor, the Agency is entitled to request and receive from the Bank of Russia documents proving satisfaction by an investor of the requirements established by the Bank of Russia.

**11.** When rendering financial assistance to a bank, the Agency is entitled to acquire the bank's property, including the right of claim against natural persons, without the consent of the latter.

**12.** Financial assistance in the form of a contribution made in the authorized capital of a bank from the Agency's assets shall be rendered by the Agency, if the following conditions are concurrently observed:

1) reduction of the amount of the bank's authorised capital by decision of the Bank of Russia down to the amount of own assets (capital) or to one rouble (when the value of own assets (capital) is negative);

2) termination of the bank's obligations under contracts of subordinated credit (contracts of deposit, loan, bonded loan), including obligations in respect of interest and financial sanctions for failure to discharge obligations under subordinated credits (deposits, loan, bonded loans), or an exchange (conversion) of creditors' claims under subordinated credits (deposits, loans, bonded loans), including obligations in respect of interest and financial sanctions for failure to discharge obligations under subordinated credits (deposits, loan, bonded loans), on ordinary stocks (shares in the authorised capital) of a credit organisation;

3) acquisition by the Agency and/or by an investor (investors) of stocks (shares in the authorised capital) of a bank in the quantity of 75 per cent of ordinary stocks of a bank in the form of a joint stock company (shares in the authorised capital granting the right of vote to the extent of at least three quaters of votes of the total number of votes of participants of a bank in the form of a limited liability company).

**13.** The financial assistance provided for by Item 8 of this article shall be rendered by the Agency on the basis of agreements (contracts).

Case 1:16-cv-09139-PGG  Document 53-4  Filed 03/06/17  Page 95 of 122

17-10516  Doc 3-1  Filed 03/03/17  Entered 03/03/17 23:50:39  Exhibit A  Pg 217
of 317  *[Unofficial translation from Russian]*

**14.** In compliance with a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy the Agency may act as the organiser of sales of the property securing the discharge of the bank's obligations, in particular with respect to the Bank of Russia.

**15.** The severance payments, compensation and other payments shall be made in case of termination of a labour contract made with the one-man executive body of the bank (in particular at him/her own will or as agreed by the parties) in respect of which the Agency is taking measures aimed at preventing bankruptcy, deputies thereof, members of the collective executive of a credit organisation, the chief accountant and deputies thereof, as well as with the head of an affiliate of a credit organisation and chief accountant of an affiliate of the credit organisation, shall be made in an amount not exceeding the minimum rate of payments established by Article 181 of the Labour Code of the Russian Federation.

**Article 189.50.** Changing the Amount of the Authorised Capital of a Bank and/or the Composition of Stockholders (Stockholders) of a Bank by Decision of the Bank of Russia

**1.** Within the period of the provisional administration for managing a credit organisation appointed in compliance with Subitem 6 of Item 1 of Article 189.26 of this Federal Law exercising activities the Bank of Russia is entitled to render a decision on reducing the amount of the authorized capital of a bank down to the amount of own assets (capital) thereof or, if the given value is negative, down to one rouble.

**2.** The value of own assets (capital) of a bank shall be estimated by the provisional administration in compliance with the procedure established by the Bank of Russia on the basis of the Federal Law on the Central Bank of the Russian Federation (the Bank of Russia).

**3.** The decision on reducing the amount of the authorized capital of a bank down to the value of own assets (capital) thereof or down to one rouble shall be adopted by the Banking Supervision Committee of the Bank of Russia in the procedure established by a regulatory act of the Bank of Russia and shall be legalized by an order of the Bank of Russia. A report on reduction of the amount of the authorized capital of a bank shall be published in the "Vestnik Banka Rossii" at the latest in 10 working days as from the date of adoption of the cited decision and shall be placed in the Unified Federal Register of Data on Bankruptcy.

**4.** The decision of the Bank of Russia on reducing the amount of the authorized capital of a bank shall enter into force as from the date of adoption of the appropriate order of the Bank of Russia and may be complained against within 30 days as from the date of the first publication or insertion of the report cited in Item 3 of this article. Complaining against such decision of the Bank of Russia and/or taking measures aimed at securing claims in respect of a bank shall not suspend such decision of the Bank of Russia.

On the basis of the decision cited in this item the provisional administration for managing a credit organisation is bound to take actions aimed at bringing the bank's constituent documents into accord with the adopted decision. In respect of banks acting in the form of a joint stock company the provisional administration for managing a credit organisation shall also render the decision on placing stocks, shall prepare and endorse the decision on issuance of stocks and a report on the results of stocks' issuance in compliance with the requirements of regulatory acts of the Bank of Russia.

**5.** In the event of admitting serial securities of a bank to organised trade in the territory of the Russian Federation, the provisional administration for managing a credit organisation, before the adoption of the decision on placing stocks (bringing the bank's constituent documents into accord with the adopted decision), shall send an application to the trade-promoters in the securities market (exchanges) for termination of trade in stocks and options of the issuing bank.

**6.** In the event of adoption by the Bank of Russia of the decision on reduction of the amount of the authorized capital of a bank, the Bank of Russia within three working days as from the date of the provisional administration for managing a credit organisation filing all the properly-legalised documents provided for by Item 1 of Article 17 of Federal Law No. 129-FZ of August 8, 2001 on the State Registration of Legal Entities and Individual Businessmen (hereinafter referred to as the Federal Law on the State Registration of Legal Entities and Individual Businessmen) shall render the decision provided for by Part Three of Article 10 of the Federal Law on Banks and Banking Activity.

**7.** An authorized registration body, within a working day as from the date of receiving the required data and documents, shall enter data into the Unified State Register of Legal Entities on the reduction of the amount of a bank's authorised capital on the basis of the documents sent by the provisional administration for managing the credit organisation.

**8.** When reducing the amount of a bank's authorised capital by decision of the Bank of Russia, the following provisions of federal laws shall not apply:

1) on obligatory notification of creditors about their right to demand the termination or preschedule discharge of obligations by the bank and repair of the losses connected with it;

2) on the right of creditors to make claims against the bank for termination or preschedule discharge by it of obligations and repair of damage connected with it;

216

*[Unofficial translation from Russian]*

3) on the bank's liquidation, if the amount of its own assets (capital) goes below the minimum amount of the authorised capital established by federal law and a normative act of the Bank of Russia as of the date of the bank's state registration.

**9.** In the event of reduction of the amount of a bank's authorised capital by decision of the Bank of Russia, the provisions of Article 29 of the Federal Law on Joint Stock Companies and Article 20 of the Federal Law on Limited Liability Companies shall not apply.

**10.** If as of the time of rendering the decision on reducing the amount of the authorised capital a bank having the form of a joint stock company is at any stage of stock issuance, the Bank of Russia shall render a decision on declaring the issue thereof frustrated and on cancellation of the state registration thereof (except when the state registration of an issue (additional Issue) of stocks does not involve the state registration of a report on the results of their issue (additional issue) and at least one transaction involving placement of the stocks of the given issue (additional issue) has been made.

**11.** Where a procedure for issuance of a bank's stocks does not involve the state registration of a report on the results of their issue (additional issue) and at least one transaction involving the placement of the stocks belonging to the issue (additional issue) has been made, the provisional administration for managing the credit organisation, irrespective of the time period for placing stocks fixed by the issuance terms, shall render a decision on completing the placement and on endorsing a notice of the results of the stocks' issue (additional issue).

**12.** Where it is specified by Item 11 of this article, the provisional administration for managing a credit organisation, within three working days as from the date of adoption of the decision on completing placement and on endorsing a notice of the results of an issue (additional issue) of stocks, is bound to render a decision on making amendments in the bank's statutes. The Bank of Russia, within a working day as from the date of the provisional administration for managing a credit organisation filing all the properly legalized documents, shall render the decision provided for by Part Three of Article 10 of the Federal Law on Banks and Banking Activity. Within a working day as from the date of receiving necessary data and documents the authorised registration body shall enter data to the Unified State Register of Legal Entities on an increase of a bank's authorized capital on the basis of the documents sent by the provisional administration for managing the credit organisation.

**13.** If as of the time of rendering the decision on reduction of the amount of the authorized capital a bank in the form of a limited liability company is at any stage of an increase of the amount of the authorized capital thereof, the Bank of Russia shall render a decision on reversal of the bank's decision on an increase of the authorised capital thereof.

**14.** If as of the time of the Bank of Russia declaring an issue of a bank's stocks frustrated (of rendering the decision on reversal of the decision on an increase of the authorized capital thereof) the bank has received monetary assets in payment for stocks (shares), such monetary assets by order of the provisional administration for managing the credit organisation shall be repaid in compliance with the legislation of the Russian Federation at the latest in three working days as from the date of adoption by the Bank of Russia of the decision on cancellation of the state registration of the issue (additional issue) of stocks (of adoption of the decision on reversal of the decision on an increase of the amount of the authorized capital) of the bank.

**15.** A bank's own stocks (shares) which are included into the balance sheet thereof as of the time of adoption by the Bank of Russia of the decision on reduction of the amount of this bank's authorised capital shall be paid off.

**16.** The provisional administration for managing a credit organisation may adopt the decision on placing an additional issue of stocks (on making an additional contribution to the authorised capital) of a bank. In the event of adoption of the cited decision, the preemptive right to acquisition of a bank's stocks (shares) shall not extend to the bank's stockholders (stockholders).

An additional issue of a bank's stocks may be acquired in full or in part by the Agency, if the conditions provided for by Article 189.49 of this Federal Law are met. The Agency is entitled to make a contribution to the bank's authorized capital.

**17.** The bank's stockholders (stockholders) that held more than one per cent of its stocks (shares) within the three months preceding the date of the Bank of Russia sending a proposal to the Agency on its participation in preventing the bank 's bankruptcy and before the date of adoption of the decision on placing an additional issue of stocks (making an additional contribution in the authorized capital) of the bank may not be deemed the participants in placing an additional issue of stocks (in making an additional contribution to the authorized capital) of a bank.

**18.** The shares of participation of the Agency and/or investor in the authorised capital of a bank on the basis of the results of its increase shall make up at least 75 per cent of ordinary stocks of a bank having the form of a joint stock company (shares in the authorised capital giving at least three quaters of votes in the total number of votes of participants of a bank in the form of a limited liability company).

**19.** The provisions of the federal laws regulating the following procedure shall not extend to the acquisition by the Agency or investor of stocks (shares) of a bank in compliance with the measures aimed at preventing the bank's bankruptcy:

1) obtaining a preliminary or subsequent consent of the Bank of Russia to acquisition of the bank's stocks (shares);

2) receiving a consent to making a transaction in the bank's stocks (shares) from the federal antimonopoly body

*[Unofficial translation from Russian]*

(sending a notice to the federal antimonopoly body);

3) acquiring 30 or more per cent of ordinary stocks of a bank which is a joint stock company;

4) observing the minimum amount of the bank's authorised capital established by federal law and regulatory legal acts of the Bank of Russia as of the date of the bank's state registration;

5) observing the procedure for disclosing information in the form of reports on significant facts;

6) engaging an authorized federal executive power body for fixing the price of placing the bank's stocks;

7) exercising the right to the preemptive acquisition of the bank's stocks);

8) approving a related-party transaction.

**20.** An authorized registration body shall enter information on an increase of the authorised capital of a bank into the Unified State Register of Legal Entities on the basis of the documents sent by the provisional administration for managing the credit organisation.

**21.** If as a result of taking measures aimed at preventing bankruptcy which are provided for by this paragraph an investor or the Agency have become owners of over 95 per cent of ordinary and/or preferred stocks of a bank granting the right of vote in compliance with Item 5 of Article 32 of the Federal Law on Joint Stock Companies, an investor or the Agency are entitled to redeem the cited securities from the rest of the stockholders owning the bank's stocks, as well as from owners of the serial securities convertible into such stocks.

**22.** The provisions of the federal laws cited in Item 19 of this article, as well as the requirements of Article 84.8 of the Federal Law on Joint Stock Companies for preliminary sending a bank of the appropriate voluntary or mandatory proposal and for acquisition as a result of accepting such proposal of at least 10 per cent of the total number of ordinary and preferred stocks of the bank granting the right of vote, shall not extend to the investors or the Agency sending the bank a demand for redemption of securities in compliance with Item 21 of this article.

**23.** Investors or the Agency are entitled to send to a bank the demand for redemption of securities of a credit organisation in compliance with Item 21 of this article at any time within the validity term of a plan for the Agency's participation in preventing the bank's bankruptcy.

**24.** The bank's securities shall be redeemed at a price which is equal to their market value and shall be fixed by an independent appraiser at the latest six months before the date of sending a bank the demand for redemption of the bank's securities.

**25.** The securities to be redeemed shall be only paid for by monetary funds. If the aggregate value of the bank's securities possessed by a single person from which stocks are redeemed makes up less than one kopeck, the cited securities shall be redeemed at a price which is equal to one kopeck for all the securities possessed by the given person.

**26.** The specifics of issuance and registration of banks' securities when the Agency takes measures aimed at preventing bankruptcy shall be established by a regulatory act of the Bank of Russia.

**Article 189.51.** General Provisions on Settlement of a Bank's Obligations

**1.** When settling a bank's obligations, the transfer of the bank's property and obligations to another bank that will be the acquirer (hereinafter referred to as the acquirer) shall be used.

**2.** The transfer of a bank's property and obligations to the acquirer involves the onerous transfer to the acquirer of the bank's property (including property rights) and as a consideration the discharge by the acquirer instead of the bank of its obligations with respect to the bank's creditors by way of the debt's transfer.

**3.** The bank's property and obligations shall be transferred on the basis of the principles of fairness and reasonableness of actions of the provisional administration for managing the bank, protection of creditors' rights and legitimate interests, in particular minimization of their losses when they exercise their right to have their legal requirements in respect of the bank satisfied, equivalence of the extent of the obligations to be transferred to the value of the property to be transferred, order of priority and proportionality of satisfaction of creditors' claims.

**4.** Measures aimed at settling a banks' obligations shall be taken by the Agency after withdrawal of the licence for conducting banking operations on the basis of the plan for the Agency's participation in settling the bank's obligations coordinated with the Banking Supervision Committee of the Bank of Russia.

