*[Unofficial translation from Russian]*

**16.** Within a month of the date of publication of a notice about transfer to the acquirer of a credit organisation's property (assets) and liabilities or of a part thereof the credit organisation's creditor is entitled to send to the credit organisation an application in writing about disagreeing with the transfer of the rights and liabilities under the agreement made by him with the credit organisation. As from the date of the bankruptcy receiver receiving the cited application the proportionate share of the property to be transferred shall be excluded by the bankruptcy receiver from the credit organisation's property to be transferred to the acquirer.

**17.** The claims of the credit organisation's creditor that has sent an application in writing about disagreeing with the transfer of the rights and liabilities under the agreement made by it with the credit organisation shall be satisfied in the order established by Article 189.92 of this Federal Law.

**18.** After the transfer of a credit organisation's property (assets) and liabilities or of a part thereof to the acquirer the latter is bound to discharge the received liabilities and/or the duties of making mandatory payments under the terms that existed on the date of withdrawal of the credit organisation's licence for conducting banking operations.

**19.** A credit organisation's property (assets) and liabilities or a part thereof shall be deemed transferred to the acquirer from the date of the signing of a transfer deed by the both parties. From that time the acquirer shall be held liable for the risk of accidental destruction or accidental damage of the property received by it. Concurrently with signing the transfer deed, the bankruptcy receiver shall send information on the transfer to the acquirer of the credit organisation's property and liabilities to an official publication for publishing and shall include the appropriate information into the Comprehensive Federal Register of Data on Bankruptcy. Such information shall contain the data cited in Item 15 of this article.

**20.** The property (assets) and liabilities of a credit organisation or the part thereof transferred to the acquirer (acquires) shall be excluded from the bankruptcy estate and from the register of creditors' claims of the credit organisation.

**21.** When selling the property of a credit organisation, the rights of claim under contracts of loan, credit and factoring may be put out for tender as a single lot (sale of the credit portfolio of a credit organisation).

The property transferred by a credit organisation under leasing contracts may be also put out for tender as a single lot with simultaneous assignment of the right of claim under such contracts.

**22.** For the purpose of reduction of the time period for making settlements with creditors, the bankruptcy receiver is entitled to acquire the credit organisation's property that was not sold through repeated sales at the initial price fixed for repeated sales. The cited transaction shall be made in writing.

**23.** The securities possessed by a credit organisation that have been admitted for circulation in the organised securities market may be sold by way of organised trade or on the basis of a contract of purchase and sale made without holding tenders.

**24.** In the course of bankruptcy proceedings the replacement of a credit organisation's assets provided for by this Federal Law may not be effected.

**Article 189.90.** Declaring the Transactions Made by a Credit Organisation or by Other Person at Its Expense as Invalid and the Refusal of a Credit Organisation to Execute Agreements

**1.** A transaction made by a credit organisation or by some other person at its expense may be declared invalid by a commercial court at the application of the bankruptcy receiver in the procedure and on the grounds provided for by this Federal Law, the Civil Code of the Russian Federation and other federal laws, subject to the specifics established by this paragraph. The rules provided for by Items 1-10 of Article 189.40 of this Federal Law shall apply to disputing such transactions.

**2.** The bankruptcy receiver of a credit organisation is entitled to deny execution of contracts and other transactions concluded by the credit organisation and not executed by it in full or in part in the procedure established by Article 102 of this Federal Law, if execution by the credit organisation of the cited transactions entails the infliction of losses on credit organisation, as compared to similar transactions made under comparable circumstances. In so doing, the refusal to execute the financial agreements satisfying the requirements of Item 1 of Article 4.1 of this Federal Law may be only declared in the procedure established by Item 6 of Article 102 of this Federal Law.

**3.** Where it is provided for by Item 2 of this article, an agreement made by a credit organisation shall be deemed dissolved as from the date of each party to the cited agreement receiving an application of the bankruptcy receiver about the refusal to execute the cited agreement.

A party to an agreement that has been made by a credit organisation and in respect of which the refusal to execute it has been declared is entitled to demand compensation from the credit organisation for the damage caused by the refusal to execute the cited agreement.

**Article 189.91.** The Bankruptcy Estate of a Credit Organisation

**1.** All the property of a credit organisation available as of the starting date of bankruptcy proceedings and detected in the course of bankruptcy proceedings shall make up the bankruptcy estate.

*[Unofficial translation from Russian]*

**2.** From the property of a credit organisation making up the bankruptcy estate shall be excluded the property constituting mortgage coverage in compliance with Item 4 of this article, securities and other property of the credit organisation's clients accepted and/or acquired by the credit organisation on their account under contracts of custody, contracts of trust management, deposit contracts, brokerage contracts and contracts of notary's deposit accounts, as well as other property to be excluded from the bankruptcy estate in compliance with the legislation of the Russian Federation.

The property which is the subject of pledge shall be separately accounted for within the composition of a credit organisation's property and is subject to mandatory evaluation.

The pledge of rights under a bank account contract is not subject to mandatory evaluation.

**3.** If within the composition of a credit organisation's property there is property that pertains to socially important facilities in compliance with this Federal Law and housing stock intended for social use which are not includable into the bankruptcy estate in compliance with this Federal Law, the cited property shall be transferred (sold) by the bankruptcy receiver in the procedure and under the terms which are established by this Federal Law.

**4.** The property of a credit organisation issuing in compliance with the Federal Law on Mortgage Securities mortgage-covered bonds that makes up mortgage coverage shall be excluded from the bankruptcy estate, while creditors' claims under mortgage-covered bonds shall be satisfied in the procedure established by the cited Federal Law.

**Article 189.82.** The Order of Satisfying Creditors' Claims in the Course of Bankruptcy Proceedings

**1.** The obligations with respect to creditors of a credit organisation shall be discharged in the course of bankruptcy proceedings in the order established by this Federal Law, subject to the specifics set by this paragraph.

**2.** The current obligations of a credit organisation provided for by Article 189.84 of this Federal Law shall be discharged out of turn from the bankruptcy estate. The order of discharging the current obligations of a credit organisation shall be determined in compliance with Article 855 of the Civil Code of the Russian Federation.

**3.** The following claims shall be satisfied in the first priority:

1) claims of the natural persons in respect of whom a credit organisation is liable for inflicting harm on their life and health by way of capitalisation of appropriate periodical time payments;

2) claims of the natural persons who are creditors of a credit organisation under bank deposit contracts or bank account contracts made with them (except for persons engaged in business activities without forming a legal entity, if such accounts (deposits) are opened for exercising the business activities provided for by federal law, as well as of lawyers, notaries and other persons, if such accounts (deposits) are opened for exercising professional activities provided for by federal law, and for the persons cited in Item 6 of this article);

3) the Agency's claims under bank deposit contracts and bank account contracts that have passed over thereto in compliance with the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation and as a result of compensation instead of a bank to the acquirer of the cost of the property to be returned by way of reverse transfer in compliance with Article 189.55 of this Federal Law;

4) claims of the Bank of Russia that have passed over to the Bank of Russia in compliance with this Federal Law as a result of making payments of the Bank of Russia on deposits of natural persons made with banks declared bankrupt and not participating in the system of mandatory insurance of natural persons' deposits made with banks of the Russian Federation.

**4.** Creditors' claims under the obligations secured by pledge of a credit organisation's property shall be satisfied on account of the cost of the subject of pledge in preference to other creditors, except for the obligations with respect to first-priority and second-priority creditors.

The claims of a creditor secured by pledge of rights under a bank account contract shall be satisfied by the bankruptcy receiver writing off monetary assets from the debtor's pledged account and their issuance to the creditor under the obligation secured by pledge of rights under the bank account contract or their entering onto the account cited by this creditor, less the monetary assets allocated for satisfying the claims of the first-priority and second-priority creditors.

**5.** After satisfying the claims of the first-priority and second-priority creditors, as well as the creditor's claims under the obligation secured by the pledge of rights under a bank account contract, the pledged account is subject to closure in compliance with the requirements of Item 3 of Article 189.88 of this Federal Law.

**6.** The claims of natural persons that are creditors of a credit organisation under bank deposit contracts and/or bank account contracts made with them, as to compensation of losses in the form of lost earnings and also payment of the amounts of financial sanctions, shall be included into the composition of the creditors' claims to be satisfied in the third priority.

**7.** The claims of a credit organisation's employees for severance pay, compensation and other payments whose amount is fixed by an appropriate labour contract, should it be terminated, in the part thereof exceeding the minimum rate of appropriate

245

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 3 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 247
of 317   *[Unofficial translation from Russian]*

payments fixed by the labour legislation, shall not pertain to the claims of the second-priority creditors and shall be satisfied after satisfying the claims of third-priority creditors.

### Article 189.93. The Discharge of a Credit Organisation's Obligations on Account of the Assets Provided by Its Founders (Participants) or a Third Person (Third Persons) in Bankruptcy Proceedings

**1.** The founders (participants) of a credit organisation or a third person (third persons) at any time starting from the date of declaring the credit organisation bankrupt and up to the completion of bankruptcy proceedings are entitled to provide the monetary assets which are sufficient for discharging the credit organisation's obligations in the procedure and under the terms which are provided for by this article.

**2.** The person intending to provide monetary assets to a credit organisation for discharging the obligations thereof (hereinafter referred to as an applicant) must file an application in writing about such intention (hereinafter referred to as an application about the intention) with the bankruptcy receiver, with a commercial court and the Bank of Russia attaching thereto the proofs of remittance to the depository account of the commercial court monetary assets in the amount of 10 million roubles. In an application about the intention shall be cited the applicant's postal address in the Russian Federation for forwarding correspondence thereto and the banking requisite elements of the applicant's account in roubles opened with a resident credit organisation in the Russian Federation.

Should a commercial court receive several applications about the intention, such application shall be considered in the order of their coming to the commercial court.

**3.** Within three working days as from the date of receiving an application about the intention the bankruptcy receiver shall include a report on receiving it into the Unified Federal Register of Data on Bankruptcy. As from the date of inclusion of the cited report into the Unified Federal Register of Data on Bankruptcy:

1) the discharge of the credit organisation's obligations with respect to the creditors whose claims are included into a register of creditors claims shall not be accepted from other persons

2) the bankruptcy receiver shall not make new settlements with the creditors whose claims are included into a register of creditors' claims on account of the bankruptcy estate;

3) the sale of the credit organisation's property shall be suspended;

4) the consideration of claims for declaring transactions invalid and for applying the effects of their invalidity raised in the case on the credit organisation's bankruptcy shall be suspended;

5) the consideration of the claims provided for by Article 10 of this Federal Law and raised in the credit organisation's bankruptcy case shall be suspended.

**4.** The suspension of consideration of the claims provided for by Subitems 4 and 5 of Item 3 of this article shall not impede consideration by court of petitions for taking interim relief measures and raising such new claims whose consideration in case of their acceptance by court shall be also suspended.

In the event of raising a creditor's claim after the inclusion of the report provided for by Item 3 of this article into the Unified Federal Register of Data on Bankruptcy the consideration by the bankruptcy receiver or by a commercial court of the cited claim shall be suspended, if as of the date of such inclusion a register of creditors' claims is closed or, if it is not closed, after the date of closing a register of creditors' claims. On application of a third-turn creditor or applicant a commercial court is entitled to consider within the period of such suspension the issue of soundness of the reasons for the creditors' failure to make the claim thereof before the inclusion of the cited report into the Unified Federal Register of Data on Bankruptcy or before the closure of a register of creditors' claims, if it took place after the inclusion of the cited report into the Unified Federal Register of Data on Bankruptcy.

**5.** At the latest in 15 working days from the time of inclusion of the report provided for by Item 3 of this article into the Unified Federal Register of Data on Bankruptcy the bankruptcy receiver is bound to forward to an applicant and to a commercial court a reference note about the amount as of the date of such inclusion of credit organisation's obligations:

1) which are current;

2) which are included into a register of creditors' claims;

3) in respect of which claims are raised by creditors but are not considered by the bankruptcy receiver or a commercial court (hereinafter referred to a reference note about the amount of obligations).

**6.** In the event of inclusion into the Unified Federal Register of Data on Bankruptcy of the report provided for by Item 3 of this article, before the date of closure of a register of creditors' claims the bankruptcy receiver shall forward to an applicant and to a commercial court a reference note about the amount of obligations within 15 working days as from the time of consideration of all the creditors' claims raised before the date of closure of a register of creditors' claims but at the latest two

*[Unofficial translation from Russian]*

months from the date of closure of this register. The amount of obligations in the reference note on the amount of obligations shall be cited as of the date of its drawing up by the bankruptcy receiver.

7. To satisfy creditors' claims the bankruptcy receiver shall open with a credit organisation being a resident of the Russian Federation a separate special account of the credit organisation which is solely intended for satisfying the claims of the credit organisation's creditors in the procedure established by this article (hereinafter referred to as the credit organisation's special account). When the authority of the bankruptcy receiver is exercised by the Agency, the credit organisation's special account shall be opened with the Agency.

A procedure for opening the credit organisation's special account for making operations on it shall be established by the Bank of Russia.

The requisite elements of the credit organisation's special account shall be cited in a reference note about the amount of obligations.

Monetary assets shall only be written off the credit organisation's special account by order of the bankruptcy receiver or commercial court in compliance with this article.

8. An applicant is bound to remit onto the credit organsiation's special account monetary assets in the amount of the claims cited in a reference note about the amount of obligations and provided for by Subitems 1 and 2 of Item 5 of this article.

An applicant is entitled to additionally remit monetary assets in the amount of the claims cited in a reference note about the amount of obligations and provided for by Subitem 3 of Item 5 of this article.

9. If within seven working days as from the date of receiving by an applicant a reference note about the amount of obligations five per cent of the amount provided for by Paragraph One of Item 8 of this article were not remitted onto the credit organisation's special account or within three months as from the date of receiving by an applicant a reference note about the amount of obligations the total amount provided for by Paragraph One of Item 8 of this article have not been remitted onto the credit organisation's special account, the discharge of the credit organisation's obligations by the applicant shall be deemed frustrated.

On such occasion, the bankruptcy receiver within five working days as from the date of expiry of the appropriate term provided for by Paragraph One of this item shall include into the Unified Federal Register of Data on Bankruptcy a report on declaring the discharge by the applicant of the credit organisation's obligations as frustrated, as well as shall forward a report on it to the applicant, commercial court and the Bank of Russia. As from the date of such inclusion the effects provided for by Items 3 and 4 of this article shall be terminated.

Within five working days as from the date of such inclusion the bankruptcy receiver is bound to remit all the assets kept on the credit organisation's special account to the applicant onto the account specified in the application on the intention.

In the event of declaring the discharge by an applicant of the obligations of a credit organsiation as frustrated, the applicant is bound to compensate to the credit organisation and creditors for the losses connected with the suspension of bankruptcy proceedings, as well as to additionally pay to the credit organisation a fine in the amount of 10 million roubles. On account of payment of this fine a commercial court, on an application of the bankruptcy receiver shall issue the ruling on remittance of the assets entered by the applicant from the commercial court's depository account onto the credit organisation's credit account. The bankruptcy receiver is entitled to file with the commercial court trying the case on the credit organisation's bankruptcy an application for recovery from the applicant of the losses connected with suspension of bankruptcy proceedings. The losses established by a commercial court may be deducted from the assets entered by the applicant onto the commercial court's depository account.

10. Within 14 working days as from the date of entering onto the credit organisation's special account the total amount provided for by Paragraph One of Item 8 of this article the bankruptcy receiver is bound to discharge on account of the monetary assets entered onto the credit organisation's special account the obligations provided for by Subitems 1 and 2 of Item 5 of this article subject to the order stipulated by Article 189.92 of this Federal Law.

If the assets for discharging the obligations provided for by Subitem 3 of Item 5 of this article were also entered onto the credit organisation's special account as of the date of entering thereupon the total amount provided for by Paragraph One of Item 8 of this article, the bankruptcy receiver at the cited time shall make settlements with creditors in respect of all these obligations.

When discharging obligations of a credit organisation on account of the assets kept on the credit organisation's special account, creditors are bound to accept the appropriate discharge of the obligations.

Where it is impossible to discharge obligations with respect to a creditor in connection with the creditor's failure to discharge the duties involved in presentation of the data on him which is necessary for making settlements with the creditor, as well as in the event of the creditor's evasion of accepting the discharge of the credit organisation's obligations, monetary assets shall be entered to the notary's deposit at the location of the credit organisation (of its branches).

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 5 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 249
of 317
*[Unofficial translation from Russian]*

Within 10 working days from the end date of discharge of obligations with respect to creditors in compliance with this item the bankruptcy receiver is bound to notify all creditors of the discharge of obligations with respect to them. The given notification may be effected by way of publishing a report in a periodical print at the location of a credit organisation (of its branches) and of inclusion of a report on it into the Unified Federal Register of Data on Bankruptcy.

**11.** At the latest in fourteen days from the end date of discharge of obligations in compliance with Item 10 of this article the bankruptcy receiver is bound to forward to an applicant, to a commercial court and the Bank of Russia a report on the discharge of the credit organisation's obligations that has been effected.

**12.** The Bank of Russia on an applicant's petition within a month from the date of receiving a report on the discharge of the credit organisation's obligations that has been effected may render the decision on issuance to the credit organisation of the licence for making banking operations. With this, the right of the Bank of Russia for issuance to the cited credit organisation of the licence for making banking operations shall originate, if the following conditions are concurrently observed:

1) if the discharge of the credit organisation's obligations provided for by this article has been effected at the latest in six months from the date of withdrawal of the licence for making banking operations;

2) if a commercial court has proved the discharge of all obligations of the credit organisation that originated as of the date of withdrawal of the licence for making banking operations;

3) if there are no creditors' claims raised after the inclusion into the Unified Federal Register of Data on Bankruptcy of a report on receiving an application about the intention;

4) if there is a reference note of an authorised body about the absence of of the credit organisation's debts on making mandatory payments;

5) if as of the time of consideration of the petition cited in Paragraph One of this item all the requirements for issuance of the licence for making banking operations made by the Bank of Russia in compliance with the Federal law on Banks and Banking Activity are satisfied.

**13.** The Bank of Russia shall notify an applicant, the bankruptcy receiver and commercial court about the decision to issue to a credit organisation the licence for making banking operations adopted by the Bank of Russia within five working days as from the date of adoption of such decision.

**14.** In the event of adoption by the Bank of Russia of the decision to issue to a credit organisation the licence for making banking operations, a court shall issue the ruling on termination of proceedings in respect of the case on the credit organisation's bankruptcy on the basis of a petition of the Bank of Russia. On such occasion, the monetary assets remitted by an applicant onto the credit organisation's special account shall be deemed provided to the credit organisation under the conditions of an interest-free loan agreement whose term is determined by the time of demand but at the earliest on the date of termination of proceedings in respect of the case on the credit organisation's bankruptcy. The monetary assets remitted by an applicant onto the depository account of a commercial court shall be remitted on an applicant's petition on the basis of a ruling of the commercial court onto the account cited in the application on the intention.

**15.** Where it is impossible to issue to a credit organisation the licence for making banking operations or if the Bank of Russia does not take within a month the decision on issuance of the licence for making banking operations or refuses to issue the cited licence, the credit organisation is subject to immediate liquidation in the procedure established by this article. The bankruptcy receiver shall notify of it an applicant and commercial court within three working days as from the date when the appropriate circumstances became known to him.

**16.** If applicants are not the founders (participants) of a credit organisation, the bankruptcy receiver concurrently with making the notification cited in Item 15 of this article shall notify the founders (participants) of the credit organisation that they enjoy the preemptive right to buy out the credit organisation's property. Such notification may be made by way of including a report into the Unified Federal Register of Data on Bankruptcy.

Within 30 working days from the date of forwarding the notice cited in Paragraph One of this item or of including a report into the Unified Federal Register of Data on Bankruptcy the credit organisation's founders (participants) are entitled to buy out the credit organisation's property having remitted to an applicant onto the account cited in the application about the intention the total amount of the applicant's monetary assets spent on discharging the credit organisation's obligations. The credit organisation's founders (participants) and the applicant are bound to notify the bankruptcy receiver about such remittance within a working day as from the date when the assets come onto the applicant's account.

If within the term cited in Paragraph Two of this item the required sum in total does not come onto the applicant's account, as well as if an applicant is a founder (participant) of a credit organisation, a court on the basis of an application of the bankruptcy receiver shall issue the ruling on completion of bankruptcy proceedings in respect of the credit organisation.

**17.** Where it is provided for by Paragraph Three of Item 16 of this article, as from the date of adoption of the ruling on completion of bankruptcy proceedings:

*[Unofficial translation from Russian]*

1) all the rights that the credit organisation had as of the cited date (in particular the right of ownership to movable and immovable property, as well as the right of claim), except for the rights which by virtue of law may not be transferred to other persons, shall be transferred to the applicant;

2) the credit organisation's current obligations which are not discharged as of the cited date shall transfer to the applicant;

3) the credit organisation's obligations which are not current and which are not discharged as of the cited date shall be terminated, except for the obligations provided for by Subitems 4 - 6 of this item;

4) the credit organisation's obligations which are not current, which are not discharged as of the cited date and which are made by the first-turn and second-turn creditors up to the date of adoption of the ruling on completion of bankruptcy proceedings shall transfer to the applicant;

5) the credit organisation's obligations which are not current, which are not discharged as of the cited date and which are made by third-turn creditors before the date of inclusion into the Unified Federal Register of Data on Bankruptcy of a report on receiving an application about the intention (if the register of creditors' claims was closed after the cited date, before the date of this register's closure) shall transfer to the applicant;

6) the credit organisation's obligations which are not current, which are not discharged as of the cited date and which are made by third-turn creditors after the inclusion into the Unified Federal Register of Data on Bankruptcy of a report on receiving an application about the intention (if the register of creditors' claims was closed after the cited date, after the date of this register's closure) and before the adoption of the ruling on completion of bankruptcy proceedings, if the reason for failure to make them before an appropriate date has been recognized by a commercial court before the completion of bankruptcy proceedings as sound, shall transfer to the applicant.

**18.** In respect of the obligations, which are cited in Subitems 4 - 6 of Item 17 of this article and which are being considered by a commercial court, the commercial court shall point out in the ruling on completion of bankruptcy proceedings that each claim resulting from the cited obligations shall be considered within the framework of separate action proceedings of the same commercial court with concurrent replacement of the defendant by an applicant. As regards such separation, the ruling on completion of bankruptcy proceedings is subject to execution as from the date of inclusion into the comprehensive state register of legal entities of data on the state registration of the credit organisation in connection with its liquidation.

An applicant shall be liable with respect to the obligations that have passed over to him within the limits of the cost of the credit organisation's property that has passed over to it.

The monetary assets remitted by an applicant to the depository account of a commercial court shall be remitted on application thereof on the basis of a ruling of the commercial court onto the account cited in an application about the intention.

If not otherwise provided for by the agreement made by applicants, all the rights that have passed to them shall be possessed by them in the shares which are equal to the shares of the assets remitted by each of them in the total amount of the remitted assets. They shall become joint debtors in respect of all the obligations that have passed over to applicants.

Within 30 working days from the date of adoption of the ruling on completion of bankruptcy proceedings the bankruptcy receiver shall pass over to an applicant on the basis of a transfer deed all the credit organisation's property available to him.

If the transfer of individual rights to the property of a credit organisation is subject to state registration by virtue of law, such transfer shall be registered on the basis of an application filed by an applicant, the ruling of a commercial court on completion of bankruptcy proceedings and the deed of transfer of the credit organisation's property signed by the bankruptcy receiver. An application of the credit organisation for the cited registration is not required.

**19.** If within the time period cited in Paragraph Two of Item 16 of this article the total amount which is required comes onto the applicant's account, a commercial court on the basis of an application of the bankruptcy receiver shall issue the ruling on completion of bankruptcy proceedings in respect of the credit organisation.

On such occasion, the rules of Items 17 and 18 of this article shall apply; with this the applicant's rights and duties provided for by them shall be possessed by the credit organisation's founders (participants) that have remitted monetary assets onto the applicants' account and shall transfer to them.

The monetary assets remitted by an applicant onto the depository account of a commercial court shall be remitted on application thereof on the basis of a ruling of a commercial court onto the account cited in an application about the intention.

**20.** If the bankruptcy receiver of a credit organisation is the Agency, the reports provided for by this article shall be also inserted on the Agency's official Internet site.

**21.** Disputes between an applicant, bankruptcy receiver, creditors and founders (participants) of a credit organisation in connection with the discharge of obligations in the procedure established by this article are subject to consideration by the

commercial court trying the case on the credit organisation's bankruptcy.

**Article 189.94.** The Specifics of Satisfying the Claims of First-Priority Creditors

**1.** The claims of first-priority creditors shall be satisfied in two stages: by way of making preliminary payments and by way of making final payments. In so doing, by way of making preliminary payments the claims of first-priority creditors of the credit organisation which as of the date of withdrawal by the Bank of Russia of its licence for conducting banking operations were not participants of the system of mandatory deposits' insurance in compliance with the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation shall be satisfied.

**2.** By way of making final payments shall be satisfied the claims of the first-priority creditors that were not satisfied by way of making preliminary payments.

When making settlements with creditors of a credit organisation which as of the date of withdrawal by the Bank of Russia of its licence for conducting banking operations was a participant of the system of mandatory deposit insurance in compliance with the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation, the claims of the creditors cited in Subitem 1 of Item 3 of Article 189.92 of this Federal Law, as well as the claims of the creditors cited in Subitem 2 of Item 3 of Article 189.92 of this Federal Law in the part thereof exceeding by at most 300 thousand roubles the amount of the insurance compensation provided for by the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation, shall be satisfied prior to satisfying other claims of first-priority creditors.

**3.** The claims of first-priority creditors which are made in compliance with this Federal Law within a time period up to two months from the date of the first publication of a report on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings shall be satisfied by preliminary payments.

Preliminary payments to first-priority creditors shall start at the latest in 30 days from the date of expiry of the cited time period for making creditors' claims for the purpose of preliminary payments and at the earliest in 10 days from the date of publication of an announcement on the procedure for and terms of making preliminary payments to first-priority creditors and shall be made within three months from the starting date of making such payments.

**4.** 70 per cent of the monetary assets kept on a credit organisation's account as of the date of expiry of the time period for raising claims by first-priority creditors for the purpose of making preliminary payments shall be allocated for making preliminary payments to first-priority creditors.

Where there are not enough monetary assets for satisfying in full the claims of first-priority creditors, these monetary assets shall be distributed in proportion to the amounts of the claims to be satisfied.

**5.** A report on making preliminary payments to first-priority creditors shall be submitted by the bankruptcy receiver to a commercial court and the Bank of Russia in the procedure established by the Bank of Russia at the latest in 10 days as from the date of expiry of the time period for making preliminary payments.

**6.** The sum of claims of first-priority creditors is subject to reduction by the amount paid to them by making preliminary payments and payments of the Bank of Russia made on deposits of natural persons opened with the banks declared bankrupt that do not participate in the system of mandatory insurance of natural persons' deposits made with banks of the Russian Federation and shall be shown in a register of creditors' claims of a credit organisation declared bankrupt.

**7.** The claims of first-priority creditors in the amount exceeding the amount of preliminary payments made, as well as the claims raised after the end of the time period for raising claims of first-priority creditors for the purpose of making preliminary payments, shall be satisfied by way of final payments subject to the rules provided for by Article 189.96 of this Federal Law.

**8.** The amount of claims of the individuals in respect of whom a credit organisation is held liable for inflicting harm on their life or health shall be determined by way of capitalization of appropriate time-based payments which are established as of the date of withdrawal of the credit organisation's licence for making banking operations and which are subject to making to these individuals before they attain the age of 70 years old but for at least 10 years. The procedure for and terms of capitalization of appropriate time-based payments shall be determined by the Government of the Russian Federation.

If the individual's age exceeds 70 years old, the capitalisation period for appropriate time-based payments shall be 10 years.

**9.** After making capitalized time-based payments whose rate shall be fixed in the procedure established by Item 7 of this article the appropriate obligation of a credit organisation shall be terminated.

**10.** With an individual's approbation the right of claim thereof against a credit organisation in the amount of capitalized time-based payments shall pass to the Russian Federation.

The cited claim in case of its transfer to the Russian Federation shall be also satisfied in the first priority.

*[Unofficial translation from Russian]*

On such occasion, the obligations of a credit organisation with respect to an individual as to making capitalized time-based payments shall pass to the Russian Federation and shall be discharged by the Russian Federation in compliance with federal law in the procedure established by the Government of the Russian Federation.

**11.** Abrogated.

**Article 189.95.** The Specifics of Satisfying Creditors' Claims under Subordinated Credits

Creditors' claims concerning subordinated credits (deposits, loans, bonded loans), as well as financial sanctions for failure to discharge obligations under subordinated credits (deposits, loans, bonded loans), shall be satisfied after satisfying the claims of other creditors.

**Article 189.96.** Settlements Made with Creditors in the Course of Bankruptcy Proceedings

**1.** The bankruptcy receiver shall make settlements with creditors in compliance with a register of creditors' claims.

**2.** The settlements with creditors involved in satisfying the claims included into a register of creditors' claims on the basis of copies of the documents cited in Item 1 of Article 189.85 of this Federal Law shall be only made upon producing the original documents proving the reasonableness of these claims.

**3.** The persons enjoying in compliance with Article 189.93 of this Federal Law the right to discharge the obligations of a credit organisation shall make settlements with creditors in compliance with a register of creditors' claims.

**4.** The claims of creditors of each subsequent priority shall be satisfied after satisfying in full the claims of creditors of the previous priority.

**5.** Judicial acts, acts of other bodies and officials about levying execution against the monetary assets kept on accounts of a credit organisation's clients, as well as in respect of imposing arrest and other restrictions on the disposal of the cited property, shall be executed by the bankruptcy receiver in the amount of the monetary assets which are due to creditors of an appropriate priority in the procedure established by this paragraph.

The appropriate monetary assets shall be sent by the bankruptcy receiver for their remittance according to the requisite elements provided by the body or official engaged in levying execution or imposing restrictions as to the disposal of the monetary assets kept on accounts of a credit organisation's clients.

**6.** The bankruptcy receiver is bound to notify an appropriate creditor of a credit organisation about satisfaction of the claim of the body or official levying execution or imposing restrictions as to the disposal of the monetary assets kept on the clients' accounts of the credit organisation by forwarding a report thereto by registered mail with confirmation of delivery within five working days as from the date of the monetary assets' remittance.

**7.** If by the time of sending the Bank of Russia the liquidation balance sheet of a credit organisation by the body or official levying execution or imposing restrictions as to the disposal of the monetary assets kept on clients' accounts of the credit organisation the bankruptcy receiver has not been notified of the requisite elements for remittance of the monetary assets cited in this item, the bankruptcy receiver shall enter the monetary assets due to the creditor on a notary's deposit account and shall notify the credit organisation's creditor and the cited person of this by way of registered mail with confirmation of delivery within five working days from the date of remittance of the monetary assets to the notary's deposit account.

**8.** In the event of a creditor's avoidance of accepting monetary assets, these monetary assets shall be entered by the bankruptcy receiver onto a notary's deposit account at the location of a credit organisation (of its affiliates), the creditor being notified of this.

**9.** Where there are not enough monetary assets of a credit organisation for satisfying the claims of creditors pertaining to a single priority, the monetary assets shall be distributed to the creditors of the appropriate priority in proportion to the amounts of their claims included into a register of creditors' claims.

**10.** Where there are not enough monetary assets of a credit organisation for satisfying the claims (a part of the claims) cited in paragraph 2 of Item 2 of Article 189.94 of this Federal Law, the monetary assets shall be distributed to creditors in proportion to the amounts of the appropriate claims (a part of the claims).

**11.** The creditors' claims raised after closing a register of creditors' claims shall be satisfied from the credit organisation's property left after satisfying the creditors' claims made in due time and included into the register of creditors' claims.

The settlements with creditors in respect of the cited claims shall be made by the bankruptcy receiver in the procedure established by this article.

**12.** The claims of first-priority creditors made after closing the register of creditors' claims but before completing settlements with all the creditors, after completing settlements with the first-priority creditors that have raised their claims in due time are subject to satisfaction before satisfying the claims of creditors of the subsequent priority. Pending the complete

*[Unofficial translation from Russian]*

satisfaction of the cited claims of first-priority creditors, the satisfaction of claims of the creditors of the subsequent priority shall be suspended.

If the cited claims were raised before completing settlements with first-priority creditors, they are subject to satisfaction after completing settlements with the first-priority creditors that raised their claims in due time, if monetary assets for their satisfaction are available.

**13.** The claims of the first-priority creditors raised before closing a register of creditors' claims but established in the procedure provided for by Subitems 2-4 of Item 3 of Article 189.85 of this Federal Law accordingly are subject to satisfaction in the procedure established by Item 12 of this article:

1) before completing settlements with all the creditors but after completing settlements with the first-priority creditors whose claims were established before starting to make settlements with them;

2) before completing settlements with the first-priority creditors whose claims were established before starting settlements with them.

**14.** The claims of second-priority creditors made before completing settlements with all the creditors, in particular after closing a register of creditors' claims, are subject to satisfaction in a procedure which is similar to the procedure established by Item 12 of this article.

**15.** Where there are disputes between the bankruptcy receiver and creditors being considered by a commercial court as of the starting date of making settlements with creditors of an appropriate priority, on demands of a creditor made before closing the register of creditors' claims the bankruptcy receiver is bound to reserve monetary assets in an amount which is sufficient for proportionate satisfaction of the claims of the relevant creditor.

**16.** If by the time of starting settlements with the Agency in respect of its claims the Agency and the acquirer of a bank's property and obligations have made an agreement under which in compliance with Item 3 of Article 189.54 of this Federal Law the Agency is entitled instead of the bank to discharge the obligation thereof to compensate the acquirer the cost of the property returned by way of reverse transfer, the bankruptcy receiver is bound to reserve monetary assets in an amount sufficient for proportionate satisfaction of the Agency's claims, subject to the limit value of the cost of the property that may be returned by way of reverse transfer.

**17.** Satisfied creditors' claims and claims for the cancellation of which compensation has been provided to creditors in compliance with the agreement on release money made between the bankruptcy receiver and creditor (creditors) shall be deemed as cancelled.

**18.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**19.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**20.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**21.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**22.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**23.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**24.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**25.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**26.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**27.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**28.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

*[Unofficial translation from Russian]*

**29.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**30.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**31.** It is not permissible to cancel creditors' claims by way of making an agreement on an obligation's novation, as well as by way of setting off claims in the course of bankruptcy proceedings in case of bankruptcy of credit organisations.

**32.** Creditors' claims which are not satisfied because of insufficiency of the debtor's property shall be deemed cancelled. Creditors' claims which are not recognised by the bankruptcy receiver shall be also deemed as cancelled, if a creditor has not applied to a commercial court or if such claims are recognized by a commercial court as ill-founded.

**33.** The bankruptcy receiver shall enter data on cancellation of creditors' claims into a register of creditors' claims.

**34.** Data on cancellation of creditors' claims of each priority shall be sent to the Bank of Russia at the latest in five day from the end date of making settlements with creditors of an appropriate priority.

**35.** In respect of the claims resulting from financial contracts for which the amount of obligations is estimated in the procedure established by Article 4.1 of this Federal Law the provisions of this article shall only apply insofar as creditors' claims in respect of net obligations are concerned.

**Article 189.97.** The Liability of a Third Person for Unlawful Receipt of a Credit Organisation's Property

**1.** A creditor whose claims have not been satisfied in full because of the insufficiency of a credit organisation's property shall enjoy the right of claim against a third person, in particular against another creditor that has unlawfully obtained the credit organisation's property.

**2.** A creditor whose claims have not been satisfied in full because of the insufficiency of a credit organisation's property is entitled to make a claim with a general jurisdiction court, commercial court or tribunal of arbitrators for obtainment on demand of the unlawfully received property of the credit organisation and for levying execution against the cited property in the amount of the claims which are not yet cancelled in the course of bankruptcy proceedings.

**3.** The unlawfulness of a third person obtaining the property of a credit organisation shall be established by a general jurisdiction court, commercial court or tribunal of arbitrators by declaring invalid the transaction in pursuance of which the credit organisation's property was transferred to a third person and on other grounds established by the legislation of the Russian Federation.

**4.** In the event of a general jurisdiction court, commercial court or tribunal of arbitrators satisfying the claims made, the creditor whose claims have not been satisfied in full because of insufficiency of the credit organisation's property shall become the beneficiary with respect to the cited property, regardless of the grounds on which the third person's obtaining of the credit organisation's property is declared unlawful. In the absence of the cited property or on the basis of an application of a third person a general jurisdiction court, commercial court or tribunal of arbitrators has the right to satisfy this creditor's claims by recovering the appropriate amount without levying execution against the credit organisation's property.

**5.** The realization (sale) of the property against which execution has been levied shall be effected by way of its public sale in the procedure established by the procedural legislation.

**6.** The claims provided for by Item 1 of this article may be raised within 10 years from the end date of bankruptcy proceedings, irrespective of the grounds on which the aquisition by a third person of a credit organisation's property is deemed unlawful.

**Article 189.98.** The Interim Liquidation Balance Sheet and the Liquidation Balance Sheet

**1.** After compiling and closing a register of creditors' claims the bankruptcy receiver, within at most six months from the opening date of bankruptcy proceedings, shall draw up the interim liquidation balance sheet containing data on the composition of property of the credit organisation to be liquidated, a list of creditors' claims raised, as well as data on the preliminary payments made to first-priority creditors. The time period for compiling a register of creditors' claims and the time period for drawing up the interim liquidation balance sheet may be extended by a commercial court on the basis of an application of the bankruptcy receiver.

**2.** The interim liquidation balance sheet and the liquidation balance sheet shall be drawn up in compliance with regulatory acts of the Bank of Russia and shall be presented to the Bank of Russia for approval. The time period for approval by the Bank of Russia of the interim liquidation balance sheet and the liquidation balance sheet may not exceed 30 days from the date of the Bank of Russia receiving the documents established by regulatory acts of the Bank of Russia.

**Article 189.99.** A Report of the Bankruptcy Receiver on the Results of Bankruptcy Proceedings

**1.** After completing settlements with creditors, approval of the liquidation balance sheet, as well as after terminating

*[Unofficial translation from Russian]*

proceedings in respect of a bankruptcy case where it is provided for by Subitem 2 of Item 1 of Article 189.70 of this Federal Law, the bankruptcy receiver is bound to submit a report on the results of bankruptcy proceedings to a commercial court.

**2.** The following shall be attached to a report of the bankruptcy receiver on the results of bankruptcy proceedings:

1) the liquidation balance sheet;

2) the documents proving the sale of the credit organisation's property and grounds for writing the property off;

3) a register of creditors' claims citing the amount of cancelled creditors' claims.

**Article 189.100.** Completing Bankruptcy Proceedings

**1.** After consideration by a commercial court of a report of the bankruptcy receiver on the results of bankruptcy proceedings a commercial court shall issue a ruling on completion of the bankruptcy proceedings or, in the event of canceling creditors' claims in compliance with Item 14 of Article 189.93 of this Federal Law, a ruling on termination of proceedings in respect of a bankruptcy case to be send to the bankruptcy receiver and to the Bank of Russia.

**2.** The ruling on completion of bankruptcy proceedings and the ruling on termination of proceedings in respect of a bankruptcy case are subject to immediate execution.

**3.** In the event of issuance of the ruling on termination of proceedings in respect of a bankruptcy case, the decision of a commercial court on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings is not subject to execution.