**5.** A plan for the Agency' participation in settling a bank's obligations providing for the transfer of the bank's property and obligations shall contain data on the composition of the property to be transferred and obligations. The price of the property to be transferred and the extent of the obligations to be transferred, methods of such property's assessment, as well as on the forms, extent of and procedure for probable financing by the Agency of the activities of participants in settling the bank's

obligations shall be provided for by the plan.

**6.** A plan for the Agency's participation in settling a banks' obligations shall be sent by the Agency to the Bank of Russia at the latest in 20 days as from the date of acceptance by the Agency of the proposal of the Bank of Russia to participate in settling obligations of an appropriate bank or as from the date of the Agency sending the Bank of Russia the decision on participation in settling obligations of the bank in respect of which the Bank of Russia has sent the proposal to participate in taking measures aimed at preventing the bank's bankruptcy.

**7.** The Bank of Russia shall coordinate a plan for the Agency's participation in settling a bank's obligations in the procedure stipulated for endorsing the plan for the Agency's participation in taking measures aimed at preventing the banks' bankruptcy when rendering the decision on withdrawal of the bank's licence for making banking operations.

**8.** In the event of adoption by the Agency of the decision on participation in settling a bank's obligations, the functions of the provisional administration for managing the bank to be appointed in connection with withdrawal of the bank's licence for conducting banking operations shall be imposed on the Agency by an order of the Bank of Russia. The Agency shall exercise the functions and authority of the provisional administration for managing a bank through the representatives thereof appointed from among its employees that act on the basis of a power of attorney.

**Article 189.52.** The Transfer of a Bank's Property and Obligations to the Acquirer

**1.** The transfer of a bank's property and obligations to the acquirer shall be completed at the latest 14 days before the date of endorsement by the Bank of Russia of a plan for the Agency's participation in settling the bank's obligations.

**2.** All the bank's obligations or a part thereof may be transferred to the acquirer.

In the event of transferring to the acquirer a part of the bank's obligations, obligations of creditors of the subsequent priority shall be only transferred after the complete transfer of obligations of the previous priority. The cited order shall be established in compliance with Article 189.92 of this Federal Law.

A part of a bank's obligations of one priority may not be transferred to the acquirer, if not otherwise established by this article.

**3.** Within the composition of a bank's obligations a part of obligations with respect to creditors of the first priority may be transferred in the amount of the insurance payments which are due to such creditors in compliance with the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation (hereinafter also referred to as insured obligations).

In the event of transfer to the acquirer of insured obligations with respect to creditors of the first priority, the insurance compensation, in particular in respect of the obligations that have not been transferred, in connection with the occurrence of an insured event in respect of the bank whose obligations are to be transferred to the acquirer, shall not be paid thereto.

**4.** The Agency shall pay the first-priority creditors that did not have their claims satisfied in full in the course of the bank's liquidation the amount compensating the difference between the assets received by them and the assets that they would have received, if the bank's property and obligations had not been transferred to the acquirer from assets of the fund for mandatory deposit insurance.

**5.** Into the composition of a bank's property and obligations to be transferred to the acquirer may be included the property rights and obligations resulting from contracts of lease (sublease) of immovable property, electric energy supply, rendering municipal services, agreements on the right to use the appropriate results of intellectual activities and individualization means within the established limits (licence agreements) and other contracts made by the bank earlier.

**6.** The replacement of persons in the obligations resulting from the contracts cited in Item 5 of this article and in which a bank acts as the debtor shall entail the transfer to the acquirer of the bank's debt (obligations) originating as from the date of transfer of the bank's property and obligations. The transfer of a bank's debt (obligations) resulting from the cited contracts and originating before the date of transfer of the bank's debt and obligations is not allowed.

**7.** The sufficiency of a bank's property to be transferred to the acquirer for settling the bank's obligations in compliance with Article 189.51 of this Federal Law shall be estimated on the basis of the methods established by the Bank of Russia and coordinated with the Agency in compliance with Item 9 of Article 189.47 of this Federal Law.

The extent of a bank's obligations to be transferred to the acquirer shall be fixed by the provisional administration for managing the bank on the basis of the data available to the bank.

**8.** When transferring a bank's property and obligations to the acquirer, the rule on obtaining the consent of the bank's creditors to the debt's transfer to another person, the rule about preliminary notification of the bank's creditors about the transfer of the bank's debt to the acquirer, the rule on the bank's creditors raising claims for termination or preschedule discharge by the bank of its obligations with respect to them in connection with such transfer shall not apply.

*[Unofficial translation from Russian]*

**9.** In the event of transfer to the acquirer within the composition of the property to be transferred of rights of claim against persons that are simultaneously the bank's creditors, setting off in respect of the cited rights of claim is not allowed.

In the event of transfer within the composition of property of the leaseholder's right under contracts of lease (sublease) of immovable property, such contracts may not be dissolved earlier that in two months as from the date of the cited transfer.

**10.** The Agency is entitled to render financial assistance to the acquirer by way of the following:

1) discharge instead of the bank whose property and obligations are to be transferred to the given acquirer of the obligations involved in compensation for the property of improper quality to be returned by it in compliance with Item 1 of Article 189.55 of this Federal Law;

2) granting the loan provided for by Item 4 of Article 189.55 of this Federal Law.

**11.** In case of satisfying the conditions provided for by Item 4 of Article 189.56 of this Federal Law financial assistance shall be rendered to the acquirer from assets of the fund for obligatory deposit insurance in an amount not exceeding the maximum value of probable payments to depositors from the fund for mandatory deposit insurance in respect of the bank's insured obligations with respect to depositors in compliance with a plan for the Agency's participation in settling the bank's obligations.

**12.** Where it is impossible to satisfy the conditions provided for by Item 4 of Article 189.56 of this Federal Law, the Agency is entitled to render financial assistance to the acquirer from other Agency property intended for taking measures aimed at preventing the bank's bankruptcy or settlement of the bank's obligations.

Article 189.53. The Acquirer of a Bank's Property and Obligations

**1.** A bank's property and obligations may be transferred to a single or several acquirers.

**2.** The acquirer (acquirers) of a bank's property and obligations shall be determined on the basis of a closed tender to be held by the Agency from among banks holding a licence for borrowing monetary assets of natural persons for depositing. The procedure for and term of holding a closed tender for selection of the acquirer (acquirers) of the bank's property and obligations shall be established by a regulatory act of the Bank of Russia with the Agency's approbation.

**3.** A notice of a closed tender to be held in compliance with this article shall be sent by the Agency to the persons invited to participate in the tender at least three days before holding it.

**4.** As the condition of a bank's admittance to participate in a closed tender for selection of the acquirer (acquirers) of the bank's property and obligations shall be deemed the bank's financial status sufficient for discharging the obligations to be received, as well as for adhering to the mandatory normative standards and mandatory reserves established by the Bank of Russia.

**5.** Information on the banks that have filed applications for participation in a closed tender shall be sent to the Bank of Russia. The Bank of Russia is entitled to forbid participation of a bank in the closed tender if the bank does not satisfy the requirements established by Item 4 of this article. The banks which are approved by the Bank of Russia when holding a tender shall be provided with data on the composition of the property and obligations to be transferred, on their value and evaluation methods.

**6.** As the winner of a closed tender for selecting the acquirer (acquirers) of a bank's property and obligations shall be recognized the person (persons) that satisfy the terms of holding the closed tender and offering the lowest limit value of the cost of the property that may be returned to the bank by way of reverse transfer or, when the proposals of participants in the closed tender from the point of this criterion are equal, the person that has proposed the best conditions from the point of other criteria.

**7.** In the event of declaring a tender frustrated on the grounds provided for by Item 5 of Article 447 of the Civil Code of the Russian Federation, a bank in compliance with Article 189.54 of this Federal Law shall make an agreement on transfer of the property and obligations with the only participant of such tender whose bid for the limit value of the cost of property that may be transferred to the bank by way of reverse transfer amounts to at most 20 per cent.

Article 189.54. An Agreement on Transfer of Property and Obligations to a Bank

**1.** After the Bank of Russia issues orders to withdraw licences for conducting banking operations, and to appoint the provisional administration for managing a bank the acquirer of the bank's property and obligations and the provisional administration for managing the bank acting on behalf of the bank shall make an agreement (agreements) on transfer of the bank's property and obligations, this specifying the terms of such transfer. The cited agreement (agreements) may specify the results of transfer to the acquirer of property having improper quality, including its subsequent reverse transfer.

**2.** Property having improper quality means for the purposes of this paragraph the property in respect of which after transferring a bank's property and obligations circumstances are detected that influence the quality of the transferred assets that existed at the time of making a transfer agreement but were not known to the parties to the transfer agreement.

220

*[Unofficial translation from Russian]*

**3.** An agreement on transfer to the acquirer of a bank's property and obligations shall be made in writing and is not subject to state registration. Immovable property shall be transferred on the basis of separate agreements to be made in compliance with the agreement on property transfer to the acquirer. The state registration of the transfer of rights to immovable property items shall be effected on the basis of appropriate agreements, as well as in compliance with the legislation of the Russian Federation on the state registration of rights to immovable property.

**4.** A bank's property and obligations shall be deemed transferred to the acquirer as from the date of the signing of the transfer deed by both parties thereto.

Immovable property shall be deemed transferred as from the date of appropriate registration of the transfer of the right of ownership in compliance with the legislation of the Russian Federation on the state registration of rights to immovable property.

From that date the risk of accidental destruction or accidental damage of the property received by the acquirer shall pass thereto.

**5.** After the transfer of a bank's property and obligations to the acquirer the latter is bound to discharge the received obligations and/or the duties as to making mandatory payments under the terms that existed on the date of withdrawal of the bank's licence for conducting banking operations. for this, within the time period from the date of withdrawal of the bank's licence for conducting banking operations and up to the date of transfer of its obligations to the acquirer punitive sanctions for failure to discharge such obligations provided for by an agreement or law shall not be imposed.

**6.** Concurrently with signing the transfer deed provided for by Item 4 of this article, the provisional administration for managing a bank shall send for publication in the periodical publication determined in the procedure established by Item 1 of Article 189.74 of this Federal Law information on the transfer to the acquirer of the bank's obligations. The cited information shall contain the following:

1) denomination of the bank transferring property (assets) and obligations or a part thereof, its address, data identifying the cited bank (the state registration number of an entry on the state registration of a legal entity, taxpayer identification number);

2) denomination of the bank being the acquirer which the bank's property (assets) and obligations or a part thereof are to be transferred to, its address and data identifying the cited bank (the state registration number of an entry on the state registration of a legal entity, taxpayer identification number);

3) criteria for referring obligations as those to be transferred to the acquirer;

4) procedure for creditors to receive information on whether the bank's obligations with respect to them are to be transferred to the acquirer.

**7.** As from the date of publishing the data cited in Item 6 of this article, the provisional administration for managing a bank, bankruptcy receiver or liquidator (in the event of adoption by a commercial court of the decision of declaring the bank bankrupt and on initiation of bankruptcy proceedings (of endorsement of the bankruptcy receiver) or the decision on appointing a liquidator) are bound to provide information at the request of a bank's creditor on the composition of the bank's property to be transferred and obligations thereof, as well as on the price of the property's transfer.

**Article 189.55.** The Property's Reverse Transfer

**1.** An agreement on transfer of a bank's property and obligations may provide as an effect of the probable transfer to the acquirer of improper quality property the subsequent return by the bank of such property with compensation for its cost to be made to the acquirer (hereinafter referred to as reverse transfer).

The reverse transfer may be effected at the latest in a year from the date of signing an appropriate agreement on transfer of the bank's property and obligations. Such agreement shall fix the limit value of the cost of the property that may be returned by way of reverse transfer.

**2.** The Agency is entitled to discharge the obligation thereof as to compensation to the acquirer of the cost of the property to be returned by way of reverse transfer instead of a bank.

**3.** The Agency after discharging the obligation instead of the bank in respect of compensation to the acquirer of the cost of the property returned by way of reserve transfer shall acquire the right of claim against the bank within the limits of the amount paid to the acquirer. In the course of bankruptcy proceedings in respect of a bank (of a bank's liquidation) the cited claim shall be satisfied within the composition of first-priority creditors.

**4.** The Agency is entitled to grant the acquirer a loan for a term of at most five years. In so doing, the balance of the acquirer's debt in respect of the loan and the amount of compensation for the cost of the property returned by way of reverse transfer that can be paid by the Agency to the acquirer may not exceed on the aggregate the amount of all the bank's obligations transferred to the acquirer while the amount of such compensation may not exceed the sum of the loan.

*[Unofficial translation from Russian]*

As agreed by the Agency and the acquirer, the Agency's obligations as to the compensation to the acquirer for the cost of the property to be returned by way of reverse transfer shall be terminated by setting off the Agency's counterclaims (of a part thereof) against the acquirer under a loan agreement.

**Article 189.56.** Financing the Activities Involved in Preventing Bankruptcy and Settling Obligations of a Bank

**1.** In the instances and in the procedure provided for by this Federal Law the activities involved in preventing the bankruptcy of a bank and settling the bank's obligations provided for by this Federal Law shall be exercised at the expense of the assets of investors or the Bank of Russia, and they may be exercised at the expense of the federal budget funds allocated as a property contribution of the Russian Federation to the Agency's property.

**2.** For the purpose of exercising the functions involved in participation in prevention of a bank's bankruptcy and settling a bank's obligations the Agency shall open a correspondent account with the Bank of Russia.

**3.** For exercising the activities involved in preventing a bank's bankruptcy or settlement of its obligations the Agency is entitled to file an application with the Bank of Russia for granting a credit. The decision on granting a credit to the Agency for exercising the activities involved in preventing a bank's bankruptcy or settlement of its obligations shall be adopted by the Board of Directors of the Bank of Russia. A credit of the Bank of Russia may be granted to the Agency without security for a term up to five years. The Bank of Russia may render a decision on extending the validity term of a credit agreement in compliance with which the Agency has been granted a credit without security by a term up to five years.