**4.** The bankruptcy receiver, within a 30-day term from the date of issuance of the ruling on completion of bankruptcy proceedings, must present to the Bank of Russia the ruling of the commercial court and other documents in compliance with the Federal Law on the State Registration of Legal Entities and Individual Businessmen and the Federal Law on Banks and Banking Activity.

**5.** Data on the state registration of a credit organisation in connection with its liquidation shall be entered into the unified state register of legal entities in the procedure established by the Federal Law on the State Registration of Legal Entities and Individual Businessmen, subject to the specifics of the cited registration established by the Federal Law on Banks and Banking Activity.

**Article 189.101.** The Transfer to the Founders (Stockholders) of a Credit Organisation of the Property Left after Completing Settlements with Creditors Thereof and Its Distribution to Them

**1.** The founder (stockholder) of a credit organisation declared bankrupt is entitled to receive the cost or a part of the credit organisation's property left after completing settlements with its creditors (hereinafter referred to as the remaining property) in the procedure established by this Federal Law.

The remaining property shall be transferred and distributed to the founders (stockholders) of a credit organisation in the order and in the procedure established by federal law, subject to the specifics provided for by this paragraph.

**2.** If a credit organisation has remaining property, the bankruptcy receiver, prior to forwarding the credit organisation's liquidation balancesheet to the Bank of Russia, shall send to the credit organisation's founders (stockholders) a notice about the right thereof to receive the remaining property or shall include into the Comprehensive Federal Register of Data on Bankruptcy an announcement about the availability of the remaining property to the credit organisation and about the right of its founders (stockholders) to receive the cited property.

**3.** An application of a founder (stockholder) of a credit organisation about the intent thereof to receive the remaining property shall be sent to the bankruptcy receiver within a month as from the date of sending thereto a notice about their right to receive the remaining property or of inclusion of the announcement in compliance with Item 2 of this article into the Unified Federal Register of Data on Bankruptcy.

**4.** An application of the founder (stockholder) of a credit organisation about the intent thereof to receive the remaining property shall be sent in writing and shall comprise the following:

1) data on the founder (stockholder) of the credit organisation;

2) family name, first name, patronymic, date of birth, requisite elements of the document certifying the identity thereof, postal address for sending correspondence, requisite elements of the bank account (if any) for remittance of monetary assets (if a natural person);

3) denomination, location, requisite elements of the banking account for remittance of monetary assets (if a legal entity);

4) indication that an applicant is the founder (stockholder) of the credit organisation and declaration of intent to receive the remaining property.

*[Unofficial translation from Russian]*

**5.** An application of the founder (stockholder) of a credit organisation about the intent thereof to receive the remaining property shall have attached thereto copies of documents which are properly attested and proving the right thereof to receive the remaining property.

**6.** The bankruptcy receiver shall consider an application of the founder (stockholder) of a credit organisation about the intent thereof to receive the remaining property within 10 working days from the date of receiving this application. On the basis of the results of considering the cited application the bankruptcy receiver shall send thereto a notice about the size of the share in the remaining property to be paid to the founder (stockholder) of the credit organisation. If as of the date of consideration of this application such person is not a founder (stockholder) of the credit organisation, the bankruptcy receiver shall send to such person a notice of the refusal to transfer the remaining property.

The remaining property may be transferred to the founders (stockholders) that have sent an application in compliance with Item 3 of this article for inclusion into the common shared property.

**7.** Objections of the founder (stockholder) of a credit organisation in respect of the refusal to transfer the remaining property thereto may be declared with a commercial court within five working days from the date of the founder (stockholder) of the credit organisation receiving a notice of the bankruptcy receiver about the refusal to transfer the remaining property.

Objections of the founder (stockholder) of a credit organisation shall be considered by a commercial court in the procedure established by Article 60 of this Federal Law.

**8.** Where it is impossible to transfer the remaining property in compliance with this article, the bankruptcy receiver shall dispose of it (except for rights of claim) in the procedure established by Article 148 of this Federal Law, subject to the specifics set by this article.

**9.** Where it is impossible to transfer the rights of claim in compliance with this article, the remaining rights of claim shall be written by the bankruptcy receiver off the balance sheet of the credit organisation.

**10.** If the claims of creditors of a credit organisation have not been satisfied in full and creditors have declared their refusal to accept the remaining property for cancellation of their claims that has been offered for sale but has not been sold in the course of bankruptcy proceedings and if there are no applications of the founders (stockholders) of the credit organisation about their intent to receive the remaining property, the bankruptcy receiver shall dispose of the remaining property in the procedure established by Article 148 of this Federal Law, subject to the specifics established by this article.

**Article 189.102.** Declaring Bankrupt a Credit Organisation Being Liquidated

**1.** If the cost of the property of a credit organisation in respect of which the decision on its liquidation has been adopted is insufficient for satisfying claims of the credit organisation's creditors, such credit organisation shall be liquidated in the procedure provided for by this paragraph.

**2.** In the event of detecting the circumstance provided for by Item 1 of this article, the right to file an application for declaring bankrupt a credit organisation being liquidated shall be enjoyed by the credit organisation's creditors and the Bank of Russia.

**3.** In the event of detecting the circumstance provided for by Item 1 of this article, the liquidation committee (liquidator) of the organisation being liquidated is bound within a 10-day term to file an application for declaring bankrupt the credit organisation being liquidated with a commercial court.

**4.** An commercial court shall start trying the case on declaring bankrupt a credit organisation being liquidated on the basis of an application of the persons cited in Items 2 and 3 of this article at the latest in a month after issuance by the commercial court of the ruling on acceptance of the cited application.

**Article 189.103.** The Specifics of Bankruptcy Proceedings at a Credit Organisation in Respect of Which Compulsory Liquidation Has Been Effected

**1.** After a commercial court renders the decision on declaring bankrupt a credit organisation being liquidated and on initiating bankruptcy proceedings, proceedings in respect of the case on compulsory liquidation of the credit organisation are subject to termination and materials of the case on compulsory liquidation of the credit organisation are subject to attachment to the bankruptcy case-file of this credit organisation.

**2.** The bankruptcy receiver shall publish the data cited in Subitems 1-3, 6 and 7 of Item 2 of Article 189.74 of this Federal Law.

**3.** The bankruptcy receiver is entitled not to discharge the duties established by Article 189.78 of this Federal Law, if they were discharged in the course of the credit organisation's compulsory liquidation.

**4.** The meeting of creditors or the creditors' committee established in the course of compulsory liquidation of a credit organisation shall continue exercising their authority.

*[Unofficial translation from Russian]*

**Article 189.104.** The Specifics of Establishing the Extent of and of Satisfying Creditors' Claims after Declaring Bankrupt the Credit Organisation That Has Been Compulsorily Liquidated

**1.** Creditors' claims raised against a credit organisation in the course of its compulsory liquidation and included by the liquidator into the register of creditors' claims of the credit organisation shall be deemed established in the amount, composition and order of satisfaction which are determined by the liquidator in compliance with this Federal Law and shall be included into the register of creditors claims.

**2.** Within a month as from the date of publication of an announcement about declaring bankrupt a credit organisation being liquidated creditors are entitled to raise their claims against the credit organisation being liquidated in compliance with Article 189.85 of this Federal Law.

**3.** In the course of bankruptcy proceedings in respect of the case on bankruptcy of a credit organisation that has been compulsorily liquidated the claims of first-priority creditors shall be satisfied in the procedure established by Article 189.94 of this Federal Law, if not otherwise established by this article. Preliminary payments to first-priority creditors shall only be made if settlements with the cited creditors have not been made in the course of the credit organisation's liquidation. In so doing, the amount of payments of the Bank of Russia shall be fixed in compliance with the requirements of Federal Law No. 96-FZ of July 29, 2004 on Payments of the Bank of Russia on Deposits of Natural Persons Made with Banks Declared Bankrupt That Do Not Participate in the System of Mandatory Insurance of Deposits of Natural Persons Made with Banks of the Russian Federation, less the amounts of the payments made in the course of the credit organisation's compulsory liquidation.

**4.** Preliminary payments shall be made starting at the latest in 30 calendar day as from the date of the first publication of the announcement about declaring a credit organisation bankrupt and on initiating bankruptcy proceedings and at the earliest in 10 calendar days as from the date of publication of an announcement about a procedure for and terms of making preliminary payments to first-priority creditors and they shall be paid within three months as from the cited date.

**Article 189.105.** The Bankruptcy of a Missing Credit Organisation

**1.** If a credit organisation which is in debt has actually terminated its activities, is missing or if it is impossible to find its location or the location of its top-managers, an application for declaring such credit organisation bankrupt may be filed by the bankruptcy receiver, an authorised body, as well as by the Bank of Russia, regardless of the size of credit indebtedness thereof.

**2.** An commercial court within a 30-day term as from the date of taking over an application for declaring a missing credit organisation bankrupt shall render the decision on declaring bankrupt the missing credit organisation being in debt and on initiation of bankruptcy proceedings. The Agency shall be endorsed as the bankruptcy receiver of a missing credit organisation being in debt.

No remuneration shall be granted to the Agency for exercising the authority of the bankruptcy receiver of a missing credit organisation being in debt.

**3.** The bankruptcy receiver shall notify in writing all the creditors of this credit organisation known to him about the bankruptcy of the missing credit organisation which within a 30-day term from the date of receiving the cited notice may raise their claims with the bankruptcy receiver.

**4.** On application of the bankruptcy receiver in case of it detects the property of a missing credit organisation being in debt a commercial court may issue the ruling on termination of simplified bankruptcy proceedings and on transfer to the bankruptcy proceedings provided for by this paragraph.

**5.** The claims of creditors of a missing credit organisation being in debt shall be satisfied in the order provided for by Article 189.92 of this Federal Law. In so doing, court costs shall be covered the highest peiority.

**6.** The decision of a commercial court on declaring bankrupt a missing credit organisation shall be sent to the Bank of Russia, as well as to the federal executive power body engaged in the state registration of legal entities for it to make an entry into the comprehensive state register of legal entities to the effect that the credit organisation is being liquidated.

### §5. The Bankruptcy of Strategic Enterprises and Organisations

**Article 190.** General Provisions on the Bankruptcy of Strategic Enterprises and Organisations

**1.** For the purposes of the present Federal Law "strategic enterprises and organisations" means the following:

the federal state unitary enterprises and public joint stock companies whose shares are in federal ownership and which pursue the production of products (works, services) of strategic significance for ensuring national defence and security and protecting the morals, health, rights and legal interests of individuals of the Russian Federation, as well as other organisations in the cases provided for by federal laws;

the organisations of the defence-industrial complex, i.e. production, scientific-production, scientific research, design

256

*[Unofficial translation from Russian]*

and engineering, testing and other organisations carrying out the work of ensuring the completion of the state defence order.

**2.** A list of strategic enterprises and organisations, in particular, the organisations of the defence-industrial complex subject to the rules set out in this paragraph shall be approved by the Government of the Russian Federation and be subject to mandatory publication.

**3.** A strategic enterprise or organisation shall be deemed incapable of meeting creditors' claims related to monetary obligations, to payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract, and/or perform the duty of making mandatory payments if these obligations and/or duties have not been performed within six months after their due date.

**4.** For the purpose of initiating proceedings in the bankruptcy case in respect of a strategic enterprise or organisation, claims making up in their entirety at least 1,000,000 roubles shall be taken into account.

**Article 191.** Measures for Preventing the Bankruptcy of Strategic Enterprises and Organisations

For the purpose of preventing the bankruptcy of strategic enterprises and organisation, the Government of the Russian Federation shall do the following in accordance with the procedure established by a federal law and other regulatory legal acts of the Russian Federation:

organise the keeping of records and performing analysis of the financial state of strategic enterprises and organisations and the solvency thereof;

conduct the re-organisation of strategic enterprises and organisations;

settle the debts of the federal budget resulting from late payments for state defence orders owing strategic enterprises and organisations acting as contractors under state defence orders;

ensure the implementation of restructuring (principal debt and interest, penalties and fines) of the debts of strategic enterprises and organisations acting as contractors under state defence orders as owing the federal budget and state non-budget funds;

promote the achievement of an arrangement of strategic enterprises and organisations with creditors on restructuring their accounts payable, in particular, by means of providing state guarantees;

perform prejudicial rehabilitation of strategic enterprises and organisations in the manner established by the present Federal Law;

take other measures for preventing the bankruptcy of strategic enterprises and organisations.

**Article 192.** The Persons Deemed Party to the Case of Bankruptcy of a Strategic Enterprise or Organisation

The federal executive governmental body responsible for implementation of a comprehensive state policy in the sector of the economy where a specific strategic enterprise or organisation is pursuing its activity shall be deemed a party to the bankruptcy case of the strategic enterprise or organisation among the persons specified by Article 34 of the present Federal Law.

**Article 193.** The Qualified Receiver in the Case of Bankruptcy of a Strategic Enterprise or Organisation

Apart from the qualification standards for the qualified receiver nominee established by Articles 20 and 20.2 of the present Federal Law, the Government of the Russian Federation is entitled to establish a list of additional requirements which shall be binding in the case of approval by a commercial court of a qualified receiver nominee in the case of bankruptcy of a strategic enterprise or organisation.

**Article 194.** The Financial Rehabilitation of Strategic Enterprises and Organisations

**1.** If the first creditors' meeting has not adopted a decision to institute the proceedings applicable in a bankruptcy case in respect of the strategic enterprise or organisation and has not designated a self-regulating organisation to present qualified receiver nominees who comply with the qualifications set by the creditors' meeting, the commercial court shall postpone the hearing of the case of bankruptcy of the strategic enterprise or organisation within the term established by Article 51 of the present Federal Law and it shall obligate the creditors to have adopted these decisions by the date set by the commercial court.

If the hearing of the case cannot be postponed within the term established by Article 51 of the present Federal Law the commercial court shall:

issue a ruling on instituting financial rehabilitation in respect of the strategic enterprise or organisation if a petition has been filed by the debtor's promoters (stockholders), the owner of property of the debtor (a unitary enterprise) an authorised state body, the federal executive governmental body responsible for the implementation of a comprehensive state policy in the sector of economy in which the strategic enterprise or organisation pursues its activity or a third person or third persons on the condition that the said persons provide security for the performance of the debtor's obligations, in particular, by means of providing state guarantees in compliance with a debt repayment schedule. The amount of the security so provided shall not be

*[Unofficial translation from Russian]*

below the amount of the debtor's obligations recorded on the balance sheet as of the last accounting date preceding the first creditors' meeting. In this case the debt repayment schedule shall include a provision for commencement of debt repayment within one month after the commercial court's ruling on the institution of financial rehabilitation and settlement of creditors' claims in a monthly basis in equal installments over the year from the date of commencement of repayment of creditors' claims;

issue a ruling on instituting external administration in respect of the strategic enterprise or organisation if no grounds exist for the institution of financial rehabilitation as envisaged by the present article in case when the commercial court has received a statement on the possibility of the debtor's solvency restoration during the external administration period from the federal executive governmental body responsible for the implementation of a comprehensive state policy in the sector of the economy in which the strategic enterprise or organisation pursues its activity;

if no grounds exist for instituting financial rehabilitation and external administration as envisaged by the present article the commercial court shall adopt a decision to declare the debtor bankrupt and commence winding-up proceedings.

**2.** If the first creditors' meeting adopted a decision to file a petition with the commercial court for instituting external administration or for declaring as bankrupt the debtor being a strategic enterprise or organisation and commencing winding-up proceedings the commercial court may issue a ruling on the institution of financial rehabilitation on the condition that the debtor's promoters (stockholders), the owner of property of the debtor (unitary enterprise), an authorised state body, the federal executive governmental body responsible for the implementation of a comprehensive state policy in the sector of the economy in which the strategic enterprise or organisation pursues its activity, or a third person or third persons file a petition and provide security for the performance of the debtor's obligations, in particular, by means of providing state guarantees, under a debt repayment schedule. The amount of the security so provided shall not be below the amount of the debtor's obligations recorded on the balance sheet as of the last accounting date preceding the date of the first creditors' meeting. In this case the debt repayment schedule approved by the commercial court shall have a provision for the commencement of debt repayment within one month after the date of the commercial court's ruling on the institution of financial rehabilitation and for repayment of creditors' claims on a monthly basis in equal instalments over the year after the date of the commencement of the settlement of creditors' claims.

Paragraph 2 is abrogated.

**Article 195.** The External Administration of a Strategic Enterprise or Organisation

**1.** The receiver shall send an external administration plan she/he has elaborated to the federal executive governmental body responsible for the implementation of a comprehensive state policy in the sector of economy in which the strategic enterprise or organisation is pursuing its activity at least 15 days prior to the date when it is to be considered by a creditors' meeting.

**2.** The federal executive governmental body specified in Item 1 of the present article shall send to the creditors' meeting and to the commercial court a statement on the external administration plan that comprises an analysis of the measures set out in this plan as aimed at restoring the debtor's solvency during the external administration period.

**3.** The federal executive governmental body responsible for the implementation of a comprehensive state policy in the sector of economy in which the strategic enterprise or organisation is pursuing its activity shall be entitled to file a petition with the commercial court before the date of approval of the external administration plan for the strategic enterprise or organisation by the creditors' meeting for switching to financial rehabilitation if the debtor has not been subjected to financial rehabilitation before. The petition shall be accompanied with a debt repayment schedule and also with information on the security existing for the performance of the debtor's obligations, in particular, in the form of state guarantees under the debt repayment schedule. The amount of the security so provided shall not be below the amount of the debtors' obligations reflected on the balance sheet as of the last accounting date before the holding of the first creditors' meeting. In this case the debt repayment schedule approved by the commercial court shall include a provision for the commencement of debt repayment within one month after the date of the commercial court's ruling on the institution of financial rehabilitation and for repayment of creditors' claims on a monthly basis in equal instalments over the year from the date of the commencement of creditors' claims settlement.

In this case the commercial court may issue a ruling on switching to financial rehabilitation.

**4.** The external administration plan for a strategic enterprise or organisation may have a provision for transactions not deemed the debtor's economic transactions as relating to:

the sale of the enterprise;

the alienation of or encumbrance on immovable property;

the disposal of other property of the debtor of which the balance sheet value makes up over five per cent of the balance sheet value of the debtor's assets determined on the basis of financial statement data as of the last accounting period;

the receipt and extension of loans (credits), the issuance of suretyships and guarantees, the assignment of rights of claim, debt assignment and also the institution of a trust administration in respect of the debtor's property;

258

*[Unofficial translation from Russian]*

the alienation and acquisition of shares and interest in economic partnerships and companies;

the conclusion of simple partnership agreements.

**5.** The receiver shall not refuse to perform the debtor's contracts relating to the performance of state defence order works and catering for federal state needs in the field of maintaining the national defence and security capabilities of the Russian Federation.

**6.** The receiver shall not be entitled to alienate the specific types of property, rights in rem and other rights included in the composition of the property complex of the debtor being a strategic enterprise or organisation intended for the pursuance of an activity connected to the performance of state defence order works, and catering for federal state needs in the field of maintaining national defence and security capabilities of the Russian Federation.

**7.** The sale of a debtor's enterprise intended for the pursuance of an activity relating to the performance of state defence order works, catering for federal state needs in the field of maintaining the national defence and security capabilities of the Russian Federation shall be effected at a public sale in the form of a tender, except as otherwise established by the present article.

If the composition of the debtor's enterprise intended for the pursuance of an activity relating to the performance of state defence order works, catering for federal state needs in the field of maintaining the national defence and security capabilities of the Russian Federation, incorporates property deemed limited-alienability property, the sale of the enterprise shall only be effected at a closed sale in the form of a tender.

In the case of a sale at a closed sale of an enterprise or debtor's property deemed limited-alienability property, only the persons entitled to own or otherwise possess the said property in compliance with a federal law may take part in the sale.

The following obligations of the buyer shall be deemed the conditions sine qua non of the tender:

to ensure compliance with the intended purpose of the said debtor's property complex and mobilisation-purpose property;

to perform the debtor's contracts relating to the performance of state defence order works and catering for federal state needs in the field of maintaining the national defence and security capabilities of the Russian Federation.

**8.** In the case of sale of a debtor's enterprise being a strategic enterprise or organisation intended for the purpose of pursuing activity relating to the performance of state defence order works or catering for federal state needs in the field of maintaining the Russian Federation's national defence and security capabilities, the Russian Federation shall have a priority right to acquire this enterprise.

In the case of sale at a sale of an enterprise of the debtor being a strategic organisation not being a federal state unitary enterprise intended for the purpose of pursuing an activity relating to the performance of state defence order works or catering for federal state needs in the field of maintaining the Russian Federation's national defence and security capabilities, the Russian Federation shall be entitled, within one month after the date of signing the minutes on the results of the sale, to conclude a sale/purchase contract for the acquisition of this enterprise at the price set according to the results of the sale and recorded in the minutes on the results of the sale on the terms of the tender.

If within the said term the Russian Federation did not conclude a contract of sale/purchase, this contract shall be concluded with the winner in the sale determined in the minutes on the results of the sale.

The winner in the sale shall pay the selling price of the enterprise determined by the sale, within the term specified in the announcement of the sale, and it shall not exceed one month from the date of conclusion of the contract of purchase/sale.

Bankruptcy creditors and the affiliated persons thereof shall not be cleared for taking part in the sale.

**9.** In the case of sale at a sale of a debtor's enterprise being a strategic enterprise or a federal state unitary enterprise intended for the pursuance of activity relating to the performance of state defence order works, or catering for federal state needs in the field of maintaining the Russian Federation's national defence and security capabilities, the Russian Federation shall be entitled to provide funds to the debtor within one month after the signing of the minutes on the results of the sale, in an amount equal to the selling price of this enterprise set according to the results of the tender and specified in the minutes on the results of the sale. The said funds shall be used by the debtor to settle creditors' claims in compliance with the register of creditors' claims.

If within the said term the Russian Federation did not provide funds to the debtor in compliance with the present article, a contract of purchase/sale shall be concluded with the winner in the sale determined by the minutes on the results of the sale.

The winner in the sale shall pay the selling price of the enterprise set at the sale within the term specified in the announcement of the sale, such term not exceeding one month after the conclusion of the contract of purchase/sale.

In the case of sale at a sale in the form of a tender of a debtor's enterprise being a strategic enterprise or organisation intended for the purpose of pursuing activity relating to the performance of state defence order works or catering for federal state needs in the field of maintaining the Russian Federation's national defence and security capabilities the federal executive governmental body responsible for implementing a comprehensive state policy in the sector of the economy in which the strategic enterprise or organisation pursues its activity shall conclude an agreement on compliance with the terms of the tender with the buyer of this enterprise. If the debtor is in breach of or default on performance of the agreement on compliance with the terms of the tender this agreement and the contract for the purchase/sale of this debtor's enterprise shall be subject to rescission by a commercial court on the complaint of the said federal body. In the event of rescission by the commercial court of the said agreement and the contract of purchase/sale such a debtor's enterprise shall be subject to transfer into federal ownership in the manner established by a federal law.

**Article 196.** Strategic Enterprises and Organisations Winding-Up Proceedings

**1.** The sale of a debtor's enterprise being a strategic enterprise or organisation shall be effected in the manner envisaged by Items 7-9 of Article 195 of the present Federal Law.

The sale of the property, rights in rem and other rights not incorporated in the debtor's property complex intended for the purpose of pursuing an activity relating to the performance of state defence order works or catering for federal state needs in the field of maintaining the Russian Federation's national defence and security capabilities may be effected in the manner set out in Article 111 of the present Federal Law.

**2.** If the debtor's property incorporates a property exempt from alienation. the winding-up receiver shall notify the owner of the property exempt from alienation.

The owner of the property exempt from alienation shall accept this property from the winding-up receiver or shall attach it to other persons within six months after the receipt of the notice.

### §6. The Bankruptcy of Natural Monopoly Entities

**Article 197.** General Provisions on the Bankruptcy of Natural Monopoly Entities

**1.** For the purposes of the present Federal Law "natural monopoly entity" means an organisation pursuing production and/or sale of goods (works, services) in a natural monopoly environment.

**2.** The natural monopoly entity shall be deemed incapable of meeting creditors' claims relating to monetary obligations, to payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract, and/or execute its duty to make mandatory payments if these obligations and/or duties have not been performed by it within six months after their due date.

**3.** A bankruptcy case may be initiated by a commercial court if the creditors' claims relating to monetary obligations, to payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract, and mandatory payments in respect of a debtor being a natural monopoly make up in their entirety at least 1,000,000 roubles. The said claims shall be confirmed by a writ of execution and shall not have been fully settled by means of levying execution on the property of the debtor indicated in Items 1 - 3 of the First Part of Article 94 of the Federal Law on Execution Proceeding.

**Article 198.** A Person Deemed Party to a Case of Bankruptcy of a Natural Monopoly Entity

Like the persons specified by the present Federal Law, the federal executive body authorised by the Government of the Russian Federation to pursue state policy in respect of a specific natural monopoly entity shall be deemed party to the case of bankruptcy of a debtor being a natural monopoly entity.

**Article 199.** Considering the Case of Bankruptcy of a Natural Monopoly Entity

**1.** If prior to the acceptance of an application for declaring a debtor bankrupt, a debtor being a natural monopoly entity filed a complaint with a court claiming declaration as invalid governmental bodies' acts on approval of prices (tariffs) for the goods (works, services) produced and/or sold in a natural monopoly environment, the implementing a proceeding in the bankruptcy case of such a debtor shall be suspended until the entry into force of a decision on the case of declaration as invalid these acts of governmental bodies.

**2.** The commercial court may decide to refuse to declare the debtor being a natural monopoly bankrupt if the relevant acts of the governmental bodies have been declared invalid in as much as they concerned the approval of prices (tariffs) for the goods (works, services) produced and/or sold in a natural monopoly environment.

**Article 200.** External Administration of a Natural Monopoly Entity

**1.** A receiver is not entitled to refuse to perform the debtor's contracts for the benefit of consumers in respect of which termination of obligations of relevant natural monopoly entities is prohibited by federal laws and other regulatory legal acts.

*[Unofficial translation from Russian]*

**2.** The receiver is not entitled to alienate the debtor's property being a single technological complex of a natural monopoly entity. This property includes movable and immovable and other property directly used for the production and/or sale of goods (works, services) in a natural monopoly environment as well as the stocks of expendable raw materials and materials used for performing the contracts related to the debtor's activity as a natural monopoly entity.

**Article 201.** Sale of the Property of a Debtor Being a Natural Monopoly Entity

**1.** When the proceedings applicable in a bankruptcy case are implemented the conditions specified in Item 2 of the present article shall be established as a condition sine qua non for the contract of purchase/sale of the property of the debtor being a natural monopoly entity which is directly used for the production and/or sale of goods (works, services) under natural monopoly conditions.

The debtor's property directly used for the production and/or sale of goods (works, services) under natural monopoly conditions shall be put up for sale as a single lot.

**2.** Below are the conditions sine qua non for the purchase/sale of property of a debtor being a natural monopoly entity:

the buyer's consent to assume the debtor's obligations under contracts of delivery of goods being the subject matter of regulation by the legislation on natural monopolies;

the assumption by the buyer of the obligation to ensure access to goods (works, services) produced and/or sold for consumers;

the presence of a licence of the pursuance of a relevant type of activity, if the debtor's activity is subject to licensing.

When the debtor's property directly used for the production and/or sale of goods (works, services) under natural monopoly conditions is offered for sale by tender the federal executive governmental body authorised by the Government of the Russian Federation to pursue state policy in respect of natural monopoly entities shall conclude an agreement on compliance with the terms of the tender with the buyer of the said debtors' property.

**3.** If the buyer of the debtor's property directly used for the production and/or sale of goods (works, services) under natural monopoly conditions is in breach of the terms set out in Item 2 of the present article the contract shall be subject to rescission by a commercial court on an application of the relevant federal executive governmental body.

When a contract is rescinded, the buyer of the property shall be reimbursed for the funds spent to buy property and effect investment in past investment periods. In the case of rescission of a contract, the property shall be transferred into federal ownership.

**4.** In the event of sale of a property directly used for the production and/or sale of goods (works, services) under natural monopoly conditions, the Russian Federation, the Russian regions and municipal entities as represented by relevant authorised bodies shall have a priority right to acquire the property offered for sale in the manner specified in Items 8 and 9 of Article 195 of the present Federal Law.

**5.** The Russian Federation, the Russian regions and municipal entities as represented by the relevant authorised bodies shall be entitled to suspend the sale of property directly used for the production and/or sale of goods (works, services) under natural monopoly conditions during external administration for a term not exceeding three months for the purpose of elaboration of proposals for restoring the solvency of the natural monopoly entity.

**6.** Changing the specialisation of or closing down a production facility (production facilities) pursuing the production (sale) of goods (works, services) under natural monopoly conditions shall be permitted in the manner established by federal law.

### § 7. The Bankruptcy of Developers

**Article 201.1.** General Provisions

**1.** The following notions are used for the purposes of the present paragraph:

1) **"person raising funds and/or property of participants in construction (hereinafter referred to as "developer")"** meaning a legal entity, irrespective of the organisational legal form thereof, for instance a housing construction cooperative or an individual entrepreneur, in respect of which there are claims for the transfer of dwelling premises or monetary claims;

2) **"participant in construction"** meaning a natural person, a legal entity, the Russian Federation, a subject of the Russian Federation or a municipal formation that has a claim for dwelling premises or a monetary claim addressed to a developer;

3) **"claim for transfer of dwelling premises"** meaning a claim of a participant in construction for the transfer into his ownership of dwelling premises (an apartment or a room) thereto under an onerous contract in a block of flats which had not been commissioned as of the time when the funds and/or other property of the participant in construction were raised

*[Unofficial translation from Russian]*

(hereinafter referred to as "contract for transfer of dwelling premises");

4) **"monetary claim"** meaning a claim of a participant in construction for:

refund of the amount of money paid before the rescission of a contract for transfer of dwelling premises and/or funds in the amount of value of the property that had been transferred to the developer before the rescission of such contract;

compensation for losses in the form of a real damage caused by a breach of the developer's obligation to transfer the dwelling premises under a contract envisaging the transfer of the dwelling premises;

refund of the amounts of money paid under a contract which is deemed invalid by a court or a commercial court and envisages the transfer of dwelling premises and/or funds in the amount of the value of the property that has been transferred to the developer under such contract;

refund of the funds paid under a contract which is deemed non-concluded by a court or a commercial court and envisaged the transfer of residential premises and/or funds in the amount of the value of the property that has been transferred to the developer under such contract;

5) **"construction project"** meaning a block of flats in respect of which a participant in construction has a claim for transfer of dwelling premises or had had that claim before the rescission of a contract envisaging the transfer of the dwelling premises, for instance a block of flats under construction (hereinafter referred to as "construction-in-process project");

6) **"land plot"** meaning a land plot which is already developed or is to be developed and on which a construction project site is located or is going to be built;

7) **"register of claims for the transfer of dwelling premises"** meaning a register containing claims -- deemed by a commercial court as substantiated -- for transfer of dwelling premises.

2. The rules established by the present paragraph are applicable irrespective of the developer's having a land plot by the right of ownership, lease or sublease, and also irrespective of the developer's having the right of ownership or another property right in respect of the constructed facility.

3. The debtor shall provide information that it is a developer or if the bankruptcy creditor or the empowered body know it they shall also provide such information in their application for deeming the debtor bankrupt.

In this case the commercial court in its ruling on accepting the application for deeming the debtor bankrupt shall refer to the applicability of the present paragraph in the debtor's bankruptcy. Information on the acceptance of the application for deeming the debtor bankrupt shall be published in the procedure established by Article 28 of the present Federal Law.

If the commercial court learns about the debtor's being a developer after the commencement of the bankruptcy case the commercial court shall issue the following on a petition of a person taking part in the bankruptcy case or on its own initiative: a ruling on applicability of the rules of the present paragraph in the bankruptcy of the debtor. The information contained in said ruling shall be published in the procedure established by Article 28 of the present Federal Law. The ruling can be appealed against.

4. On a petition of a person taking part in the bankruptcy case the commercial court is entitled to refer the case of the developer's bankruptcy to the commercial court at the location of the construction project site or the land plot or at the place of residence or the whereabouts of the majority of the participants in the construction project for being heard by it, if the commercial court has established that such referral is conducive to a more effective protection of the rights of participants in the construction project.

Information about the referral of the case of the developer's bankruptcy to another commercial court for its being heard by it in accordance with Paragraph 1 of the present item shall be published in the procedure established by Article 28 of the present Federal Law.

5. While considering the existence of a good reason for the claims of participants in the construction project the commercial court shall establish if there exist claims for the transfer of dwelling premises or monetary claims, for instance by means of recognising as fictitious the transactions concluded by participants in the construction project with the developer and/or the third persons acting in its interests.

If third persons are involved in such transactions they shall be made to take part in the arbitration litigation in case of the developer's bankruptcy when the issues specified in Paragraph 1 of the present item are being considered.

6. The commercial court is entitled to recognise that a participant in the construction project has a claim for transfer of dwelling premises or a monetary claim, inter alia, in the following cases:

1) a contract of participation in shared construction project has been concluded;

2) a contract of purchase/sale of the dwelling premises in the constructed facility has been concluded;

*[Unofficial translation from Russian]*

3) a preliminary contract of participation in the shared construction project or a preliminary contract of purchase/sale of the dwelling premises in the constructed facility has been concluded;

4) a contract of loan has been concluded under which obligations concerning the refund of the sum of the loan are terminated by the transfer into ownership of the dwelling premises in the block of flats after the completion of its construction;

5) an amount of money and/or another property has been delivered as a contribution in the contributed capital of a limited partnership (partnership in commendam) as involving the subsequent transfer of the dwelling premises in the block of flats into ownership after its construction was completed;

6) a contract of ordinary partnership has been concluded for the purpose of building the block of flats as involving the subsequent transfer of the dwelling premises in such block of flats into ownership;

7) a promissory note has been issued for the purpose of being later on used to make payment for the dwelling premises in the block of flats;

8) an amount of money has been delivered to a housing construction cooperative for the purposes of participation in the construction of the block of flats;

9) other transactions have been concluded as involving the transfer of amounts of money and/or other property for the purposes of constructing the block of flats and the subsequent transfer of the dwelling premises in such block of flats into ownership.

**7.** Starting from the date on which supervision is instituted in respect of the developer, the debtor may conclude contracts -- exclusively with the consent of the interim receiver expressed in writing -- that envisage the transfer of dwelling premises, and agreements on amending or rescinding such contracts and also may conclude other transactions in respect of immovable property, for instance land plots.

**8.** A ruling on instituting of supervision in respect of the developer shall be sent by the commercial court to the bodies responsible for the state registration of rights in respect of immovable property and of transactions in such property at the location of the developer's land plots.

**9.** A decision of a meeting of creditors on conclusion of an amicable agreement in the case of the developer's bankruptcy shall be adopted by the majority of the total number of votes of the bankruptcy creditors and empowered bodies in accordance with the register of creditors' claims, and it shall be deemed adopted if all the creditors relating to the obligations secured with the mortgage of the debtor's property have voted for it and also at least three quarters of the votes of participants in the construction project did so.

**Article 201.2.** The Persons Taking Part in the Case of the Developer's Bankruptcy

**1.** Apart from the persons envisaged by Article 34 of the present Federal Law the following are deemed persons taking part in the case of the developer's bankruptcy: the participants in the construction project having claims for transfer of dwelling premises and also the empowered executive governmental body of a subject of the Russian Federation exercising control and supervision in the area of shared construction of blocks of flats and/or other pieces of immovable property on the site.

**2.** The rulings envisaged by Paragraphs 2 and 3 of Item 3 of Article 201.1 of the present Federal Law shall be sent by the commercial court to the governmental body specified in Item 1 of the present article.

**Article 201.3.** The Details of Taking Measures for Securing the Creditors' Claims and the Debtor's Interests

**1.** On a petition of an applicant or another person taking part in the case of the debtor's bankruptcy the commercial court is entitled to take the following measures for securing the creditors' claims and the debtor's interests (security measures) apart from the measures envisaged by the Arbitration Procedural Code of the Russian Federation and the present Federal Law: a ban on the lessor's concluding a contract of lease of a land plot with a person other than the developer and a ban on the state registration of such contract of lease and also a ban on the lessor's otherwise disposing the given land plot.

The commercial court shall notify the body responsible for the state registration of rights to immovable property and or transactions in such property at the location of the land plot of the security measures taken as a ban on the state registration of a contract of lease in respect of said land plot.

**2.** Notification of the fact that the petition mentioned in Item 1 of the present article has been considered by the court shall be given to the lessor under the contract of lease of the land plot who is entitled to take part in the arbitration litigation in the bankruptcy case when the issue described in Item 1 of the present article is considered.

**3.** The security measures mentioned in Item 1 of the present article may be taken by the commercial court only if the person who filed the relevant petition has provided evidence of the existence of the constructed facility on the land plot or of the commencement of construction of the given project.

**4.** The security measures mentioned in Item 1 of the present article shall be effective until the date of termination of a

winding-up proceeding in respect of the debtor, except as otherwise envisaged by the present Federal Law.

**Article 201.4.** The Details of the Filing of Claims by Participants in the Construction Project in the Event of the Developer's Bankruptcy and the Consideration Thereof by the Commercial Court

**1.** Starting from the date of the commercial court's ruling on instituting supervision in respect of the developer, in the course of supervision and all the subsequent procedures used in the case of the developer's bankruptcy the claims for transfer of dwelling premises and/or the monetary claims of participants in the construction project, except for claims concerning current payments may be presented to the developer only within the framework of the case of the developer's bankruptcy in the observance of the procedure established by the present paragraph for presentation of claims to a developer.

**2.** Starting from the date on which supervision is instituted in respect of the developer, in the course of supervision and all the subsequent procedures used in case of the developer's bankruptcy the performance under execution documents on the claims of participants in the construction project envisaged by Item 1 of this Article shall be suspended. From the date of commencement of a winding-up proceeding the performance of said execution documents shall be terminated.

Within five days after being endorsed the interim receiver or the winding-up receiver shall notify all the participants in the construction project they know of the institution of supervision or of the commencement of the winding-up proceeding and on the opportunity for participants in the construction project to file claims for transfer of dwelling premises and/or monetary claims and also the opportunity for a participant's unilaterally refusing to perform the contract envisaging the transfer of dwelling premises.

**3.** The costs incurred by the qualified receiver while notifying the creditors of filing claims for the transfer of dwelling premises and/or monetary claims shall be met by him at the expense of the debtor.

**Article 201.5.** The Details of Filing Monetary Claims and of Their Being Considered by the Commercial Court

**1.** The commencement of a winding-up proceeding in respect of the developer shall be deemed a ground for the unilateral refusal by a construction project participant to perform the contract envisaging the transfer of dwelling premises. Such refusal may be declared within the framework of the case of the developer's bankruptcy in the course of establishing the amount of the monetary claim of the construction project participant.

**2.** When establishing the amount of the monetary claim of a construction participant, shall be taken into account the extent of losses in the form of the real damage caused by the builder's failure to discharge the duty to transfer residential premises, in the form of difference between the cost of residential premises (estimated as of the date of introduction of the procedure applied in a bankruptcy case in respect of the builder within whose framework the claim of a construction participant is made) to be transferred to the construction participant and the amount of monetary assets paid under the contract providing for the transfer of residential premises and/or the cost of the property transferred to the builder (fixed by the contract providing for the transfer of residential premises).