**4.** The Agency is entitled to finance the activities aimed at preventing bankruptcy of a bank or at settling obligations thereof from the fund of mandatory deposit insurance. The limit amount of assets required for the cited financing shall be endorsed in the procedure established by the Agency's board of directors. If not otherwise provided for by this Federal Law, the activities aimed at preventing a banks' bankruptcy or settling obligations thereof from assets of the fund for mandatory deposit insurance may be only financed if the following conditions are concurrently met:

1) if financing of the cited activities leads to reduction of outlays of the fund for mandatory deposit insurance in case of the bank's liquidation;

2) if financing of the cited activities does not affect the stability of the fund for mandatory deposits' insurance.

**5.** Methods for estimation of the Agency's assets, including assets of the fund for mandatory deposit insurance, that can be used for preventing a bank's bankruptcy, settling obligations thereof or for bankruptcy (liquidation) of such bank, for the purpose of adoption by the Agency of the decision on participation in preventing the bank's bankruptcy, shall be endorsed by the Agency's board of directors.

**6.** Federal budget assets shall be allocated for exercising the activities involved in preventing a banks' bankruptcy or settlement of its obligations with the Agency's participation by way of making a property contribution of the Russian Federation to the Agency's property, this not being the fund for mandatory deposit insurance, for forming the sources of outlays on exercising the activities provided for by federal laws. The procedure for making the cited property contribution shall be defined by the federal law on the federal budget for an appropriate financial year and planning period.

**7.** The assets allocated by the Agency for the purpose of preventing a bank's bankruptcy to the persons cited in Article 189.49 of this Federal Law or to the acquirer of property for the purpose of settling obligations shall be returned, and other obligations with respect to the Agency shall be discharged, at the time fixed by appropriate agreements, in particular within the time periods exceeding those for implementation of a plan of the Agency's participation in taking measures aimed preventing the bank's bankruptcy or a plan for the Agency's participation in settling the bank's obligations.

**8.** For the purpose of exercising the activities involved in preventing banks' bankruptcy and settlement of their obligations, the Agency is entitled to deposit with the Bank of Russia the assets on account of which the cited activities are financed in compliance with this Federal Law.

**9.** The measures aimed at maintaining and selling the property acquired while taking measures aimed at preventing a bank's bankruptcy shall be financed by the Agency in the procedure established by the Agency's board of directors from the federal budget funds allocated as a property contribution of the Russian Federation to the Agency's property in compliance with this Federal Law, as well as from assets of the fund for mandatory deposit insurance, on condition of observing the terms provided for by Item 4 of this article.

**Article 189.57.** The Procedure for the Agency Selling the Stocks (Shares in the Authorized Capital) Acquired in the Course of Preventing Banks' Bankruptcy

**1.** If the Agency has acquired stocks or has made a contribution to the authorised capital of a bank, it is bound in case of receiving an offer of a person which is interested in purchasing the stocks (shares) acquired by the Agency to put them up for sale through public sales.

**2.** The Agency and investors are entitled to provide in the agreement (contract) to be made by them the obligation of an

investor (investors) to acquire in future all the stocks (shares) of an appropriate bank possessed by the Agency (hereinafter referred to as the obligation of acquisition). In so doing, the selling price of the cited stocks (shares) shall not be below that fixed by Item 8 of this article.

**3.** If within the time period fixed by an obligation of acquisition the Agency did no receive the offer provided for by Item 1 of this article, the Agency's administration shall render the decision on holding public sales in compliance with this article. In so doing, the selling price of stocks (shares) of an appropriate bank may not be below the price cited in the appropriate obligation of acquisition.

**4.** Where it is provided for by Item 3 of this article, an investor (investors) that has assumed the obligation of acquisition is bound to take part in public sales in the procedure established by the Agency for holding such sales.

**5.** Where there is the offer provided for by Item 1 of this article on the maturity date fixed by an obligation of acquisition, it may be accepted by the Agency in case of declaring public sales frustrated, except as provided for by Item 6 of this article or in the event of declaring the results of public sales held invalid.

**6.** In the event of declaring sales frustrated on the ground provided for by Item 5 of Article 447 of the Civil Code of the Russian Federation, the Agency shall make a contract of purchase and sale of a bank's stocks (shares) (or of a part thereof) with the only participant of such sales.

**7.** The bank's stockholders (participants) possessing more than one per cent of its stocks (shares) within three months preceding the date of sending by the Bank of Russia to the Agency the proposal as to its participation in taking measures aimed at preventing the bank's bankruptcy may not act as acquirers of a bank's stocks (shares).

**8.** The price of a bank's stocks (shares) sold by the Agency in compliance with this article shall not be less that one of the following values:

1) the value of the share of the bank's net wealth (of the assets which are not charged with obligations) as of the last accounting date before adoption by the Agency of the decision on holding public sales in proportion to the share of the Agency's participation in the bank's authorized capital;

2) the amount of assets allocated by the Agency to pay for the bank's stocks (shares).

**Article 189.58.** The Procedure for Trying a Case on Bankruptcy of a Credit Organisation

A case on bankruptcy of a credit organisation shall be tried by a commercial court according to the rules provided for by the Arbitration Procedural Code of the Russian Federation and this Federal Law.

**Article 189.59.** The Persons Participating in a Case on Bankruptcy of a Credit Organisation

**1.** As the persons participating in a case on bankruptcy of a credit organisation, along with the other persons cited in Item 1 of Article 34 of this Federal Law, shall be deemed:

1) the bankruptcy receiver;

2) the Bank of Russia as the body of banking regulation and banking supervision;

3) other natural persons or legal entities engaged for participation in a case on bankruptcy when the matters provided for by Subitems 2 and 3 of Item 1 of Article 189.67 of this Federal Law are being considered.

**2.** Persons which are not cited in Item 1 of this article may not enjoy the rights of the persons participating in a bankruptcy case.

**Article 189.60.** Persons Participating in Arbitration Proceedings in Respect of a Bankruptcy Case

In arbitration proceedings in respect of bankruptcy case shall participate:

1) a representative of a credit organisation's employees;

2) a representative of a credit organisation's founders (stockholders);

3) a representative of a creditors' meeting or a representative of the committee of creditors of a credit organisation;

4) other persons where it is provided for by the Arbitration Procedural Code of the Russian Federation and by this Federal Law.

**Article 189.61.** Applying to a Commercial Court

**1.** The right to file an application for declaring a credit organisation bankrupt with a commercial court shall be enjoyed by:

1) the credit organisation;

223

2) bankruptcy creditors, including the natural persons enjoying the right of claim against the credit organisation under a bank deposit agreement and/or bank account agreement;

3) authorized bodies;

4) the Bank of Russia, including when it is not a creditor of the credit organisation.

5) the debtor's employees or former employees having claims for paying severance benefits and/or labour wages.

**2.** The right to file with a commercial court an application for declaring a credit organisation bankrupt shall originate for the bankruptcy creditor, the debtor's employee or former employee or authorized body in respect of monetary obligations after the withdrawal of the credit organisation's licence for making bank operations, if their claims are proved by an effective decision or other act of a general jurisdiction court, commercial court, the ruling on issuance of a writ of execution for compulsory execution of a decision of an arbitrage regardless of forwarding (presenting for execution) of an execution document in the procedure established by the legislation of the Russian Federation on execution proceedings.

**3.** An authorized body for mandatory payments shall start enjoying the right to file an application for declaring a credit organisation bankrupt with a commercial court after withdrawal of a credit organisation's licence for conducting banking operations, if a claim for making mandatory payments is proved by a decision of a tax authority or a decision of a customs authority on recovering a debt on account of the credit organisation's property, irrespective of the expiry of the time period provided for by Article 7 of this Federal Law.

**4.** If by the date of withdrawal of a credit organisation's licence for conducting banking operations it has the signs of insolvency (bankruptcy) provided for by Article 189.8 of this Federal Law, the Bank of Russia within five days as from the date of publishing the decision on withdrawal of the credit organisation's licence for conducting banking operations in the "Vestnik Banka Rossii" is bound to file an application for declaring the credit organisation bankrupt with a commercial court.

**5.** In the event of the provisional administration for managing a credit organisation appointed after the withdrawal of the credit organisation's licence for conducting banking operations detecting signs of insolvency (bankruptcy) of the credit organisation, the Bank of Russia, within five working days as from the date of receiving a petition of the provisional administration for managing the credit organisation, shall send to a commercial court an application for declaring the credit organisation bankrupt.

**6.** When the Bank of Russia files an application for declaring a credit organisation bankrupt with a commercial court , the proof of presence of the signs of insolvency (bankruptcy) provided for by this Federal Law shall be taken into consideration. For this the provisions stipulated by Item 3 of Article 6 and Item 2 of Article 7 of this Federal Law shall not apply.

**7.** The persons cited in Subitems 1 - 3, 5 of Item 1 of this article are entitled to send to the Bank of Russia an application for withdrawal of the credit organisation's licence for conducting banking operations in the event of occurrence of the conditions cited in Article 189.8 of this Federal Law, attaching thereto the documents proving that a credit organisation has pecuniary obligations, debts on payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract, and/or debts on mandatory payments in the amount to be defined as of the date of filing the cited application in compliance with the requirements of Item 2 of Article 4 of this Federal Law.

**8.** When the Bank of Russia considers an application of the bankruptcy receiver, an application of the debtor's employee or former employee or an application of an authorised body for withdrawal of the credit organisation's licence for conducting banking operations, the claims proved by an effective decision or other act of a general jurisdiction court, commercial court or a ruling on issuance of a writ of execution for enforcement of a decision of a tribunal of arbitrators shall be taken into account.

**9.** When the Bank of Russia considers an application of an authorised body for withdrawal of a credit organisation's licence for conducting banking operations, the claims in respect of making mandatory payments shall be taken into account, if they are proved by a decision of a tax authority or a decision of a customs authority on recovering debts on account of the credit organisation's property.

**10.** The bankruptcy creditor, of the debtor's employee or former employee or authorized body shall start enjoying the right to file an appropriate application with the Bank of Russia in respect of pecuniary obligations upon the expiry of 14 days as from the date of sending (presenting for execution) an execution document in the procedure provided for by the legislation of the Russian Federation on execution proceedings.

**11.** An authorised body shall start enjoying the right to file an appropriate application with the Bank of Russia in respect of mandatory payments upon the expiry of 14 days as from the date of adoption of the decision cited in Item 9 of this article.

**12.** The persons cited in Subitems 1 - 3, 5 of Item 1 of this article and which have filed an application for withdrawal of a credit organisation's licence for conducting banking operations with the Bank of Russia, if an answer of the Bank of Russia is not received upon the expiry of two months as from the date of sending such application or from the date of receiving a refusal

*[Unofficial translation from Russian]*

to withdraw the cited licence of the credit organisation, are entitled to file an application for declaring the credit organisation bankrupt with a commercial court.

**Article 189.62.** An Application for Declaring a Credit Organisation Bankrupt

**1.** An application for declaring a credit organisation bankrupt shall satisfy the requirements provided for by this Federal Law for a debtor's application, subject to the specifics established by this paragraph.

**2.** An application of a bankruptcy creditor, of the debtor's employee or former employee or authorized body for declaring a credit organisation bankrupt shall satisfy the requirements provided for by Articles 39 and 41 of this Federal Law for an application of the bankruptcy creditor, of the debtor's employee or former employee, and authorised body, respectively, subject to the specifics established by this paragraph.

**3.** A copy of an application of a credit organisation for declaring it bankrupt and copies of the documents attached thereto shall be sent by an applicant to the Bank of Russia and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency by registered mail with confirmation as delivery or by way of handing to the addressee directly at the location thereof.

**4.** A report on a commercial court accepting a credit organisation's application for declaring it bankrupt is subject to publication by the credit organisation in a periodical publication at the location of the credit organisation and branches thereof.

**5.** A copy of an application of a bankruptcy creditor, a copy of an application of the debtor's employee or former employee, a copy of an application of an authorized body for declaring a credit organisation bankrupt and copies of the documents attached to such applications shall be sent by the cited persons to the Bank of Russia and the credit organisation and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency by registered mail with confirmation as delivery or by way of handing in to the addressee directly at the location thereof.

**6.** The following shall be cited in an application of the Bank of Russia to be filed with a commercial court for declaring a credit organisation bankrupt:

1) its denomination and location;

2) denomination of the commercial court which the application is to be filed with;

3) denomination of the credit organisation and its location;

4) number and date of the order of the Bank of Russia on withdrawal of the credit organisation's licence for conducting banking operations;

5) circumstances proving that the credit organisation has the signs of insolvency (bankruptcy) established by this Federal Law, as well the evidence proving these circumstances;

6) list of the attached documents.

**7.** An application of the Bank of Russia for declaring a credit organisation bankrupt may cite other data, if they are necessary for correct and timely consideration of a bankruptcy case, and may contain petitions, including a petition calling for evidence.

**8.** The Bank of Russia is bound to send to a credit organisation and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency a copy of an application for declaring a credit organisation bankrupt and copies of the documents attached thereto by registered mail with confirmation as delivery.

**Article 189.63.** The Documents to Be Attached to an Application for Declaring a Credit Organisation Bankrupt

**1.** An application of a credit organisation, of a bankruptcy creditor, of the debtor's employee or former employee or authorized body for declaring a credit organisation bankrupt shall have attached thereto the following, along with the documents provided for by the Arbitration Procedural Code of the Russian Federation and this Federal Law:

1) a notice of delivering to the Bank of Russia (to the Agency, if necessary) a copy of an application for declaring the credit organisation bankrupt and copies of the documents attached thereto;

2) a notice of delivering to the Bank of Russia in the procedure established by Items 7-11 of Article 189.61 of this Federal Law an application for withdrawal of the credit organisation's licence for conducting banking operations when the signs of insolvency (bankruptcy) arise and of the documents attached to it.

**2.** Except as provided for by Article 189.61 of this Federal Law, an application of a credit organisation for declaring it bankrupt, an application of a bankruptcy creditor, of the debtor's employee, former employee or authorized body for declaring the credit organisation bankrupt shall have attached thereto, along with the documents provided for by Item 1 of this article, a copy of the order of the Bank of Russia to withdraw the credit organisation's licence for conducting banking operations published in the "Vestnik Banka Rossii" or a copy of the cited order attested by the Bank of Russia.