An excess of the amount of monetary assets paid under the contract providing for the transfer of residential premises and/or the cost of the property transferred to the builder over the cost of residential premises (estimated as of the date of introduction of the procedure applied in a bankruptcy case in respect of the builder within whose framework the claim of a construction participant is made) which are to be transferred to the construction participant may not serve as a ground for reduction of the amount of monetary claims of the construction participant or entail other negative effects for such construction participant.

The value of the property delivered to the developer and the value of the dwelling premises which had to be transferred to the participant in the construction project shall be assessed by an appraiser invited by the qualified receiver at the expense of the developer. The relevant report on the assessment shall be sent by the qualified receiver to the construction project participant and the commercial court.

**3.** Also information about the dwelling premises (for instance the area thereof) being the subject matter of a contract envisaging the transfer of dwelling premises shall be included in the register of creditors' claims in respect of a monetary claim.

**4.** At the request and at the expense of the insurer that has insured the builder's civil liability for failure to discharge or improper discharge of the obligations involved in transfer of residential premises under an agreement on participation in share construction in compliance with Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation or of the bank that has issued a guarantee in respect of proper discharge by the builder of the obligations involved in transfer of residential premises under an agreement on participation in share construction, the qualified receiver or the registrar shall send an extract from the register of creditors' claims as to the amount, composition and order of satisfaction of the construction participants' claims.

**Article 201.6.** The Details of Filing Claims for Transfer of Dwelling Premises and of Their Being Considered by the Commercial Court

**1.** Claims for transfer of dwelling premises shall be filed and considered in the procedure established by Articles 71 and 100 of the present Federal Law.

**2.** While the commercial court is considering the existence of a good reason for claims for transfer of dwelling premises it shall be provided with evidence of that fact that the construction project participant has fully or partially made his payment to perform his duties in respect of the developer under the contract envisaging the transfer of the dwelling premises.

**3.** A claim for transfer of dwelling premises that has been recognised as well-grounded by the commercial court shall be included by the qualified receiver in the register of claims for transfer of dwelling premises.

**4.** A ruling on inclusion of a claim for transfer of dwelling premises in the register of claims for transfer of dwelling premises or a ruling on refusal to include said claim in that register is subject to appeal.

**5.** In as much as it concerns claims for transfer of dwelling premises participants in the construction project are entitled to attend meetings of creditors and have the number of votes determined according to the sum paid by a participant in the construction project to the developer under a contract envisaging the transfer of dwelling premises and/or the value of the property delivered to the developer, and the amount of loss in the form of actual damage defined in compliance with Item 2 of Article 201.5 of this Federal Law.

**6.** Participants in the construction project are entitled to present their objections in respect of the claims of other creditors in the procedure established by Articles 71 and 100 of the present Federal Law.

Article 201.7. The Register of Claims for Transfer of Dwelling Premises

**1.** The following information shall be included in the register of claims for transfer of dwelling premises:

1) the sum paid by a participant in the construction project to the developer under a contract envisaging the transfer of dwelling premises and/or the value in roubles of the property delivered to the developer;

2) the amount of the construction project participant's outstanding obligations owing the developer under the contract envisaging the transfer of dwelling premises, in roubles (for instance the value of non-delivered property specified in such contract);

3) information on the dwelling premises (for instance the area thereof) deemed the subject matter of the contract envisaging the transfer of dwelling premises and also the information whereby the constructed facility is identified according to such contract.

**2.** The rules for keeping the register of claims for transfer of dwelling premises, for instance the composition of the information that is to be included in the register and the procedure for provision of information out of the register of claims for transfer of dwelling premises shall be endorsed by a federal standard in the procedure established by the present Federal Law.

A register of claims for transfer of residential premises shall be kept in respect of each construction object.

Article 201.8. Considering Claims in Respect of Immovable Property in the Case of the Debtor's Bankruptcy

**1.** Starting from the date on which the commercial court issues its ruling instituting supervision in respect of the developer, in the course of supervision and of all the subsequent procedures used in the case of the developer's bankruptcy, the following claims of other persons addressed to the developer or of the developer addressed to other persons shall be presented and considered only within the framework of the case of the developer's bankruptcy in keeping with the procedure established by the present article:

1) for recognition of the existence or lack of the right of ownership or another right or encumbrance in respect of a piece of immovable property, for instance construction-in-process;

2) for reclamation of immovable property, for instance construction-in-process facilities, form another's unlawful possession;

3) for demolition of a structure built without authorisation;

4) for deeming a transaction in respect of a piece of immovable property invalid or non-concluded and for the application of the consequences of an invalid transaction to immovable property;

5) for transfer of immovable property for the purpose of setting off an obligation to transfer it into ownership, economic jurisdiction, operative management or use;

6) for state registration of the assignment of the right of ownership in immovable property.

**2.** A court session of the commercial court dedicated to the hearing of the claims envisaged by Item 1 of the present article shall be conducted by a judge of the commercial court in the procedure established by the Arbitration Procedural Code of the Russian Federation with the details envisaged by the present Federal Law. No preliminary court-room meeting shall be

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 23 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 267
of 317
*[Unofficial translation from Russian]*

conducted to consider said claims.

**3.** The claims envisaged by Item 1 of the present article shall be considered by the commercial court within three months after their being received by the court.

**4.** The form and contents of the claims envisaged by Item 1 of the present article and the procedure for filing them with the commercial court shall meet the requirements applicable to a complaint according to the Arbitration Procedural Code of the Russian Federation. The person presenting a claim (applicant) shall send copies of claims and the documents attached thereto by a registered letter with return receipt requested to the developer or the other persons to which the claims are addressed.

**5.** The applicant and the persons to which the claims are addressed are persons taking part in the consideration of these claims by the commercial court.

Said persons in respect of the merits of the declared claims are entitled to get acquainted with the case materials, make excerpts from them as well as copies of them; declare demurral; present evidence and get acquainted with the evidence provided by the other persons taking part in the consideration of claims by the commercial court before the beginning of judicial proceedings; take part in the examination of evidence; put questions to the other persons taking part in the consideration of claims by the commercial court, make statements, provide explanations to the commercial court, provide their arguments concerning all the issues occurring in the course of the case hearing; get acquainted with the petitions declared by the other personell taking part in the consideration of claims by the commercial court, object to the petitions and arguments of the other persons taking part in the consideration of claims by the commercial court; know about the complaints filed by the other persons taking part in the consideration of claims by the commercial court, know about the judgements issued in this case and receive copies of the judgements issued as a separate document; take appeal from the rulings issued according to the results of consideration of claims.

**6.** The judge of the commercial court shall notify the following of the time and place of the would-be court session that will consider claims: the applicant and also the persons to which claims are addressed, the qualified receiver, a representative of the meeting of creditors or a representative of the committee of creditors (if any) and a representative of the owner of property or of the founders of the developer.

**7.** According to the results of consideration of the claim the commercial court shall issue one of the following rulings:

1) on upholding the claim;

2) on refusal to uphold the claim.

**8.** Appeal from the ruling may be taken in accordance with Part 3 of Article 223 of the Arbitration Procedural Code of the Russian Federation.

A writ of execution may be issued on the basis of the commercial court's ruling.

**Article 201.8-1.** The Specifics of Declaring the Builder's Transactions Invalid

**1.** The rule of Item 2 of Article 61.4 of this Federal Law shall apply in respect of the builder's transactions made for the purpose of financing the construction of an incomplete construction object and aimed at discharging the builder's obligations in respect of the cited transaction, in particular in respect of the transactions aimed at termination of the parties' mutual obligations, regardless of the price of the property to be transferred within the framework of a single or several interrelated transactions or of the extent of the obligations or duties assumed in respect of the cited transactions.

**2.** The transactions cited in Item 1 of this article may be declared invalidated on the grounds of Item 1 of Article 61.2 or Article 61.3 of this Federal Law in the following instances:

1) the use by the builder of the monetary assets paid by the share construction participants under a contract for the purpose of financing the construction of an incomplete construction object in defiance of the requirements of Article 18 of Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation;

2) if the price of a transaction and/or other terms thereof as of the time of making it were essentially worse for the builder than the price and/or other terms according to which under comparable circumstances similar transactions are made and the qualified receiver's consent to making it has not been obtained;

3) if the monetary assets derived from a transaction for financing the construction of an incomplete construction object were not used through a special bank account cited in Article 201.8-2 of this Federal Law.

**Article 201.8-2.** The Special Bank Account for Financing the Construction of Incomplete Construction Object

**1.** For the purpose of financing the construction of an incomplete construction object, the builder or, should the authority of its head be terminated, the qualified receiver on behalf of the builder shall open a special builder's bank account.

*[Unofficial translation from Russian]*

**2.** Under the contract of the bank account cited in Item 1 of this article monetary assets shall be written off the builder's special account by approbation of the qualified receiver (in the course of observation or financial improvement) or by order of the qualified receiver (in the event of termination of the authority of the builder's head in the course of any procedure applicable in a bankruptcy case) solely for the purpose of making settlements in respect of the builder's obligations in compliance with the goals provided for by Article 18 of Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation and may not be written off for discharging other builder's obligations or obligations of the qualified receiver or of the persons satisfying the creditors' claims.

**3.** Execution may not be levied against the assets kept on the builder's special bank account in compliance with this article in respect of other builder's obligations or obligations of the qualified receiver or of the persons satisfying the creditors' claims.

**4.** The transactions involved in the disposal of the assets kept on the builder's special bank account which are made in defiance of the requirements of this article may be declared invalidated on demand of the persons participating in a bankruptcy case in the procedure provided for by Article 61.8 of this Federal Law.

**Article 201.9.** The Priority Ranking of Meeting the Claims of Creditors in the Case of the Developer's Bankruptcy

**1.** During a winding-up proceeding used in the case of the developer's bankruptcy creditors' claims, except for creditors' claims for current payments, shall be met according to the following priority ranking:

1) as Priority Category 1: accounts shall be settled for claims of the individuals to whom the debtor is liable for causing harm to life or health, by means of capitalising relevant time-based payments, compensation in excess of the compensation for harm;

2) as Priority Category 2: accounts shall be settled for the disbursement of the severance benefits and remuneration for the labour of persons who are working or have been working under labour contracts and for the disbursement of royalties to the authors of the results of intellectual activities;

3) as Priority Category 3: accounts shall be settled for monetary claims of the individuals being participants in the construction project;

4) as Priority Category 4: accounts with other creditors shall be settled.

**1.1.** In the course of bankruptcy proceedings in the third turn, after satisfying the monetary claims of the individuals who are construction participants are subject to satisfaction the claims of the person securing in compliance with Federal Law No. 214-FZ of December 30, 2004 on Participation in Shared Construction of Apartment Houses and Other Immovable Property Items, as Well as on Amending Certain Legislative Acts of the Russian Federation, the discharge by the builder of the obligations involved in the transfer of residential premises under a shared construction participation agreement that have passed over thereto as a result of discharge of secured obligations towards the individuals who are construction participants.

The claims of the person securing in compliance with Federal Law No. 214-FZ of December 30, 2004 on Participation in Shared Construction of Apartment Houses and Other Immovable Property Items, as Well as on Amending Certain Legislative Acts of the Russian Federation the discharge by the builder of the obligations involved in the transfer of residential premises under a shared construction participation agreement that have passed over thereto as a result of discharge of secured obligations towards the construction participants which are legal entities are subject to satisfaction in the fourth turn.

**1.2.** In the event of receiving by a construction participant on the basis of a claim (part of a claim) included in a register of creditors' claims the insurance payment made by the insurer that has insured the builder's civil liability for failure to discharge or improper discharge of the obligations involved in the transfer of residential premises under an agreement on participation in share construction in compliance with Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation or the payment made by the bank that has issued a guarantee in respect of proper discharge by the builder of the obligations involved in transfer of residential premises under an agreement on participation in share construction, the rate of such claim shall be reduced by the bankruptcy receiver by the amount of the payment made on application of the construction participant that has received such payment or of the person that has made such payment.

**2.** When accounts have been settled with Priority Category 4 creditors, accounts shall be settled with creditors for the purpose of meeting claims in respect of a transaction deemed invalid according to Item 2 of Article 61.2 and Item 3 of Article 61.3 of the present Federal Law.

**3.** Creditors' claims for obligations secured with the mortgage of the debtor's property shall be met with the value of the mortgaged item in the procedure established by Article 201.14 of the present Federal Law.

**4.** Abrogated.

**Article 201.10.** Settling the Claims of Participants in the Construction Project by Means of Transferring a Construction-in-Process Facility

**1.** In the course of the financial rehabilitation, external administration and winding-up proceeding if the developer has a construction-in-process facility the qualified receiver shall bring the following to the agenda of a meeting of participants in the construction project not earlier than after two months and not later than after six months its confirming: the issue of filing a petition with the commercial court for settlement of the claims of the participants in the construction project by means of assigning the developer's rights to the construction-in-process facility and the land plot to a housing construction cooperative formed by the participants in the construction project or to another specialised consumer cooperative (hereinafter referred to as "transfer of a construction-in-process facility").

Before the meeting of construction project participants that is going to consider the issue of filing a petition with the commercial court for settlement of the claims of construction project participants by means of transferring the construction-in-process facility is held the qualified receiver shall inform the participants in the construction project about the procedure for the formation, operation, transformation and liquidation of the housing construction cooperative or another specialised consumer cooperative, for instance about the rights and duties of members of such cooperative, and shall make sure the construction project participants get acquainted with said information against signature or by registered post with return receipt requested.

**2.** The set of materials which will be considered by the meeting of participants in the construction project shall include a statement of the qualified receiver on the possibility or impossibility of transfer of the construction-in-process facility, a report on the assessment of the developer's rights to the construction-in-process facility and the land plot and a draft decision on the formation of the housing construction cooperative or the other specialised consumer cooperative. The statement of the qualified receiver shall comprise the following:

1) a feasibility study concerning the possibility or impossibility (for instance technical and financial and also with due regard to the requirements set out in the present article) of transfer of the construction-in-process facility;

2) information on the degree of completion of the construction-in-process facility;

3) information on the amounts of financing and the term required for completing the construction of the construction-in-process facility;

4) information on the sum of money that is to be provided by the participants in the construction project and/or third persons to meet creditors' claims for current payments, the claims of Priority Category 1 and 2 creditors, and the claims of the creditors who are not participants in the construction project and for obligations secured with the mortgage of the developer's rights in the construction-in-process facility and the land plot, in the procedure established by Items 4-6 of the present article.

**3.** The construction-in-process facility may be transferred to the participants in the construction project if the following conditions are simultaneously observed:

1) the value of the developer's rights in the construction-in-process facility and the land plot does not exceed by over five per cent the aggregate amount of the claims of the construction project participants included in the register of creditors' claims and the register of claims for transfer of dwelling premises or a decision is taken by the three quarters of votes of Priority Category 4 creditors, except for the legal entities being participants in the construction project, on the consent to the transfer of the construction-in-process facility or amounts of money are delivered into the deposit account of the commercial court in accordance with Item 4 of the present article. When estimating the amount of claims of construction participants included into a register of claims for transfer of residential premises shall be also taken into account the extent of losses in the form of real damage estimated in compliance with Item 2 of Article 201.5 of this Federal Law;

2) the property the debtor still has after the transfer of the construction-in-process facility is sufficient for making current payments connected with court costs in a bankruptcy case, payment of remuneration to the qualified receiver, payment for the activities of the persons whose engagement by the qualified receiver for the discharge of the duties imposed on him/her in a bankruptcy case in compliance with this Federal Law is obligatory and settling the claims of Priority Category 1 and 2 creditors or amounts of money are delivered to the special-purpose bank account of the debtor in accordance with Item 5 of the present article;

3) the register of creditors' claims does not contain claims of creditors not being participants in the construction project for obligations secured with the mortgage of the developer's rights in respect of the construction-in-process and the land plot or said creditors have agreed to the transfer of the construction-in-process facility or amounts of money have been delivered into the deposit account of the commercial court in accordance with Item 6 of the present article;

4) after the completion of the construction of a specific construction-in-process facility that facility contains dwelling premises sufficient to meet the claims of all participants in the construction project in respect of the specific constructed facility included in the register of creditors' claims and the register of claims for transfer of dwelling premises according to the terms of the contracts envisaging transfer of dwelling premises (for instance, there are no claims of several participants in the construction project for transfer of same dwelling premises in a block of flats, except for the cases envisaged by Item 7 of the

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 26 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 270
of 317
*[Unofficial translation from Russian]*

present article). On the consent of a participant in the construction project it is possible that he gets dwelling premises different in terms of area, layout or location from the dwelling premises that comply with the terms of the contract envisaging the transfer of dwelling premises;

5) the construction-in-process facility belongs to the developer by the right of ownership;

6) the land plot on which the construction-in-process facility is located belongs to the developer by the right of ownership or another property right;

7) a decision has been taken by participants in the construction project on the formation of a housing construction cooperative or another specialised consumer cooperative that meets the requirements set out in Item 8 of the present article.

**4.** If the value of the developer's rights in the construction-in-process facility and the land plot exceeds by over five per cent the aggregate amount of the claims of participants in the construction project included in the register of creditors' claims and the register of claims for transfer of dwelling premises then participants in the construction project and/or third persons are entitled to deliver funds in the amount of such surplus less five per cent into the deposit account of the commercial court before consideration by the commercial court of a petition for transfer of the construction-in-process facility. The funds shall be delivered by the participants in the construction project pro rata to their claims, except as otherwise established by a decision of a meeting of participants in the construction project.

**5.** If the property of the debtor remaining after transfer of construction in progress is insufficient for making the current payments connected with court costs in a bankruptcy case, payment of remuneration to the qualified receiver, payment for the activities of the persons whose engagement by the qualified receiver for the discharge of the duties imposed on him/her in a bankruptcy case in compliance with this Federal Law is obligatory due and claims of creditors of the first and second priority, participants of the construction and/or third parties shall, according to Article 201.15 of this Federal Law, have the right to place funds in the special-purpose bank account of the debtor in the amount exceeding the total of cited current payments and claims of creditors of the first and second priority over the value of the developer's property that remains after the transfer of the construction in progress, but not more than 10 per cent of the value of the developer's title to the construction in progress and the land plot, before consideration of the application for transfer of the construction in progress by a commercial court. The funds shall be placed by participants of the construction proportionally to the amount of their claims, if not otherwise established by the meeting of participants of the construction.

**6.** If the claims of the creditors which are not participants in the construction project and have been included in the register of creditors' claims are secured with the mortgage of the developer's rights in the construction-in-process and the land plot, then participants in the construction project and/or third persons are entitled to do the following before the commercial court considers the petition for transfer of the construction-in-process facility: transfer funds into the deposit account of the commercial court in the amount sufficient to meet the claims of said creditors and established by Subitem 1 of Item 1 of Article 201.14 of the present Federal Law.

**7.** If the block of flats upon the completion of construction thereof does not contain sufficient dwelling premises to meet the claims of all participants in the construction project included in the register of creditors' claims and the register of claims for transfer of dwelling premises according to the terms of the contracts envisaging transfer of dwelling premises in said block of flats, for instance when there are claims of several participants in the construction project for transfer of dwelling premises in respect of same dwelling premises in said block of flats, the transfer of the construction-in-process facility is possible on the condition that as the result of refusal of specific participants in the construction project to receive dwelling premises in said constructed facility they will be sufficient to meet the claims of the remaining participants in the construction project. Applications expressing said refusals shall be sent to the qualified receiver and the commercial court.

In this case, the claims of the individuals that are participants in the construction project or the legal entities being participants in the construction project -- which have refused to receive dwelling premises -- shall be transformed into monetary claims in the procedure established by the present Federal Law and shall be settled within the claims of Priority Category 3 and 4 creditors respectively.

**8.** The housing construction cooperative or the other specialised consumer cooperative shall meet the following requirements:

1) the main objectives of the operation of the housing construction cooperative or the other specialised consumer cooperative are as follows: the completion of construction of the block of flats and the provision of dwelling premises in the block of flats whose construction has been completed to the members of said cooperative according to the terms of the contracts envisaging the transfer of dwelling premises;

2) all the construction project participants whose claims have been included in the register of creditors' claims and the register of claims for transfer of dwelling premises (except for the participants in the construction project which have waived the transfer of a construction-in-process facility) are members of the housing construction cooperative or the other specialised consumer cooperative;

269

*[Unofficial translation from Russian]*

3) as share contributions the members of the housing construction cooperative or the other specialised consumer cooperative contribute -- when it is formed -- the developer's rights in the construction-in-process facility and the land plot which have been assigned to them and also amounts of money for the purpose of completing the construction, within the term established by the charter of such cooperative.

**9.** The following may take part in the formation of the housing construction cooperative or the other specialised consumer cooperative apart from the participants in the construction project: other persons if after the completion of construction of the construction-in-process facility it contains more dwelling premises than required for meeting the claims of all construction project participants included in the register of creditors' claims and the register of claims for transfer of dwelling premises.

**10.** No consent is required from the lessor of the land plot to the assignment of the developer's rights in that land plot to participants in the construction project.

**11.** Notification shall be provided concerning the commercial court's hearing the issue envisaged by Item 1 of the present article to all creditors, for instance all participants in the construction project, according to the register of creditors' claims and the register of claims for transfer of dwelling premises. According to the results of consideration of the petition of the meeting of construction project participants for transfer of the construction-in-process facility the commercial court shall turn out a ruling:

1) on upholding the petition and transferring the construction-in-process facility if the conditions for such transfer envisaged by the present article are observed;

2) on refusing to uphold the petition if the conditions for such transfer envisaged by the present article are not observed.

**12.** Appeal from the rulings mentioned in Item 11 may be taken in the procedure established by the Arbitration Procedural Code of the Russian Federation.

**13.** If the commercial court turns out a ruling on transferring the construction-in-process facility the claims of the construction project participants who voted against such transfer and refused to take part in it shall be transformed into monetary claims in the procedure established by the present Federal Law and shall be settled within the claims of Priority Category 3 and 4 creditors respectively.

If the commercial court turns out a ruling on transferring the construction-in-process the amounts of money that have been delivered by participants in the construction project and/or third persons into the deposit account of the commercial court, or into the special-purpose bank account of the debtor, shall be used to settle the relevant claims of creditors.

If the commercial court turns out a ruling on refusing to uphold the petition then the decision on the formation of the housing construction cooperative or the other specialised consumer cooperative shall be deemed terminated, and the amounts of money delivered by construction project participants and/or third persons to the deposit account of the commercial court or to the special-purpose bank account of the debtor, shall be refunded to the construction project participants and/or third persons.

**14.** The developer's rights in the construction-in-process and the land plot shall be assigned to the housing construction cooperative or the other specialised consumer cooperative as smart money in respect of claims for transfer of dwelling premises and monetary claims.

The claim of a construction project participant may be settled with smart money. The amount of portion of the claim above shall be equal to the ratio of the value of the developer's rights in the construction-in-process facility and the land plot and the aggregate amount of the claims of construction project participants included in the register of creditors' claims and the register of claims for the transfer of dwelling premises.

Starting from the date of the commercial court's ruling on transferring the construction-in-process the claims of construction project participants in the relevant portion shall be deemed settled, with claims for the transfer of dwelling premises in as much as the outstanding portion is concerned shall be transformed into monetary claims.

According to the commercial court's ruling on transferring construction-in-process the claims of construction project participants settled in the respective portion shall be removed by the qualified receiver from the register of creditors' claims and the register of claims for transfer of dwelling premises, and the portion of claims for the transfer of dwelling premises that remains outstanding shall be removed from the register of claims for transfer of dwelling premises and included in the register of creditors' claims.

The claims of construction project participants in as much as it concerns the portion not settled as the result of the transfer of the construction-in-process facility shall be met within the claims of Priority Category 3 and 4 creditors respectively.

**15.** As the performance of the developer's obligation his rights in the construction-in-process and the land plot shall be assigned by the qualified receiver to the housing construction cooperative or another specialised consumer cooperative under the

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 28 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 272
of 317
*[Unofficial translation from Russian]*

commercial court's ruling on transfer of the construction-in-process facility.

The assignment of the developer's rights in the construction-in-process facility and the land plot to the housing construction cooperative or another specialised consumer cooperative shall undergo after the state registration of such cooperative under an application of the developer as represented by the qualified receiver and the ruling of the commercial court on the transfer of the construction-in-process facility. As of the time of registration of the transfer of the rights to such cooperative the right of ownership in the construction-in-process facility and the right of ownership or the rights and duties of a lessee in respect of the land plot are transferred.

**16.** If the developer has several construction-in-process facilities a housing construction cooperative or another specialised consumer cooperative shall be formed in respect of each of the facilities, and in this case a decision of a meeting of construction project participants shall be adopted and a ruling by the commercial court shall be turned out in respect of all these facilities simultaneously.

**Article 201.11.** Settling the Claims of Participants in the Construction Project by Means of Handing over Dwelling Premises Thereto

**1.** If the developer has a block of flats whose construction has been completed, the arbitration insolvency practitioner shall do the following not earlier than after 2 months and not later than after 6 months from the date of its approval (if the construction is completed in the course of the bankruptcy proceedings - not later than 6 months after the day of its completion): put on the agenda of a meeting of construction project participants the issue of filing a petition with the commercial court for settlement of the claims of construction project participants by means of transferring dwelling premises in that block of flats into their ownership (hereinafter referred to as "transfer of dwelling premises to participants in the construction project").

**2.** The set of the materials to be considered by the meeting of construction project participants shall include a statement of the qualified receiver on the possibility or impossibility of transferring dwelling premises to participants in the construction project and the report on their value.

The statement of the qualified receiver shall comprise a feasibility study on the possibility or impossibility with due regard to the provisions of the present article concerning the transfer of dwelling premises to participants in the construction project.

**3.** Dwelling premises may be handed over to participants in the construction project if the following conditions are simultaneously observed:

1) there is a commissioning permit in respect of the block of flats whose construction has been completed, such permit having been obtained in the procedure established by the legislation on town-planning activities;

2) the developer and the participants in the construction project have not signed acceptance certificates or other documents concerning the transfer of dwelling premises to participants in the construction project;

3) the value of the dwelling premises being transferred does not exceed by over five per cent the aggregate amount of the claims of construction project participants included in the register of creditors' claims and the register of claims for transfer of dwelling premises or three quarters of votes of Priority Category 4 creditors, except for legal entities being participants in the construction project, have taken a decision on consent to the transfer of dwelling premises to participants in the construction project or amounts of money have been delivered into the deposit account of the commercial court in accordance with Item 4 of Article 201.10 of the present Federal Law. When estimating the amount of claims of construction participants included into a register of claims for transfer of residential premises shall be also taken into account the extent of losses in the form of real damage estimated in compliance with Item 2 of Article 201.5 of this Federal Law;

4) the property the developer still has after the transfer of dwelling premises to participants in the construction project is sufficient for making current payments cited in Subitem 2 of Item 3 of Article 201.10 of this Federal Law and settling the claims of Priority Category 1 and 2 creditors or amounts of money have been delivered into the special-purpose bank account of the debtor in accordance with Item 5 of Article 201.10 of the present Federal Law;

5) the register of creditors' claims does not contain claims of the creditors not being participants in the construction project in respect of obligations secured with the mortgage of the developer's rights in the block of flats whose construction has been completed, the land plot, the transferred dwelling premises or said creditors have agreed to the transfer of dwelling premises to participants in the construction project or amounts of money have been delivered into the deposit account of the commercial court in accordance with Item 6 of Article 201.10 of the present Federal Law;

6) dwelling premises are transferred to all participants in the construction project according to the terms of the contracts envisaging the transfer of dwelling premises, and the dwelling premises being transferred are sufficient to meet the claims of all construction project participants included in the register of creditors' claims and the register of claims for transfer of dwelling premises (for instance there are no claims of several construction project participants for same dwelling premises in the block of flats, except for the cases envisaged by Item 7 of Article 201.10 of the present Federal Law). On the consent of a

271

participant in the construction project it is possible that he gets dwelling premises different in terms of area, layout or location from the dwelling premises that comply with the terms of the contract envisaging the transfer of dwelling premises.

**4.** Notification concerning the commercial court's consideration of the issue envisaged by Item 1 of the present article shall be provided to all creditors, including all participants in the construction project, according to the register of creditors' claims and the register of claims for the transfer of dwelling premises. According to the results of consideration of the petition of the meeting of construction project participants for transfer of dwelling premises to participants in the construction project the commercial court shall issue a ruling:

1) on upholding the petition and on transfer of dwelling premises to participants in the construction project if the conditions for such transfer envisaged by the present article are observed;

2) on refusing to uphold the petition if the conditions envisaged by the present article for such transfer are not observed.

**5.** Appeal may be taken from the rulings mentioned in Item 4 of the present article in the procedure established by the Arbitration Procedural Code of the Russian Federation.

**6.** The ruling on the transfer of dwelling premises to participants in the construction project shall indicate which dwelling premises are transferred to each participant in the construction project.

If the commercial court turns out a ruling on the transfer of dwelling premises to participants in the construction project the amounts of money that have been delivered by construction project participants and/or third persons into the deposit account of the commercial court, or into the deposit account of the commercial court shall be used to settle relevant creditors' claims.

If the commercial court issued a ruling on refusing to uphold the petition, the amounts of money delivered by construction project participants and/or third persons into the deposit account of the commercial court, or to the deposit account of the commercial court, shall be refunded to the participants in the construction project and/or third persons.

**7.** The dwelling premises item shall be transferred as smart money to a participant in the construction project who has a monetary claim, and in this case such claim shall be settled in the amount of value of the dwelling premises transferred.

Under the commercial court's ruling on transfer of dwelling premises to participants in the construction project the qualified receiver shall fully settle claims for transfer of dwelling premises in the register of claims for transfer of dwelling premises and also settle in the respective portion monetary claims in the register of creditors' claims.

The claims of participants in the construction project in the portion not settled as the result of transfer of dwelling premises to participants in the construction project shall be met within the claims of Priority Category 3 and 4 creditors respectively.

**8.** If in the procedure established by a federal law the developer has obtained a commissioning permit in respect of the block of flats and the developer and a participant in the construction project have signed before the date of acceptance of the application for deeming the developer bankrupt an acceptance certificate or another document on the delivery of dwelling premises the commercial court shall adopt a judgement concerning an application of the construction project participant on recognition of the right of ownership of the construction project participant in the dwelling premises.

**Article 201.12.** The Meeting of Participants in the Construction Project

**1.** A meeting of participants in the construction project shall be held according to the rules of Articles 12-15 of the present Federal Law with the details envisaged by the present article.

**2.** The construction project participants whose claims have been included in the register of creditors' claims and the register of claims for transfer of dwelling premises as of the date of the meeting of participants in the construction project shall be deemed participants therein with the right of vote, and also the meeting may be attended without the right of vote apart from the persons specified in Item 1 of Article 12 of the present Federal Law the bankruptcy creditors and the empowered bodies whose claims have been included in the register of creditors' claims as of the date of the meeting of participants in the construction project.

**3.** Construction project participants at the meeting of construction project participants shall have the number of votes pro rata to the amount of their monetary claims and/or claims for transfer of dwelling premises (with due regard to the Item 5 of Article 201.6 of the present Federal Law) in relation to the total sum of the monetary claims and the claims for transfer of dwelling premises included in the register of creditors' claims and the register of claims for transfer of dwelling premises as of the date of the meeting of construction project participants in accordance with the present Federal Law.

**4.** Decisions of the meeting of construction project participants on the issues which fall within its cognisance according to the present Federal Law shall be adopted by three quarters of the votes of the participants in the construction project having the right of vote at that meeting.

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 30 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 274
of 317                          *[Unofficial translation from Russian]*

**Article 201.13.** Including Claims of Construction Project Participants when the Construction-in-Process Facility or Dwelling Premises Cannot Be Transferred

**1.** If within two months after the expiry of the periods envisaged by Item 1 of Article 201.10 and Item 1 of Article 201.11 of the present Federal Law a meeting of construction project participants has not taken a decision on filing a petition with a commercial court for transfer of the construction-in-process facility or dwelling premises in a block of flats whose construction has been completed the winding-up receiver shall notify the commercial court accordingly and send a notice of the following in the procedure established by Article 13 of the present Federal Law to the construction project participants whose claims have been included in the register of claims for transfer of dwelling premises:

1) the opportunity for filing a monetary claim with the commercial court that is considering the bankruptcy case, within one month within one month after such notice is received, given the simultaneous refusal of the construction project participant to perform the contract envisaging the transfer of dwelling premises, in accordance with Article 201.5 of the present Federal Law;

2) the consequences of non-filing of said claims within the term established by Subitem 1 of the present item.

**2.** Within five days after the date on which the commercial court received the notice mentioned in Item 1 of the present article the commercial court shall set the date of a court session for hearing the claims of construction project participants included in the register of claims for transfer of dwelling premises. That court session shall be held at least two months after the date on which the relevant notice was sent to participants in the construction project.

**3.** The claims of construction project participants envisaged by Item 1 of the present article shall be considered by the commercial court in the court session, and a ruling shall be issued on the results thereof on inclusion of said claims in the register of creditors' claims, in the procedure established by Article 201.5 of the present Federal Law.

**4.** The winding-up receiver is not entitled to settle accounts with Priority Category 3 and 4 creditors according to the register of creditors' claims before all claims of the individuals being participants in the construction project and/or all claims of the legal entities being participants in the construction project filed in accordance with the present article have been considered and the commercial court has issued relevant rulings.

**Article 201.14.** The Settlement of Claims of Individuals Being Participants in the Construction Project in Respect of Monetary Obligations and the Details of Settlements of Accounts with Creditors when the Subject of Mortgage Is Sold in the Case of the Developer's Bankruptcy

**1.** In the event of sale of the subject of mortgage being a constructed facility belonging to the developer by the right of ownership and a land plot belonging to the developer by the right of ownership or another right (for instance lease or sublease) proceeds from the sale of said items and/or the rights in them shall be remitted by the buyer to a special bank account of the debtor. Out of the amounts of money credited to that account:

1) 60 per cent shall be used to settle creditors' claims in respect of the obligation secured with the mortgage of said items and/or the debtors' rights in them, but not exceeding the principal debt amount for the mortgage-secured obligation, and payable interest, including claims for an obligation secured with mortgage under a contract of participation in shared construction according to the legislation on participation in the shared construction of blocks of flats and/or other pieces of immovable property;

2) 25 per cent shall be used tot settle the monetary claims of individuals being participants in the construction project, irrespective of these individuals' being mortgagees in respect of the sold construction-in-process facilities and the land plot (for instance in as much as it concerns real damage, except for interest and other sanctions).

If there are no claims of creditors in respect of the obligation secured with the mortgage of said items and/or the debtor's rights in them 85 per cent of proceeds from the sale of said items and/or rights in them shall be used to settle the monetary claims of participants in the construction project (for instance in as much as it concerns real damage, except for interest and other sanctions);

3) ten per cent shall be used to settle the claims of Priority Category 1 and 2 creditors if the other property of the developer is not sufficient for settling these claims;

4) the remaining funds shall be used to meet court costs, expenses towards the remuneration of the qualified receiver and payment for the services of the persons recruited by the qualified receiver for the purpose of supporting his executing his duties.

**2.** The monetary means which were intended for settling the claims of Priority Category 1 and 2 creditors and have remained in the special bank account of the developer after such claims were settled in full shall be used to settle the portion of claims secured with the mortgage of the relevant property of the developer that has not been settled at the expense of the value of said property due to the withholding of a portion of the value for the purpose of settling the claims of Priority Category 1 and 2 creditors in accordance with Item 1 of the present article.

*[Unofficial translation from Russian]*

The monetary means remaining after the payment in full of court costs, the expenses towards the remuneration of the qualified receiver and payment for the services of the persons recruited by the qualified receiver for the purposes of supporting the execution of his duties shall be used to settle the portion of the monetary claims of the individuals being participants in the construction project and the creditors' claims secured with the mortgage of the relevant property of the developer that has not been settled at the expense of the value of said property due to the withholding of a portion of the value for the purpose of meeting said expenses in accordance with Item 1 of the present article.

The monetary means remaining after the settlement in full of the monetary claims of the individuals being participants in the construction project, the creditors' claims secured with the mortgage of sold property of the developer shall be included in the bankrupt's estate.

**3.** The monetary claims of the individuals being participants in the construction project and the claims for the obligations secured with the mortgage of property of the developer which have not been met at the expense of the value of the sold property of the debtor shall be met within the claims of Priority Category 3 and 4 creditors respectively.

**Article 201.15.** Making Current Payments and Satisfying Claims of Creditors of First and Second Priority Against the Developer in Order to Make It Possible to Transfer Construction in Progress or Residential Premises

**1.** To make it possible to transfer construction in progress or residential premises in a block of apartments whose construction is completed, according to Articles 201.10, 201.11 and 201.15-1 of this Federal Law, the claims related to current payments and those of creditors of first and second priority included in the register of creditors' claims, can be satisfied by participants of the construction and/or third parties according to the procedure established in this Article.

**2.** Participants of the construction and/or third parties that have an intent to satisfy claims of the creditors envisaged in Item 1 of this Article (hereinafter - the intent) shall send a declaration of intent to the commercial court that considers the bankruptcy case and to the bankruptcy manager.

Within 10 days from the date of receipt of the declaration of intent, the bankruptcy manager shall present to the arbitratio ncourt, participants of the construction and/or third parties that have sent the declaration of intent (hereinafter - the applicant), a calculation of the amount that is necessary for repayment of the debt on current payments and satisfaction of claims of creditors of the first and second priorities defined in compliance with Item 5 of Article 201.10 of this Federal Law as of the date of sending the application to the commercial court (including information on the total amount of debt, on the value of title of the developer to the construction in progress and the land plot or value of property of the developer that will remain after the transfer of the construction in progress or residential premises).

**3.** A declaration of intent shall be considered by a commercial court within 14 days of its receipt.

If several declarations of intent are received by the commercial court they shall be considered on a first-come, first-served basis.

**4.** Following the results of consideration of the declaration of intent, the commercial court shall pass a ruling on its satisfaction or of its decline if there are no current payments or claims of creditors of first and second priority that are, according to this Federal Law, subjected to inclusion in the register of creditors' claims, or if the applicant has cancelled its intention to satisfy claims of creditors mentioned in Item 1 of this Article, until the application is considered.

**5.** The commercial court ruling on satisfaction of the declaration of intent shall contain the following:

1) name (for legal entities) or surname, name and patronymic (for individuals) of the applicant;

2) amount of creditors' claims envisaged in Item 1 of this Article, principal receivable and forfeits (penalties or late payment fees) charged;

3) term for transfer of funds to the special-purpose bank account of the debtor by the applicant;

4) other information necessary for transfer of funds to the special-purpose bank account of the debtor by the applicant.

**6.** If there is a dispute regarding the amount or the composition of claims, consideration of the declaration of intent can be postponed until the date of entry into force of a judicial act on establishing the amount and composition of creditors' claims mentioned in Item 1 of this Article.

**7.** To satisfy the creditors' claims envisaged in Item 1 of this Article, such creditors shall provide a notice to the bankruptcy manager containing the date of its provision and information on recipients of funds, necessary according to the rules for filling out payment documents confirming transfer of funds for satisfaction of creditors' claims envisaged in Item 1 of this Article.

**8.** To satisfy the creditors' claims envisaged in Item 1 of this Article by transferring funds to the special-purpose bank account of the debtor, the bankruptcy manager shall, on the basis of a commercial court ruling on satisfaction of the declaration of intent, open a separate account of the debtor in the credit institution that is intended for satisfaction of the creditors' claims

274

*[Unofficial translation from Russian]*

envisaged in Item 1 of this Article only (special-purpose bank account of the debtor).