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 105 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 227
of 317
*[Unofficial translation from Russian]*

**3.** An application of the Bank of Russia for declaring a credit organisation bankrupt shall have the following attached thereto:

1) a copy of the order of the Bank of Russia to withdraw the credit organisation's licence for conducting banking operations;

2) copies of the credit organisation's constituent documents;

3) copies of the financial and accounting reports/statements of credit organisation as of the last accounting date which are subject to submission to the Bank of Russia;

4) copies of the licences for conducting banking operations issued to the credit organisation;

5) a statement of the credit organisation's correspondent account opened with the Bank of Russia;

6) a statement of the credit organisation's mandatory reservation account opened with the Bank of Russia;

7) documents proving that the credit organisation has the signs of insolvency (bankruptcy), including the payment documents of the credit organisation's clients that have not been executed by it in the established procedure (if such payment documents are available);

8) a list of the payment documents of the credit organisation's clients that have not been executed by it in the established procedure;

9) a reference note about the correspondent accounts opened by the credit organisation;

10) a notice of delivering copies of an application for declaring the credit organisation bankrupt and copies of the documents attached thereto to the persons cited in Item 8 of Article 189.62 of this Federal Law;

11) a power of attorney or other documents proving the authority to sign an application for declaring the credit organisation bankrupt.

**Article 189.64.** The Acceptance of an Application for Declaring a Credit Organisation Bankrupt and Initiation of Bankruptcy Proceedings

**1.** An application for declaring a credit organisation bankrupt may be accepted by a commercial court, while bankruptcy proceedings may be only initiated after withdrawal of the credit organisation's licence for conducting banking operations on the basis of applications of the persons cited in Item 1 of Article 189.61 of this Federal Law, if the amount of claims against the credit organisation in the aggregate amounts to at least a thousand fold the minimum labour wage established by federal law and if these claims are not satisfied within 14 days as from their maturity date or if after the withdrawal of the credit organisation's licence for conducting banking operations the cost of its property (assets) is insufficient for discharging the credit organisation's obligations with respect to its creditors and for making mandatory payments. The cost of the credit organisation's property (assets) and obligations is subject to estimation on the basis of the methods established by regulatory acts of the Bank of Russia.

**2.** An commercial court shall issue the ruling on accepting an application for declaring a credit organisation bankrupt, this initiating bankruptcy proceedings.

**3.** The ruling of a commercial court on accepting an application for declaring a credit organisation bankrupt shall specify the date of trying the bankruptcy case, and it may contain an indication as to the commercial court's instructions to the Bank of Russia to send a statement about the presence of grounds for declaring the credit organisation bankrupt, and as to other persons participating in the bankruptcy case taking other actions aimed at ensuring the correct and timely consideration of the bankruptcy case and the time of taking these actions.

**4.** Copies of the ruling of a commercial court on accepting an application for declaring a credit organisation bankrupt at the latest on the following day after its rendering shall be sent to the applicant, the credit organisation, the Bank of Russia and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency.

**5.** Where bankruptcy proceedings are initiated on the basis of an application of the persons cited in Subitems 1 - 3, 5 of Item 1 of Article 189.61 of this Federal Law, if an order of the Bank of Russia to withdraw the credit organisation's licence for conducting banking operations was issued on grounds which are not connected with the presence of the signs of the credit organisation's insolvency (bankruptcy), the Bank of Russia at the latest in 10 days as from the date of receiving a copy of the ruling of the commercial court on acceptance of an application for declaring the credit organisation bankrupt and on initiating bankruptcy proceedings shall send to the commercial court an opinion about the presence or absence of grounds for declaring the credit organisation bankrupt.

**Article 189.65.** Shelving an Application for Declaring a Credit Organisation Bankrupt

**1.** An commercial court in case of establishing while considering the issue of acceptance of an application for declaring

a credit organisation bankrupt that it is filed under the circumstances cited in Item 6 of Article 189.61 of this Federal Law shall issue a ruling on shelving the cited application.

**2.** In the ruling on shelving an application for declaring a credit organisation bankrupt a commercial court shall oblige the Bank of Russia to present a statement of the Bank of Russia that it is inexpedient to withdraw the credit organisation's licence for conducting banking operations or a copy of the order of the Bank of Russia to withdraw the cited licence.

The Bank of Russia is bound to send the cited documents to a commercial court within a month as from the date of receiving the ruling of a commercial court on shelving the cited application.

**3.** A copy of the ruling on shelving an application for declaring a credit organisation bankrupt, at the latest on the following day after the date of its issuance, shall be sent to the applicant, the credit organisation and the Bank of Russia and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency.

**4.** In the event of the Bank of Russia filing a copy of the order of the Bank of Russia to withdraw the credit organisation's licence for making banking operations with a commercial court, an application for declaring the credit organisation bankrupt shall be deemed filed on the date when it first arrived at the commercial court and shall be taken over by the commercial court in the procedure provided for by Article 189.64 of this Federal Law.

**Article 189.66.** Returning an Application for Declaring a Credit Organisation Bankrupt

**1.** Along with the grounds for returning a statement of claim which are provided for by the Arbitration Procedural Code of the Russian Federation, as grounds for a commercial court returning an application for declaring a credit organisation bankrupt shall be deemed the following:

1) establishing non-compliance of the signs of insolvency (bankruptcy) of the credit organisation cited in such application with the requirements defined by Item 1 of Article 189.64 of this Federal Law;

2) violation by an applicant of the procedure for filing an application for withdrawal of the credit organisation's licence for making banking operations provided for by Items 7-11 of Article 189.61 of this Federal Law under the circumstances cited in Item 6 of Article 169.61 of this Federal Law;

3) filing an application for declaring the credit organisation bankrupt in respect of which a commercial court has initiated a bankruptcy case;

4) availability of an effective decision of a commercial court on declaring invalid the order of the Bank of Russia to withdraw the credit organisation's licence for conducting banking operations;

5) failure to satisfy the requirements established by Articles 189.62 and 189.63 of this Federal Law.

**2.** In the event of receiving the statement of the Bank of Russia as to the inexpediency of withdrawal of the credit organisation's licence for conducting banking operations, an application for declaring it bankrupt shall be returned to the applicant.

**3.** In the event of non-receipt of the statement of the Bank of Russia cited in Item 2 of this article within a month, a commercial court shall return the application for declaring a credit organisation bankrupt to the applicant. On such occasion, the person that has sent the Bank of Russia an application for withdrawal of the credit organisation's licence for conducting banking operations is entitled to claim compensation for the Bank of Russia in a commercial court for the losses caused by the failure of the Bank of Russia to render the decision on withdrawal of the cited credit organisation's licence or the decisions provided for by this Federal Law and referred to the scope of authority of the Bank of Russia on taking measures aimed at preventing bankruptcy of the credit organisation.

**4.** An commercial court shall issue a ruling on returning an application for declaring a credit organisation bankrupt. This ruling shall be sent to the applicant, to the credit organisation, the Bank of Russia and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency.

**5.** The ruling of a commercial court on returning an application for declaring a credit organisation bankrupt may be appealed against.

In the event of reversal of the cited ruling, the application shall be deemed filed on the date of such reversal.

**Article 189.67.** The Specifics of Bankruptcy Court Proceedings

**1.** When trying cases on bankruptcy of a credit organisation, the following issues shall be resolved:

1) on declaring the credit organisation bankrupt;

2) on calling to account where it is provided for by this Federal Law the persons exercising control over the credit organisation;

3) on declaring invalid and/or applying the effects of invalidity of the transactions made by the credit organisation.

**2.** On the basis of the results of considering the issue cited in Subitem 1 of Item 1 of this article a court shall issue a decision and on the basis of the results of considering the issues cited in Subitems 2 and 3 of Item 1 of this article it shall issue a ruling.

**3.** An application for resolving the issues provided for by Subitems 2 and 3 of Item 1 of this article shall be paid for in state duty at the rate provided for by the legislation of the Russian Federation on taxes and fees for payment for applications for issuance of a writ of execution for enforcement of decisions of a tribunal of arbitrators.

**4.** Bankruptcy cases, insofar as the solution of the issue provided for by Subitem 1 of Item 1 of this article is concerned, shall be tried by a commercial court within at most two months as from the date of acceptance by the commercial court of an application for declaring a credit organisation bankrupt, including the time period for preparation of a case for court proceedings and adoption of a decision on the cited issue.

**5.** When resolving the issue provided for by Subitem 1 of Item 1 of this article, the preliminary court session stipulated by the Arbitration Procedural Code of the Russian Federation shall not be held. The reasonableness of claims of the person filing an application for declaring a credit organisation bankrupt shall be verified at the same session of a commercial court where the issue of declaring the credit organisation bankrupt is being considered.

**6.** The decision on declaring a credit organisation bankrupt shall contain an indication in respect of the following:

1) initiation of bankruptcy proceedings;

2) recognition of an applicant's claim as well-founded and inclusion of this claim into a register of creditors' claims;

3) endorsement of the bankruptcy receiver;

4) rate of the monthly remuneration to be paid to the bankruptcy receiver within the time period from the starting date of bankruptcy proceedings up to the date when the rate of remuneration for the bankruptcy receiver is fixed by a meeting of creditors or by the creditors' committee. The decision on declaring a credit organisation bankrupt shall not cite the rate of the bankruptcy receiver's remuneration, if the authority of the bankruptcy receiver is exercised by the Agency by virtue of law.

**7.** The decision on declaring a credit organisation bankrupt shall cite, where it is provided for by Item 1 of Article 189.77 of this Federal Law, that the Agency is the bankruptcy receiver.

**8.** Judicial disputing of the order of the Bank of Russia in respect of the withdrawal of a credit organisation's licence for conducting banking operations shall not be an obstacle for acceptance by a commercial court of an application for declaring the credit organisation's bankrupt and shall not serve as grounds for suspending bankruptcy proceedings.

**9.** The decision of a commercial court on declaring invalid the order of the Bank of Russia in respect of the withdrawal of a credit organisation's licence for conducting banking operations that has entered into legal force after the acceptance by a commercial court of an application for declaring the credit organisation bankrupt shall not impede trying the bankruptcy case on its merits.

**10.** The decision of a commercial court on declaring invalid the order of the Bank of Russia in respect of the withdrawal of a credit organisation's licence for conducting banking operations that has entered into legal force after initiation of bankruptcy proceedings shall not serve as grounds for reversal of the decision on declaring the credit organisation bankrupt and for review of the cited decision in view of newly-discovered facts.

**11.** The commercial court that has adopted the decision on declaring a credit organisation bankrupt shall send this decision to the Bank of Russia, as well as to an authorised registration body, for it to make an entry in the unified state register of legal entities to the effect that the credit organisation is being liquidated.

**Article 189.68.** The Procedure for Approving the Bankruptcy Receiver

**1.** When filing an application for declaring a credit organisation bankrupt by the persons cited in Item 1 of Article 189.61 of this Federal Law, except for the Bank of Russia, such application shall not cite the candidacy of the qualified receiver, the denomination and address of the self-regulated organisation from among whose members the qualified receiver is endorsed.

When accepting an application for declaring a credit organisation bankrupt, a commercial court shall apply to the Bank of Russia which shall present to the commercial court the candidacy of the qualified receiver or the self-regulated organisation from among whose members a qualified receiver is to be endorsed within seven working days as from the date of receiving an application of the commercial court.

An application for declaring a credit organisation bankrupt to be filed with a commercial court by the Bank of Russia shall contain an indication of the candidacy of a qualified receiver, the denomination and address of the self-regulated organisation from among whose members a qualified receiver is to be endorsed.

228

**2.** If a credit organisation held a licence of the Bank of Russia for accepting monetary assets of natural persons for depositing, the Agency shall be the bankruptcy receiver.

**3.** In the event of failure to present a candidate for the bankruptcy receiver to a commercial court in the procedure established by this Federal Law for approval, the Bank of Russia shall present to the commercial court the Agency's candidate.

In the event of dismissal or removal of the bankruptcy receiver being a natural person from the office thereof, the authority of the bankruptcy receiver shall be imposed upon the Agency.

Where it is provided for by this item, a commercial court shall issue the judicial act on approving the Agency as the bankruptcy receiver.

**4.** The bankruptcy receiver shall start exercising its functions from the date of a commercial court rendering the decision on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings (approval of the bankruptcy receiver) and shall act up to the date of making an entry on the credit organisation's liquidation in the unified state register of legal entities.

**Article 189.69.** The Decision of a Commercial Court on the Refusal to Declare a Credit Organisation Bankrupt

**1.** The decision of a commercial court on the refusal to declare a credit organisation bankrupt shall be rendered in case of the following:

1) absence of the signs of insolvency (bankruptcy) provided for by Article 189.8 of this Federal Law;

2) establishing fictitious bankruptcy, if an application for declaring a credit organisation bankrupt is filed by the credit organisation being the debtor itself.

**2.** If a commercial court has established the absence of the signs of insolvency (bankruptcy) or the fact of fictitious bankruptcy has been established, a credit organisation is subject to compulsory liquidation in compliance with the Federal Law on Banks and Banking Activity.

**Article 189.70.** Grounds for Termination of Bankruptcy Proceedings

**1.** An commercial court shall terminate bankruptcy proceedings in the event of the following:

1) the declaring in the course of court proceedings that the applicant's claim serving as grounds for initiation of bankruptcy proceedings is ill-founded;

2) satisfying all claims of the creditors included into a register of creditors' claims in the procedure provided for by Item 14 of Article 189.93 of this Federal Law;

3) completion of bankruptcy proceedings.

**2.** Where it is provided for by Item 1 of this article, all the restrictions which are stipulated by this Federal Law and which are the effects of initiating bankruptcy proceedings, shall stop operating. The termination of bankruptcy proceedings shall not entail the termination of operation of the effects of withdrawal of the licence for conducting the banking operations provided for by the Federal Law on Banks and Banking Activity.

**3.** If not otherwise provided for by this paragraph, termination by a commercial court of bankruptcy proceedings shall serve as grounds for the Bank of Russia filing an application for compulsory liquidation of a credit organisation in the procedure established by the Federal Law on Banks and Banking Activity.

**Article 189.71.** The Procedure for Appealing against Decisions and Rulings of a Commercial Court

**1.** The decisions and rulings of a commercial court issued in the course of trying a bankruptcy case may be appealed against with a commercial court in the procedure provided for by this Federal Law.