Funds shall be written down from the special-purpose bank account of the debtor under the order of the bankruptcy manager only for satisfaction of creditors' claims envisaged in Item 1 of this Article, and cannot be written down for repayment of other obligations of the debtor, those of the bankruptcy manager or persons that satisfy the creditors' claims.

No foreclosure is possible on funds kept on the special-purpose bank account of the debtor for other obligations of the debtor, those of the bankruptcy manager or persons that satisfy the creditors' claims.

**9.** Within the term set in the commercial court ruling on satisfaction of the declaration of intent, the applicant shall transfer funds in the amount specified in such ruling, to the special-purpose bank account of the debtor.

**10.** Creditors' claims envisaged in Item 1 of this Article shall be satisfied within 10 business days from the date of the entry into force of the commercial court ruling on transfer of construction in progress or residential premises to the participants of the construction.

The creditors' claims envisaged in Item 1 of this Article shall be satisfied on a first come, first served basis, according to Article 134 of this Federal Law.

**11.** Ten business days after the entry into force of the commercial court ruling on transfer of construction in progress or residential premises to the participants of the construction, the applicant shall file an application with the commercial court for acknowledging the creditors' claims envisaged in Item 1 of this Article satisfied and on inclusion of the applicant's claims in the creditors' claims register and transfer of the corresponding right to claim on the current payments (hereinafter - the application for acknowledging the claims satisfied).

Attached to the application for acknowledging the claims satisfied shall be payment documents that confirm transfer of funds in the amount specified in the commercial court ruling on satisfaction of the declaration of intent.

**12.** Following the results of consideration of the application for acknowledging the claims satisfied on condition that such satisfaction corresponds to the commercial court ruling on satisfaction of the declaration of intent, the commercial court shall pass a ruling on acknowledging the creditors' claims envisaged in Item 1 of this Article satisfied and on inclusion of the applicant's claims in the register of creditors' claims and transfer of the corresponding right to claim on the current payments (hereinafter - the ruling on acknowledging the claims satisfied).

If the satisfaction performed does not comply with the commercial court ruling on acknowledging the declaration of intent satisfied, the commercial court shall have the right to postpone consideration of the issue of acknowledging the creditors' claims envisaged in Item 1 of this Article satisfied and on inclusion of the corresponding claims of the applicant in the register of creditors' claims and transfer of the corresponding right to claim on the current payments, for not more than 30 days.

Claims of the applicant that has satisfied creditors' claims in compliance with this Article shall be entered in the register of creditors' claims in such amount and such priority as corresponds to the amount and priority of claims of creditors of the first and second priorities satisfied by the applicant. For satisfied claims on current payments, its claims shall be satisfied in the same order and priority as the satisfied claims of creditors on current payments.

**13.** The funds transferred in excess of those envisaged in the ruling on satisfaction of the declaration of intent shall be returned to the applicant within 10 business days from the date of the entry into force of the commercial court ruling on acknowledging the claims satisfied.

**14.** Persons whose claims are subjected to satisfaction or are acknowledged assatisfied in compliance with this Article shall have the right to appeal against actions or omission of the bankruptcy manager in the commercial court that considers the bankruptcy case, if such actions or omission violate their rights and legitimate interests.

**Article 201.15-1.** The Specifics of Settling the Builder's Obligations with Respect to Construction Participants

**1.** When settling the builder's obligations, the gratuitous transfer of the property (including property rights) and obligations thereof to another builder which will be the acquirer (hereinafter referred to for the purposes of this paragraph as the acquirer) shall be applied. As a counter presentation, the acquirer shall discharge instead of the builder the obligations with respect to the construction participants concerning the transfer of residential premises that have been received from him by way of the debt's transfer.

The builder's property that may be transferred to the acquirer in compliance with this article shall comprise incomplete construction objects and land plots (the rights to land plots) intended for placing incomplete construction objects (hereinafter referred to as property, incomplete construction object or land plot, respectively).

The builder's obligations which may be transferred to the acquirer in compliance with this article shall comprise the obligations with respect to the construction participants involved in transfer of residential premises (hereinafter referred to as the builder's obligations).

*[Unofficial translation from Russian]*

Where the builder has several incomplete construction objects and obligations with respect to the construction participants which have claims against the builder for the transfer of residential premises in such objects, such builder's objects and obligations may be separately transferred to one or several acquirers.

As the acquirer may only act the legal entity satisfying the requirements for the builder in compliance with Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation.

**2.** The builder's incomplete construction objects and obligations in compliance with this article shall be transferred in compliance with this article subject to the terms provided for by Subitems 2 - 6 of Item 3 and to the requirements provided for by Items 5 - 7 and 10 of Article 201.10 of this Federal Law.

**3.** If the cost of the builder's rights to an incomplete construction object and land plot which are subject to transfer to the acquirer exceeds the aggregate extent of claims of the construction participants included into a register of creditors' claims and a register of claims for the transfer of residential premises, the acquirer is bound to remit to the builder monetary assets in the amount of such excess.

**4.** If the cost of the builder's rights and the land plot which are subject to transfer to the acquirer is below the aggregate extent of claims of the construction participants included into a register of creditors' claims and a register of claims for the transfer of residential premises, the acquirer shall obtain the right of claim against the builder in the amount of the difference that has originated. The cited acquirer's right of claim is subject to inclusion into the register of creditors' claims within the composition of the third and/or fourth turn of creditors in compliance with the rules established by Article 201.9 of this Federal Law.

**5.** In the event of concurrent transfer to the acquirer of several incomplete construction objects and a land plot or several land plots, the obligations and the requirements cited in Items 3 and 4 of this article shall be set off.

**6.** In the course of financial improvement, external management and bankruptcy proceedings the person intending to become the acquirer of an incomplete construction project and a land plot (the right to a land plot) and to discharge the builder's obligations with respect to the construction participants having claims for transfer of residential premises (hereinafter referred to as the person intending to become the acquirer) shall forward an application about such intent (hereinafter referred to in this article as an application about intent) to the commercial court trying the bankruptcy case, to the qualified receiver and to the federal executive power body engaged in the state regulation in the sphere of share construction of apartment houses and/or other immovable property items which is authorised by the Government of the Russian Federation (hereinafter referred to as the executive body authorized by the Government of the Russian Federation).

An application about intent shall be forwarded and considered in the procedure provided for by Article 201.15 of this Federal Law, subject to the specifics established by this article.

**7.** An application about intent shall have attached thereto the documents proving the following:

1) satisfaction by the acquirer of the requirements established by Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation;

2) the possibility of financing the completion of construction of an incomplete construction object (data on own assets and data on the extent of financing which is required for completing the construction of an incomplete construction object).

**8.** Within 10 days from the date when an application about intent comes to the qualified receiver, along with the data provided for by Paragraph 2 of Item 2 of Article 201.15 of this Federal Law, the qualified receiver shall present to a commercial court and to the person which intends to become the acquirer and has forwarded the application about intent the following data:

1) an estimation of the amount required for repayment of debts on the current payments and satisfaction of claims of the first-turn and second-turn creditors and determined in compliance with Item 5 of Article 201.10 of this Federal Law as of the date of forwarding an application about intent to a commercial court (in particular data on the total amount of appropriate debts, data on the cost of the builder's rights to an incomplete construction object and land plot, as well as data on the cost of the builder's property left after the transfer of an incomplete construction object);

2) correlation of the cost of the builder's rights to an incomplete construction object and land plot and of the aggregate extent of the claims of the construction participants included into a register of creditors' claims and a register of claims for transfer of residential premises.

**9.** In the event of concurrent transfer to the acquirer of several incomplete construction objects and a land plot or land plots, the qualified receiver shall also present data on correlation of the aggregate cost of the builder's rights to such objects and land plot or land plots and the aggregate amount of the claims of construction participants included into a register of creditors' claims and a register of claims for transfer of residential premises.

*[Unofficial translation from Russian]*

**10.** The executive body authorised by the Government of the Russian Federation shall present to a commercial court an opinion as to the possibility or impossibility of transfer of the builder's property and obligations to the person intending to become the acquirer within 10 days from the date when an application about intent comes in. When preparing the opinion, the possibility of transfer of incomplete construction objects and land plot or land plots and the builder's obligations to several acquirers shall be assessed. A procedure and grounds for adoption by the executive body authorized by the Government of the Russian Federation of an appropriate opinion shall be defined by the Government of the Russian Federation.

**11.** On the basis of the results of considering an application about intent a commercial court shall issue the ruling on the following:

1) allowing the application about intent in the event of satisfaction of the terms provided for by Items 2 - 5 of this article, as well as in the absence of the petition provided for by Article 201.10 of this Federal Law for satisfaction of claims of construction participants by way of transfer of the builder's rights to an incomplete construction object and land plot to the housing construction cooperative or other specialized consumer cooperative established by construction participants or in the event of the refusal to allow such petition and in the presence of an opinion of the executive body authorized by the Government of the Russian Federation about the possibility of transferring the builder's property and obligations to the person intending to become the acquirer;

2) on the refusal to allow an application about intent where the terms provided for by Items 2 - 5 of this article are not observed and/or there is the opinion of the executive body authorized by the Government of the Russian Federation about the impossibility of transfer of the builder's property and obligations to the person intending to become the acquirer.

**12.** The following shall be cited in the ruling of a commercial court on satisfaction of an application about intent:

1) acquirer's denomination, basic state registration number and taxpayer's identification number;

2) extent of the creditors' claims cited in Item 1 of Article 201.15 of this Federal Law and time period for remittance by the acquirer of monetary assets in such amount onto the builder's special account in the procedure provided for by Article 201.15 of this Federal Law;

3) correlation of the cost of the builder's rights to an incomplete construction object and land plot and of the aggregate amount of the claims of construction participants included into a register of creditors' claims and a register of claims for transfer of residential premises, the amount of monetary assets and time of their remittance by the acquirer onto the builder's key account, if such acquirer's duty originates in compliance with Item 3 of this article or the extent of the acquirer's claims which are subject to inclusion into a register of creditors' claims in compliance with Item 4 of this article;

4) data identifying an incomplete construction object and land plot;

5) other information required for remittance by the acquirer of monetary assets onto the appropriate builder's account.

**13.** Within the time period fixed in the ruling of a commercial court on allowing an application about intent the acquirer shall remit monetary assets in the amount specified in this ruling.

**Article 201.15-2.** Property Transfer and Builder's Obligations

**1.** The qualified receiver shall file with a commercial court the petition for transfer of the builder's property and obligations to the acquirer within 10 days from the date when monetary assets come from the acquirer in compliance with the ruling of allowing an application about intent. The cited petition shall have attached thereto the documents that prove coming in of monetary assets in the amount which is specified in the ruling of a commercial court on allowing the application about intent.

**2.** Within three days from the date of receiving the petition of the qualified receiver for transfer of the builder's property and obligations to the acquirer a commercial court shall issue the ruling on transfer to the acquirer the builder's property and obligations.

**3.** The following shall be cited in the ruling of a commercial court on the transfer to the acquirer of the builder's property and obligations:

1) acquirer's denomination, basic state registration number and taxpayer's identification number thereof;

2) data identifying the incomplete construction object and land plot to be transferred to the acquirer;

3) data on the amount of the monetary assets remitted by the acquirer onto the builder's special bank account for satisfaction of the creditors' claims provided for by Item 1 of Article 201.15 and Item 3 of Article 201.15-1 of this Federal Law;

4) data on satisfaction of the terms provided for by Items 2 - 5 of Article 201.15-1 of this Federal Law;

5) data on the transfer to the acquirer of the rights of claim as to the connection (technological connection) of an object to utility systems under the contracts made with the builder in respect of the incomplete construction object and land plot to be transferred;

Case 1:16-cv-09139-PGG  Document 53-5  Filed 03/06/17  Page 35 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 279
of 317                         *[Unofficial translation from Russian]*

6) other information required for the state registration of transfer to the acquirer of the right of ownership to an incomplete construction object and land plot.

**4.** When transferring to the acquirer the builder's property and obligations, the rules for the following shall not apply:

1) obtainment of creditors' consent by the builder to the transfer of debts to another person;

2) creditors' preliminary notification by the builder about the debt's transfer by the builder to the acquirer;

3) making by creditors claims against the builder for termination or pre-schedule discharge by the builder of obligations with respect to them in connection with such transfer.

**5.** Other claims, except for the claims for the transfer of residential premises, may be made by construction participants against the acquirer of the builder's property and obligations.

**6.** On the basis of the ruling of a commercial court on transfer to the acquirer of the builder's property and obligations the claims of construction participants in respect of which the discharge of obligations towards them is transferred to the acquirer shall be excluded by the qualified receiver from a register of creditors' claims and a register of claims for the transfer of residential premises.

**7.** The claims of construction participants which are not satisfied as a result of transfer to the acquirer of property and obligations shall be satisfied within the composition of claims of the third-turn and fourth-turn creditors, respectively.

**8.** On the basis of the ruling of a commercial court on transfer to the acquirer of the builder's incomplete construction object and land plot the builder shall make with the acquirer a contract (contracts) of transfer of the incomplete construction object, land plot and obligations to the builder under the terms which are not at variance with this Federal Law.

**9.** The replacement of persons in the obligations which result from the contracts made by the builder with construction participants and in which the builder is the debtor shall entail the transfer to the acquirer of the builder's obligations involved in transfer of residential premises from the date of transfer to the acquirer of the builder's incomplete construction object, land plot and obligations on the basis of a transfer deed.

**10.** The contract of transfer to the acquirer of the builder's incomplete construction object, land plot and obligations shall be made in writing. The builder's incomplete construction object, land plot and obligations shall be transferred to the acquirer on the basis of a transfer deed.

**11.** The state registration of transfer of the rights to an incomplete construction object and land plot shall be effected on the basis of the ruling of a commercial court on the transfer to the acquirer of the builder's property and obligations in compliance with the legislation of the Russian Federation on the state registration of rights to immovable property.

**12.** At the latest in three days from the date of the state registration of transfer to the acquirer of the right of ownership to an incomplete construction object and of the rights to a land plot the qualified receiver shall publish the following data by way of their including into the Unified State Register of Data on Bankruptcy:

1) full name of the builder transferring the property and obligations, address thereof and data identifying the cited builder (basic state registration number and taxpayer's identification number);

2) full name of the acquirer which the builder's property and obligations are to be transferred to, address thereof and data identifying the cited acquirer (the state registration number of an entry on the state registration of a legal entity, taxpayer's identification number);

3) data identifying the incomplete construction object and the land plot.

**13.** The claims of the creditors provided for by Item 1 of Article 201.15 of this Federal Law shall be satisfied within 10 working days from the date of entry into legal force of the ruling of a commercial court on the transfer to the acquirer of the builder's property and obligations. Such claims shall be satisfied in the order established in compliance with Article 134 of this Federal Law.

**14.** Upon the expiry of 10 working days from the date of entry into legal force of the ruling of a commercial court on the transfer to the acquirer of the builder's property and obligations the acquirer shall forward to the commercial court in the procedure established by Items 11 and 12 of Article 201.15 of this Federal Law an application for declaring the creditors' claims provided for by Item 1 of Article 201. 15 of this Federal Law as satisfied and for the inclusion of appropriate claims of the acquirer, as well as of the claims that have originated in compliance with Item 4 of Article 201.15-1, into a register of creditors' claims.

**"§ 8. The Specifics of Bankruptcy of a Clearing Participant and of a Client of a Clearing Participant**

**Article 201.16.** The Bankruptcy of a Clearing Participant and of a Client of a Clearing Participant

**1.** The provisions of Articles 186.2-185.7 and of Paragraph 4.1 of this chapter shall extend to the bankruptcy of a

*[Unofficial translation from Russian]*

clearing participant being a professional securities market-maker and of a clearing participant being a credit organisation, respectively (subject to the specifics provided for by this paragraph).

**2.** In the event of introducing observation, a clearing participant is not entitled:

1) to make transactions at the own expense thereof or at the client's expense if at the time of their making there is not enough property or monetary assets for discharging obligations in respect of these and previously made transactions. This requirement shall not extend to the instances when a clearing participant has the right to demand the cited property under the transaction made to the master contractor in the quantity and at the time that enable him to properly discharge obligations thereof;

2) to use the monetary assets kept on the special broker's account or on the special trading account of the clearing participant in its own interests;

3) to use its own property as security for third persons' obligations;

4) to lend its own property;

5) to make REPO agreements without the consent of the interim receiver.

**3.** The monetary assets, securities and/or other property of a clearing participant left after termination of a clearing participant's obligations under financial agreements in the procedure provided for by Article 4.1 of this Federal Law are subject to inclusion into the clearing participant's bankruptcy estate.

**4.** The monetary assets and/or other property transferred by a client of a clearing participant, this being both a professional securities market-maker and not being a professional securities market-maker, in particular of a clearing participant which is a credit organisation, in compliance with the Federal Law on Clearing and Clearing Activity as a security and kept on a trading and/or commercial account, shall not be included into the bankruptcy estate of the clearing participant.

In the event of introduction of one of bankruptcy proceedings in respect of a clearing participant, the transfer of the debt and assignment of claims of the clearing participant in respect of the obligations resulting from the contracts made on a client's account, as well as the transfer of the client's property which is the subject of securing the discharge of such obligations, to another clearing participant shall be effected by a clearing organisation without the consent of a meeting of creditors (the creditor's committee) and the qualified receiver in the instances and in the procedure which are provided for by the Federal Law on Clearing and Clearing Activity.

Where it is impossible to transfer a debt and to assign claims of a clearing participant which are provided for by this Item, as well as to transfer a client's property to another clearing participant in compliance with the Federal Law on Clearing and Clearing Activity, the monetary assets, securities and/or other property left with a clearing organisation after the discharge of the net obligations resulting from the contracts made by the clearing participant on account of the client are subject to return to the client of the clearing participant in the procedure provided for by Article 201.17 of this Federal Law.

**5.** If the rights to securities are accounted for on the commercial depo account of the owner thereof opened for a clearing participant and/or to a client of a clearing participant and/or on the commercial depo account of the nominal holder and/or trust manager opened for a clearing participant, as from the date of adoption by a commercial court of the decision on declaring the clearing participant bankrupt and on initiating bankruptcy proceedings or, in respect of a credit organisation, as from the date of withdrawal of its licence for conducting banking operations, depending on which of the cited dates comes first, such account shall be disposed of by the clearing organisation which is entitled to give orders in respect of such account in compliance with the Federal Law on Clearing and Clearing Activity.

**6.** In the event of a clearing participant keeping separate records in respect of the client's property provided as a security and of the obligations of the clearing participant that have resulted from the agreements made on this client's account in compliance with the Federal Law on Clearing and Clearing Activity, the qualified receiver is bound to provide data on such clients, data on such clients' property kept by the clearing participant, data on the obligations to be discharged on account and/or for the benefit of each such client or clearing organisation.

**7.** The qualified receiver, if there are clients' debts with respect to a clearing participant, shall recover such debt in the procedure provided for by the legislation of the Russian Federation.

**8.** In the event of introduction of one of bankruptcy proceedings in respect of a client of a clearing participant or in respect of a client being a credit organisation and also in the event of withdrawal of the licence for conducting banking operations, the monetary assets, securities and/or other property transferred by this client in compliance with the Federal Law on Clearing and Clearing Activity as a security and left after termination of the obligation of a clearing participant on account of such security are subject to inclusion into the bankruptcy estate. Obligations shall be terminated on the date fixed in compliance with the clearing rules or on the date following the date of adoption by a commercial court of a decision on declaring a client of a clearing participant bankrupt and on initiating bankruptcy proceedings or, in respect of a credit organisation, on the date following the date of withdrawal of its licence for conducting banking operations, depending on which of the cited dates comes

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 37 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 281
of 317                    *[Unofficial translation from Russian]*

first.

### Article 201.17. The Claims of Clients of a Clearing Participant

**1.** In the course of the proceedings applied in a bankruptcy case of a clearing participant, for the purpose of satisfying the claims of clients of a clearing participant, the qualified receiver or registrar shall keep a register of clients of the clearing participant in the procedure provided for by Article 185.3 of this Federal Law for keeping a register of clients of a professional securities market-maker, management company or clearing organisation.

**2.** If the monetary assets, securities and/or other property left with a clearing organisation after discharging the net obligations resulting from the contracts made by a clearing participant on account of a client (clients) are sufficient for satisfying clients' claims, such claims shall be satisfied in full.

**3.** If the monetary assets, securities and/or other property left with a clearing organisation after discharging the net obligations resulting from the contracts made by a clearing participant on account of a client (clients) are insufficient for satisfying clients' claims in full, such property shall be transferred in a quantity which is proportionate to the amount of clients' claims.

**4.** Unsatisfied clients' claims are subject to inclusion into the register of creditors' claims and shall be satisfied within the composition of claims of third-priority creditors.

**5.** If upon the expiry of six months as from the date of adoption by a commercial court of the decision on declaring a clearing participant bankrupt and on initiating bankruptcy proceedings the clients' property has not been transferred, the bankruptcy receiver shall transfer such property to a notary for depositing.

### Chapter X. The Bankruptcy of an individual

#### §1. General Provisions

Abrogated from October 1, 2015.

#### § 1.1. Restructuring of the Individual's Debt and Sale of the Individual's Assets

### Article 213.1. Regulation of Relations Connected with Bankruptcy of Individuals

**1.** Relations connected to bankruptcy of individuals and not regulated by this Chapter shall be regulated by Chapters I - III.1, VII, VIII, paragraph 7 of Chapter IX and paragraph 2 of Chapter XI of this Federal Law.

**2.** Provisions envisaged by this paragraph shall not be applied to relations connected with insolvency (bankruptcy) of peasant holdings (farms).

**3.** Provisions envisaged by this paragraph shall be applied to relations connected to insolvency (bankruptcy) of individual entrepreneurs, considering the specifics envisaged by Items 4 and 5 of this Article and this Federal Law.

**4.** Assets intended for entrepreneurship activities of individual entrepreneurs that are debtors or individuals that terminated their activities as individual entrepreneurs, but their monetary liabilities and/or the obligation of making obligatory payments created as a result of their entrepreneurship activities, shall be sold according to the procedure set by this Federal Law for sale of assets of legal entities.

**5.** Court notifications and copies of court acts on the bankruptcy case of an individual shall be directed by the commercial court to:

the individual;

the financial administrator;

the representative of the meeting of creditors (if the commercial court has information on his election);

each creditor whose claims are included in the register of creditors' claims, if the number of such creditors does not exceed 10;

each creditor, whose total amount of claims included in the register of claims is more than 300 thousand roubles and, if the number of such creditors exceeds 10 - to each creditor, whose total amount of claims included in the register exceeds 10 percent of total amount of claims included in the register;

the individual, if the issues considered by the court meeting or the court act directly concern his rights and obligations.

The rules shall also be applied in case of direction of copies of complaints and applications for review of court acts on individuals' bankruptcy cases.

### Article 213.2. Procedures Applicable in Bankruptcy Cases of Individuals

*[Unofficial translation from Russian]*

In the course of consideration of a bankruptcy case of an individual restructuring of the individual's debts, sale of the individual's assets or amicable agreement shall be applied.

**Article 213.3.** Initiation of Proceedings on the Case of Bankruptcy of an Individual

**1.** The right to file an application to the commercial court for acknowledgement of an individual bankrupt shall have the individual, a bankruptcy creditor and the authorised authority.

**2.** Application for acknowledgement of an individual bankrupt shall be accepted by the commercial court on condition that claims to the individual account for not less than 500 thousand roubles and the claims are not satisfied within three months from the date when they had to be satisfied, unless otherwise envisaged by this Federal Law.

**Article 213.4.** Application of an Individual for Acknowledging him Bankrupt

**1.** An individual shall be obliged to file an application for acknowledging him bankrupt to the commercial court, if satisfaction of claims of one creditor or several creditors leads to the impossibility of fulfillment of monetary obligations and/or the obligation of making obligatory payments to other creditors by the individual in full, and the amount of such obligations and the obligation in total is not less than 500 thousand roubles, not later than 30 business days from the day when he learned or should have learned of that.

**2.** An individual shall have the right to file an application to the commercial court on acknowledging him bankrupt in case of anticipation of bankruptcy, if there are circumstances apparently proving that he is unable to fulfill monetary obligations and/or the obligation to make obligatory payments within the set term, and the individual meets the criteria of insolvency and/or asset insufficiency.

**2.1.** The right to file with a commercial court an application for declaring bankrupt an individual who is an individual businessman shall originate with such person on condition of preliminary (at least 15 calendar days before the date of applying to the commercial court) publication by him/her of a notice of the intent to file an application for declaring him/her bankrupt by way of inclusion of this notice into the Unified Federal Register of Data on the Facts of Legal Entities' Activities.

Copies of an application of an individual being an individual businessman for declaring him/her bankrupt is not subject to forwarding to creditors in bankruptcy, to authorized bodies, as well as, where it is provided for by this Federal Law, to other persons.

**3.** Together with the documents envisaged by the procedural law, the following shall be attached to the application for acknowledging the individual bankrupt:

documents confirming the existence of debt, the ground for its creation and incapability of the individual to satisfy the creditors' claims in full;

documents confirming existence or absence of individual entrepreneur status of the individual on the basis of a statement from the unified state register of individual entrepreneurs or another document confirming such information. The documents shall be received not earlier than five business days before the date of filing of the application for acknowledging him bankrupt to the commercial court;

lists of creditors and debtors of the individual specifying their names or surname, first name and patronymic, the amounts of accounts payable and receivable, location or place of residence of the debtors and separating monetary obligations and/or the obligation of making obligatory payments created as a result of entrepreneurship activities of the individual. The form for such lists shall be approved by the regulating authority;

inventory of the individual's assets specifying their location or place of storage, including pledged assets, specifying the name or surname, first name and patronymic of the pledge holder. The form of the inventory shall be approved by the regulating authority;

copies of documents confirming the title of the individual to the assets and of the documents confirming the exclusive right to the results of the individual's intellectual activities (if any);

copies of documents on transactions with real estate, securities, interest in the authorised capital, transport vehicles and transactions for the amount of more than 300 thousand roubles (if any) carried out by the individual within three years before the date of filing of the application;

statement from the register of shareholders (participants) of the legal entity, whose shareholder (participant) the individual is (if any);

information on the income gained by the individual and on the amount of taxes withheld for a three-year period preceding the date of filing of the application for acknowledging the individual bankrupt;

information from the bank on existence of accounts, deposits in the bank and/or the balance of funds on accounts and deposits, statements on operations on accounts and deposits of individuals, including individual entrepreneurs, in the bank for a

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 39 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 283
of 317   *[Unofficial translation from Russian]*

three-year period preceding the date of filing of the application for acknowledging the individual bankrupt, statements of balance of electronic money and transfers of electronic money for a three-year period preceding the date of filing the application for acknowledging the individual bankrupt (if any):

a copy of the insurance certificate of compulsory medical insurance;

information on the state of the individual personal account of the insured;

a copy of the decision on acknowledging the individual jobless issued by the state employment service, in case of taking of such decision;

a copy of the certificate of registration with a tax authority (if any);

a copy of the certificate of marriage (in case of existence of the marriage concluded and not dissolved as of the date of filing of the application);

a copy of the certificate of dissolution of marriage, if it was issued in the period of three years before the date of filing of the application (if any);

a copy of marriage contract (if any);

a copy of the agreement or a court act on division of common property of the spouses, concluded and adopted in the period of three years before the date of filing of the application, respectively (if any);

a copy of the certificate of birth, if the individual is a parent, an adoptive parent or a custodian of the child;

documents confirming other circumstances that are the basis for the individual's application.

**4.** The application for acknowledging an individual bankrupt shall contain the name and the address of the self-regulating organisation, one of whose members shall be approved financial administrator.

Funds for payment of remuneration to the financial administrator in the amount equal to the fixed amount of remuneration of a financial administrator for one procedure applicable in an individual's bankruptcy case shall be put on deposit of the commercial court.

Upon the request of an individual the commercial court shall have the right to give a deferral to the individual for depositing funds for payment of remuneration to the financial administrator until the date of the court meeting dedicated to consideration of justification of the application for acknowledging the individual bankrupt.

**5.** An individual shall have the right to give his consent to involvement of persons securing fulfillment of obligations of the financial administrator. In such case, the application for acknowledging the individual bankrupt shall specify the maximum amount of expenses of the financial administrator for payment for the services of the persons involved at the account of the individual. The amount of the expenses shall be put by the individual to the deposit of the commercial court. Upon request of the individual the commercial court shall have the right to give a deferral for depositing of such amount to the individual.

**Article 213.5.** Application of a Bankruptcy Creditor or an Authorised Authority for Acknowledging an Individual Bankrupt

**1.** An application for acknowledging an individual bankrupt can be filed by a bankruptcy creditor or an authorised authority, if there is a court decision that has entered into force and confirms the creditors' claims on monetary obligations, except for the cases cited in Item 2 of this Article.

**2.** Application for acknowledging an individual bankrupt can be filed by a bankruptcy creditor or an authorised authority, if there is no court decision cited in Item 1 of this Article related to the following claims:

claims for making of obligatory payments;

claims based on a protest of a bill by a notary for non-payment, non-acceptance or failure to date acceptance;

claims confirmed by the executive endorsement of a notary;

claims based on documents provided by the creditor and stating monetary obligations acknowledged but not satisfied by the individual;

claims based on notarially certified transactions;

claims based on loan agreements with credit institutions;

claims for charging alimony for underage children, not related to establishment of paternity, contestation of paternity (maternity) or the necessity of involvement of other interested persons.

The right to file with a commercial court an application for declaring an individual being an individual businessman

bankrupt shall originate with creditors in bankruptcy in respect of the claims cited in this item on condition of preliminary (at least 15 calendar days before the date of applying to the commercial court) publication of a notice of the intent to file an application for declaring the individual who is an individual businessman bankrupt by way of inclusion of this notice into the Unified Federal Register of Data on the Facts of Legal Entities' Activities.

**3.** Application of a bankruptcy creditor or an authorised authority for acknowledging an individual bankrupt shall contain the name and address of the self-regulating organisation, out of whose members the financial administrator shall be approved.

Attached to the application of a bankruptcy creditor or an authorised authority for acknowledging an individual bankrupt shall be a statement from the unified state register of individual entrepreneurs on existence of the individual entrepreneur status of the individual or other document confirming such information. Such documents shall be received not earlier than five business days before the date of filing the application of the bankruptcy creditor or the authorised authority for acknowledging an individual bankrupt to the commercial court.

Attached to the application of a bankruptcy creditor or an authorised authority for acknowledging an individual bankrupt shall also be the documents envisaged by the procedural legislation.

**4.** Funds for payment of remuneration to the financial administrator in the amount equal to the fixed amount of remuneration of a financial administrator for one procedure applicable in an individual's bankruptcy case shall be put on deposit of the commercial court. The funds can only be used for payment of remuneration to the financial administrator in case of absence of funds for such purpose in the bankruptcy estate.

**5.** A bankruptcy creditor or an authorised authority shall have the right to give their consent to involvement of persons securing fulfillment of obligations of the financial administrator. In such case, the application of the bankruptcy creditor or the authorised authority for acknowledging the individual bankrupt shall specify the maximum amount of expenses of the financial administrator for payment for services rendered by such persons on the account of the bankruptcy creditor or the authorised authority. The amount of the expenses shall be put by the bankruptcy creditor or the authorised authority to the deposit of the commercial court. Expenses of the bankruptcy creditor or the authorised authority cannot be borne by the individual.

**6.** An individual shall direct a recall of the application for acknowledging him bankrupt to the commercial court using the procedure envisaged by Article 47 of this Federal Law.

Together with the documents envisaged by Item 2 of Article 47 of this Federal Law, the following shall be attached to the application for declaring an individual bankrupt:

inventory of the individual's assets, specifying its location or place of storage, including pledged assets, specifying the name or surname, first name and patronymic of the pledge holder. The form of the inventory shall be approved by the regulating authority;

information on income gained by the individual for a three-year period preceding the date of filing of the application for declaring him bankrupt;

information from the bank on existence of accounts, deposits in the bank and/or the balance of funds on accounts and deposits, statements on balance of electronic money and on transfers of electronic money, statements on operations through accounts and on deposits of individuals, including individual entrepreneurs, in the bank, received not earlier than 10 days prior to direction of the recall of the application for declaring the individual bankrupt.

**Article 213.6.** Specifics of Consideration of Justification of the Application for Acknowledging an Individual Bankrupt

**1.** Following the results of consideration of justification of the application for acknowledging the individual bankrupt the commercial court shall deliver one of the following rulings:

on acknowledging the application justified and initiation of restructuring of the individual's debts;

on acknowledging the application for acknowledging the individual bankrupt unjustified and on leaving it unconsidered;

on acknowledging the application for acknowledging the individual bankrupt unjustified and on termination of proceedings on the individual's bankruptcy case.

**2.** A ruling on acknowledging the application of a bankruptcy creditor or an authorised authority for acknowledging the individual bankrupt justified and on initiation of restructuring of his debts shall be delivered in case, when the application meets the requirements envisaged by Item 2 of Article 213.3 and Article 213.5 of this Federal Law, the claims of the bankruptcy creditor or the authorised authority are acknowledged justified, are not satisfied by the individual as of the date of meeting of the commercial court and the insolvency of the individual is proved.

A ruling on acknowledging the application of an individual for acknowledging him bankrupt justified and on initiation

*[Unofficial translation from Russian]*

of restructuring of his debts shall be delivered, if the application meets the requirements envisaged by Article 213.4 of this Federal Law, and the insolvency of the individual is proven.

In case of issuance by the commercial court of a ruling on acknowledgement application of the debtor, bankruptcy creditor or the authorised body for acknowledgement an individual bankrupt, introduction of restructuring of his debts or acknowledging him bankrupt and introduction of sale of his property justified, the commercial court shall involve a guardianship and custodianship body in consideration of the bankruptcy case of the individual, if rights of a minor or of a person found legally incapacitated by the court are concerned within the case.

A ruling on acknowledging the application of a debtor, a bankruptcy creditor or the authorised authority for acknowledging an individual bankrupt unjustified and leaving the application unconsidered shall be delivered, if there is another application for acknowledging the individual bankrupt in case, when as of the date of meeting of the commercial court dedicated to check of justification of the application for acknowledging the individual bankrupt the claims of the bankruptcy creditor or the authorised authority are satisfied, acknowledged unjustified, if absence of all conditions envisaged by Articles 213.3 - 213.5 of this Federal Law is established, or insolvency of the individual is not proven or as of the date of filing of the application for acknowledging the individual bankrupt the claims of the bankruptcy creditor or the authorised authority are not confirmed by a court act that has entered into force, and there is a dispute between the bankruptcy creditor or the authorised authority and the individual regarding the right that shall be settled through the action proceedings.

A ruling on acknowledging the application of a debtor, a bankruptcy creditor or the authorised authority for acknowledging an individual bankrupt unjustified and on cancellation of proceedings on the individual's bankruptcy case shall be delivered by the commercial court, if there are no other applications for acknowledging the individual bankrupt in case, when as of the date of meeting of the commercial court dedicated to check justification of the application for acknowledging the individual bankrupt the claims of the bankruptcy creditor or the authorised authority are satisfied, acknowledged unjustified, or absence of all conditions envisaged by Articles 213.3 - 213.5 of this Federal Law is established, or insolvency of the individual is not proven or as of the date of filing of the application for acknowledging the individual bankrupt the claims of the bankruptcy creditor or the authorised authority are not confirmed by a court act that has entered into force, and there is a dispute between the bankruptcy creditor or the authorised authority and the individual regarding the right that shall be settled through action proceedings.

**3.** For the purpose of this paragraph, insolvency of an individual shall be understood as his incapability to satisfy the claims of creditors on monetary obligations in full and/or to fulfill the obligation of making compulsory payments.

Unless otherwise proven, an individual shall be assumed insolvent, if at least one of the following facts is there:

the individual has stopped settlements with creditors, i.e., stopped fulfilling monetary obligations and/or the obligation of making compulsory payments that are due;

over 10 percent of the total amount of monetary obligations and/or obligation of making obligatory payments that the individual has and that are due, are not fulfilled by him within more than one month from the day when such obligations and/or obligation should have been fulfilled;

the amount of debt of the individual exceeds the value of his assets, including the right to claim;

existence of an order of completion of enforcement proceedings because of the fact that the individual has no property that can be foreclosed.

If there are sufficient grounds to consider that the individual will be able to fully fulfill his monetary obligations and/or the obligation of making compulsory payments that are due within a short time, taking into account the planned receipts of funds, including income from activities of the individual and repayment of debt to him, the individual shall not be acknowledged insolvent.

**4.** The ruling of the commercial court on acknowledging the application for acknowledging an individual bankrupt justified and on initiation of restructuring of his debts shall contain the specification of:

date of the court meeting for consideration of the individual's bankruptcy case;

approval of a financial administrator (surname, first name and patronymic of the insolvency practitioner, name and address of the self-regulating organisation, out of whose members the financial administrator is approved).

If the application for acknowledging an individual bankrupt contains the maximum amount of expenses of the financial administrator for payment for services of persons involved by the financial administrator for ensuring fulfillment of his duties at the account of the person that filed the application, the ruling of the commercial court on acknowledging of the application for acknowledging the individual bankrupt justified and on initiation of restructuring of his debts shall also contain specification of the amount of expenses.

**5.** The issue of acknowledging the application for acknowledging an individual bankrupt justified and on initiation of

*[Unofficial translation from Russian]*

restructuring of his debts shall be considered at the meeting of the commercial court not earlier than upon expiration of 15 days and not later than within 3 months from the date of acceptance of the application for acknowledging the individual bankrupt by the commercial court.

**6.** The court acts envisaged by Item 1 of this Article and other court acts envisaged by this paragraph shall be subjected to immediate execution, unless otherwise established by this Federal Law.

**7.** Proceedings on an individual's bankruptcy case can be suspended upon the request of the person participating in such case, in case of contestation of rulings on leaving the application for acknowledging the individual bankrupt unconsidered and on termination of proceedings on the individual's bankruptcy case.

Contestation of the ruling on acknowledging the application for acknowledging the individual bankrupt justified and on initiation of restructuring of his debts shall not suspend execution of the ruling.

**8.** Following the results of consideration of justification of the application for acknowledging the individual bankrupt, if the individual does not meet the requirements for approval of a debt restructuring schedule set by Item 1 of Article 213.13 of this Federal Law, the commercial court shall have the right to deliver a ruling on acknowledging him bankrupt and on initiation of the procedure of sale of the individual's assets on the basis of the request of the individual.

**Article 213.7.** Publishing of Information in the Course of Procedures Applicable in the Case of Bankruptcy of an Individual

**1.** Information subjected to publishing in accordance with this Chapter shall be published by way of its inclusion in the unified federal register of information on bankruptcy and shall not be published in official printed media, except for the information on acknowledging the application for acknowledging the individual bankrupt justified and on initiation of restructuring of his debts and on acknowledging the individual bankrupt and initiation of sale of the individual's assets.

**2.** In the course of the procedures applicable in the individual's bankruptcy cases, publishing of the following information shall be obligatory:

on acknowledging the application for acknowledging the individual bankrupt justified and on initiation of restructuring of his debts;

on acknowledging the individual bankrupt and on initiation of sale of the individual's assets;

on existence or absence of signs of an intended fraudulent bankruptcy;

on termination of proceedings on the individual's bankruptcy case;

on approval, suspension or release of the financial administrator;

on approval of the individual's debt restructuring schedule;

on holding of the auction for sell of assets of the individual and on its results;

on cancellation or amending of information and/or court acts containing such information envisaged by paragraphs 2 - 7 of this Item;

on holding of a meeting of creditors;

on decisions of the meeting of creditors, if the meeting of creditors took a decision on publishing of its minutes;

on non-application of the rule of release from fulfillment of obligations to the individual;

on completion of restructuring of the individual's debts;

on completion of sale of the individual's assets;

on the credit institution where a special bank account of the debtor (if any) is opened;

other information envisaged by this paragraph.