**2.** When superior judicial instances consider appeals against a ruling of a commercial court, the commercial court that has issued the ruling shall only send to the superior commercial court those materials of the bankruptcy case which are directly related to the dispute of a credit organisation with the creditor or authorized body as to the establishment of the reasonableness, amount, composition and order of the claims' satisfaction.

**Article 189.72.** The Forwarding by a Commercial Court of Judicial Acts Concerning a Bankruptcy Case

**1.** If not otherwise established by this Federal Law, judicial acts concerning a bankruptcy case shall be sent by a commercial court to a credit organisation, the bankruptcy receiver, the Bank of Russia, the bodies authorised in compliance with this Federal Law, and to the person that has filed an application for declaring the credit organisation bankrupt with a commercial court, as well as to the persons that participated in arbitration proceedings.

**2.** The ruling settling differences between the bankruptcy receiver and creditors or creditors complaints as to the violation of their rights and legitimate interests shall be sent by a commercial court to a credit organisation, the bankruptcy commissioner, as well as to the persons that have filed a complaint or application for settling differences with a commercial court or participated in consideration by a commercial court of the cited complaints or applications.

**3.** If not otherwise established by this Federal Law, copies of judicial acts shall be sent by a commercial court to the persons cited in this article within a five-day term as from the date when they are adopted.

**4.** The persons participating in a bankruptcy case, as well as the persons participating in arbitration proceedings in respect of a bankruptcy case, are entitled to demand that the bankruptcy receiver let them familiarise themselves with any judicial acts concerning the bankruptcy case or provide them with copies of such acts at the expense of the cited persons.

**Article 189.73.** General Provisions on Bankruptcy Proceedings

**1.** The adoption by a commercial court of a decision on declaring a credit organisation bankrupt shall entail the initiation of bankruptcy proceedings.

**2.** Bankruptcy proceedings shall be introduced for one year. The term of bankruptcy proceedings may be extended on application of a person participating in bankruptcy proceedings by at most six months.

**3.** The ruling of a commercial court on extending the term of bankruptcy proceedings is subject to immediate execution and may be appealed against in the procedure established by Item 3 of Article 61 of this Federal Law.

**Article 189.74.** Publication of Data on Declaring a Credit Organisation Bankrupt and on Making Preliminary Payments to First-Priority Creditors

**1.** The bankruptcy receiver within five working days as from the date filing documents with the Bank of Russia proving the right to make operations on the correspondent account of the credit organisation declared bankrupt (or, when the authority of the bankruptcy receiver is exercised by the Agency, from the date of opening the master account of a credit organisation in the course of bankruptcy proceedings) shall include data on bankruptcy into the Unified Federal Register of Data on Bankruptcy and shall forward an announcement for publication in the official publication specified by the Government of the Russian Federation, and the "Vestnik Banka Rossii" on the decision of a commercial court on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings.

**2.** The following data on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings are subject to publication:

1) denomination and other requisite elements of the credit organisation declared bankrupt;

2) denomination of the commercial court that has taken over the bankruptcy case and case-file number;

3) date of adoption by a commercial court of the decision on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings;

4) date of closing the register of creditors' claims to be fixed in compliance with Item 2 of Article 189.85 of this Federal Law;

5) date of expiry of the time period for establishing claims of the first-priority creditors for the purpose of making preliminary payments to be fixed in compliance with Item 3 of Article 189.94 of this Federal Law;

6) credit organisation's address for creditors to make their claims against the credit organisation;

7) data on the bankruptcy receiver comprising the denomination and address of the bankruptcy receiver, for sending correspondence thereto.

**3.** The outlays connected with the inclusion into the Comprehensive Federal Register of Data on Bankruptcy and publication of the data on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings which are cited in this article shall be reimbursed from the credit organisation's assets.

**4.** If a credit organisation's property is insufficient for reimbursement of the outlays on the inclusion of data on bankruptcy into the Comprehensive Federal Register of Data on Bankruptcy and on their publication, these data shall be included into the cited register and published at the expense of the person that has filed an application for initiation of bankruptcy proceedings in respect of the credit organisation. If the Bank of Russia files an application for declaring a credit organisation bankrupt with a commercial court and the credit organisation does not have enough property to reimburse the outlays on publication of the data provided for by Item 2 of this article, they shall be published in the "Vestnik Banka Rossii" and included into the Unified Federal Register of data on bankruptcy on a free-of-charge basis.

**Article 189.75.** Disclosure of Information in the Course of Bankruptcy Proceedings

**1.** For the purpose of ensuring creditors' equal access to information in the course of bankruptcy proceedings the

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 110 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 232
of 317                    *[Unofficial translation from Russian]*

bankruptcy receiver shall include the appropriate data into the Unified Federal Register of Data on Bankruptcy in the procedure established by this article.

**2.** At the latest in 30 days as from the date of declaring a credit organisation bankrupt the bankruptcy receiver shall include the following into the Comprehensive Federal Register of Data on Bankruptcy:

1) data on the financial status of the credit organisation and on its property as of the date of opening bankruptcy proceedings;

2) balance sheet of the credit organisation as of the last accounting date with the profit-and-loss account;

3) data on the availability of spare monetary assets that may be allocated for satisfying creditors' claims in respect of pecuniary obligations, including preliminary payments to first-priority creditors.

**3.** The bankruptcy receiver shall include data into the Unified Federal Register of Data on Bankruptcy on the estimate of a credit organisation's current expenditure provided for by Article 189.84 of this Federal Law at the latest in three days from the date of its endorsement.

**4.** At the latest five working days before the start of making settlements with creditors of each priority, including settlements by way of preliminary payment to first-priority creditors, the bankruptcy receiver shall include information on the procedure for and time of making settlements with creditors into the Unified Federal Register of Data on Bankruptcy.

**5.** Concurrently with a report on the start of making settlements with first-priority creditors, the bankruptcy receiver shall include a report on the progress or on the results of an inventory of a credit organisation's property into the Unified Federal Register of Data on Bankruptcy citing the items whose cost exceeds one million roubles, as well as data on the structure and extent of the creditors' claims raised.

**6.** After the start of making settlements with first-priority creditors the bankruptcy receiver, at least once every three months, shall include the current information about the progress of bankruptcy proceedings into the Unified Federal Register of Data on Bankruptcy. The cited information shall include data on the following:

1) on newly detected property of the credit organisation;

2) on the work of the bankruptcy receiver involved in detecting the credit organisation's transactions having signs of invalidity in compliance with this Federal Law and in holding founders (stockholders), members of the board of directors (supervisory council) and top-managers of the credit organisation subsidiarily liable under obligations of the credit organisation in compliance with this Federal Law;

3) on the progress in the sale of the property of the credit organisation marking up information about the sale of items having a balance sheet value over one million roubles, citing the selling price of the property and purchasers thereof.

**7.** At least once every six months the bankruptcy receiver shall include the following information into the Unified Federal Register of Data on Bankruptcy:

1) on administration of the budget of current expenses of the credit organisation provided for by Article 189.84 of this Federal Law;

2) on the cost of unsold property of the credit organisation.

**8.** The data cited in Items 2-7 of this article, concurrently with their inclusion into the Comprehensive Federal Register of Data on Bankruptcy or at the time fixed for their inclusion, shall be sent by the bankruptcy receiver to the Bank of Russia.

**Article 189.76.** The Effects of Initiating Bankruptcy Proceedings

**1.** As from the date of adoption by a commercial court of the decisions on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings:

1) the effects of withdrawal of the credit organisation's licence for conducting banking operations provided for by Article 20 of the Federal Law on Banks and Banking Activity shall continue to be effective, in particular in the event of entry into legal force after initiation of bankruptcy proceedings of the decision of a commercial court on declaring invalid the order of the Bank of Russia on the withdrawal of such credit organisation's licence;

2) data on the financial status of the credit organisation shall not pertain to those recognized as confidential or constituting a commercial secret;

3) conducting the transactions, execution of judicial acts, acts of other bodies and officials which are issued in compliance with the civil legislation, criminal legislation, procedural legislation and the legislation of the Russian Federation on taxes and fees, are connected with alienation of the credit organisation's property or entail the transfer of its property to third persons for ownership or use shall be only allowed in the procedure established by Articles 189.73-189.101 of this Federal Law.

*[Unofficial translation from Russian]*

4) all the creditors' claims in respect of pecuniary obligations, making mandatory payments and other property claims against the credit organisation, except for a claim declaring the right of ownership, for obtaining on demand property unlawfully possessed by someone else, as well as the claims under current obligations provided for by Article 189.84 of this Federal Law, may only be raised in a bankruptcy case in the procedure established by Articles 189.73-189.101 of this Federal Law;

5) the execution of executive documents on levying execution against the credit organisation's property shall be terminated, except for execution of executive documents on recovery of debts under current obligations of the credit organisation. The documents under which execution has been terminated in compliance with this paragraph are subject to transfer by court bailiffs, as well as by the bodies and organisations executing judicial acts, acts of other bodies and officials, to the bankruptcy receiver in the procedure established by federal law;

6) the encumbrances previously imposed on the property of the credit organisation and other restrictions on the disposal of the credit organisation's property shall be removed. As grounds for detachment of the credit organisation's property shall be deemed a decision of a commercial court on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings. New encumbrances of the property of the credit organisation and imposition of other restrictions as to the disposal of its property are not allowed;

7) the credit organisation's obligations, in particular in respect of execution of judicial acts, acts of other bodies and officials that have been issued in compliance with the civil legislation, criminal legislation, procedural legislation and the legislation of the Russian Federation on taxes and fees shall be discharged in the instances and in the procedure established by Articles 189.73-189.101 of this Federal Law;

8) judicial acts, acts of other bodies and officials about levying execution against the monetary assets which are kept on bank accounts, in clients' deposits made with the credit organisation, on arresting and/or imposing other restrictions as to the disposal of the cited assets shall be executed in the procedure established by Article 189.96 of this Federal Law.

**2.** As from the date of adoption by a commercial court of the decision on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings, the authority of the head of the credit organisation and other managerial bodies thereof shall be terminated, except for the authority of managerial bodies thereof in respect of adoption of the decision on making agreements on the terms of allocation of monetary assets by third persons for discharging the credit organisation's obligations.

**Article 189.77.** The Bankruptcy Receiver

**1.** As the bankruptcy receiver in case of bankruptcy of credit organisations holding a licence of the Bank of Russia for accepting monetary assets of natural persons for depositing shall be the Agency by virtue of law.

**2.** As the bankruptcy receiver in case of bankruptcy of credit organisations that do not hold a licence of the Bank of Russia for accepting monetary assets of natural persons for depositing shall be approved qualified receivers satisfying the requirements established by this Federal Law and accredited with the Bank of Russia as bankruptcy receivers in cases of bankruptcy of credit organisations (hereinafter referred to as the bankruptcy receiver accredited with the Bank of Russia).

**3.** Where it is provided for by Item 3 of Article 189.68 of this Federal Law, as well as by Item 2 of Article 189.105 of this Federal Law, the functions of the bankruptcy receiver in case of bankruptcy of credit organisations that do not hold a licence of the Bank of Russia for accepting individuals' monetary assets for depositing shall be exercised by the Agency.

No remuneration for exercising the authority of the bankruptcy receiver shall be paid to the Agency.

**4.** As the mandatory conditions of accreditation with the Bank of Russia of qualified receivers as bankruptcy receivers in case of bankruptcy of credit organisations shall be deemed the following:

1) compliance with the requirements for qualified receivers established by this Federal Law;

2) absence within the three years preceding accreditation of any violations of the legislation of the Russian Federation on insolvency (bankruptcy) that have led to major impairment of creditors' rights, unfounded spending of the bankruptcy estate of a credit organisation and disproportionate satisfaction of creditors' claims, as well as absence of instances of removal from office of the bankruptcy receiver connected with failure to discharge or improper discharge of such duties;

3) passing training under the programme endorsed by the Bank of Russia.

**5.** The qualified receiver shall be accredited as a bankruptcy receiver for bankruptcy of credit organisations with the Bank of Russia on the basis of an application of the qualified receiver within 30 days as from the date of arrival. The cited application shall have attached thereto the documents proving satisfaction by the applicant of the requirements for accreditation established by this paragraph.

**6.** An application for accreditation of the qualified receiver as the bankruptcy receiver for bankruptcy of credit organisations may be filed with the Bank of Russia by a self-regulating organisation of qualified receivers.

The procedure for consideration of applications for accrediting qualified receivers as bankruptcy receivers for

bankruptcy of credit organisations, for accreditation, cancellation of accreditation and the refusal to prolong accreditation shall be defined by regulatory acts of the Bank of Russia.

**7.** The Bank of Russia, with approbation of the federal executive power body authorized by the Government of the Russian Federation, may establish additional requirements for the terms of accreditation of qualified receivers as bankruptcy receivers in case of bankruptcy of credit organisations.

**8.** The validity term of accreditation of a qualified receiver as a bankruptcy receiver for bankruptcy of credit organisations shall be a year. The validity term of accreditation shall be prolonged by the Bank of Russia on the basis of applications of qualified receivers filed with the Bank of Russia 30 days before the expiry of the accreditation's term of validity. The Bank of Russia shall issue a qualified receiver accredited as the bankruptcy receiver for bankruptcy of credit organisations with an accreditation certificate.

**9.** The losses caused by the bankruptcy receiver accredited with the Bank of Russia as a result of failure to discharge or improper discharge of the duties thereof to the persons participating in a bankruptcy case shall be reimbursed by the bankruptcy receiver accredited with the Bank of Russia and from insurance of the liability thereof, should such losses be caused.

**10.** The bankruptcy receiver accredited with the Bank of Russia within 10 days as from the date of approval thereof as the bankruptcy receiver in a case on bankruptcy of a credit organisation, shall insure the liability thereof in the event of causing losses to the persons participating in the bankruptcy case in an amount depending on the assessed value of the credit organisation's assets as of the last accounting date estimated by the provisional administration for managing the credit organisation on the basis of the methods established by regulatory acts of the Bank of Russia, namely:

1) three per cent of the value of assets exceeding 100 million roubles when the value of assets is from 100 million roubles to 300 million roubles;

2) six million roubles plus two per cent of the assets exceeding 300 million roubles when the value of assets is from 300 million roubles to one billion roubles;

3) 20 million roubles plus one per cent of the value of assets exceeding one billion roubles when the value of assets exceeds one billion roubles.