**3.** Procedure for inclusion of information cited in Item 2 of this Article in the unified federal register of information on bankruptcy shall be established by the regulating authority. Creditors and third parties, including credit institutions where the bank account and/or bank deposit of the debtor individual is opened, shall be deemed notified of publishing of information cited in Item 2 of this Article upon the expiration of five business days from the day of inclusion of such information in the unified federal register of information on bankruptcy, unless the other is proven, in particular, if the notification envisaged by paragraph 8 of Item 8 of Article 213.9 of this Federal Law was not received earlier.

**4.** Information shall be published in the course of the procedures applicable in individual's bankruptcy case shall be published at the account of the individual.

Payment for inclusion of information subjected to publishing in the course of the procedures applied in an individual's bankruptcy case, into the unified federal register of information on bankruptcy shall not exceed half of the payment envisaged for inclusion of information subjected to publishing in accordance with this Federal Law in the course of the procedures applicable in cases of bankruptcy of a debtor that is a legal entity.

**5.** An individual shall be identified in the unified federal register of information on bankruptcy by the surname, first name and patronymic (if any) (in case of change of name - also by previous surname, first name and patronymic (if any)), by the date and place of birth, insurance number of individual personal account of the insured person in the system of compulsory pension insurance, taxpayer identification number (if any), place of residence according to documents on registration at the place of residence in the Russian Federation. If the individual has no registration at the place of residence in the Russian Federation, the factual residence of the individual shall be given (name of the Russian Federation constituent entity without specifying the address).

Identification information shall be obligatory for each publishing of information in the course of the procedures applicable in the individual's bankruptcy case. Personal data of the identification information shall be processed in accordance with Item 11 of Part 1 of Article 6 of Federal Law No. 152-FZ of July 27, 2006 On Personal Data.

Identification information shall be given by the individual, financial administrator and the commercial court in all documents and court acts related to bankruptcy of an individual, including cases of publishing of text of court acts in the internet.

**Article 213.8.** Meeting of Creditors in Case of Bankruptcy of an Individual

**1.** A meeting of creditors shall be convened by a financial administrator approved by the commercial court in case of bankruptcy of an individual.

Together with the persons cited in Item 1 of Article 12 of this Federal Law, the meeting of creditors shall be attended by the individual and/or his representative without the right to vote.

An individual shall have the right to direct an application for holding of the meeting of creditors without his participation and/or participation of his representative to the financial administrator.

Failure of the individual and/or his representative to appear at the meeting of creditors shall not impede its holding.

**2.** For the purpose of inclusion in the register of claims of creditors and participation in the first meeting of creditors, the bankruptcy creditors, including those whose claims are secured with pledge of assets of the individual and the authorised authority shall have the right to state their claims to the individual within 2 months from the date of publishing of a notice of acknowledging the application for acknowledging the individual bankrupt justified through the procedure set by Article 213.7 of this Federal Law. In case of default of the said term for a good reason it can be restored by the commercial court.

Claims of the creditors shall be considered according to the procedure set by Article 71 of this Federal Law.

**3.** A notification of acknowledging the application for acknowledging the individual bankrupt justified by the commercial court and of initiation of restructuring of his debts shall be directed by the financial administrator by post to all creditors of the individual known to it not later than within 15 days from the day of delivery of a ruling on acknowledging the application for acknowledging the individual bankrupt justified by the commercial court and on initiation of restructuring of his debts. In the said notification the creditors shall also be offered to state their claims in the case of bankruptcy of the individual and the procedure for such stating shall be explained.

**4.** The first meeting of creditors shall be held by the financial administrator on business days from 8:00 to 20:00 at the place of consideration of the case of bankruptcy of the individual (in the related settlement) or in the form of an absent voting (without joint attendance). Further, the meeting of creditors can set other time and venue for meeting of creditors.

Upon the request of the persons participating in the case of bankruptcy of an individual, the commercial court can set other venue for the meeting of creditors or other method of its holding.

**5.** Notification of holding of the meeting of creditors shall be included in the unified federal register of information on bankruptcy not later than 14 days prior to the date of holding of the meeting of creditors. A notification of holding of the meeting of creditors shall be directed by the financial administrator to the bankruptcy creditor, the authorised authority and to other person having the right to participate in the meeting of creditors in compliance with this Federal Law, not later than 14 days prior to the date of holding of the meeting of creditors by a registered letter with a notice of delivery.

**6.** A person having the right to participate in the meeting of creditors and wishing to receive an additional notification of holding of the meeting of creditors shall inform the financial administrator thereof, specifying the method of its sending (by post, telegraph, fax, electronic communication or other communication and delivery means) and the details necessary for that, and shall preliminarily remit an amount of funds on the bank account of the financial administrator for sending of the additional notification by the selected method. The financial administrator shall provide details of his bank account and the amount of

*[Unofficial translation from Russian]*

funds for sending of the additional notification to the person having the right to participate in the meeting of creditors upon his request. On condition of reimbursement of such funds, the additional notification of holding of the meeting of creditors shall be directed by the financial administrator to the related creditor or to the authorised authority not later than 14 days prior to the date of holding of the meeting of creditors.

**7.** By the decision of the insolvency practitioner or the meeting of creditors it can be held without joint attendance of persons having the right to participate in the meeting of creditors for discussing the issues on the agenda and taking decisions on issues put on vote in the form of an absent voting.

If the meeting of creditors is held in the form of absent voting, the voting forms shall be attached to the notification of holding of the meeting of creditors included in the unified federal register of information on bankruptcy.

For holding of the meeting of creditors in the form of an absent voting, the financial administrator shall direct notifications of holding of the meeting of creditors to all persons having the right to participate in the meeting of creditors using the procedure established by Article 13 of this Federal Law not later than 30 days prior to the date of holding of the meeting.

Attached to the notification of holding of the meeting of creditors directed to the bankruptcy creditor or to the authorised authority shall be voting forms specifying the name of the bankruptcy creditor or the authorised authority, the amount of claims of the bankruptcy creditor or the authorised authority included in the register of creditors' claims, the number of votes and the percentage of votes of bankruptcy creditors or the authorised authority whose claims are included in the register of creditors' claims as of the date of the meeting of creditors.

A notification of holding of meeting of creditors in the form of an absent voting shall contain:

information on the individual envisaged by Item 5 of Article 213.7 of this Federal Law;

agenda of the meeting of creditors;

date of holding of the meeting of creditors (date of the end of acceptance of the voting forms) that shall not be set earlier than 30 days from the date of direction of the notification of holding of the meeting of creditors in the form of an absent voting;

mail address of the financial administrator where the filled out voting forms shall be directed (in such case, use of post office boxes for receipt of the filled out voting forms shall not be allowed);

voting forms;

procedure for sending of filled out voting forms;

procedure for familiarisation with information (materials) subjected to provision in the course of preparation to holding of the meeting of creditors and the address or addresses where the information can be familiarised with;

procedure for familiarisation with decisions of the meeting of creditors.

**8.** A meeting of creditors in the form of absent voting can be held in electronic form with the use of telecommunication channels via organisations providing exchange of public and confidential information through telecommunication channels within the electronic document workflow between the persons participating in the meeting of creditors (hereinafter - operator of electronic document workflow).

**9.** In case of use of electronic systems for holding of the meeting of creditors, the documents and the information that shall be directed in the course of holding of the meeting according to the legislation (including absent voting) shall bear a digital signature of the person that directed the documents and the information.

**10.** At the holding of the meeting of creditors, operator of electronic document workflow shall ensure:

protection and confidentiality of documents and information provided in electronic form;

transfer and delivery of documents and information provided in electronic form in automated mode;

recording of date and time of transfer of documents and information provided in electronic form and the date and time of receipt of such documents and information;

direction of electronic messages to the sender on the date and time of receipt of the documents and information by the recipient;

invariance and integrity of documents and information provided in electronic form;

storage of documents and information provided in electronic form and their details.

**11.** In case of holding of the meeting of creditors in the form of absent voting, the notification of holding of the meeting of creditors included in the unified federal register of information on bankruptcy shall, together with the information

established by Article 13 of this Federal Law, contain a direct reference to the website where the information on holding of the meeting of creditors is published.

**12.** Exclusive competence of the meeting of creditors shall include:

taking decisions on approval or refusal to approve the individual's debt restructuring schedule;

taking decisions on approval or refusal to approve the amendments to the individual's debts restructuring schedule;

taking decisions on filing of an application to the commercial court for cancellation of the individual's debts restructuring schedule, except for the cases envisaged by this Federal Law;

taking decisions on filing of an application to the commercial court for acknowledging the individual bankrupt and initiation of the sale of the individual's assets, except for the cases envisaged by this Federal Law;

taking decisions on conclusion of an amicable agreement;

other issues referred to the exclusive competence of the meeting of creditors in accordance with this Federal Law.

**13.** In case of holding of a meeting of creditors in the form of absent voting, electronic copies of minutes of the meeting of creditors and the documents considered and/or approved by the meeting shall be attached to the information on the results of the meeting of creditors that shall be included in the unified federal register of information on bankruptcy.

**Article 213.9.** Financial Administrator

**1.** Participation of a financial administrator in a bankruptcy case shall be obligatory.

**2.** A financial administrator approved by the commercial court in a case of bankruptcy of an individual shall meet the requirements set by this Federal Law for insolvency practitioners for the purpose of his approval in the case of bankruptcy of an individual.

The commercial court shall approve a financial administrator through the procedure set by Article 45 of this Federal Law, taking into account the provisions of Article 213.4 of this Federal Law and this Article.

**3.** Remuneration of the financial administrator shall be paid in the form of a fixed amount and the interest set by Article 20.6 of this Federal Law, taking into account the specifics established by this Article.

The fixed amount of remuneration shall be paid to the financial administrator once at the completion of the procedure applicable in case of bankruptcy of individuals, independently from the term, for which each procedure was introduced.

**4.** The fixed amount of remuneration for the financial administrator shall be paid for the account of funds of the individual, unless otherwise envisaged by this Federal Law.

The interest envisaged by Article 20.6 of this Federal Law shall be paid for the account of funds received as a result of execution of debt restructuring schedule of the individual or sale of his assets.

In case of any disagreements between the financial administrator, the individual and the creditors regarding payment for services of persons involved by the financial administrator for securing fulfillment of his duties, the disagreement shall be settled through the procedure established by Item 5 of Article 20.7 and Item 1 of Article 60 of this Federal Law.

**5.** The requirement of conclusion by the financial administrator of a supplementary agreement of compulsory insurance of his liability related to indemnification of losses inflicted to persons participating in the case of bankruptcy of an individual and other persons in relation to non-fulfillment or undue fulfillment of obligations of the financial administrator in the case of bankruptcy of the individual, shall not be applied.

**6.** A financial administrator shall have the right to involve other persons on the debtor's account for the purpose of securing fulfillment of his duties only on the basis of a ruling of the commercial court considering the individual's bankruptcy case.

The commercial court shall deliver a ruling on involvement of other persons and on establishing of the amount of payment for their services upon the request of the financial administrator on condition that the financial administrator has justified their involvement and the amount of payment for their services, and in case of consent of the individual.

The request of the financial administrator shall be considered by the commercial court within 10 days from the date of its receipt.

The commercial court shall inform the persons participating in the individual's bankruptcy case on date and venue of the court meeting using the procedure established by the procedural legislation. Failure of the persons duly informed to appear shall not impede consideration of the request of the financial administrator.

If a bankruptcy creditor, bankruptcy creditors and/or authorized body give their consent to payment at the expense

*[Unofficial translation from Russian]*

thereof for the services of the persons engaged by the financial administrator, it is not necessary to consider the cited issue by a commercial court. The financial administrator is not entitled to give such consent in the own name thereof.

**7.** The financial administrator shall have the right to:

file applications to the commercial court in the name of the individual for acknowledging transactions invalid on grounds envisaged by Articles and 61.3 of this Federal Law and the transactions concluded with violation of this Federal Law;

state objections regarding claims of the creditors;

participate in the procedure of restructuring of debts as a third party not stating independent claims regarding the subject of the dispute, from the part of the individual in all court cases on assets-related disputes (including those on charging of funds from the individual or for the benefit of the individual, on requesting or transfer of assets of the individual or for the benefit of the individual);

obtain information on the property of the individual and on accounts and deposits of the individual, including those on bank cards, on balances of electronic money and on transfer of electronic money from individuals and legal entities (including credit institutions), from state and local authorities;

demand information from the individual on his actions for execution of his debt restructuring schedule;

convene a meeting of creditors for resolving the issue of preliminary coordination of transactions and decisions of the individual in cases envisaged by this Federal Law;

file applications to the commercial court for taking measures for ensuring the safety of assets of the individual and on cancellation of such measures;

state a refusal from execution of transactions of the individual using the procedure established by this Federal Law;

receive information from credit bureaus and the Central Catalogue of Credit Histories according to the procedure established by a federal law;

involve other persons for ensuring exercise of his authority only on the ground of a ruling of the commercial court considering the case of bankruptcy of the individual, on a contractual basis and according to the procedure set by this Chapter;

exercise other rights related to fulfillment of his duties established by this Federal Law.

**8.** A financial administrator shall be obliged to:

take measures for revelation of assets of the individual and ensuring their security;

analyse thye financial standing of the individual;

reveal signs of intended and fraudulent bankruptcy;

keep the register of creditors' claims;

notify creditors on holding of the meeting of creditors in accordance with Item 5 of Article 213.8 of this Federal Law;

convene and/or hold meetings of creditors for consideration of issues related to the competence of the meeting of creditors by this Federal Law;

notify the creditors and the credit institutions where the debtor individual has a bank account and/or a bank deposit, including accounts linked to bank cards, and other debtors of the individual of initiation of restructuring of the individual's debts or sale of the individual's assets not later than within five business days from the day when the financial administrator learned of the existence of a creditor or a debtor;

consider reports on the progress of execution of the individual's debt restructuring schedule provided by the individual and provide conclusions on the progress of execution of such schedules to the meeting of creditors;

control execution of the individual's debt restructuring schedule;

control timely satisfaction by the individual of current claims of creditors, timely and full remittance of funds for satisfaction of claims of creditors;

direct a report of the financial administrator to the creditors not less than every quarter, unless otherwise established by the meeting of creditors;

fulfill other duties envisaged by this Federal Law.

**9.** An individual shall be obliged to provide any information on composition of his assets, their location, composition of his duties, on creditors and other information concerning his bankruptcy case to the financial administrator at his request

within 15 days from the date of receipt of the request.

In case of non-fulfillment of the said duty by the individual, the financial administrator shall file an application to the commercial court for request of the proof, on the basis of which the commercial court shall issue the requests to the financial administrator with the right to receive the responses personally, according to the procedure established by the procedural legislation.

Concealment of property, property rights or property obligations, information on the amount of the property, its location or other information on property, property rights or property obligations, transfer of property for holding by other persons, alienation or destruction of property and illegal impediment of activities of the financial administrator, including avoidance or refusal to provide information to the financial administrator in cases envisaged by this Federal Law, transfer of documents necessary for execution of his duties to the financial administrator, shall entail liability in accordance with the legislation of the Russian Federation.

**10.** Information constituting a personal, commercial, business, bank or other secret protected by the law shall be provided to the financial administrator in accordance with the requirements of federal laws.

Information that is a personal, commercial, business, bank or other secret protected by the law and received by the financial administrator in the course of exercise of his authority shall not be disclosed, except for the cases established by federal laws.

The financial administrator shall bear civil, administrative or criminal liability for disclosure of information that is a personal, commercial, business, bank or other secret protected by the law.

The financial administrator shall be obliged to indemnify the damage inflicted through disclosure by him of information that is a personal, commercial, business, bank or other secret protected by the law.

**11.** A refusal from execution of agreements or other transactions of the individual can be stated by the financial administrator on grounds envisaged by Article 102 of this Federal Law within three months from the date of initiation of restructuring of the individual's debts.

**12.** A financial administrator can be released or suspended by the commercial court from execution of his duties in case of bankruptcy of the individual in cases and according to the procedure envisaged by Article 83 of this Federal Law as related to the administrative manager.

In case of release or suspension of the financial administrator, the commercial court shall approve a new financial administrator through the procedure established by this Article.

Data on issuance by a commercial court of the judicial act on declaring the financial administrator's actions unlawful, on recovering from the financial administrator losses in connection with a failure to discharge or to discharge properly the duties thereof in a bankruptcy case of an individual who is an individual businessman are subject to inclusion into the Unified Federal Register of Data on Bankruptcy within three working days from the date of entry of the judicial act into force.

The report which is subject to inclusion into the Unified State Register of Data on Bankruptcy in compliance with this item in connection with recovery from the financial administrator of losses in a bankruptcy case of an individual who is an individual businessman shall cite the amount of losses recovered from the financial administrator in compliance with the judicial act.

The outlays connected with publication of data on dismissal of the financial administrator or on the removal of the financial administrator from the discharge of the duties imposed thereupon in a bankruptcy case of an individual being an individual businessman, with declaring his/her actions (omission to act) as unlawful, recovery of losses from the financial administrator and inclusion of these data into the Unified Federal Register of Data on Bankruptcy shall be reimbursed on account of such qualified receiver.

**13.** At the latest within 10 days from the date of completion of an appropriate procedure applied in a bankruptcy case of an individual being an individual businessman the financial administrator shall include into the Unified Federal Register of Data on Bankruptcy as data the information on the results of an appropriate procedure (report) in the order established by Article 28 of this Federal Law, subject to the specifics established by this paragraph.

On the basis of the results of implementation of a plan of restructuring debts of an individual being an individual businessman an appropriate report, along with the data cited in Article 28 of this Federal Law, shall also contain the following data:

dates of rendering the judicial act on introduction of restructuring of debts of the individual being an individual businessman and of the end of restructuring debts of the individual being an individual businessman, as well as dates of rendering the judicial acts on changing the time of such procedure;

amount of creditors' claims in compliance with a register of creditors' claims as of the date of rendering the judicial act

on termination of restructuring debts of the individual

data on the date of holding a creditors' meeting on the basis of the results of implementation of a plan of restructuring the individual's debts and on the decisions adopted by it, as well as data on the resolutive part of the judicial act based on the results of restructuring the individuals' debts;

data on the number of the debtor's employees and former employees having claims included into a register of creditors' claims for making severance pays and/or for paying labour wages/salaries.

On the basis of the results of sale of the property of an individual being an individual businessman the appropriate report, along with the data cited in Article 28 of this Federal Law, shall also contain the following data:

the date of rendering judicial acts on introduction of the sale of the property of the individual and on completing the sale of the individuals' property, as well as the date of rendering the judicial acts on changing the time of such procedure;

the amount of creditors' claims in compliance with a register of creditors' claims as of the date of closing a register of creditors' claims (in particular marking out the amount of claims for making severance pay and paying wages/salaries of the persons who are working or were working under a labour contract, the principal debt and forfeits (fines, penalties) charged and other financial sanctions) and the total amount of individual's claims in respect of each line of claims satisfied in the course of restructuring the individual's debts;

data on the cost of the assets which are not included into the bankruptcy estate, data on the results of evaluation of the debtor's property, if such evaluation has been held, specifying the property, dates of evaluation the property and of the property's costs in compliance with an evaluation report;

data on the date of holding a creditors' meeting on the basis of the results of sale of the individual's property and on the decisions adopted by it, as well as data on the resolutive part of the judicial act based on the results of sale of the individual's property;

data on the number of the debtor's employees and former employees that have the claims for making severance pay and/or for paying labour wages included into a register of creditors' claims.

From the date of rendering by a commercial court the ruling on completion of restructuring an individual's debts or of the sale of an individual's property the authority of the financial administrator shall be terminated.

**Article 213.10.** Specifics of Legal Status of Creditors whose Claims are Secured by Pledge of the Individual's Assets

**1.** In the period from the date of delivery by the commercial court of a ruling on acknowledging the application for acknowledging an individual bankrupt justified and to the date of approval of the schedule of restructuring of his debts or to the date of taking by the commercial court of a decision on acknowledging the individual bankrupt, no foreclosure of the pledged assets, including that in an extrajudicial order, shall be allowed.

For the assets pledged, the restrictions established by Item 4 of Article 18.1 of this Federal Law shall be applicable in the said period.

**2.** After approval by the commercial court of the individual's debt restructuring schedule, the bankruptcy creditor on obligations secured by pledge of assets of the individual that did not vote for it, shall have the right to file an application to the commercial court for foreclosure of the pledged assets of the individual that can be satisfied by the commercial court, except for the case when it is proved that the foreclosure of the assets impedes execution of the individual's debt restructuring schedule.

**3.** The terms related to satisfaction of claims of bankruptcy creditors secured with pledge of assets of the individual shall be contained in the debt restructuring schedule of the individual. Such terms shall be approved by the pledge lender.

If the debt restructuring schedule of the individual does not contain the procedure for satisfaction of creditors' claims secured with pledge of assets of the individual, the order of sale set by Item 5 of Article 18.1 of this Federal Law shall be applied to such pledged assets.

**4.** On obligations secured with pledge of assets of the individual the bankruptcy creditor shall have the right to vote at the meeting of creditors in the course of all procedures applicable in the individual's bankruptcy case.

**Article 213.11.** Implications of Initiation of Restructuring of Debts of an Individual

**1.** From the date of delivery by the commercial court of a ruling on acknowledging of application for acknowledging an individual bankrupt justified and initiation of restructuring of his debts a moratorium for satisfaction of creditors' claims on monetary obligations and on making compulsory payments shall be introduced, except for the cases envisaged by this Article.

**2.** The following implications shall occur from the date of delivery by the commercial court of a ruling on acknowledging of application for acknowledging an individual bankrupt justified and on initiation of restructuring of his debts:

the term for execution of the obligation of making compulsory payments for participation in the case of bankruptcy of

*[Unofficial translation from Russian]*

the individual created before acceptance by the commercial court of the application for acknowledging the individual bankrupt shall be deemed due:

claims of creditors on monetary obligations and on making compulsory payments, except for current payments, claims for acknowledging the property right, for requesting the property from unlawful possession by other persons, for acknowledging transactions invalid and on application of implications of invalidity of void transactions can only be stated through the procedure established by this Federal Law. Notices of claims stated not within the framework of the case of the individual's bankruptcy and not considered by the court before the date of initiation of restructuring of debts of the individual shall be left unconsidered by the court after such date;

charging of forfeits (penalties or late payment fees) and other financial sanctions, including interest on all obligations of the individual, except for current payments shall be stopped;

arrests of property of the individual and other restrictions for disposal of property of the individual shall be lifted. Arrests and other restrictions of disposal of property of the individual can only be imposed during the proceedings on the bankruptcy case of the individual:

suspended shall be execution of enforcement documents on property penalties to be charged from the individual, excluding the enforcement documents on demands for indemnification of damage to life or health, on cases of requesting property from unlawful possession by other persons, for elimination of obstacles to possession of such property, on acknowledging the title to the property, on charging of alimony and on demands for foreclosure of the pledged residential premises, if, as of the date of introduction of such procedure the creditor that is the pledge holder gave its consent to retainment of the pledged residential premises within the enforcement proceedings in accordance with Item 5 of Article 61 of Federal Law No. 102-FZ of July 16, 1998 On Mortgage (Pledge of Real Estate). The ground for suspension of execution of enforcement documents shall be a ruling of the commercial court considering the case of bankruptcy of the individual, on acknowledging the application for acknowledging the individual bankrupt justified and on initiation of restructuring of debts of the individual.

Agreements on refusal of the individual from preparation and presenting of his debt restructuring schedule shall be void.

**3.** Upon the request of the creditor or the financial administrator the commercial court shall have the right to take measures for securing claims of creditors and interests of the individual in accordance with commercial procedural legislation, including setting a veto on disposal of a part of assets of the individual, including prohibition of holding auctions for sale of assets of the individual.

**4.** Initiation of restructuring of debts of an individual shall be the ground for unilateral refusal by the creditor from execution of the agreement envisaging satisfaction by the individual of claim of such creditor in a non-monetary form. It can be declared on the unilateral refusal in the process of setting claims of the creditor to the individual in the case of his bankruptcy.

**5.** In the course of restructuring of debts of the individual he can conclude transactions or several related transactions upon the written preliminary consent of the financial administrator:

for purchase, alienation or in relation with the possibility of direct or indirect alienation of property whose value is more than 50 thousand roubles, real estate, securities, interest in the authorised capital and transport vehicles;

on receipt and issuance of borrowings, receipt of loans, issuance of sureties and guarantees, assignment of rights to claim, transfer of debt and introduction of trust management of assets of the individual;

for pledge of assets of the individual.

In case of any disagreement related to conclusion of such transactions between the individual and the financial administrator they shall have the right to refer to the commercial court considering the individual's bankruptcy case for its settlement.

From the date of initiation of restructuring of debts of the individual he shall have no right to deposit his assets as a contribution or a share contribution in the authorised capital or unit fund of the legal entity, to acquire interest (shares or units) in the authorised (share) capitals or unit funds of legal entities or to conclude transactions without consideration for the individual.

abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**5.1.** An individual shall have the right to open a special bank account and dispose of funds placed on it, without a consent of the financial administrator. The amount of operations of disposal of funds placed on the special bank account, carried out by the individual, shall not exceed 50 thousand roubles per month.

Upon application of the individual, the commercial court shall have the right to increase the maximum amount of funds placed on the special bank account of the debtor, that the individual has the right to dispose of on a monthly basis.

*[Unofficial translation from Russian]*

The debtor shall dispose of funds placed on other accounts (deposits) on the basis of a preliminary written consent of the financial administrator.

If credit institutions carry out operations on bank accounts and bank deposits of the individual, including bank card accounts, violating the rules established by this Item, the credit institutions can only be brought to responsibility in the case, if the credit institution had known or should have known by the moment of the operation on introduction of restructuring of the individual's debts, taking into account Item 3 of Article 213.7 and paragraph 8 of Item 8 of Article 213.9 of this Federal Law.

**6.** abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

**Article 213.12.** Procedure for Provision of Draft Schedule of Restructuring of Debts of an Individual

**1.** In the course of restructuring of debt of an individual, he, the creditor or the authorised authority shall have the right to direct a draft schedule for restructuring of his debts to the financial administrator, bankruptcy creditors and the authorised authority not later than within 10 days from the day of expiration of the term envisaged by Item 2 of Article 213.8 of this Federal Law.

**2.** Draft schedule of restructuring of debts of an individual with attachment of the documents envisaged by this Federal Law shall be directed by the individual, the bankruptcy creditor or the authorised authority to the financial administrator, the individual (if the draft schedule of restructuring of debts of the individual is provided by the bankruptcy creditor or the authorised authority), bankruptcy creditors or the authorised authority by a registered letter with a notice of delivery or shall be handed over personally.

Information on the procedure and the place for familiarisation with the draft schedule of restructuring of debts of the individual and the documents attached to it shall also be published through the procedure established by Article 213.7 of this Federal Law.

**3.** If the financial administrator has received two or more draft schedules of restructuring of debts of the individual directed by the persons cited in Item 1 of this Article, the financial administrator shall submit them to the meeting of creditors for consideration.

**4.** If the financial administrator has not received any draft schedules of restructuring of debts of the individual within the term established by this Article, the financial administrator shall submit a proposal for acknowledging the individual bankrupt and initiation of sale of assets of the individual to the meeting of creditors for consideration.

**5.** Not earlier than 20 days from the date of directing the draft schedule of restructuring of debts of the individual to bankruptcy creditors and to the authorised authority, but not later than within 60 days from the day of expiration of the term cited in Item 2 of Article 213.8 of this Federal Law, the financial administrator shall be obliged to hold the first meeting of creditors. The commercial court shall have the right to postpone its holding until completion of consideration of creditors' claims.

The financial administrator shall be obliged to present a report on its activities, information on financial standing of the individual, the draft schedule of restructuring of debts of the individual (if any), his objections concerning the presented draft schedule and/or a proposal for its improvement (if there are such objections and/or proposals) for consideration of the first meeting of creditors or in case envisaged by Item 4 of this Article, a proposal for acknowledging the individual bankrupt and introduction of sale of assets of the individual.

**6.** The draft schedule of restructuring of debts of the individual shall be considered by the meeting of creditors using the procedure established by this Federal Law.

**7.** Not later than 5 days before the date of meeting of the commercial court dedicated to consideration of the case of bankruptcy of the individual the financial administrator shall be obliged to submit a report on his activities, information on financial standing of the individual, minutes of meeting of creditors that considered the draft schedule of restructuring of debts of the individual, attaching the documents envisaged by Item 7 of Article 12 of this Federal Law, to the commercial court.

**Article 213.13.** Requirements for the Individual Regarding whose Debt the Restructuring Schedule can be Presented

**1.** A schedule of restructuring of debts of the individual can be presented in respect of debt of the individual that meets the following requirements:

the individual has a source of income as of the date of provisions of the debt restructuring schedule;

the individual does not have any unexpunged or outstanding conviction for an intended crime in the sphere of economy and the term, within which the individual is deemed subjected to administrative punishment for a minor larceny, intended destruction or damaging of property or intended or fraudulent bankruptcy, has expired before the date of acceptance of the application for acknowledging the individual bankrupt;

293

*[Unofficial translation from Russian]*

the individual has not been acknowledged bankrupt within five years preceding provision of his debt restructuring schedule;

the schedule of restructuring of debts of the individual had not been approved within 8 years preceding provision of the schedule.

**2.** The individual shall be obliged to notify creditors of:

facts of bringing of the individual to administrative liability for a minor larceny, intended destruction or damaging of property, unlawful actions in the course of bankruptcy, fraudulent or intended bankruptcy;

criminal and administrative cases against the individual known to him and on existence of outstanding or unexpunged conviction;

on taken decisions on acknowledging the individual bankrupt or on executed schedules for restructuring of his debts within 8 years preceding the provision of the individual's debt restructuring schedule.

Information envisaged by this Item shall be given in the debt restructuring schedule of the individual.

**Article 213.14.** Contents of the Debt Restructuring Schedule of an Individual

**1.** A debt restructuring schedule of an individual shall contain provisions on the procedure and the terms of proportional repayment of claims and interest for the total amount of claims of all bankruptcy creditors and the authorised authority known to the individual as of the date of direction of his debt restructuring schedule to the bankruptcy creditors and to the authorised authority, in monetary form.

Procedure for notification of bankruptcy creditors and the authorised authority on an essential change of the property position of the individual and criteria of essential change of his property position shall be set in his debt restructuring schedule.

**2.** The term for execution of the debt restructuring schedule of an individual shall not exceed three years. If the debt restructuring schedule of an individual is approved by the commercial court according to the procedure set by Item 4 of Article 213.17 of this Federal Law, the term for execution of such schedule shall not exceed 2 years.

**3.** The terms of debt restructuring schedule of an individual for bankruptcy creditors and the authorised authority that voted against its approval or did not participate in the voting shall not be worse than those for bankruptcy creditors and the authorised authority that voted for its approval.

For creditors on obligations secured with pledge of assets of the individual, the debt restructuring schedule of the individual shall envisage priority satisfaction of their claims at the account of proceeds from the sale of the pledged assets. The funds received from sale of the pledged assets in full, but not more than in the amount of principal receivable on the obligation secured with pledge and the interest due (payment for utilisation of funds) shall be directed to the bankruptcy creditor whose rights are secured with pledge of assets of the individual. Any exclusion of such priority satisfaction from the debt restructuring schedule shall only be possible with the consent of the creditor whose claim is secured with pledge of the respective assets of the individual.

Terms of the debt restructuring schedule of the individual for creditors on obligations secured with pledge of his assets that voted against its approval or did not participate in the voting, shall not be worse than those for creditors on obligations secured with pledge of assets of the individual that voted for its approval.

**4.** Claims of the creditors, to which the individual is liable for inflicting damage to life or health as well as demands to payment of alimony, retirement benefits, payment for work of persons hired under a labour agreement and payment of remuneration to authors of intellectual activities results shall not be included in the debt restructuring schedule of the individual.

**5.** The debt restructuring schedule of the individual shall envisage satisfaction of claims of bankruptcy creditors and the authorised authority proportionally to the sum of claims of creditors included in the debt restructuring schedule of the individual.

With the consent of an individual bankruptcy creditor and/or the authorised authority, the debt restructuring schedule of the individual can contain a provision on partial satisfaction of claims of the person that gave the consent.

**6.** In cases envisaged by this Federal Law, the debt restructuring schedule of the individual can contain provisions on the procedure and the terms for sale of the assets that are the subject of pledge (mortgage).

**Article 213.15.** Documents to be Attached to the Debt Restructuring Schedule of an Individual

**1.** The following shall be attached to the debt restructuring schedule of an individual:

list of property and property rights of the individual;

information on sources of income of the individual over 6 months preceding submittal of his debt restructuring

*[Unofficial translation from Russian]*

schedule to the commercial court;

information on accounts payable, including debt on current obligations;

the credit report received from a credit bureau or the document confirming absence of credit history of the individual, received from a credit bureau;

statement of the individual on reliability and completeness of documents attached, and on compliance of the individual with the requirements of Article 213.13 of this Federal Law;

application of the individual for approval of his debt restructuring schedule and on objection of the individual regarding such schedule, if the schedule is offered by the bankruptcy creditor or the authorised authority.

**2.** Attached to the list of property and property rights of the individual envisaged by Item 1 of this Article shall be copies of the documents confirming such property rights of the individual (if any).

**Article 213.16.** Approval of the Debt Restructuring Schedule of an Individual by the Meeting of Creditors

Decision of the meeting of creditors regarding approval of the debt restructuring schedule of an individual shall be taken by the majority of votes of the total number of votes of bankruptcy creditors and the authorised authorities whose claims are included in the register of creditors' claims.

**Article 213.17.** Consideration of the Debt Restructuring Schedule of an Individual by the Commercial Court

**1.** The debt restructuring schedule of an individual approved by the meeting of creditors shall be approved by the commercial court after the individual has satisfied claims on current obligations subjected to satisfaction in accordance with this Federal Law and repayment of debt to creditors of the first and the second priority, whose claims are included in the register of creditors' claims.

**2.** If the meeting of creditors has not approved the debt restructuring schedule of an individual, the commercial court shall postpone consideration of approval of such schedule, if there is an application of the person participating in the case of bankruptcy of the individual for granting an additional term for improvement of the schedule.

An additional term for improvement of the debt restructuring schedule of an individual granted by the commercial court in accordance with this Item shall not exceed two months.

**3.** Following the results of consideration of the debt restructuring schedule of an individual in accordance with this Article, the commercial court shall deliver one of the following rulings:

on approval of the debt restructuring schedule of the individual;

on postponing of consideration of approval of the debt restructuring schedule of the individual;

on refusal to approve the debt restructuring schedule of the individual, on acknowledging the individual bankrupt and on initiation of sale of the individual's assets.

**4.** If the meeting of creditors has not approved the debt restructuring schedule of the individual, the commercial court shall have the right to approve it on condition that its implementation makes it possible to fully satisfy claims of bankruptcy creditors on obligations secured by pledge of assets of the individual, other claims of bankruptcy creditors and claims of the authorised authority included in the register of creditors' claims, in the amount essentially higher that the bankruptcy creditors and/or the authorised authority could have obtained as a result of immediate sale of assets of the individual and distribution of his average monthly income for 6 months, and such amount is not less than 50 percent of the amount of claims of such creditors and the authorised authority.

**5.** Court acts envisaged by this Article can be contested.

**Article 213.18.** Grounds for Refusal to Approve the Debt Restructuring Schedule of an Individual by the Commercial Court

The commercial court shall deliver a ruling on refusal to approve the debt restructuring schedule of an individual in the cases of:

provision of the debt restructuring schedule of the individual as related to his debt that does not comply with the requirements of this Federal Law;

non-fulfillment by the individual of the obligation of notification of creditors of circumstances envisaged by Item 2 of Article 213.13 of this Federal Law, if there is a corresponding application of the bankruptcy creditor or the authorised authority;

violation of the procedure for taking a decision by the meeting of creditors on approval of the debt restructuring schedule of the individual, established by Article 213.16 of this Federal Law;

*[Unofficial translation from Russian]*

existence of unreliable information in the debt restructuring schedule of the individual and in the documents attached thereto;

contradiction of the debt restructuring schedule of the individual with this Federal Law, other federal laws and other regulatory legal acts of the Russian Federation.

**Article 213.19.** Implications of Approval of the Debt Restructuring Schedule of an Individual

**1.** The following implications shall occur from the date of approval of the debt restructuring schedule of an individual by the commercial court:

claims of creditors included in the schedule can only be stated to the individual according to the procedure and on conditions envisaged by the schedule;

claims of creditors not included in the schedule can be stated to the individual through the procedure established by this Federal Law, taking into account the specifics envisaged by this Chapter;

creditors shall have no right to state claims for reimbursement of losses incurred by them in relation to approval of the schedule;

termination of monetary obligations of the individual by way of setting off of a counter claim of the same kind shall not be allowed, except for the cases, when it is envisaged by the said schedule;

abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

abrogated upon the expiry of 180 days after the day of the official publication of Federal Law No. 222-FZ of June 23, 2016;

forfeits (penalties, late payment fees) and other sanctions for non-fulfillment or undue fulfillment of monetary obligations and making obligatory payments, the claims regarding which are included in the said schedule and the interest payable for such non-execution or undue execution shall not be charged, except for current payments;

the individual shall be obliged to notify the bankruptcy creditors and the authorised authority in writing on essential change of his property position within 15 days from the day of occurrence of such changes using the procedure established by the debt restructuring schedule of the individual. The criteria for an essential change of the property position of the individual shall be set in the debt restructuring schedule of the individual.

**2.** Interest shall be charged on the amount of claims of the bankruptcy creditor or the authorised authority included in the debt restructuring schedule of the individual approved by the commercial court, according to the procedure and in the amount envisaged by this Item.

Interest on the amount of claims of the bankruptcy creditor or the authorised authority expressed in the currency of the Russian Federation shall be charged in the amount of the refinancing rate set by the Central Bank of the Russian Federation as of the date of approval of the debt restructuring schedule of the individual.

Interest on the amount of claims of the bankruptcy creditor expressed in a foreign currency and defined in roubles at the rate set by the Central Bank of the Russian Federation as of the date of introduction of restructuring of the individual's debts shall be charged in the amount established by the agreement, but not more than in the amount of the refinancing rate set by the Central Bank of the Russian Federation as of the date of approval of the debt restructuring schedule.

An agreement between the financial administrator and the bankruptcy creditor can envisage a less amount of interest payable or a shorter term for charging of the interest as against the amount or the term envisaged by this Item.

The interest envisaged by this Article shall be charged by the financial administrator after full satisfaction of creditors' claims in accordance with the register of creditors' claims and on condition of sufficiency of funds of the individual for payment of the interest.

The period of interest charging shall start from the date of initiation of restructuring of debts of the individual and end on the date of delivery by the commercial court of a ruling on termination of proceedings on the case of bankruptcy of the individual, the date of satisfaction of the said claims by the individual or a third party in the course of restructuring of debts of the individual or the date of delivery of a ruling on cancellation of the debt restructuring schedule of the individual and on acknowledging him bankrupt.