**11.** A report on proper insurance of the liability of the bankruptcy receiver accredited with the Bank of Russia shall be sent by the receiver within the cited time period to a commercial court and the Bank of Russia.

**12.** In the event of approving the Agency as the bankruptcy receiver in the procedure provided for by this paragraph, the requirements for insuring liability in the event of causing losses to the persons participating in a bankruptcy case shall not extend to the Agency.

**13.** The Agency shall exercise the authority of the bankruptcy receiver through a representative thereof acting on the basis of a power of attorney which is appointed by it from among employees thereof.

**14.** The Agency is bound to send a report to a commercial court and to the Bank of Russia on appointing a representative in a bankruptcy case within five days as from the date of a commercial court rendering the decision on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings or of issuance of the judicial act approving the Agency as the bankruptcy receiver, where it is provided for by Item 3 of Article 189.68 and Item 2 of Article 189.105 of this Federal Law.

**15.** In the event of occurrence of the circumstances entailing the impossibility of the Agency's representative exercising its authority, in particular as a result of relieving him of the duties of a representative of the bankruptcy receiver in the procedure established by Item 4 of Article 189.81 of this Federal Law, the Agency is bound within five working days as from the date of occurrence of the cited circumstances to send to a commercial court and the Bank of Russia a report on appointing a new representative of the bankruptcy receiver.

**16.** The Bank of Russia is entitled to cancel accreditation or to deny extension of the accreditation period of a bankruptcy receiver accredited with the Bank of Russia where there is one of the following grounds:

1) taking the bankruptcy receiver by a commercial court off the duties of the bankruptcy receiver;

2) failure to satisfy the accreditation terms;

3) violation by the bankruptcy receiver of the legislation of the Russian Federation on insolvency (bankruptcy) that has led to the major impairment of creditors' rights, unfounded spending of the bankruptcy estate of the credit organisation and disproportionate satisfaction of creditors' claims.

**17.** In the event of cancellation by the Bank of Russia of accreditation of the bankruptcy receiver accredited with the Bank of Russia, he shall be relieved by a commercial court of his duties on the basis of an application of the Bank of Russia.

**18.** The decision of the Bank of Russia to deny accreditation, to cancel accreditation or to deny prolongation of the

*[Unofficial translation from Russian]*

accreditation term may be appealed against with a commercial court.

**Article 189.78.** The Authority of the Bankruptcy Receiver

**1.** The bankruptcy receiver shall exercise the authority of the head of a credit organisation and of other managerial bodies of a credit organisation within the limits, in the procedure and under the terms which are established by this paragraph.

**2.** The bankruptcy receiver is bound to act fairly and reasonably subject to the rights and legitimate interests of creditors, a credit organisation, society and the state.

**3.** The bankruptcy receiver is bound:

1) to accept under control thereof the credit organisation's property and to hold an inventory thereof;

2) to notify the credit organisation's employees of forthcoming dismissal at the latest in a month from the date of starting bankruptcy proceedings;

3) to take measures aimed at ensuring the safekeeping of the credit organisation's property;

4) to raise against third persons that have debts with respect to the credit organisation claims for their recovery in the procedure established by this paragraph;

5) to establish creditors' claims in the procedure provided for by Articles 189.85 and 189.86 of this Federal Law;

6) to keep a register of creditors' claims;

7) to take measures aimed at searching for, detection and return of the credit organisation's property held by third persons;

8) to transfer the documents made in the course of the credit organisation's activities for custody in the procedure established by federal laws and other regulatory legal acts in compliance with a list of documents made in the course of the credit organisation's activities to be endorsed by the federal executive power body authorized by the Government of the Russian Federation and the Bank of Russia, citing the time period for keeping the cited documents;

9) to discover the signs of intended and fictitious bankruptcy, as well as the circumstances punishable under Article 189.23 of this Federal Law;

10) to return clients' securities and other property accepted and/or acquired by a credit organisation exercising professional activities in the securities market on accounts of clients under custody contracts, trust management contracts, depository contracts and brokerage contracts in the procedure established by Article 189.33 of this Federal Law;

11) to discharge other duties established by federal law.

**4.** The bankruptcy receiver is entitled:

1) to dispose of the credit organisation's property in the procedure and under the terms established by this Federal Law;

2) to dismiss the credit organisation's employees, in particular the head of the credit organisation, to change the terms of labour contracts, to move employees to another job in the procedure and under the terms established by federal law.

3) to file an application in the procedure established by Item 4 of Article 136 of this Federal Law with a court for reducing the amount of claims of the head of the credit organisation, the chief accountant of the credit organisation, deputies thereof, the head of an affiliate or representative office of the credit organisation, deputies thereof and other credit organisation employees for labour remuneration, if within six months before the date of the provisional administration's appointment the labour remuneration of such persons was increased as compared to the rate of labour remuneration fixed before the start of the cited time period;

4) to declare the refusal thereof to execute contracts and other deals on the grounds established by Article 189.90 of this Federal Law and in the procedure established by Article 102 of this Federal Law;

5) to send applications for declaring invalid or for applying the effects of invalidity of void transactions made by the credit organisation, in particular in the procedure and on the grounds which are provided for by this Federal Law, for obtaining on demand the credit organisation's property held by third persons, for dissolution of contracts made by the credit organisation and for taking other actions aimed at the protection of the credit organisation's rights and legitimate interests and of those of its creditors provided for by federal law and other regulatory legal acts of the Russian Federation;

6) to engage accountants, auditors, appraisers and other specialists for accomplishing the tasks arising in connection with bankruptcy proceedings with their services to be paid for at the expense of the credit organisation's property;

7) to exercise other rights established by federal law which are connected with the exercise of the duties imposed thereupon.

234

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 114 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 236
of 317
*[Unofficial translation from Russian]*

**5.** Where there are the grounds established by federal law, the bankruptcy receiver shall raise claims against the third persons which under federal law bear subsidiary liability under the credit organisation's liabilities.

**6.** The bankruptcy receiver is entitled to pay an advance to cover the outlays connected with the discharge of the duties imposed upon him out of its own assets with the subsequent reimbursement of these outlays from the credit organisation's property in the procedure established for the discharge of the credit organisation's current obligations in the course of bankruptcy proceedings.

**Article 189.79.** Control over the Activities of the Bankruptcy Receiver

**1.** The bankruptcy receiver is bound to present all the data concerning bankruptcy proceedings to a commercial court on demand of the commercial court, in particular a report on the activities thereof.

**2.** The bankruptcy receiver shall present a report on the activities thereof, information about the financial status of the credit organisation and about the property thereof as of the starting date of bankruptcy proceedings and in the course of bankruptcy proceedings to a meeting of creditors or, if the creditors' committee has been formed, to the creditors' committee, as well as other information at the latest once a month on condition that a meeting of creditors or the creditors' committee have not fixed a longer period or time for submitting the report.

A report of the bankruptcy receiver after its submission and consideration by a meeting of creditors or the creditors' committee shall be sent to the Bank of Russia.

**3.** A report of the bankruptcy receiver to be submitted to a meeting of creditors or the creditors' committee shall contain the following data:

1) on the formed bankruptcy estate, in particular on the progress and/or results of an inventory of the credit organisation's property, on the progress and/or results of evaluation of the credit organisation's property, if the appraiser has been engaged for evaluating its property;

2) on the amount of monetary assets that have come onto the credit organisation's key account and on the sources of these receipts;

3) on the progress in selling the credit organisation's property citing the data on the selling procedure, balance sheet value, its purchasers, as well as on the amounts received from the property's sale;

4) on the number and total amount of claims for collecting debts raised by the bankruptcy receiver against third persons;

5) on the measures adopted for the purpose of ensuring the safekeeping of the credit organisation's property, as well as of detecting and obtaining on demand the credit organisation's property held by third persons;

6) on the measures taken for the purpose of declaring the credit organisation's transactions invalid, as well as of declaring the refusal to execute the credit organisation's contracts;

7) on keeping a register of claims of creditors citing the total amount of claims of the creditors included into this register and the amounts of claims of creditors of each priority;

8) on the number of the credit organisation's employees continuing their activities in the course of bankruptcy proceedings, as well as on the number of the credit organisation's employees dismissed in the course of bankruptcy proceedings;

9) on the work involved in closing the credit organisation's accounts that has been carried out by the bankruptcy receiver and on the results thereof;

10) on the amount of outlays on carrying out bankruptcy proceedings citing their purpose;

11) on holding subsidiarily liable the third persons who in compliance with federal law are so liable under the credit organisation's obligations in connection with making it bankrupt;

12) other data on the progress in bankruptcy proceedings whose composition is to be defined by the bankruptcy receiver, as well as by the demands of a meeting of creditors, or the creditors' committee, or by a commercial court.

**4.** The bankruptcy receiver shall submit accounting and statistical reports/statements of the credit organisation to the Bank of Russia on a monthly basis, as well as other information about the progress in bankruptcy proceedings at the request of the Bank of Russia in compliance with the list and in the procedure established by the Bank of Russia.

**5.** A report on making preliminary payments to first-priority creditors made in compliance with Article 189.94 of this Federal Law shall be submitted by the bankruptcy receiver to a commercial court and the Bank of Russia.

**6.** The Bank of Russia is entitled to inspect the activities of the bankruptcy receiver in the instances and in the procedure which are established by regulatory acts of the Bank of Russia.

*[Unofficial translation from Russian]*

**7.** The Bank of Russia is entitled to send the bankruptcy receiver an order to remove violations of the normative legal acts regulating the relations connected with insolvency (bankruptcy) of credit organisations which are detected on the basis of data of the reports/statements presented by the bankruptcy receiver or in the course of inspecting the activities thereof.

**8.** A failure to execute an order of the Bank of Russia to remove the detected violations shall serve as grounds for cancellation of accreditation of the bankruptcy receiver accredited with the Bank of Russia. The decision of the Bank of Russia may be appealed against with a commercial court within 10 days as from the date when it is adopted.

**9.** In the event of the Bank of Russia detecting violations when the authority of the bankruptcy receiver is exercised by the Agency, the latter is bound within 10 days as from the date of receiving an appropriate order of the Bank of Russia to take measures aimed at their removal and to notify the Bank of Russia about it.

**10.** The Agency's failure to execute an order of the Bank of Russia to remove violations shall serve as grounds for the Bank to Russia to file a complaint against the Agency's actions with the commercial court trying a bankruptcy case.

**11.** On the basis of the results of considering the complaint cited in Item 10 of this article a commercial court shall render one of the following decisions:

1) on satisfying the complaint for declaring the actions of the bankruptcy receiver unlawful and on instructing the bankruptcy receiver to remove the violation;

2) on relieving the Agency's representative off the office thereof;

3) on the complaint's rejection.

**12.** In the event of the Bank of Russia receiving a complaint of the creditors' committee against the bankruptcy receiver's actions or a petition for cancellation of the accreditation thereof, the Bank of Russia is bound within a 30-day term to consider the cited complaint or petition and to render a decision on the following:

1) to send the bankruptcy receiver an order to remove violations of the normative legal acts regulating the relations connected with insolvency (bankruptcy) of credit organisations;

2) to inspect the activities of the bankruptcy commissioner;

3) to cancel the accreditation thereof;

4) to declare the complaint as ill-founded.

**Article 189.80.** Dismissing the Bankruptcy Receiver Accredited with the Bank of Russia from Discharging the Duties of the Bankruptcy Receiver

**1.** The bankruptcy receiver accredited with the Bank of Russia, in the event of him filing an application to be dismissed him from discharging the duties of the bankruptcy receiver and in other instances provided for by federal law may be dismissed by a commercial court from discharging the duties of the bankruptcy receiver.

**2.** In the event of dismissal of the bankruptcy receiver accredited with the Bank of Russia from discharging the duties of the bankruptcy receiver, a commercial court shall concurrently appoint the Agency as the bankruptcy receiver in the procedure established by Item 3 of Article 189.68 of this Federal Law.

**3.** A ruling of a commercial court on dismissing the bankruptcy receiver accredited with the Bank of Russia from discharging the duties of the bankruptcy receiver is subject to immediate execution and may be appealed against.

**Article 189.81.** Removing the Bankruptcy Receiver Accredited with the Bank of Russia or the Agency's Representative from Discharging the Duties of the Bankruptcy Receiver

**1.** The bankruptcy receiver accredited with the Bank of Russia may be removed by a commercial court from discharging the duties of the bankruptcy receiver:

1) on the basis of a petition of a meeting of creditors or the creditors' committee in the event of failure to discharge or improper discharge of the bankruptcy receiver's duties;

2) in connection with a commercial court allowing the complaint of a person participating in a bankruptcy case in connection with the bankruptcy receiver's failure to discharge or improper discharge of the duties thereof on condition that such failure to discharge or improper discharge has violated the rights and legitimate interests of the applicant that has filed the complaint or has entailed losses for the credit organisation or creditors thereof;

3) on the basis of a petition of a person participating in the bankruptcy case in the event of detecting circumstances impeding the endorsement of the bankruptcy receiver accredited with the Bank of Russia as such, as well as if such circumstances originated after endorsement of the bankruptcy receiver accredited with the Bank of Russia;

4) in the event of cancellation by the Bank of Russia of accreditation of the bankruptcy receiver accredited with the

236

*[Unofficial translation from Russian]*

Bank of Russia.

**2.** Concurrently with removing the bankruptcy receiver accredited with the Bank of Russia from discharging the duties of the bankruptcy receiver, a commercial court shall endorse the Agency as the bankruptcy receiver in the procedure established by Item 3 of Article 189.68 of this Federal Law.

**3.** The ruling of a commercial court on removing the bankruptcy receiver from discharging the duties of the bankruptcy receiver is subject to immediate execution and may be appealed against.

**4.** The Agency's representative, while discharging the duties of a representative of the bankruptcy receiver, may be removed by a commercial court from discharging the cited duties in connection with a commercial court allowing the complaint of a person participating in a bankruptcy case against the failure of the Agency's representative to discharge or against improper discharge of the duties of a representative of the bankruptcy receiver on condition that such failure to discharge or improper discharge of the cited duties has violated the rights or legitimate interests of the applicant that filed the complaint or has entailed losses for the credit organisation or creditors thereof.