The interest envisaged by this Article shall not be taken into account in case of calculation of the number of votes of the bankruptcy creditor or the authorised authority at the meetings of creditors.

**3.** Within the term for execution of the debt restructuring schedule of an individual and five years after completion of its execution the individual, for whose debt the schedule is approved, shall have no right to conceal the fact of execution of such

schedule when applying for a loan and also when purchasing goods (work or services) envisaging a payment deferral or payment by installments.

**4.** Bankruptcy creditors and the authorised authority whose claims are not included in the debt restructuring schedule of an individual shall have the right to state their claims within the term, for which such schedule is approved, using the procedure established by this Federal Law.

Such claims included in the register of creditors' claims shall be satisfied on standard conditions envisaged by the debt restructuring schedule of the individual.

**Article 213.20.** Amending the Debt Restructuring Schedule of an Individual upon the Initiative of the Individual and Extension of Term for Execution of the Schedule

**1.** An individual shall have the right to direct proposals on making amendments to his debt restructuring schedule to the financial administrator.

Amendments to be made to the debt restructuring schedule of an individual shall be approved by the commercial court.

**2.** Within 15 days from the day of receipt by the financial administrator of the individual's proposal for making amendments to his debt restructuring schedule the financial administrator shall be obliged to direct such schedule with the amendments thereto to bankruptcy creditors and to the authorised authority by a registered letter with a notice of delivery.

**3.** For consideration of approval of the amendments to be made to the debt restructuring schedule of an individual, the meeting of creditors shall be convened by the financial administrator within a month from the date of direction of the said schedule with the amendments to the bankruptcy creditors and to the authorised authority.

Following the results of consideration of the amendments to be made to the debt restructuring schedule of an individual, the meeting of creditors shall take a decision on approval of the amendments or refusal to approve the amendments.

**4.** The amendments to be made by the individual to his debt restructuring schedule shall be approved by the meeting of creditors by the majority of votes of the total number of votes of bankruptcy creditors and the authorised authority, whose claims are included in the register of creditors' claims.

**5.** Following the results of consideration of the amendments to the debt restructuring schedule of an individual, the commercial court shall deliver one of the following rulings:

on approval of the amendments to the said schedule, in case of their approval by the meeting of creditors;

on postponing of consideration of approval of the amendments to the schedule, if the board of directors refuse their approval in case of existence of the request envisaged by Item 2 of Article 213.17 of this Federal Law;

on refusal to approve the amendments to the schedule.

The rulings cited in paragraphs 2 and 4 of this Item can be contested.

**6.** Upon the application of an individual the commercial court can extend the term for execution of the debt restructuring schedule of the individual, but by not more than the maximum term for its execution, if the extension is approved by the meeting of creditors through the procedure established by this Article.

The commercial court shall extend the term for execution of the debt restructuring schedule of an individual by up to three years without consent of the meeting of creditors, if the individual presents a proof that execution of the schedule within the term specified in it appeared to be impossible because of a contingency.

On extension of the term for execution of the debt restructuring schedule of an individual the commercial court shall deliver a ruling that can be contested.

**Article 213.21.** Amending the Debt Restructuring Schedule of an Individual upon the Initiative of the Meeting of Creditors

**1.** A meeting of creditors shall have the right to file an application to the commercial court for making amendments to the debt restructuring schedule of an individual in case of improvement of the property position of the latter.

The application shall contain:

evidence of the capability of satisfaction by the debtor of claims included in his debt restructuring schedule within a shorter term and/or satisfaction of more creditors' claims than the schedule contains;

evidence of improvement of property position of the individual as against his property position as of the date of approval of his debt restructuring schedule;

proposals on amending the debt restructuring schedule of the individual.

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 55 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 299
of 317
*[Unofficial translation from Russian]*

**2.** Decision of the meeting of creditors on filing of an application to the commercial court for making amendments to the debt restructuring schedule of the individual shall be taken by the majority of votes of bankruptcy creditors and the authorised authority, whose claims are included in the register of creditors' claims.

**3.** Of the date of consideration of the application of the meeting of creditors for making amendments to the debt restructuring schedule of an individual the commercial court shall inform the persons participating in the individual's bankruptcy case. Failure of the persons duly informed to appear shall not impede consideration of the application.

**4.** Following the results of consideration of the application of the meeting of creditors for making amendments to the debt restructuring schedule of an individual the commercial court shall deliver one of the following rulings:

on approval of the amendments to be made to the debt restructuring schedule of the individual;

on refusal to approve the amendments to the debt restructuring schedule of the individual.

The said rulings can be contested.

**Article 213.22.** Completion of Execution of the Debt Restructuring Schedule of an Individual

**1.** Not later than a month before expiration of the set term for execution of the debt restructuring schedule of an individual the financial administrator shall be obliged to prepare a report on the results of execution by the individual of the debt restructuring schedule approved by the commercial court.

The said report with the attached copies of documents confirming satisfaction of claims of creditors shall be directed to the bankruptcy creditors and to the authorised authority, whose claims are included in the debt restructuring schedule of the individual, and to the commercial court.

**2.** Information on the place and procedure for familiarisation with the documents envisaged by Item 1 of this Article shall be published according to the procedure established by Article 213.7 of this Federal Law.

**3.** If claims of creditors included in the debt restructuring schedule of an individual are not satisfied as of the date of consideration of the report cited in Item 1 of this Article or it is not provided within the term set in Item 1 of this Article, the financial administrator, the bankruptcy creditor or the authorised authority shall convene the meeting of creditors for consideration of referral to the commercial court with an application for cancellation of the debt restructuring schedule of the individual and for acknowledging him bankrupt.

The meeting of creditors shall be held not later than 14 days prior to expiration of the term for execution of the debt restructuring schedule of the individual.

**4.** After receipt of the report cited in Item 1 of this Article or of the application of the meeting of creditors for cancellation of the debt restructuring schedule of an individual and for acknowledging him bankrupt or upon the expiration of the term for holding of the meeting of creditors envisaged by Item 3 of this Article, the commercial court shall assign a date of meeting for consideration of the results of execution of the schedule and complaints of the creditors regarding actions of the individual and/or the financial administrator. Of the date and the venue of the court meeting the commercial court shall inform the persons participating in the bankruptcy case of the individual using the procedure set by this Federal Law.

**5.** Following the results of consideration of the results of execution of the debt restructuring schedule of an individual and complaints of creditors the commercial court shall issue one of the following court rulings:

on completion of restructuring of debts of the individual, if the debt envisaged by such schedule is repaid and the claims of creditors are acknowledged unjustified;

on cancellation of the schedule and a decision on acknowledging the individual bankrupt, if there are grounds for cancellation of the schedule.

**Article 213.23.** Cancellation of the Debt Restructuring Schedule of an Individual

**1.** The commercial court shall cancel the debt restructuring schedule of an individual in cases of:

unreliable information in the schedule and the documents attached thereto;

non-fulfillment by the individual of the obligation of notification of creditors of circumstances envisaged by Item 2 of Article 213.13 of this Federal Law, if there is the respective request of the bankruptcy creditor or the authorised authority;

non-fulfillment by the individual of obligations to the bankruptcy creditor or the authorised authority in accordance with terms of the said plan, if there is a respective request of the bankruptcy creditor or the authorised authority, whose claims are included in the said schedule.

**2.** In case of non-fulfillment by the individual of obligations to the bankruptcy creditor or the authorised authority in accordance with the terms of the debt restructuring schedule of the individual, the bankruptcy creditor or the authorised

*[Unofficial translation from Russian]*

authority, the obligations to which are not fulfilled and whose claims are included in the debt restructuring schedule of the individual, shall have the right to apply to the commercial court for cancellation of the debt restructuring schedule of the individual.

The evidence of directing a copy of the application of the bankruptcy creditor or the authorised authority for cancellation of the debt restructuring schedule of the individual to such individual shall be attached to the application.

The application of the bankruptcy creditor or the authorised authority for cancellation of the debt restructuring schedule of the individual shall be considered by the commercial court within 15 days from the date of its receipt.

If the individual failed to fulfill his obligations to the bankruptcy creditor or the authorised authority in accordance with the terms of the debt restructuring schedule of the individual as of the date of the court meeting for consideration of the application of the bankruptcy creditor or the authorised authority for cancellation of the debt restructuring schedule of the individual, the commercial court shall cancel such schedule.

**3.** The debt restructuring schedule of an individual can be cancelled by the commercial court only as related to bankruptcy creditors and the authorised authority, whose claims are included in the schedule. In such case, the commercial court shall deliver a ruling on cancellation of the debt restructuring schedule of the individual and take a decision on acknowledging him bankrupt.

**4.** Claims of bankruptcy creditors and the authorised authority included in the debt restructuring schedule of an individual cancelled by the commercial court shall be recorded in the register of claims of creditors to the extent, to which they shall have been satisfied as of the date of cancellation of the schedule and shall be satisfied within claims of creditors of the third priority.

**5.** Information on cancellation of the debt restructuring schedule of an individual and on acknowledging him bankrupt shall be published by the financial administrator through the procedure established by Article 213.7 of this Federal Law within five days from the date of delivery by the commercial court of a ruling on cancellation of the debt restructuring schedule of the individual and taking a decision by the commercial court on acknowledging him bankrupt.

**Article 213.24.** Decision of the Commercial Court on Acknowledging an Individual Bankrupt

**1.** Commercial court shall take a decision on acknowledging an individual bankrupt in the cases when:

the individual, the bankruptcy creditors and/or the authorised authority has not provided a debt restructuring schedule of the individual within the term set by this Federal Law;

the meeting of creditors has not approved the debt restructuring schedule of the individual, except for the case envisaged by Item 4 of Article 213.17 of this Federal Law;

the commercial court has cancelled the debt restructuring schedule of the individual;

proceedings on the case of bankruptcy of the individual are resumed in cases established by Item 3 of Article 213.29 or Item 7 of Article 213.31 of this Federal Law;

in other cases envisaged by this Federal Law.

**2.** If the commercial court takes a decision on acknowledging an individual bankrupt, it shall take a decision to initiate sale of assets of the individual. Sale of the individual's assets shall be introduced for a term not exceeding six months. Such term can be extended by the commercial court for an individual that is not an individual entrepreneur or an individual entrepreneur upon the request of the persons participating in the bankruptcy case.

When taking a decision on acknowledging an individual bankrupt, the commercial court shall approve a person that executed duties of a financial administrator and participated in the procedure of restructuring of the individual's debts, as a financial administrator for participation in the procedure of sale of the individual's assets, unless other candidate is offered by the meeting of creditors by the moment of acknowledging the individual bankrupt.

**2.1.** If the commercial court takes a decision on acknowledging the individual bankrupt and introduction of sale of his assets in compliance with Item 8 of Article 213.6 of this Federal Law, the financial administrator shall direct a notification of acknowledgement the individual bankrupt and introduction of assets of the individual by mail to all creditors of the individual known to him not later than within 15 days from the date of issuance by the commercial court of the decision on acknowledgement the individual bankrupt. In the notification the creditors shall also be proposed to state their claims in the case of the individual's bankruptcy and the procedure for such statement shall be specified.

**3.** In case of acknowledging an individual bankrupt, the commercial court shall have the right to deliver a ruling on temporary restriction of the right of the individual to exit the Russian Federation.

Temporary restriction of the right of the individual to exit the Russian Federation shall be in force until the date of delivery of a ruling on termination of proceedings on the individual's bankruptcy case, including that as a result of approval of

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 57 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 301
of 317                    *[Unofficial translation from Russian]*

an amicable agreement by the commercial court. If there is a justifiable reason, by which exit of the individual from the Russian Federation is required, the commercial court shall have the right to cancel the temporary restriction of the right to exit early, upon the request of the individual and taking into account opinions of the creditors and the financial administrator.

Copies of rulings on setting of a temporary restriction of the right of the individual to exit the Russian Federation and on cancellation of the set temporary restriction shall be directed to the individual, to a territorial body of the federal executive authority authorised to control and supervise in the sphere of migration and to the border authorities.

**4.** In the course of the procedure of sale of the assets of the individual, claims of bankruptcy creditors and the authorised authority shall be subjected to consideration according to the procedure envisaged by Article 100 of this Federal Law. The term for closing of the register not complied with through a justifiable reason can be recovered by the commercial court.

**5.** A credit institution shall be obliged to notify the financial administrator on deposits, accounts, other property in it and on an agreement of rent of a safety deposit box of the individual acknowledged bankrupt not later than within five business days from the day when it became known or should have become known of acknowledging the individual bankrupt.

**Article 213.25.** Assets of an Individual Subjected to Sale in Case of Acknowledging him Bankrupt and Initiation of Sale of his Assets

**1.** All assets of an individual that he has as of the date of taking a decision by the commercial court on acknowledging him bankrupt and on introduction of sale of the individual's assets, and revealed or purchased after the date of taking of the said decision shall compose the bankruptcy estate, except for the assets determined by Item 3 of this Article.

**2.** Upon the motivated request of the individual and other persons participating in the case of bankruptcy of the individual, the commercial court shall have the right to exclude the assets of the individual that can, in accordance with a federal law, be foreclosed under enforcement documents and the income from whose sale would not essentially influence satisfaction of claims of the creditors, from the bankruptcy estate. The total value of assets of the individual excluded from the bankruptcy estate in accordance with the provisions of this Item shall not exceed 10 thousand roubles.

The list of assets of the individual to be excluded from the bankruptcy estate in accordance with the provisions of this Item shall be approved by the commercial court, on which a ruling shall be delivered that can be appealed against.

**3.** Assets that cannot be foreclosed in accordance with the civil procedural legislation shall be excluded from the bankruptcy estate.

A ruling on exclusion of the assets of the individual from the bankruptcy estate or on refusal of such exclusion can be appealed against.

**4.** A bankruptcy estate can include assets of the individual that compose his share in shared assets that cannot be foreclosed in accordance with the civil legislation or family legislation. A creditor shall have the right to state a demand for separation of the share of the individual from the shared assets for its foreclosure.

**5.** From the date of acknowledging the individual bankrupt:

all rights related to the assets that constitute the bankruptcy estate, including the right to dispose of it, shall be exercised only by the financial administrator in the name of the individual and shall not be exercised by the individual personally;

transactions concluded by the individual personally (without involvement of the financial administrator) in respect of the property constituting the bankruptcy estate shall be null and void. Claims of creditors on transactions of the individual concluded by him personally (without involvement of the financial administrator) shall not be satisfied at the expense of the bankruptcy estate.

arrests and other restrictions of disposal of assets of the individual imposed earlier shall be lifted;

charging of forfeits (penalties, late payment fees) and other financial sanctions and interest on all obligations of the individual, except for current payments, shall be terminated;

debt of the individual to the creditor that is a credit institution shall be acknowledged non-performing.

**6.** In the course of sale of assets of the individual the financial administrator shall on behalf of the individual:

dispose of funds of the individual on accounts and in deposits in credit institutions;

open and close accounts of the individual in credit institutions;

exercise rights of a participant of a legal entity held by the individual, including voting at the general meeting of participants;

conduct the court proceedings related to property rights of the individual, including those on requesting or transfer of

*[Unofficial translation from Russian]*

assets of the individual or for the benefit of the individual and on charging of debt of third parties to the individual. The individual shall also have the right to participate in such cases personally.

**7.** From the date of acknowledging the individual bankrupt:

registration of transfer or encumbrance of title of the individual to the assets, including real estate and uncertified securities shall only be carried out on the basis of an application of the financial administrator. Applications of the individual filed before such date shall not be executed;

fulfillment of their obligations to the individual related to transfer of assets to him by third parties, including obligations of payment of funds shall only be possible as related to the financial administrator and shall be prohibited as related to the individual personally;

the debtor shall have no right to open bank accounts and deposits in credit institutions and obtain funds on them personally.

**8.** Credit institutions can be brought to a liability for carrying out of operations under an order of the individual, for whose property the assets sale procedure has been initiated, or under a power of attorney issued by him personally under a bank deposit and/or bank account agreement, including operations with the bank card, only in the case when they have been duly informed of initiation of the individual's assets sale procedure, taking into account Item 3 of Article 213.7 and paragraph 8 of Item 8 of Article 213.9 of this Federal Law.

**9.** Not later than within one business day following the day of acknowledging him bankrupt the individual shall be obliged to hand over all his bank cards to the financial administrator. Not later than within one business day following the day of their receipt, the financial administrator shall be obliged to take measures for blocking of operations with the bank cards received for remittance of funds on the primary account of the debtor with the use of bank cards.

Article 213.26. Specifics of Sale of Assets of an Individual

**1.** Within one month from the date of end of inventory and evaluation of assets of an individual the financial administrator shall be obliged to submit a provision on the procedure, the terms and the period for sale of the individual's assets specifying the initial sales price, to the commercial court. The provision shall be approved by the commercial court and shall comply with the rules for sale of the individual's assets established by Articles 110, 111, 112, 139 of this Federal Law.

A ruling shall be delivered on approval of the provision on the procedure, the terms and the period for sale of the individual's assets and on setting of the initial sales price. The ruling can be appealed against.

For assets located outside the Russian Federation, an individual ruling shall be delivered that shall be executed by the rules of procedural legislation of the country where the assets are located, or in accordance with international agreements of the Russian Federation with the country where the assets are located.

**2.** Assets of the individual included in the bankruptcy estate in accordance with this Federal Law shall be evaluated by the financial administrator independently, on which the financial administrator shall take a decision in writing. The evaluation can be appealed against by the individual, the creditors or the authorised authority in the case of bankruptcy of the individual.

A meeting of creditors shall have the right to take a decision on evaluation of assets of the individual or a part of the assets included in the bankruptcy estate in accordance with this Federal Law, involving a valuer and compensating expenses for the evaluation at the account of the persons that voted for taking of the decision.

**3.** Assets of the individual or a part of the assets shall be subjected to sale on an auction through the procedure set by this Federal Law, unless otherwise envisaged by a decision of the meeting of creditors or a ruling of the commercial court. Jewelry and other luxury items whose value exceeds 100 thousand roubles and the real estate independently from its value shall be sold on a public auction through the procedure set by this Federal Law.

**4.** A subject of pledge shall be sold using the procedure set by Items 4, 5, 8 - 19 of Article 110 and Item 3 of Article 111 of this Federal Law, considering provisions of Article 138 of this Federal Law with the specifics set by this Item.

Initial sales price of a subject of pledge, the procedure and the terms of the auction shall be determined by the bankruptcy creditor, whose claims are secured with pledge of the assets to be sold.

If there is a disagreement between the bankruptcy creditor regarding obligations secured with pledge of assets of the individual and the financial administrator regarding the procedure and the terms of the auction for sale of the pledged assets, each of them shall have the right to refer to the commercial court considering the case of the individual's bankruptcy for its settlement, and the commercial court, having considered such application, shall deliver a ruling on approval of the procedure and the terms of the auction for sale of the pledged assets that can be appealed against.

**5.** If the financial administrator is unable to sell the assets of the individual and/or the rights to claim to third parties of the individual, and the creditors refuse to accept the assets and/or the rights to claim as a satisfaction of their claims, the right to

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 59 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 303
of 317                    *[Unofficial translation from Russian]*

dispose of the assets and/or the rights to claim shall be restored after completion of sale of the individual's assets. With that, the assets constituting the bankruptcy estate and not sold by the financial administrator shall be transferred to the individual under a statement of delivery and acceptance. In such case, Item 1 of Article 148 of this Federal Law shall not be applied.

**6.** The financial administrator shall be obliged to inform the individual, the bankruptcy creditors and the authorised authority of carrying out of inventory, evaluation and sale of assets of the individual at their requests, and to report to the meeting of creditors. If any violations are revealed, the individual, the bankruptcy creditor or the authorised authority shall have the right to contest the actions of the financial administrator in the commercial court.

**7.** Assets of the individual owned by him by the right of shared ownership with the spouse (former spouse) shall be subjected to sale in the case of the individual's bankruptcy by the general rules envisaged by this Article. In such cases, the spouse (former spouse) shall have the right to participate in the case of bankruptcy of the individual at resolving of issues related to the sale of the common assets. A part of proceeds from sale of the common assets of the spouses (former spouses) corresponding to the share of the individual in such assets shall be included in the bankruptcy estate, and the rest of the proceeds shall be paid out to the spouse (former spouse). If the spouses also have common obligations (including existence of joint obligations or provision of a surety or a collateral by one spouse for the other), a part of the proceeds due to the spouse (former spouse) shall be paid out after payments on such common obligations with funds of the spouse (former spouse).

**Article 213.27.** Procedure for Satisfaction of Claims of Creditors of an Individual

**1.** Out of priority and at the account of the bankruptcy estate claims of creditors on current payments shall be satisfied primarily to the creditors whose claims had formed before acceptance of the application for acknowledging the individual bankrupt.

**2.** Claims of creditors on current payments shall be satisfied by the following priority:

the first priority shall have claims on current payments related to payment of alimony, court fees on the case of bankruptcy of the individual, payment of remuneration to the financial administrator and charging of debt on payment of remuneration to persons involved by the financial administrator for securing of his duties in the case of bankruptcy of the individual;

the second priority shall have claims for payment of retirement benefits and salaries to persons that are working or worked under labour agreements;

the third priority shall have claims for payment for residential premises and utility services, including payment of a fee for overhaul of common assets in a block of apartments;

the fourth priority shall have claims on other current payments.

Claims of creditors on current payments of the same priority shall be satisfied by a calendar order.

**3.** Claims of creditors included in the respective register shall be satisfied by the following priorities:

the first priority shall have claims of individuals to which the individual bears liability for damage to life or health and claims for payment of alimony;

the second priority shall have settlements on payment of retirement benefits and salaries to persons that are working or worked under labour agreements;

the third priority shall have settlements with other creditors.

Settlements with creditors shall be carried out according to the procedure set by this Federal Law with the specifics envisaged by this Article.

**4.** When satisfying claims of individuals to which the individual bears liability for damage to life or health, no capitalisation of payments due over time is needed.

**5.** 80 percent of the amount received from sale of the pledged assets shall be allocated to satisfaction of claims of the creditor on obligations secured with pledge of assets of the debtor.

Funds remaining of the amount of proceeds from sale of the pledged assets shall be put on a special bank account of the individual opened in accordance with Article 138 of this Federal Law as follows:

10 percent of proceeds from sale of the pledged assets - for satisfaction of claims of creditors of the first and the second priorities in case of insufficiency of other assets of the individual for satisfaction of such claims;

the remaining funds - for reimbursement of court expenses, payment of remuneration to the financial administrator, payment for services rendered by persons involved by the financial administrator for securing fulfillment of his duties and expenses related to sale of the pledged assets.

*[Unofficial translation from Russian]*

Funds intended for satisfaction of claims of creditors of the first and the second priorities and remaining on the special bank account of the individual after full satisfaction of the said claims shall be included in the bankruptcy estate.

Funds remaining after full reimbursement of court expenses, expenses for payment of remuneration to the financial administrator, payment for services of the persons involved by the financial administrator for securing fulfillment of his duties and expenses related to sale of the pledged assets shall be allocated to repayment of a part of claims of bankruptcy creditors secured with pledge of assets of the individual not repaid out of the value of the pledged assets in accordance with this Item. Funds remaining after full reimbursement of expenses envisaged by this paragraph and claims of creditors secured with pledge of the sold assets shall be included in the bankruptcy estate.

Claims of creditors not satisfied at the account of value of the pledged assets on obligations secured with pledge of property of the individual shall be satisfied within claims of creditors of the third priority.

**6.** Claims of creditors not satisfied due to insufficiency of assets of the individual shall be deemed satisfied, except for the cases envisaged by this Federal Law.

**Article 213.28.** Completion of Settlements with Creditors and Release of the Individual from Obligations

**1.** After completion of settlements with creditors the financial administrator shall be obliged to submit the report on the results of sale of the individual's assets to the commercial court, attaching copies of documents confirming the sale of the assets and satisfaction of claims of creditors, and the register of creditors' claims specifying the amount of the satisfied claims.

**2.** Following the results of consideration of the report on the results of sale of assets of the individual, the commercial court shall deliver a ruling on completion of sale of the individual's assets.

**3.** After completion of settlements with creditors the individual acknowledged bankrupt shall be released from further satisfaction of claims of creditors, including those not stated at initiation of restructuring of debts of the individual or sale of the individual's assets (hereinafter - release of the individual from obligations).

Release of the individual from obligations shall not be applicable to claims of creditors envisaged by Items 4 and 5 of this Article and to the claims, of whose existence the creditors did not know and should not have known by the moment of issuance of the ruling on completion of sale of assets of the individual.

**4.** Release of the individual from obligations shall not be allowed in the following cases:

a court act that has entered into force has brought the individual to criminal or administrative liability for unlawful actions in the course of the bankruptcy, intended or fraudulent bankruptcy on condition that such offenses are committed in the given case of bankruptcy of the individual;

the individual failed to provide the necessary information or provided unreliable information to the financial administrator or the commercial court considering the case of his bankruptcy, and such fact is established by the related court act adopted in the course of consideration of the case of bankruptcy of the individual;

it has been proved that at creation or fulfillment of the obligation that was the basis for stating a claim in the individual's bankruptcy case by the bankruptcy creditor or the authorised authority the individual acted unlawfully, committed fraud, willfully evaded payment of accounts payable, evaded payment of taxes and/or duties chargeable from him, provided a misleading information at obtaining of a loan, concealed or deliberately destroyed assets.

In such cases, the commercial court shall indicate the non-application of the rule of release from fulfillment of obligations to the individual in its ruling on completion of sale of assets of the individual, if such cases are revealed after completion of sale of assets of the individual.

**5.** Claims of creditors on current payment, for indemnification of damage to life or health, for payment of salaries and retirement benefits, indemnification of moral damage, charging of alimony and other claims inextricably connected to the identity of the creditor, including claims not stated at initiation of restructuring of debts of the individual or sale of assets of the individual, shall remain in force and can be stated after completion of proceedings on the case of bankruptcy of the individual in their unsatisfied part, according to the procedure established by the legislation of the Russian Federation.

After completion of sale of assets of the individual for unsatisfied claims of creditors envisaged by this Item and included in the register of creditors' claims, the commercial court shall issue writs of execution in accordance with the legislation of the Russian Federation.

**6.** Rules of Item 5 of this Article shall also be applied to the claims for:

bringing of the individual to subsidiary liability as a controlling person (Article 10 of this Federal Law);

indemnification by the individual of losses inflicted by him to the legal entity whose participant or a member of collective bodies the individual was (Articles 53 and 53.1 of the Civil Code of the Russian Federation), intentionally or recklessly;

*[Unofficial translation from Russian]*

indemnification by the individual of losses inflicted deliberately or recklessly as a result of non-fulfillment or undue fulfillment of his duties in the bankruptcy case as a insolvency practitioner;

indemnification of damage to property inflicted by the individual intentionally or recklessly;

application for implications of invalidity of the transaction acknowledged invalid on the basis of Article 61.2 or 61.3 of this Federal Law.

**Article 213.29.** Review of a Ruling on Completion of Restructuring of Debts of the Individual or Sale of Assets of the Individual and Resumption of Proceedings on the Case of the Individual's Bankruptcy

**1.** In case of revelation of facts of concealment of assets by the individual or illegal transfer of assets by the individual to third parties, the bankruptcy creditors or the authorised authority, whose claims were not satisfied during the restructuring of debts of the individual or sale of his property shall have the right to apply to the commercial court for review of the ruling on completion of restructuring of the individual's debts or sale of the individual's assets and to set a claim for foreclosure of the assets.

**2.** A ruling on completion of restructuring of debts of an individual or sale of assets of an individual can be reviewed upon the newly discovered evidence, if the circumstances envisaged by Item 1 of this Article were not and could not be known to the bankruptcy creditor or the authorised authority as of the date of delivery by the commercial court of a ruling on completion of restructuring of debts of the individual or sale of property of the individual.

The bankruptcy creditor or the authorised authority shall have the right to file an application for review of the ruling on completion of restructuring of debts of the individual or sale of assets of the individual on the ground established by this Article within a month from the date of revelation of circumstances that are the ground for review of the ruling.

**3.** Cancellation of the ruling on completion of restructuring of debts of the individual or sale of assets of the individual shall be the ground for resumption of proceedings on the case of bankruptcy of the individual. The commercial court shall deliver a ruling on resumption of proceedings on the case of bankruptcy of the individual that can be executed immediately and can be appealed against.

**4.** Sale of assets of the individual shall be initiated in case of resumption of proceedings on the case of bankruptcy of the individual.

**5.** In case of cancellation of the ruling on completion of restructuring of debts of the individual or sale of assets of the individual, the notice of resumption of proceedings on the case of bankruptcy of the individual shall be published by the commercial court that took a decision on resumption of proceedings on case of bankruptcy of the individual, according to the procedure set by this Chapter.

From the date of cancellation of the ruling on completion of restructuring of debts of the individual or sale of assets of the individual, claims of the bankruptcy creditors and the authorised authority participating in the case of bankruptcy of the individual before completion of restructuring of debts of the individual or sale of assets of the individual shall be recovered in the register of creditors' claims in the non-satisfied part. Other bankruptcy creditors or the authorised authority shall have the right to state their claims using the procedure set by this Federal Law.

**6.** The essence and the amounts of claims of creditors and the authorised authority shall be determined as of the date of resumption of proceedings on the case of bankruptcy of the individual.

**Article 213.30.** Implications of Acknowledging an Individual Bankrupt

**1.** Within five years from the date of completion of the procedure of sale of assets of the individual or termination of proceedings on the case of his bankruptcy in the course of such procedure, the individual shall have no right to take obligations under loan and/or borrowing agreements without indicating the fact of his bankruptcy.

**2.** Within five years from the date of completion of the procedure of sale of assets of the individual or termination of proceedings on the case of his bankruptcy in the course of such procedure, the case of his bankruptcy cannot be initiated upon the application of such individual.

In case of a repeated acknowledgement of the individual bankrupt within the said period upon the application of the bankruptcy creditor or the authorised authority in the course of the newly initiated case of bankruptcy of the individual, the rule of release of the individual from obligations envisaged by Item 3 of Article 213.28 of this Federal Law shall not be applied.

Unsatisfied claims of creditors that are due can be presented through the procedure established by the legislation of the Russian Federation.

After completion of sale of assets of the individual in the case cited in this Item, the commercial court shall issue writs of execution for unsatisfied due claims of creditors.

*[Unofficial translation from Russian]*

**3.** Within three years from the date of completion of the procedure of sale of assets of the individual or termination of proceedings on the bankruptcy case in the course of such proceedings the individual shall have no right to hold positions in managing bodies of a legal entity or otherwise participate in managing of a legal entity.

**Article 213.31.** Specifics of Termination of Proceedings on Case of Bankruptcy of an Individual due to Conclusion of an Amicable Agreement

**1.** Conclusion of an amicable agreement shall be the ground for termination of proceedings on the case of the bankruptcy of an individual.

**2.** Decision on conclusion of an amicable agreement from the part of the debtor individual shall be taken by the individual.

**3.** The amicable agreement concluded in the course of proceedings on case of bankruptcy of an individual shall be applicable to claims of bankruptcy creditors and the authorised authority included in the register of creditors' claims as of the date of holding of the meeting of creditors that took the decision to conclude the amicable agreement.

**4.** Any disagreements between the financial administrator, the individual and the creditors on the issue of coordination of the amicable agreement shall be considered by the commercial court through the procedure set by this Federal Law.

An amicable agreement shall be approved by the commercial court.

**5.** In case of conclusion of an amicable agreement, execution of the individual's debt restructuring schedule and validity of a moratorium for satisfaction of creditors' claims shall be terminated.

**6.** From the date of termination of proceedings on the case of bankruptcy of the individual due to the conclusion of an amicable agreement:

authority of the financial administrator shall be terminated;

the individual or a third party participating in the amicable agreement shall begin repayment of debt to the creditors.

**7.** In case of resumption of proceedings on the case of bankruptcy of the individual due to the breach of terms of the amicable agreement, the individual shall be acknowledged bankrupt and sale of his assets shall be initiated.

**Article 213.32.** Specifics of Contesting of a Transaction of a Debtor Individual

**1.** An application for contesting of a transaction of a debtor individual on grounds envisaged by Article 61.2 or 61.3 of this Federal Law can be filed by the financial administrator upon his initiative or upon a decision of the meeting of creditors, by the bankruptcy creditor or the authorised authority, if the amount of his accounts payable included in the register of creditors' claims exceeds 10 percent of total accounts payable included in the register of creditors' claims, disregarding the amount of claims of the creditor in respect of which the transaction is being contested, and his interested persons.

**2.** The right to file an application for contesting of a transaction of a debtor individual on grounds cited in Article 61.2 or 61.3 of this Federal Law shall be created from the date of initiation of restructuring of debts of the individual.

With that, the limitation of action shall start from the moment when the financial administrator learned or should have learned of existence of the grounds cited in Article 61.2 or 61.3 of this Federal Law.

**3.** An application for contesting of a transaction of a debtor individual on grounds cited in Article 61.2 or 61.3 of this Federal Law shall be filed to the commercial court considering the case of bankruptcy of the individual independently from what persons are participating in the transaction.

**4.** Transactions concluded by the spouse of the debtor individual in respect of assets of the spouses shall also be subjected to contesting within the bankruptcy case of the individual, on grounds envisaged by the family legislation.

**5.** A custody and guardianship authority shall be involved in consideration of the application for contesting the transaction of the debtor individual that concerns rights of an underage child or a person acknowledged legally incapacitated by the court in the case of bankruptcy of the debtor individual.

Following the results of consideration of the application for contesting of a transaction of a debtor individual the commercial court shall deliver one of the following rulings cited in Item 6 of Article 61.8 of this Federal Law, if there is an opinion of the custody and guardianship authority on assessment of implications of acknowledging a transaction invalid, including that on possible deterioration of rights of an underage child or the rights of the person acknowledged legally incapacitated by the court.

### §2. The Features of Bankruptcy of Individual Entrepreneurs

**Article 214.** Grounds for Declaring an Individual Entrepreneur Bankrupt

The ground for declaring an individual entrepreneur bankrupt is his/her incapability to meet creditors' claims relating to

monetary obligations and/or to perform the duty of making mandatory payments.

### Article 214.1. Regulating of Bankruptcy of Individual Entrepreneurs

The rules established by paragraphs 1.1 and 4 of Chapter X of this Federal Law shall be applied to the relations connected to bankruptcy of individual entrepreneurs, taking into account the specifics set by this paragraph.

### Article 215. Abrogated from October 1, 2015.

### Article 216. Implications of Acknowledging an Individual Entrepreneur Bankrupt

**1.** From the moment of taking by the commercial court of a decision on acknowledging an individual entrepreneur bankrupt and on initiating of sale of assets of the individual, the state registration of the individual as an individual entrepreneur shall lose force and the licences for certain types of entrepreneurship activities issued to him shall be cancelled.

**2.** An individual entrepreneur acknowledged bankrupt cannot be registered as an individual entrepreneur within five years from the moment of completion of the procedure of sale of assets of the individual or termination of proceedings on the case of bankruptcy of the individual in the course of such procedure.

**3.** The commercial court shall direct a copy of the decision on acknowledging an individual entrepreneur bankrupt and initiation of sale of assets of the individual to the authority that registered the individual as an individual entrepreneur.

**4.** Within five years from the date of completion of the procedure of sale of assets of the individual or termination of proceedings on the bankruptcy case in the course of such procedure the individual shall have no right to carry out entrepreneurship activities, hold positions in managing bodies of a legal entity or otherwise participate in management of a legal entity.

#### §3. The Features of Bankruptcy of a Peasant (Individual) Farm

### Article 217. Grounds for Declaring a Peasant (Individual) Farm Bankrupt

The ground for declaring a peasant (individual) farm bankrupt shall be its inability to meet creditors' claims relating to monetary obligations, to payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract, and/or perform the duty to make mandatory payments.

### Article 218. The Features of the Procedure for Declaring an Entrepreneur Being the Head of a Peasant (Individual) Farm Bankrupt

**1.** The application of an individual entrepreneur being the head of a peasant (individual) farm for being declared bankrupt (hereinafter referred to as "application") may be filed with a commercial court if the consent in writing of all the members of the peasant (individual) farm is present.

The application shall be signed by the individual entrepreneur being the head of a peasant (individual) farm.

**2.** Apart from the documents specified in Article 38 of the present Federal Law the following documents shall be attached to the application:

on the composition and value of the property of the peasant (individual) farm;

on the composition and value of the property owned by the members of the peasant (individual) farm as well as on the sources at the expense of which the said property has been acquired;

the amount of income that can be received by the peasant (individual) farm upon the completion of a relevant period of agricultural work.

The said documents shall also be attached by an individual entrepreneur being the head of a peasant (individual) farm to a reply to the application of a creditor.

### Article 219. Features of the Financial Rehabilitation of a Peasant (Individual) Farm and the External Administration of a Peasant (Individual) Farm

**1.** Within two months after the issuance of a ruling by a commercial court on the institution of supervision in respect of a peasant (individual) farm, the head of the peasant (individual) farm may file a financial rehabilitation plan and a debt repayment schedule with the commercial court.

**2.** If implementation of the measures specified in the financial rehabilitation plan is going to allow the peasant (individual) farm to use among other means the incomes that can be received by the peasant (individual) farm upon the completion of a relevant period of agricultural work to settle creditors' claims relating to monetary obligations and mandatory payments in compliance with the debt repayment schedule, the commercial court shall institute financial rehabilitation for the

*[Unofficial translation from Russian]*

peasant (individual) farm.

A ruling shall be issued by the commercial court on the institution of financial rehabilitation for the peasant (individual) farm, such a ruling being subject to appeal.

**3.** The financial rehabilitation of a peasant (individual) farm shall be instituted until the completion of a relevant period of agricultural work with due regard to the time required for the sale of agricultural products produced or produced and processed.

If over the financial rehabilitation period there was a recession and deterioration in the financial state of the peasant (individual) farm due to a natural disaster, epizootic or other circumstances of an extraordinary nature, the financial rehabilitation term may be prolonged by one year on the condition that the debt repayment schedule is amended in the manner specified in Article 85 of the present Federal Law.

**4.** On the basis of a decision of a creditors' meeting, if there exists the possibility of restoration of solvency of the peasant (individual) farm, the commercial court shall institute external administration.

The external administration of a peasant (individual) farm shall be instituted until the expiry of a relevant period of agricultural work with due regard to the time required for the sale of agricultural products produced or produced and processed. The external administration term shall not exceed the duration established by Item 2 of Article 92 of the present Federal Law by more than three months.

If over the financial rehabilitation period there was a recession and a deterioration in the financial state of the peasant (individual) farm due to a natural disaster, epizootic or other circumstances of an extraordinary nature, the external administration term may be prolonged by one year.

**5.** The external administration of a peasant (individual) farm may be terminated by the commercial court before due time on an application of the administrator or any of the creditors in the case of:

default on completing the measures specified in the external administration plan;

the presence of other circumstances evidencing the impossibility of restoration of solvency of the peasant (individual) farm.

Termination before due time of the external administration of a peasant (individual) farm shall entail its being declared bankrupt and administration of the bankrupt's estate being commenced.

**Article 220.** The Receiver

**1.** An administration shall be approved by the commercial court for the purpose of conducting external administration of a peasant (individual) farm.

**2.** A person who does not comply with the criteria set out by the present Federal Law for qualified receivers may be approved as a receiver.

**3.** On the consent of the administrator the powers of an administrator may be exercised by the head of the peasant (individual) farm.