**5.** The ruling of a commercial court on removing the Agency's representative from discharging the duties of a representative of the bankruptcy receiver is subject to immediate execution and may be appealed against.

**Article 189.82.** The Rights of Creditors in the Event of Bankruptcy of a Credit Organisation

**1.** Creditors of a credit organisation shall enjoy the rights provided for by this Federal law subject to the specific established by this paragraph.

**2.** While conducting the bankruptcy proceedings, the legitimate interests of bankruptcy creditors and authorized bodies shall be represented by a meeting of creditors and/or the creditor's committee that shall act in compliance with this Federal Law, subject to the specifics established by this paragraph.

**3.** During decision making by a meeting of creditors, the votes of the bankruptcy creditors and authorised bodies whose claims are included into a register of creditors' claims as of the date of holding the meeting shall be taken into account.

**4.** The bankruptcy receiver, except when the credit organisation in respect of which the procedure for compulsory liquidation thereof has been conducted has been declared bankrupt, is entitled to call the first meeting of creditors after establishing, in compliance with Subitem 1 of Item 3, Items 4, 6 and 10-12 of Article 189.85 of this Federal Law, the claims made in compliance with Item 2 of Article 189.86 of this Federal Law but at the latest within 90 days from the date of publishing data on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings.

**5.** A meeting of creditors and/or the creditors' committee is entitled to file a complaint with the Bank of Russia against actions (failure to act) of the bankruptcy receiver and a petition for canceling accreditation of the bankruptcy receiver accredited with the Bank of Russia.

**6.** A creditor is entitled by sending a reasoned request to demand that the bankruptcy receiver present copies of the documents concerning the transactions provided for by Article 189.40 of this Federal Law and those made of an amount over one million roubles. Copies of the cited documents shall be made at the expense of the creditor.

**Article 189.83.** The Extent of Pecuniary Obligations and of the Duties for Making Mandatory Payments

**1.** For the purposes of this Federal Law, the extent of pecuniary obligations and of the duties to make mandatory payments of a credit organisation, except for the current obligations provided for by Article 189.84 of this Federal Law, shall be estimated as of the date of withdrawal of the credit organisation's licence for conducting banking operations, if not otherwise provided for by this Federal Law.

**2.** The extent of pecuniary obligations and of the duties to make mandatory payments shown in foreign currency shall be estimated in roubles at the exchange rate fixed by the Bank of Russia as of the date of withdrawal of the credit organisation's licence for conducting banking operations, except for the current obligations of the credit organisation.

**Article 189.84.** The Current Obligations of a Credit Organisation in the Course of Bankruptcy Proceedings

**1.** The current obligations of a credit organisation mean the following:

1) the duties of paying the debts formed before the date of withdrawal of the credit organisation's licence for conducting banking operations, of paying for the works carried out (the services rendered) which are connected with continuation of the credit organisation's functioning within the limits of the expenditure estimate endorsed in compliance with the Federal Law on Banks and Banking Activity;

2) the pecuniary obligations whose grounds originated within the time period from the date of withdrawal of the credit organisation's licence for conducting banking operations and up to the end date of bankruptcy proceedings, including the following:

*[Unofficial translation from Russian]*

obligations to cover the outlays connected with continuation of the credit organisation's functioning, including the labour remuneration of the persons working under a labour contract, making severance payments, paying compensation and making other payments to these persons in the event of their dismissal, subject to the specifics established by this Federal Law;

obligations as to payment of remuneration to the bankruptcy receiver accredited with the Bank of Russia;

court costs of the credit organisation, outlays on entering data into the Unified Federal Register of Data on Bankruptcy and publication of these data provided for by this Federal Law, as well as other expenses connected with the conduct of bankruptcy proceedings that result from this Federal Law;

3) the duties of making mandatory payments originating as from the date of withdrawal of the credit organisation's licence for conducting banking operations and up to the starting date of bankruptcy proceedings, as well as the duties of making mandatory payments originating in the course of bankruptcy proceedings when paying labour remuneration to the credit organisation's employees;

4) the duties of deducting monetary assets from wages of the credit organisation's employees paid thereto in connection with discharging the duties cited in Subitem 1 of this item from the date of withdrawal of the credit organisation's licence for conducting banking operations and up to the end date of bankruptcy proceedings, as well as the duties of remittance of the amounts of such deductions in compliance with the legislation of the Russian Federation (alimony, personal income tax, trade-union dues and other payments imposed upon the employer in compliance with federal law).

**2.** The claims of employees of a credit organisation for severance pay, paying compensation and making other payments whose amount is fixed in compliance with a labour contract, in case of its termination in the part thereof exceeding the minimum rate of appropriate payments fixed by the labour legislation, shall not pertain to current obligations and shall be satisfied after allowing claims of the third-priority creditors provided for by Item 4 of Article 134 of this Federal Law.

**3.** For the purposes of this Federal Law, the duty of making mandatory payments shall originate as from the date of expiry of the time period (tax period) fixed for estimation of the amount of a mandatory payment to be paid in compliance with the legislation of the Russian Federation on taxes and fees.

**4.** The outlays of a credit organisation on the discharge of current obligations shall be included into the estimate of the credit organisation's current expenses and shall be made by the bankruptcy receiver on the basis of such estimate.

**5.** If not otherwise established by this article, the estimate of a credit organisation's current expenses shall be endorsed (amended) by the bankruptcy receiver.

**6.** The estimate of a credit organisation's current expenses as regards the outlays made after holding the first creditors' meeting is subject to endorsement (amending) by a meeting of creditors or, if a creditors' committee has been established, by the creditors' committee on the proposal of the bankruptcy receiver.

The estimate of current expenses of a credit organisation shall be presented for endorsement to the first meeting of creditors, or, if it has established a creditors' committee, to the creditors' committee at the latest within three days as from the date of its establishment. Should the meeting of creditors or the creditors' committee fail to endorse (refuse to endorse) the estimate of current expenses of a credit organisation, the meeting of creditors or the creditors' committee are entitled to file an application with a commercial court for settling the differences between the bankruptcy receiver and the meeting of creditors or the creditors' committee. On the basis of the results of considering the cited differences, the commercial court shall approve the estimate of current expenses of the credit organisation made after issuance of an appropriate judicial act.

**7.** The estimate of current expenses of a credit organisation endorsed by a meeting of creditors or by a creditors' committee, or by a commercial court in the procedure established by Item 6 of this article may be changed by a meeting of creditors or the creditors' committee at the proposal of the bankruptcy receiver or, if there are differences between them in respect of making amendments in the cited estimate, by a commercial court in the procedure established by Item 6 of this article.

**8.** Pending the approval (amending) of the estimate of current expenses by a meeting of creditors or the creditors' committee or by a commercial court in the procedure established by Items 6 and 7 of this article, the estimate of the credit organisation's current expenses endorsed (amended) by the bankruptcy receiver shall be in effect.

**9.** Claims under current obligations of a credit organisation are not subject to inclusion into a register of creditors' claims. The persons participating in a bankruptcy case shall not be recognized as creditors in respect of the current obligations of a credit organisation in the course of bankruptcy proceedings.

**10.** The creditors' claims under the current obligations of a credit organisation in the course of bankruptcy proceedings shall be satisfied in the procedure established by this paragraph.

**Article 189.85.** Fixing the Amount of Creditors' Claims

**1.** Creditors are entitled to raise their claims against a credit organisation at any stage of bankruptcy proceedings, as

well as in the procedure established by Article 189.32 of this Federal Law, within the period while the provisional administration for managing the credit organisation is exercising its activities.

When raising claims, a creditor is bound to cite, along with the essence of the claims raised, data on himself, including the family name, first name and patronymic, date of birth, requisite elements of the document certifying the identity thereof and postal address for sending correspondence (if a natural person), or denomination, location (if a legal entity), as well as banking details (if any).

The cited claims shall be raised against the bankruptcy receiver attaching thereto effective decisions of a general jurisdiction court or commercial court, rulings on issuance of a writ of execution for compulsory execution of decisions of a tribunal of arbitrators or other judicial acts, as well as original documents or properly attested copies thereof proving the reasonableness of these claims.

**2.** For the purposes of bankruptcy proceedings, the bankruptcy receiver shall fix the time period for raising creditors' claims upon whose expiry a register of creditors' claims shall be deemed closed.

The time period for raising creditors' claims may not be less than 60 days from the date of publishing a report on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings.

To refer the claims received by the bankruptcy receiver to those which are raised in due time a notice of delivery or other documents proving the time of receipt of the cited claims by the bankruptcy receiver shall be taken into account.

**3.** Creditors' claims shall be deemed established if they:

1) are proved by an effective decision of a general jurisdiction court, commercial court, ruling on issuance of a writ of execution for enforcement of decisions of a tribunal of arbitrators or by some other judicial act in the absence of data on subsequent partial or full satisfaction or termination of such claims;

2) are defined by a commercial court in the procedure established by Item 7 of this article;

3) are defined by the bankruptcy receiver in the procedure established by Items 4 and 6 of this article, as well as by Item 3 of Article 189.87 of this Federal Law;

4) are defined in the procedure established by Item 10 of this article.

**4.** The bankruptcy receiver shall consider a creditor's claim raised in the course of bankruptcy proceedings and on the basis of the results of its consideration, at the latest within 30 working days as from the date of receiving such claim, shall enter it to a register of creditors' claims, if the claim is well-founded. Within the same time period the bankruptcy receiver shall inform an appropriate creditor about the inclusion of the claim into the register of creditors' claims, or about the refusal to make such inclusion into the cited register, or about not including the claim into this register in full. In the event of including a creditor's claim into a register of creditors' claims, the appropriate notice to a creditor shall be cited data on the extent and composition of the claim against the credit organisation, as well as on the order of its satisfaction.

**5.** Objections as to the results of the bankruptcy receiver considering a creditor's claim made be declared with a commercial court by a creditor at the latest within 15 calendar days from the date of the creditor receiving a notice of the bankruptcy receiver about the results of considering this claim. The cited objections may have attached thereto a notice of delivering copies of such objections or other documents to the bankruptcy receiver that prove the forwarding the bankruptcy receiver of copies of the objections and of the documents attached thereto.

**6.** Creditors' claims in respect of which objections are not declared at the time provided for by Item 5 of this article shall be deemed established in the amount, composition and order of satisfaction which are determined by the bankruptcy receiver.

**7.** The creditors' claims in respect of which objections are declared shall be considered by a commercial court in the procedure established by Article 60 of this Federal Law.

On the basis of the results of such consideration a commercial court shall issue a ruling on the inclusion or on the refusal to include the cited claims into a register of creditors' claims. The ruling of a commercial court on the inclusion of such claims into a register of creditors' claims shall cite the extent and order of satisfaction of such claims.

A copy of a ruling on the inclusion or on the refusal to include the cited claims into a register of creditors' claims shall be sent to the person that has declared objections and to the bankruptcy receiver at the latest on the day following the date of issuance of a commercial court's ruling.

A ruling of a commercial court on the inclusion or on the refusal to include creditors' claims into a register of creditors' claims is subject to immediate execution and may be appealed against.

**8.** The creditor's claim established by an appropriate ruling of a commercial court shall be included by the bankruptcy receiver into a register of creditors' claims at the latest on the day following the date of the bankruptcy receiver receiving a copy

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 119 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 241
of 317                        *[Unofficial translation from Russian]*

of the cited ruling; the creditor to be notified of this by the bankruptcy receiver within three days as from the date of making an appropriate entry in the register of creditors' claims.

**9.** The differences in respect of the claims of creditors or authorized bodies proved by an effective decision or other act of a general jurisdiction court or a commercial court as regards their composition and amount, are not subject to consideration by a commercial court, while applications about such differences are subject to return, except for the differences connected with execution of judicial acts or with their review.

**10.** A creditor's claim raised by a credit organisation within the time period when the provisional administration for managing the credit organisation was exercising its activities and entered into the register of creditors' claims in the procedure established by Article 189.32 of this Federal Law shall be deemed established in the amount, composition and order of satisfaction which are determined by the provisional administration for managing the credit organisation, if within 60 working days as from the date of publishing a report on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings the bankruptcy receiver, subject to the provisions of Subitem 1 of Item 3 of this article, does not send the creditor a notice of the full or partial exclusion of the cited claim from the register of creditors' claims.

**11.** Objections to the content of the notice cited in Item 10 of this article may be declared by creditors and may be considered by a commercial court in the procedure established by this article. The creditors' claims in respect of which the cited objections are not declared at the time provided for by Item 5 of this article shall be deemed established in the amount, composition and order of satisfaction which are determined by the bankruptcy receiver.

**12.** The creditors' claims raised against a credit organisation within the period when the provisional administration for managing the credit organisation was exercising its activities which are not considered by the provisional administration for managing the credit organisation as of the date of expiry of its authority in the procedure established by Items 11-17 of Article 189.32 of this Federal Law shall be deemed made on the date of publishing data on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings, and shall be considered (established) in the procedure set by this article. For this the bankruptcy receiver shall take the actions cited in Item 4 of this article within 60 days as from the date of publishing data on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings.

**13.** The amount of pecuniary obligations resulting from financial agreements satisfying the requirements defined by Item 1 of Article 4.1 of this Federal Law shall be estimated in the procedure specified in the cited article.

**Article 189.85-1.** The Specifics of Holding a Meeting of Employees or Former Employees of a Credit Organisation and Electing a Representative of Employees

**1.** A meeting of employees or former employees of a credit organisation shall be held by the bankruptcy receiver in the procedure established by Article 12.1 of this Federal Law subject to the specifics provided for by this article.

**2.** A meeting of employees or former employees of a credit organisation shall be organised and held if the claims of the second-turn creditors are not satisfied.

**3.** The employees or former employees of a credit organisation whose claims for payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract included into a register of creditors' claims are entitled to take part with the right of vote in a meeting of employees or former employees of the credit organisation.