**Article 221.** The Bankrupt's Estate of a Peasant (Individual) Farm

**1.** If the commercial court has declared a peasant (individual) farm bankrupt and commenced administration of the bankrupt's estate the following shall be included in the bankrupt's estate of the peasant (individual) farm: the immovable property in common ownership of the members of the peasant (individual) farm, in particular, plants, utility and other buildings, amelioration and other facilities, pedigree, dairy and working cattle, poultry, agricultural and other machinery and equipment, means of transportation, implements and other property acquired for the peasant (individual) farm at the expense of common funds of its members, as well as the right of lease of the land plot possessed by the peasant (individual) farm and other rights in rem assessable in terms of money which are possessed by the peasant (individual) farm.

**2.** In the case of bankruptcy of a peasant (individual) farm the land plot possessed by the peasant (individual) farm may be alienated or transferred to another person, to the Russian Federation, the Russian region or the municipal entity to the extent in which its alienation is permitted by the land legislation.

**3.** The property owned by the head of the peasant (individual) farm and the members of the peasant (individual) farm as well as the other property in respect of which it is proven that it has been acquired for incomes not deemed common funds of the peasant (individual) farm shall not be included in the bankrupt's estate.

**Article 222.** Procedure for the Sale of Property and Rights in Rem of a Peasant (Individual) Farm

**1.** When selling the property of the debtor being a peasant farm, the qualified receiver must put up for sale the enterprise of the debtor being the peasant farm by way of holding an auction.

307

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 65 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 309
of 317                                    *[Unofficial translation from Russian]*

If the enterprise of the debtor being a peasant farm has not been sold through an auction, the qualified receiver is bound to put up for sale as a single lot the property of the debtor being the peasant farm which is used for making agricultural products, their storage, processing and sale (hereinafter referred to as the industrial-engineering complex of the debtor being a peasant farm).

Where it is cited by Paragraphs One and Two of this item, the enterprise of the debtor being a peasant farm and put up for sale as a single lot of the industrial-engineering complex of the debtor being the peasant farm shall be sold in the procedure established by Items 4 - 19 of Article 110 of this Federal Law. The property of the debtor being a peasant farm shall be evaluated in the procedure established by Article 130 of this Federal Law.

If the industrial-engineering complex of the debtor being a peasant farm put up for sale as a single lot has not been sold through an auction, the property of the debtor being the peasant farm shall be sold in compliance with Article 111 and Item 4 of Article 139 of this Federal Law.

**2.** The priority right to acquire the property of the peasant (individual) farm being sold in the procedure established by Paragraph Four of Item 1 of this article shall belong to persons pursuing the production of agricultural products and possessing the land plots adjacent to the land plot belonging to the peasant (individual) farm.

For the purpose of realisation of the priority right to acquire the debtor's enterprise or another property of the debtor, the qualified receiver shall send a notice of the sale of property of the debtor to the persons which produce agricultural products and possess a land plot that is immediately adjacent to the land plot of the debtor and also publish information on the sale of the debtor's property in a printed edition at the place where the debtor is located including an indication of the initial selling price of the property of the debtor put up for sale.

**3.** Paragraph one is abrogated.

If within one month after the receipt of the offer for acquisition of the property and rights in rem the said persons have not declared their will to acquire the property and the rights in rem, the qualified receiver or the head of the peasant (individual) farm shall effect realisation of the property and the rights in rem in the manner set out in the present Federal Law.

**Article 223.** The Consequences of Declaration of a Peasant (Individual) Farm Bankrupt

**1.** As of the time of adoption of the decision whereby a peasant (individual) farm is declared bankrupt and administration of the bankrupt's estate is commenced, the state registration of the head of the peasant (individual) farm as an individual entrepreneur shall become invalid.

**2.** The commercial court shall send a copy of the decision whereby the peasant (individual) farm was declared bankrupt and administration of the bankrupt's estate was commenced to the body that registered the head of the peasant (individual) farm as an individual entrepreneur.

### § 4. Specifics of Consideration of Case of Bankruptcy of an Individual in Case of his Death

**Article 223.1.** The Terms of and Procedure for Individual's Bankruptcy in Case of Death Thereof

**1.** Proceedings in respect of an individual's bankruptcy case may be initiated after the death thereof or after declaring him/her dead on application of a bankruptcy creditor or authorized body, as well as of the persons cited in Paragraph One of Item 4 of this article.

Data to the effect that an individual is dead or is declared dead are subject to mentioning in an application for declaring the individual bankrupt, if the bankruptcy creditor or authorized body know about it. On such occasion, a commercial court in the ruling on acceptance of the application for declaring an individual bankrupt shall mention applying of the rules of this paragraph in case of the individual's bankruptcy.

In the event of declaring such application as well-founded, a commercial court shall render the decision on declaring the individual bankrupt and on introducing a procedure for the sale of the individual's property.

**2.** In the event of an individual's death or declaring him/her dead, the rules of this chapter shall apply when trying the individual's bankruptcy case in the part thereof which is not regulated by this paragraph.

**3.** If the data to the effect that an individual is dead or is declared dead have become known to a commercial court after initiation of bankruptcy proceedings, a commercial court shall issue on application of a person participating in the bankruptcy proceedings or on its own initiative the ruling on applying the rules of this paragraph in case of the individual's bankruptcy.

**4.** The individual's rights and duties in a bankruptcy case thereof in the event of the individual's death or in the event of declaring him/her dead upon the expiry of the time period fixed by the legislation of the Russian Federation for acceptance of inheritance shall be exercised by the individual's heirs who have accepted the inheritance. To declare the individual's heirs as the persons participating in the individual's bankruptcy case a notary shall present a copy of the probate case-file at the court's request.

*[Unofficial translation from Russian]*

Prior to the expiry of the time period fixed by the legislation of the Russian Federation for acceptance of inheritance, the notary at the place of inheritance opening shall be deemed a person participating in the proceedings in respect of the individual's bankruptcy case and shall exercise the following powers:

shall make with the commercial court trying the individual's bankruptcy case the petition for applying in the individual's bankruptcy case the rules of this paragraph and for transfer to the sale of the property (in respect of peasant farms to bankruptcy proceedings) within five working days from the date of opening the probate case, if in the individual's bankruptcy case restructuring of the individual's debts is applied;

shall transfer to the financial administrator the information on the inherited property that has become known thereto in connection with the discharge of his/her duties.

**5.** If after initiation of proceedings in respect of an individual's bankruptcy case he/she died or was declared dead, the financial administrator within five working days from the date when he/she learnt about the individual's death or about declaring him/her dead shall inform on it the notary at the place of inheritance opening, as well as shall file with the commercial court trying the individual's bankruptcy case the petition for applying to the individual's bankruptcy case the rules of this paragraph and for transfer to the sale of property (in respect of peasant farms - to bankruptcy proceedings), if restructuring of the individual's debts is applied in the individual's bankruptcy case.

**6.** Before the expiry of the time period for inheritance acceptance fixed by the legislation of the Russian Federation it is not allowed for the financial administrator to engage persons at the individual's expense for ensuring the discharge of the duties imposed thereupon in the individual's bankruptcy case, except for the persons provided for by Item 2 of Article 20.7 of this Federal Law.

**7.** The property making up the individual's inheritance shall be included into the bankruptcy estate.

The residential premises (a part thereof), if for an individual being the debtor and family members thereof jointly residing with him/her at the premises owned by him/her they are the only premises which are fit for permanent residence, except for the property cited in this paragraph if it is the subject of mortgage and execution may be levied against it in compliance with the legislation on mortgage, as well as the land plots on which the cited objects are located, except if they are the subject of mortgage and execution may be levied against them in compliance with the legislation on mortgage, may be included into the bankruptcy estate by decision of the commercial court trying the bankruptcy case.

The property cited in Paragraph Two of this item shall not be included into the bankruptcy estate:

before the expiry of the time period for inheritance acceptance fixed by the legislation of the Russian Federation, if the persons entitled to the hereditary portion in the individual's inheritance reside at the residential premises (parts thereof) and for them such residential premises (a part thereof) are the only ones which are fit for permanent residence;

before the expiry of the time period for inheritance acceptance fixed by the legislation of the Russian Federation, if such property is the only premises which are fit for the heir's permanent residence.

**8.** Along with the requirements provided for by Paragraph Two of Item 2 of Article 213.27 of this Federal Law (in respect of peasant farms - by Paragraph Two of Item 2 of Article 134 of this Federal Law) in the first turn shall be satisfied claims in respect of the current payments connected with the outlays on the dead person's burial, outlays on the inheritance guard and on making notarial actions by a notary.

**9.** In the event of termination of proceedings in respect of an individual's bankruptcy case before the expiry of the time period for the inheritance acceptance fixed y the legislation of the Russian Federation, the financial administrator shall transfer data on the property making up the bankruptcy estate that has not been sold by the financial administrator to the notary processing the probate case.

**10.** After competing settlements with creditors an individual declared bankrupt shall be relieved of further satisfaction of creditors' claims, including the creditors' claims that were not declared when restructuring of the individual's debts was introduced or when the individual's property was sold. The provisions of Items 3 - 6 of Article 213.28 of this Federal Law shall not apply. The ruling on completion of the sale of an individual's property may not be revised.

**11.** It is not allowed to make an amicable agreement before the expiry of the time period for inheritance acceptance.

### Chapter XI. Simplified Proceedings Applicable in a Bankruptcy Case

#### §1. The Features of Bankruptcy of a Debtor in Liquidation

**Article 224.** Bankruptcy of a Debtor in Liquidation

**1.** If the value of property of a debtor being a legal person in respect of which a liquidation decision has been adopted is insufficient for meeting creditors' claims, such legal person shall be liquidated in the manner established by the present Federal Law.

309

**2.** If the circumstances specified in Item 1 of the present article have been discovered the liquidation commission (liquidator) shall file a petition with the commercial court for declaring the debtor bankrupt.

**3.** If the circumstances specified in Item 1 of the present article are discovered after the adoption of the decision to liquidate the legal person and before the formation of the liquidation commission (appointment of a liquidator) an application for declaring the debtor bankrupt shall be filed with the commercial court by the owner of property of the debtor being a unitary enterprise, a promoter (stockholder) of the debtor or the head of the debtor.

**Article 225.** The Features of Consideration of a Case of Bankruptcy of a Debtor in Liquidation

**1.** The commercial court shall adopt a decision to declare a debtor in liquidation bankrupt and to commence winding-up procedure and shall approve a winding-up receiver.

In the event of bankruptcy of a debtor in liquidation supervision, financial rehabilitation or external administration shall not be instituted.

**2.** Abrogated.

**2.1.** A register of the claims of the creditors of a debtor in liquidation in a bankruptcy case shall be drawn up in the procedure established by the present Federal Law. Voting at a meeting of creditors and defining the priority rating of creditors' claims when a proceeding applicable in a bankruptcy case to a debtor in liquidation is being commenced shall be carried out according to the amount of the claims included in the register of creditors' claims prepared in accordance with the present Federal Law.

**3.** If a proceeding has been commenced in a bankruptcy case on an application filed before the formation of a liquidation commission (appointment of a liquidator) by the owner of property of the debtor being a unitary enterprise, a promoter (stockholder) of the debtor or the head of the debtor, the bankruptcy case shall be considered with no account being taken of the features specified in the present paragraph.

**Article 226.** The Consequences of Refusal to Liquidate a Debtor by Way of Bankruptcy

**1.** A breach of the provisions of Item 2 of Article 224 of the present Federal Law shall be deemed a ground for refusing to make an entry on liquidation of the legal person in the comprehensive state register of legal persons.

**2.** If they commit a violation of the provisions of Items 2 and 3 of Article 224 of the present Federal Law, the owner of property of the debtor being a unitary enterprise, the debtor's promoters (stockholders), the debtor's head and the chairman of the liquidation commission (the liquidator) shall be subsidiarily liable for unsettled creditors' claims relating to the debtor's monetary obligations and mandatory payments.

### §2. The Bankruptcy of a Debtor in Absentia

**Article 227.** The Features of Filing an Application for Declaring a Debtor in Absentia Bankrupt

**1.** In cases when the debtor being an individual or the head of the debtor being a legal person which has terminated its activity is absent or his/her whereabouts cannot be established, an application for declaring the debtor in absentia bankrupt may be filed by a bankruptcy creditor or an authorised body, no matter the amount of accounts payable.

**2.** An application for deeming an absent debtor bankrupt shall be filed by the empowered body only if there are funds required to finance the proceedings applicable in a bankruptcy case. The procedure and terms for financing the proceedings applicable in a bankruptcy case to an absent debtor, for instance, the rate of the fee payable to the winding-up receiver shall be established by the Government of the Russian Federation.

**3.** If absent debtor signs have been discovered when the supervision is performed, the interim receiver, or, in the course of the procedure of restructuring of debts of the individual, the financial administrator, shall file an application with the commercial court for shift to the simplified proceeding applicable in a bankruptcy case to an absent debtor. The commercial court shall issue a relevant ruling.

**Article 228.** Hearing the Case of Bankruptcy of a Debtor in Absentia

**1.** The commercial court shall take a decision on deeming the absent debtor bankrupt and on commencing a winding-up proceeding or on initiation of a procedure of sale of assets of the individual within one month after the date of acceptance for processing of the application for deeming the absent debtor bankrupt or after the date when the commercial court received the interim receiver's application for shift to the simplified proceeding applicable in a bankruptcy case to an absent debtor.

In the case of bankruptcy of a debtor in absentia, supervision, financial rehabilitation, external administration and restructuring of debts of the individual shall not be applicable.

**2.** A notice in writing of the bankruptcy of the debtor in absentia shall be served by the winding-up receiver to all the creditors of the debtor in absentia which are known to him/her, and they may present their claims to the winding-up receiver

*[Unofficial translation from Russian]*

within one month after the receipt of the notice in accordance with the procedure established in Article 71 of the present Federal Law.

No supplementary insurance shall be provided for the liability of the qualified receiver in respect of the absent debtor.

**3.** Having discovered property items of the absent debtor that allow to cover legal costs in connection with realisation of proceedings in the bankruptcy case, the winding-up receiver or financial administrator shall send a petition to the commercial court for termination of the simplified proceeding applicable in a bankruptcy case and for shift to the proceedings which are applicable in a bankruptcy case and are envisaged by the present Federal law.

On the petition of the winding-up receiver or financial administrator -- if he/she has discovered property items of the absent debtor -- the commercial court shall issue a ruling on termination of the simplified proceeding applicable in a bankruptcy case and on shift to the proceedings which are applicable in a bankruptcy case and are envisaged by the present Federal Law.

**4.** abrogated.

**Article 229.** Distribution of Receipts

Creditors' claims shall be met in accordance with the priority ranking set out in Article 134 of the present Federal Law.

**Article 230.** Application of Provisions on the Bankruptcy of a Debtor in Absentia

The provisions of the present paragraph shall be applicable also in case when the property of a debtor being a legal person is known to be insufficient for covering court expenses relating to the bankruptcy case or if no transactions have been accomplished on the debtor's bank accounts within the last 12 months preceding the date of filing of the application for declaring the debtor bankrupt, and also if there is other evidence of lack of entrepreneurial or other activity on the part of the debtor.

### § 3. Bankruptcy of Specialised Company and Mortgage Agent

**Article 230.1.** The Specifics of Filing an Application for Declaring a Specialised Company Bankrupt

**1.** An application for declaring a specialised company bankrupt shall be filed by the representative of owners of bonds of the specialised company (hereinafter referred to as the representative of bond owners) defined in compliance with the legislation of the Russian Federation on securities on the basis of a decision of a general meeting of bond owners.

In the event of issuance of bonds secured by the same pledge for two or more issues, an application for declaring a specialised company bankrupt shall be filed by a representative of the bond owners on the basis of a decision of a general meeting of owners of bonds of the issue in respect of which in compliance with the terms of the bond issue obligations shall be discharged in the first priority as compared to the bonds of other issues of such specialised company. With this, a decision of a general meeting of owners of bonds of other issues is not required.

An application of a representative of bond owners for declaring a specialised company bankrupt shall have attached thereto a record of a general meeting of bond owners and a properly attested copy of the decision on the bond issuance.

**2.** The bankruptcy creditor of a specialised company is not entitled to file with a commercial court an application for declaring the specialised company bankrupt if the exercise of the this right is limited in the agreement made by such creditor and specialised company by a particular date and/or by the occurrence of particular circumstances which have not occurred as of the time of filing the cited application.

**3.** The duty provided for by Item 1 of Article 9 of this Federal Law shall not originate in respect of the head of the debtor, this being a specialised company, if in compliance with the statutes of the specialised company filing of the application with a commercial court for declaring it bankrupt is dependent on a particular date and/or particular circumstances which have not occurred as of the date of filing the application.

**Article 230.2.** Considering the Case on Bankruptcy of Specialised Company

**1.** An commercial court, where there are the signs of bankruptcy established by this Federal Law, shall render the decision on declaring a specialised company bankrupt and on initiating bankruptcy proceedings, and shall endorse the bankruptcy receiver within a month from the date of taking over an application for declaring the specialised company bankrupt.

In the event of bankruptcy of a specialised company, monitoring, financial improvement and external control shall not apply.

**2.** Data on declaring a specialised company bankrupt and on initiating bankruptcy proceedings are subject to inclusion into the Comprehensive Federal Register of Data on Bankruptcy in the procedure established by Article 28 of this Federal Law without publishing them in an official publication.

Creditors are entitled in compliance with Article 71 of this Federal Law to make their claims against a specialised company within a month from the date of inclusion of data on declaring the specialised company bankrupt and on initiating

[Unofficial translation from Russian]

bankruptcy proceedings into the Comprehensive State Register of Data on Bankruptcy.

**3.** If in the case on the debtor's bankruptcy the interests of the creditors being owners of bonds are represented by a representative of the bond owners, such representative is subject to notification of receiving the creditors' claims.

**4.** Along with the persons provided for by Article 34 of this Federal Law, as the person participating in the case on bankruptcy of a specialised company shall be recognised a representative of the bond owners.

**Article 230.3.** The Specifics of Satisfying Pledge-Secured Claims of Creditors

**1.** Pledge-secured claims of creditors shall be satisfied within the framework of claims of third-priority creditors with the specifics provided for by Article 138 of this Federal Law.

If in the case on the debtor's bankruptcy the interests of the creditors being owners of pledge-secured bonds are represented by a representative of the bond owners defined in compliance with the legislation of the Russian Federation on securities, the monetary assets received after selling the property making up the hypothecation security shall be entered in the procedure established by Article 138 of this Federal Law by the bankruptcy receiver onto the special account of a representative of the bonds owners for subsequent settlements with the creditors which are owners of pledge-secured bonds in compliance with the terms of the bond issue.

In the event of issuance by a specialised company of bonds with the same hypothecation security for two or more issues thereof, the claims of owners of bonds in respect of each issue shall be satisfied by way of entering by the bankruptcy receiver onto a special account of a representative of bond owners in respect of each issue monetary assets received after selling the property making up the hypothecation security in the procedure established by Article 138 of this Federal Law in the order established by the terms of such bond issuance for subsequent settlements to be made by a representative of bond owners with owners of pledge-secured bonds within the framework on the same issue in the procedure established by the legislation of the Russian Federation on securities.

Where there is no representative of bond owners, the claims of creditors with pledged security shall be satisfied in the order established by the terms of such bond issue.

**2.** The property making up the hypothecation security shall be sold in the procedure established by Article 138 of this Federal Law, subject to the specifics established by this article.

A procedure for and terms of holding sales, as well as the initial selling price of the property making up the hypothecation security of bonds of a specialised company, shall be defined by a representative of owners of bonds with such hypothecation security on the basis of a decision of a general meeting of owners of the cited bonds or, in the absence of a representative of owners of the cited bonds or failure to adopt the relevant decision by a general meeting of owners of the cited bonds, by the bankruptcy receiver.

**Article 230.4.** The Transfer of the Property Making Up the Hypothecation Security of Bonds of Specialised Company

**1.** The property making up the hypothecation security of bonds of a specialised company, including the monetary claims which will result in future from the existing or from futures obligations, may be transferred on the basis of a decision of the creditors' meeting and in the procedure established by this decision to another specialised company with this specialised company's assuming the rights and responsibilities of the issuer of such bonds.

**2.** The transfer of the property constituting the hypothecation security of bonds of a specialised company shall be allowed on condition that the market value of the cited property exceeds the aggregate amount of obligations in respect of such bonds by at most ten per cent. With this, the market value of the property which is transferred in compliance with this article shall be defined by the appraiser engaged by the bankruptcy receiver on account of the specialised company being the debtor.

The corresponding appraiser's report is subject to inclusion by the bankruptcy receiver into the Comprehensive Federal Register of Data on Bankruptcy in the procedure established by Article 28 of this Federal Law.

Appealing against the appraiser's report provided for by this item shall not serve as a ground for suspending the transfer of the subject of pledge.

**3.** If the property left with a specialised company after the transfer of the subject of pledge is insufficient for repayment of the expenses provided for by this item and for satisfaction of the claims of the first-priority and second-priority creditors, the specialised company, to which the subject of pledge is transferred in compliance with this article, is bound to remit monetary assets onto the debtor's special bank account in compliance with Item 3 of Article 138 of this Federal Law within the limits of the amount of debt on such claims in the following procedure:

at most twenty per cent of the market value of the subject of pledge cited in this article for satisfaction of claims of the first-priority and second-priority creditors;

at most ten per cent of the market value of the subject of pledge cited in this article for covering court costs, outlays on

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 70 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 314
of 317                    *[Unofficial translation from Russian]*

payment of remuneration to qualified receivers and on payment for the services of the person engaged by a qualified receiver for the purpose of securing the discharge of the duties imposed upon him.

**4.** Monetary assets shall be only written off the debtor's special bank account on the instructions of the qualified receiver for the purpose of covering the outlays and satisfaction of the creditors' claims provided for by Item 3 of this article and may not be written off due to the debtor's circumstances or obligations of the qualified receiver. Execution may not be levied against the monetary assets kept on the debtor's special bank account due to other debtors obligations or obligations of the qualified receiver.

**5.** At the meeting of creditors where the issue of possible transfer of the property making up the hypothecation security of bonds of a specialised company is to be resolved the qualified receiver shall present a report on the appraisal of the cited property and an estimation of the amount required for covering the outlays and satisfying the claims of the creditors provided for by Item 3 of this article as of the date of holding the creditors' meeting where the decision on filing the petition with a commercial court for transfer of the cited property is adopted.

**6.** For the transfer of the property making up the hypothecation security of bonds of a specialised company, a meeting of creditors shall render the decision on filing with a commercial court the petition for transfer of the cited property. This petition shall have attached thereto a record of the creditors' meeting, the appraiser's report cited in Item 2 of this article and the document proving the remittance of monetary assets onto a special bank account, where it is provided for by Item 3 of this article.

**7.** On the basis of the results of considering the petition of a creditors' meeting for the transfer of the property making up the hypothecation security of bonds of a specialised company, a commercial court shall issue the following ruling:

on satisfying this petition and on the transfer of the cited property in the event of observing the terms of such transfer provided for by this article;

on the refusal to allow this petition in the event of failure to observe the terms of such transfer provided for by this article.

**8.** In the event of rendering by a commercial court the ruling on transfer of the property making up the hypothecation security of bonds of a specialised company, the monetary assets entered in the procedure established by Item 3 of this article onto the debtor's special bank account shall be allocated for repayment of the corresponding outlays and satisfaction of the creditors' claims.

The repayment of the outlays and satisfaction of the creditors' claims provided for by Item 3 of this article shall be effected within ten working days as from the date of entry into legal force of the ruling of a commercial court on the transfer of the property making up the hypothecation security of a specialised company's bonds.

The creditors' claims secured by pledge whose subject has been transferred in compliance with this article shall be excluded by the bankruptcy receiver from the register of creditors' claims.

**9.** In the event of issuing by a commercial court the ruling on the refusal to allow the petition of a creditors' meeting on transfer of the property making up the hypothecation security of bonds of a specialised company, the monetary assets entered in the procedure established by Item 3 of this article onto the debtor's special bank account are subject to repayment.

**Article 230.5.** The Specifics of the Bankruptcy of a Mortgage Agent

**1.** An application for declaring a mortgage agent bankrupt shall be filed according to the rules of Article 230.1 of this paragraph.

**2.** The case on bankruptcy of a mortgage agent shall be considered according to the rules of Article 230.2 of this paragraph.

### Chapter XII. Conclusive and Transitional Provisions

**Article 231.** Entry Into Force of the Present Federal Law

**1.** The present Federal Law shall enter into force upon the expiry of 30 days after is official publication, except for Item 3 of the present article of which the provisions shall enter into force as of the date of official publication of the present Federal Law and Paragraph 6 of Chapter IX of the present Federal Law of which the provisions shall enter into force as of July 1, 2009.

The provisions of Paragraph 11 of Item 4 of Article 29 of the present Federal Law shall enter into force upon the expiry of three months after the entry into force of the present Federal Law.

**2.** The provisions on bankruptcy of individuals not being individual entrepreneurs set out in the present Federal Law shall enter into force as of the date of entry into force of a federal law on the introduction of appropriate amendments to federal laws.

Case 1:16-cv-09139-PGG   Document 53-5   Filed 03/06/17   Page 71 of 95

17-10516   Doc 3-1   Filed 03/03/17   Entered 03/03/17 23:50:39   Exhibit A   Pg 315
of 317
                                                                        *[Unofficial translation from Russian]*

**3.** Within one year after the entry into force of the present Federal Law the control (supervision) body in respect of the qualified receiver who are not members of a self-regulating organisation of qualified receivers shall:

monitor their observing in their activity as qualified receivers the provisions of the legislation of the Russian Federation and the rules of professional activity of qualified receivers approved by the Government of the Russian Federation;

perform verification of the activity of qualified receivers;

file applications with a commercial court for dismissal of qualified receivers in cases when violations are discovered of provisions of the legislation of the Russian Federation and the rules of professional activity of qualified receivers approved by the Government of the Russian Federation.

**4.** The commercial court may approve the persons who comply with the standards set by Article 20 of the present Federal Law as qualified receivers.

Within one year after the entry into force of the present Federal Law the following persons may be members of self-regulating organisations of qualified receivers and may be approved by a commercial court as qualified receivers in bankruptcy cases: the persons who comply with the standards set by Items 1 and 8 of Article 20 of the present Federal Law, except for the standards set by Paragraphs 5, 6 and 8 of Item 1 of Article 20, and the persons who held qualified receiver licences, except for cases when such licences have been revoked or annulled.

Within the term specified by Item 3 of the present article the following shall in particular be taken into account as the executive work record sufficient for a person to be appointed qualified receiver: the period when the person worked as acting qualified receiver of at least one year, except for the period of work as acting qualified receiver in respect of a debtor in absentia.

Within one year after the entry into force of the present Federal Law the documents specified in Paragraphs 7 and 9 of Item 5 of Article 21 of the present Federal Law need not be presented.

**5.** Within one year after the entry into force of the present Federal Law the creditor and the debtor shall not be entitled to indicate in the application for declaring the debtor bankrupt the self regulating organisation from among whose members the interim receiver is to be approved.

Within one year after the entry into force of the present Federal Law where no self-regulating organisation is indicated in the application, the commercial court shall send to the body for control (supervision) a request for the provision of interim receiver nominees. Within five days after the receipt of the request the body for control (supervision) shall present three nominees for the position of interim receiver. The creditor on whose application the proceeding in a bankruptcy case has been initiated and also the debtor during the courtroom hearing shall be entitled to dismiss one nominee each. The commercial court shall approve the interim receiver nominee from among the nominees which have not been dismissed in the established manner.

Within the term specified in Paragraph 1 of the present item the approval of a qualified receiver nominee shall be effected in the manner established by Articles 15 and 45 of the present Federal Law, or a creditors' meeting may select and present to the commercial court three qualified receiver nominees (administrative receiver, receiver or winding-up receiver). Here the debtor shall be entitled to dismiss one of the qualified receiver nominees presented. The control (supervision) body shall be entitled to dismiss, with reasons being indicated, one or several qualified receiver nominee(s) if he/she/they fail to comply with the standards set by Item 4 of the present article.

The commercial court shall approve a nominee to the position of administrative receiver, receiver or winding-up receiver from among the nominees who have not been dismissed in the established manner.

**6.** Abrogated.

**7.** Within one year after the entry into force of the present Federal Law the receiver or winding-up receiver shall recruit the specialised state organisation authorised by the Government of the Russian Federation to organise, free of charge, a sale for the purpose of selling the debtor's property of which the balance sheet value as of the last accounting date makes up at least 200,000,000 roubles.

**8.** Until the time when appropriate amendments are made to the legislation on taxes and fees and/or the budget legislation the rule of pro rata settlements of the claims envisaged in Item 4 of Article 84 of the present Federal Law shall extend only to claims of bankruptcy creditors and authorised bodies which are related to monetary obligations.

**Article 232.** Regulation of Bankruptcy-Related Relations

**1.** The following shall be deemed no longer valid as of the date of entry into force of the present Federal Law:

Federal Law No. 6-FZ of January 8, 1998 on Insolvency (Bankruptcy) (Sobranie zakonodatelstva Rossiyskoy Federatsii, item 222, No. 2, 1998);

Item 30 of Article 2 of Federal Law No. 31-FZ of March 21, 2002 on Bringing Legislative Acts in Line with the

*[Unofficial translation from Russian]*

Federal Law on the State Registration of Legal Persons (Sobranie zakonodatelstva Rossiyskoy Federatsii, item 1093, No. 12, 2002);

Item 3 of Article 1 of Federal Law No. 41-FZ of April 25, 2002 on Amending Legislative Acts of the Russian Federation in Connection with the Adoption of the Federal Law on the Mandatory Insurance of Civil Liability of the Owners of Vehicles (Sobranie Zakonodatelstva Rossiyskoy Federatsii, item 1721, No. 18, 2002).

**2.** Federal Law No. 122-FZ of June 24, 1999 on the Peculiarities of Insolvency (Bankruptcy) of the Natural Monopoly Entities of the Fuel and Power Complex shall be deemed no longer valid as of July 1, 2009 (Sobranie Zakonodatelstva Rossiyskoy Federatsii, item 3179, No. 26, 1999).

**3.** Until the time when the laws and other regulatory legal acts effective on the territory of the Russian Federation as regulating the relations relating to bankruptcy are brought in line with the present Federal Law these laws and other regulatory legal acts shall be applicable to the extent they are consistent with the present Federal Law.

**Article 233.** Application of the Present Federal Law by Commercial Courts

**1.** The present Federal Law shall be applied by the commercial courts when they hear the bankruptcy cases in which proceedings are commenced after its entry into force.

**2.** As for the cases in which proceedings were commenced before the entry into force of the present Federal Law, and before the completion of a proceeding applicable in a bankruptcy case (external administration, winding up or amicable agreement) and instituted before the entry into force of the present Federal Law, they shall be subject to the norms of Federal Law No. 6-FZ of January 8, 1998 on Insolvency (Bankruptcy) (Sobranie zakonodatelstva Rossiyskoy Federatsii, item 222, No. 2, 1998; item 1093, No. 12; item 1721, No. 18, 2002;).

**3.** Starting from the end of a proceeding which is being used in a bankruptcy case and had been commenced before the entry into force of the present Federal Law the provisions of the present Federal Law are applicable to legal relationships that have come into being since the time when the proceeding was completed. The proceedings which are applicable in a bankruptcy case and are envisaged by the present Federal Law (financial rehabilitation, supervision or amicable agreement) shall be commenced by virtue of the present Federal Law irrespective of the date when said cases are accepted for processing. The further consideration of a bankruptcy case shall be carried out in accordance with the present Federal Law, except for cases when a winding-up proceeding is commenced after the completion of a proceeding which is used in the bankruptcy case and had been commenced before the entry into force of the present Federal Law. In this case, the winding-up proceeding is subject to the provisions of Federal Law No. 6-FZ of January 8, 1998 on Insolvency (Bankruptcy).

**4.** Where commercial courts hear bankruptcy cases under Federal Law No. 6-FZ of January 8, 1998 on Insolvency (Bankruptcy) (Sobranie zakonodatelstva Rossiyskoy Federatsii, item 222, No. 2, 1998; item 1093, No. 12; item 1721, No. 18, 2002;) and Law of the Russian Federation No. 3929-1 of November 19, 1992 on the Insolvency (Bankruptcy) of Enterprises (Vedomosti S'ezda Narodnykh Deputatov Rossiyskoy Federatsii i Verkhovnogo Soveta Rossiyskoy Federatsii, item 6, No. 1, 1993) the standards applicable to qualified receiver nominees shall comply with the provisions of Article 231 of the present Federal Law.

**5.** Where a commercial court hears a bankruptcy case under Federal Law No. 6-FZ of January 8, 1998 on Insolvency (Bankruptcy) (Sobranie Zakonodatelstva Rossiyskoy Federatsii, item 222, No. 2, 1998; item 1093, No. 12; item 1721, No. 18, 2002;), the control (supervision) body shall have the powers envisaged by Article 231 of the present Federal Law.

**6.** Until July 1, 2009 the persons being party to a bankruptcy case in which proceedings had been instituted before the entry into force of the present Federal Law are entitled to file a petition for shift to the proceedings which are applicable in a bankruptcy case and are envisaged by the present Federal Law. In this case starting from July 1, 2009 the hearing of the bankruptcy case in which proceedings had been instituted before the entry into force of the present Federal Law shall be carried out according to the rules set out in the present Federal Law.

Starting from July 1, 2009 the bankruptcy cases in which proceedings had been instituted before the entry into force of the present Federal Law and in respect of which the petitions envisaged by Paragraph 1 of the present item have not been received from the persons being party to the bankruptcy case shall be terminated, with a ruling to this effect being issued by the commercial court.

The commercial court's ruling on termination of proceedings in a bankruptcy case on the ground envisaged by the present item is subject to appeal in the procedure established by Item 3 of Article 61 of the present Federal Law.

Upon the expiry of the term for appeal or from the date of issuance of the appellate commercial court's relevant judgement the commercial court shall send the ruling on termination of proceedings in the bankruptcy case to the body responsible for the state registration of legal entities.

**7.** The commercial court's ruling on termination of proceedings in the bankruptcy case issued in accordance with Item 6 of the present article in the course of a winding-up proceeding shall be deemed ground for making an entry in the

*[Unofficial translation from Russian]*

comprehensive state register of legal entities on the debtor's removal from the comprehensive state register of legal entities. The relevant entry shall be made in the register within five days after the date of dispatch of said commercial court's ruling to the body responsible for the state registration of legal entities.

**8.** The qualified receivers which have been confirmed in bankruptcy cases but do not meet the requirements established by the present Federal Law shall be removed by the commercial court on an application of the control (supervision) body before January 1, 2010. Until the date of their removal the control (supervision) body shall do the following:

1) while the qualified receivers are pursuing their activities it shall exercise control over their observance of federal laws and other normative legal acts of the Russian Federation;

2) it shall carry out inspections of the activities of the qualified receivers;

3) it shall file an application with a commercial court for the qualified receivers being removed from the execution of the duties vested therein in bankruptcy cases if it is discovered that they are in breach of provisions of federal laws and of other normative legal acts of the Russian Federation.

President
 of the Russian Federation                                                    V. Putin


Moscow, the Kremlin

316

# EXHIBIT B

**Ruling of the Russian Bankruptcy Court dated February 8, 2016, in case No. A41-78484/15**



КОПИЯ

1000000108_4434413

СУДЕБНЫЙ АКТ
ВСТУПИЛ В ЗАКОННУЮ СИЛУ
Ф.И.О. судьи
Подпись



Арбитражный суд Московской области
107053, ГСП 6, г. Москва, проспект Академика Сахарова, д.18
http://asmo.arbitr.ru/

**ОПРЕДЕЛЕНИЕ**
о признании требований заявителя обоснованными
и введении реструктуризации долгов гражданина

г. Москва
08 февраля 2016 года                                            Дело №А41-78484/15

Резолютивная часть определения объявлена 03.02.2016
Полный текст определения изготовлен 08.02.2016

Арбитражный суд Московской области в составе:
председательствующий судья Д.А.Пономарев,
при ведении протокола судебного заседания секретарем судебного заседания Никитской Л.В.,
рассмотрев в судебном заседании обоснованность заявления Компании Сунитекс Лимитед (далее по тексту - заявитель) о признании несостоятельным (банкротом) Пойманова Сергея Петровича (далее по тексту - должник),
при участии в заседании: явка сторон отражена в протоколе судебного заседания

**УСТАНОВИЛ:**

01.10.2015 Компания Сунитекс Лимитед обратилось с заявлением о признании должника Пойманова Сергея Петровича (адрес: 143006, Московская область, Одинцовский район, дер. Губкино, ДСК «ЛУЧ», уч. 105-49) несостоятельным (банкротом).

Определением от 12.10.2015 заявление принято к производству суда, назначено судебное заседание по рассмотрению обоснованности заявления.

Заявитель в судебном заседании поддержал заявление в полном объеме.

Должник возражал против удовлетворения заявления.

Исследовав материалы дела, суд полагает заявление Компании Сунитекс Лимитед подлежащим удовлетворению ввиду следующего.

Основанием для обращения в арбитражный суд явилось наличие у должника неисполненной задолженности на общую сумму 2 072 461 285 руб. 29 коп.

Должник имеет следующие денежные обязательства перед Компанией Сунитекс Лимитед, не исполненные более трех месяцев с момента, когда они должны были быть исполнены.
04.08.2008 между ОАО «Сбербанк России» (Займодавец) и ЗАО «Павловскгранит-ИНВЕСТ» (Заемщик) был заключен Договор №0208089 об открытии невозобновляемой кредитной линии (Кредитный договор), согласно условиям которого Заемщику был открыт лимит кредитной линии в размере 5 100 000 000,00 (Пять миллиардов сто миллионов) рублей на срок до 31.07.2015.
Тогда же, 04.08.2008, между Поймановым СП. (далее по тексту - Должник, Поручитель) и Займодавцем был заключен Договор поручительства №0208089/п6, по условиям которого Должник обязался обеспечить исполнение Заемщиком всех его обязательств по Кредитному договору.
20.05.2010 Займодавец (Цедент) и ООО «Сбербанк Капитал» (Цессионарий) заключили Договор уступки прав (требования) № 0208089, согласно которому к Цессионарию перешли все права требования по Кредитному договору, а также права, обеспечивающие его исполнение в том числе права по Договору поручительства с Должником.
В связи с неисполнением Заемщиком своих обязательств по Кредитному договору ООО «Сбербанк Капитал» обратилось в Одинцовский городской суд Московской области с исковым заявлением к Поручителю о взыскании задолженности в размере обеспеченного поручительством обязательства.
18.01.2011 Решением Одинцовского городского суда Московской области по делу № 2-93/2011 в пользу ООО «Сбербанк Капитал» с Пойманова С.П. взыскано 4 620 228 024 (Четыре миллиарда шестьсот двадцать миллионов двести двадцать восемь тысяч двадцать четыре) рубля 75 коп.
Апелляционным определением Московского областного суда Решение Одинцовского городского суда Московской области от 18.01.2011 оставлено без изменения.
16.06.2011 Специализированным межрайонным отделом по исполнению особо важных исполнительных производств УФССП России по Московской области возбуждено исполнительное производство №8337/11/49/50 в отношении должника - Пойманова С.П., 15.02.1972 г/р. на основании исполнительных листов, выданных Одинцовским городским судом Московской области по гражданскому делу №2-93/2011 (ВС № 020851861 от 10.05.2011, ВС № 048933165 от 19.11.2012, ВС № 048933902 от 25.10.2013).
04.04.2012 Одинцовский городской суд произвел процессуальную замену истца ООО «Сбербанк Капитал» на ООО «Атлантик» в рамках дела № 2-93/2011.
На основании Определения Одинцовского городского суда Московской области от 16.06.2014 по делу № 2-93/2011 (оставлено без изменения Апелляционным определением Московского областного суда от 22.10.2014) ООО «Атлантик» в порядке процессуального правопреемства заменено на Компанию Сунитекс Лимитед по гражданскому делу № 2-93/2011г. в части требований в размере 2 072 461 285, 29руб.