**4.** A failure to hold a meeting of employees or former employees of a credit organisation shall not impede holding a meeting of creditors, if a meeting of employees or former employees has not been held for the reasons which are beyond control of the bankruptcy receiver, on condition that the bankruptcy receiver observes the procedure for its organisation and holding established by this Federal Law, subject to the specifics established by this article. The absence of a representative of employees of a credit organisation at a meeting of creditors shall not be a ground for declaring a meeting of creditors invalid.

**5.** Each employee or each former employee of a credit organisation shall have one vote at a meeting of creditors or former creditors of the credit organisation.

**6.** As a representative of employees of a credit organisation may be elected the person who is a person concerned with respect to the credit organisation.

**7.** A meeting of employees of a credit organisation is entitled to render the decision on payment for the services of a representative of the credit organisation's employees. The services of a representative of employees of a credit organisation may not be paid on account of the debtor's property (bankruptcy estate).

**8.** The authority of a representative of a credit organisation's employees shall be terminated when the claims of the second-turn creditors are satisfied.

**Article 189.86.** Establishing the Extent of Creditors' Claims for the Purpose of Determining the Participants of a Meeting of Creditors

**1.** The extent of creditors' claims for the purpose of determining the participants of a meeting of creditors shall be

established in the procedure established by Article 189.85 of this Federal Law.

**2.** For the purpose of participation in the first meeting of creditors, creditors are entitled to raise their claims against a credit organisation within 30 calendar days from the date of data being published on declaring the credit organisation bankrupt and on the initiation of bankruptcy proceedings, as well as in the procedure established by Article 189.32 of this Federal Law within the period of exercising activities by the provisional administration for managing the credit organisation. Upon the expiry of the cited time period a register of creditors' claims for the purpose of determining participants of the first meeting of creditors shall be deemed closed.

**3.** A creditor (a creditor's representative) whose claims are included into the register of creditors' claims on the basis of copies of the documents cited in Item 1 of Article 189.85 of this Federal Law shall be only admitted to participation in a meeting of creditors upon when producing the original documents proving the substantiation of these claims.

**Article 189.37.** A Register of Creditors' Claims

**1.** A register of creditors' claims shall be kept by the bankruptcy receiver. Subject to the specifics established by Item 10 of Article 189.85 of this Federal Law, the register shall comprise data from the register of creditors' claims drawn up by the provisional administration for managing the credit organisation in compliance with Article 189.32 of this Federal Law to be transferred to the bankruptcy receiver in the procedure established by Article 189.43 of this Federal Law.

**2.** If not otherwise established by this article, a creditor's claims shall be included by the bankruptcy receiver into a register of creditors' claims on the creditor's application in writing on the basis of an effective decision of a general jurisdiction court, commercial court or the ruling on issuance of a writ of execution for enforcement of decisions of a tribunal of arbitrators or other judicial act, as well as on the basis of other documents proving the reasonableness of these claims.

**3.** The creditors' claims under a bank deposit contract and/or bank account contract may be included by the bankruptcy receiver at the creditor's application in writing into a register of creditors' claims in the amount of the balance of monetary assets on the account which are due to the creditor on the basis of the data which are available to the credit organisation.

In compliance with the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation the claim of a creditor under a bank deposit contract and/or a bank account contract enjoying the right to receive an insurance compensation shall be included by the bankruptcy receiver into the register of creditors' claims in the amount of the balance of monetary assets on the account exceeding the amount of the insurance compensation due to the creditor.

The claims of the creditors with respect to which a credit organisation is liable for inflicting harm on their life and health, as well as the creditors' claims for severance pay and paying labour remuneration to the persons who are working or were working under a labour contract, may be included by the bankruptcy receiver into a register of creditors' claims without a creditor's application in writing on the basis of the data available to the credit organisation.

In the event of inclusion into a register of creditors' claims of creditors' claims without an application in writing on the basis of the data available to a credit organisation, the bankruptcy receiver shall, within at most five working days as from the date of making an appropriate entry in the register of creditors' claims in the procedure established by Item 4 of Article 189.85 of this Federal Law, send a notice to the cited creditor.

Objections to the content of the cited notice may be declared by a creditor, as well as considered by a commercial court in the procedure established by Article 189.85 of this Federal Law. The creditor's claims in respect of which objections are not declared at the time provided for by Item 5 of Article 189.85 of this Federal Law shall be deemed established in the amount, composition and order of satisfaction which are determined by the bankruptcy receiver.

**4.** A creditor's claim shall be excluded by the bankruptcy receiver from the register of creditors' claim on the basis of a ruling of a commercial court, except as provided for by Items 10-12 of Article 189.85 of this Federal Law or if a creditor has presented consent in writing to having its claim excluded from the register of creditors' claims.

**5.** In a register of creditors' claims shall be cited data on each creditor, the extent of the claims thereof against the credit organisation, order of satisfaction of the claim of each creditor, as well as grounds for origination of a creditor's claim.

The bankruptcy receiver may also include other data which are significant for establishing the extent of creditors' claims, proportionate satisfaction of creditors' claims, as well as for exercising by creditors other rights provided for by this Federal Law into the register of creditor's claims.

**6.** A creditor whose claims are included into a register of creditors' claims is bound to notify the bankruptcy receiver in due time on changing the data cited in Item 1 of this Federal Law.

In the event of failure to present or untimely presentation of the cited data, the bankruptcy receiver and credit organisation shall not be held liable for losses in connection with this.

**7.** The bankruptcy receiver is bound to send a creditor (to a representative thereof) an extract from a register of creditors' claims about the extent, composition and order of satisfaction of these claims at the request of such creditor (of a

Case 1:16-cv-09139-PGG   Document 53-4   Filed 03/06/17   Page 121 of 122

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 243
of 317                                    *[Unofficial translation from Russian]*

representative of a creditor) within five working days as from the date of receiving such claim.

The outlays on sending such extract in the amount not exceeding the cost of the services of a postal communication office shall be covered by a creditor.

**8.** Labour disputes between a credit organisation and an employee of the credit organisation shall be considered in the procedure established by the labour legislation and the civil procedural legislation.

**Article 189.88.** Accounts of a Credit Organisation in the Course of Bankruptcy Proceedings

**1.** In the course of bankruptcy proceedings the bankruptcy receiver is bound to use solely one correspondent account of a credit organisation declared bankrupt for monetary assets in the currency of the Russian Federation, that is, the master account of the credit organisation to be opened with the Bank of Russia, as well as, depending on the number of kinds of foreign currency possessed by the credit organisation, the required number of accounts for monetary assets in foreign currency to be opened with other credit organisations in the procedure established by the Bank of Russia.

**2.** When the authority of the bankruptcy receiver is exercised by the Agency, the credit organisation's accounts in the course of bankruptcy proceedings shall be opened with the Agency.

For the purpose of exercising the functions of the bankruptcy receiver, the Bank of Russia shall open for monetary assets in the currency of the Russian Federation for the Agency accounts.

**3.** The credit organisation's accounts opened with other credit organisations (including those detected in the course of bankruptcy proceedings), except for the accounts opened in connection with the exercise by a credit organisation of its professional activities in the securities market, and pledged accounts, are subject to closure as they are detected. The balance of a credit organisation's monetary assets shall be remitted from the cited accounts onto the credit organisation's accounts opened in the course of bankruptcy proceedings.

**4.** After the adoption by a commercial court of the decision on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings the Bank of Russia, within 10 days as from the date of receiving an appropriate claim from the bankruptcy receiver, shall remit to the credit organisation's accounts opened in the course of bankruptcy proceedings the assets of mandatory reserves deposited by the credit organisation with the Bank of Russia, as well as the other monetary assets of the credit organisation placed with the Bank of Russia.

**5.** The monetary assets of a credit organisation received by it in the course of bankruptcy proceedings shall be entered onto the credit organisation's accounts opened in the course of bankruptcy proceedings.

**6.** Payments to creditors, current community charges and operational payments of a credit organisation, as well as other outlays connected with carrying out bankruptcy proceedings, shall be covered from the credit organisation's master account opened in the course of bankruptcy proceedings.

**7.** Information on spending by a credit organisation's monetary assets kept on the accounts thereof opened in the course of bankruptcy proceedings shall be supplied by the bankruptcy receiver to a commercial court, the creditors' committee and the Bank of Russia at the request thereof but at most once a month.

**Article 189.89.** The Disposal of a Credit Organisation's Property in the Course of Bankruptcy Proceedings

**1.** After holding an inventory of a credit organisation's property the bankruptcy receiver shall start selling the credit organisation's property through public sales in the procedure and under the terms which are defined by this Federal Law, if a different procedure for disposal of the credit organisation's property is not established by this article.

**2.** The bankruptcy receiver whose functions are exercised by the Agency shall transfer the credit organisation's property (assets) and liabilities or a part thereof to the acquirer (acquirers) in the procedure established by this article with approbation of the Banking Supervision Committee of the Bank of Russia.

**3.** For the purpose of coordination of the transfer of a credit organisation's property (assets) and liabilities or of a part thereof to the acquirer (acquirers) the bankruptcy receiver shall send to the Bank of Russia a proposal that shall contain information about the composition of the credit organisation's property (assets) and liabilities, the results of appraising the property (assets) effected in compliance with the requirements of this article, as well as the substantiation of the expediency of transferring the property (assets) and liabilities.

**4.** Where it is proposed to transfer a credit organisation's property (assets) and liabilities in parts, the bankruptcy receiver's proposal cited in Item 3 of this article shall contain data on the composition of the credit organisation's property (assets) and liabilities in respect of each part to be transferred.

**5.** The extent of a credit organisation's liabilities to be transferred to the acquirer (acquirers) shall be determined by the bankruptcy receiver on the basis of the data available to the credit organisation. The cost of the credit organisation's property (assets) and liabilities to be transferred to the acquirer (acquirers) shall be determined in compliance with a report of the

*[Unofficial translation from Russian]*

appraiser engaged by the bankruptcy receiver and acting on a contractual basis.

**6.** The Banking Supervision Committee of the Bank of Russia shall render a decision on agreement with the bankruptcy receiver's proposal on transferring a credit organisation's property (assets) and liabilities or on the refusal to agree it at the latest in 10 working days from the date of receiving such proposal of the bankruptcy receiver and shall notify the bankruptcy receiver of the adopted decision at the latest in two working days from the date of adoption of an appropriate decision.

**7.** The Banking Supervision Committee of the Bank of Russia is entitled to deny agreement of the proposal of the bankruptcy receiver as to the transfer of a credit organisation's property (assets) and liabilities on the grounds established by a regulatory act of the Bank of Russia.

**8.** Within three working days as from the date of receiving a notice about the decision of the Banking Supervision Committee of the Bank of Russia in respect of agreement of the bankruptcy receiver's proposal to transfer a credit organisation's property (assets) and liabilities the bankruptcy receiver shall include data into the Unified Federal Register of Data on Bankruptcy on the selection of the acquirer (acquirers) of the credit organisation's property (assets) and liabilities, these containing a procedure for supplying data on the composition of the credit organisation's property (assets) and liabilities, on their value and methods of assessment.

**9.** Credit organisations holding a licence for accepting assets of natural persons for depositing are entitled to send the bankruptcy receiver an application for participation in the selection of the acquirer (acquirers) of a credit organisation's property (assets) and liabilities within 10 working days as from the date of inclusion of the data cited in Item 4 of this article into the Unified Federal Register of Data on Bankruptcy.

**10.** An application for participation in the selection of the acquirer (acquirers) of a credit organisation's property (assets) and liabilities shall contain a proposal to postpone the discharge of liabilities with respect to the Agency as to a creditor in respect of the liabilities that have passed over to the Agency as a result of the Agency paying out insurance compensation to the credit organisation's depositors. The cited delay may not exceed a year since the date of making an agreement on transfer to the acquirer of a credit organisation's property (assets) and liabilities.

**11.** The bankruptcy receiver shall send the received applications for participation in selection of the acquirer (acquirers) of a credit organisation's property (assets) and liabilities to the Banking Supervision Committee of the Bank of Russia.

**12.** The Banking Supervision Committee of the Bank of Russia has the right to deny approval of the acquirer (acquirers) of a credit organisation's property (assets) and liabilities on the grounds established by a regulatory act of the Bank of Russia.

**13.** In the event of transfer to the acquirer (acquirers) of a part of a credit organisation's liabilities, the liabilities of the creditors of the subsequent priority shall only be transferred after the complete transfer of liabilities of creditors of the previous priorities. Such order shall be determined in compliance with Article 189.92 of this Federal Law. A part of a credit organisation's liabilities of a single priority may not be transferred to the acquirer, if not otherwise established by this article.

**14.** A credit organisation's property (assets) and liabilities or a part thereof shall be transferred on the basis of the principles of fairness and reasonableness of the bankruptcy receiver's actions, the equivalence of the extent of the liabilities to be transferred to the value of the property (assets) to be transferred, protection of creditors' rights and legitimate interests, including the minimization of their losses when they exercise the rights to have their legal claims against the credit organisation satisfied, priority order and proportionality of satisfying creditors' claims and equality of creditors of the same priority.

**15.** Creditors of a credit organisation shall be notified by the bankruptcy receiver of the forthcoming transfer to the acquirer of the credit organisation's property (assets) and liabilities or of a part thereof by way of sending a notice of transfer of the cited property (assets) and liabilities and an official publication for publishing as well as by way of its inclusion into the Unified Federal Register of Data on Bankruptcy. Such notice is subject to publication at least a month before the intended date of transfer to the acquirer of the credit organisation's property (assets) and liabilities or of a part thereof. A notice of transfer to the acquirer of a credit organisation's property (assets) and liabilities or of a part thereof shall contain the following:

1) denomination of the credit organisation transferring the property (assets) and liabilities or a part thereof, its address and data identifying the credit organisation (the state registration number of an entry on the state registration of a legal entity, taxpayer identification number);

2) denomination of the credit organisation being the acquirer which the credit organisation's property (assets) and liabilities or a part thereof are to be transferred, its address and data identifying the credit organisation (the state registration number of an entry on the state registration of a legal entity, taxpayer identification number);

3) criteria for referring liabilities to the liabilities to be transferred to the acquirer;

4) procedure for the credit organisation's creditors receiving information on referring the liabilities relating to them to the liabilities to the transferred to the acquirer.