В последующем, 23.07.2013 Специализированным межрайонным отделом по исполнению особо важных исполнительных производств УФССП России по Московской области возбуждено Сводное исполнительное производство №8337/11/49/50/СД (далее - Сводное исполнительное производство), в состав которого вошло исполнительное производство № 8337/11/49/50 от 16.06.2011.
Взыскатель в Сводном исполнительном производстве - ООО «Сбербанк Капитал» так же был заменен первоначально на ООО «Атлантик», а впоследствии - на Компанию Сунитекс Лимитед в части требования в размере 2 072 461 285,29 руб. на основании Постановления о замене стороны исполнительного производства ее правопреемником от 09.02.2015, вынесенное судебным приставом - исполнителем Управления по исполнению особо важных исполнительных производств ФССП России Мужинников Е.А.



КОПИЯ

1000000108_443441

В настоящее время Сводное исполнительное производство находится в производстве судебного пристава - исполн Мужелинниковой Е.А. за номером  1393/14/99001-ИП/СД (83337/11/49/50).

Таким образом, Компания Суинтекс Лимитед является кредитором Пойманова Сергея Петровича, размер прав требо Компании к Должнику составляет 2 072 461 285, 29 рублей, что подтверждается Справкой УФССП по Московской области от 24.09.2 № 15/191638 о размере задолженности Пойманова С.П. по Сводному исполнительному производству.

Согласно части 3 статьи 213.6 ФЗ «О несостоятельности (банкротстве)», гражданин предполагается неплатежеспособным условии, что имеет место хотя бы одно из следующих обстоятельств:

гражданин прекратил расчеты с кредиторами, то есть перестал исполнять денежные обязательства и (или) обязанность по уп обязательных платежей, срок исполнения которых наступил;

более чем десять процентов совокупного размера денежных обязательств и (или) обязанности по уплате обязательных плате которые имеются у гражданина и срок исполнения которых наступил, не исполнены им в течение более чем одного месяца со дня, ко такие обязательства и (или) обязанность должны быть исполнены; размер задолженности гражданина превышает стоимость его имущест в том числе права требования;

наличие постановления об окончании исполнительного производства в связи с тем, что у гражданина отсутствует имущество, которое может быть обращено взыскание.

Если имеются достаточные основания полагать, что с учетом планируемых поступлений денежных средств, в том числе доход от деятельности гражданина и погашения задолженности перед ним, гражданин в течение непродолжительного времени сможет исполни в полном объеме денежные обязательства и (или) обязанность по уплате обязательных платежей, срок исполнения которых наступи гражданин не может быть признан неплатежеспособным.

Задолженность Должника перед Кредитором составляет 2 072 461 285 руб. 29 коп.

Должник обладает признаками несостоятельности, установленными требованиями Закона о банкротстве.

По оценке суда, к должнику следует применить процедуру реструктуризации долгов.

В материалах дела отсутствуют доказательства, однозначно свидетельствующие о невозможности исполнения обязательств в порядке реструктуризации долга.

В ходе данной процедуры финансовый управляющий имеет дополнительные возможности для оценки имущественного состояния должника, поиска и выявления источников доходов должника с целью оптимизации условий погашения задолженности.

В материалы дела заявленной кредитором НП «СРО НАУ «ДЕЛО» представлена к утверждению кандидатура Базарнова Алексея Владимировича с заключением о его соответствии требованиям Закона «О несостоятельности (банкротстве)».

На основании изложенного, руководствуясь статьями 184-185, 223    Арбитражного процессуального кодекса Российской Федерации, статьями 3, 6, 213.5, 213.6 Федерального Закона «О несостоятельности (банкротстве)»,  арбитражный суд

**ОПРЕДЕЛИЛ:**

Заявление Компании Суинтекс Лимитед признать обоснованным.

Ввести в отношении Пойманова Сергея Петровича (15.02.1972 г.р., Московская область, Одинцовский район, дер. Губкино, ДСК «Луч», уч. 105-49) процедуру реструктуризации долгов гражданина.

Утвердить финансовым управляющим Базарнова Алексея Владимировича, ИНН 772772849607, члена НП «СРО НАУ «ДЕЛО», регистрационный номер в сводном государственном реестре арбитражных управляющих 001/151-12, с единовременным вознаграждением в 10 000 руб.

Финансовому управляющему опубликовать сообщение о введении в отношении должника реструктуризации в порядке и сроки, установленные действующим законодательством.

Сведения о публикации представить в суд.

Финансовому управляющему включить в реестр требований кредиторов должника, Пойманова Сергея Петровича, требования Компании Суинтекс Лимитед в размере 2 072 461 285 руб. 29 коп.

Финансовому управляющему провести анализ финансового состояния  должника, наличия признаков преднамеренного либо фиктивного банкротства, представить план реструктуризации долгов гражданина.

Рассмотрение дела по существу (плана реструктуризации) назначить на 06 июня 2016 г. в 14 час. 10 мин., зал 602.

Определение подлежит немедленному исполнению и может быть обжаловано в Десятый арбитражный апелляционный суд в установленных срок.

Судья                                                                          Д.А.Пономарев

Арбитражный суд
Московской области
КОПИЯ ВЕРНА
Должность   СТ. СПЕЦИАЛИСТ
Подпись     ЛЕОНТЬЕВ А.С.   13 ФЕВ 2017

[Stamp:] COPY
1000000108_4434413

443441

[Stamp:]

| JUDICIAL ACT ENTERED INTO LEGAL |
| FORCE |

Full name of Judge    D.A. Ponomarev
Signature:            [Signature]
              April 13, 2016

[Seal:] Commercial Court of the Moscow Region

[National emblem of the Russian Federation]
**COMMERCIAL COURT OF THE MOSCOW REGION**
18 Prospekt Akademika Sakharova, Moscow, GSP 6, 107053
http://asmo.arbitr.ru/

**RULING**
**on granting the applicant's claim and on introduction of individual's debt restructuring**

the city of Moscow
February 8, 2016                                        Case No. A41-78484/15

The operative part of the ruling was announced on February 3, 2016
The full text of the ruling was issued on February 8, 2016

Commercial Court of the Moscow Region composed of:
Presiding Judge D.A. Ponomarev
record of court hearing being maintained by the secretary L.V. Nikitskaya,
having considered in court hearing merits of the application filed by Suintex Limited (hereinafter – the "Claimant") on declaring Sergey Petrovich Poymanov (hereinafter – the "Debtor") insolvent (bankrupt).
with the hearing attended by: according to the record of court hearing.

**ESTABLISHED:**

On October 1, 2015, Suintex Limited filed an application for declaring the debtor Sergey Petrovich Poymanov (address: plot 105-49, DSK "Luch", the village of Gubkino, Odintsovo district, Moscow Region, 143006) insolvent (bankrupt).

By the Ruling dated October 12, 2015, the court accepted the application for consideration and scheduled a court hearing for considering the merits of the application.

In the court hearing the claimant supported its application in full.

The debtor objected to granting the application.

Having examined the case file, the Court considers that the application of Suintex Limited shall be granted based on the following.

The reason for resorting to the Commercial Court was the debtor's outstanding indebtedness amounting to RUB 2,072,461,285.29.

The debtor has the following monetary obligations towards Suintex Limited, which are overdue for more than three months:

On August 4, 2008, OJSC Sberbank of Russia (the Lender) and CJSC Pavlovskgranit-INVEST (the Borrower) entered into Non-revolving Credit Facility Agreement No. 0208089 (hereinafter – the "Loan Agreement"), whereunder the credit line limit available for the Borrower was RUB 5,100,000,000 (five billion one hundred million) for the period up to July 31, 2015.

At the same time, on August 4, 2008, S.P. Poymanov (hereinafter – the "Debtor"/the "Guarantor") and the Lender entered into Surety Agreement No. 0208089/p6, whereunder the Debtor committed to ensure performance by the Borrower of all its obligations under the Loan Agreement.

On May 20, 2010, the Lender (the Assignor) and Sberbank Capital LLC (the Assignee) entered into Assignment Agreement No. 0208089, whereunder all rights under the Loan Agreement and the rights securing

its performance, including the rights under the Surety Agreement with the Debtor, were transferred to the Assignee.

Due to the Borrower's failure to perform its obligations under the Loan Agreement, Sberbank Capital LLC applied to Odintsovo City Court of the Moscow Region with a lawsuit against the Guarantor for the recovery of the debt in the amount of surety-secured obligation.

On January 18, 2011, by the Judgment of Odintsovo City Court of the Moscow Region in case No. 2-93/2011 the sum of RUB 4,620,228,024.75 (four billion six hundred twenty million two hundred twenty eight thousand and twenty four) was recovered from S.P. Poymanov in favor of Sberbank Capital LLC.

The Moscow Regional Court upheld the Judgment of Odintsovo City Court of Moscow of January 18, 2011 by its appellate ruling.

On June 16, 2011, the Specialized Interdistrict Department for the Priority Enforcement Proceedings of the Federal Bailiff Service Directorate for the Moscow Region initiated enforcement proceedings No. 8337/11/49/50 against the debtor – S.P. Poymanov, born on February 15, 1972, based on writs of execution issued by Odintsovo City Court of the Moscow Region in civil case No. 2-93/2011 (VS No. 020851861 of May 10, 2011, VS No. 048933165 of November 19, 2012, VS No. 048933902 of October 25, 2013).

On April 4, 2012, Sberbank Capital LLC was succeeded by Atlantic LLC within case No. 2-93/2011 by Odintsovo City Court under the procedural succession of claimant.

Based on the Ruling of Odintsovo City Court of the Moscow Region of June 16, 2014 in case No. 2-93/2011 (upheld by the Appellate Ruling of the Moscow Regional Court of October 22, 2014), Atlantic LLC under the procedure of procedural succession was succeeded by Suintex Limited in civil case No. 2-93/2011 as related to the claim in the amount of RUB 2,072,461,285.29.

Thereafter, on July 23, 2013, the Specialized Interdistrict Department for the Priority Enforcement Proceedings of the Federal Bailiff Service Directorate for the Moscow Region initiated consolidated enforcement proceedings No. 8337/11/49/50/SD (hereinafter – the "Consolidated Enforcement Proceedings"), which included enforcement proceedings No. 8337/11/49/50 of 16 June 2011.

The creditor in the Consolidated Enforcement Proceedings – Sberbank Capital LLC was also initially succeeded by Atlantic LLC, and later – by Suintex Limited as to the claim in the amount of RUB 2,072,461,285.29 based on the Resolution on the Succession of a Party to Enforcement Proceedings by its Legal Successor of February 9, 2015, issued by the bailiff of the Directorate for the Priority Enforcement Proceedings of the Federal Bailiff Service of Russia E.A. Muzheninkova.

[Stamp:] COPY [Page:] 2                                                          1000000108_4434413

Currently, the Consolidated Enforcement Proceedings are handled by bailiff E.A. Muzheninkova under No. 1393/14/99001-IP/SD (83337/11/49/50).

Thus, Suintex Limited is a creditor of Sergey Petrovich Poymanov. The amount of its claims to the debtor is RUB 2,072,461,285.29, which is confirmed by the Certificate issued by the Federal Bailiff Service for the Moscow Region on September 24, 2015, No. 15/191638 for the amount of debt of S.P. Poymanov under the Consolidated Enforcement Proceedings.

Pursuant to Article 213.6(3) of the Federal Law "On Insolvency (Bankruptcy)", an individual is deemed insolvent provided that at least one of the following conditions is met:

an individual has stopped settlements with creditors, that is stopped performing his monetary obligations and (or) the duty to make mandatory payments, which became due and payable;

more than ten percent of the total amount of monetary obligations and (or) the duty to make mandatory payments, which became due and payable, have not been performed by an individual within the period exceeding one month from the date when such obligations and (or) the duty should have been performed; the amount of the individual's debt exceeds the value of his property, including the rights of claim;

existence of a resolution on the termination of enforcement proceedings due to the lack of property which may be foreclosed.

If there are reasonable grounds to believe that, given the anticipated receipts of funds, including proceeds from the individual's activity and repayment of debts owed to him, the individual may shortly

become capable of fully performing his monetary obligations and (or) the duty to make mandatory payments, which became due and payable, the individual cannot be declared insolvent.

The debtor's debt to the creditor amounts to RUB 2,072,461,285.29

The debtor meets the criteria for insolvency pursuant to the statutory requirements of the Federal Law "On Insolvency (Bankruptcy)".

In the court's opinion, debt restructuring should be applied to the debtor.

The case file contains no evidence clearly showing that performance of obligations by way of debt restructuring is impossible.

In this procedure, the financial administrator has additional opportunities to assess the property of the debtor, to search and identify the sources of income of the debtor in order to optimize the repayment conditions.

Non-for-profit Partnership "Self-Regulatory Organization of Independent Insolvency Administrators "DELO", proposed by the creditor, nominated Aleksey Vladimirovich Bazarnov for approval as the financial administrator and submitted a report on his compliance with the statutory requirements of the Federal Law "On Insolvency (Bankruptcy)".

On the basis of the foregoing, and in accordance with Articles 184–185, 223 of the Commercial Procedure Code of the Russian Federation, Articles 3, 6, 213.5, 213.6 of the Federal Law "On Insolvency (Bankruptcy)", the Commercial Court

### RULED:

To grant the application of Suintex Limited.

To introduce individual's debt restructuring procedure with respect to Sergey Petrovich Poymanov (born February 15, 1972, address: plot 105-49, DSK "Luch", the village of Gubkino, Odintsovo district, Moscow Region, 143006).

To approve Aleksey Vladimirovich Bazarnov, TIN 772772849607, a member of Non-for-profit Partnership "Self-Regulatory Organization of Independent Insolvency Administrators "DELO", registration number in the Consolidated State Register of Insolvency Administrators 001/151-12, as a financial administrator with lump-sum remuneration of RUB 10,000.

The financial administrator shall publish an announcement on introduction of the individual's debt restructuring procedure pursuant to the terms and procedures set forth in the applicable law.

Information about the publication shall be submitted to the Court.

The financial administrator shall include into the list of claims of creditors of the debtor, Sergey Petrovich Poymanov, claims of Suintex Limited in the amount of RUB 2,072,461,285.29.

The financial administrator shall analyze the financial condition of the debtor, evidence of intentional or fraudulent bankruptcy, submit an individual's debt restructuring plan.

To schedule the consideration of the case on the merits (restructuring plan) on **June 6, 2016, 14:10,** court room 602.

The Ruling shall have immediate effect and may be appealed with the Tenth Commercial Court of Appeal within the prescribed period.


Judge                                     [Signature]                          D.A. Ponomarev


[Seal:] Commercial Court of the Moscow Region


[Stamp:]

| Commercial Court of the Moscow Region | |
| --- | --- |
| TRUE COPY | |
| Position: | Senior Specialist |
| Signature: | [Signature] |
| A.S. Leontyev | February 13, 2017 |

*Перевод с русского языка на английский язык*
*Переводчик Коновалов Сергей Георгиевич_____*

Российская Федерация
Город Москва
Двадцать второго февраля две тысячи семнадцатого года
Я, Милевский Владислав Геннадиевич, нотариус города Москвы, свидетельствую
подлинность подписи переводчика Коновалова Сергея Георгиевича.
Подпись сделана в моем присутствии.
Личность подписавшего документ установлена.

Зарегистрировано в реестре: № 4-3-3577
Взыскано по тарифу: 100 руб.
Уплачено за оказание услуг правового и технического характера:--

_____ В.Г. Милевский

Прошнуровано, пронумеровано и скреплено печатью _____ лист(-а,-ов).

_____ В.Г. Милевский

Translation from Russian to English

*Translation from Russian to English*

*Translator Sergey Georgievich Konovalov* [signature]


The Russian Federation

City of Moscow

February Twenty-Second, Two Thousand Seventeen

I, Vladislav Gennadyevich Milevskiy, notary public of the city of Moscow, certify authenticity of the signature of translator Sergey Georgievich Konovalov.

The signature has been made before me.

The person who signed the document has been identified.


Registered under No. 4-3-3577.

Paid under the rate: RUB 100.

Paid for services of legal and technical nature: -


[Signature] V. G. Milevskiy

[Stamp:] Notary public of the city of Moscow V. G. Milevskiy


Bound, numbered and sealed 4 pages.

[Signature] V. G. Milevskiy

[Stamp:] Notary public of the city of Moscow V. G. Milevskiy

<u>EXHIBIT C</u>
Decision of the Russian Bankruptcy Court dated July 21, 2016, in case No. A41-
78484/15







Арбитражный суд Московской области
107053, ГСП 6, г. Москва, проспект Академика Сахарова, д.18
http://asmo.arbitr.ru/

**РЕШЕНИЕ**
о признании гражданина банкротом и введении реализации имущества

г. Москва
21 июля 2016 года                                    Дело №А41-78484/15

Резолютивная часть решения оглашена 21.07.2016
Полный текст определения изготовлен 21.07.2016

Арбитражный суд Московской области в составе:
судьи Пономарева Д.А.,
протокол судебного заседания вела секретарь судебного заседания Лурье О.М.,
рассмотрев в судебном заседании отчет финансового управляющего, Пойманова Сергея Петровича, Базарнова А.В.,
по делу о признании Пойманова Сергея Петровича несостоятельным (банкротом),
при участии в судебном заседании: согласно протоколу судебного заседания,

**УСТАНОВИЛ:**

01.10.2015 Компания Суинтекс Лимитед обратилось с заявлением о признании должника Пойманова Сергея Петровича (адрес: 143006, Московская область, Одинцовский район, дер. Губкино, ДСК «ЛУЧ», уч. 105-49) несостоятельным (банкротом).

Определением от 12.10.2015 заявление принято к производству суда, назначено судебное заседание по рассмотрению обоснованности заявления.

В судебном заседании представитель должника ходатайствовал об обязании финансового управляющего произвести оценку стоимости акций должника.

Представитель должника ходатайствовал об отложении судебного заседания.

Финансовый управляющий, представитель Компании Суинтекс Лимитед возражали против удовлетворения ходатайства.

Представитель Подгорной И.Ю. оставил ходатайство на усмотрение суда.

Судом отказано в удовлетворении ходатайства об отложении судебного заседания, ввиду его необоснованности и направленности на затягивание процесса.

Финансовый управляющий ходатайствовал о признании должника несостоятельным (банкротом) и введении в отношении должника процедуры банкротства – реализация имущества гражданина.

Представитель должника, представитель Подгорной И.Ю. возражали против удовлетворения ходатайства управляющего, доказательств в обоснование возражений не представили.

Исследовав имеющиеся в материалах дела доказательства, арбитражный суд установил.

Определением Арбитражного суда Московской области по делу №А41 -78484/15 от 08 февраля 2016 г. (резолютивная часть объявлена 03.02.2016) в отношении Пойманова Сергея Петровича (15.02.1972 г.р., адрес: 143006, Московская область, Одинцовский район, дер. Губкино, ДСК «ЛУЧ», уч. 105-49) введена процедура реструктуризации долгов гражданина.

Финансовым управляющим утвержден Базарнов Алексей Владимирович (ИНН 772272849607, член НП СРО НАУ «Дело», регистрационный номер в сводном государственном реестре арбитражных управляющих 001/151-12.

Соответствующие сведения включены в Единый Федеральный Реестр сведений о банкротстве 10.02.2016 года за № 929175.

В соответствии с п. 1 ст. 213.24 Федерального закона от 26.10.2002 N 127-ФЗ «О несостоятельности (банкротстве)» (далее по тексту - Закон о банкротстве) суд принимает решение о признании должника банкротом в случае, если гражданином, конкурсными кредиторами и (или) уполномоченным органом не представлен план реструктуризации долгов гражданина.

**КОПИЯ**

2                                          1000000108_4939

В срок, установленный в п. 1 ст. 213.12 Закона о банкротстве, в адрес суд не поступило ни одного проекта плана реструктуризации долгов Пойманова Сергея Петровича.

В соответствии с п. 4 ст. 213.12 Закона о банкротстве в случае, если в установленный срок финансовым управляющим не получено ни одного проекта плана реструктуризации долгов гражданина, финансовый управляющий представляет на рассмотрение собрания кредиторов предложение о признании гражданина банкротом и введении реализации имущества гражданина.

26.05.2016 состоялось повторное первое собрание кредиторов должника при участии конкурсных кредиторов с суммой голосов 100% от общего количества голосов по данным реестра требований кредиторов.

На собрании принято решение о необходимости введения в отношении должника процедуры банкротства – реализация имущества должника, об утверждении финансовым управляющим Базарнова Алексея Владимировича.

Суд приходит к выводу о целесообразности введения в отношении должника процедуры банкротства – реализация имущества гражданина.

Обоснованных возражений относительно заявленной кандидатуры в материалы дела не представлено, данная кандидатура отвечает требованиям ст. 20 Закона о банкротстве, поэтому Базарнов Алексей Владимирович подлежит утверждению финансовым управляющим должника.

Ходатайство представителя должника об обязании финансового управляющего произвести оценку стоимости акций должника суд отклоняет, находит его преждевременным.

Мероприятия по оценке имущества должника производятся управляющим в рамках процедуры реализация имущества гражданина.

Руководствуясь статьями 110, 167 - 170, 223 Арбитражного процессуального кодекса Российской Федерации, статьями 20, 20.2, 45, 124, 126, 127, 213.6, 213.9, 213.24 Федерального закона «О несостоятельности (банкротстве)», арбитражный суд

### РЕШИЛ:

В удовлетворении ходатайства должника об обязании финансового управляющего произвести оценку стоимости акций – отказать.

В удовлетворении ходатайства об отложении судебного заседания – отказать.

Признать Пойманова Сергея Петровича (15.02.1972 г.р., адрес: 143006, Московская область, Одинцовский район, дер. Губкино, ДСК «ЛУЧ», уч. 105-49) несостоятельным (банкротом) и ввести процедуру реализация имущества должника сроком на шесть месяцев - до 21 января 2017 года.

Утвердить финансовым управляющим Базарнова Алексея Владимировича, ИНН 772772849607, члена НП «СРО НАУ «ДЕЛО», регистрационный номер в сводном государственном реестре арбитражных управляющих 001/151-12, с единовременным вознаграждением в 25 000 рублей.

Взыскать с Пойманова Сергея Петровича в пользу Компании Суинтекс Лимитед денежные средства в размере 6 000 рублей – расходы по оплате государственной пошлины.

Выдать исполнительный лист.

Судебное заседание по рассмотрению итогов назначить на 18 января 2017 года в 16 часов 30 минут, зал. 602 в помещении Арбитражного суда Московской области.

Финансовому управляющему опубликовать сообщение о введении в отношении должника реализации имущества в порядке и сроки, установленные действующим законодательством.

Сведения о публикации представить в суд.

Решение подлежит немедленному исполнению и может быть обжаловано в течение месяца со дня его принятия в Десятый арбитражный апелляционный суд через Арбитражный суд Московской области.

Судья                                                    Д.А. Пономарев

**КОПИЯ ВЕРНА**
Арбитражный суд
Московской области
Старший специалист
Должность _____
ЗУБОВА Т.А.
Подпись _____
17 ФЕВ 2017 20__ г.

1000000108_4939608
[Stamp:] COPY

[Stamp:]

| JUDICIAL ACT ENTERED INTO LEGAL FORCE | |
|---|---|
| Full name of Judge | D.A. Ponomarev |
| Signature: | [Signature] |
| | October 24, 2016 |

[Seal:] Commercial Court of the Moscow Region

[National emblem of the Russian Federation]

### COMMERCIAL COURT OF THE MOSCOW REGION
107053, GSP 6, Moscow, Akademika Sakharova Prospect, bld. 18
http://asmo.arbitr.ru/

### DECISION
#### on declaring individual's bankruptcy and introduction of sale of his assets

Moscow
July 21, 2016                                                               Case No. A41-78484/15

The operative part of the decision was announced on July 21, 2016.
The full text of the decision was issued on July 21, 2016.

Commercial Court of the Moscow Region composed of:
Judge D.A. Ponomarev,
record of court hearing being maintained by the secretary O.M. Lurye,
having considered in the court hearing the report of A.V. Bazarnov, the financial administrator of Sergey Petrovich Poymanov,
within proceedings for declaring Poymanov Sergey Petrovich insolvent (bankrupt),
with the following attending the court hearing: according to the court hearing record,

### ESTABLISHED:

On October 1, 2015, Suintex Limited submitted application to declare debtor Poymanov Sergey Petrovich (address: plot 105-49, DSK "Luch", the village of Gubkino, Odintsovo district, Moscow Region, 143006) insolvent (bankrupt).
By the ruling dated October 12, 2015, the court accepted the application for consideration and scheduled a court hearing for considering the merits of the application.
In the court hearing the representative of the debtor requested the court to oblige the financial administrator to assess the value of the debtor's shares.
The debtor's representative applied to postpone the court hearing. The financial administrator, the representative of Suintex Limited objected to this application.
The representative of I.Yu. Podgornaya asked the court to decide the application at its own discretion.
The court rejected the application for postponement of the court hearing because it is ungrounded and is aimed at delaying the proceedings.
The financial administrator requested that the debtor be declared insolvent (bankrupt) and that bankruptcy procedures, i.e. the sale of the individual's property, be introduced with respect to him.
The debtor's representative, the representative I.Yu. Podgornaya objected to the administrator's application but provided no evidence to support their objections.
Upon assessment of the evidence available in the case file, the Commercial court established.
By the Ruling of the Commercial Court of the Moscow Region in case No. A41-78484/15 dated February 8, 2016 (the operative part was announced on February 3, 2016) with respect to Poymanov Sergey Petrovich (born on February 15, 1972, address: 143006, Moscow Region, Odintsovo District, Gubkino Village, DSK Luch, plot 105-49) the individual's debt restructuring procedure was introduced.
Bazarnov Aleksey Vladimirovich (TIN (INN) 772272849607, a member of Non-for-profit Partnership "Self-Regulatory Organization of Independent Insolvency Administrators "DELO", registration number with the unified state register of Insolvency Administrators 001/151-12) was approved as a financial administrator.

[Stamp:] COPY                                    2                          1000000108_4939608

The relevant information is included in the Unified Federal Register of Information on Bankruptcy on February 10, 2016, under No. 929175.

According to Article 213.24(1) of the Federal Law dated October 26, 2002, No. 127-FZ "On Insolvency (Bankruptcy)" (hereinafter – the Bankruptcy Law) the court decides to declare the debtor bankrupt if the individual, the bankruptcy creditors and (or) the authorized body failed to present the plan for the individual's debts restructuring.

No debt restructuring plan for Poymanov Sergey Petrovich's debts was received by the court within the term established by Article 213.12(1) of the Bankruptcy Law.

According to Article 213.12(4) of the Bankruptcy Law if the financial administrator does not receive any proposed debt restructuring plans for the individual's debts within the prescribed time, the financial administrator shall propose, at the creditors' meeting, declaring bankruptcy and introducing the procedure of sale of assets.

On May 26, 2016, a repeated first meeting of the creditors was held and attended by bankruptcy creditors holding 100% of votes out of the total amount of votes according to register of the creditors' claims.

A decision was passed at the meeting concerning the need to introduce a bankruptcy procedure – the sale of the individual's assets – with respect to the debtor, and to approve Bazarnov Aleksey Vladimirovich as a financial administrator.

The court concludes that a bankruptcy procedure – the sale of the individual's assets – should be introduced.

Bazarnov Aleksey Vladimirovich shall be approved as the debtor's financial administrator, since no grounded objections as to his candidacy were provided into the case file and he complies with the requirements of Article 20 of the Bankruptcy Law.

The court dismisses the application of the debtor's representative on obliging the financial administrator assess the value of the debtor's shares and considers it premature.

The appraisal of the debtor's assets shall be conducted by the administrator within the framework of the sale of the individual's assets procedure.

in accordance with Articles 110, 167 - 170, 223 of the Commercial Procedural Code of the Russian Federation, Articles 20, 20.2, 45, 124, 126, 127, 213.6, 213.9, 213.24 of the Federal Law "On Insolvency (Bankruptcy)", the commercial court

**RULED:**

To dismiss the debtor's application to oblige the financial administrator to assess the shares' value.

To dismiss the debtor's application to postpone the court hearing.

To declare Poymanov Sergey Petrovich (born on February 15, 1972, address: plot 105-49, DSK "Luch", the village of Gubkino, Odintsovo district, Moscow Region, 143006) insolvent (bankrupt) and to introduce the procedure of sale of the individual's assets for six months – until January 21, 2017.

To approve Bazarnov Aleksey Vladimirovich (TIN (INN) 772772849607, a member of Non-for-profit Partnership "Self-Regulatory Organization of Independent Insolvency Administrators "DELO", registration number in the unified state register of Insolvency Administrators 001/151-12) as a financial administrator, with a lump-sum remuneration of RUB 25,000.

To recover the monetary funds amounting to RUB 6,000 paid as state duties from Poymanov Sergey Petrovich in favor of Suintex Limited.

To issue an enforcement writ.

To schedule the court hearing for consideration of the results for **January 18, 2017 at 4.30 p.m., court room 602 at the Commercial Court of the Moscow Region.**

The financial administrator shall publish the notification on the introduction of the procedure of sale of assets with respect to the debtor pursuant to the procedure and within the terms established by applicable laws.

The information on the publication shall be provided to the court.

The decision is subject to immediate execution and may be appealed within a month upon its making to the Tenth Commercial Court of Appeal through the Commercial Court of the Moscow Region.

Judge                    [Signature]                    D.A. Ponomarev

[Seal:] Commercial Court of the Moscow Region

[Stamp:]

| Commercial Court of the Moscow Region | |
|---|---|
| TRUE COPY | |
| Position: | Senior Specialist |
| Signature: | [Signature] |
| A.S. Leontyev | November 2, 2016 |

*Перевод с русского языка на английский язык*
*Переводчик Коновалов Сергей Георгиевич_____*

Российская Федерация
Город Москва
Двадцать второго февраля две тысячи семнадцатого года
Я, Милевский Владислав Геннадиевич, нотариус города Москвы, свидетельствую подлинность подписи переводчика Коновалова Сергея Георгиевича.

Подпись сделана в моем присутствии.
Личность подписавшего документ установлена.

Зарегистрировано в реестре: № _4-3-3575_
Взыскано по тарифу: 100 руб.
Уплачено за оказание услуг правового и технического характера:--

_____ В.Г. Милевский

Прошнуровано, пронумеровано и скреплено печатью ___*3*___ лист(-а,-ов).

_____ В.Г. Милевский

Translation from Russian to English

*Translation from Russian to English*

*Translator Sergey Georgievich Konovalov* [signature]


The Russian Federation

City of Moscow

February Twenty-Second, Two Thousand Seventeen

I, Vladislav Gennadyevich Milevskiy, notary public of the city of Moscow, certify authenticity of the signature of translator Sergey Georgievich Konovalov.

The signature has been made before me.

The person who signed the document has been identified.


Registered under No. 4-3-3575.

Paid under the rate: RUB 100.

Paid for services of legal and technical nature: -


[Signature] V. G. Milevskiy

[Stamp:] Notary public of the city of Moscow V. G. Milevskiy


Bound, numbered and sealed 3 pages.

[Signature] V. G. Milevskiy

[Stamp:] Notary public of the city of Moscow V. G. Milevskiy

<u>EXHIBIT D</u>
**Ruling of the Russian Bankruptcy Court dated January 18, 2017, in case No. A41-78484/15**







**Арбитражный суд Московской области**
А07053, ГСП-6, г. Москва, проспект Академика Сахарова, д.18
http://asmo.arbitr.ru/

## ОПРЕДЕЛЕНИЕ
о продлении срока реализации имущества

г.Москва
18 января 2017 года                                    Дело №А41-78484/15

Резолютивная часть определения объявлена 18.01.2017
Полный текст определения изготовлен 18.01.2017

Арбитражный суд Московской области в составе:
судьи Пономарева Д.А.,
при ведении протокола судебного заседания секретарем судебного заседания Абелян Д.А.,
рассмотрев в судебном заседании вопрос о продлении срока реализации имущества должника в рамках дела №А41-78484/15 о признании Пойманова Сергея Петровича несостоятельным (банкротом)
при участии в судебном заседании: согласно протоколу судебного заседания,

### УСТАНОВИЛ:

Рассматривается вопрос о продлении срока реализации имущества должника в рамках дела №А41-78484/15 о признании Пойманова Сергея Петровича несостоятельным (банкротом).

Решением Арбитражного суда Московской области от 21.07.2016 Пойманов Сергей Петрович (15.02.1972 г.р., адрес: 143006, Московская область, Одинцовский район, дер. Губкино, ДСК «ЛУЧ», уч. 105-49) признан несостоятельным (банкротом), в отношении него введена процедура реализации имущества гражданина сроком на шесть месяцев - до 21 января 2017 года.

Финансовым управляющим должника утвержден Базарнов Алексей Владимирович, ИНН 772772849607, член НП «СРО НАУ «ДЕЛО».

Соответствующие сведения включены в Единый Федеральный реестр сведений о банкротстве 21.07.2016 за № 1205421.

Необходимость продления процедуры с целью полного выявления имущества должника, формирования и реализации конкурсной массы, проведения ликвидационных мероприятий, предусмотренных Законом о банкротстве, подтверждена материалами дела и является документально обоснованной.

С учетом объема предстоящих мероприятий, согласия должника финансировать процедуру, арбитражный суд полагает целесообразным продление срока реализации имущества должника на шесть месяцев.

Руководствуясь ст. 184, 185, 223 Арбитражного процессуального кодекса Российской Федерации, ст. 124 Федерального закона «О несостоятельности (банкротстве)», арбитражный суд



### ОПРЕДЕЛИЛ:

Продлить срок реализации имущества в отношении Пойманова Сергея Петровича Анатольевича (15.02.1972 г.р., адрес: 143006, Московская область, Одинцовский район, дер. Губкино, ДСК «ЛУЧ», уч. 105-49) на шесть месяцев, **до 21 июля 2017 года.**

Судебное заседание по рассмотрению итогов назначить на **18 июля 2017 года на 15 часов 20 минут, зал № 602.**

Определение подлежит немедленному исполнению и может быть обжаловано в течение четырнадцати дней со дня вынесения определения в Десятый арбитражный апелляционный суд через Арбитражный суд Московской области.

Судья                                           Д.А. Пономарев

Арбитражный суд
Московской области
КОПИЯ ВЕРНА
Должность ГЛАВНЫЙ СПЕЦИАЛИСТ
Подпись ЗУБОВА Т.А.
17 ФЕВ 2017       20       г.

49 5489208
[Stamp:] COPY

[National emblem of the Russian Federation]

## COMMERCIAL COURT OF THE MOSCOW REGION
107053, GSP 6, Moscow, Akademika Sakharova ave. 18
http://asmo.arbitr.ru/

**RULING**
on extending the term of sale of assets

Moscow
January 18, 2017                                    Case No A41-78484/15

The operative part of the ruling was announced on January 18, 2017
The full text of the ruling was issued on January 18, 2017

The Commercial court of the Moscow region composed of:
judge D.A.Ponomarev,
with the court hearing secretary D.A.Abelyan keeping record,
having considered the issue of extending the term of the sale of assets in case No. A41-78484/15 for declaring Sergey Petrovich Poymanov insolvent (bankrupt)
with the following attending the court hearing: according to the court hearing record

### ESTABLISHED:

The issue in question is extension of the term of the sale of the debtor's assets in the framework of case No. A41-78484/15 for insolvency (bankruptcy) of Sergey Petrovich Poymanov.

By the decision of the Commercial Court of the Moscow Region dated July 21, 2016, Sergey Petrovich Poymanov (born on February 15, 1972, address: plot 105-49, DSK "Luch", the village of Gubkino, Odintsovo district, Moscow Region, 143006)) was declared insolvent (bankrupt), procedure of sale of individual's assets was introduced in respect of him for a period of six months, until January 21, 2017.

Aleksey Vladimirovich Bazarnov (TIN 772772849607, a member of the Non-for-profit Partnership "Self-Regulatory Organization of Independent Insolvency Administrators "DELO") was approved as a financial administrator.

The relevant information was entered into the Unified Federal Register of Bankruptcy on July 21, 2016, under No. 1205421.

The case file confirms the need to extend the procedure in order to fully identify the debtor's assets, to form and sell the bankruptcy estate, to conduct liquidation activities envisaged by the Bankruptcy Law.

Taking into account the scope of the upcoming activities and the debtor's consent to finance the procedure, the commercial court considers it appropriate to extend the term of the sale of assets by six months.

Guided by Articles 184, 185, 223 of the Commercial Procedure Code of the Russian Federation, Article 124 of the Federal Law "On Insolvency (Bankruptcy)", the commercial court

[Stamp:] COPY                                    2                                    49 5489208

**RULED:**

To extend the term of the sale of assets with respect to Sergey Petrovich Poymanov (born on February 15, 1972, address: plot 105-49, DSK "Luch", the village of Gubkino, Odintsovo district, Moscow Region, 143006) by six months, **until July 21, 2017.**

To schedule the court hearing for consideration of the results for July 18, 2017, at 15:20, court room No. 602.

The decision is subject to immediate execution and may be appealed against within fourteen days from the date of judgement to the Tenth Commercial Court of Appeal through the Commercial Court of the Moscow Region.

Judge                    [Signature]                    D.A. Ponomarev

[Seal:] Commercial Court of the Moscow Region

[Stamp:]

| Commercial Court of the Moscow Region |
|---|
| TRUE COPY |
| Position:        Lead Specialist |
| Signature:       [Signature] |
| A.V. Zheleznyak   January 27, 2017 |

*Перевод с русского языка на английский язык*
*Переводчик Коновалов Сергей Георгиевич_____*

Российская Федерация
Город Москва
Двадцать второго февраля две тысячи семнадцатого года
Я, Милевский Владислав Геннадиевич, нотариус города Москвы, свидетельствую подлинность подписи переводчика Коновалова Сергея Георгиевича.
Подпись сделана в моем присутствии.
Личность подписавшего документ установлена.

Зарегистрировано в реестре: № *4-3-3576*
Взыскано по тарифу: 100 руб.
Уплачено за оказание услуг правового и технического характера:--

В.Г. Милевский

Прошнуровано, пронумеровано и скреплено печатью *3* лист(-а,-ов).

В.Г. Милевский

Translation from Russian to English

*Translation from Russian to English*

*Translator Sergey Georgievich Konovalov* [signature]

The Russian Federation

City of Moscow

February Twenty-Second, Two Thousand Seventeen

I, Vladislav Gennadyevich Milevskiy, notary public of the city of Moscow, certify authenticity of the signature of translator Sergey Georgievich Konovalov.

The signature has been made before me.

The person who signed the document has been identified.

Registered under No. 4-3-3576.

Paid under the rate: RUB 100.

Paid for services of legal and technical nature: -

[Signature] V. G. Milevskiy

[Stamp:] Notary public of the city of Moscow V. G. Milevskiy

Bound, numbered and sealed 3 pages.

[Signature] V. G. Milevskiy

[Stamp:] Notary public of the city of Moscow V. G. Milevskiy